1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AARON STREEPY, an individual,

                Movant,

  v.

JOSEPH H. EMMONS, individually, AND OSPREY FIELD CONSULTING LLC, a limited liability company,

             Respondents.

CASE NO. 3:24-mc-05005-DGE

**DECLARATION OF AARON STREEPY**

I, Aaron Streepy, hereby declare as follows:

1. I am over the age of 18 and make this declaration of my own personal knowledge and am competent to testify as to the matters herein.

2. I am one of the attorneys representing the Plaintiff, Faye Irene Guenther, in her lawsuit against Defendants alleging defamation and false light. I give this Declaration based on personal knowledge of the assertions contained herein.

DECLARATION OF AARON STREEPY – Page 1
Case No.

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

3.   Since 2010, I have been an attorney engaged in private practice representing mostly labor unions and individuals. United Food and Commercial Workers Union, Local 3000 ("UFCW 3000") and Plaintiff are two of my clients. My clients previously included United Food and Commercial Workers Union, Local 1439 ("UFCW 1439") and United Food and Commercial Workers Union, Local 21 ("Local 21) prior to them merging in March 2022 and forming UFCW 3000.

4.   Between 2011 and 2020, I did not personally represent UFCW 1439 on any matter. In mid-September 2021, I was hired by UFCW 1439 to assist in an investigation into workplace complaints against UFCW 1439's President Eric Renner. As part of that investigation, I interviewed current and former employees, provided legal advice to UFCW 1439, and along with in-house counsel, negotiated a resolution with Complainants, third parties, and Mr. Renner. Current employees were represented by their Union and other parties such as Mr. Renner were represented by legal counsel.

5.   The settlement was finalized on October 9, 2021.

6.   Faye Guenther, Plaintiff, was President of Local 21 at the time I conducted the investigation at UFCW 1439.

7.   UFCW 1439 was a separate organization with distinct bylaws, officers, members, rules, leadership, employees, and policies from Local 21. Plaintiff was not the President or a member of UFCW 1439. Plaintiff had no authority, responsibility, or, to my knowledge, information related to the details of my work for UFCW 1439 or the investigation at UFCW 1439. During this time, I did not consult with the Plaintiff about my investigation, share details with her, or provide any information related to the matter other than, possibly, to

DECLARATION OF AARON STREEPY – Page 2
Case No.

indicate that I represented UFCW 1439, though I do not have specific recollection of such a conversation with Plaintiff.

8.  After the resolution of the complaints on October 9, 2021, I represented UFCW 1439 and Local 21on several matters related to their merger. One of those is the litigation against Mr. Emmons for distributing a flyer implying that Plaintiff made illegal bribes to install a "puppet" at a separate UFCW local based in Tacoma, Washington and that she helped Mr. Renner "hide" from sexual harassment charges.

9.  In my capacity as the initial investigatory attorney, I conducted an examination of matters that are now central to the ongoing litigation. Following the completion of the investigation, my professional engagement with the involved parties extended into multiple legal representations encompassing a variety of related issues. Throughout these subsequent interactions, I unavoidably assimilated additional knowledge and insights pertinent to the original investigation. It is important to note that in my current role as attorney for the Plaintiff, the delineation between the information acquired during the initial investigation and subsequent legal representations has become difficult to keep distinct. The subsequent privileged legal interactions with the subject material have inherently integrated into my broader understanding and analysis of the case, rendering it infeasible to segregate the knowledge obtained solely during the time period of the investigation from that acquired in my legal advisory capacity.

10. Plaintiff, Local 21, UFCW 1439, and UFCW 3000 filed suit against Defendants. Attached to my Declaration as Exhibit A is a true and correct copy of the Complaint.

DECLARATION OF AARON STREEPY – Page 3
Case No.

18 WEST MERCER ST., STE. 400   BARNARD

SEATTLE, WASHINGTON 98119   IGLITZIN &

TEL 800.238.4231 | FAX 206.378.4132   LAVITT LLP

11. Defendant Emmons was deposed and admitted that he distributed the flyer to stores in Spokane. He claims he believed the assertions to be true because his mentor Michael Selvaggio told him there had been investigations that proved it.

12. Michael Selvaggio was deposed later and admitted that he created and distributed the flyer at the instruction of Dan Clay and Esai Alday. Selvaggio claimed Mr. Clay referenced International Union documents related to an investigation proved the claims to be true.

13. It is my understanding that Mr. Clay was and continues to be a Vice President of the United Food and Commercial Workers International Union. Mr. Selvaggio claimed that Mr. Adlay worked at UFCW 555, but I do not recall if he indicated in what capacity.

14. Defendants removed the case from Spokane County to the Eastern District of Washington on the basis of diversity jurisdiction.

15. Later, the labor organizations were dismissed from the suit because the false comments were directed at Plaintiff Guenther.

16. On August 29, 2023, Mr. DiLorenzo, an attorney from Oregon representing the Defendants and Mr. Selvaggio, sent me a letter explaining Washington Rules of Professional Conduct 3.7 and stating that he wanted to depose me. A true and accurate copy of the letter is attached as Exhibit B.

17. On August 30, 2023, Jim McGuinness and I met with Mr. DiLorenzo. I explained that RPC 3.7 only applied to counsel "at trial" and that the information sought needed to be in dispute, relevant, non-privileged, and unavailable elsewhere. My position was that Defendants had failed to satisfy the requirements prior to seeking to depose opposing counsel.

DECLARATION OF AARON STREEPY – Page 4
Case No.

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

18. On March 12, 2024, following a deposition, Mr. DiLorenzo once again implicitly threatened to depose me by stating that he wanted to know what I said to Plaintiff about the investigation at UFCW 1439 and that he did not know how to do so without deposing me.

19. On April 3, 2024, Plaintiff moved for a voluntary dismissal.

20. On April 4, 2024, Defendants disclosed to Plaintiff that they would attempt to depose me.

21. Plaintiff made a motion to the Eastern District of Washington to stay discovery pending the resolution of the motion for voluntary dismissal.

22. Mr. Emmons subpoenaed documents from the UFCW International Union, deposed two of the Complainants from the UFCW 1439 investigation and a third-party, and from Mr. Clay.

23. According to Mr. DiLorenzo's clients during their depositions, UFCW International Vice President Dan Clay claimed the investigatory file at the International proved the claims in the flyer were true. I am unaware of any attempts by Defendants to obtain the file from Mr. Clay. On January 29, 2024, Defendants subpoenaed documents from Dan Clay resulting in the postponement of his already twice rescheduled deposition. In that subpoena Defendants failed to request the investigatory file.

24. On April 8, 2024, Mr. DiLorenzo represented to the Eastern District of Washington that he wanted to depose me (1) "regarding his investigation," (2) "Plaintiff's involvement in the investigation," (3) "an explanation of some of the notes he has supplied relating to his investigation," (4) "and how it was that Renner was provided a senior officer's position at the merged entity at a higher pay."

DECLARATION OF AARON STREEPY – Page 5
Case No.

18 WEST MERCER ST., STE. 400    BARNARD
SEATTLE, WASHINGTON 98119    IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

25. On April 17, 2024, the Eastern District of Washington declined to stay discovery pending resolution of the Motion to Voluntarily Dismiss Without Prejudice.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed on this 19th day of April, 2024.

_____
Aaron Streepy, WSBA No. 38149

DECLARATION OF AARON STREEPY – Page 6
Case No.

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**

# EXHIBIT A

COPY

Original Filed

JUL 2 5 2022

TIMOTHY W. FITZGERALD
SPOKANE COUNTY CLERK

1

2

3

4

5

6              IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                     IN AND FOR THE COUNTY OF SPOKANE

7

8    UNITED FOOD AND COMMERCIAL          No. **22202442-32**
     WORKERS UNION, LOCAL 3000, a
9    non-profit corporation, UNITED FOOD  **COMPLAINT FOR DAMAGES**
     AND COMMERCIAL WORKERS              **AND FURTHER RELIEF**
10   UNION, LOCAL 1439, a non-profit
     corporation, UNITED FOOD AND
11   COMMERCIAL WORKERS UNION,
     LOCAL 21, a non-profit corporation,
12   AND FAYE IRENE GUENTHER, an
     individual,
13
                           Plaintiffs,
14
           vs.
15
     JOSEPH H. EMMONS, individually,
16   AND OSPREY FIELD CONSULTING
     LLC, a limited liability company,
17
                           Defendants.
18

19

20          Plaintiffs United Food and Commercial Workers Union Locals 3000, 21 and

21   1439, and Faye Irene Guenther by and through their undersigned counsel of record, as and for

22   their claims against Defendants, allege as follows:

23                              **I. Parties**

24   1.1     Plaintiff United Food and Commercial Workers Union, Local 3000, (hereinafter "UFCW

25   3000") is a successor labor union formed after the merger of United Food and Commercial

26   Workers Union, Local 21 (hereinafter "UFCW 21") and United Food and Commercial Workers

Complaint - 1

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
Telephone (253) 528-0278

1    Union, Local 1439 (hereinafter "UFCW 1439"). At all relevant times herein UFCW 3000, one

2    or both of its predecessors, maintained offices and conducted business in Spokane County,

3    Washington. One office is located at 1719 N. Atlantic Street and the other at 2805 N. Market

4    Street. UFCW 3000 represents workers in various retail and health care facilities throughout

5    Spokane County.

6    1.2    Plaintiff Faye Irene Guenther is an individual and President of UFCW 3000 and the

7    predecessor UFCW 21. She resides in the State of Washington.

8    1.3    Defendant Joseph H. Emmons is and at all relevant times was, an individual, (hereinafter

9    "Emmons") working in the states of Washington and Oregon and residing in Portland, Oregon.

10   1.4    Defendant Osprey Field Consulting LLC is a limited liability company organized under

11   the laws of the state of Oregon.   Defendant Emmons is the sole member of Osprey Field

12   Consulting LLC.

13   1.5    Plaintiff UFCW 1439 was a chartered member of the United Food and Commercial

14   Workers International Union. It represented approximately 7,800 members in Eastern

15   Washington, Eastern Oregon and Northern Idaho. The majority of the members worked in the

16   retail grocery industry with other bargaining units in various industries.

17   1.6    Plaintiff UFCW 21 was a chartered member of the United Food and Commercial

18   Workers, International Union. It represented more than 44,000 members throughout the state of

19   Washington including workers in retail grocery in the Puget Sound region of the state.

20                              **II. JURISDICTION AND VENUE**

21   2.1    Plaintiffs allege and state claims against Defendants under the common law of the State

22   of Washington.

23   2.2    The acts alleged herein were committed in Spokane County, Washington, and caused

24   harm, injury or damages in this state to the Plaintiffs who are/were Washington organizations

25   and an individual resident. This Court has jurisdiction over the subject matter of this action and

26   over the defendant.

Complaint - 2

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
Telephone (253) 528-0278

1  2.3    Venue is proper in this Court under RCW 4.12.020 because the wrongful acts giving rise
2  to the causes of action occurred in Spokane County, Washington.

3                                    **III. FACTS**

4  3.1    The United Food and Commercial Workers International Union requires local unions to
5  request approval prior to being granted permission to begin formal discussions regarding
6  merging two local unions.

7  3.2    On October 28, 2021, UFCW 21 and UFCW 1439 requested permission from the
8  International Union to begin formal merger conversations.

9  3.3    On December 2, 2021, the UFCW International approved the request to engage in formal
10 merger conversations. Throughout the next week, leadership from both local unions discussed
11 and negotiated a merger agreement setting forth certain terms and conditions of the proposed
12 merger.

13 3.4    From December 9 to 13, leadership from both Unions met with key staff and executive
14 board members to announce and discuss the proposed merger.

15 3.5    On December 14, 2021, UFCW 1439's executive board met and approved a motion to
16 recommend the merger to the membership of the local. UFCW 1439 leadership began necessary
17 preparation for a vote of the full membership on the question of whether to merge with UFCW
18 21.

19 3.6    On December 14, 2021, UFCW 21's executive board met and approved a motion to
20 recommend the merger to the membership of the local. UFCW 21 leadership began necessary
21 preparation for a vote of the full membership on the question of whether to merge with UFCW
22 1439.

23 3.7    On December 15, 2021, UFCW 1439's President, Eric Renner, began receiving reports
24 from UFCW 1439 union members and staff that a flyer was being circulated to grocery stores in
25 the Spokane area. Mr. Renner obtained copies of the flyer and the envelopes they were mailed in.
26 The envelopes were postmarked December 13, 2021.

Complaint - 3

STREEPY LAW PLLC
4218 227th Ave Ct East
Buckley, WA 98321
Telephone (253) 528-0278

1  3.8     The flyer falsely claimed that UFCW 21, UFCW 1439 and United Food and Commercial
2  Workers Local 367 (hereinafter "UFCW 367") as well as its officers and staff were engaged in
3  payoffs and coverups.

4  3.9     The flyer also specifically targeted and falsely claimed then UFCW 21 President Faye
5  Guenther "helped former 367 President Angel Gonzalez cover up his harassment charges and
6  paid him off in exchange for installing her puppet, Mike Hines."

7  3.10    The flyer also falsely claimed that UFCW 21 and Faye Guenther were assisting Renner in
8  hiding from sexual harassment charges. This falsely implied Renner was utilizing the merger to
9  avoid charges of sexual harassment.

10  3.11   The flyer claimed, "OUR UNION SHOULD BE LOOKING OUT FOR US NOT
11  PROTECTING HARASSERS!" falsely implying Local 21, Local 1439 and its leadership was
12  not looking out for its members and were protecting harassers. The flyer recommended a "NO"
13  vote on any merger.

14  3.12   On December 16, 2021, UFCW 21 received reports of the flyers being circulated via
15  social media by workers and members in the Puget Sound region of the state. Jessica Roach, a
16  UFCW 367 member in the Gig Harbor area working for Fred Meyer, reposted the flyer on a
17  member Facebook Forum initiating a conversation writing "Brothers and Sisters … let's talk."
18  In response to questions, Roach asserted the "flyer was mailed to Fred Meyer, addressed to the
19  shop steward, the store director, and two assistants (sic) managers. … [UFCW 1439's] President
20  appears to be making a back door deal with Faye, President of 21, in a desperate attempt to
21  secure his employment. Also, much like our previous President, Angel, their President, Eric
22  Renner, is being sued for sexual harassment. The evidence against him must be solid because
23  this, as WE KNOW, this is a desperate move. … I think this flyer is meant to alert us (sic) the
24  corruption that is happening, perhaps, so we can start the conversation of how to combat it." The
25  posting received dozens of comments and likes. UFCW 21 and 3000 members subsequently
26  reported having seen the flyers and asked questions about whether the claims were true.

Complaint - 4

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
Telephone (253) 528-0278

1     3.13    After obtaining the flyer, UFCW 1439 conducted an internal investigation in order to
2     determine whether staff members were involved in the dissemination of defamatory literature
3     opposing the International Union's approval and directives of UFCW 1439 and UFCW 21
4     leadership.

5     3.14    UFCW 1439's investigation revealed that beginning on December 13, 2021, flyers were
6     mailed to grocery stores in Eastern Washington.    Throughout the remainder of December
7     President Renner and UFCW 1439 staff continued to receive reports of the flyer being received
8     at grocery stores throughout its jurisdiction.

9     3.15    Safeway grocery stores utilize modern surveillance equipment to monitor activities and
10    increase safety in its parking lots and stores. The surveillance includes recording parking lots as
11    well as public areas of the interior of the store.

12    3.16    On January 8, 2022, a man, later identified as Defendant Joseph Emmons, was observed
13    by video surveillance equipment in the parking lot of Safeway store #342 located at 1616
14    Northwest Blvd. Spokane, Washington 99205.

15    3.17    Defendant arrived at approximately 5:45 PM in a dark/silver colored Ford Escape with
16    Oregon license plates.

17    3.18    Video surveillance continually tracked Mr. Emmons' actions at the store. Mr. Emmons
18    parked his car near the rear of the parking lot. Defendant exited his car and crossed the parking
19    lot at 5:46 PM wearing a mask, "GU" baseball cap, and glasses.  Emmons carried in his right
20    hand a small stack of flyers.

21    3.19    On January 8, 2022, the sun set in Spokane, Washington at 4:17 PM. When Defendant
22    Emmons wore the mask, baseball cap, and glasses into the Safeway store that night, it was dark
23    and long after sunset.

24    3.20    At approximately 5:46:52 PM Emmons entered the East Entrance/Exit of the store.

25    3.21    For the next four minutes Emmons walked through the public areas of the store holding
26    the flyers.

Complaint - 5

1    3.22    At approximately 5:50:44 PM Emmons approached the self-checkout area. It was

2    unattended at the time and Emmons placed a flyer, face up, at the workstation at the end of the

3    self-checkout.

4    3.23    Defendant continued to the "Customer Information Desk" and placed another flyer down

5    on the counter at approximately 5:50:54 PM.

6    3.24    Defendant exited the store five seconds later via the West Entrance/Exit. Defendant

7    crossed the parking lot and returned to a Ford Escape with Oregon license plates before exiting

8    Safeway's parking lot via the East entrance/exit by turning South on North Maple Street at

9    5:52:15 PM.

10    3.25    Based on information and belief, Defendant Emmons visited other stores in the Spokane

11    area distributing flyers.

12    3.26    Identical flyers were reported and forwarded to UFCW 1439 from additional stores

13    throughout the area.

14    3.27    In early January 2022, UFCW 21 and UFCW 1439 were compelled to move additional

15    staff from the Seattle area to work throughout Eastern Washington, Northern Idaho and Eastern

16    Oregon in order to respond to the defamatory flyers.

17    3.28    Local 1439 and Local 21 conducted separate votes of its membership in January and

18    February 2022. Both Locals approved the merger. The merger forming the new United Food and

19    Commercial Workers Union, Local 3000 (hereinafter "UFCW 3000") was effective March 1,

20    2022.

21    3.29    UFCW 21 distributed pictures from the surveillance video of the car and of the individual

22    that distributed the flyers requesting that if anyone knew the car or individual, they contact the

23    Local.

24    3.30    In late February, Faye Guenther received a response from an individual acquainted with

25    Defendant Emmons who disclosed to Guenther that Emmons had made several admissions about

26    his involvement in the distribution of the defamatory flyers.  Specifically, Emmons admitted to

Complaint - 6

1    traveling to Spokane on a "black ops" assignment. In the context of the conversation, Emmons'

2    acquaintance was convinced the black ops operation related to the flyers distributed in Spokane

3    targeting the Plaintiffs and the proposed merger. Emmons also admitted additional details about

4    his trip to Spokane. When asked, Emmons also confirmed his vehicle matched a screen capture

5    of the video evidence from Spokane.

6    3.31    Defendant Emmons is not, and never has been a member of UFCW 21.

7    3.32    Defendant Emmons is not, and never has been a member of UFCW 367.

8    3.33    Defendant Emmons is not, and never has been a member of UFCW 1439.

9    3.34    Based on information and belief Defendants Emmons and Osprey Field Consulting

10   benefitted financially, either in the form of compensation or wages for services rendered or good

11   will for his Osprey Field Consulting business operations for distributing the flyers.

12   3.35    Defendants did not contact UFCW 21, UFCW 1439, UFCW 367, or its officers, to

13   determine whether the allegations within the communications were true prior to publicly

14   publishing the flyer.

15   3.36    Based on information and belief Defendant Emmons transported the flyers from Oregon,

16   across state lines, to Spokane, Washington, and elsewhere in Eastern Washington.

17   3.37    Defendants had no personal knowledge of Faye Guenther paying off Angel Gonzalez.

18   3.38    Defendants did not have a good faith belief that Faye Guenther paid off Angel Gonzalez.

19   3.39    Defendants had no personal knowledge of Faye Guenther assisting Angel Gonzalez to

20   cover up harassment charges.

21   3.40    Defendants did not have a good faith belief that Faye Guenther assisted Angel Gonzalez

22   in the cover up of harassment charges.

23   3.41    Defendants had no personal knowledge of Eric Renner hiding from sexual harassment

24   charges.

25   3.42    Defendants did not have a good faith belief that Eric Renner was hiding from sexual

26   harassment charges.

Complaint - 7

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
Telephone (253) 528-0278

1    3.43    Defendants had no personal knowledge of Eric Renner being sued for sexual harassment.

2    3.44    Defendants had no good faith belief that Eric Renner is, or has ever been, sued for sexual

3    harassment.

4    3.45    Defendants had no personal knowledge of Eric Renner landing "a cushy new gig with

5    Local 21."

6    3.46    Defendants did not have a good faith belief Eric Renner landed a "cushy new gig with

7    Local 21."

8    3.47    Defendants had no personal knowledge the merger between UFCW 21 and UFCW 1439

9    was "forced."

10   3.48    Defendants did not have a good faith belief the merger between UFCW 21 and UFCW

11   1439 was "forced."

12   3.49    Defendants had no personal knowledge that Mike Hines was a "puppet" for Faye

13   Guenther.

14   3.50    Defendants did not have a good faith belief that Mike Hines was a "puppet" for Faye

15   Guenther.

16   3.51    Defendants took no steps to verify the factual accuracy of the written statements in the

17   flyer Emmons distributed referencing UFCW 1439, UFCW 21 or their officers and staff.

18   3.52    Defendants intended and knew the flyer was likely to harm Faye Guenther.

19   3.53    Defendants intended and knew the flyer was likely to harm Eric Renner.

20   3.54    Defendants intended and knew the flyer was likely to harm Angel Gonzalez.

21   3.55    Defendants intended and knew the flyer was likely to harm Mike Hines.

22   3.56    Defendants intended and knew the flyer was likely to harm UFCW 21.

23   3.57    Defendants intended and knew the flyer was likely to harm UFCW 367.

24   3.58    Defendants intended and knew the flyer was likely to harm UFCW 1439.

25   3.59    UFCW 1439, its officers and staff, suffered losses related to the defamatory statements in

26   the form of investigation costs, attorneys' fees, the assignment of additional staff to address and

Complaint - 8

1  communicate with membership regarding the false statements, additional reimbursed expenses
2  due to the diversion of extra staff to areas where the flyers were distributed, and harm to its
3  reputation.

4  3.60    UFCW 21, its officers and staff, suffered losses related to the defamatory statements in
5  the form of investigation costs, attorneys' fees, the assignment of additional staff to address and
6  communicate with membership regarding the false statements, additional reimbursed expenses
7  due to the diversion of extra staff to areas where the flyers were distributed, and harm to its
8  reputation.

9  3.61    UFCW 3000 its officers and staff continue to suffer losses related to costs associated with
10  this action, the investigation regarding this matter, staffing to address concerns raised by the
11  flyer, and harm to its reputation.

12                    **IV. FIRST CAUSE OF ACTION-DEFAMATION**

13  4.1    Plaintiffs reallege above paragraphs 1.1 through 3.61.

14  4.2    Defendant Emmons published defamatory statements by mailing and hand delivering
15  copies of a flyer which is defamatory on its face. Namely, the flyer specifically names UFCW
16  1439, UFCW 21, Faye Guenther, Eric Renner and others claiming the organizations and
17  individuals were involved in providing payments to cover up sexual harassment complaints,
18  installation of "puppet" leadership at another local union, the elevation of sexual harassers over
19  the interests of union members, and that the merger between UFCW 1439 and UFCW 21 was
20  "forced" due to harassment complaints.

21  4.3    The statements published by Defendant Emmons are false, unprivileged, in writing, and
22  highly defamatory as they allege Plaintiffs engaged in schemes aimed at covering up and
23  protecting sexual harassers. It implied the use of union members' money to cover up harassment
24  charges rather than "looking out for us [members]." These statements themselves are express
25  false statements of fact, and they implied a knowledge of negative facts about UFCW 21, UFCW
26  1439 and their officers' professionalism, ability to conduct business, and competence. Further,

Complaint - 9

1    the statements were complete fiction, crafted to seem credible and to cause maximum damage

2    and interfere with the internal affairs of UFCW 1439 and UFCW 21. Defendants are at fault in

3    the publication of the defamatory statements.

4    4.4     Defendants' statements are defamatory per se, as they refer to improper or incompetent

5    conduct involving a person's business, trade, or profession. They were published in a way aimed

6    at causing maximum damage to the organizations and its officers as they were distributed

7    directly to the worksites of members and left in visible places where workers and customers

8    would see them. The manner in which Defendants distributed the flyers evinces an intent to

9    spread false information to third parties, including to as many union members, and therefore

10   merger voters, as possible. The document used the false information as the basis for urging a

11   "NO" vote to any merger.

12   4.5     Defendants distributed the defamatory flyer with actual malice – i.e., with knowledge of

13   their falsity, or, alternatively, with a reckless disregard for their falsity. Defendants knew the

14   statements were false prior to publishing them, and or could easily have ascertained the falsity of

15   the statements by contacting the Plaintiffs or any of the organizations or individuals named in the

16   flyer but chose instead to publish the statements with a conscious disregard for their truth and

17   with deliberate intent to harm and defame the Plaintiffs' reputations.

18   4.6     Moreover, the publication of such statements quickly made its way to social media where

19   they were repeated as truths by union members. By December 16, 2021, Facebook Forum

20   conversations were reported to UFCW 21 and UFCW 1439 leadership.

21   4.7     The false and defamatory statements made by Defendants are defamatory per se, giving

22   rise to general damages, in that they exposed the Plaintiffs and their officers including Plaintiff

23   Faye Guenther to contempt, ridicule and disgrace.

24   4.8     The flyer injured Plaintiffs and their officers by diminishing their reputations in their

25   trades and business and required a response and explanation to its membership. In response to

26   the defamatory comments UFCW 1439 and UFCW 21 were required to dedicate additional staff

Complaint - 10

1   to communicate and have in-person conversations with members prior to vote meetings.

2   Plaintiffs had to confront and discuss the flyer. UFCW 3000 still allocates staff time to address

3   the impact of defamatory statements made in the flyer. Plaintiff Faye Irene Guenther suffered

4   compensable damages related to Defendants' distribution of the defamatory flyers, including

5   damage to her reputation as President of UFCW 21 and 3000, emotional distress, and pain and

6   suffering.

7                                  **V. SECOND CAUSE OF ACTION-FALSE LIGHT**

8   5.1   Plaintiffs reallege above paragraphs 1.1 through 4.8.

9   5.2   The defamatory statements in the flyer Defendants distributed are highly offensive and

10  place Plaintiff Faye Irene Guenther in a false light.   Defendants knew of or recklessly

11  disregarded the falsity of the publication and the subsequent false light it would place Ms.

12  Guenther in. Ms. Guenther suffered compensable damages from Defendants' wrongful actions

13  including emotional distress, pain and suffering.

14

15                                  VI. **PRAYER FOR RELIEF**

16          **WHEREFORE, Plaintiffs prays for judgment against Defendants as follows:**

17  a.      For compensatory damages, according to proof at trial.

18  b.      For a temporary, preliminary, and permanent mandatory and/or prohibitory injunction

19  ordering that Defendants immediately cease and desist from publishing any additional false

20  information about Plaintiffs; destroy any remaining digital or electronic copies of the flyer; and

21  publicly apologize by letter to Plaintiffs, which must be approved by Plaintiffs' attorneys of

22  record, for making false and defamatory statements and implying the misuse of Union funds to

23  protect sexual harassers. Agree the Plaintiffs may post the letter on its website, social media and

24  otherwise communicate it to the public and its members.

25  c.      For reasonable attorneys' fees, all appropriate costs, litigations expenses to the extent

26  allowed by law, and,

Complaint - 11

1    d.    For such other relief as the Court may deem just and proper.

2

3    RESPECTFULLY SUBMITTED this 25th_day of July, 2022.

4

5

6                                        */s/ Aaron Streepy*
                                         Aaron Streepy, WSBA No. 38149
7                                        **STREEPY LAW, PLLC**
                                         4218 227ᵗʰ Ave Ct E
8                                        Buckley, WA 98321
                                         Tel: (253) 528-0277
9                                        aaron@mcguinnessstreepy.com
10                                       *Counsel for Plaintiffs*

11
                                         */s/ James G. McGuinness*
12                                       James G. McGuinness WSBA No. 23494
                                         **STREEPY LAW, PLLC**
13                                       4218 227ᵗʰ Ave Ct E
                                         Buckley, WA 98321
14                                       Tel: (253) 528-0277
                                         jim@mcguinnessstreepy.com
15                                       *Counsel for Plaintiffs*

16

17

18                                       Boyd M. Mayo WSBA No. 43752
                                         **PISKEL YAHNE KOVARIK, PLLC**
19                                       522 W Riverside Ave Ste 700
                                         Spokane, WA 99223
20                                       Tel: (509) 321-5930
                                         bmayo@pyklawyers.com
21                                       *Counsel for Plaintiffs*

22

23

24

25

26

Complaint - 12

EXHIBIT B



Suite 2400
1300 SW Fifth Avenue
Portland, OR  97201-5610

**John DiLorenzo, Jr.**
503.778.5216 tel
503.778.5299 fax

johndilorenzo@dwt.com

Admitted in Oregon,
New York & Washington D.C.

August 29, 2023

**VIA EMAIL AND REGULAR MAIL**

Aaron Streepy
James G. McGuinness
STREEPY LAW, PLLC
4218 227th Ave Ct. East
Buckley, WA 98321

Re:     *Guenther v. Emmons*
        USDC Eastern District of Washington Case No. 2:22-cv-00272-TOR

Dear Aaron and James:

As you know, I have been dealing with the International organization with regard to their responses to the subpoena duces tecum which my office issued on August 18, 2023.  The International has agreed to produce documents on a rolling basis as they identify those responsive to the subpoena subject to general objections which they have provided and subject to my agreement that the documents will only be used for litigation purposes absent a protective order.  I wanted to bring two of these documents to your attention.

The first is a complaint from 7 "current and former employees" of Local 1439 against Eric Renner dated August 23, 2021.  That complaint, filed with the International, details allegations relating to bullying, sexual discrimination, sexual harassment and other issues.

The second is a response dated September 16, 2021, from the President of the International Union notifying several of the complainants that the International Union is declining to open an investigation because Local 1439 has "retained outside legal counsel to conduct an independent investigation into the allegations raised."  I had occasion to ask the International's counsel about this and was told that the Local hired you to conduct the investigation.  I am also told that none of the results of your investigation was shared with the International.

Of course, assuming you conducted an investigation, we will want to see your report since it will likely be relevant to the truth of the statements which your client complains of or, at minimum, be likely to lead to the discovery of relevant evidence.  We will also want to depose you about the circumstances relating to the investigation, the time and resources devoted to the investigation, the facts uncovered and your conclusions.

4869-2192-5756v.2 0119896-000001

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

August 29, 2023
Page 2

Washington State's Rules of Professional Conduct provide in part:

Washington's Rule 3.7:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case;
>
> (3) disqualification of the lawyer would work substantial hardship on the client; or
>
> (4) the lawyer has been called by the opposing party and the court rules that the lawyer may continue to act as an advocate.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Rule 1.7 and Rule 1.9 concern conflicts of interest with current and former clients.

My reading of the Rule suggests that you (and your firm) may need to withdraw from the plaintiff's representation if you will likely be a necessary witness in the case.  It appears we have a scheduling call with the court tomorrow but I would like to have the conversation with you prior to alerting the court to any details relating to this matter.  Let me know what works best for you.  I can also make myself available later this afternoon should you wish to contact me right away.  Feel free to call my cell at 503-704-5162 should you wish to do so.

Thank you for your time.

Sincerely,

Davis Wright Tremaine LLP

John DiLorenzo, Jr.

August 23, 2021

Dear UFCW 1439 Executive Board Members and UFCW International Union Leadership,

We are coming forward as current and former employees of UFCW Local 1439 to express our deep concern about a pattern of abuse of power which requires an immediate response. We feel that it is necessary to bring these concerns to your attention because they affect our ability to fully and meaningfully represent our membership.

We believe that Eric Renner has created a toxic work environment in which the undersigned former employees feel that they have been wrongly forced out and in which the undersigned current employees have been marginalized and targeted. As you will see, we have directly witnessed what we believe to be sexism, discrimination, bullying, breaches of confidentiality, and the undermining of staff, workers, and union democracy. Every allegation made herein has been directly witnessed by one or more of us and each claim is true to the best of our individual knowledge.

Some of us worked for Local 1439 for decades over multiple administrations, while others came to the Union more recently hoping to make 1439 our home. We have served in many different roles as organizers, representatives, and administrators. Many of us who have left have gone onto have successful careers in the labor movement, opening our eyes to the unique abuse of power at Local 1439.

We believe that our work speaks to our commitment to this Local and its members. Sandra Huggins, Leslie Cowin, Amy Poston, and Austin DePaolo were among a number of employees who worked tirelessly to serve the needs of the membership yet attest to feeling forced out without just cause. During the past year, Adam Jackson led the Organizing Department to bring over 300 workers into the Local, winning our first RC election in over a decade. Laurel Fish contributed to the Twin City Foods campaign by utilizing earned media, introducing statewide legislation, and garnering community support to put the company on its heels. In the short time she has been an organizer, Katie Dugger has helped grow our Idaho membership. Despite this track record, Renner is currently threatening to cut funding for Laurel, Adam, and Katie.

In light of Renner's ongoing abuses of power, we cannot in good faith stay silent about our concerns. We feel that Renner's actions violate our union values, the mission of the International Union, our Collective Bargaining Agreement, and possibly nondiscrimination laws.

Our principle concerns are as follows:

## A Pattern of Sexism and Possible Discrimination

Renner perpetuates sexist stereotypes and discriminates against women. Renner has told Adam that "as long as I have something to say about it, no woman will be President or in a leadership position." He has said that women are "too emotional" to make good Union leaders and that "not many women are capable of doing this work." He has declared his intention to keep Local 1439 a "testosterone filled workplace" and told Adam that his job is to "dominate" the women under him.

Along with these sexist justifications, Renner has failed to hire and/or retain women for non-administrative positions at an equal rate as men. He demotes female employees and makes them feel forced out of the union at a higher rate than their male peers. He criticizes women that he sees as "pushy." Of the seven employees who have expressed that they were forced out by Renner (in his

1

CONFIDENTIAL

capacity as President), five are women and one is a man who Renner said was "too emotional." By contrast, as President, Eric has hired seven non-administrative staff members. Five of them were men and we believe he is currently targeting both women for potential removal.

We have multiple examples of Renner's double standards for female and male employees. First, he has claimed that women are "too assertive" for voicing the same opinions or engaging in the same actions as male employees. Second, he has taken away responsibilities from a female employee even when she had the same job title as a male counterpart. For instance, he recently forbid a female organizer from doing house visits by herself, implying that it would be too dangerous for an attractive woman. These double standards make it difficult for women to match men's job performance.

Instead of supporting working mothers, Renner appears to engage in unfair retaliation and comes dangerously close to violations of FMLA protections. He has complained about at least three employees who chose to take FMLA parental leave. One of them (Katie Dugger) was originally hired with the plan of being a Business Representative. However, when she became pregnant, Renner convinced her to move to Membership Services with the understanding that she would be a Business Rep when the next position became available. When Renner became aware that Katie had spoken with her union representative about being treated unfairly, he gave the next Business Rep position to a man, saying that he "didn't want to reward bad behavior."

Equally importantly, Renner's lewd comments about women make staff feel disrespected and demeaned. For example, he has commented repeatedly about female staff members and International Union officers "big butt[s]." When he assigned Katie to the Organizing Department, he justified the placement by implying she would be successful because of her looks, asking Adam "can you imagine saying no to her?" On at least one occasion, Renner encouraged male employees to imagine a specific female employee engaged in sex acts.

Such comments are especially troubling given Renner's apparent pattern of actively condoning inappropriate sexual relationships in the workplace and with members. Renner bragged to Adam about having relationships with members: "when I was a Rep, I had girls I was sleeping with all around my route." Renner has told Adam that "you seem like a happily married guy but with this job you'll have opportunities. As long as you are discrete I won't blame you for being a guy." Adam also witnessed Renner telling Armando Rivera that he would condone sexual relationships with members. Renner told Katie that "we aren't supposed to date members, but if you do, make sure to keep it hush hush." In addition, Renner encourages an uncomfortable work environment for female employees, egging Rivera onto Katie by asking whether he's "hit that yet."

Considered together, Renner's fixation on women's bodies, sexual innuendo, apparent gender bias, and inappropriate actions create a hostile and demeaning work environment where women are unable to do their best work. The International Union bylaws call on us to "organize, unite, and assist persons," without regard to sex, and we believe that staff deserve the same respect in order to fully carry out this mission.

#### A Pattern of Bullying Behavior
More broadly, Renner demonstrates a pattern of systematically purging competent employees. Since he became President, Renner has been responsible for making numerous employees feel that Local 1439 is a toxic work environment. Instead of following the process for discipline or termination

2

**CONFIDENTIAL**

designated in the Teamsters CBA, Renner engages in relentless, unprofessional mockery and bullying until employees resign.

Worse, Renner makes it clear that participation in the bullying is practically a condition of employment. For instance, several of the undersigned witnessed Renner leading the staff in mocking Alex Garcia's mannerisms on a nearly daily basis. In doing so, Renner repeatedly and inaccurately employed homophobic language, claiming that Alex was not masculine enough and facetiously calling a male EBoard member Alex's "girlfriend." Coupled with his habit of purging out-of-favor staff, we feel that Renner's character assassinations have created a witch-hunt atmosphere in which staff feel compelled to speak against their peers out of fears they will be targeted next.

The undersigned former employees attest that such unprofessional behavior is nothing new, citing Renner's use of similar patterns even before he became President. Renner's strategy has apparently not changed. Recently, he has switched from praising Laurel for taking initiative, to removing her responsibilities and effectively demoting her. He openly tells staff that he is punishing her by refusing to speak with her. Eric has threatened to retaliate by cutting IU subsidies to the entire Organizing Department. Meanwhile, Renner continues his pattern of mockery towards Laurel and Adam, alleging that the only reason Adam supports her is because they are "conjoined at the hip" and that she has "brainwashed" him.

Renner's unprofessional behavior extends to disrespecting other elected officers of the Union. For example, multiple staff have observed Renner mocking a current elected officer's mental capacity in front of rank-and-file bargaining committee members, calling him "slow train" and making fun of his text messages. He shows no respect for personal tragedies. When discussing one officer, he told Adam and Laurel that, "I don't give a shit about his dying wife." Meanwhile, Laurel and Adam have personally witnessed Renner mockingly impersonate the union attorney. He told Laurel and Adam that the attorney was being given assignments as a punishment to show him "who was boss."

**Breaches of Confidentiality**
As part of this pattern of bullying, Renner repeatedly fails to follow chain of command by sharing confidential personnel information with junior employees. For example, shortly after Laurel was hired, Renner spoke to her on multiple occasions about a former elected officer, discussed his write ups, detailed concerns about his work performance, and claimed that the office staff disliked him. Instead of talking to Laurel directly about his concerns with her, Renner goes behind her back to complain to other staff members.

Even when the information Renner shares may not be legally confidential, his disparaging remarks constitute a violation of section 17.5 of the CBA ("If any staff has occasion to discuss members of the bargaining unit with other bargaining unit members, said discussion shall be of a positive nature, contributing to high morale, personal esteem, trust, mutual respect, and team effort.")

**Undermining Staff**
Renner regularly undermines staff members and makes it difficult for them to do their jobs effectively. The undersigned former employees attest that Renner has a long-established habit of demoting staff members without just cause. At times, Renner's attitude towards demotions is deeply irrational, contradictory, or even incoherent. For instance, Renner recently claimed that he has "no idea how Laurel got the idea she was Political Director" even though Laurel had received an email from Renner promoting her to the position. More generally, several of us have experienced a

3

**CONFIDENTIAL**

pattern in which Eric punishes us by taking away almost all our job responsibilities, and then complains that we have nothing to do.

Additionally, Renner hurts productivity and morale by misusing his own and others' time. Renner regularly requires in-favor staff members to go with him on personal errands during work hours (taking unjustifiably long lunches, visiting topless barista stands, picking up dry cleaning, going to his lake house, collecting rent from private tenants). Many of us have seen Renner spending up to five hours a day forcing employees to listen to his complaints about other staff, taking away time that could be used to represent members.

In our judgment, Renner frequently mistakes competence for insubordination. In conversations with Adam, Renner has expressed fears that almost everyone—staff, leaders of other Locals, and the IU— is out to get him. We have seen that the fastest way to become his target is to do your job well. As a result, Renner appears to feel most threatened by his most dedicated employees. When he targets them for removal, it is ultimately members who suffer most from the high rate of turnover.

**Marginalizing Workers and Undermining Union Democracy**
Lastly, we are bringing these concerns to you because we believe that Renner's failure to include workers in their own Union violates the International Union's commitment to protect "the basic principles of democracy and democratic unionism."

Renner erodes members' faith in the Union by preventing democratic access and participation. For example, when Twin City Foods unilaterally changed overtime policies and forced workers to work a 12-hour shift on their day off for less money, Eric refused to file NLRB charges because it might "upset" the company. During TCF bargaining, Laurel translated for workers who spoke Spanish. Renner then banned her from negotiations out of paranoia that she was attempting to turn workers against him, making workers less comfortable expressing their opinions. Renner also capitulated to the company's request to send committee members back to work on the last day of bargaining, meaning that they could not fully participate in key decisions about their own contract. In light of such concessions, workers raised concerns that they felt bullied into accepting a deal rather than encouraged to fight for the contract they deserved.

Finally, Renner fails to cultivate democratic leadership. In addition to forcing out a series of competent staff members, including several he previously identified as future leaders, Renner has made little effort to fill positions on the Executive Board (one-quarter of the seats are currently vacant). Meanwhile, Renner negotiated the entire Spokane city-wide grocery contract without a bargaining committee. As a result, members learned that their contract had already been negotiated when they got a notice in the mail.

Although we would have liked to raise these concerns with Renner directly, we felt both unsafe and unable to do so. He has repeatedly refused to meet with or even acknowledge those of us who he targets. We are also concerned about Renner's explosive temper. Renner admits to having anger management problems. One or more of us has observed the following: Renner having road rage while driving staff members in his car, bragging about carrying a gun, and showing off his gun while driving aggressively. More than one of us have witnessed Renner furiously shouting at bystanders and homeless people. On one occasion, Renner accosted an unarmed bicyclist, claiming that the only reason he did not kill him was because Adam "talked him off the ledge." Such public incidents make us concerned about Renner's inability to promote the Local's "positive, helpful, patient, and professional image" (as per the CBA).

4

**CONFIDENTIAL**

Additionally, Renner's explosive temper has made us reluctant to raise issues when they arise and contributes to our decision to voice our concerns collectively.

Because we care deeply about the Union's broader mission, we sincerely hope that our concerns can be resolved internally rather than requiring outside recourse. In addition to Renner's pattern of failing the workers and staff, we are concerned that his actions expose UFCW to substantial liability. Accordingly, we are bringing these concerns to you first in the hopes that you will seriously consider whether Renner's leadership is in the best interest of the Union.

It would be easiest for those of us still working at Local 1439 to quietly move on to other jobs where we would be treated more fairly. However, given this long train of abuses, we feel that doing so would be a disservice to those Renner has already targeted and those who may be targeted in the future.

In light of these issues, we ask that you immediately launch a comprehensive independent investigation, take appropriate reparative actions, and provide ongoing accountability measures to remedy the concerns we raise here. We are prepared to testify and provide further verification of these statements.

Sincerely,

Adam Jackson, Organizing Director 2019 – present

Laurel Fish, Organizer & Director of Strategic Campaigns 2020 – present

Katie Dugger, Membership Services/Organizer 2019 – present

Sandra Huggins, Benefits Director 2003 – 2020

Leslie Cowin, Membership Services/Administrative Assistant 2010 – 2020

Amy Poston, Office Assistant/Administrative Assistant 2007 – 2015

Austin DePaolo, Organizer & Business Representative 2011 – 2015

5

**CONFIDENTIAL**

<u>VIA ELECTRONIC AND</u>
<u>REGULAR MAIL</u>

September 16, 2021

Mr. Adam Jackson
Member, UFCW Local No. 1439
5024 North Walnut Street
Spokane WA  99205-5455

Ms. Laurel E. Fish
Member, UFCW Local No. 1439
28 East 40th Avenue
Spokane WA  99203-2749

Ms. Katie Dugger
Member, UFCW Local No. 1439
4518 South Pierce Court
Spokane Valley WA  99206-9465

Dear Brother and Sisters:

Thank you for your e-mail of September 13, 2021, with attached August 23, 2021 letter, expressing your concerns regarding the President of UFCW Local No. 1439 (Local 1439), Eric Renner (Renner).  Please know the International Union takes all allegations of workplace harassment and/or abuse of power very seriously.   The International Union has long had policies and practices in place to promote collegiality in the workplace and to ensure its members are treated with dignity and respect.

Your letter, addressed to both the International Union and Local 1439's executive board, raises concerns regarding Renner's conduct as the chief executive officer of Local 1439.  It requires a thorough review and, if the allegations are proven true, remedial action.  It is my understanding that Local 1439 agrees and is retaining outside legal counsel to conduct an independent investigation into the allegations raised.  This is an appropriate response to your concerns.   Thus, while I retain my authority as International President under Article 10(E)1 of the International Constitution to resolve disputes between chartered bodies and members thereof, I believe it is best to allow Local 1439 the opportunity to conduct its review and address the matters raised in your letter.  If, after Local 1439's investigation has been completed, Local 1439 has either acted or declined to act to resolve the concerns raised in your letter, and you are unsatisfied with the outcome, you may raise your objections to the investigation, and/or Local 1439's response to your allegations, to me for consideration.

**CONFIDENTIAL**

Mr. Adam Jackson
Ms. Laurel Fish
Ms. Katie Dugger

September 16, 2021

- 2 -

      I thank you for allowing the UFCW the opportunity to respond to your concerns and encourage you to fully comply with the investigation. All chartered bodies of the International Union must foster safe and respectful workplaces as well as provide due process to all members and/or officers. We do not presume or assume any member and/or officer has acted unethically or inappropriately or that our democratic institutions are fully free from insidious actions that undermine our commitment to dignity and respect in the workplace. Rather, we strive to do our best to live up to the ideals and fundamental principles of what the UFCW and union democracies stand for.

      Please know that there is nothing more important to me than the members of our UFCW family. Listening to your thoughts, working with you, and doing everything we can to address your concerns, is an important part of how we make our Union family stronger.

      Thank you for being a valuable part of our Union family.

Sincerely and fraternally,

/s/ Marc Perrone

International President

cc:   Meckler

AMP:LDP:eaa

**CONFIDENTIAL**