1

2

3

4

5

6

7

8

9

The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | AARON STREEPY, an individual,

11 |               Movant,

12 |     v.

13 | JOSEPH H. EMMONS, individually, AND
OSPREY FIELD CONSULTING LLC, a limited

14 | liability company,

15 |             Respondents.

No. 3:24-mc-05005-DGE

DECLARATION OF JOHN A.
DILORENZO, JR. IN SUPPORT
OF RESPONDENTS' RESPONSE
TO AARON STREEPY'S
MOTION TO QUASH

16

17

    I, John A. DiLorenzo, Jr., declare:

18

19

    1.     I am an attorney in the law firm Davis Wright Tremaine LLP, counsel for

Respondents Joseph H. Emmons and Osprey Field Consulting LLC in the matter of *Guenther v.*

20

*Emmons et al.*, Case No. 2:22-cv-00272-TOR (E.D. Wash.) (the "*Guenther* Action") pending

21

before United States District Judge Thomas O. Rice in the United States District Court for the

22

23

Eastern District of Washington.  I make this declaration from personal knowledge and a review

24

of the files and records in this matter and the *Guenther* Action.

25

**Background Regarding *Guenther* Action**

26

    2.    ***Flyer***.  Attached as **Exhibit 1** is a true and correct copy of the flyer at issue in the

27

*Guenther* Action, available at ECF No. 10-1 in that action.

DILORENZO DECL. ISO OF
RESPONSE TO MOTION TO QUASH - 1
3:24-mc-05005-DGE

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

3.     ***Sexual Harassment Complaint***.  Attached as **Exhibit 2** is a true and correct copy of a letter produced in the *Guenther* Action by United Food and Commercial Workers International Union ("UFCW International") with the Bates stamps UFCW-EMMONS_000043 through UFCW-EMMONS_000047, which accuses Eric Renner of sexual harassment among other misconduct ("Complaint Letter").  Attached as **Exhibit 3** is a true and correct copy of a letter produced in this litigation by UFCW International with the Bates stamps UFCW-EMMONS_000048 through UFCW-EMMONS_000049, which responds to the Complaint Letter.

**Discovery in the Guenther Action**

4.     ***Party Discovery***.  On July 13, 2023, Guenther served her Rule 26(a)(1) Initial Disclosures, which listed at least 27 categories of documents in Guenther's possession, custody, or control that she may use to support her claims.  On October 5, 2023, Respondents served discovery requests on Guenther, including 18 requests for production ("RFPs"), one of which sought all documents referenced in Guenther's Initial Disclosures.  On November 3, 2023, Guenther served her responses to Respondents' discovery requests.  By the end of February 2024, Respondent had produced only 12 documents, all purportedly related to a single RFP.  Attached as **Exhibit 4** is a true and correct copy of a letter I sent to Guenther's counsel on February 29, 2024, concerning the lack of documents Guenther had produced.  Guenther did not produce any additional documents until after Judge Rice directed her to do so (*see* Paragraph 6).

5.     ***Third-Party Discovery***.  Respondents have engaged in extensive third-party discovery in the underlying action.  Respondents have sought documents from UFCW International, Jeff Anderson, Eric Renner, Mike Hines, UFCW 3000, UFCW 367, UFCW 555, Dan Clay, Esai Alday, Adam Jackson, Laurel Fish, and Alex Garcia.  Respondents have deposed

DILORENZO DECL. ISO OF
RESPONSE TO MOTION TO QUASH - 2
3:24-mc-05005-DGE

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

two individuals who drafted the Complaint Letter, Jackson and Fish, and an individual referenced in the Complaint Letter as a subject of Renner's harassment, Garcia.

6.      ***Motion to Compel Discovery of Non-Disclosure Agreements and Related Evidence.***  Through discovery, Respondents learned that Movant Aaron Streepy negotiated numerous non-disclosure agreements that prohibited the individuals who signed the Complaint Letter (Exhibit 2) ("Complainants") from discussing their complaints against Eric Renner ("NDAs").  Although the NDAs and other information subject to them were responsive to Respondents' discovery requests and subpoenas, Guenther and UFCW 3000 withheld these documents on the basis of the NDAs.  On February 6, 2024, Respondents filed a motion to compel production of the NDAs and related information, which Judge Rice granted on February 14, 2024.  Attached as **Exhibit 5** is a true and correct copy of Judge Rice's February 14, 2024, Order.  Pursuant to this Order, UFCW 3000 produced the NDAs and related correspondence, and Respondents deposed three witnesses regarding the NDAs.  Plaintiff Guenther later produced the same documents UFCW 3000 produced under the Order.

a.      ***NDAs***.  Attached as **Exhibit 6** is a true and correct redacted copy of documents UFCW 3000 produced on February 16, 2024, with the Bates stamps UFCW 3000 Resp – 006001 – Subp. #3 through UFCW 3000 Resp – 006018 – Subp. #3.

b.      ***Related correspondence***.  Attached as **Exhibit 7** is a true and correct copy of a document UFCW 3000 produced on February 22, 2024, with the Bates stamp UFCW 3000 Resp – 006047 – Subp. #3.  Attached as **Exhibit 8** is a true and correct copy of document UFCW 3000 produced on February 22, 2024, with the Bates stamp UFCW 3000 Resp – 006226 – Subp. #3.

c.      ***Adam Jackson deposition***.  On March 11, 2024, Respondents deposed

DILORENZO DECL. ISO OF
RESPONSE TO MOTION TO QUASH - 3
3:24-mc-05005-DGE

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Adam Jackson, one of the Complainants.  Attached as **Exhibit 9** is a true and correct highlighted copy of excerpts from the transcript of his deposition.

          d.     ***Laurel Fish deposition***.  On March 11, 2024, Respondents also deposed Laurel Fish, another of the Complainants.  Attached as **Exhibit 10** is a true and correct highlighted copy of excerpts from the transcript of her deposition.

          e.     ***Alex Garcia deposition***.  On March 12, 2024, Respondents deposed Alex Garcia, another of the Complainants.  Attached as **Exhibit 11** is a true and correct highlighted copy of excerpts from the transcript of his deposition.

    7.    ***March 12, 2024, Meet and Confer***.  On March 12, 2024, my co-counsel Sara Fairchild and I met and conferred with Guenther's counsel Jim McGuinness and Mr. Streepy regarding my February 29, 2024, letter (Exhibit 4) and other discovery issues.  In the same meeting, I informed Mr. Streepy that Respondents intended to take his deposition.

    8.    ***Mr*. *Streepy's Investigation Notes***.  On April 3, 2024, UFCW 3000 produced 62 pages of handwritten, largely illegible notes that appear to be from Mr. Streepy's investigation into the Complaint Letter and therefore should have been produced within ten days of Judge Rice's February 14, 2024, Order on Respondents' motion to compel (Exhibit 5).  Respondents have not been able to determine who Mr. Streepy spoke with during the course of his investigation or who he discussed his investigation with.

**Guenther's Request to Stay Discovery**

    9.    ***Rule 41(a)(2) Motion to Dismiss***.  Also on April 3, 2024, Guenther moved to voluntarily dismiss her claims without prejudice under Federal Rule of Civil Procedure 41(a)(2).  A true and correct copy of her motion to dismiss is attached as **Exhibit 12** and is also available at *Guenther* Action, ECF No. 39.

DILORENZO DECL. ISO OF
RESPONSE TO MOTION TO QUASH - 4
3:24-mc-05005-DGE

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

10.     ***Request for Stay***.  On April 5, 2024, Guenther's counsel emailed Judge Rice requesting a stay of discovery in light of her motion.  On April 8, 2024, I emailed Judge Rice in response, opposing the requested stay and asking Judge Rice to order Mr. Streepy's deposition to proceed.  Attached as **Exhibit 13** is a true and correct copy of this email thread, including the court's response, which has been redacted pursuant to Judge Rice's February 14, 2024, Order (Exhibit 5).

11.     ***Judge Rice's Ruling***.  On April 17, 2024, Judge Rice held a telephonic hearing regarding Guenther's request to stay discovery.  Both parties had an opportunity to present argument on the discovery issues raised.  At the end of the hearing, Judge Rice ruled in part:  "It is the Court's decision that discovery can continue and that Mr. Streepy's deposition can be taken . . . ."  Attached as **Exhibit 14** is a true and correct copy of the transcript of the hearing, which has been redacted pursuant to Judge Rice's February 14, 2024, Order (Exhibit 5).  Guenther did not move for reconsideration, nor did Mr. Streepy notify Judge Rice of any objections to Judge Rice's ruling.

12.     On April 30, 2024, Respondents asked Mr. Streepy's counsel if Mr. Streepy would consent to transferring his Motion to Quash to Judge Rice in the Eastern District of Washington under Federal Rule of Civil Procedure 45(f).  A true and correct copy of that request and Mr. Streepy's counsel's response is attached as **Exhibit 15**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2024, in Portland, Oregon.

*s/ John A. DiLorenzo, Jr.*
John A. DiLorenzo, Jr.

DILORENZO DECL. ISO OF
RESPONSE TO MOTION TO QUASH - 5
3:24-mc-05005-DGE

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on May 6, 2024, I caused the document to which this certificate is

3   attached to be served via ECF on the following party:

4   Dmitri Iglitzin, WSBA No. 17673
    BARNARD IGLITZIN & LAVITT LLP
5   18 W Mercer Street, Suite 400
    Seattle, WA 98119
6   Tel: (206) 257-6003
    Fax: (206) 378-4132
7   iglitzin@workerlaw.com
8   ***Attorneys for Aaron Streepy***

9   I further certify that the following parties were served by email and mail:

10  Aaron Streepy
11  Jim McGuinness
    STREEPY LAW, PLLC
12  4218 227th Ave Ct. East
    Buckley, WA 98321
13  aaron@mcguinnessstreepy.com
    jim@mcguinnessstreepy.com
14  ***Attorneys for Faye Guenther and United Food and Commercial Workers Union Local 3000***

15

16        I declare under penalty of perjury that the foregoing is true and accurate.

17        DATED this 6th day of May, 2024.

18

19                        By: *s/ Sara A. Fairchild*
                              Sara A. Fairchild, WSBA #54419
20

21

22

23

24

25

26

27

DILORENZO DECL. ISO OF
RESPONSE TO MOTION TO QUASH - 6
3:24-mc-05005-DGE

# EXHIBIT 1



# EXHIBIT 2

August 23, 2021

Dear UFCW 1439 Executive Board Members and UFCW International Union Leadership,

We are coming forward as current and former employees of UFCW Local 1439 to express our deep concern about a pattern of abuse of power which requires an immediate response. We feel that it is necessary to bring these concerns to your attention because they affect our ability to fully and meaningfully represent our membership.

We believe that Eric Renner has created a toxic work environment in which the undersigned former employees feel that they have been wrongly forced out and in which the undersigned current employees have been marginalized and targeted. As you will see, we have directly witnessed what we believe to be sexism, discrimination, bullying, breaches of confidentiality, and the undermining of staff, workers, and union democracy. Every allegation made herein has been directly witnessed by one or more of us and each claim is true to the best of our individual knowledge.

Some of us worked for Local 1439 for decades over multiple administrations, while others came to the Union more recently hoping to make 1439 our home. We have served in many different roles as organizers, representatives, and administrators. Many of us who have left have gone onto have successful careers in the labor movement, opening our eyes to the unique abuse of power at Local 1439.

We believe that our work speaks to our commitment to this Local and its members. Sandra Huggins, Leslie Cowin, Amy Poston, and Austin DePaolo were among a number of employees who worked tirelessly to serve the needs of the membership yet attest to feeling forced out without just cause. During the past year, Adam Jackson led the Organizing Department to bring over 300 workers into the Local, winning our first RC election in over a decade. Laurel Fish contributed to the Twin City Foods campaign by utilizing earned media, introducing statewide legislation, and garnering community support to put the company on its heels. In the short time she has been an organizer, Katie Dugger has helped grow our Idaho membership. Despite this track record, Renner is currently threatening to cut funding for Laurel, Adam, and Katie.

In light of Renner's ongoing abuses of power, we cannot in good faith stay silent about our concerns. We feel that Renner's actions violate our union values, the mission of the International Union, our Collective Bargaining Agreement, and possibly nondiscrimination laws.

Our principle concerns are as follows:

**A Pattern of Sexism and Possible Discrimination**

Renner perpetuates sexist stereotypes and discriminates against women. Renner has told Adam that "as long as I have something to say about it, no woman will be President or in a leadership position". He has said that women are "too emotional" to make good Union leaders and that "not many women are capable of doing this work." He has declared his intention to keep Local 1439 a "testosterone filled workplace" and told Adam that his job is to "dominate" the women under him.

Along with these sexist justifications, Renner has failed to hire and/or retain women for non-administrative positions at an equal rate as men. He demotes female employees and makes them feel forced out of the union at a higher rate than their male peers. He criticizes women that he sees as "pushy." Of the seven employees who have expressed that they were forced out by Renner (in his

1

capacity as President), five are women and one is a man who Renner said was "too emotional." By contrast, as President, Eric has hired seven non-administrative staff members. Five of them were men and we believe he is currently targeting both women for potential removal.

We have multiple examples of Renner's double standards for female and male employees. First, he has claimed that women are "too assertive" for voicing the same opinions or engaging in the same actions as male employees. Second, he has taken away responsibilities from a female employee even when she had the same job title as a male counterpart. For instance, he recently forbid a female organizer from doing house visits by herself, implying that it would be too dangerous for an attractive woman. These double standards make it difficult for women to match men's job performance.

Instead of supporting working mothers, Renner appears to engage in unfair retaliation and comes dangerously close to violations of FMLA protections. He has complained about at least three employees who chose to take FMLA parental leave. One of them (Katie Dugger) was originally hired with the plan of being a Business Representative. However, when she became pregnant, Renner convinced her to move to Membership Services with the understanding that she would be a Business Rep when the next position became available. When Renner became aware that Katie had spoken with her union representative about being treated unfairly, he gave the next Business Rep position to a man, saying that he "didn't want to reward bad behavior."

Equally importantly, Renner's lewd comments about women make staff feel disrespected and demeaned. For example, he has commented repeatedly about female staff members and International Union officers "big butt[s]." When he assigned Katie to the Organizing Department, he justified the placement by implying she would be successful because of her looks, asking Adam "can you imagine saying no to her?" On at least one occasion, Renner encouraged male employees to imagine a specific female employee engaged in sex acts.

Such comments are especially troubling given Renner's apparent pattern of actively condoning inappropriate sexual relationships in the workplace and with members. Renner bragged to Adam about having relationships with members: "when I was a Rep, I had girls I was sleeping with all around my route." Renner has told Adam that "you seem like a happily married guy but with this job you'll have opportunities. As long as you are discrete I won't blame you for being a guy." Adam also witnessed Renner telling Armando Rivera that he would condone sexual relationships with members. Renner told Katie that "we aren't supposed to date members, but if you do, make sure to keep it hush hush." In addition, Renner encourages an uncomfortable work environment for female employees, egging Rivera onto Katie by asking whether he's "hit that yet."

Considered together, Renner's fixation on women's bodies, sexual innuendo, apparent gender bias, and inappropriate actions create a hostile and demeaning work environment where women are unable to do their best work. The International Union bylaws call on us to "organize, unite, and assist persons," without regard to sex, and we believe that staff deserve the same respect in order to fully carry out this mission.

### A Pattern of Bullying Behavior

More broadly, Renner demonstrates a pattern of systematically purging competent employees. Since he became President, Renner has been responsible for making numerous employees feel that Local 1439 is a toxic work environment. Instead of following the process for discipline or termination

2

UFCW-EMMONS_000044

designated in the Teamsters CBA, Renner engages in relentless, unprofessional mockery and bullying until employees resign.

Worse, Renner makes it clear that participation in the bullying is practically a condition of employment. For instance, several of the undersigned witnessed Renner leading the staff in mocking Alex Garcia's mannerisms on a nearly daily basis. In doing so, Renner repeatedly and inaccurately employed homophobic language, claiming that Alex was not masculine enough and facetiously calling a male EBoard member Alex's "girlfriend." Coupled with his habit of purging out-of-favor staff, we feel that Renner's character assassinations have created a witch-hunt atmosphere in which staff feel compelled to speak against their peers out of fears they will be targeted next.

The undersigned former employees attest that such unprofessional behavior is nothing new, citing Renner's use of similar patterns even before he became President. Renner's strategy has apparently not changed. Recently, he has switched from praising Laurel for taking initiative, to removing her responsibilities and effectively demoting her. He openly tells staff that he is punishing her by refusing to speak with her. Eric has threatened to retaliate by cutting IU subsidies to the entire Organizing Department. Meanwhile, Renner continues his pattern of mockery towards Laurel and Adam, alleging that the only reason Adam supports her is because they are "conjoined at the hip" and that she has "brainwashed" him.

Renner's unprofessional behavior extends to disrespecting other elected officers of the Union. For example, multiple staff have observed Renner mocking a current elected officer's mental capacity in front of rank-and-file bargaining committee members, calling him "slow train" and making fun of his text messages. He shows no respect for personal tragedies. When discussing one officer, he told Adam and Laurel that, "I don't give a shit about his dying wife." Meanwhile, Laurel and Adam have personally witnessed Renner mockingly impersonate the union attorney. He told Laurel and Adam that the attorney was being given assignments as a punishment to show him "who was boss."

### Breaches of Confidentiality
As part of this pattern of bullying, Renner repeatedly fails to follow chain of command by sharing confidential personnel information with junior employees. For example, shortly after Laurel was hired, Renner spoke to her on multiple occasions about a former elected officer, discussed his write ups, detailed concerns about his work performance, and claimed that the office staff disliked him. Instead of talking to Laurel directly about his concerns with her, Renner goes behind her back to complain to other staff members.

Even when the information Renner shares may not be legally confidential, his disparaging remarks constitute a violation of section 17.5 of the CBA ("if any staff has occasion to discuss members of the bargaining unit with other bargaining unit members, said discussion shall be of a positive nature, contributing to high morale, personal esteem, trust, mutual respect, and team effort.")

### Undermining Staff
Renner regularly undermines staff members and makes it difficult for them to do their jobs effectively. The undersigned former employees attest that Renner has a long-established habit of demoting staff members without just cause. At times, Renner's attitude towards demotions is deeply irrational, contradictory, or even incoherent. For instance, Renner recently claimed that he has "no idea how Laurel got the idea she was Political Director" even though Laurel had received an email from Renner promoting her to the position. More generally, several of us have experienced a

3

UFCW-EMMONS_000045

pattern in which Eric punishes us by taking away almost all our job responsibilities, and then complains that we have nothing to do.

Additionally, Renner hurts productivity and morale by misusing his own and others' time. Renner regularly requires in-favor staff members to go with him on personal errands during work hours (taking unjustifiably long lunches, visiting topless barista stands, picking up dry cleaning, going to his lake house, collecting rent from private tenants). Many of us have seen Renner spending up to five hours a day forcing employees to listen to his complaints about other staff, taking away time that could be used to represent members.

In our judgment, Renner frequently mistakes competence for insubordination. In conversations with Adam, Renner has expressed fears that almost everyone—staff, leaders of other Locals, and the IU— is out to get him. We have seen that the fastest way to become his target is to do your job well. As a result, Renner appears to feel most threatened by his most dedicated employees. When he targets them for removal, it is ultimately members who suffer most from the high rate of turnover.

### Marginalizing Workers and Undermining Union Democracy

Lastly, we are bringing these concerns to you because we believe that Renner's failure to include workers in their own Union violates the International Union's commitment to protect "the basic principles of democracy and democratic unionism."

Renner erodes members' faith in the Union by preventing democratic access and participation. For example, when Twin City Foods unilaterally changed overtime policies and forced workers to work a 12-hour shift on their day off for less money, Eric refused to file NLRB charges because it might "upset" the company. During TCF bargaining, Laurel translated for workers who spoke Spanish. Renner then banned her from negotiations out of paranoia that she was attempting to turn workers against him, making workers less comfortable expressing their opinions. Renner also capitulated to the company's request to send committee members back to work on the last day of bargaining, meaning that they could not fully participate in key decisions about their own contract. In light of such concessions, workers raised concerns that they felt bullied into accepting a deal rather than encouraged to fight for the contract they deserved.

Finally, Renner fails to cultivate democratic leadership. In addition to forcing out a series of competent staff members, including several he previously identified as future leaders, Renner has made little effort to fill positions on the Executive Board (one-quarter of the seats are currently vacant). Meanwhile, Renner negotiated the entire Spokane city-wide grocery contract without a bargaining committee. As a result, members learned that their contract had already been negotiated when they got a notice in the mail.

Although we would have liked to raise these concerns with Renner directly, we felt both unsafe and unable to do so. He has repeatedly refused to meet with or even acknowledge those of us who he targets. We are also concerned about Renner's explosive temper. Renner admits to having anger management problems. One or more of us has observed the following: Renner having road rage while driving staff members in his car, bragging about carrying a gun, and showing off his gun while driving aggressively. More than one of us have witnessed Renner furiously shouting at bystanders and homeless people. On one occasion, Renner accosted an unarmed bicyclist, claiming that the only reason he did not kill him was because Adam "talked him off the ledge." Such public incidents make us concerned about Renner's inability to promote the Local's "positive, helpful, patient, and professional image" (as per the CBA).

4

UFCW-EMMONS_000046

Additionally, Renner's explosive temper has made us reluctant to raise issues when they arise and contributes to our decision to voice our concerns collectively.

Because we care deeply about the Union's broader mission, we sincerely hope that our concerns can be resolved internally rather than requiring outside recourse. In addition to Renner's pattern of failing the workers and staff, we are concerned that his actions expose UFCW to substantial liability. Accordingly, we are bringing these concerns to you first in the hopes that you will seriously consider whether Renner's leadership is in the best interest of the Union.

It would be easiest for those of us still working at Local 1439 to quietly move on to other jobs where we would be treated more fairly. However, given this long train of abuses, we feel that doing so would be a disservice to those Renner has already targeted and those who may be targeted in the future.

In light of these issues, we ask that you immediately launch a comprehensive independent investigation, take appropriate reparative actions, and provide ongoing accountability measures to remedy the concerns we raise here. We are prepared to testify and provide further verification of these statements.

Sincerely,

Adam Jackson, Organizing Director 2019 – present

Laurel Fish, Organizer & Director of Strategic Campaigns 2020 – present

Katie Dugger, Membership Services/Organizer 2019 – present

Sandra Huggins, Benefits Director 2003 – 2020

Leslie Cowin, Membership Services/Administrative Assistant 2010 – 2020

Amy Poston, Office Assistant/Administrative Assistant 2007 – 2015

Austin DePaolo, Organizer & Business Representative 2011 – 2015

5

# EXHIBIT 3



America's Food and Retail Union

**VIA ELECTRONIC AND
REGULAR MAIL**

September 16, 2021

Mr. Adam Jackson
Member, UFCW Local No. 1439
5024 North Walnut Street
Spokane WA  99205-5455

Ms. Laurel E. Fish
Member, UFCW Local No. 1439
28 East 40th Avenue
Spokane WA  99203-2749

Ms. Katie Dugger
Member, UFCW Local No. 1439
4518 South Pierce Court
Spokane Valley WA  99206-9465

Dear Brother and Sisters:

Thank you for your e-mail of September 13, 2021, with attached August 23, 2021 letter, expressing your concerns regarding the President of UFCW Local No. 1439 (Local 1439), Eric Renner (Renner).  Please know the International Union takes all allegations of workplace harassment and/or abuse of power very seriously.  The International Union has long had policies and practices in place to promote collegiality in the workplace and to ensure its members are treated with dignity and respect.

Your letter, addressed to both the International Union and Local 1439's executive board, raises concerns regarding Renner's conduct as the chief executive officer of Local 1439.  It requires a thorough review and, if the allegations are proven true, remedial action.  It is my understanding that Local 1439 agrees and is retaining outside legal counsel to conduct an independent investigation into the allegations raised.  This is an appropriate response to your concerns.  Thus, while I retain my authority as International President under Article 10(E)1 of the International Constitution to resolve disputes between chartered bodies and members thereof, I believe it is best to allow Local 1439 the opportunity to conduct its review and address the matters raised in your letter.  If, after Local 1439's investigation has been completed, Local 1439 has either acted or declined to act to resolve the concerns raised in your letter, and you are unsatisfied with the outcome, you may raise your objections to the investigation, and/or Local 1439's response to your allegations, to me for consideration.

**Anthony M. Perrone,** *International President*
**Shaun Barclay,** *International Secretary-Treasurer*

United Food & Commercial Workers International Union, AFL -CIO, CLC
1775 K Street, NW • Washington DC 20006-1598
Office (202) 223-3111 • Fax (202) 466-1562 • www.ufcw.org

Confidential

Mr. Adam Jackson
Ms. Laurel Fish
Ms. Katie Dugger                                        September 16, 2021

- 2 -

        I thank you for allowing the UFCW the opportunity to respond to your concerns and encourage you to fully comply with the investigation.  All chartered bodies of the International Union must foster safe and respectful workplaces as well as provide due process to all members and/or officers.  We do not presume or assume any member and/or officer has acted unethically or inappropriately or that our democratic institutions are fully free from insidious actions that undermine our commitment to dignity and respect in the workplace.  Rather, we strive to do our best to live up to the ideals and fundamental principles of what the UFCW and union democracies stand for.

        Please know that there is nothing more important to me than the members of our UFCW family.  Listening to your thoughts, working with you, and doing everything we can to address your concerns, is an important part of how we make our Union family stronger.

    Thank you for being a valuable part of our Union family.

                            Sincerely and fraternally,

                            International President

UFCW-EMMONS_000049

# EXHIBIT 4



Suite 2400
1300 SW Fifth Avenue
Portland, OR  97201-5610

**John A. DiLorenzo Jr.**
503.778.5216 tel
johndilorenzo@dwt.com

February 29, 2024

*Via Email and US Mail*

Aaron Streepy
Jim McGuinness
Streepy Law PLLC
4218 227th Ave Ct East
Buckley, WA 98321
aaron@mcguinnessstreepy.com
jim@mcguinnessstreepy.com

Re:     *Guenther v. Emmons et al.*, Case No. 2:22-cv-272-TOR (E.D. Wash.)

Aaron and Jim:

I am writing to follow up on Plaintiff Faye Guenther's response to Defendants' First Set of Interrogatories and Requests for Production, which were served nearly five months ago.  To date, Plaintiff has produced a total of twelve documents, and Plaintiff has failed to produce any documents in response to 17 of Defendants' 18 requests for production.  We would like to meet and confer with you to discuss completing your document production.

The discovery requests were served on October 5, 2023.  On November 13, 2023, we met and conferred with Jim regarding your responses and objections.  During that meeting, Jim represented that Plaintiff had already begun collecting and reviewing responsive documents.  He also asked and we agreed that Plaintiff could produce documents on a rolling basis.  I memorialized our concerns regarding Plaintiff's responses and objections in an email to you on November 21, 2023.  We heard no further response.

On December 19, 2023, Plaintiff produced twelve documents you identified as "responsive to RFP #4."  On February 16, 2024, she produced the same twelve documents.  We have received no other documents from Plaintiff in response to Defendants' discovery requests.

Plaintiff's delay in producing documents is approaching the point of requiring the Court's assistance.  We have outlined below the requests for which Plaintiff has yet to produce any or all responsive documents:

**RFP 1:**  This request seeks the documents referenced in Plaintiff's Rule 26(a) initial disclosures.  Plaintiff's initial disclosures include a three-page list of "non-privileged" documents

February 29, 2024
Page 2

"Plaintiff has in her possession, custody, and/or control and that Plaintiff may use to support her claims." Plaintiff objected to producing these documents on privilege grounds and stated the request was duplicative, but agreed to produce non-privileged responsive documents. Plaintiff has failed to produce any of the documents identified in her initial disclosures.

**RFP 2:** This request seeks "documents related to the flyer, including without limitation your communications regarding the flyer and any investigation into the flyer." Plaintiff agreed to produce non-privileged responsive documents. Plaintiff's initial disclosures indicate she has numerous categories of documents related to the flyer, including "[e]mail and text messages with Eric Renner regarding … distribution of the flyers, reports by members and response to flyers." Yet, Plaintiff has failed to produce any responsive documents.

**RFP 3:** This request seeks "communications between you and Eric Renner from January 1, 2020 to the present." Plaintiff agreed to produce non-privileged responsive documents, but has failed to produce a single one.

**RFP 4:** This request seeks "communications between you and Angel Gonzalez from July 1, 2019 to the present." Plaintiff objected that this request is overbroad and unduly burdensome, but agreed to conduct a reasonable search for and produce responsive documents. Plaintiff's initial disclosures state Plaintiff has "email[s] and/or text messages with Angel Gonzalez regarding hiring of Mike Hines," among other topics. Plaintiff has produced only 12 documents in response to this request, and none appears to concern Mike Hines.

**RFP 5:** This request seeks "communications between you and Mike Hines from July 1, 2019 to the present." Plaintiff agreed to produce "any communications that are not privileged, that occurred after Hines left the employment of UFCW 21, or prior to leaving UFCW 21 employment, [and] were not routine communications to staff." Plaintiff's initial disclosures indicate she has "email and/or text messages with Mike Hines regarding resignation from UFCW Local 21, relationship between the locals, and resignation of Angel Gonzalez." Plaintiff has failed to produce any documents in response to this request.

**RFP 6:** This request seeks "documents related to the merger," including those "related to considering the merger before it was formally initiated, the initiation of the merger, the terms of the merger, the negotiation of those terms, your role in the merger, and member support for the merger." Plaintiff agreed to produce non-privileged documents responsive to this request, and her initial disclosures indicate she has them. Plaintiff has failed to produce a single one.

**RFP 8:** This request seeks "documents related to any grievance, formal or informal, concerning Eric Renner, including without limitation all communications that contain, refer, or relate to the substance of the grievance, its merits, and any response by you or others." Plaintiff objected to producing "labor grievances" and objected to the extent the request seeks "confidential information pursuant to third-party agreements," but she agreed to produce other non-privileged responsive documents. Although UFCW Local 3000 produced documents in its possession responsive to a similar subpoena request, Plaintiff has not produced any documents in response to this request.

February 29, 2024
Page 3

As stated in my November 21, 2023, email, we need to better understand what you mean by "labor grievances" before we can agree to excluding them. We do agree to limit the definition of grievance here to (i) grievances concerning any form of harassment or abusive behavior, including the type of behavior described in the August 23, 2021, letter Local 1439 members sent to the International Union, and (ii) grievances related to the merger or Mr. Renner's relationship with Ms. Guenther or Local 21. We trust that addresses your concern. With respect to Plaintiff's third-party-agreement objection, the Court's February 14, 2024, Order Granting Defendants' Motion to Compel removes any purported barrier that the NDAs executed by Local 1439 and Mr. Renner posed to producing documents in this case.

**RFP 9:** This request seeks "documents related to the hiring of Eric Renner as an employee of Local 3000, including without limitation all communications that contain, refer, or relate to offering him employment, the reasons for hiring him, and the terms of his employment." Plaintiff agreed to produce non-privileged responsive documents, but has failed to produce any.

**RFP 10:** This request seeks "documents related to Angel Gonzalez's resignation from Local 367, including without limitation all communications that contain, refer, or relate to the reasons for his resignation or the terms of his resignation." Plaintiff agreed to produce non-privileged responsive documents, and her initial disclosures show she has "texts and communications regarding Angel Gonzalez's departure from UFCW Local 367." She has failed to produce any responsive documents.

**RFP 11:** This request seeks "documents related to any grievance, formal or informal, concerning Angel Gonzalez, including without limitation all communications that contain, refer, or relate to the substance of the grievance, its merits, and any response by you or others." Plaintiff objected to producing "labor grievances," but agreed to produce other non-privileged responsive documents. She has not done so. Again, we cannot agree to exclude "labor grievances" without an explanation of what that term means—something we have requested and you have not provided. We agree to limit "grievance" here to grievances concerning any form of harassment. Let us know if this does not resolve your concern.

**RFP 12:** This request seeks "documents related to Mike Hines' replacement of Angel Gonzalez as President of Local 367, including without limitation all documents and communications relating to Mr. Hines' appointment as Executive Assistant to the President of Local 367, his appointment as Secretary Treasurer of Local 367, and his ultimate appointment as President of Local 367." Plaintiff agreed to produce non-privileged responsive documents, but has failed to produce a single one.

**RFP 13:** This request seeks "communications between you and Jeff Anderson between December 13, 2021, and the present." Plaintiff raised no objection and agreed to produce responsive documents. She has failed to produce any.

**RFP 14:** This request seeks "documents that contain, refer, or relate to the injury or damages you claim to have suffered as a result of the flyer." Plaintiff agreed to produce non-privileged responsive documents. In her initial disclosures, she also stated she would "make

February 29, 2024
Page 4

available for inspection … non-privileged documents in her possession, custody, and control that supports [sic] her contention with respect to computation of damages." Plaintiff has failed to produce or make available any of these documents.

**RFP 15:** This request seeks communications relating to this lawsuit, including those "relating to the facts alleged in the Complaint." Plaintiff objected that this request is duplicative, overbroad, and unduly burdensome, but agreed to conduct a reasonable search for and produce non-privileged responsive documents. Plaintiff has failed to produce any responsive documents.

**RFP 16:** This request seeks "posts made by you on any social media platform or website related to the facts alleged in the Complaint, including without limitation the merger, the flyer, and the statements in the flyer." Plaintiff agreed to produce non-privileged responsive documents, but has failed to produce a single one.

**RFP 17:** This request seeks "documents comprising, containing, describing, or otherwise referring to posts made by you on any social media platform or website related to your role as President of Local 21." Plaintiff objected that this request is overbroad. The documents responsive to this request are highly relevant to whether Plaintiff was a limited public figure. In my November 21, 2023, email, we proposed Plaintiff produce her posts on Twitter, Instagram, and Facebook (the three platforms she stated she used) to Local 21 members while President. Plaintiff has failed to produce any responsive documents.

**RFP 18:** This request seeks "documents related to your election as President of Local 21, including without limitation any campaign materials, statements promoting your candidacy, and communications concerning the election." Plaintiff agreed to produce non-privileged responsive documents, but has failed to produce any.

\* \* \* \* \*

We look forward to discussing Plaintiff's plan to address these discovery deficiencies and the completion of Plaintiff's document production. Please let us know your availability for a meet-and-confer later this week.

Sincerely,

Davis Wright Tremaine LLP

John A. DiLorenzo Jr.

# EXHIBIT 5

1

2

3

4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

FAYE IRENE GUENTHER, an
individual,

                    Plaintiff,

    v.

JOSEPH H. EMMONS, individually,
and OSPREY FIELD
CONSULTING, LLC, a limited
liability company,

                    Defendants.

NO. 2:22-CV-0272-TOR

ORDER GRANTING DEFENDANTS'
MOTION TO COMPEL

BEFORE THE COURT are Defendants' Motion for an Order Compelling

Production of Documents Subject to Nondisclosure Agreements and Authorizing

Related Discovery (ECF No. 35) and Defendants' Motion to Expedite the Hearing

Date on Motion for Order Compelling Production of Documents (ECF No. 37).

The matter was submitted for consideration without oral argument. The Court has

reviewed the record and files herein and is fully informed. For the reasons

discussed below, Defendants' Motions to Compel (ECF No. 35) and to Expedite

1    (ECF No. 37) are **GRANTED.**

2                              **BACKGROUND**

3          These motions arise out of Plaintiff's claims against Defendants for

4    defamation and false light.  ECF No. 1-2 at 11-13.  Plaintiff is the President of

5    United Food and Commercial Workers Union ("UFCW Union"), Local 3000,

6    which formed after the merger of Local 21 and Local 1439.  *Id.* at 2-3, ¶ 1.1; *see*

7    *also* ECF No. 36-6.  Prior to a vote on Local 21 and Local 1439's merger,

8    Defendant Joseph Emmons distributed a flyer accusing Plaintiff, who was then

9    President of Local 21, of helping Eric Renner, who was then President of Local

10   1439, hide from charges of sexual harassment.  ECF Nos. 1-2 at 5, ¶¶ 3.9-3.11; 35

11   at 3.  The flyer encouraged a "no" vote on the proposed merger.  *Id.*  The merger

12   was ultimately successful, with Plaintiff assuming the role of President of Local

13   3000, and Mr. Renner assuming the role of Vice President.  ECF No. 35 at 5.

14   Importantly, Mr. Renner is not a party to this case.

15         Through discovery, Defendants learned that employees of Local 1439 had

16   raised concerns to UFCW International regarding, among other things, alleged

17   sexual harassment by Mr. Renner in the workplace.  ECF No. 35 at 2.  Defendants

18   also learned that Mr. Renner, Local 1439 (now Local 3000), Teamsters Local 690,

19   and eight former employees who accused Mr. Renner of sexual harassment and/or

20   helped draft the complaint to UFCW International, had executed a "General

Release and Complaint Settlement." ECF No. 35 at 4; 36-5 at 2.  The agreement

was drafted by Plaintiff's counsel.  ECF No. 35 at 2.  The agreement contained a

nondisclosure agreement (NDA) clause, which dictated:

> UFCW 1439, Renner, Complainants and Teamsters 690 (collectively,
> "the parties") agree to keep the terms of this General Release and
> Complaint Settlement confidential.  The parties agree not to engage in
> any vilification of the other, including, but not limited to, management
> style, methods of doing business, the quality of representation and
> services provided, role in the community, or treatment of employees.
> Renner, Complainants, and Teamsters 690 will take no action which is
> intended to, or would reasonably be expected to, harm UFCW 1439.
> Renner agrees to take no action which is intended to, or would
> reasonably be expected to, harm the Complainants or Teamsters 690.
> Complainants and Teamsters 690 agrees to take no action which is
> intended to, or would reasonably be expected to, harm Renner.
> However, *nothing in this Agreement shall prohibit any party's
> disclosure of information which is required to be disclosed in
> compliance with applicable laws or regulations or by order of a court
> or other regulatory body*.  The parties agree to take reasonable steps to
> ensure the privacy and non-dissemination of any documents, texts,
> videos, statements or other evidence related to the complaints listed in
> the [letter to UFCW International].

ECF No. 36-4 at 3 (emphasis added).  It is unknown what, if any, consideration the

complainants received in exchange for their signatures to this agreement.  ECF No.

35 at 4.  The agreements were executed on October 8 and 9, 2021.  *Id.*

Upon learning of the existence of these documents, Defendants served

document subpoenas on Local 3000 and Mr. Renner, and a deposition subpoena on

Laurel Fish, one of the complainants who had written to UFCW International.  *See*

ECF Nos. 36-8; 36-12; 36-15.  With the exception of Mr. Renner, all parties to the

agreement—Local 3000, Ms. Fish, and several of the other complainants—stipulated that they would be willing to produce related documentation and/or testify if a court order were entered authorizing disclosure of material and/or testimony subject to the NDA.  *See* ECF Nos. 36 at 2-3, ¶ 5; 36 at 10, ¶ 19; 36-16 at 2-4.  For his part, Mr. Renner's attorney indicated in e-mails to Defense counsel that he believed the information subject to the NDA was irrelevant to answering Plaintiffs' defamation and false light claims and that his client was "a non-party who has a privacy interest . . . in protecting the agreements."  ECF No. 36-13 at 7.  Counsel further threatened that disclosure might result in Mr. Renner filing his own action or in moving for a protective order.  *Id.* at 7, 9.  In a final exchange, he wrote: "[Mr. Renner] is not going to consent to disclosure of documents governed by confidentiality and non-disparagement clauses absent a Court order."  ECF No. 36-13 at 2.  To date, Mr. Renner has not intervened in this action despite being notified of Defendants' intent to file this motion to compel, but the Court marks his objections nonetheless.  *See* Fed. R. Civ. P. 24.

## DISCUSSION

Defendants submit this motion to compel production of: (1) the Release Agreements executed between Renner, Local 1439, the complainants, and Teamsters Local 690; (2) other documents subject to the NDA in that agreement which are responsive to Defendants' subpoenas and not otherwise privileged; and

(3) additional information and documents subject to the NDA which the parties may seek in the future and which are relevant and proportional to the needs of the case.  ECF No. 35-1 at 1-2, ¶¶ a-b.  Defendants specify that they will "(i) use the NDA Material only for purposes of this litigation; (ii) disclose NDA Material only to persons to whom it is reasonably necessary to disclose the information for purposes of this litigation; and (iii) confer with the parties to the Agreements before disclosing any NDA Material in court filings to determine whether they will consent to such disclosure, whether the filing can be redacted, or whether a motion to seal is warranted."  *Id.* at 2-3, ¶ 5; *see also* ¶ 6 (noting the stipulation does not preclude any party or third-party who receives a discovery request seeking NDA material from moving for a protective order or to quash or modify the subpoena on other grounds).  With the exception of Mr. Renner, Plaintiff and other non-party signatories to the NDA are unopposed to this motion.  ECF No. 36-16 at 2.

A party moving an order compelling disclosure or discovery responses must include a certification that the movant conferred or attempted to confer in good faith with opposing counsel before resorting to court action.  Fed. R. Civ. P. 37(a)(1).  Under the Federal Rules of Civil Procedure, parties have a duty to cooperate and comply with the discovery process.  The scope of permissible discovery includes "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(a)(1).  Once the moving party establishes that the

information sought is within the scope of permissible discovery, the burden shifts to the party opposing discovery to establish the information should not be subject to production. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). However, the Court may limit the extent or frequency of discovery in certain instances, including where discovery is unreasonably cumulative or duplicative, a party has already had ample opportunity to obtain discovery, or the proposed discovery is outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). Thus, the Court is vested with broad discretion to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Rule 34 provides for the production of documents and things, requiring a party to produce or permit inspection of documents responsive to a request for production of documents when such documents are in the party's "possession, custody or control." Fed. R. Civ. P. 34(a)(1); *see also* Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules.").

The emails attached to the declaration of Defense counsel, ECF No. 36, establish that counsel attempted to confer in good faith with all parties and non-parties who might be affected by the disclosure of documents or other information subject to the NDAs. Fed. R. Civ. P. 37(a)(1). The Court therefore considers

1    whether the information sought is relevant and proportionate to the scope of

2    requested discovery.

3          The subpoena to Local 3000 requests documents or information related to

4    grievances against Mr. Renner, agreements between Mr. Renner and the Union,

5    Plaintiff's communications regarding Mr. Renner, and complaints regarding

6    Plaintiff.  ECF No. 36-8 at 7-8.  Likewise, the subpoena to Mr. Renner requests

7    information pertaining to his communications with Plaintiff regarding any

8    grievances about him or his employment, his communications referring or relating

9    to Plaintiff, and all documents referencing complaints against him.  ECF No. 36-12

10   at 6.  Finally, the subpoena to Ms. Fish requests that she produce all documents

11   and agreements related to the complaint letter she sent along with other Local 1439

12   employees at the time of her deposition, which is tentatively scheduled for March

13   2024.  ECF No. 36-15.

14         The materials and information sought which are protected by the NDAs

15   appear relevant and proportional to Defendants' subpoenas and to one of

16   Defendants' chief defenses: namely, that Defendants could not have defamed

17   Plaintiff or portrayed her in a false light because the statements the flyer made

18   about her pertaining to Mr. Renner's alleged misconduct and her alleged coverup

19   thereof were in fact true.  ECF No. 35 at 9.  Additionally, a valid reason for why

20   discovery should not be permitted has not been identified.  Although Mr. Renner's

counsel hinted that the existence of the NDA should proscribe discovery here, at least one Washington federal court has held that "an NDA or confidentiality agreement is not a valid basis for withholding discovery, and the documents sought are not shielded from disclosure merely because they have been designated as confidential in an agreement." *LifeGoals Corp. v. Advanced Hair Restoration LLC*, C16-1733JLR, 2017 WL 6516042, at *3 (W.D. Wash. Dec. 19, 2017) (quotations and citations omitted). Therefore, future requests for production cannot reasonably be denied on the basis that the agreement contains an NDA. Further, as Defendants note, because the NDA permits disclosure where required by court order, the parties were on notice that disclosure might occur in a judicial proceeding such as this one. ECF No. 35 at 11. Concerns that may arise about the scope, proportionality, or confidentiality of the proposed discovery can be addressed by the parties conferring beforehand, sealing or redacting material, or the party opposing discovery moving for a protective order.

//

//

//

//

//

//

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for an Order Compelling Production of Documents Subject to Nondisclosure Agreements and Authorizing Related Discovery (ECF No. 35) is **GRANTED**.

2. Defendants' Motion to Expedite (ECF No. 37) is **GRANTED**.

3. Local 3000 shall produce the Release Agreements executed on October 8 and 9, 2021, between UFCW Local 1439, Eric Renner, the complainants, and Teamsters Local 690, within three (3) days of this Order.

4. Local 3000 and Eric Renner shall produce all other non-privileged documents in their possession which are responsive to Defendants' subpoenas and subject to the NDAs within ten (10) days of this order.

5. Laurel Fish shall produce all non-privileged documents which are responsive to Defendants' subpoena and subject to the NDAs at the time of her rescheduled deposition, which is tentatively set for March 2024.

6. The parties shall treat all NDA Material produced in this case as confidential.  The parties shall (1) use NDA material only for purposes of this litigation, (2) disclose NDA material only to persons to whom it is reasonably necessary to disclose the information for purposes of this litigation, and (3) confer with the parties to the Agreements before disclosing any NDA material in court filings to determine whether they

will consent to disclosure, whether the filing can be redacted, or whether a motion to seal is warranted. If a party to the agreements objects to the requested disclosure, the filing party shall redact the material or file it under seal. The objecting party must then file its own brief and/or declaration in response to the filing party's motion to seal, providing reasons for keeping the NDA material under seal.

7. This Order does not preclude any party or third-party who receives a discovery request to obtain NDA material from seeking a protective order or moving to quash or modify a subpoena on grounds other than NDAs.

8. Defendants shall serve a copy of this Order on all parties to the Agreements and/or their counsel.

The District Court Executive is directed to enter this Order and furnish copies to counsel. The file remains **OPEN**.

DATED February 14, 2024.



THOMAS O. RICE
United States District Judge

# EXHIBIT 6

## FILED UNDER SEAL

# EXHIBIT 7

## FILED UNDER SEAL

# EXHIBIT 8

## <u>FILED UNDER SEAL</u>

# EXHIBIT 9

## <u>FILED UNDER SEAL</u>

# EXHIBIT 10

# FILED UNDER SEAL

# EXHIBIT 11

# FILED UNDER SEAL

# EXHIBIT 12

1   AARON STREEPY, WSBA #38149          **The Honorable Thomas O. Rice**
2   JAMES MCGUINNESS, WSBA #23494
    STREEPY LAW, PLLC
3   4218 227th Ave Ct. East
    Buckley, WA 98321
4   (253) 528-0278

5

6

7                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF WASHINGTON
8
    FAYE IRENE GUENTHER, an
9   individual,
                                        NO. 2:22-CV-00272-TOR
10                      Plaintiff,
                                        PLAINTIFF'S MOTION TO
11                                      DISMISS UNDER 41(a)(2)
        v.
12                                      **05/30/2024**
    JOSEPH H. EMMONS, individually,     **Without Oral Argument**
13  AND OSPREY FIELD CONSULTING
    LLC, a limited liability company,
14
15                      Defendants.

16

17

18

19

20

21

22

23

PLAINTIFF'S 41(a)(2) MOTION TO DISMISS
i   Case No. 2:22-cv-00272-TOR

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
*Telephone (253) 528-0278*

## Table of Contents

*I.   MOTION* .......................................................................................................*1*

*II.  MATERIAL FACTS* .....................................................................................*1*

*III.  LEGAL AUTHORITY* .................................................................................*2*

   **A.  Federal Rule of Civil Procedure 41(a)(2) allows the court to grant voluntary dismissal on terms it considers proper.** ............................................**2**

   **B.  Courts do not award costs and fees when claims are voluntarily dismissed without prejudice under Rule 41(a)(2) absent a showing of actual legal prejudice** ............................................................................................**3**

   **C.  In the unlikely event a court places conditions on the dismissal, a plaintiff is given a reasonable period to withdraw the motion to dismiss.** ......**5**

*IV.  ARGUMENT* ................................................................................................*5*

   **A.  Plaintiff's Motion to Dismiss Without Prejudice Should be Granted Because No Exceptional Circumstances are Present in this Case that Result in Plain Legal Prejudice to the Defendants** ....................................................**5**

*V.  CONCLUSION* ............................................................................................*7*

PLAINTIFF'S 41(a)(2) MOTION TO DISMISS

ii   Case No. 2:22-cv-00272-TOR

**STREEPY LAW** PLLC
4218 227ᵗʰ Ave Ct. East
Buckley, WA 98321
*Telephone (253) 528-0278*

# Table of Authorities

### Federal Cases

*Beard v. Sheet Metal Workers Union, Loc. 150*, 908 F.2d 474, 476 (9th Cir. 1990).5

*Davis v. USX Corp.*, 819 F.2d 1270, 1276 (4th Cir. 1987) ........................................4

*Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143 (9th Cir. 1982) ................3

*Helio, LLC v. Palm, Inc.*, 2007 BL 239333, 2007 WL 1063507 at *2 (N.D. Cal. Apr. 9, 2007) ........................................4

*Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994) ........................................3, 4

*Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993) ........................................4

*Lau v. Glendora Unified School Dist.,* 792 F.2d 929, 931 (9th Cir. 1986)...............5

*Le Compte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir. 1976) ........................................4

*Resorts Int'l, Inc. v. Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995) ............................3

*Smith v. Lenches*, 263 F.3d 972 (9th Cir. 2001)........................................4, 5

*Stevedoring Servs. of Am. v. Armilla Intn'l B.V.*, 889 F.2d 919 (9th Cir. 1989)........4

*Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548 (9th Cir. 1986) ........................3, 5

*Westlands Water Dist. v. United States*, 100 F.3d 94 (9th Cir. 1996)...................3, 4

### Rules

*Fed. Rule Civ. P. 41(a)(2)* ........................................3

**STREEPY LAW** PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
*Telephone (253) 528-0278*

# I.    MOTION

Plaintiff Faye Irene Guenther, hereafter "Plaintiff", by and through her attorneys of record, file this Motion to Dismiss Without Prejudice, Plaintiff states as follows:

# II.    MATERIAL FACTS

United Food and Commercial Workers Union, Local 3000, United Food and Commercial Workers Union, Local 1439, United Food and Commercial Workers Union, Local 21, and Plaintiff originally filed this action in state court after Defendant Joseph H. Emmons and his consulting company Osprey Field Consulting LLC published and circulated a flyer with false and highly offensive statements about Plaintiff. Dkt #1-2 ("Compl."). The Complaint alleged defamation and false light. Compl. ¶¶ 4.1-5.2. Defendants have asserted no counter claims. Dkt #26.

Defendants removed the case from state court based on diversity jurisdiction on November 9, 2022. Dkt #1. Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt #9. The Court denied the motion to dismiss the Plaintiff's causes of action but dismissed the labor organizations as parties. Dkt #21.

Plaintiff sought discovery to obtain evidence supporting her claims, to determine the identity of other potential defendants, to determine whether dismissed plaintiffs should be brought back into the suit, and whether there were any additional publications of the flyer causing unknown harm to Plaintiff. Dkt #28 at 5-7 (Joint Status Report and Discovery Plan). Through discovery, Defendants acknowledged participating in distributing the flyer to five to seven grocery stores in Spokane.

PLAINTIFF'S 41(a)(2) MOTION TO DISMISS
Case No. 2:22-cv-00272-TOR

1

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
Telephone (253) 528-0278

McGuinness Decl. Exh. A ("Emmons Depo."), at p. 83 ln-18 – p. 84 ln. 13. Plaintiff learned the identities of non-parties involved in the creation and distribution of the offensive flyer. McGuinness Decl. Exh. B ("Selvaggio Depo.") 91-99 (discussing creation and mailing of flyer), 113-117 (discussing in-person distribution of flyer). United Food and Commercial Workers Union, Local 555's ("Local 555") contract political director identified Daniel Clay, President of Local 555, as ordering the creation of the defamatory flyer. Selvaggio Depo., p. 75 lns. 17-19,  p. 97 lns. 8-10. Selvaggio confirmed that Local 555, Clay, and Esai Alday were responsible for hiring him and Defendants to create and anonymously distribute the flyer. Selvaggio Depo. at 116-117.

Plaintiff has determined that the goals of the litigation have been substantially accomplished. Given the absence of additional damages being identified in discovery, the ongoing costs of litigation, and delays associated with deposing Clay, Plaintiff attempted to end this litigation by entering into a stipulated dismissal with Defendants. However, Defendants declined to enter into such a stipulation with Plaintiff and requested that its position be communicated to the Court. After the parties conferred, Plaintiff asked Defendants for their position on this motion to dismiss without prejudice and Defendants indicated opposition to it.

## III.   LEGAL AUTHORITY

### A. Federal Rule of Civil Procedure 41(a)(2) allows the court to grant voluntary dismissal on terms it considers proper.

Federal Rule of Civil Procedure 41(a)(2) allows a plaintiff to voluntarily dismiss an action. Under Rule 41(a)(2), after a defendant has served either an answer or motion for summary judgment, a plaintiff may only dismiss an action or any

PLAINTIFF'S 41(a)(2) MOTION TO DISMISS
Case No. 2:22-cv-00272-TOR

2

claims with an order of the court, on terms the court considers proper. Thus, 41(a)(2) itself provides that Plaintiff's claims can be dismissed on terms that this Court considers proper. *Fed. Rule Civ. P. 41(a)(2)*.

The application of Rule 41(a)(2) in cases where a plaintiff requests dismissal *without prejudice* was recently discussed in depth by the Ninth Circuit. *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268 (9th Cir. 2023). Cases requesting dismissal without prejudice should include consideration of whether the Defendants would suffer plain legal prejudice due to the possibility of relitigation of claims.

**B. Courts do not award costs and fees when claims are voluntarily dismissed without prejudice under Rule 41(a)(2) absent a showing of plain legal prejudice.**

The trial court should determine if dismissal under 41(a)(2) causes "plain legal prejudice" to the defendants where a plaintiff seeks dismissal without prejudice. If plain legal prejudice would result as a condition of the dismissal the court has discretion to deny the motion or condition dismissal to protect the defendants from prejudice. See e.g., *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994)("[T]he court must consider whether defendant will suffer some plain legal prejudice…"); *Resorts Int'l, Inc. v. Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995). Legal prejudice is defined as "prejudice to some legal interest, some legal claim, some legal argument." *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996); see also *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 555-556 (9th Cir. 1986) (discussing "legal prejudice") abrogated on other grounds in *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990)(en banc). Prejudice that is practical, such as

PLAINTIFF'S 41(a)(2) MOTION TO DISMISS
Case No. 2:22-cv-00272-TOR

3

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
*Telephone* (253) 528-0278

1  paying costs or expenses, producing documents, or producing witnesses, does not
2  amount to legal prejudice. *Le Compte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir.
3  1976). The cost and fees associated with defending the claims do not constitute legal
4  prejudice. *Hyde & Drath*, 24 F.3d at 1169 ("The inconvenience of defending another
5  lawsuit or the fact that the defendant has already begun trial preparations does not
6  constitute prejudice.").

7       Where legal prejudice to the defendant exists, the court can deny the motion
8  to dismiss or condition the dismissal to protect the interests of the defendant. Courts
9  may condition dismissing "without prejudice upon the payment of appropriate costs
10 and attorney fees. Imposition of costs and fees as a condition for dismissing without
11 prejudice is not mandatory however." *Westlands Water Dist.*, 100 F.3d at 97
12 (internal citations omitted) relying upon *Stevedoring Servs. of Am. v. Armilla Intn'l
13 B.V.*, 889 F.2d 919, 921 (9th Cir. 1989). Such cases "stand as exceptions to the rule;
14 typically, the expense incurred in defending against a lawsuit does not amount to
15 legal prejudice." *Westlands Water Dist.*, 100 F.3d at 97; see also *Smith v. Lenches*,
16 263 F.3d 972, 976 (9th Cir. 2001); *Helio, LLC v. Palm, Inc.*, 2007 BL 239333, 2007
17 WL 1063507 at *2 (N.D. Cal. Apr. 9, 2007) ("Legal prejudice is not constituted by
18 the expense incurred in defending a lawsuit"). In the event a "district court decides
19 it should condition dismissal on the payment of costs and attorney fees, the
20 defendants should only be awarded attorney fees for work which cannot be used in
21 any future litigation of these claims." *Id.* (citing *Koch v. Hankins*, 8 F.3d 650, 652
22 (9th Cir. 1993); *Davis v. USX Corp.*, 819 F.2d 1270, 1276 (4th Cir. 1987)).

23

PLAINTIFF'S 41(a)(2) MOTION TO DISMISS
4  Case No. 2:22-cv-00272-TOR

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
*Telephone* (253) 528-0278

### C. In the unlikely event a court places conditions on the dismissal, a plaintiff is given a reasonable period to withdraw the motion to dismiss.

In the event the Court places conditions on the dismissal, the Ninth Circuit has "held that [Rule 41(a)(2)] effectively provides the plaintiff with 'a reasonable period of time within which [either] to refuse the conditional voluntary dismissal by withdrawing [the] motion for dismissal or to accept the dismissal despite the imposition of conditions.'" *Beard v. Sheet Metal Workers Union, Loc. 150*, 908 F.2d 474, 476 (9th Cir. 1990) (quoting *Unioil, Inc.*, 898 F.2d at 554 (quoting *Lau v. Glendora Unified School Dist.,* 792 F.2d 929, 931 (9th Cir. 1986))).

## IV.   ARGUMENT

### A. Plaintiff's Motion to Dismiss Without Prejudice Should be Granted Because No Exceptional Circumstances are Present in this Case that Result in Plain Legal Prejudice to the Defendants.

The Plaintiff has substantially accomplished the goals of the litigation by identifying the parties responsible for the publication of the flyer and to the extent possible establishing the scope of the publications made by Defendants and their co-conspirators.

The Plaintiff demonstrated due diligence in her pursuit of a voluntary dismissal. The discovery process, which was embarked upon in good faith, sought to illuminate the origins, distribution, and impact of the flyer in question. When presented with an opportunity to resolve the matter without litigation, the Defendants declined, thereby necessitating depositions to ascertain the breadth of their involvement. Defendant Emmons acknowledged the Plaintiff's proactive stance and offer to resolve the matter prior to the commencement of litigation. Emmons Depo., at p. 26 lns. 8-21. Despite this earnest approach, the escalating costs of discovery-

PLAINTIFF'S 41(a)(2) MOTION TO DISMISS
Case No. 2:22-cv-00272-TOR

5

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
*Telephone* (253) 528-0278

1  particularly with the approaching deadline-pose a disproportionate burden relative

2  to the benefits of information yet to be uncovered.

3  The motion for voluntary dismissal is, itself, a pragmatic reassessment of the

4  value of continuing litigation given the costs involved and the actions taken by the

5  International Union to mitigate damage to the Plaintiff. The Plaintiff's rationale for

6  seeking dismissal is anchored in a logical assessment of the case's trajectory. Having

7  achieved the goals of the litigation, the financial burden that continued litigation

8  imposes cannot be justified in light of the limited scope of damages uncovered. This

9  cost-benefit analysis forms a sound and adequate bases for the Plaintiff's request for

10  voluntary dismissal under Rule 41(a)(2).

11  Additionally, the Defendants stand to suffer no harm from the dismissal as

12  they filed no counterclaims and, if this motion is granted, have no fear of prejudice

13  due to relitigation of claims as the discovery obtained to date can be used in any

14  subsequent litigation. The lack of any substantive ruling against the Plaintiff and the

15  motion's timing well before trial support dismissal as there would not be undue

16  prejudice.

17  Defendant Emmons could have avoided this litigation altogether by accepting

18  Plaintiff's offer to forego litigation in exchange for information regarding his

19  involvement in distributing the flyer and his knowledge of other persons or

20  organizations involved in creating it. The Plaintiff was compelled to file and pursue

21  these claims to unravel a conspiracy between the Defendants, Selvaggio, Clay, and

22  Alday. Having achieved that objective and confirmed the limited scope of Plaintiff's

23

PLAINTIFF'S 41(a)(2) MOTION TO DISMISS

6  Case No. 2:22-cv-00272-TOR

damages, Plaintiff seeks to terminate the litigation to avoid additional costs and delay, even though it means non-parties Clay and Alday will avoid being deposed.

## V.  CONCLUSION

For the above reasons, Plaintiff respectfully moves this Honorable Court to grant a voluntary dismissal of Plaintiff's claims against Defendants without prejudice and without conditions under Federal Rule of Civil Procedure 41(a)(2).

DATED this 3rd day of April 2024.

s/*James G. McGuinness*
James G. McGuinness, WSBA No.
Aaron Streepy, WSBA No. 38149
**STREEPY LAW, PLLC**
4218 227th Ave Ct E
Buckley, WA 98321
Tel: (253) 528-0277
jim@mcguinnessstreepy.com
aaron@mcguinnessstreepy.com
***Counsel for Plaintiff***

PLAINTIFF'S 41(a)(2) MOTION TO DISMISS
7  Case No. 2:22-cv-00272-TOR

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
*Telephone (253) 528-0278*

I hereby certify that on April 3, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties who have appeared in the above case.

    Dated: April 3, 2024.

                   *s/Aaron Streepy*
                 Aaron Streepy, WSBA No. 38149
                 4218 227th Ave Ct. East
                 Buckley, WA 98321
                 Telephone: (253) 528-0278
                 Email: aaron@mcguinnessstreepy.com

                 *Counsel for Plaintiffs*

PLAINTIFF'S 41(a)(2) MOTION TO DISMISS
Case No. 2:22-cv-00272-TOR

# EXHIBIT 13

**Archived:** Monday, May 6, 2024 4:55:59 PM
**From:** Bridgette Fortenberry
**Mail received time:** Thu, 11 Apr 2024 11:10:12
**Sent:** Thu, 11 Apr 2024 18:10:02
**To:** DiLorenzo, John  Jim McGuinness
**Cc:** Fairchild, Sara  Kumar, Ambika  Himes, Meagan  Aaron Streepy
**Subject:** RE: Guenther v. Emmons, No. 2:22-cv-00272-TOR
**Importance:** High
**Sensitivity:** None

---

**[EXTERNAL]**

Counsel,

Judge Rice will hear this matter by way of an informal telephonic discovery conference on
**Wednesday, April 17, 2024, at 8:30 am**.  I will be docketing a notice in ECF setting the hearing
which will include the call-in instructions for the hearing.  Please keep in mind that this is an
informal process so no written order will be issued, but you can order a transcript of the hearing
directly from the court reporter if necessary.

Best regards,
Bridgette Fortenberry
Paralegal/Courtroom Deputy to the
Hon. Thomas O. Rice
Eastern District of WA

---

**From:** DiLorenzo, John <johndilorenzo@dwt.com>
**Sent:** Monday, April 8, 2024 3:11 PM
**To:** Jim McGuinness <jim@mcguinnessstreepy.com>; Rice Orders <RiceOrders@waed.uscourts.gov>; Bridgette Fortenberry
<Bridgette_Fortenberry@waed.uscourts.gov>
**Cc:** Fairchild, Sara <SaraFairchild@dwt.com>; Kumar, Ambika <AmbikaKumar@dwt.com>; Himes, Meagan
<MeaganHimes@dwt.com>; Aaron Streepy <Aaron@mcguinnessstreepy.com>; DiLorenzo, John <johndilorenzo@dwt.com>
**Subject:** RE: Guenther v. Emmons, No. 2:22-cv-00272-TOR

**CAUTION - EXTERNAL:**

Good afternoon your honor.

Defendants oppose Plaintiff's request for a stay of discovery pending
resolution of her motion to voluntarily dismiss, and respectfully request the
Court compel Plaintiff to produce documents Defendants requested over six
months ago.

We do not believe Plaintiff has participated in discovery in good faith. Defendants served Plaintiff with discovery requests on October 5, 2023, and Plaintiff agreed to produce responsive documents. Yet, Plaintiff has failed to produce <u>any</u> documents in response to 17 of 18 RFPs. The 12 documents Plaintiff has produced (all supposedly responsive to a single RFP) have no bearing on her claims. Defendants' RFPs include a request for all documents referenced in Plaintiff's July 2023 initial disclosure, which included at least 27 specific categories of documents "in her possession, custody, and/or control" that she "may use to support her claims." Plaintiff has not produced these. Shortly after Defendants communicated to Plaintiff that they would need to seek court intervention if documents were not produced, Plaintiff moved to voluntarily dismiss, stating two depositions she took in September and October 2023 "accomplished the goals of the litigation." Dkt. 39 at 2, 5; *see also* Dkts. 40-1 & 40-2,  --- almost six months after these "goals" were ostensibly accomplished.

Plaintiff's motion to voluntarily dismiss does not provide grounds for staying discovery. Defendants need the outstanding discovery to determine whether Plaintiff brought this action in bad faith or for an improper purpose—an issue relevant to Plaintiff's motion.

Moreover, the Court's ruling on Plaintiff's motion will not necessarily end the litigation. Plaintiff indicates in the motion that she may "withdraw the motion to dismiss" if "the Court places conditions on the dismissal." Dkt. 39 at 5. Defendants intend to formally request conditions on the dismissal. The plaintiff's motion is noted for May 30, 2024, and the discovery deadline is June 26, 2024. Dkt. 34 at 3. If discovery were stayed pending resolution of Plaintiff's motion, as Plaintiff requests, Defendants would not have time to complete discovery before the current deadline—particularly given Plaintiff has produced almost no documents to date, and due to this delay, Defendants have not yet taken certain depositions.

Defendants also request the Court deny Plaintiff's request to use her motion to voluntarily dismiss as a bar to taking Plaintiff's counsel Aaron Streepy's deposition. Defendants' counsel gave Plaintiff notice of their intent to take Mr. Streepy's deposition on March 12, 2024, before Plaintiff informed Defendants that she intended to move to voluntarily dismiss her claims. The written notice provided on April 4, 2024, was a follow-up to that notice.

Defendants seek Mr. Streepy's testimony because he possesses facts that Defendants cannot obtain from another source and that are crucial to Defendants' preparation of their defenses. *See Busey v. Richland Sch. Dist.*, 2014 WL 1404580, at *1-2 (E.D. Wash. Apr. 10, 2014) (Rice, J.) (quoting *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986)). Plaintiff claims that Defendants defamed her by stating she helped UFCW Local 1439 President Eric Renner hide from sexual harassment claims. Defendants maintain this statement is true. According to the last round of staff members who were deposed on March 11 and 12 pursuant to your most recent Order, Mr. Streepy, who represented Plaintiff and the union of which she was president at the time, was the individual who conducted an investigation into union staff members' claims of Renner's sexual harassment. ███████████

Within a few weeks of the NDAs, Plaintiff's union and Local 1439 formally initiated a merger – a merger which Renner had theretofore been opposed to and, which Defendants understand Mr. Streepy helped facilitate. *See* Dkt. 35 at 2-4 (detailing this series of events). Documents and testimony provided by three staff members under the Court's February 14, 2024, Order further suggest that Mr. Streepy and Plaintiff worked together to further the merger and creation of a new entity which continued Renner's employment as an officer ███████████

Defendants wish to depose Mr. Streepy regarding his investigation, Plaintiff's

involvement in the investigation, an explanation of some of the notes he has supplied relating to his investigation, and how it was that Renner was provided a senior officer's position at the merged entity at higher pay, ███████████████████████████████████████████████ To Defendants' knowledge, Mr. Streepy is the only source of information regarding his investigation, and Defendants need this information to prove the allegedly defamatory statement is true.

We are available for a telephonic conference on Tuesday 4/9 from 9:00am until 11:00am, Wednesday 4/10 from 9:00am until 11:00am and from 2:30pm until 5:00pm, and Thursday 4/11 from noon until 5:00pm.  Defendants are also happy to file a formal motion expanding upon the issues outlined in this email.

Thank you for the opportunity to comment on this matter.


**John DiLorenzo**
**Partner,** *Davis Wright Tremaine LLP*
Member of Oregon, New York and District of Columbia bars

**P** 503.778.5216  **C** 503.704.5162  **E** johndilorenzo@dwt.com
**A** 560 SW 10th Avenue, Suite 700, Portland, OR 97205
DWT.COM

---

**From:** DiLorenzo, John
**Sent:** Friday, April 5, 2024 3:51 PM
**To:** 'Jim McGuinness' <jim@mcguinnessstreepy.com>; RiceOrders@waed.uscourts.gov; Bridgette_Fortenberry@waed.uscourts.gov
**Cc:** Fairchild, Sara <SaraFairchild@dwt.com>; Kumar, Ambika <AmbikaKumar@dwt.com>; Himes, Meagan <MeaganHimes@dwt.com>; Aaron Streepy <Aaron@mcguinnessstreepy.com>; DiLorenzo, John <johndilorenzo@dwt.com>
**Subject:** RE: Guenther v. Emmons, No. 2:22-cv-00272-TOR

Good afternoon your Honor,
I am presently on the east coast but will be back in my Portland office on Monday.  We plan on responding to Mr. McGuinness' email to you then.  Thank you for your consideration.


**John DiLorenzo**

**Partner,** Davis Wright Tremaine LLP
Member of Oregon, New York and District of Columbia bars

**P** 503.778.5216  **C** 503.704.5162  **E** johndilorenzo@dwt.com
**A** 560 SW 10th Avenue, Suite 700, Portland, OR 97205
**DWT.COM**

---

**From:** Jim McGuinness <jim@mcguinnessstreepy.com>
**Sent:** Friday, April 5, 2024 1:12 PM
**To:** RiceOrders@waed.uscourts.gov; Bridgette_Fortenberry@waed.uscourts.gov
**Cc:** Fairchild, Sara <SaraFairchild@dwt.com>; DiLorenzo, John <johndilorenzo@dwt.com>; Kumar, Ambika <AmbikaKumar@dwt.com>; Himes, Meagan <MeaganHimes@dwt.com>; Aaron Streepy <Aaron@mcguinnessstreepy.com>
**Subject:** Guenther v. Emmons, No. 2:22-cv-00272-TOR

---

[EXTERNAL]

---

Dear Judge Rice:

I represent the Plaintiff in the above-entitled matter. Consistent with your instructions to the parties during a telephonic scheduling conference in August 2023, and your subsequent order dated August 30, 2023, you prefer the parties contact chambers to schedule a telephonic conference to obtain an expedited ruling on a discovery dispute. The plaintiff has advised Defendants' counsel that she intends to bring such a dispute to the court's attention today through this email.

Plaintiff filed a motion for dismissal of this action without prejudice on 4-2-2024.  Plaintiff afforded Defendants advance notice of her intent to file the motion and her position that discovery should be stayed pending the court's resolution of it.   Despite Plaintiff's motion to voluntarily dismiss her case, Defendants insist that she produce documents in response to discovery requests.  Yesterday, Defendants even notified Plaintiff they intend to serve a subpoena on and depose one of Plaintiff's attorneys, Aaron Streepy.

Plaintiff seeks an expedited ruling from the court staying all discovery in this matter until the court rules on the Plaintiff's pending motion.  Requiring Plaintiff and her counsel to submit to discovery when Plaintiff has formally moved the court for an order dismissing her case serves no legitimate purpose and exposes all parties to unnecessary fees and other expenses.

If necessary, the Plaintiff's counsel is available for a telephonic conference on April 10 (except between 1-2p); and April 11 or 12.  Thank you for your consideration.

Sincerely,

James G. McGuinness

Streepy Law, PLLC

406-300-2072 (cell)

---

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# EXHIBIT 14

1

1              UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF WASHINGTON
2

FAYE IRENE GUENTHER,              )  Case No. 2:22-cv-00272-TOR
3                    Plaintiff,   )
                                 )  April 17, 2024
4   vs.                           )  Telephonic Hearing
                                 )
5                                 )  Discovery Dispute Hearing
    JOSEPH H. EMMONS, et al.,     )
6   _____Defendants.   )  Pages 1 - 11

7           BEFORE THE HONORABLE THOMAS O. RICE
           UNITED STATES DISTRICT COURT JUDGE
8

9   APPEARANCES:

10  For the Plaintiff:          JAMES G. McGUINNESS
                               AARON M. STREEPY
11                             Attorney at Law
                               4218 227th Ave. Ct. East
12                             Buckley, Washington 98321

13  For the Defendants:         JOHN A. DiLORENZO, JR.
                               Attorney at Law
14                             560 SW 10th Ave., Ste. 700
                               Portland, Oregon 97205

15

16

17

18  Official Court Reporter:    Allison R. Anderson, RMR, CRR, CCR
                               United States District Courthouse
19                             P.O. Box 700
                               Spokane, Washington 99210
20                             (509) 458-3465

21

22

23

24
    Proceedings reported by mechanical stenography; transcript
25  produced by computer-aided transcription.

1      (Court convened on April 17, 2024, at 8:30 a.m.)

2      THE COURTROOM DEPUTY:  The matter now before the Court

3  is *Faye Irene Guenther versus Joseph E. Emmons, et al.*, Case No.

4  2:22-cv-0272-TOR.  This is the time set for the telephonic

5  discovery dispute hearing.

6      Counsel, please state your appearances for the Court and

7  record, beginning with the plaintiff.

8      MR. McGUINNESS:  James McGuinness for the plaintiff.

9      MR. STREEPY:  Aaron Streepy for the plaintiffs.

10      MR. DILORENZO:  John DiLorenzo for the defendants.

11      THE COURT:  Good morning, Counsel.  This is Judge

12  Rice.  I've reviewed the submissions the parties have made.  I

13  just had a couple of questions.

14      Mr. McGuinness, why do you want the case dismissed without

15  prejudice?

16      MR. McGUINNESS:  Your Honor, in terms of the motion

17  for voluntary dismissal, I think the parties have had a number

18  of discussions about potential resolutions to the litigation.

19  This is part of, I think, why we're here today, because it

20  blends into the discovery component.  We were unable to get to a

21  mutual agreement on how to end the litigation so Plaintiff made

22  the motion to dismiss without prejudice in part based on some of

23  the assertions that the defendants have made regarding their

24  intentions to seek remedies.

25      THE COURT:  All right.  Mr. DiLorenzo, I'll hear from

1  you.  I've read your submission, but my question to you is you

2  intend to take the deposition of Plaintiff's attorney; but as I

3  see it, you'll take that deposition and he'll invoke the

4  attorney-client privilege or work product privilege, and you're

5  not going to get anywhere in a deposition of Mr. Streepy.

6          MR. DILORENZO:  Well, Your Honor, if I may for a

7  moment, Mr. Streepy wore several hats.  We do not intend to ask

8  him any questions that would invade upon his attorney-client

9  privilege, but he was tasked by his client to conduct an

10  investigation and to interview the complainants, several of

11  whose depositions you ordered to be taken and which we took on

12  March 11th and 12th.  We want to ask him questions about the

13  information that he gleaned from third-party witnesses and the

14  findings of fact that he made in his capacity as the party who

15  was tasked with conducting an investigation.

16      We've made it clear to him that we are not going to ask him

17  for any of his conclusions of law.  We're not going to ask him

18  for any of his opinions or anything that he shared with his

19  clients that are not totally fact-based.  But these were

20  basically witness interviews that he conducted, and we feel that

21  they're fair game, and they also go directly to whether or not

22  the allegations in the flyers are truthful, which is our

23  defense.  You know, we've acknowledged that our clients

24  distributed them, but we believe that everything that was said

25  in those flyers was absolutely true.

1      And if I may for a second, we opposed the motion to dismiss

2  without prejudice, and that, by the way, is scheduled for

3  May 30th.  We also in Docket 41 had a stipulated briefing

4  schedule that we submitted to the Court, and we're awaiting your

5  approval of that, but we oppose it for a couple reasons.

6      First of all, the plaintiff has invoked RCW 4.84.250, which

7  will provide for attorney's fees to whomever prevails in this

8  scenario, at least we believe that that's the outcome.  We would

9  like to have an opportunity to argue that.

10      No. 2, we believe that the reason the plaintiff wishes to

11  dismiss without prejudice is to evade the discovery obligations.

12  They've owed us documents for seven months, which they agreed on

13  March 12th to provide and which we have not yet received.  We

14  have Mr. Streepy's deposition scheduled for April 23rd, and he's

15  accepted a subpoena, and he has outside counsel for that.  We

16  still need to take Ms. Guenther's deposition and Mr. Renner's

17  deposition.

18      The last round of depositions on March 11th and 12th made

19  it clear that ███████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████████

21  ███████████████████████████████████████████████████████████████

22  ███████████████████████████████████████████████████████████████

23  ████████████████████  It appears that Mr. Renner continues to this

24  day in his highly-paid position. ██████████████████████████████

25  ██████████████████████████████████████████████  This --

1  Mr. Streepy's approach, we believe, was under Ms. Guenther's

2  direction, and that validates the statement in the flyer that

3  Ms. Guenther helped Mr. Renner hide from sexual harassment

4  charges and obtain continued employment.

5       The discovery, I think, would also be relevant to our

6  request of the Court ultimately to obtain fees for all of the

7  trouble we've been through.  So for those reasons -- oh, one

8  other reason.  The plaintiff has made it clear that she wants to

9  reserve her right to withdraw her motion if after that hearing

10 on May 30th she doesn't like the conditions that the Court might

11 impose, in which case we would really be behind the eight ball

12 because we've got a discovery deadline of June 26th.

13      So for all those reasons, I don't believe discovery should

14 be stayed.  We should wait until the Court has an opportunity to

15 read our briefs and digest our request for conditions to be

16 imposed on the dismissal, and we should be able to proceed with

17 discovery just in case they exercise the right that they're

18 reserving, which is to withdraw the motion if they don't like

19 your conditions.

20      THE COURT:  All right.  Thank you.  This is Judge

21 Rice.

22      Mr. McGuinness, I'll hear from you.

23      MR. McGUINNESS:  Thank you, Your Honor.  James

24 McGuinness for the plaintiff.  So as Mr. DiLorenzo's comments

25 show with respect to the underlying facts of the investigation

1  that Mr. Streepy conducted, there are other witnesses available

2  to them to get those facts.  They've deposed the complainants,

3  the people who made the complaints, and they had a full

4  opportunity to go over the facts with them, probably more so in

5  a deposition than even Mr. Streepy.

6       With respect to Mr. Renner and his employment with the

7  merged Local, the terms of that employment, Mr. Renner is

8  available and has been available to defendants to be deposed.

9  It's simply unnecessary to bring Mr. Streepy into the mix for a

10 deposition when there are others available to be deposed and

11 when inevitably the deposition is going to involve a number of

12 objections, including privilege objections.

13      With respect to Counsel's comment that Plaintiff's trying

14 to evade discovery, Your Honor, it's worth noting that both

15 parties have outstanding discovery requests, not just the

16 defendant.  When we met on March 12th, we made a renewed request

17 for what I understand is a common interest agreement that the

18 defendants have with a third party.  We raised that because we

19 had received reports that documents that are subject to a

20 protective order issued by the Court will be exchanged and

21 shared with third parties, and so we attempted again to get a

22 copy of the common interest agreement to allay those concerns,

23 and we still don't have it.  And so from our perspective, that's

24 another reason to stay discovery in addition to the fact that

25 neither side has made a motion to compel discovery that's not

1  subject to an existing court order.

2       And lastly, Your Honor, even after we filed the motion for

3  voluntary dismissal, I made sure that some residual documents

4  that were responsive to the existing court order and were

5  discussed on March 12th were produced to the defendant,

6  including Mr. Streepy's investigative notes.  And so with

7  respect to the status of discovery, I think it's worth noting

8  that at this point there's outstanding discovery requests not

9  subject to a motion to compel or an existing court order that

10 we're really focusing on now.

11            MR. DILORENZO:  Your Honor, this is DiLorenzo.  With

12 respect to the common interest agreement, I have my notes from

13 our March 12th conference, and my apologies, but that wasn't

14 even listed on my notes.  If they want the common interest

15 agreement, they can have it tomorrow.  I'm more than happy to

16 furnish it to them.  I apologize that I didn't get it to them

17 earlier, but it wasn't on my notes from our March 12th

18 conference.

19      What is on my notes are the documents that they've owed us

20 for seven months and our opportunity to finish up on our

21 discovery, which consists of three more witnesses.  We've

22 already deposed quite a few people.  And we'd like to complete

23 that just in case they decide that they don't like your

24 conditions, and we'd like to be able to comply with your

25 discovery deadline.

1    And then, of course, they have invoked the RCW provision

2    that will allow us to argue over fees at the end of this, too.

3    And, you know, had they moved to dismiss with prejudice, that

4    would've been the equivalent to a defense verdict, and, of

5    course, we would've been happy with that because that would've

6    put us in the same position as if we had won at the end of a

7    trial, but they don't want to do that.  They want to be able to

8    renew this at some point, and we would like to -- we think it's

9    equitable to be able to complete our discovery or at least not

10   have a stay on discovery, which is what they're requesting with

11   this phone call.

12        THE COURT:  This is Judge Rice.  Mr. McGuinness, what

13   do you say about the fees that the defense will be seeking and

14   that they're entitled to discovery for?

15        MR. McGUINNESS:  So, Your Honor, James McGuinness

16   again.  I mean, we feel very strongly that the defendants -- the

17   defendants don't have a viable claim for fees in that the

18   discovery that they're seeking to sort of generate a basis for

19   fees is entirely speculative.  It's speculative that Plaintiff

20   will produce something that will show the action was taken for

21   some improper purpose.  It speculates that Mr. Streepy is going

22   to say something that, you know, I guess involved a conversation

23   with the plaintiff that somehow would support a claim for fees.

24   And we don't agree with the statutory analysis with respect to

25   fees, and we've been clear in our exchange why that's the case.

1   I mean, both Mr. DiLorenzo and I have shared why we, you know,

2   believe fees -- why he believes fees are appropriate and why we

3   strongly believe that they're not and that there can't be

4   discovery that will support those fees.  We think that's just a

5   fishing expedition to try to generate something that isn't

6   there.

7            MR. DILORENZO:  Well, Judge, this is not a fishing

8   expedition.  The plaintiffs strategically invoked RCW 4.84.250,

9   and they accompanied it with an offer.  We did not accept the

10  offer.  The statute is pretty clear that if we get a defense

11  verdict, we should be entitled under RCW 4.84.250 to reasonable

12  attorney's fees to be determined by the Court.  They're the ones

13  who invoked it.  They did it strategically.  They may now have

14  buyer's remorse about that, but it happened, and we are -- you

15  know, some of our discovery will go to the circumstances under

16  which that statute was invoked.

17           THE COURT:  All right.

18           MR. DILORENZO:  I think it's fair game.

19           THE COURT:  All right.  Counsel, this teleconference

20  was to get an expedited ruling on the plaintiff's request that

21  discovery not continue pending resolution of the order to

22  dismiss.  It is the Court's decision that discovery can continue

23  and that Mr. Streepy's deposition can be taken because of the

24  statute involved.  Plaintiffs don't seek to dismiss with

25  prejudice so the defense has a legitimate interest in

1   discovering evidence as to whether there is a case or not.  That

2   will be the Court's ruling.

3        Mr. McGuinness, anything further the Court need rule on?

4        MR. McGUINNESS:  Your Honor, no.  Thank you for the

5   Court's consideration of our request.

6        THE COURT:  Mr. DiLorenzo, anything further the Court

7   need rule on?

8        MR. DILORENZO:  No, Your Honor, other than the

9   stipulated motion that is still before you that is Docket

10  No. 41.  That's our agreed-upon briefing schedule for the motion

11  to dismiss.  And if you could consider that and let us know what

12  our briefing schedule is, we would appreciate it.

13       THE COURT:  I'll enter a text order giving you a

14  briefing schedule.  That concludes today's hearing.

15            (Court adjourned on April 17, 2024, at 8:46 a.m.)

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3      I, ALLISON R. ANDERSON, do hereby certify:

4      That I am an Official Court Reporter for the United States

5  District Court for the Eastern District of Washington in

6  Spokane, Washington;

7      That the foregoing proceedings were taken on the date and

8  place as shown on the first page hereto; and

9      That the foregoing proceedings are a full, true, and

10 accurate transcription of the requested proceedings, duly

11 transcribed by me or under my direction.

12     I do further certify that I am not a relative of, employee

13 of, or counsel for any of said parties, or otherwise interested

14 in the event of said proceedings;

15     DATED this 25th day of April, 2024.

16

17     _____

18     ALLISON R. ANDERSON, RMR, CRR
       Washington CCR No. 2006
19     Official Court Reporter
       Spokane, Washington

20

21

22

23

24

25

# EXHIBIT 15

| | |
|---|---|
| **From:** | Dmitri Iglitzin <iglitzin@workerlaw.com> |
| **Sent:** | Tuesday, April 30, 2024 5:23 PM |
| **To:** | DiLorenzo, John |
| **Cc:** | Fairchild, Sara |
| **Subject:** | RE: Guenther v. Emmons, No. 2:22-cv-00272-TOR |

[EXTERNAL]

You may not. We do not believe that the ED Wash. court is the correct place to adjudicate a motion to quash brought by someone who resides in WD Wash., and even if we did, we are uncomfortable having the same judge who is tasked with adjudicating the dispute between the parties in *Guenther v. Emmons* adjudicate the relative rights of one set of parties to that dispute (the defendants) and *counsel* for the other party.

Regards,

Dmitri Iglitzin
Counsel for Mr. Streepy



**DMITRI IGLITZIN** | *Partner* (he/him)
**DIR:** 206.257.6003 | **FAX:** 206.257.6038
18 West Mercer Street, Suite 400, Seattle, WA 98119

This communication is intended for a specific recipient and may be protected by the attorney-client and work-product privilege. If you receive this message in error, please permanently delete it and notify the sender.

**From:** DiLorenzo, John <johndilorenzo@dwt.com>
**Sent:** Tuesday, April 30, 2024 3:37 PM
**To:** Dmitri Iglitzin <iglitzin@workerlaw.com>
**Cc:** Fairchild, Sara <SaraFairchild@dwt.com>; DiLorenzo, John <johndilorenzo@dwt.com>
**Subject:** FW: Guenther v. Emmons, No. 2:22-cv-00272-TOR

Hello Dmitri,
FRCP 45(f) allows the Western District to transfer the motion to quash to Judge Rice if you consent. I believe that would be the most efficient way to handle our response and consume the least amount of your and my time. May I represent to the court in a joint motion that you consent to a transfer?

Thanks.

**John DiLorenzo**
**Partner,** Davis Wright Tremaine LLP
Member of Oregon, New York and District of Columbia bars

**P** 503.778.5216  **C** 503.704.5162  **E** johndilorenzo@dwt.com
**A** 560 SW 10th Avenue, Suite 700, Portland, OR 97205
**DWT.COM**

---

**From:** DiLorenzo, John <johndilorenzo@dwt.com>
**Sent:** Tuesday, April 30, 2024 3:20 PM
**To:** Bridgette_Fortenberry@waed.uscourts.gov; RiceOrders@waed.uscourts.gov
**Cc:** Jim McGuinness <jim@mcguinnessstreepy.com>; Stuckey, Aaron <aaronstuckey@dwt.com>; Dmitri Iglitzin <iglitzin@workerlaw.com>; Fairchild, Sara <SaraFairchild@dwt.com>; Kumar, Ambika <AmbikaKumar@dwt.com>; Himes, Meagan <MeaganHimes@dwt.com>; DiLorenzo, John <johndilorenzo@dwt.com>
**Subject:** FW: Guenther v. Emmons, No. 2:22-cv-00272-TOR

## Hello Ms. Fortenberry,
## My apologies for leaving you off this communication with Judge Rice.  Please see below.  Thank you.

**John DiLorenzo**
**Partner,** Davis Wright Tremaine LLP
Member of Oregon, New York and District of Columbia bars

**P** 503.778.5216  **C** 503.704.5162  **E** johndilorenzo@dwt.com
**A** 560 SW 10th Avenue, Suite 700, Portland, OR 97205
**DWT.COM**

---

**From:** DiLorenzo, John <johndilorenzo@dwt.com>
**Sent:** Tuesday, April 30, 2024 3:04 PM
**To:** RiceOrders@waed.uscourts.gov
**Cc:** Jim McGuinness <jim@mcguinnessstreepy.com>; Aaron Streepy <Aaron@mcguinnessstreepy.com>; Dmitri Iglitzin <iglitzin@workerlaw.com>; Fairchild, Sara <SaraFairchild@dwt.com>; Himes, Meagan <MeaganHimes@dwt.com>; Kumar, Ambika <AmbikaKumar@dwt.com>; DiLorenzo, John <johndilorenzo@dwt.com>
**Subject:** Guenther v. Emmons, No. 2:22-cv-00272-TOR

Your Honor,

Thank you for your time in holding the telephonic discovery dispute hearing on April 17, 2024, in this case, *Guenther v. Emmons*, No. 2:22-cv-00272-TOR.  I write to inform you of a related discovery matter.

During the April 17 hearing, the parties discussed whether Defendants should be permitted to depose Plaintiff's counsel Aaron Streepy.  Mr. Streepy was present and had an opportunity to raise his objections.  At the end of the hearing, your Honor stated in part:  "It is the Court's decision that discovery can continue and that Mr. Streepy's deposition can be taken because of the statute involved."  I am attaching the full transcript of the hearing to this email.

Two days after that hearing, Mr. Streepy filed in the U.S. District Court for the Western District of Washington a motion to quash the deposition subpoena, which I am also attaching.  Since your honor is familiar with the relevant facts and issues, and has already issued a ruling regarding the deposition, we intend to ask the court in the Western District to transfer the motion to this Court under Federal Rule of Civil Procedure 45(f).

Please let us know if you have any questions or concerns.

Thank you for your time.

Sincerely,



**John DiLorenzo**
**Partner |** Davis Wright Tremaine LLP
Member of Oregon, New York and District of Columbia bars
**P** 503.778.5216  **C** 503.704.5162  **E** johndilorenzo@dwt.com
**A** 560 SW 10th Avenue, Suite 700, Portland, OR 97205

**DWT.COM**   in  𝕏