Dmitri Iglitzin, WSBA No. 17673
Darin M. Dalmat, WSBA No. 51384
Gabe Frumkin, WSBA No. 56984
BARNARD IGLITZIN & LAVITT LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6003
iglitzin@workerlaw.com
dalmat@workerlaw.com
frumkin@workerlaw.com

Aaron Streepy, WSBA 38149
Jim McGuinness, WSBA 23494
Streepy Lemonidis Consulting & Law Group, PLLC
2800 First Avenue, Suite 211
Seattle, WA 98121
Telephone: (253) 528-0278
Fax: (253) 528-0276
aaron@slglc.com
jim@mcguinnessstreepy.com

*Attorneys for Plaintiff Faye Guenther*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
## AT SPOKANE

| | |
|---|---|
| FAYE IRENE GUENTHER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH H. EMMONS, individually, and OSPREY FIELD CONSULTING LLC, a limited liability company,<br><br>Defendants. | No. 2:22-cv-00272-TOR<br><br>**PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**<br><br>NOTE ON MOTION CALENDAR: December 5, 2024, at 9:00 a.m. |

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

## MATERIAL FACTS NOT IN DISPUTE

### BACKGROUND

1.     Faye Guenther (Guenther) grew up in a rural Oregon community.

**Record:** Declaration of Faye I. Guenther (Guenther Decl.), ¶ 3.

2.     Guenther was sexually abused as a child and again as a teenager.

**Record:** Guenther Decl. ¶ 7.

3.     Guenther witnessed a gang rape in college and testified against the perpetrator. The perpetrator was convicted.

**Record:** Guenther Decl. ¶ 7.

4.     These and other experiences led Guenther to become a life-long advocate against sexual abuse and harassment. Throughout Guenther's time at UFCW Local 21, she actively opposed sexual harassment within the union whenever she became aware of it. Her efforts led to at least four people being removed from the union.

**Record:** Guenther Decl. ¶¶ 5–8, 18; Declaration of Joseph (Joe) Mizrahi (Mizrahi Decl.), ¶¶ 38–39.

5.     One example of her advocacy against sexual harassment occurred in September 2019, when she investigated Joe Earleywine—Local 21's Organizing Director at the time—upon receiving reports of harassment. This investigation caused Mr. Earleywine to leave Local 21. He nonetheless secured a position with

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 1
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

the United Food and Commercial Workers (UFCW) International Union (IU or International), where he continued to engage with Local 21 staff, making several women uncomfortable. Guenther then raised the issue with Kate Meckler, the IU Regional Director for Region 7, which covers the Pacific Northwest. Ms. Meckler did not investigate or respond to Guenther's reports. Guenther then escalated the issue to IU President Marc Perrone, resulting in Mr. Earleywine retiring early from the IU.

**Record:** Guenther Decl. ¶¶ 19–22 and Exhibit 1 thereto; Mizrahi Decl. ¶¶ 38–39.

THE RELEVANT UFCW LOCAL UNIONS

      6.     In 2019, Guenther became President of UFCW Local 21.

**Record:** Guenther Decl. ¶ 16.

      7.     In 2019, Local 21 represented approximately 44,000 members, primarily in the grocery, healthcare, and cannabis industries in Seattle and greater Washington.

**Record:** Guenther Decl. ¶¶ 17, 20.

      8.     In 2019, Local 21 was the largest UFCW local union in the United States. Local 3000—Local 21's successor, formed from a merger with Local 1439— is currently the largest UFCW local union in the United States.

**Record:** Guenther Decl. ¶¶ 17, 86.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 2
Case No. 2:22-cv-00272-TOR

9.     Throughout her tenure as Local 21 (and now Local 3000) President, Local 21 has achieved significant accomplishments, including increases in the minimum wage, sick leave, saving a failing pension, building new divisions within the union to better serve members, and renegotiating hundreds of contracts.

**Record:** Guenther Decl. ¶ 15.

10.    Local 367 is a UFCW affiliate in Tacoma and surrounding counties in western and southwestern Washington.

**Record:** Guenther Decl. ¶¶ 20, 28.

11.    UFCW local unions typically enjoy significant autonomy but may be put under trusteeship, in which case the International Union exercises significant control over the trusteed local, including by appointing a trustee who takes over control from the local's elected officers.

**Record:** Guenther Decl. ¶ 33.

12.    UFCW put Local 367 under trusteeship in or around January 2019.

**Record:** Guenther Decl. ¶ 32.

13.    During that trusteeship, the International hired Angel Gonzalez Irazarry to work at Local 367 in a leadership position.

**Record:** Guenther Decl. ¶ 34.

14.    Local 367's trusteeship ended at the end of June 2020.

**Record:** Guenther Decl. ¶ 35.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 3
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
**BARNARD IGLITZIN & LAVITT LLP**

15.    Gonzalez became President of Local 367 in or around July 2020.

**Record:** Guenther Decl. ¶ 35.

16.    Local 555 is a UFCW affiliate in Oregon with approximately 30,000 members.

**Record:** Guenther Decl. ¶¶ 20, 58.

17.    Dan Clay is Local 555's President. He has held that position since August 2008.

**Record:** Guenther Decl. ¶ 58.

18.    Clay is also an International Vice President (IVP) of UFCW and serves on its International Executive Board (IEB)—the International Union's governing body. He had held that position for many years.

**Record:** Guenther Decl. ¶ 60.

**LOCAL 555 PRESIDENT DAN CLAY'S RELATIONSHIP WITH GUENTHER**

19.    Guenther and Clay have known each other since 2008. For many years, they were friends and collaborators within the labor movement.

**Record:** Guenther Decl. ¶¶ 59, 78.

20.    In 2019, Guenther suggested that all local unions in UFCW Regions 7 and 8 should bargain together against Kroger and Albertsons. Clay opposed that approach, apparently worried that he would no longer have control over his members.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 4
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

1  **Record:** Guenther Decl. ¶ 64.

2      21.    On July 19, 2021, Kate Meckler emailed Clay, Gonzalez, Eric Renner

3  (the then-President of Local 1439 in Eastern Washington, with approximately 7,800

4  members at the time), and other local union presidents within Regions 7 and 8

5  regarding an upcoming meeting to discuss coordination for the 2021–2022

6  negotiations in the retail industry. Ms. Meckler invited suggestions for the agenda.

7  **Record:**    Guenther    Decl.    ¶¶ 61,    86;    Guenther    Decl.    Ex.    8    (UFCW-

8  EMMONS_000781–784).

9      22.    Guenther responded on July 20, 2021, with her suggestions.

10  **Record:** Guenther Decl. ¶ 62.

11      23.    Clay replied to that email, omitting Guenther and including Esai Alday

12  (Clay's executive assistant), Gonzalez, and Meckler, saying "Shit We'd better plan

13  for a week…"

14  **Record:** Guenther Decl. ¶ 63; Guenther Decl. Ex. 8 (UFCW-EMMONS_000781–

15  784).

16      24.    On July 21, 2021, Clay responded to Meckler's July 19 email, including

17  all original recipients, explaining that Locals 555 and 368A had agreed to a merger

18  and Local 555 had been in discussions with Local 367 over coordinated bargaining.

19  **Record:** Guenther Decl. ¶ 65; Guenther Decl. Ex. 9 (UFCW-EMMONS_000785–

20  786).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 5
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

25.    At the time, Local 368A was headquartered in Boise, Idaho, and represented approximately 1,100 members in Idaho, eastern Oregon, and western Wyoming. As a result of the merger, Local 555 represented approximately 25,000 members.

**Record:** Guenther Decl. ¶ 66.

26.    Guenther opposed coordinated bargaining between Locals 555 and 367, fearing that doing so would undercut labor standards Local 21 had achieved in Washington for its members.

**Record:** Guenther Decl. ¶¶ 67–70; Guenther Decl. Ex. 10 (UFCW-EMMONS_000801–804).

27.    Clay sent an email on July 28, 2021, describing Guenther's concerns as "delightfully petty." He elaborated that reading her concerns "made [his] night."

**Record:** Guenther Decl. ¶ 71.

28.    That day, July 28, 2021, Clay filed a formal complaint with IU President Marc Perrone, alleging that Local 21 interfered with Local 555's and 367's bargaining. His email copied Mike Hines—then Secretary Treasurer of Local 367—not its President, Gonzalez.

**Record:** Guenther Decl. ¶¶ 72–74; Guenther Decl. Ex. 11 (UFW-EMMONS-000004–05).

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

29.    Under the UFCW Constitution, a Local President, not its Secretary Treasurer, is the chief executive officer of the Local Union. Ordinarily, a Local President, not its Secretary Treasurer, would be the appropriate official to confirm whether an official complaint for violating the IU Constitution was, in fact, on behalf of the Local Union.

**Record:** Guenther Decl. ¶ 75.

30.    The oddity of Clay copying Hines, not Gonzalez, on his July 28, 2021, suggests that as of July 28, 2021, Clay knew (or strongly suspected) that Gonzalez had already resigned as President of Local 367 and, for that reason, Hines was authorized to speak on behalf of Local 367.

**Record:** Guenther Decl. ¶ 76.

31.    Mike Hines then joined Clay's complaint.

**Record:** Guenther Decl. ¶¶ 74–76; Dalmat Decl. Ex. 1 (UFCW-EMMONS_000987–990).

32.    On September 29, 2021, Guenther sent Clay an email, titled "Setting up a Conversation," in which she tried to work with Clay to mediate their dispute.

**Record:** Guenther Decl. ¶ 78.

33.    Clay never responded to Guenther's September 29, 2021, offer of mediation.

**Record:** Guenther Decl. ¶ 79.

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

34.    On October 19, 2021, IU President Perrone sent Guenther a letter directing Local 21 to cease and desist interfering with Local 555's bargaining relationships.

**Record:** Guenther Decl. ¶ 80; Guenther Decl. Ex. 12 (UFCW-EMMONS_000006).

35.    Guenther sought to appeal IU President Perrone's October 19, 2021, cease and desist directive, or otherwise to have him rescind it. Initially, those efforts were unsuccessful.

**Record:**    Guenther Decl.    ¶¶    81–84;    Guenther    Decl.    Ex.    13    (UFCW-EMMONS_000051–53); Guenther Decl. Ex. 14 (RFP No. 15 Resp – 015153–015154).

**MERGER BETWEEN LOCALS 21 AND 1439**

36.    On September 30, 2021, Eric Renner called Guenther to explore the possibility of Local 1439 and 21 merging.

**Record:** Guenther Decl. ¶ 85.

37.    Even before becoming Local 21 President, Guenther thought there may be value in a merger between Locals 21 and 1439. But she had not done anything to pursue such a merger before receiving Renner's call on September 30, 2021. That call struck Guenther as a bit out of the blue.

**Record:** Guenther Decl. ¶ 87.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 8
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

38.    During the September 30 call, Renner told Guenther he felt overwhelmed with his responsibilities as local president because he had also been taking care of his ailing mother. He did not say anything during the call about facing allegations from his staff of sexual harassment or other misconduct.

**Record:** Guenther Decl. ¶ 88.

39.    Guenther did not say much during that call.

**Record:** Guenther Decl. ¶ 89.

40.    In the next few weeks after September 30, 2021, Guenther called Renner to let him know she was open to exploring a Local 21/1439 merger. Then, or shortly thereafter, they set up a meeting for October 27, 2021.

**Record:** Guenther Decl. ¶ 90.

41.    To prepare for that meeting, on October 21, 2021, Guenther sent Renner a sample merger agreement Local 21 had used when it previously explored a merger with Local 367. (That merger with Local 367 did not come to pass.)

**Record:** Guenther Decl. ¶ 91.

42.    On October 28, 2021, Guenther and Renner hand delivered to Meckler a letter addressed to IU President Perrone requesting formal approval by the International Executive Committee for Locals 21 and 1439 to engage in formal merger discussions. Meckler had previously allied with Clay and others against Guenther on various matters.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    **Record:** Guenther Decl. ¶¶ 20–22, 27, 30–31, 63–65, 71, 92; Guenther Decl. Ex. 15

2    [Guenther Dep. Ex. 8); Dalmat Decl. Ex. 2 (UFCW-EMMONS_000899–901).

3    43.    Under the UFCW Constitution, the International Executive Committee

4    must approve formal merger discussions before they begin.

5    **Record:** Guenther Decl. ¶ 92.

6    44.    The October 28, 2021, letter explained Guenther's and Renner's view

7    that the merger was in the best interests of the membership.

8    **Record:** Guenther Decl. ¶¶ 92–93; Guenther Decl. Ex. 15 (Guenther Dep. Ex. 8).

9    45.    Guenther later called President Perrone to request a face-to-face

10    meeting to discuss the merger. That meeting occurred, with only President Perrone,

11    his executive assistant Lori Werner, and Guenther in attendance.

12    **Record:** Guenther Decl. ¶ 94.

13    46.    At the meeting, President Perrone pledged his verbal support for the

14    merger. Meckler nonetheless held the formal approval until after a union-election

15    vote at a Fred Meyer store in Richland, Washington, late in November.

16    **Record:** Guenther Decl. ¶ 94.

17    47.    Even though formally merger discussions had not yet been approved

18    and were not public, on November 13, 2021, Clay emailed President Perrone

19    detailing his opposition to a Local 21/1439 merger.

20    **Record:** Dalmat Decl. Ex. 3 (UFCW-EMMONS_000923–924).

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

48.    Clay's email alleged that the merger would cover up and protect sexual harassers and would "negatively impact Local 555 members," including by escalating jurisdictional tensions between the Oregon and Washington-based locals, giving the Washington-based local control over Local 555's retirement plans, and putting Guenther in a position to have more influence in the Pacific Northwest.

**Record:** Dalmat Decl. Ex. 3 (UFCW-EMMONS_000923–924).

49.    On December 2, 2021, President Perrone sent Guenther a letter officially granting permission for Locals 21 and 1439 to enter into formal merger discussions.

**Record:** Guenther Decl. ¶ 95; Guenther Decl. Ex. 16 (Guenther Dep. Ex. 9).

50.    Over the next couple weeks, principally from December 9 through 13, 2021, Guenther and Renner began discussing the prospect of a merger with key staff at Local 21 and Local 1439. Those discussions were limited to approximately six high-level staff of the two local unions. No public outreach occurred at this time.

**Record:** Guenther Decl. ¶ 96.

51.    On December 14, 2021, Locals 21 and 1439 held meetings of their respective Boards. The Local 21 Board had approximately 36 rank-and-file members, and the Local 1439 Board had approximately 12 members. The Boards discussed the merger during executive sessions, which are reserved for sensitive,

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

1    private discussions. Each Board recommended putting the merger question to a vote

2    of their respective members.

3    **Record:** Guenther Decl. ¶¶ 97–101; Guenther Decl. Ex. 17 (RFP Resp No 6 –

4    006001–03).

5        52.    Under the terms of the UFCW Constitution, two local unions may

6    merge only if each local union membership separately approves the merger by a

7    majority of that local's members casting votes.

8    **Record:** Guenther Decl. ¶ 102.

9        53.    By letter dated January 6, 2022, Local 21 provided notice to its

10   membership of the upcoming merger vote. The notice identified the dates, times, and

11   places of the meetings where members could vote and provided basic information

12   about the process. It did not, however, ask any member to vote in favor of the merger.

13   **Record:** Guenther Decl. ¶ 103; Guenther Decl. Ex. 18 (2022 Winter GMM Mailer).

14       54.    From January 6–20, 2022, Local 1439 held meetings during which

15   members voted on the merger.

16   **Record:** Dalmat Decl. Ex. 4 (Guenther Tr. 172:1–174:12).

17       55.    Local 1439 did not, however, conduct a public campaign on the merger.

18   **Record:** Dalmat Decl. Ex. 5 (Jackson Tr. 135:21–137:17); Crosby Decl. ¶ 14.

19       56.    Only 196 out of approximately 7,800 members of Local 1439 voted on

20   the merger.

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1  **Record:** Dalmat Decl. Ex. 6 (UFCW-EMMONS_000162–167).

2      57.    Local 1439 members approved the merger by a vote of 191 to 5.

3  **Record:** Dalmat Decl. Ex. 6 (UFCW-EMMONS_000162–167).

4      58.    From February 9–12, 2022, Local 21 held meetings where members

5  voted on the merger.

6  **Record:**  Guenther   Decl.   ¶¶ 104–105;  Guenther   Decl.   Ex.   19   (UFCW-

7  EMMONS_000152).

8      59.    Only 218 out of approximately 44,000 members of Local 21 voted on

9  the merger.

10  **Record:**   Guenther   Decl.   ¶   106;   Guenther   Decl.   Ex.   19   (UFCW-

11  EMMONS_000152).

12      60.    Local 21 members approved the merger by a vote of 207 to 11.

13  **Record:**   Guenther   Decl.   ¶   106;   Guenther   Decl.   Ex.   19   (UFCW-

14  EMMONS_000152); Guenther Decl. Ex. 20 (RFP Resp. No. 6 – 006604).

15      61.    Apart from the formal January 6, 2022, notice of the upcoming merger

16  votes, neither Local 21 nor Guenther engaged in any public communications with

17  Local 21 members on the merger in an effort to persuade them how to vote on the

18  matter. That approach is consistent with Local 21's member-led model, in which the

19  members—not their elected officials—are featured in union publications.

20  **Record:** Guenther Decl. ¶¶ 107–112; Mizrahi Decl. ¶¶ 32–34; Crosby Decl. ¶ 14.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 13
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

62.    Merger votes among UFCW local unions typically are low-turnout affairs that do not generate public debate.

**Record:** Crosby Decl. ¶¶ 7–14.

### CLAY'S CAMPAIGN TO SCUTTLE THE MERGER AND UNDERMINE GUENTHER THROUGH LEAFLETS SPREAD BY EMMONS

63.    At Clay's direction and consistent with Clay's November 13, 2021, email, on December 13, 2021, Mike Selvaggio—Local 555's contracted political director (who owns and operates Ridgelark Strategies)—mailed approximately 1,000 flyers to shop stewards at selected stores throughout Washington where UFCW members worked. A Local 367 member posted the flyer in a Facebook group closed to Local 367 members, garnering merely 26 comments and 17 reactions.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 108:18–113:9, 133:20–134:12, 134:18–135:23); Dalmat Decl. Ex. 8 (Selvaggio Ex. 4); Dalmat Decl. Ex. 9 (Hines sub resp. 030); Dalmat Decl. Ex. 10 (RFP Resp. No. 2 – 002095); Dalmat Decl. Ex. 11 (RFP Resp No. 2 – 002099–2100); Dalmat Decl. Ex. 4 (Guenther Tr. 99:22–100:18).

64.    Selvaggio created the flyer based on talking points he had discussed with Clay and Esai Alday, Clay's executive assistant.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 113:10–114:3, 122:17–124:12, 144:3–145:1).

65.    Selvaggio has since destroyed his notes of that discussion.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 122:21–123:2).

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

66.     At Clay's direction, to avoid identifying the mailer's source, Selvaggio intentionally provided no return address and mailed the flyers from Spokane to further conceal their origins.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 97:17–98:10, 113:10–114:3, 144:3–145:1).

67.     A week after that mailing, on December 21, 2021, an email from a fake address, repeating the accusations from the flyer Clay and Selvaggio prepared, was sent to several UFCW International Vice Presidents (IVPs).

**Record:** Dalmat Decl. Ex. 12 (UFCW-EMMONS_000925).

68.     Clay, who likely authored the email, forwarded it to Meckler.

**Record:** Dalmat Decl. Ex. 12 (UFCW-EMMONS_000925).

69.     When the mailing and email did not get the traction Clay and Selvaggio sought, they escalated their smear campaign—now dubbed Project Wagon Wheel—by leaving the flyers in-person at targeted stores in Spokane where UFCW members were likely to see them.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 106:3–107:12).

70.     Selvaggio called Joseph Emmons on or around January 5, 2022, to ask him to carry out that in-person distribution.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 108:18–110:4).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 15
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

71.     During that conversation, Selvaggio explained to Emmons that the purpose was to distribute flyers against a potential merger and "push information out to UFCW members regarding the allegations that were contained in the flyers."

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 109:23–110:4, 117:8–23); Dalmat Decl. Ex. 13 (Emmons Tr. 69:17–70:14).

72.     Selvaggio also explained to Emmons that the flyers involved accusations that leaders who had previously faced sexual harassment allegations were attempting to come back into leadership.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 110:9–111:13); Dalmat Decl. Ex. 13 (Emmons Tr. 69:7–14).

73.     During that initial conversation, Emmons immediately recognized the incendiary nature of those accusations and asked Selvaggio for their basis.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 69:7–10, 70:20–71:22).

74.     Selvaggio told him the sexual harassment allegations were supported by investigations and social media posts.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 70:20–71:22); Dalmat Decl. Ex. 7 (Selvaggio Tr. 110:24–111:16).

75.     Selvaggio, in turn, relied on the representations of Clay and Alday, who had told him that they relied on an investigation by the International—an assertion Selvaggio did nothing to verify.

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

1    **Record:** Dalmat Decl. Ex. 7 (Selvaggio. Tr. 111:23–112:19).

2    76.    In fact, the International repeatedly deemed the flyers' accusations to

3    be false.

4    **Record:** Dalmat Decl. Ex. 14 (UFCW-EMMONS_000029 –32), Dalmat Decl. Ex.

5    15    (UFCW-EMMONS_000936),    Dalmat    Decl.    Ex.    16    (UFCW-

6    EMMONS_000937).

7    77.    Selvaggio and Emmons did not discuss any payoffs or whether

8    Guenther was involved in any way in those allegations or the target of any sexual

9    harassment investigation.

10    **Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 111:14–112:19); Dalmat Decl. Ex. 13

11    (Emmons Tr. 71:20–25, 78:2–7, 78:22–79:8, 80:3–12).

12    78.    As far as Emmons recalls, they did not discuss Guenther at all during

13    that conversation.

14    **Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 64:21–65:15).

15    79.    Emmons did not discuss the flyer's accusations with anyone else.

16    **Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 73:8–23).

17    80.    After the conversation, Selvaggio emailed Emmons the flyer.

18    **Record:** Dalmat Decl. Ex. 17 (Selvaggio Ex. 8); Dalmat Decl. Ex. 7 (Selvaggio Tr.

19    139:9–140:1, 144:3–145:1).

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 17
Case No. 2:22-cv-00272-TOR

81.     It was apparent to Emmons from the flyer that Guenther was the President of a UFCW local union but he had no idea whether the accusations against Guenther were true.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 69:17–70:10, 74:11–13, 78:25–79:8, 90:24–92:16).

82.     After receiving a copy of the flyer itself from Selvaggio, Emmons and Selvaggio had another discussion about it.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 76:1–80:16); Dalmat Decl. Ex. 18 (Selvaggio Ex. 6).

83.     During that second conversation, Emmons read the flyer in its entirety but did not discuss any details of any investigations into Gonzalez or Renner and did not discuss the accusation that Guenther helped Gonzalez cover up harassment charges and paid him off in exchange for installing Hines.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 78:25–79:15, 90:13–91:19).

84.     Emmons also did not discuss with Selvaggio the accusation that Guenther helped cover up allegations Renner was facing.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 78:14–80:16).

85.     Emmons then printed the flyers at a FedEx store.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 74:18–75:25).

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 18
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

86.     Emmons then drove from Portland, Oregon, to Spokane, Washington; bought a Gonzaga baseball cap at a Fred Meyer in Spokane (despite being a fan of University of Oregon); and on January 8, 2022, around 5:50 p.m., wore the hat and a mask, while distributing flyers in six to eight stores in Spokane (whose addresses Selvaggio had supplied), placing them in areas of the store where UFCW members were likely to see them.

**Record:**  Dalmat Decl. Ex. 13 (Emmons Tr. 74:18–76:6, 81:1–84:22, 102:9–103:21); Dalmat Decl. Ex. 7 (Selvaggio Tr. 136:3–19); Dalmat Decl. Ex. 19 (RFP Resp No. 2 – 002111–16).

87.     Depending on the route, it is a 350-to-400-mile drive from Portland to Spokane.

**Record:** https://maps.app.goo.gl/yp8x1bU7iPJccn7k6.

88.     The sun set on January 8, 2022, in Spokane at 4:17 p.m. and it was "mostly cloudy" at 5:53 p.m.

**Record:**

https://www.wunderground.com/history/daily/us/wa/spokane/KGEG/date/2022-1-8.

89.     Emmons denies wearing sunglasses while distributing the flyers but the pictures show otherwise.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 19
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 102:23–104:8), Dalmat Decl. Ex. 19 (RFP Resp No. 2 – 002111–16).

90.    When Emmons handed out flyers at the Spokane stores, he did not know whether the accusations in those flyers were true or false.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 88:14–17).

91.    Selvaggio, who gave Emmons instructions on the in-person literature drop campaign, did not want Emmons to be identified.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 144:16–145:1)

92.    Upon completing the distribution, Emmons confirmed to Selvaggio that he had done so and told people "here's information about the union, information about the merger."

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 118:8–18).

93.    Selvaggio paid Emmons $2,500, reimbursed by Local 555, for circulating the flyers.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 114:4–121:7, 135:25–138:14); Dalmat Decl. Ex. 18 (Selvaggio Ex. 6); Dalmat Decl. Ex. 20 (Selvaggio Ex. 7).

94.    Local 555 indemnified both Emmons and Selvaggio for their roles in circulating the flyers.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 99:1–17); Dalmat Decl. Ex. 7 (Selvaggio Tr. 128:4–129:4); Dalmat Decl. Ex. 21 (EMM_000001–9).

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 20
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    **THE FLYERS' ACCUSATIONS AGAINST GUENTHER REGARDING GONZALEZ AND**
2    **HINES ARE FALSE.**

3    95.    On July 12, 2021, a member of Local 367 sent that union a letter

4    accusing Angel Gonzalez of sexually harassing her.

5    **Record:** Dalmat Decl. Ex. 22 (July 12, 2021 Letter).

6    96.    On July 15, 2021, Clay received a text message asking if Gonzalez was

7    still President of Local 367.

8    **Record:** Dalmat Decl. Ex. 23 (UFCW-EMMONS_000953).

9    97.    Over the month, Mike Hines negotiated a settlement on behalf of Local

10    367 with the member, which paid her $50,000 and caused Gonzalez to resign from

11    Local 367.

12    **Record:** Dalmat Decl. Ex. 24 (Hines sub resp. 09); Dalmat Decl. Ex. 27 (July 29,

13    2021, UFCW 367's Minutes); Dalmat Decl. Ex. 25 (Hines sub resp. 010); Dalmat

14    Decl. Ex. 26 (August 19, 2021, Confidential Settlement and Release Agreement).

15    98.    Until seeing the flyer in December 2021, Guenther knew nothing about

16    the Local 367 member's accusation against Gonzalez or Local 367's settlement with

17    that member.

18    **Record:** Guenther Decl. ¶¶ 122–124.

19    99.    Guenther never paid Gonzalez off for anything.

20    **Record:** Guenther Decl. ¶ 124; Mizrahi Decl. ¶¶ 7–10.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

100.   Nor did she influence Hines's advancement at Local 367. To the contrary, Hines left Local 21 to join Local 367 without Guenther's foreknowledge and over her objection.

**Record:** Guenther Decl. ¶¶ 23–31; Mizrahi Decl. ¶¶ 11–15.

101.   Hines certainly is not Guenther's "puppet." In fact, on June 29, 2021, he joined Clay's complaint against Guenther.

**Record:** Dalmat Decl. Ex. 1 (UFCW_987).

102.   Hines became Secretary Treasurer of Local 367 in July 2021 at Gonzalez's recommendation.

**Record:** Dalmat Decl. Ex. 28 (Minutes of UFCW 367's Executive Board Meetings of June 16, 2021, and July 1, 2021).

103.   Following the member's sexual harassment allegations, Hines offered himself at a July 29, 2021, Executive Board meeting as Gonzalez's replacement for Local 367 president.

**Record:** Dalmat Decl. Ex. 27 (July 29, 2021, UFCW 367's Minutes).

104.   The Local 367 Board then accepted Gonzalez's resignation from the presidency and made Hines its acting president.

**Record:** Dalmat Decl. Ex. 27 (July 29, 2021, UFCW 367's Minutes).

105.   Guenther had no role or influence in that decision at all. Guenther did not attend that meeting of the Local 367 Board and would not ordinarily do so.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1  **Record:** Guenther Decl. ¶¶ 125–126; Dalmat Decl. Ex. 27 (July 29, 2021, UFCW

2  367's Minutes).

3  **EMMONS'S PUBLICATION OF THE DEFAMATORY LEAFLET HARMED GUENTHER**

4   106.   By publishing the defamatory leaflet, Emmons dramatically harmed

5  Guenther, including through protracted internal complaints within UFCW that

6  undermined her standing among UFCW leaders, complicated her career, and caused

7  her incredible anxiety.

8  **Record:** Guenther Decl. ¶¶ 128–167.

9   107.   The leaflet led to a shooting at her office window, a break-in of the safe

10  in her office, and continued tarnishing of her reputation at the International.

11  **Record:** Guenther Decl. ¶ 162.

12   108.   Anxiety from the fallout of the flyer caused her to miss a month of

13  work, move personal residences at significant cost, beef up office security, travel

14  only with companions, and incur expenses for professional care.

15  **Record:** Guenther Decl. ¶ 164.

16   109.   The leaflet contributed to Guenther not receiving an appointment as an

17  International Vice President, even though, as the president of the largest UFCW local

18  union in America, she otherwise would have received that appointment. That

19  appointment would have carried with it a $20,000 annual stipend and the prestige of

20  the office.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 23
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1    **Record:** Guenther Decl. ¶ 164; Mizrahi Decl. ¶¶ 40–42; Crosby Decl. ¶¶ 15–23.

2

3        RESPECTFULLY SUBMITTED this 27th day of September, 2024.

4                                    *s/Darin M. Dalmat*
                                    Dmitri Iglitzin, WSBA No. 17673
5                                    Darin M. Dalmat, WSBA No. 51384
                                    Gabe Frumkin, WSBA No. 56984
6                                    **Barnard Iglitzin & Lavitt LLP**
                                    18 W Mercer St, Suite 400
7                                    Seattle, WA 98119
                                    (206) 257-6003
8                                    iglitzin@workerlaw.com
                                    dalmat@workerlaw.com
9                                    frumkin@workerlaw.com

10                                   Aaron Streepy, WSBA 38149
                                    Jim McGuinness, WSBA 23494
11                                   Streepy Lemonidis Consulting & Law
                                    Group, PLLC
12                                   2800 First Avenue, Suite 211
                                    Seattle, WA 98121
13                                   Telephone: (253) 528-0278
                                    Fax: (253) 528-0276
14                                   aaron@slglc.com
                                    jim@mcguinnessstreepy.com
15
                                    *Attorneys for Plaintiff Faye Guenther*
16

17

18

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 24
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

**DECLARATION OF SERVICE**

I hereby certify that on the date noted below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| Ambika Kumar<br>Sara A. Fairchild<br>Davis Wright Tremaine LLP<br>920 Fifth Ave., Ste. 3300<br>Seattle, WA 98104<br>ambikakumar@dwt.com<br>sarafairchild@dwt.com | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☐ E-mail<br>☐ U.S. Mail<br>☒ E-Service |
| John A. DiLorenzo<br>Davis Wright Tremaine LLP<br>560 SW 10th Ave., Ste. 700<br>Portland, OR 97205<br>johndilorenzo@dwt.com | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☐ E-mail<br>☐ U.S. Mail<br>☒ E-Service |

DATED this 27th day of September, 2024 at Seattle, Washington.

By: _____
Esmeralda Valenzuela, Paralegal

DECLARATION OF SERVICE
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**