Dmitri Iglitzin, WSBA No. 17673
Darin M. Dalmat, WSBA No. 51384
Gabe Frumkin, WSBA No. 56984
BARNARD IGLITZIN & LAVITT LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6003
iglitzin@workerlaw.com
dalmat@workerlaw.com
frumkin@workerlaw.com

Aaron Streepy, WSBA 38149
Jim McGuinness, WSBA 23494
STREEPY LEMONIDIS CONSULTING & LAW GROUP, PLLC
2800 First Avenue, Suite 211
Seattle, WA 98121
Telephone: (253) 528-0278
Fax: (253) 528-0276
aaron@slglc.com
jim@mcguinnessstreepy.com

*Attorneys for Plaintiff Faye Guenther*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
## AT SPOKANE

| | |
|---|---|
| FAYE IRENE GUENTHER, an individual,<br><br>                   Plaintiff,<br><br>  v.<br><br><br>JOSEPH H. EMMONS, individually, and OSPREY FIELD CONSULTING LLC, a limited liability company,<br><br>               Defendants. | No. 2:22-cv-00272-TOR<br><br>**DECLARATION OF FAYE IRENE GUENTHER IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

DECLARATION OF FAYE IRENE GUENTHER ISO MOTION FOR SUMMARY JUDGMENT – Page 1
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

I, Faye Irene Guenther, hereby declare and state as follows:

1.      I am over the age of 18 and make this declaration of my own personal knowledge and am competent to testify as to the matters herein.

2.      I am the plaintiff in this matter. I am currently the president of United Food and Commercial Workers (UFCW) Local 3000—a local union formed as a result of the merger in 2022 of two UFCW local unions, Local 21 and 1439. Local 3000 currently represents over 50,000 members working in grocery, retail, health care, meat packing, cannabis, and other industries across Washington, northeast Oregon, and northern Idaho.

**Background**

3.      I grew up in Spray, Oregon—a rural community in the least populated county of Oregon.

4.      After high school, I attended Oregon State University in Corvallis, Oregon. I put myself through college by painting houses, fighting fires, and working security jobs at night.

5.      During college, I worked at the Center Against Rape and Domestic Violence. That Center coordinates volunteers to help survivors of domestic violence. I was a volunteer coordinator, ran the hotline, and filled shifts at the shelter (and covered shifts when they were not covered).

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 2
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

6.      I also led sexual assault survivor counseling sessions and became the point person for men who had been sexually assault.

7.      At the time, I thought helping domestic violence survivors would be my life's work. I felt—and still feel—passionately about that work because violence against women and children is an abomination. I also was the subject of sexual abuse as a child; I was also sexually assaulted as a teenager and the perpetrator went to prison; and I was an eyewitness to a gang rape when I was a fire fighter in college. I have spent a large portion of my life doing everything I can to reduce the likelihood that others will face similarly horrific treatment.

8.      In 1998, an AFL-CIO Organizing Institute recruiter approached me and asked me to join the labor movement. At first, I was skeptical. But, as I considered it more, I felt called to do more than help one woman at a time. I wanted to have a larger impact, and I thought the labor movement could be an effective way to do so. Most of the women I dealt with at the domestic violence shelter were women who did not have the economic means to escape their situations. So, I decided that the economic well-being of women was critical for them to live safe and healthy lives, free from abuse.

9.      In November 1998, I started working for a Service Employees International Union (SEIU) local union in California, organizing hospital and healthcare workers.

DECLARATION OF FAYE IRENE GUENTHER ISO MOTION FOR SUMMARY JUDGMENT – Page 3 Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

10.    In 1999, I started working for UFCW Local 21 in Washington, where I organized workers, negotiated labor contracts on their behalf, and helped prepare for strikes.

11.    In 2001, I went to SEIU Local 503 in Oregon, where I was a union representative and negotiator. Eventually, I became the field director.

12.    In 2005, I went to the University of Oregon School of Law and graduated with a J.D. in 2008.

13.    During law school, I worked for the prosecutor's office in Pendleton, Oregon, helping prosecute perpetrators of domestic violence. Upon graduating law school, I had offers from two federal Indian tribes, in Arizona and Alaska, to prosecute domestic violence perpetrators. I chose, however, to return to the labor movement.

**Background at UFCW 21**

14.    After graduating, I rejoined UFCW Local 21, again bargaining contracts and working as the Local's Staff Director.

15.    In 2015, I was elected Secretary Treasurer of Local 21. In that position, I worked to create an investment policy for the Local's strike and defense fund, generating millions of dollars of return for UFCW members. During my tenure, among other things, Local 21 worked to raise the minimum wage, get sick leave, save a failing pension, build new divisions to better serve members, and renegotiated hundreds of labor contracts.

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 4
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

16.     When I was Secretary Treasurer, Todd Crosby was the President. He left the Presidency for a position with the UFCW International Union (International or IU) in April 2019. At that point in time, under the Local bylaws, as Secretary Treasurer, I assumed the duties of acting President of Local 21. I was then appointed President of Local 21 in May 2019. I ran for the office of Local 21 President in 2020, which I was. I began that term in October 2020.

17.     At the time I took office, Local 21 represented approximately 44,000 members, primarily in the grocery, healthcare, and cannabis industries.

18.     Throughout my time at UFCW 21, I actively opposed sexual harassment within the union whenever I became aware of it. For example, I led multiple internal investigations into allegations of sexual misconduct. These led to at least four people being removed from the union. This was possible only because the women who raised the allegations felt comfortable talking with me and I was a fierce advocate for those women. My efforts resulted in annual discrimination trainings, a new Code of Conduct, and various other reforms designed to eradicate sexual harassment from our union.

19.     One particular example occurred in or around September 2019. At the time, several UFCW 21 staff members reported that Joe Earleywine, who was the Organizing Director of Local 21 at that time, had made sexually harassing comments to them. I believed them because Mr. Earleywine had previously sexually harassed

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1    me as well. After Local 21's investigation, Mr. Earleywine left Local 21 and went

2    to work for the International Union as the Executive Assistant to the Regional

3    Director for Region 7, which covers the Pacific Northwest.

4    20.    In that position, he continued to make female Local 21 staff uncomfortable.

5    So, in September 2019, I raised the issue with Kate Meckler. Ms. Meckler was the

6    UFCW International Union Regional Director for Region 7 from around 2018 to

7    January 2022, when she was reassigned to Region 2. UFCW is divided into seven

8    U.S. based regions, and Canada. Region 7 covers the Pacific Northwest. Around

9    2021 and 2022, it included Locals 21 (Seattle and greater Washington), 367 (Tacoma

10   and surrounding Washington counties), 1439 (Spokane), 555 (Portland and Oregon),

11   368A (Boise, Idaho), 4 (Montana), 1496 (Alaska), and 7 (Colorado and Wyoming).

12   21.    I attach as **Exhibit 1** a true and correct copy of emails I sent to Ms. Meckler

13   from September 23 through 26, 2019, bringing these allegations to Ms. Meckler's

14   attention. Unfortunately, to my knowledge, she did nothing to investigate or respond

15   to them.

16   22.    I escalated the issue to IU President Marc Perrone later in 2019. Eventually,

17   my pressing the issue led to negotiations that resulted in Mr. Earleywine retiring

18   early from the IU.

19

20

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 6
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**

**IGLITZIN &**

**LAVITT LLP**

**Relationship with Mike Hines**

23.     I worked with Michael (Mike) Hines on and off from the time I started with UFCW in 1999 until 2019. In 2012, Mr. Hines worked as a Grievance Representative. At that point, I was the Local 21 staff director. At Mr. Hines request, I moved him into the Grievance Department.

24.     I became Secretary Treasurer of Local 21 in 2015. In 2016 or 2017, I promoted him to become a Negotiator, responsible for negotiating contracts with employers.

25.     I rarely interacted with Mr. Hines directly at that time because Negotiators reported directly to the staff director.

26.     A few months after I became Local 21 President, Mr. Hines wanted James Crow, the Negotiating Director, fired so that Mr. Hines could become the Negotiating Director. I told Mr. Hines that I thought he had the skill to be the Negotiating Director but there was no reason to terminate Mr. Crow.

27.     Shortly thereafter, I learned that Kate Meckler and Angel Gonzalez had been meeting with Mr. Hines. In September or October 2019, Mike Hines left Local 21 and started working for UFCW Local 367 as the Executive Assistant to its president.

28.     Local 367 is a UFCW affiliate that represents grocery, retail, and other workers in several western and southwestern Washington counties, such as Pierce, Mason, Lewis, Thurston, Pacific, and Grays Harbor.

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 7
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

29.     Before Mr. Hines left Local 21 to work for Local 367, I had no idea he was leaving. I did not want him to leave. Although we disagreed on various matters from time to time, I felt like Mr. Hines was doing a good job at negotiating contracts with employers and I wanted him to continue doing so at Local 21.

30.     Around this time, I learned that Ms. Meckler, the Region 7 Director, had facilitated Mr. Hines leaving Local 21 and taking a position at Local 367. I objected to her doing so and, in fact, protested to IU President Perrone that Ms. Meckler had interfered with Local 21. He agreed with me that Ms. Meckler's poaching Mr. Hines from Local 21 was wrong.

31.     My September 2019 emails to Ms. Meckler, attached as Exhibit 1**,** also show that I protested her decision to hire Mr. Hines and other UFCW 21 staff without the permission or knowledge of UFCW 21 elected officers.

**Relationship with Angel Gonzalez**

32.     The UFCW International Union put Local 367 under trusteeship in or around January 2019.

33.     Although UFCW local unions typically enjoy significant local autonomy, when the International imposes a trusteeship, it is able to exercise significant control over the trusteed local, including by appointing a trustee who takes over control from the local's elected officers.

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 8
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

34.    During that trusteeship, the IU hired Angel Gonzalez Irazarry to work at Local 367 in a leadership position. To the best of my recollection, Mr. Gonzalez began doing so in the summer of 2020.

35.    Local 367's trusteeship ended at the end of June 2020, and Mr. Gonzalez then became President of Local 367 beginning in or around July 2020.

36.    Even before he became President of Local 367, Local 21 had challenges working with Mr. Gonzalez. For example, he watched loud videos on his phone during sensitive bargaining sessions. In June 2020, Mr. Gonzalez informed Eric Renner—the then-President of Local 1439—and me that Local 367 was planning to conduct informational picketing at two Fred Meyers stores in late June, and he asked to coordinate with our two Locals, 1439 and 21, respectively. I responded that I was concerned Local 21 did not have capacity to support the Local 367 picketing, in light of other planned commitments. I offered, instead, to discuss a comprehensive approach to the next round of bargaining with our employers, in 2022. Mr. Gonzalez initially agreed to have a call to discuss coordinated bargaining.

37.    But things quickly went awry when a Safeway store located on the border of Local 21 and 367's jurisdictional lines had a roof collapse. This was a store within Local 21's jurisdiction. The displaced Local 21 members got distributed to other stores, including one which fell within Local 367's jurisdiction. Many of those redistributed Local 21 members had higher seniority than their counterparts at Local

DECLARATION OF FAYE IRENE GUENTHER ISO MOTION FOR SUMMARY JUDGMENT – Page 9
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

367, which meant they got more hours. The roof collapse was no one's fault and the hours allocations were purely a function of the applicable collective bargaining agreement's (CBA's) seniority rules. My focus, at the time, was trying to get through the situation without the workers getting mad at each other. Mr. Gonzalez, by contrast, went on a rampage, attacking everyone on Local 21's staff, including by falsely accusing Local 21 officers of not returning his or his colleague's calls. His irrational overreaction made it difficult for us to coordinate bargaining between our two Local unions, as it poisoned the trust between us. Nonetheless, I informed him that my door was always open in case he wanted to rectify the situation.

38.     I attach as **Exhibit 2** a true and correct copy of email correspondence I exchanged with Mr. Gonzalez in June 2020 on this issue.

39.     Instead of reaching out to rectify the situation, Mr. Gonzalez instructed his staff not to communicate directly with Local 21 staff. I attach as **Exhibit 3** a true and correct copy of July 1, 2020, emails reflecting those instructions. I responded to Mr. Hines that "Angel is the President of UFCW 367 and an adult. He knows how to pick up the phone and fix this."

40.     In December 2020, Kate Meckler convened a "relationship summit" via Zoom between Locals 21 and 367—specifically, for Local 367, Mr. Gonzalez and Mr. Hines, and for Local 21, Secretary Treasurer Joe Mizrahi and me. During that meeting, Mr. Gonzalez said that he could not possibly be sexist because he loves his

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 10
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

mother. I pushed back on the notion that a good relationship with one's mother is incompatible with sexist behavior. He got enraged and hung up the call.

41.     After this summit, Mr. Gonzalez and I found ways to work together, even though I continued to find his personality trying.

42.     In May 2021, for example, Locals 367 and 21 signed an organizing understanding. Under that understanding, Local 21 affirmed that it did not currently represent any employees within Local 367's geographic jurisdiction. Local 367, in turn, expressed a desire to organize certain employees in Renton and Mount Vernon, Washington, which is Local 21 jurisdiction. Local 21 indicated it would not object to Local 367 doing so, even though the workers fell within Local 21's jurisdiction.

43.     In June 2021, several UFCW locals—Locals 21, 324 (Buena Park, California, near Los Angeles), 770 (Los Angeles), 7 (Pueblo, Colorado), and 367—collaborated on a study regarding living standards of employees at Kroger, one of the major grocery worker employers UFCW bargains with. The purpose of this study was to develop a coordinated approach to engaging with Kroger on significant, upcoming bargaining. This group kept Mr. Gonzalez informed by email about developments but he nonetheless missed a meeting on Saturday, June 12, 2021. Because he missed that meeting, the group decided to push the substantive content to another meeting later that week. I reached out by phone and text to Mr. Gonzalez to keep him up to date. Instead of engaging with us, Mr. Gonzalez threw a fit and refused to participate

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 11
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1   in the group at all—even though we were exploring ways to build our respective

2   members' bargaining strength through coordinated positions.

3   44.    This incident was, unfortunately, yet another example of Mr. Gonzalez's short

4   temper undermining his ability to deliver for his members.

5   45.    Despite Mr. Gonzalez's temper, I still tried to work with him. On June 16,

6   2021, I sent him a text message offering to help him navigate a "Zenith issue" with

7   a member. Zenith Administrators administers the healthcare and pension plans Local

8   21, 1439, 367, and Teamsters 38 sponsored. I was therefore offering to help Mr.

9   Gonzalez navigate either a healthcare or pension issue on behalf of one of his

10  members.

11  46.    On August 4, 2021, I received an email from Mike Hines, which was also

12  addressed to Eric Renner and Dan Clay (President of Local 555). By then, Mr. Hines

13  had become Secretary Treasurer of Local 367. The email stated:

14      I wanted to take [a] moment and write to you personally to inform you
        that Angel Gonzalez has resigned his position as President of Local 367

15      as of July 25, 2021 due to ongoing health concerns. As
        Secretary/Treasurer, I will be performing the duties of President over

16      the next 30 days, at which point, the Local's Executive Board will meet
        and confirm a new President for our Local.

17
        I want to reassure you that my top priority is to maintain the integrity,

18      trust and loyalty of our Local and its' [sic.] members and will carry out
        my duties with the same. If you have any questions, please give me a

19      call directly.

20  I attach as **Exhibit 4** a true and correct copy of that email.

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 12
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

47.     About a week before Mr. Hines's email, Mr. Gonzalez failed to attend a joint bargaining session between Local 555 and 367. At that point, I had heard rumors that Mr. Gonzalez had resigned from his position as president of Local 367. I had no confirmation of his resignation and had absolutely no idea whether and, if so, why he had resigned.

48.     To try to clear up the rumors, on July 27, 2021, I texted Todd Crosby and Kate Meckler, both of whom worked for the IU in Region 7 at the time. I asked: "I am getting calls and texts that Angel [Gonzalez] has resigned… I have a board meeting at 630 and questions will fly… is this a rumor?" I attach as **Exhibit 5** a true and correct copy of this text exchange.

49.     Mr. Crosby responded that day that he had no idea of Mr. Gonzalez's resignation and hadn't heard anything. Ms. Meckler also responded by asking who was sending me the calls and texts with the reports of Mr. Gonzalez's resignation. She also recommended that I let Local 367 make its own announcements about leadership changes.

50.     I replied that day to Ms. Meckler that I was simply passing along the question to her. I added:

> UFCW 21 has never and will never make announcements about leadership transitions at other locals. Previous Regional Directors kept us informed of these types of things so we did not get side swiped in meetings.

DECLARATION OF FAYE IRENE GUENTHER ISO MOTION FOR SUMMARY JUDGMENT – Page 13
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

51.     When I received Mr. Hines's August 4, 2021, email, that was the first official confirmation I received about Mr. Gonzalez's resignation.

52.     I responded by email that day to Mr. Gonzalez, saying: "Dear Mike— UFCW 21 looks forward to working with you Mike. Welcome. Let us know if you need anything." Exhibit 4. That is the same kind of cordial welcome message I would extend to any incoming officer at a sister UFCW local within Region 7.

53.     I also separately texted Mr. Hines that day saying I was "Happy to hear this welcome news." I attach as **Exhibit 6** a true and correct copy of that text message.

54.     I also emailed Andrea Zinder (President of Local 324 in Southern California), John Grant (then President of Local 770 in Los Angeles), and Kim Cordova (President of Local 7 in Colorado), forwarding Mr. Hines's email announcing Mr. Gonzalez's resignation. I attach as **Exhibit 7** a true and correct copy of my August 4, 2021, email.  My email said: "FYI. I Have know[n] Mike Hines for most of my adult life. He has very good potential. I think things up here are a little messed up, but with time, I think this will be a positive development."

55.     At the time of the August 4, 2021, announcement of Mr. Gonzalez's resignation, again, I had no idea why he resigned.

56.     I was also completely unaware that any sexual harassment charges or accusations had been leveled against him. I did not hear even rumors about sexual harassment charges or accusations against Mr. Gonzalez until seeing the flyers at

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 14
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    issue in this case (discussed in more detail below), circulated in December 2021 and

2    January 2022.

3    57.    I nonetheless found Mr. Gonzalez's resignation to be "welcome news," as I

4    told Mr. Hines, and a "positive development," as I told other UFCW local leaders,

5    because, in my experience (detailed above), Mr. Gonzalez had been such an erratic,

6    hot-tempered, undependable leader—to the detriment of his members. I believed that

7    **any** successor to Mr. Gonzalez was likely to be more even-tempered and rational

8    and would likely better represent the members of Local 367. Because Local 367's

9    jurisdiction is adjacent to Local 21's, any improvement in the representation of its

10    members would benefit not only those members but also Local 21's members. And

11    I, of course, was and am vitally interested in UFCW members' bargaining strength,

12    both here in Washington and more broadly.

13    **Initial Relationship with Dan Clay and Local 555**

14    58.    Dan Clay has been President of Local 555 since August 2008, and I've known

15    him that entire time. Local 555 represents approximately 30,000 UFCW members

16    in grocery, retail, plants and manufacturing, and healthcare industries primarily in

17    Oregon.

18    59.    I helped Mr. Clay on the Dalles, Oregon Fred Meyer campaign. Local 21 also

19    sent staff to Oregon on rotations to help sign up the Oregon stores where we got

20

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 15
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

card-check, neutrality as a result of the Safeway/Albertson's merger. We also ran a joint campaign against New Seasons.

60.    Mr. Clay is also a Vice President of the IU and serves on the UFCW International Executive Board (IEB)—the International Union's governing body. He has held that position for several years.

61.    On July 19, 2021, Ms. Meckler emailed Mr. Clay, Mr. Gonzalez, Mr. Renner, and other local presidents within Regions 7 and 8 regarding an upcoming meeting to discuss coordination for the 2021–22 negotiations in the retail industry. I attach as **Exhibit 8** a true and correct copy of Ms. Meckler's email and resulting responses.

62.    On July 20, 2021, Ms. Meckler invited suggestions for the agenda. I responded that day with my suggestions for the agenda.

63.    Although I did not know it at the time, I learned from documents in this litigation that Mr. Clay replied to my email to a subset of the original group on the email, consisting of Esai Alday (a Local 555 staffer who works closely with Mr. Clay), Mr. Gonzalez, and Ms. Meckler, saying "Shit. We'd better plan for a week…"

64.    I was not surprised to see Mr. Clay's email in discovery. He and his local have been hostile to Local 21's (and later 3000's) approach to organizing and bargaining for as long as I can remember. For example, in 2019, I suggested that all the local unions in Regions 7 and 8 should bargain together against Kroger and Albertson's.

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 16
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1   Mr. Clay opposed that approach, apparently worried that he would no longer have

2   control over his members.

3   65.    On July 21, 2021, the day after my email proposing an agenda, Mr. Clay

4   responded to Ms. Meckler's July 19 email, copying the entire group, explaining that

5   Locals 555 and 368A agreed to merge and Local 555 had been in discussions with

6   Local 367 over coordinated bargaining. I attach as **Exhibit 9** a true and correct copy

7   of Mr. Clay's email.

8   66.    Before the merger, Local 368A was headquartered in Boise, Idaho, and

9   represented approximately 1,100 members in Idaho, eastern Oregon, and western

10  Wyoming. As a result of the merger, Local 555 represented approximately 25,000

11  members.

12  67.    Mr. Clay's announcement of coordinated bargaining with Local 367 deeply

13  concerned me. Simply put, I believed—based on detailed comparisons of Local 555

14  and 21's CBAs—that Local 555 had consistently negotiated contracts that provided

15  its members lower wages and weaker healthcare and pension benefits than Local 21

16  was able to secure for its members. That approach resulted, in part, I believed, from

17  Local 555's unwillingness to coordinate bargaining with other regional affiliates or

18  prepare for a strategic, regional strike—a marked contrast from Local 21, which has

19  long believed that building a bigger coalition to bargain effectively against Kroger

20  and Albertson's is the only path forward. If Local 367 had engaged in coordinated

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 17
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1   bargaining with Local 555, it was likely that Local 367—which previously had the

2   same health care and pension plans as Local 21—would adopt Local 555's weaker

3   plans, which would, in turn, be used against Local 21 in future bargaining.

4   68.    On July 27, I emailed Ms. Meckler and Milton Jones, the International

5   Secretary Treasurer, with my concerns. I attach as **Exhibit 10** a true and correct copy

6   of my July 27, 2021, email, attachment, and ensuing responses.

7   69.    My July 27 email presented a side-by-side comparison of healthcare plans

8   negotiated by Local 21 and 555. And I asked the IU (and its research department) to

9   confirm the accuracy of Local 21's analysis; help us create a side-by-side comparing

10   all wages and benefits of the two locals, so that we could analyze the risks of the

11   merger and coordinated bargaining; and to provide other assistance.

12   70.    That day, in the interest of transparency, I forwarded Mr. Clay the email I had

13   sent Ms. Meckler and Mr. Jones.

14   71.    In discovery in this case, I obtained Mr. Clay's July 28 email forwarding my

15   email to Mr. Alday, Ms. Meckler, and Bryan Wyann (who works for the IU). In that

16   email, Mr. Clay described my concerns as "delightfully petty." He also said that

17   reading my concerns "made [his] night."

18   72.    Also on July 28, Mr. Clay filed a formal complaint with IU President Marc

19   Perrone. His complaint alleged that UFCW interfered with Local 555's and 367's

20

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 18
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

retail bargaining. I attach as **Exhibit 11** a true and correct copy of that email, which was produced in discovery in this case.

73.    Mr. Clay's complaint said that "Local 555 finds it outrageous that a Union Leader within the UFCW family would attack another UFCW's bargaining table." After mounting his allegations, Mr. Clay asked the IU to order Local 21 to cease and desist from alleged interference with Local 555 and 367's bargaining and efforts to settle contracts.

74.    Mr. Clay copied Mr. Hines—then Secretary-Treasurer of Local 367—"so he may confirm with a reply that this is a complaint on behalf of both 555 and 367."

75.    Under the UFCW Constitution, a Local President, not its Secretary Treasurer, is the chief executive officer of the Local Union. Ordinarily, then, a Local President, not its Secretary Treasurer, would be the appropriate official to confirm whether an official complaint for violating the IU Constitution was, in fact, on behalf of the Local Union.

76.    Based on Mr. Clay's decision to copy Mr. Hines, and not Mr. Gonzalez, on his July 28, 2021, complaint, I surmise that Mr. Clay knew (or strongly suspected) as of July 28, 2021, that Mr. Gonzalez had resigned as President of Local 367 and, for that reason, Mr. Hines was authorized to speak on behalf of Local 367.

77.    Over the next few months, Ms. Meckler shared information with Region 7 Presidents regarding negotiations with Kroger over hazard pay. (At this point, we

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 19
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

were in the thrust of the COVID-19 pandemic, so hazard pay for essential workers, like the grocery store workers we represent, who were required to continue working in person was a significant issue.) In light of Mr. Clay's pending complaint that Local 21 had interfered with Local 555 bargaining, in September 2021, I asked to be removed from the emails. I did not want further bargaining strategy discussions misconstrued by Mr. Clay.

78.    On September 29, 2021, I sent Mr. Clay an email, titled "Setting up a Conversation." In that email, I wrote:

> Dear Dan:
>
> I am writing regarding your complaint that I, as President of Local 21, intervened in your relationship with employers. It was never my intent to intervene in your bargaining and I would welcome the opportunity to meet and have a mediated conversation in order to repair this relationship. We have known each other a long time and I consider you a close friend within the labor movement and UFCW. Please be assured that I will not contact any company regarding Local 555's collective bargaining relationship without your express permission.
>
> I hope this letter serves as a step towards mending fences between us and I welcome the opportunity to work on a more collaborative relationship.
>
> Take care and I look forward to talking soon-
>
> Faye

79.    I never received any response from Mr. Clay to that email.

80.    On October 19, 2021, IU President Perrone sent me a letter directing Local 21 to "cease and desist from interfering with UFCW Local 555's collective bargaining

DECLARATION OF FAYE IRENE GUENTHER ISO MOTION FOR SUMMARY JUDGMENT – Page 20
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1  relationships" and to make "no statements to any employer regarding Local 555's

2  negotiations without the express permission of Local 555's President." President

3  Perrone's letter urged "all UFCW local unions to seek to address points of contention

4  within the UFCW family and, further, to refrain from any disparagement of sister

5  local unions or officials." I attach as **Exhibit 12** a true and correct copy of that letter.

6  81.    I responded to that letter by email on May 17, 2022. In that email, I asked

7  President Perrone either to rescind his October 19, 2021, cease-and-desist directive

8  or to conduct a new investigation into the matter. The basis for my request was my

9  belief that a key factual allegation in Mr. Clay's complaint had not been disclosed

10  to me during the investigation, precluding me from an opportunity to address it. As

11  I had learned after the October 19, 2021, directive, Mr. Clay asserted that I interfered

12  with Local 555's bargaining by asking an employer's president to dictate the terms

13  of Local 555's contract settlement. That never happened and I never had an

14  opportunity to rebut the allegation.

15  82.    I also explained that I had not appealed President Perrone's October 19, 2021,

16  within 30 days because it was presented to me as a private matter that did not render

17  a finding of factual wrongdoing. Unfortunately, though, Mr. Clay forwarded his

18  complaint to the entire IEB, which, among other things, triggered my appeal.

19  83.    I attach as **Exhibit 13** a true and correct copy of my May 17, 2022, email to

20  President Perrone.

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 21
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

84.    President Perrone responded on May 24, 2022, denying my request, and I replied on June 28, 2022. I attach as **Exhibit 14** a true and correct copy of that correspondence.

**Merger between Locals 21 and 1439**

85.    On September 30, 2021, Eric Renner called me to explore the possibility of Local 1439 and 21 merging.

86.    At the time, Mr. Renner was the president of Local 1439, a local union representing grocery, retail, and other workers in eastern Washington. In 2021, Local 1439 had approximately 7,800 members in 2021 and Local 21 had approximately 44,000 members. Local 21 was (and Local 3000 now is) the largest UFCW local in the United States.

87.    Even before I became President of UFCW 21, I thought there could be value in Local 21 and 1439 merging because of their overlapping interests, contracts, and staff. I had not, however, done anything to pursue such a merger before Mr. Renner called me. His call felt a bit out of the blue, even though we had been working together on certain grievances and issues relating to COVID.

88.    During our September 30 call, Mr. Renner told me that he was feeling overwhelmed with his responsibilities as local president because his mother had been dealing with chronic illness and he was struggling to take care of her while also running the local. He did not say anything during the call about facing allegations

DECLARATION OF FAYE IRENE GUENTHER ISO MOTION FOR SUMMARY JUDGMENT – Page 22
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    by his staff and I did not know anything at the time about any allegations of

2    misconduct by Local 1439 staff against Mr. Renner.

3    89.    I did not say much during the conversation. I mostly listened to Mr. Renner's

4    pitch and then the call ended.

5    90.    At some point within the next few weeks, I called Mr. Renner back and told

6    him that I was also interested in exploring a Local 21/1439 merger. I thought a

7    merger would serve our members by enabling us to consolidate power against

8    Albertsons and Kroger, bargain better contracts, and organize more stores. During

9    that call, or shortly thereafter, we set up an in-person meeting for October 27, 2021.

10    91.    In preparation for that meeting, on October 21, I sent Mr. Renner a sample

11    merger agreement Local 21 had used when it had previously explored a merger with

12    Local 367. (That merger between Locals 21 and 367 never came to pass because the

13    locals' boards were divided on it and the members did not approve it.)

14    92.    On October 28, the day after Mr. Renner and my in-person meeting, Mr.

15    Renner and I hand delivered to Ms. Meckler a letter addressed to IU President

16    Perrone requesting approval of the International Executive Committee for Locals 21

17    and 1439 to engage in formal merger discussions. I attach as **Exhibit 15** a true and

18    correct copy of that letter. Under the UFCW Constitution, the International

19    Executive Committee must approve these formal discussions before they can begin.

20

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 23
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

93.     In the letter, we explained our view that the proposed merger would be in the best interests of the membership because the two locals have worked cooperatively in organizing campaigns, share a massive geographical area, represent workers in the same trades, have common employers, use the same outside legal counsel, share contract language, share a pension plan, and often coordinate on state and local political issues.

94.     I also called President Perrone to request a face-to-face meeting with him to discuss the merger. President Perrone brought his Executive Assistant, Lori Werner, with him. No one else attended the meeting, as far as I remember. At that meeting, he pledged his verbal support for the merger. Ms. Meckler nonetheless held the formal approval until after the union-election vote at a Fred Meyer store in Richland, Washington, late in November.

95.     On December 2, 2021, President Perrone sent me a letter officially granting permission for Locals 21 and 1439 to enter into formal merger discussions. His letter included attachments containing: (1) Procedures for Mergers between UFCW Local Unions; (2) Model Local Union Merger Agreement; (3) Record of Merger Proceedings; (4) Sample Letter to Employers Whose Employees Are Represented by Local Union(s) Going of Existence as Result of Merger; and (5) Sample Letter to Banks and Other Financial Institutions of Local Union(s) Going Out of Existence as

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 24
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    Result of Merger. I attach as **Exhibit 16** a true and correct copy of President

2    Perrone's letter and attachments.

3    96.    After receiving that approval, over the next couple weeks, principally from

4    December 9 through 13, 2021, I began talking with key staff at Local 21 and Local

5    1439 about the prospect of a merger. During this period, we kept these conversations

6    small and confidential. I believe we discussed the merger with no more than six high-

7    level staff of the two local unions. We did no public outreach.

8    97.    On December 14, the Local 21 Executive Board held its regular monthly

9    meeting. The Local 21 Executive Board is the governing body of that Local Union.

10   It is a body of approximately 36 rank-and-file workers (e.g., members who work at

11   the employers Local 21 bargains with) who have been elected by Local 21 members

12   to set the direction and policies of the Local. I attended the Local 21 Board meeting

13   via Zoom because Local 1439 was also holding a meeting of its Executive Board

14   that day, and I attended that meeting in person in Moses Lake, Washington, to

15   introduce myself. I did not have any substantive discussion during the Local 1439

16   meeting.

17   98.    During the Local 21 Board meeting, Joe Mizrahi led a discussion in Executive

18   Session and recommended merging with Local 1439. While staff occasionally attend

19   portions of Board meetings to give reports, the Board itself sometimes discusses

20   certain topics in Executive Session—in which only the Board members, elected

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 25
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

officers (President, Secretary Treasurer, and Recorder), and, if necessary, counsel—are present. An Executive Session enables the Board and officers to deliberate on sensitive topics in private. In minutes of a Board meeting, the Recorder typically identifies the topics discussed in Executive Session and the outcomes of the discussion without revealing details of the discussion.

99.     I attach as **Exhibit 17** a true and correct copy of the minutes of the December 14, 2021, Executive Board meeting. The minutes accurately reflect what occurred at that meeting.

100.    During the Executive Session on December 14, Local 21 Secretary Treasurer Joe Mizrahi reviewed the proposed merger agreement with the Board and I fielded questions. The Board recommended the merger for approval to the membership.

101.    During this time period, I understand Mr. Renner was holding similar discussions with key staff at Local 1439 and with the Local 1439 Executive Board. Like Local 21, Local 1439's Executive Board had about a dozen Board members. Local 1439 also recommended the merger for approval to its membership.

102.    Under the terms of the UFCW Constitution, two local unions may merge only if each local union membership separately approves the merger by a majority of that local's members casting votes.

103.    Local 21 provided notice to its membership of the upcoming merger vote by letter dated and mailed January 6, 2022. The notice identified the dates, times, and

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 26
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

places of meetings where members could vote on the merger and provided basic information about the process. It did not, however, ask anyone to vote in favor of the merger. I attach as **Exhibit 18** a true and correct copy of the notice.

104.   Local 21 then convened a series of membership meetings on February 9, 10, 11, and 12, 2022, at which the merger question was put to a membership vote.

105.   I attach as **Exhibit 19** a true and correct copy of the vote tallies at those meetings. That chart accurately shows that on February 9, 2022, 13 members attended the Bellingham meeting, 11 attended in Oak Harbor, 4 in Mount Vernon, 4 in Aberdeen, 7 in Shelton, 2 in Kennewick, 2 in Walla Walla, 12 in Silverdale, and 10 in Port Townsend. On February 10, 12 members attended the Everett meeting, 16 in Lynwood, 17 in Bellevue, 10 in Olympia, 5 in Spokane in the mid-afternoon and another 13 later on, 1 in Forks, and 4 in Port Angeles. On February 11, 21 attended in Des Moines, 22 in Seattle, 14 in Des Moines's afternoon meeting, 8 in Tacoma, none in Tonasket, and 8 in Omak. Finally, on February 12, 5 members attended the Wenatchee meeting.

106.   Of the approximately 44,000 members of Local 21 at the time, only 218 attended those meetings. They approved the merger by a vote of 207 to 11.

107.   Apart from giving formal notice to the membership of the meetings at which the merger vote would take place, neither Local 21 nor I engaged in any public

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 27
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1    communications with the membership to try to persuade them of how to vote on the

2    matter.

3    108.    For example, neither Local 21 nor I personally sent out any mass mailings to

4    Local 21 members, emails, texts, Facebook posts, X (nee Twitter) tweets, or any

5    other communications intended to influence the merger vote.

6    109.    In fact, neither Local 21 nor I sent any communications through any of those

7    media (or any other) to Local 21 or Local 1439 membership on the subject of the

8    merger at all between the December 14, 2021, decision by the Local 21 Executive

9    Board to submit the question to the membership for approval and the close of voting

10   on the merger in mid-February. Eventually, once the merger had become effective,

11   we announced it in March on Local 21's Facebook page, which is now part of Local

12   3000's Facebook page, is available at https://www.facebook.com/UFCW3000.

13   110.    The reason I did not send mass communications in an effort to influence the

14   merger vote is because I have always believed our union is strongest when the

15   members lead. That is why our Executive Board is member-led. It is also why there

16   is no substitute for face-to-face, member-to-member communication about issues

17   affecting members. So Local 21 left the discussions of the reasons for or against the

18   merger to the members themselves, at the membership meetings.

19   111.    Consistent with Local 21's (and now Local 3000's) member-led model, in my

20   experience, most members do not know who serves as their Local union president.

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 28
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1  Likewise, Local 3000 (like Local 21 before it) usually features members—not

2  officers—in its official communications, whether on its website

3  (www.ufcw3000.org), Facebook page, or X feed.

4  112.  For example, the Local 3000 website, www.ufcw3000.org, has only scant

5  reference to me or any other elected officers. My name is not on the Union's home

6  page. We do not have a web page dedicated to officers. Instead, we have a page

7  dedicated to Member Stories, https://ufcw3000.org/stories, a staff directory, and

8  https://ufcw3000.org/staff-directory, and a "Who We Are" page that focuses on the

9  Local's Executive Board, https://ufcw3000.org/who-we-are.

10  113.  The first post on that page regarding the merger went up on March 3, 2022. It

11  said:

12  > Today, we are proud to announce that UFCW 21 and UFCW Local
> 1439 are merging to become one Local, stronger together and stronger
13  > than ever before.

14  > We are now UFCW 3000!

15  > Over the past two months, the general membership of both UFCW 21
> & UFCW 1439 voted overwhelmingly to approve this historic merger.

16  > This merger brings together the **#EssentialWorkers** of UFCW 1439
17  > across eastern WA, northeast Oregon, and northern Idaho with the
> workers in grocery, healthcare, retail, cannabis, and many other
18  > industries represented by UFCW 21 across WA State.

> We are over 50,000 workers strong!
19
> By joining forces, we are strengthening our ability to win better
20  > contracts and to organize more workplaces where workers want a

union. Ultimately, this merger will help us build power with workers across many industries who do not yet have a voice. **#UnionStrong**

As Shannon Corrick, who works at Cheney Safeway, says: "The corporations we work for are getting bigger all the time and they treated us very poorly during COVID. This merger makes us a much bigger union so we can take them on, and win better wages and safer workplaces."

We know it may take some time to get used to calling us **#UFCW3000**. But please remember: we are still the same frontline, essential workers who have kept the grocery stores stocked, the hospitals running, the shops open, and the meat cut.

We have many fights ahead of us in 2022.

And we know you'll have our backs as we take those on, together. **#1u**

114.   To date, the post has received only 37 comments out of a now-combined membership of 50,000 workers.

115.   I attach as **Exhibit 20** a true and correct copy of my February 24, 2022, letter to International Vice President Todd Crosby, informing him of the results of the vote.

116.   Local 1439 also has a Facebook page, available at https://www.facebook.com/UFCW1439. I have reviewed that page and the first post on the Local 1439/21 merger went up on March 3, 2022. The post was identical to the post on Local 21's Facebook page the same day.

**The false, defamatory flyer and its impacts**

117.   On December 15, 2021, I saw the flyer that is the subject of this case. The flyer had been mailed in an envelope that was postmarked December 13, 2021, in

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

Spokane, Washington, and addressed to UFCW Shop Steward, Rosauers Supermarkets at an address in Spokane. The same flyer was also mailed to shop stewards and store managers at stores throughout Washington where UFCW members worked.

118.   I attach as **Exhibit 21** a true and correct copy of that flyer.

119.   The flyer made two main accusations against me.

120.   After a heading asserting that the "in-union 'Sexual Harassment club' is at it again!!," the flyer said: "Faye Gunther [sic.] (President of Local 21) helped former 367 President Angel Gonzalez cover up his harassment charges and paid him off in exchange for installing her puppet, Mike Hines."

121.   Other than that, I was President of Local 21, every part of that accusation is categorically false.

122.   Before seeing the flyer, I had no idea that Mr. Gonzalez faced sexual harassment charges or accusations.

123.   I never did anything to help Mr. Gonzalez cover up whatever sexual harassment charges or allegations he may have faced. I knew nothing about them.

124.   I never paid Mr. Gonzalez off for anything—nor, for that matter, did I (or Local 21) make any payment to Local 367 or anyone else at that union for anything relating to Mr. Gonzalez's holding onto his job or the installation of his successor.

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 31
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

125.    Mr. Hines is not my puppet. As discussed above, he left Local 21 for Local 367 over my objection. He certainly has managed his career on his own, without regard for my preferences.

126.    I had no role or influence whatsoever in Mr. Hines taking over the position of President of Local 367 from Mr. Gonzalez.

127.    The second main statement of the flyer—"Now she's helping Eric Renner (the Local 1439 President) hide from sexual harassment charges and land a cushy new gig with Local 21 through a forced merger."—is also false. Nonetheless, because I no longer wish to pursue my claims challenging the publication of that statement, I do not detail the reasons why that statement is false here.

128.    Shortly after learning about the flyer, I texted a photograph of the flyer and envelope to Mr. Hines because it mentioned him. I attach as **Exhibit 22** a true and correct copy of a photograph of my text exchange with Mr. Hines on December 15.

129.    I intentionally did not engage in public discussion of the flyer mailed on December 13. Based on my experience fighting off employers' campaigns to decertify unions, I felt that engaging in the substance of the false, defamatory flyer could only fan its false flames.

130.    I offered Mr. Hines some talking points we developed at Local 21 in case asked about the flyer. Those talking points included negative attacks are common and, if asked, we encouraged people not to spread it; instead, if asked, we offered

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 32
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

positive reasons to support the merger. The main question we wanted anyone raising the issue to ask themselves was whether they wanted higher wages, better benefits, and a safer workplace.

131.    The next day, December 16, I learned that a member of Local 367 who worked in Gig Harbor for a Fred Meyer store, Jessica Roach, had posted about the flyer in a Local 367-oriented Facebook group. This is a closed group.

132.    Around this time, Kendra Valdez (nee Anderson)—a supervisor with Local 21—asked me whether the flyer was true. I told her it was not true.

133.    Around the same time, Vanessa Giles—a Local 21 member—filed internal charges with the IU attempting to stop the merger based on the flyer's allegations. The IU ultimately dismissed the charges.

134.    On December 21, 2021, I received an email titled "Merger Between 21 and 1439 and 367" purporting to be sent by "Collin Farthingworth." It went to the 50 UFCW International Vice Presidents (IVPs), one of whom forwarded it to me. The email said:

> Leaders of the UFCW the cover ups must stop. Fake Faye and her overlord Todd Crosby must be stopped. Fake Faye acting as Todd Crosby's 'Maxwell' is continuing to help men in the Washington UFCW get away with protecting sexual harrassers [sic.].
>
> This must stop. First she protects Angel and now Eric. Eric and his staff sexually harass [sic.] members, organizers and other staff only to be given a merger and cushy job. Nothing has changed since I retired. We must not let Fake Faye and Todd Crosby destroy the UFCW by hiding sexual harasser friends. Ask the questions, why would ERic [sic.] step

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD
IGLITZIN &
LAVITT LLP

down and still keep a job. Ask to see Eric's personal file and all agreements made with him. Vote no to Mergers with the harrassment [sic.] club of 21.

135.    Through an investigator, Alfred Johnson of Secure Point Investigations, I learned that the email was spoofed. There is no known "Collin Farthingworth" who had been a member of Local 21 or 1439.

136.    On or about January 9, 2022, I learned that the defamatory flyer had been left the night before, January 8, at a Safeway in Spokane where UFCW members worked. I attach as **Exhibit 23** a true and correct copy of the text Mr. Renner sent me on January 9, 2022, informing me of this.

137.    I later obtained snapshots from a video provided by that Safeway of a man entering the store on January 8, 2022, around 5:50 p.m. and circulating placing the flyer in an area in which it appears UFCW members were likely to see it. I attach as **Exhibit 24** true and correct copies of those video snapshots.

138.    By April 2022, Secure Point Investigations had identified Joseph Emmons as the person who distributed the false, defamatory flyer at stores in Spokane on January 8, 2022. It had also been determined that Emmons worked with Michael Selvaggio, the principal of Ridgelark Strategies (a consulting firm), and outside Political Director to Local 555.

139.    On or around April 8, 2022, at the request of my attorneys who had retained them, Secure Point Investigations sent Mike Selvaggio a letter setting forth my belief

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 34
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1  that I had been defamed by a flyer Mr. Selvaggio had prepared and caused to be

2  distributed at grocery stores in Spokane where UFCW members work. The letter

3  also asked Mr. Selvaggio and Ridgelark Strategies to preserve relevant evidence.

4  140.   I attach as **Exhibit 25** a true and correct copy of that letter.

5  141.   A few weeks later, on or about April 23, 2022, Mr. Clay sent IU President

6  Perrone and the IEB an email asserting a formal complaint against Local 3000 for

7  interfering with Local 555 bargaining by hiring a private investigator to investigate

8  the source of the defamatory flyer and then sending Mr. Selvaggio the April 2022

9  preservation letter.

10  142.   Although I was not copied on Mr. Clay's email, I learned about it shortly

11  thereafter.

12  143.   On April 27, 2022, I received a letter from President Perrone informing me

13  that he had received a formal complaint from Local 555 President Dan Clay alleging

14  that UFCW 3000 was interfering with Local 555. The letter explained that President

15  Perrone had assigned IU Secretary-Treasurer Shaun Barclay to investigate Mr.

16  Clay's April 2022 complaint. I attach as **Exhibit 26** a true and correct copy of

17  President Perrone's April 27, 2022, letter.

18  144.   On May 7, 2022, my attorneys sent Joseph Emmons a letter informing him of

19  my view that he had defamed me by circulating a false flyer in Spokane stores. The

20  letter advised him to preserve relevant evidence and offered to explore the prospect

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 35
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

of resolving the matter without litigation. I attach as **Exhibit 27** a true and correct copy of this letter.

145.    In late May 2022, my attorney met with Mr. Emmon's attorney via Zoom. I authorized my attorney to let Mr. Emmons know that I would not sue him if he provided a sworn statement explaining what he knew about the flyer, its genesis, and its distribution. I understand that my attorneys conveyed this offer to Mr. Emmons's attorneys. Mr. Emmons declined the offer.

146.    I received a voicemail from Mr. Barclay in late May or early June 2022. In response to that message, I emailed him on June 6, 2022, letting him know that I am happy to meet and discuss the procedures for doing so. I attach as **Exhibit 28** a true and correct copy of that email.

147.    In late June 2022, I met with Mr. Barclay as part of that investigation.

148.    Around this time, I raised a counterclaim against Mr. Clay, namely that he had lodged his meritless claim against Local 3000 and me in an attempt to chill us from finding out the true source of the defamatory flyers.

149.    Following the meeting, on June 27, I sent Mr. Barclay a timeline of relevant events. I attach as **Exhibit 29** a true and correct copy of my June 27, 2022, email to him.

150.    On July 1, 2022, Mr. Barclay emailed me asking for additional evidence to support my counterclaim against Mr. Clay, in anticipation of the meeting I had set

DECLARATION OF FAYE IRENE GUENTHER ISO MOTION FOR SUMMARY JUDGMENT – Page 36
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    with Mr. Barclay for July 11–12, 2022. I attach as **Exhibit 30** a true and correct copy

2    of that email.

3    151.    I met with Mr. Barclay on July 11 and 12. During that meeting, Mr. Barclay

4    asked if I could put him in touch with the informant who helped me identify Joseph

5    Emmons as the person who circulated the flyers at Spokane stores in January 2022.

6    152.    On July 13, I emailed Mr. Barclay to let him know that I was willing to

7    approach my informant about cooperating with the IU's investigation if the IU and

8    Local 555 both signed an agreement not to retaliate. I attach as **Exhibit 31** a true and

9    correct copy of that email. Mr. Barclay responded the following week, on July 22,

10    that the IU would agree not to retaliate against a witness for providing truthful

11    information as part of its investigation, and that it would seek a similar commitment

12    from Local 555.

13    153.    The next day, I asked Mr. Barclay if the IU could agree in writing not to

14    disclose the name of the informant to Local 555. Local 555 never agreed to do so.

15    154.    I filed this lawsuit in Spokane Superior Court on July 25, 2022.

16    155.    Meanwhile, the IU's investigation into Mr. Clay's complaint and my

17    counterclaim continued. On July 27, 2022, I informed Mr. Barclay that my informant

18    was willing to talk only under subpoena.

19

20

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 37
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

156.   On August 15, 2022, I received an email and attached letter from President Perrone giving his conclusions from the investigation. I attach as **Exhibit 32** a true and correct copy of that email and attached letter.

157.   President Perrone's letter described the handbill that had been distributed to UFCW members in Spokane as "false" and he "condemn[ed] it in the strongest terms." He therefore denied Mr. Clay's claim against me, finding that I had a good-faith basis for sending the spoliation letter and threatening litigation. As for my claims that Mr. Clay mounted a frivolous claim against me to "chill" my discovering the truth, President Perrone concluded, at the time, that the IU was unable to fully investigate the matter and, based on the evidence then before it, it was unable to sustain the allegation. Presumably, that is because my informant (Jeff Anderson) was unwilling to participate in the IU investigation without a subpoena. The letter closed by offering the IU's assistance in helping the two affected local unions explore the possibility of a resolution.

158.   I attended every deposition in this litigation. During those depositions, I learned that Mr. Clay worked with Local 555's outside Political Director, Mike Selvaggio, to engage Mr. Emmons to distribute the defamatory flyers in Spokane stores for the purpose of bringing the false accusations to the attention of UFCW members there.

DECLARATION OF FAYE IRENE GUENTHER ISO MOTION FOR SUMMARY JUDGMENT – Page 38
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

159.    After learning these facts, on July 29, 2023, I sent a letter to President Perrone updating him on developments in the litigation and seeking his help to protect UFCW members and myself from the ongoing effects of the defamatory leaflet. I attach as **Exhibit 33** a true and correct copy of my letter to President Perrone.

160.    President Perrone responded by letter dated August 22, 2023, indicating that he was not then inclined to take further action at that time.

161.    On September 8, 2023, I emailed President Perrone with further developments in the litigation, and he responded by email on September 13, 2023, requesting additional information. I attach as **Exhibit 34** a true and correct copy of that exchange.

162.    In September 2023, someone shot several bullets through the window next to my desk. This occurred after a break-in to my office where someone used explosives to empty a safe in my office, Mr. Clay called me a "menace" and other invectives in an email that went to all 111 UFCW staff in the United States and Canada, and an incident where the IU Secretary-Treasurer told another Local President that "I had it coming." I had never faced anything like this before the defamatory flyers in December 2021 and January 2022.

163.    On November 3, 2023, President Perrone sent me an email saying that he had received depositions in this litigation and now determined that Local 555 was in fact responsible for the handbill. He directed Local 555 to cease and desist interfering in

DECLARATION OF FAYE IRENE GUENTHER ISO MOTION FOR SUMMARY JUDGMENT – Page 39
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

Local 3000's internal affairs. I attach as **Exhibit 35** a true and correct copy of that email. I thanked him for taking the issue seriously and supporting my right to defend my reputation.

164.   Although I appreciated—and still appreciate that President Perrone finally sustained my claim within the IU—it did not fully alleviate the harm to me from Mr. Clay's, Mr. Selvaggio's, and Mr. Emmon's defamatory flyer. For example, I have suffered from severe anxiety since 2022. It got so bad that I had to take a month off of work, I have moved my personal residence to a more remote location at significant cost, I am working to eliminate my home address from public records and use a P.O. box now, I have beefed up security at my office, I generally travel only with companions, and I have spent over $1,000 on professional care for my anxiety.

165.   I believe the flyer also has had, and continues to have, ongoing effects on my reputation.

166.   For example, since the flyers 2022, I have been afraid to attend IU meetings where Dan Clay is present. I have thus repeatedly asked President Perrone to provide me security at those meetings, but he has repeatedly denied my requests. This caused me to live in constant fear whenever I attended a union event where Mr. Clay was present.

167.   I am currently the President of the largest UFCW local union in the United States. Usually, President Perrone appoints all local union presidents—especially of

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 40
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

the largest local unions—to positions as International Vice Presidents (IVPs), who serve on the International Executive Board. Had President Perrone appointed me to that position, I would have made an additional $20,000 per year. Even though President Perrone ultimately cleared me of wrongdoing in interfering with Local 555's bargaining relationships, I believe Mr. Clay's, Mr. Selvaggio's, and Mr. Emmon's publication of the defamatory flyers ultimately convinced President Perrone that "where there's smoke, there's fire." In other words, he wanted to disassociate himself with me because of the reputational harm the flyers caused me and my efforts to fight back against their false accusations.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed on this 19th day of September, 2024.

_____
Faye Irene Guenther

DECLARATION OF FAYE IRENE GUENTHER ISO
MOTION FOR SUMMARY JUDGMENT – Page 41
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1

## DECLARATION OF SERVICE

2    I hereby certify that on the date noted below, I electronically filed the

3 foregoing with the Clerk of the Court using the CM/ECF system, which will send

4 notification of such filing to those attorneys of record registered on the CM/ECF

5 system.

6

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| Ambika Kumar<br>Sara A. Fairchild<br>Davis Wright Tremaine LLP<br>920 Fifth Ave., Ste. 3300<br>Seattle, WA 98104<br>ambikakumar@dwt.com<br>sarafairchild@dwt.com | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☐ E-mail<br>☐ U.S. Mail<br>☒ E-Service |
| John A. DiLorenzo<br>Davis Wright Tremaine LLP<br>560 SW 10th Ave., Ste. 700<br>Portland, OR 97205<br>johndilorenzo@dwt.com | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☐ E-mail<br>☐ U.S. Mail<br>☒ E-Service |

14    DATED this 27th day of September, 2024 at Seattle, Washington.

By: _____
Esmeralda Valenzuela, Paralegal

DECLARATION OF SERVICE
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

# EXHIBIT 1

**Faye Guenther**

| | |
|---|---|
| **From:** | Faye Guenther |
| **Sent:** | Friday, January 27, 2023 1:22 PM |
| **To:** | ldayan@bredhoff.com |
| **Subject:** | FW: A shame----URGENT REQUEST TO MEET Thursday, September 26 |

Notification to UFCW International.  Retaliation for reporting Joe Earleywine and Kate Meckler started on this date and is continuous and ongoing.

---

**From:** Faye Guenther
**Sent:** Thursday, September 26, 2019 9:30 PM
**To:** Kate Meckler <kmeckler@ufcw.org>
**Cc:** Joe Mizrahi (jmizrahi@ufcw21.org) <jmizrahi@ufcw21.org>
**Subject:** RE: A shame----URGENT REQUEST TO MEET Thursday, September 26

Kate:

You have failed to respond to my request to meet.

Four new people have come forward to share their story of harassment and inappropriate conduct by Joe Earleywine.

One story involves a UFCW member with an eye witness.

One story includes a group of staff who prepared to sign a petition to demand the Joe Earleywine cease and desist from openly using the word "CUNT".

One story include a woman who has come forward stating that Joe constantly made comments about her body, including her breasts.

On story includes Joe Earleywine stating that he would like to bend "_____" over a desk and "FUCK" her.

I have raised 7 reports to you about serious sexual harassment and misconduct by a staff person you supervise.  It is shocking you have failed to respond.


Kate, if you fail to respond to me with a meeting time, I will escalate this request to Marc Perrone by November 15, 2019.


Faye

---

**From:** Faye Guenther
**Sent:** Tuesday, September 24, 2019 10:55 AM
**To:** Kate Meckler <kmeckler@ufcw.org>
**Cc:** Joe Mizrahi (jmizrahi@ufcw21.org) <jmizrahi@ufcw21.org>
**Subject:** FW: A shame----URGENT REQUEST TO MEET Thursday, September 26

Kate:

In addition to discussing your misconduct below, we would like to discuss misconduct by your staff person Joe Earleywine.

New allegations of sexual harassment have been brought to light since his departure from UFCW 21.

These allegations include, but are not limited to the below:

1) In a group of people, Joe Earleywine stated, "I work for that sweet piece of ass" referring to Kate Meckler and overheard by at least one UFCW 21 staff.

2) Whispering in a UFCW 21 senior staff woman's ear, "Nice boobs," on multiple occasions.

3) We will discuss additional reports when we meet face to face.

4) Per law, we expect no retaliation for the staff who come forward.

5) We renew our request that Joe Earleywine have no interaction with the staff, members, or eboard of UFCW 21. I have requested this from you and you have failed to respond or instruct your staff accordingly.


We are available to meet:

October 10---- ALL DAY

October 15---- 9 a.m to noon


==Please confirm you can meet with Joe Mizrahi and me.==

Faye

From: Faye Guenther
Sent: Monday, September 23, 3:33 PM
Subject: A shame----URGENT REQUEST TO MEET Thursday, September 26
To: Kate Meckler
Cc: Joe Mizrahi (jmizrahi@ufcw21.org)

Dear Kate---

It is a shame you refused to meet with Joe Mizrahi and me today.

I request a meeting with you. I would like to discuss your below conduct:

--Failure to attend meetings, such as bargaining sessions.
--Refusal to meet with elected officers of UFCW 21.
--Failure to timely return emails, calls.
--Failure to answer the phone on a regular basis.
--Repeated Dishonesty.
--Inappropriate conversations with local staff without permission of elected union officers.
--Inability to pay attention during bargaining due to constantly texting and playing with two cell phones. This has occurred in front of staff and members on multiple occasions.
--Inability to supervise and maintain control over staff reporting to you.
--Recruiting and hiring local staff without permission of elected union officers.

2

--Creation of conflict and confusion between elected officers in the state of Washington regarding Cannabis Jurisdiction.

-- Creation of conflict and confusion between elected officers in the state of Washington regarding Health Care Jurisdiction.

--Hiring UFCW 21 staff without the permission of knowledge of the  UFCW 21 elected officers.

--Failure to stay connected to the UFCW 21 bargain, showing up to the wrong location for bargaining.


Joe and I are available on Thursday, September 26, 2019, anytime between 11:30 a.m. and 2 p.m.


Thank you for your prompt attention to this matter.

Faye Guenther

RFP Resp No. 12 - 012003

# EXHIBIT 2



**From:** Angel Gonzalez <agonzalez@ufcw367.org>
**Sent:** Tuesday, June 30, 2020 3:22 PM
**To:** Faye Guenther <faye@ufcw21.org>
**Subject:** Re: Relationship Between UFCW 21 and UFCW 367 Damaged

Hi Faye,

I regret your position. However, we have said all we are going to say on this matter. As always, we remain willing and able to work with Local 21 on behalf of all of our members. We have nothing further to add. As far as Local 367 is concerned, this ter is closed.

In Solidarity,
Angel F. Gonzalez Irizarry

On Jun 30, 2020, at 3:08 PM, Faye Guenther <faye@ufcw21.org> wrote:

Hi Angel,

I will assume the best that you did not get the below email because I sent it to your International email account.

Our relationship is damaged and will need to be fixed if we plan to bargain together in 2022.   If you are interested in trying to rectify the situation, please reach out.

Have a good weekend-

Faye

**From:** Faye Guenther <faye@ufcw21.org>
**Sent:** Thursday, June 4, 2020 11:43 AM
**To:** Angel Gonzalez <agonzalez@ufcw.org>
**Subject:** Re: Fred Meyer Hero Pay Informational Pickets



EXHIBIT
35
DEPONENT NAME: Guenther. F.
DATE: 06/06/24

EXHIBIT
35

Guenther v Emmons 0005013(FIG Resp RFP #4)

I am sending this to you privately.

You made an accusation against the top three officers of UFCW 21...you put my relationship with Frank in question, accused UFCW 21 officers of making a back room deal with Safeway regarding a roof collapsing on our members, and then stated Mia and Joe did not call UFCW 367 back, when Mia was in constant contact with UFCW 367.

Regardless of these false accusations I worked with you to coordinate with Frank to resolve the problem in the interest of all members.

We will be unavailable to coordinate with you until we rectify this situation.

Thank you,

Faye

Get Outlook for Android

**From:** Angel Gonzalez <agonzalez@ufcw.org>
**Sent:** Thursday, June 4, 2020 10:32:12 AM
**To:** Faye Guenther <faye@ufcw21.org>
**Cc:** Eric Renner <eric@ufcw1439.org>; Daniel Clay <dclay@ufcw555.org>; Kate Meckler <kmeckler@ufcw.org>; Sean Embly <sembly@ufcw21.org>; Marc Auerbach <mauerbach@ufcw21.org>; Joe Mizrahi <jmizrahi@ufcw21.org>
**Subject:** Re: Fred Meyer Hero Pay Informational Pickets

Hi Faye: We are very interested in coordinating all actions. Tuesday, June 9th works well for us at 367.

In Solidarity,
Angel F. Gonzalez Irizarry

On Jun 4, 2020, at 9:48 AM, Faye Guenther <faye@ufcw21.org> wrote:

Hi Folks-

We met with our full bargaining team and the team wants to move toward votes of no confidence and adopt a comprehensive campaign to build for 2022. We will be meeting with Teamsters 38 to determine next steps.

We are evaluating whether we have capacity to picket and pull off massive votes of no confidence simultaneously.

Angel, if you wish to discuss a comprehensive approach to 2022 bargaining we can set up a call.

Guenther v Emmons 0005014(FIG Resp RFP #4)

Faye

Get Outlook for Android

**From:** Angel Gonzalez <agonzalez@ufcw.org>
**Sent:** Thursday, June 4, 2020 8:45:39 AM
**To:** Eric Renner <eric@ufcw1439.org>
**Cc:** Daniel Clay <dclay@ufcw555.org>; Faye Guenther <faye@ufcw21.org>; Kate Meckler
<kmeckler@ufcw.org>
**Subject:** Re: Fred Meyer Hero Pay Informational Pickets

Great news, Eric! We'll set up a call to discuss details. How does Tuesday, June 9th look for you?

In Solidarity,
Angel F. Gonzalez Irizarry

> On Jun 4, 2020, at 8:14 AM, Eric Renner <eric@ufcw1439.org> wrote:
>
> Hello All,
> Local 1439 will follow your lead Angel and be doing informational picketing over this
> issue on June 19th. We are happy to coordinate the action.
> Thanks,
> Eric
>
> Sent from my iPad
>
> On Jun 2, 2020, at 1:21 PM, Angel Gonzalez <agonzalez@ufcw.org> wrote:
>
> Hi All:
>
> I hope this email finds you doing well. Local 367 will be conducting
> informational pickets at two of our largest FM stores on Friday, June 19th
> and Saturday, June 20th, to coincide with Kroger's ending date on hero
> pay. We would very much like to coordinate with your Local Unions in
> order to have a successful action for all of our members. Is this something
> you'd be interested in working on together? Please advise
>
> In solidarity,
> Angel

Guenther v Emmons 0005015(FIG Resp RFP #4)

# EXHIBIT 3

## UFCW3000 Administrator

**From:** Michael Hines <mhines@ufcw367.org>
**Sent:** Wednesday, July 1, 2020 12:08 PM
**To:** Faye Guenther
**Subject:** Communication with 21

Hi Faye,

I received the notification, through Angel and Kate, that 367 staff are not to communicate directly with 21 regarding grievances, bargaining, pension , etc.

I am currently involved in the following with your staff:

- Pension language for all the smaller, independent units with Sean Embly. He has been the go between with the Trust attorneys due to changes bargained last fall.
- Central Co-op Health Insurance. Andy and I are wrapping this up but each local will have grievances filed against the employer.
- Franz Bargaining with Regan McBride and Teamsters 38.
- There were/are some joint discussions  between Lisa Oakland and our grievance department regarding Select a Schedule and bargaining unit work.

How would you like me to proceed going forward on these matters as related to 21?

Sincerely,


**Michael Hines**
**Executive Assistant to the Trustee**
6403 Lakewood Dr. W. | Tacoma, WA 98467
Main: 253-589-0367 | Toll Free: 800-562-3645
www.facebook.com/ufcw367



RFP No 5 - 005228

## UFCW3000 Administrator

| | |
|---|---|
| **From:** | Faye Guenther |
| **Sent:** | Wednesday, July 1, 2020 1:21 PM |
| **To:** | Michael Hines |
| **Cc:** | Joe Mizrahi;Mia Contreras;Sarah Cherin;Maria Milliron;Kasi Farrar;Angel Gonzalez |
| **Subject:** | Re: Communication with 21 |

Hi Mike,

Angel is the President of UFCW 367 and an adult. He knows how to pick up the phone and fix this.


Faye

Get Outlook for Android

---

**From:** Michael Hines <mhines@ufcw367.org>
**Sent:** Wednesday, July 1, 2020 12:08:23 PM
**To:** Faye Guenther <faye@ufcw21.org>
**Subject:** Communication with 21

Hi Faye,

I received the notification, through Angel and Kate, that 367 staff are not to communicate directly with 21 regarding grievances, bargaining, pension , etc.

I am currently involved in the following with your staff:

- Pension language for all the smaller, independent units with Sean Embly. He has been the go between with the Trust attorneys due to changes bargained last fall.
- Central Co-op Health Insurance. Andy and I are wrapping this up but each local will have grievances filed against the employer.
- Franz Bargaining with Regan McBride and Teamsters 38.
- There were/are some joint discussions  between Lisa Oakland and our grievance department regarding Select a Schedule and bargaining unit work.

How would you like me to proceed going forward on these matters as related to 21?

Sincerely,


**Michael Hines**
**Executive Assistant to the Trustee**
6403 Lakewood Dr. W. | Tacoma, WA 98467
Main: 253-589-0367 | Toll Free: 800-562-3645
www.facebook.com/ufcw367



484

# EXHIBIT 4

**UFCW3000 Administrator**

| | |
|---|---|
| **From:** | Faye Guenther |
| **Sent:** | Wednesday, August 4, 2021 9:44 PM |
| **To:** | Michael Hines;Eric Renner;Dan Clay |
| **Cc:** | Kate Meckler |
| **Subject:** | RE: Angel Gonzalez Resignation |

Dear Mike—

UFCW 21 looks forward to working with you Mike.   Welcome.  Let us know if you need anything.

Faye

**From:** Michael Hines <mhines@ufcw367.org>
**Sent:** Wednesday, August 4, 2021 8:33 PM
**To:** Faye Guenther <faye@ufcw21.org>; Eric Renner <eric@ufcw1439.org>; Dan Clay <dclay@ufcw555.org>
**Cc:** Kate Meckler <kmeckler@ufcw.org>
**Subject:** Angel Gonzalez Resignation

Brothers and Sisters,


I wanted to take moment and write to you personally to inform you that Angel Gonzalez has resigned his position as President of Local 367 as of July 25, 2021 due to ongoing health concerns.  As Secretary/Treasurer, I will be performing the duties of President over the next 30 days, at which point, the Local's  Executive Board will meet and confirm a new President for our Local.

I want to reassure you that my top priority is to maintain the integrity, trust and loyalty of our Local and its' members and will carry out my duties with the same.  If you have any questions, please give me  a call directly.


**Michael Hines**
**Secretary Treasurer**
6403 Lakewood Dr. W. | Tacoma, WA 98467
Main: 253-589-0367 | Cell: 253-906-9205
www.facebook.com/ufcw367



***NOTICE:*** *If you wish to file a grievance or have another time sensitive matter to address, you must contact Local 367's office via telephone and ask to speak to a representative.  Your call will be routed to the appropriate staff person at that time.  UFCW Local 367 does not accept notifications of grievances or other official business via e-mail, text or voicemail. If you experience an event at work on a weekend or holiday, which requires action on the part of the Union, please contact the office on the next business day.*

RFP No 5 - 005657

# EXHIBIT 5

< **Todd DC, Kate Meckler R... (2)**   ⋮
2 recipients

Hope the member and everyone is ok.  6:15 PM

Tuesday, July 27, 2021

Hi Todd and Kate- I am getting calls and texts that Angel has **resigned**...I have a board meeting at 630 and questions will fly...is this a rumor?

MMS
3:23 PM

**Todd DC**

I have no idea. I haven't heard anything.

MMS
3:29 PM

**K** Kate Meckler Region 7 Director

Who are you getting calls and texts from?
I recommend that out of respect to the 367 e-board and members that you let the local announce any leadership changes they have on their own timeline and advise anyone inquiring about rumors of the same. Appreciate it and thank you.

MMS
3:42 PM

Hi Kate...I am passing the question on to you. UFCW 21 has never and will never make announcements about leadership transitions at other locals. Previous Regional Directors kept us informed of these types of things so we did not get side swiped in meetings.

MMS
4:26 PM

**K** Kate Meckler Region 7 Director

> LII

RFP Resp No 10 - 010003

# EXHIBIT 6



RFP Resp No 10 - 010007

# EXHIBIT 7

**Faye Guenther** </O=EXCHANGELABS/OU=EXCHANGE
ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/
CN=RECIPIENTS/
CN=1C26EB4A4C7F46F092AE2B1E4EC119DB-FAYE
GUENTH>

Aug 04, 2021 at 20:32 PM

To: Aaron Streepy

1 Attachment

FW: Angel Gonzalez Resignation

---

**From:** Faye Guenther
**Sent:** Wednesday, August 4, 2021 10:05 PM
**To:** andrea.zinder@UFCW324.ORG; john.grant@ufcw770.org; Kim Cordova <kcordova@ufcw7.com>
**Subject:** FW: Angel Gonzalez Resignation

FYI. I Have know Mike Hines for most of my adult life. He has very good potential. I think things up here are a little messed up, but with time, I think this will be a positive development.

Talk soon-

Faye

---

**From:** Michael Hines <mhines@ufcw367.org>
**Sent:** Wednesday, August 4, 2021 8:33 PM
**To:** Faye Guenther <faye@ufcw21.org>; Eric Renner <eric@ufcw1439.org>; Dan Clay <dclay@ufcw555.org>
**Cc:** Kate Meckler <kmeckler@ufcw.org>
**Subject:** Angel Gonzalez Resignation

Brothers and Sisters,

# EXHIBIT 8

**From:** "Daniel Clay" <dclay@ufcw555.org>
**Sent:** Wed, 21 Jul 2021 04:13:45 +0000 (UTC)
**To:** "Angel Gonzalez" <agonzalez@ufcw367.org>; "Esai Alday" <ealday@ufcw555.org>; "Kate Meckler" <kmeckler@ufcw.org>
**Subject:** Fwd: R7&R8 Follow Up Meeting - Aug 13?

---

Shit. We'd better plan for a week...


---------- Forwarded message ---------
From: **Faye Guenther** <faye@ufcw21.org>
Date: Tue, Jul 20, 2021 at 10:12 PM
Subject: Re: R7&R8 Follow Up Meeting - Aug 13?
To: Kate Meckler <kmeckler@ufcw.org>, Kim Cordova <kcordova@ufcw7.com>, dclay@ufcw555.org <dclay@ufcw555.org>, Angel Gonzalez <agonzalez@ufcw367.org>, Eric Renner <eric@ufcw1439.org>, Frank Mutchie (Mutchie@ufcw1496.org) <Mutchie@ufcw1496.org>
CC: Milton Jones <mjones@ufcw.org>, Lois Hampton <lhampton@ufcw.org>, Bryan Wynn <bwynn@ufcw.org>



Thank you Kate.



My thoughts on Agenda:

1. Bargaining Updates from other Regions on Kroger/Albertsons: What to expect

    a. Bargaining Positions of Employer

2. What is our theory to win? Can we find common ground on this issue? If not, what does that mean? Are there still some proposals we can unify around, or some acts of solidarity we can agree on (for example, event though UFCW 7, 21, and 367 all bargain separately, we agreed on the Hazard Pay truck).
3. Member Issues Based on Polling/Surveys: What will our members fight for?

    a. Wages? Do we have ideas about opening proposals? Top of scale, money in middle? Opening Wage? If Kroger paying all workers in Richland 15$ to start- should that be our opening proposal? How do we deal with Journey? Can we win longevity pay? What do workers want more, a shorter scale or money at the top?
    b. Protect HC: What do our health care plans need? Are they healthy?
    c. Secure Pensions: What is needed in Pension? Some plans in the red, some in green?
    d. With wages/HC/Pension-how would that pie be divided?
    e. What to do to remain in solidarity if we are in very different places on HC/Wages/Pension?
    f. Safety? What do workers want/need post covid?
    g. Pandemic MOU- Hazard pay, etc
    h. Organizing Rights: What is double breasted? What demands can we make regarding organizing at the bargaining table?

        i. Kroger Organizing Example- imbedding questions in surveys, even if we are not at same table/on same timeline, and surveying the non union members.

    i. Other

4. Even if Locals are on different timelines, what field actions would show the employer that we are united, and help members feel like we are all in this together.

Confidential

5.  What actions will our members take?

    a.  Sign petitions?
    b.  Phone bank?
    c.  Leaflet?
    d.  Picket?
    e.  Attend meetings with other locals? Send solidarity committees to other areas of the country to help sign up Kroger members to join our union? Support bargaining in other parts of the country? Etc.
    f.  Sign Strike Pledge Cards?
    g.  Vote to Strike?
    h.  March? Rally?
    i.  Strike?

6.  Depending on our theory of change discussion, and even if we can't all agree, what communications can we agree on that build trust and educate?

    a.  Broad Inoculation?
    b.  Broad UFCW Education/benefits etc
    c.  Picket Captain Training, or steward training?
    d.  Worksite blitzes? Night Blitzes?
    e.  CAT Meetings?
    f.  Build for ULP Strike?
    g.  Boycotts?
    h.  Other

7.  Building a field campaign with some common actions/communication, even if some locals are bargaining separately or disagree on the theory of change/leverage (a thousands paths to the mountain top concept).
8.  Strike Sanctions: Process and Approval
9.  Resources needed:

    a.  Research
    b.  Coms Support
    c.  Political/Community Outreach

10.  Next meeting/next steps

I look forward to meeting.

Faye

Confidential

**From:** Kate Meckler <kmeckler@ufcw.org>
**Sent:** Tuesday, July 20, 2021 3:49:54 PM
**To:** Faye Guenther <faye@ufcw21.org>; Kim Cordova <kcordova@ufcw7.com>; dclay@ufcw555.org <dclay@ufcw555.org>; Angel Gonzalez <agonzalez@ufcw367.org>; Eric Renner <eric@ufcw1439.org>; Frank Mutchie (Mutchie@ufcw1496.org) <Mutchie@ufcw1496.org>
**Cc:** Milton Jones <mjones@ufcw.org>; Lois Hampton <lhampton@ufcw.org>; Bryan Wynn <bwynn@ufcw.org>
**Subject:** Re: R7&R8 Follow Up Meeting - Aug 13?

Hi Everyone - yes, we will be working on a revised agenda and get it out to you.  In the meantime, if you have suggestions or ideas for the agenda please feel free to share.

Thanks,

Kate

Get Outlook for iOS

---

**From:** Faye Guenther <faye@ufcw21.org>
**Sent:** Tuesday, July 20, 2021 10:20 AM
**To:** Kate Meckler; Kim Cordova; dclay@ufcw555.org; Angel Gonzalez; Eric Renner; Frank Mutchie (Mutchie@ufcw1496.org)
**Cc:** Milton Jones; Lois Hampton
**Subject:** Re: R7&R8 Follow Up Meeting - Aug 13?

HI Kate-

UFCW 21 is available.

Can you share an agenda with this group? Thank you-

Faye

Get Outlook for Android

Confidential

**From:** Kate Meckler <kmeckler@ufcw.org>
**Sent:** Monday, July 19, 2021 4:20:17 PM
**To:** Kim Cordova <kcordova@ufcw7.com>; dclay@ufcw555.org <dclay@ufcw555.org>; Faye Guenther <faye@ufcw21.org>; Angel Gonzalez <agonzalez@ufcw367.org>; Eric Renner <eric@ufcw1439.org>; Frank Mutchie (Mutchie@ufcw1496.org) <Mutchie@ufcw1496.org>
**Cc:** Milton Jones <mjones@ufcw.org>; Lois Hampton <lhampton@ufcw.org>
**Subject:** R7&R8 Follow Up Meeting - Aug 13?

Good Afternoon –

As we discussed at last week's meeting with Regions 7 and 8, the local unions in attendance agreed to meet again to discuss coordination possibilities for 2021-2022 retail negotiations.   The purpose of this meeting is to have conversation on what coordination could look like among the locals and what we may be able to collectively agreed to do together.

Therefore, we would like to see if everyone is available on Friday August 13th at Local 324, for another meeting with Region 7 and Region 8 locals to talk about the collaboration on bargaining?

Please let me know as soon as you can if you can attend so we can plan accordingly.

Thanks,

Kate

Kathleen Keller Meckler
International Vice President &
Director, UFCW Region 7 NW
16400 Southcenter Parkway, Suite 300
Tukwila, WA  98188
206.575.2211 office
202.406.0901 cell

UFCW-EMMONS_000784

# EXHIBIT 9

| | |
|---|---|
| **From:** | "Daniel Clay" <dclay@ufcw555.org> |
| **Sent:** | Thu, 22 Jul 2021 02:05:14 +0000 (UTC) |
| **To:** | "Kate Meckler" <kmeckler@ufcw.org> |
| **Cc:** | "Kim Cordova" <kcordova@ufcw7.com>; "Faye Guenther" <faye@ufcw21.org>; "Angel Gonzalez" <agonzalez@ufcw367.org>; "Eric Renner" <eric@ufcw1439.org>; "Frank Mutchie (Mutchie@ufcw1496.org)" <Mutchie@ufcw1496.org>; "Milton Jones" <mjones@ufcw.org>; "Lois Hampton" <lhampton@ufcw.org> |
| **Subject:** | Re: R7&R8 Follow Up Meeting - Aug 13? |

---

All -

At our last meeting in Los Angeles I talked about the need to be honest and straightforward with each other. Without that foundation, I do not see how we can work together. It is in that spirit we write this email.

UFCW Local 555 and 368a have reached an agreement to merge. Both Jack and I, along with our Executive Board Members, believe this merger will better the lives of both our memberships. As such, Local 368a will be joining with Local 555 in our current negotiations.

In addition, we have recently been in discussions with Local 367 regarding our shared interests and values. As a result, Local 367 and Local 555 have committed to collaborate on bargaining. Local 555's next bargaining dates are set for this coming Thursday/Friday and we are pleased to announce Local 367 will be joining our table.

As we continue to discuss over email what is to happen at our next meeting in Los Angeles, I wanted to lay our cards on the table. I would also like to call out that a lot of phone calls have occurred since our last meeting and there seems to be yet another disconnect between what people are saying publicly versus privately. If you've already decided on your plan or just want to argue your position, let's save the time and resources. If anyone wants to have a discussion about how we can work together for the betterment of our members, we are open to a discussion.

Good luck to you all in what you choose.

Best,

Dan

On Mon, Jul 19, 2021 at 4:20 PM Kate Meckler <kmeckler@ufcw.org> wrote:


Good Afternoon –


As we discussed at last week's meeting with Regions 7 and 8, the local unions in attendance agreed to meet again to discuss coordination possibilities for 2021-2022 retail negotiations.   The purpose of this meeting is to have conversation on what coordination could look like among the locals and what we may be able to collectively agreed to do together.


Therefore, we would like to see if everyone is available on Friday August 13th at Local 324, for another meeting with Region 7 and Region 8 locals to talk about the collaboration on bargaining?


Please let me know as soon as you can if you can attend so we can plan accordingly.


Thanks,

Confidential

Kathleen Keller Meckler

International Vice President &

Director, UFCW Region 7 NW

16400 Southcenter Parkway, Suite 300

Tukwila, WA  98188

206.575.2211 office

202.406.0901 cell

Confidential

# EXHIBIT 10

| | |
|---|---|
| **From:** | "Daniel Clay" <dclay@ufcw555.org> |
| **Sent:** | Wed, 28 Jul 2021 06:21:55 +0000 (UTC) |
| **To:** | "Esai Alday" <ealday@ufcw555.org> |
| **Cc:** | "Kate Meckler" <kmeckler@ufcw.org>; "Bryan Wynn" <bwynn@ufcw.org> |
| **Subject:** | Fwd: Request for International Research Support: Side by side between UFCW 555 and UFCW 21 |
| **Attachments:** | UFCW Local 555 health comparison example.docx |

Esai –

Faye sent me this tonight. I clutched my pearls in outrage as I read it. Ha ha ha.

Honestly, it made my night. She's super pissed and parts of the letter are delightfully petty because of it.

Enjoy the read.

Dan

P.S. Copied Bryan and Kate in since the LA meeting came up.


---------- Forwarded message ---------
From: **Faye Guenther** <faye@ufcw21.org>
Date: Tue, Jul 27, 2021 at 9:53 PM
Subject: Fwd: Request for International Research Support: Side by side between UFCW 555 and UFCW 21
To: Daniel Clay <dclay@ufcw555.org>
Cc: Joe Mizrahi <jmizrahi@ufcw21.org>


Dan-

In full transparency, I am sharing the email below. I know how rumors can spread.


I hope you support my request to the International to do a side by side between UFCW 21 and UFCW 555. I will also be requesting this tomorrow at our chain meetings.

Faye

Get Outlook for Android

---

**From:** Faye Guenther <faye@ufcw21.org>
**Sent:** Tuesday, July 27, 2021, 6:21 PM
**To:** Milton Jones; 'kmeckler@ufcw.org'
**Subject:** Request for International Research Support: Side by side between UFCW 555 and UFCW 21



7/27/21


Dear Milton and Kate-

Confidential

We learned from an email from Dan where he announced the merger with the Idaho local, that UFCW 367 has decided to join the UFCW 555 bargaining table because of "shared interest and values". Having been involved in 4 mergers, I know the International must approve such transactions. Since Dan announced this merger with the Idaho local and that UFCW 367 is joining their table, was the International involved in this entire decision?  If so, I would like to discuss why such action was taken.

We have reports from the 555 bargaining table that Angel did not show up and that no UFCW 367 rank and file members attended the bargain, so I am unsure how seriously to take Dan's email and my hope is that the International had nothing to do with Angel deciding to join Dan's table. The implications of this decision could have a very negative impact on UFCW 21 and Teamster 37 members.

In regards to "shared interests and values" it is my hope that UFCW 555 and UFCW 367 do not wish to reduce the wages and benefits of UFCW 367 members.  I've attached the side by side comparison of the Sound Health plan (which includes 367 members) with the UFCW 555 plan. We know Kroger is intent on lowering healthcare standards across the country. Obviously, we are concerned that the employers will be all too eager to move 367 members to cheaper and less rich health plan, and potentially attempt to move 367 members to the lower wage rates in 555 contracts as well. If the employer refuses to bargain with UFCW 367 until legally required, Dan's timeline is not lined up unless he holds out.  If Dan settles, UFCW 367 will be left to settle their own contract.  One of the values shared by UFCW 555 at the meeting in California is that it was not strategic to prepare for a strike.  If not preparing for a strike is an additional shared value, then  UFCW 357 will be isolated, without having done the work to prepare.

Should Angel agree to a plan that increases eligibility requirements for healthcare, increase premiums, out of pockets, wait periods, copays, etc. that this erosion will inevitably leak into our bargain.  We have alerted Jeff Endick and Sharon Goodman about Angel's erratic and unpredictable behavior to prepare legally for impacts their actions may have on the Sound Trust.

I am hoping, along with your research department, that you can help me answer the following questions:

1.  Is our information in this side by side accurate?
2.  We need help creating a full side by side comparing all wages and benefits between UFCW 21 and 555 so that we know all the risks we face. If you have a copy of the UFCW 555 contract, we request a copy.
3.  Can the bargaining department send us a current Health, Pension comparison, so that we understand the other possible ramifications?
4.  What role, if any,  did the International play in having UFCW 367 and UFCW 555 join together to bargain?

We will always stand in solidarity with 367 and 555 members and leadership and will do whatever it takes to stop the UFCW 367 members from being harmed and moved to a substandard contract.

UFCW-EMMONS_000802

We want to make sure that we flagged this potential problem for you all and also wanted to make sure we had accurate information.


Thank you,


Faye Guenther

Cell: 206-294-9337

UFCW-EMMONS_000803

Confidential

|  | UFCW Local 555 | | | UFCW Local 21 | | |
|---|---|---|---|---|---|---|
|  | Level 1 | Level 2 | Level 3 | Sound Plan/Kaiser | Sound Plus Plan | Sound Plus Plan PPO Aetna Choice POS II |
| Eligibility | 80 hours per month (for any type of coverage) | | | 60 hours per month individual 80 hours per month for family | | |
| Premiums Based on per week (per month) | $7 individual<br>$12 individual+kids<br>$133.25 (optional add spouse total of $533 month) | $10 individual<br>$15 ind+kids<br>$20 ind+spouse<br>$25 all family | $10 individual<br>$15 ind+kids<br>$20 ind+spouse<br>$25 all family | $5 individual<br>$15 Ind + Spouse<br>$9 Ind+Kids<br>$19 all family | $5 individual<br>$15 Ind + Spouse<br>$9 Ind+Kids<br>$19 all family | $9 individual<br>$15 Ind + Spouse<br>$15 Ind+Kids<br>$23 all family |
| Annual deductible | $400 (individual)<br>$800(family) | $400 (individual)<br>$800(family) | $300 (Individual)<br>$600(family) | $300 Individual<br>$500 Family | $250 Individual<br>$500 Family | $250 Individual<br>$500 Family |
| Annual Out of Pocket | $3,900 individual<br>$7,800 family | $3,400 individual<br>$6,800 family | $3,300 individual<br>$6,600 family | $2,750 Individual<br>$5,500 family | $2,250 Individual<br>$4,500 family | $2,250 Individual<br>$4,500 family |
| Co-insurance is this the split %? (Based on after deductible) | 80% in network<br>70% out of network | 80% in network<br>70% out of network | 85% in network<br>70% out of network | 80% after deductible | 85% after deductible | 85% after deductible |
| Coverage starts | After working 7 months | After 2 years | After 4 year 6 months | After working 3 months |  | After working 3 years |

# EXHIBIT 11

4/22/22, 10:04 AM UFCW 555 Mail - Fwd: Request for International Research Support: Side by side between UFCW 555 and UFCW 21

Case 2:22-cv-00272-TOR ECF No. 107 filed 09/27/24 PageID.2313 Page 76 of 184



Daniel Clay <dclay@ufcw555.org>

---

## Fwd: Request for International Research Support: Side by side between UFCW 555 and UFCW 21

---

**Daniel Clay** <dclay@ufcw555.org>                                    Wed, Jul 28, 2021 at 3:07 PM
To: Marc Perrone <mperrone@ufcw.org>
Cc: mhines@ufcw367.org, Lisa Pedersen <lpedersen@ufcw.org>, John Bishop <Jbishop@ufcw555.org>, Kate Meckler <kmeckler@ufcw.org>

Dear President Perrone,

I am writing to file a formal complaint that UFCW Local 21 is actively interfering with Local 555 and 367's retail bargaining table. This interference is having a detrimental impact on Local 555 and our membership.

As you may know, on July 21st UFCW Local 555 informed other UFCW Region 7 Presidents of our pending merger with Local 368A as well as our agreement with Local 367 to collaborate on retail bargaining. As of Thursday of last week, we began bargaining with the retail employers and informed Fred Meyer, Allied Employers, and Safeway/Albertsons of our intent to bargain jointly with Local 367. A Representative of UFCW Local 367 has joined us at our bargaining table both last and this week.

Yesterday, UFCW Local 21 President Faye Guenther reached out to Region 7 Director Kate Meckler to inform the Region of her intent to intervene in both Local 555 and 367's negotiations as well as demand the International invoke Article 23 of the International Constitution should UFCW 367 continue to bargain with Local 555. The email below is proof of Local 21 following though on this threat. Local 555 finds it outrageous that a Union Leader within the UFCW family would attack another UFCW's bargaining table.

To be clear, we have only had two days of bargaining with each of the retail employers and have only requested the employers agree to a joint bargaining table for 555, 368A, and 367. Nothing else has been offered or agreed to at this time. However, Local 21 seems to make wild accusations in the email below regarding Local 555's retail contracts, labeling them as cheaper and less rich. Local 21 further mischaracterizes Local 555's concerns over the secrecy and lack of a coherent strategy around the white paper tactic as a statement that 555 doesn't see strike preparation as strategic. We will assume President Guenther was just mistaken as she wasn't available for the Region 7 and 8 bargaining discussion in LA.

The email below makes clear President Guenther will take action to prevent Local 367 members and their elected leadership from exercising autonomy and deciding for themselves what is best for them. She states her intention and outlines her plan to do so under the guise of members being "harmed" and moved to a "substandard contract." It is clear that Local 21 not only thinks they are the Leadership of UFCW 367 but intends to interfere further and substitute their judgement for that of the elected leadership and membership.

Also, Local 21's reference to Local 555's contract as substandard is offensive. Our members fought over a year to achieve the highest pay increases any UFCW has seen in a long time without giving up important benefits such as a traditional Taft-Hartley Pension thus transferring risk from the employers to the members.

To make matters worse, Local 21 as a healthcare local believes they can dictate retail bargaining to Local 555, the largest retail Local in the northwest region. These actions by UFCW Local 21 put our bargaining and members at risk all while hurting Local 555's image with our members, the public, and the employers we deal with.

Finally and most seriously, it has come to our attention that on Monday, July 26th, President Guenther and Secretary-Treasurer Mizrahi called Scott Powers about our negotiations in an attempt to dictate what terms of Local 555's settlement would be acceptable to Local 21. This is wildly out of bounds and anything but the swiftest and strongest response allows a precedent that undermines the autonomy of every Local

Confidential                                                                                                              UFCW-EMMONS_000004

in the country.

We request Local 21 be forced to cease and desist from its attempts to interfere with and negatively impact Local 555 and Local 367's potential settlement as well as be banned from making any public statements or any further attempts to contact the employer representatives about our negotiations. Finally, we request that steps be taken to hold President Guenther and any others responsible for their detrimental interference in Local 555 and 367's bargaining with the retail employers. If this complaint needs to come in another form to be deemed official and valid, please advise as such.

I have copied UFCW Local 367 Secretary-Treasurer Mike Hines so he may confirm with a reply that this is a complaint on behalf of both 555 and 367.

Dan Clay

---------- Forwarded message ---------
From: **Faye Guenther** <faye@ufcw21.org>
Date: Tue, Jul 27, 2021 at 9:53 PM
Subject: Fwd: Request for International Research Support: Side by side between UFCW 555 and UFCW 21
To: Daniel Clay <dclay@ufcw555.org>
Cc: Joe Mizrahi <jmizrahi@ufcw21.org>

[Quoted text hidden]

 **UFCW Local 555 health comparison example.docx**
16K

Confidential

UFCW-EMMONS_000005

# EXHIBIT 12



**VIA ELECTRONIC MAIL**

October 19, 2021

Ms. Faye I. Guenther
President
UFCW Local No. 21
5030 First Avenue South
Suite 200
Seattle WA  98134-2438

Dear Faye:

This letter serves as an official communication to cease and desist from interfering with UFCW Local No. 555's (Local 555) collective bargaining relationships. UFCW Local No. 21 shall further make no statements to any employer regarding Local 555's negotiations without the express permission of Local 555's President.

As always, I urge all UFCW local unions to seek to address points of contention within the UFCW family and, further, to refrain from any disparagement of sister local unions or officials.

Sincerely and fraternally,

International President

**Anthony M. Perrone,** *International President*
**Shaun Barclay,** *International Secretary-Treasurer*

United Food & Commercial Workers International Union, AFL-CIO, CLC
1775 K Street, NW • Washington DC 20006-1598
Office (202) 223-3111 • Fax (202) 466-1562 • www.ufcw.org

Confidential

# EXHIBIT 13

**Emily Akers**

**Subject:**                    FW: Request for Dismissal or New Investigation into Cease and Desist Issued October
                                19, 2021

Begin forwarded message:

> **From:** Faye Guenther <faye@ufcw21.org>
> **Date:** May 17, 2022 at 4:26:38 PM EDT
> **To:** Marc Perrone <mperrone@ufcw.org>
> **Subject: Request for Dismissal or New Investigation into Cease and Desist Issued October 19,
> 2021**

May 17, 2022

Dear International President Perrone:

I am writing to request your help. Lisa Pedersen informed my legal counsel that my request to appeal the cease-and-desist letter issued to me on October 19, 2021 has been denied because I did not appeal within 30 days. I am asking that you set aside procedural barriers and rescind the letter because I have learned new information that causes me to find the letter to be issued unfairly. Specifically, the letter was issued without any factual finding of wrongdoing, Dan Clay's complaint was not disclosed to me and contains allegations I was not able to respond to, and key witnesses were not interviewed as part of the investigation.

I have come to believe now that the cease-and-desist letter was issued in an attempt to resolve a thorny issue and appease Mr. Clay in hopes his animus toward me would be diminished. During the investigation, I requested and was denied a copy of Mr. Clay's original complaint. I likely would never have seen Mr. Clay's complaint had he not emailed it to the E-board of the UFCW International. Once I read the complaint, I knew the cease-and-desist was unsubstantiated. There is no possible evidence that exists that would backup Mr. Clay's accusation.

Mr. Clay's written complaint contains a central factual allegation which was not disclosed to me during the investigation, nor mentioned in your cease-and-desist letter. Specifically, Mr. Clay asserted that I interfered with Local 555's bargaining by asking the President of Allied Employers to dictate the terms of Local 555's contract settlement. This is not what happened, and I was not afforded the opportunity to confront this allegation. While I understand the reasoning for the International's denial of my request to interview the Employer, if I had known Mr. Clay's actual complaint, I would have not only requested Scott Powers be interviewed, but could have insisted that a second key witness, Joe Mizrahi, was afforded an opportunity to provide relevant information. Scott Powers and Joe

1

                                                                    UFCW-EMMONS_000051

Mizrahi can provide sworn affidavits that will verify exactly what I said when talking with Scott Powers.

I would have been happy to move beyond the cease-and-desist and leave this issue in the past. However, the current state of things requires this issue to be addressed. I want you to know, after your October 19, 2021 letter, I offered in writing to meet with Mr. Clay and mediate our dispute. He did not bother to even respond. The broad and public nature of Mr. Clay's complaint and the subsequent forwarding of that complaint to a much broader group elevates UFCW 3000's concern over the cease-and-desist. While we may not have felt the need to appeal a cease-and-desist that was presented as both somewhat private and not a finding of factual wrongdoing, once the cease-and-desist letter became very public and was presented by Mr. Clay as a factual finding of wrongdoing, we believe we have an obligation to correct the record. In addition, Lisa Pedersen has now stated that a factual basis did exist for issuance of your letter. That is not how the cease-and-desist was explained to me and now that I know what the actual complaint was, there is no possible way that a factual basis exists.

The public nature of Mr. Clay's complaint has caused UFCW 3000 material harm in mounting legal fees preparing to address these complaints, staff time answering numerous questions from local leadership and staff around the country about these allegations, interference with UFCW 3000's ability to investigate interference in its merger vote, interference with my ability to perform my duties as President of UFCW 3000, and most damaging the high likelihood that Mr. Clay's defamatory email has made its way into our membership. Mr. Clay is responsible for all accumulating damages and harm caused. This includes the reputational damage that has been done to UFCW 3000 and me, which is, of course, immeasurable.

Again, I am asking for the following: 1) Rescind your cease and desist letter; 2) If you will not rescind, provide me the factual basis for why I received the letter; 3) If a factual basis does not exist to issue the cease and desist, rescind or at a minimum order a new investigation into Mr. Clay's original complaint; 4) Include in your current investigation any way Mr. Clay has interfered with my duties as President including attempting to "chill" the investigation into merger vote misconduct. I am also open to other solutions should you have other suggestions.

Please consider this a formal request for any rights I may have to an appellate review or new investigation.


*In Solidarity,*


*Faye Guenther*
UFCW 3000 President
Cell: (206) 294-9337

Visit us at UFCW3000.org

Grievance Questions?  Please call the Member Resource Center: 206-436-6570

2

UFCW-EMMONS_000052

☐ : 1-800-732-1188 │ ☐ Email: *fguenther@ufcw21.org* │ ☐ Address: 23040 Pacific Highway S, Des Moines, WA 98198

**UFCW3000**

*Our mission is to build a powerful Union that fights for economic, political and social justice in our workplaces and in our communities.*

This electronic message transmission contains information which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited.

Confidential

UFCW-EMMONS_000053

# EXHIBIT 14

**UFCW3000 Administrator**

| | |
|---|---|
| **From:** | Faye Guenther |
| **Sent:** | Tuesday, June 28, 2022 9:05 AM |
| **To:** | International President Marc Perrone |
| **Subject:** | Renewed Request for Dismissal, or Recognize My Appeal,  or Order New Investigation into Cease and Desist Issued October 19, 2021 |

6/28/22

Dear President Perrone:

I am making a final internal request for you to dismiss, open a new investigation, or recognize my appeal related to the original cease-and-desist letter issued to UFCW 21/3000 on October 2019.  UFCW 3000 and I as an individual, have not been granted a fair process to defend against the allegations.

My new understanding is the cease-and-desist order was based a statement by Milton Jones describing a conversation he had with Jon McPherson related to the UFCW 555 and UFCW 367 bargaining.  I was not told about this evidence during the investigation, nor allowed to refute the content.  I would appreciate receiving a copy of the statement and renew my request for a full explanation of the factual basis for imposition of the cease-and-desist order.

Please use your Presidential discretion to dismiss the complaint, open a new investigation or recognize my appeal.


Sincerely—

Faye Guenther


---

**From:** International President Marc Perrone <marcperrone@ufcw.org>
**Sent:** Tuesday, May 24, 2022 1:27 PM
**To:** Faye Guenther <faye@ufcw21.org>
**Cc:** Todd Crosby <tcrosby@ufcw.org>
**Subject:** Re: Request for Dismissal or New Investigation into Cease and Desist Issued October 19, 2021

Dear Faye,

I am writing in response to your e-mail of May 17, 2022. In your e-mail you request to revisit a dispute that was resolved pursuant to the International President's authority under Article 10(E)1 of the International Constitution. As you know, International Vice President and UFCW Local No. 555 (Local 555) President Dan Clay filed a complaint on July 28, 2021, alleging UFCW Local No. 21, now known as UFCW Local No. 3000 (Local 3000), improperly interfered with Local 555's collaborative bargaining relationships.

The matter was ultimately resolved when I issued a letter to you on October 19, 2021. It stated:

> This letter serves as an official communication to cease and desist from interfering with UFCW Local No. 555's (Local 555) collective bargaining

RFP No. 15 Resp - 015153

relationships. UFCW Local No. 21 shall further make no statements to any employer regarding Local 555's negotiations without the express permission of Local 555's President.

As always, I urge all UFCW local unions to seek to address points of contention within the UFCW family and, further, to refrain from any disparagement of sister local unions or officials.

Article 10(E)1 of the International Constitution provides, "The decision of the International President regarding such dispute may be appealed to the International Executive Board not later than 30 days after such decision has been rendered."

There is no further appeal or other remedy afforded members or chartered bodies from a decision by the International President resolving a dispute. Moreover, it is important that the parties may rely on the finality of a decision made pursuant to Article 10(E)1 of the International Constitution. If members or chartered bodies were permitted to revisit matters already settled under Article 10(E)1, disputes between parties would never end and the International Union would be faced with the possibility of resolving the same disputes in perpetuity. Such an outcome is inefficient and undermines Article 10(E)1's purpose of resolving disputes.

While the resolution of the above-referenced dispute is final, my office has reviewed your concerns regarding the underlying investigation. It is my understanding that although a copy of the complaint sent by President Clay was not provided to you, International Vice President and Region 7 Acting Director Todd Crosby did review all allegations in the complaint during your interview and prior to the issuance of my decision. He also reports he informed you he would not be interviewing the employer as part of the investigation. That decision was made in the interest of keeping an internal UFCW dispute within our union family.

With respect to President Clay's decision to send the October 19, 2021 letter to International Executive Board members, I understand your concern and will clarify here that the allegations in his e-mail of April 22, 2022 do not appear to implicate the cease and desist letter. Moreover, I acknowledge that the decision not to appeal the resolution of the earlier dispute with Local 555 in accordance with Article 10(E)1 of the International Constitution does not mean Local 3000 necessarily conceded the allegations by President Clay were true or that it agreed with the International Union's position that a cease and desist letter was warranted. Parties may choose not to appeal decisions for various reasons.

Finally, and pursuant to your request regarding the allegation that President Clay has interfered with your duties and attempted to "chill" an investigation into merger vote misconduct, I am referring the matter to International Secretary-Treasurer Shaun Barclay for investigation. Brother Barclay will further review whether you were wrongfully disparaged. Following his investigation and report, I will consider all appropriate remedies in accordance with my authority under Article 10(E)1 of the International Constitution.

Please let me know if you have any additional questions or concerns.

In solidarity,
Marc Perrone

# EXHIBIT 15

 

October 28, 2021

Mr. Marc Perrone
President, UFCW International Union
1775 K Street NW
Washington, DC 20006

RE:    UFCW Union Locals 21 and 1439 – approval for formal merger discussions

Dear Brother Perrone:

The purpose of this letter is to request approval of the International Executive Committee for UFCW Union Local 21 to engage in formal merger discussions with UFCW Union Local No. 1439.

It is our position this merger is in the best interest of the members and request the International Executive Committee consider the following supporting reasons.

Local 21 has a dedicated and active organizing department.  It has state-wide jurisdiction in cannabis and healthcare. As such, for many years, Local 21 frequently runs campaigns within Local 1439's grocery/meat jurisdiction.  The two locals have historically worked in concert to assist one another by identifying local allies, offering office space to meet with workers, and assisting each other in messaging to the community.  Additionally, and importantly, Local 21 currently contributes a substantial subsidy to Local 1439's organizing effort as a negotiated solution to jurisdictional issues.  Also, the two Locals have in the past been parties to a servicing agreement covering Local 1439 pharmacy employees.

Local 21 and Local 1439 share jurisdiction in a massive geographic area covering Eastern and Central Washington.  More than 90% of Local 1439's members are found within this shared geographic area with the remaining members located in Northern Idaho and Eastern Oregon.  Both locals represent members and have staff enforcing contracts throughout this area including the larger population areas in the Yakima Valley, Tri-Cities, Wenatchee and Spokane where both maintain offices.

Local 21 and Local 1439 represent workers in the same trades.  Local 1439's membership is largely a grocery and retail meat local with packing plant operations at Washington Beef and Twin City Foods. Similarly, Local 21 represents hundreds of food packing and processing workers at Draper Valley Farms and Bornstein Seafood plants. Both Locals represent thousands of retail grocery workers employed by the same employers (predominantly Safeway, Albertsons, and Kroger/Fred Meyer) and most often with the same employer HR

---

**UFCW Local 21**
5030 First Avenue South, Suite 200
Seattle, WA 98134
www.ufcw21.org

**UFCW Local 1439**
1719 N Atlantic St.
Spokane, WA 99205
www.ufcw1439.org





RFP Resp No 6 - 006024

    

representatives. Another common employer is Zenith Administrators. Both locals engage the services of the same outside legal counsel to assist in enforcing these contracts, bargaining and organizing.

Prior to 2003, Central Washington contracts were patterned on and bargained after Puget Sound bargaining (typically with lesser wage rates). Therefore, many of Local 1439's members in Central Washington work under contracts with "Seattle" language that include small differences from "Spokane" agreements. Local 1439's 2020 grocery/meat wage settlement exceeded historical norms when Kroger and Albertsons agreed to extend an offer based on, and economically equivalent to, the 2019 Puget Sound resolution.

The strong connection between the locals is further evidenced in their shared pension plan. Local 1439 and Local 21 participate in the Sound Pension and VAPP trust together. Likewise, leadership from both locals are trustees on the plan and have experience working together. Again, Local 1439 essentially adopted the VAPP plan format negotiated by Local 21 for its members in Western Washington.

This is also seen in coordination on important political issues at the state and municipal level. The Locals often conduct candidate interviews and endorsement in collaboration with each other and are both members of the CLC and other community coalitions.

By reducing redundant and parallel operations in Central and Eastern Washington, and presenting an even more united front to employers, it is our position that the merged local would be more effective in organizing new workers, efficient in servicing existing contracts, and exercise more leverage and influence on important political topics to workers. Therefore, we respectfully request the approval of the International Executive Committee for UFCW Union Local 21 to engage in formal merger discussions with UFCW Union Local No. 1439.

Please do not hesitate to contact us should you have any questions regarding the foregoing request.

Sincerely,

*Faye Guenther*
Faye Guenther
President, UFCW Local No. 21

*Eric Renner*
Eric Renner
President, UFCW Local No. 1439

cc: Regional Director

**UFCW Local 21**
5030 First Avenue South, Suite 200
Seattle, WA 98134
www.ufcw21.org

**UFCW Local 1439**
1719 N Atlantic St.
Spokane, WA 99205
www.ufcw1439.org

RFP Resp No 6 - 006025

# EXHIBIT 16



**VIA ELECTRONIC MAIL**

December 2, 2021

Ms. Faye I. Guenther
President
UFCW Local No. 21
5030 First Avenue South
Suite 200
Seattle WA  98134-2438

Dear Faye:

International Vice President and Region 7 Director Kathleen K. Meckler has recommended that permission be granted for UFCW Local Nos. 21 and 1439 to enter into formal merger discussions with each other.   Following review, the International Executive Committee has concurred in this recommendation.

To assist you in these discussions, attached is a copy of the UFCW Local Union Merger Kit, containing the following materials: (1) Procedures for Mergers between UFCW Local Unions; (2) Model Local Union Merger Agreement; (3) Record of Merger Proceedings; (4) Sample Letter to Employers Whose Employees Are Represented by Local Union(s) Going Out of Existence as Result of Merger; and (5) Sample Letter to Banks and Other Financial Institutions of Local Union(s) Going Out of Existence as Result of Merger.

With kind regards, I am

Sincerely and fraternally,

International President

Attachment

EXHIBIT

9

DEPONENT NAME:
GUENTHER

DATE:
5/13/24

Anthony M. Perrone, *International President*
Shaun Barclay, *International Secretary-Treasurer*

United Food & Commercial Workers International Union, AFL-CIO, CLC
1775 K Street, NW • Washington DC 20006-1598
Office (202) 223-3111 • Fax (202) 466-1562 • www.ufcw.org

RFP Resp No 6 - 006026



## UFCW LOCAL UNION MERGER KIT

1.  Procedures for Mergers between UFCW Local Unions

2.  Model Local Union Merger Agreement

3.  Record of Merger Proceedings

4.  Sample Letter to Employers Whose Employees are Represented by Local Union(s) Going Out of Existence as Result of Merger

5.  Sample Letter to Banks and Other Financial Institutions of Local Union(s) Going Out of Existence as Result of Merger

February 2015

**Anthony M. Perrone,** *International President*
**Esther R. López,** *International Secretary-Treasurer*

United Food & Commercial Workers International Union, AFL-CIO, CLC
1775 K Street, NW  •  Washington DC  20006-1598
Office (202) 223-3111  •  Fax (202) 466-1562  •  www.ufcw.org

RFP Resp No 6 - 006027

**UFCW LOCAL UNION MERGER KIT**
**ITEM NO. 1**

**PROCEDURES FOR MERGERS BETWEEN UFCW LOCAL UNIONS***

(Established by the UFCW International Executive Board
pursuant to Article 8(H) and (K) of the International Constitution
February 1994 and amended February 2015)

The following steps shall be followed by UFCW Local Unions considering merger:

## I. PRIOR TO ENTERING INTO FORMAL MERGER DISCUSSIONS

1. Local Unions contemplating the possibility of merger may engage in informal, exploratory discussions with each other.

2. Prior to engaging in formal merger discussions or commencing the negotiation of a merger agreement, the Presidents of Local Unions interested in merger shall write to the International President (copy to the Regional Director) requesting approval of the International Executive Committee to engage in formal merger discussions.

3. The Regional Director, upon learning of the Local Unions' interest in engaging in formal merger discussion, shall forward his or her recommendation relevant to the International Executive Committee's authorizing further merger discussions to the International President for the Executive Committee's consideration.

4. The International Executive Committee shall consider the request of the Local Unions to enter into formal merger discussions and the recommendation of the Regional Director. The Executive Committee shall grant or deny authorization to engage in formal merger discussions. Such decision will be based upon consideration of all factors which may be relevant to the proposed merger, including but not limited to the following: the probability of equal or improved representation of the members directly involved; the opportunity for and demonstrated commitment to organizing new members within the geographical and trade jurisdiction of the proposed new Local Union; the commonality of the geographical jurisdictions of the Local Unions; the compatibility of the trade jurisdictions of the Local Unions; the effect upon jurisdictional overlaps among Local Unions; geographical size; political subdivisions; the economic viability of the merger; the effect on servicing and other Local Union operations; the impact upon structures and relationships in organizing, collective bargaining, and other union activities; and the merger's effect on encouraging or discouraging other mergers which would benefit UFCW members.

*Pursuant to Article 8(H) and (K) of the International Constitution, the merger of an organization <u>not chartered by the UFCW International Union</u> into a UFCW Local Union must receive the approval of the International Executive Committee to be effective.

- 2 -

## II.  DRAFTING OF MERGER AGREEMENT AND REVIEW BY LOCAL
## UNION EXECUTIVE BOARD

1.  If approval to continue merger discussions is granted by the International Executive Committee, the Local Unions shall proceed to draft a merger agreement.  (The International President will provide sample merger agreements and samples of all other documents incidental to the merger.  Moreover, to increase the likelihood of subsequent approval of all the terms of the merger agreement and compliance with law and the International Constitution and policy, the International President's Office, upon request, will unofficially review proposed documents prior to their submission to the membership.)

2.  The Executive Board of each Local Union which is party to the proposed merger shall make its recommendation regarding the merger to the Local Union's membership.

## III.  MEMBERSHIP APPROVAL OF MERGER

1.  The membership of each Local Union, in separate balloting, shall vote by <u>secret</u> ballot to approve or disapprove the merger agreement.  A majority of active members voting in <u>each</u> Local Union is required for approval of the merger agreement.  (However, any changes being made in the bylaws of the surviving Local Union as part of the merger require an aggregated two-thirds majority of active members voting in all Local Unions.  It is not necessary to vote the merger agreement and bylaw changes separately.)

2.  The vote may be held at a meeting or meetings, at a polling place or places, or by mail referendum.

3.  Full disclosure of the terms of the merger agreement shall be made and an opportunity for questions and discussion of the merger shall take place prior to voting.  If voting is conducted other than at meetings, a meeting or meetings shall be held for disclosure of the terms of the merger agreement and the opportunity for questions and discussion.

4.  Members shall be given formal <u>notice</u> of the time(s), date(s), and place(s), as relevant, of the discussion <u>and</u> the vote.  Formal notice as used here is usually written notice mailed to each member at his or her known home address not less than 15 days prior to the meeting or vote.  When the vote is done by mail referendum and specific notice has not previously been given, it is recommended, for the purpose of satisfying standards of notice, that at least 18 days be provided from the date on which mail ballots are mailed to the membership to the date of the receipt deadline for return of the ballots.  In some cases, where meeting notice has been traditionally and effectively provided by postings, as, for example, in some single-plant locals, a posting in the plant not less than 15 days before a discussion meeting or a vote at a meeting or polling place is sufficient.

- 3 -

5. Prior to voting, members shall be provided with copies of the bylaws to be applicable to them, except where the members belong to the surviving Local Union and their bylaws are not being changed other than by amendments as contained in the merger agreement.

6. If the vote is by mail referendum, copies of the merger agreement and bylaws (except as provided in #5 above) shall be included with the ballot, unless a separate notice of the vote has previously been mailed to members and has included copies of these documents.

## IV. FOLLOWING MEMBERSHIP APPROVAL

1. Following membership approval, Local Unions shall submit the merger agreement, all other relevant documents, the date(s) of approval of the merger by the membership, and the membership vote totals to the Regional Director.

2. The Regional Director shall transmit the merger documents provided by the Local Unions along with his or her recommendation regarding approval of the merger and any related terms to the International President, on behalf of the International Executive Committee.

3. Following review of the merger documents and the Regional Director's recommendation, the International Executive Committee shall approve or disapprove the proposed merger and the terms of the merger documents, and the International President shall notify the Local Unions of the Executive Committee's decision.

4. The Local Unions shall notify all employers and financial institutions, as appropriate, of the merger.

5. All records, minutes, funds, property, supplies, assets, and collective bargaining agreements shall be transferred to the surviving Local Union.

6. The charter and seal of the Local Union(s) going out of existence shall be returned to the International Secretary-Treasurer.

7. The Local Union(s) going out of existence shall file terminal LM report(s) and Form(s) 990 with the Department of Labor and Internal Revenue Service, respectively, with copies forwarded to the International Secretary-Treasurer. Any other reports required by the federal, state, or provincial governments at that time should also be filed.

**UFCW LOCAL UNION MERGER KIT**
**ITEM NO. 2**

**MODEL LOCAL UNION MERGER AGREEMENT**

In order to achieve greater efficiency and stability, to enhance the best interests of the membership, and to promote the general welfare, United Food and Commercial Workers Local Nos. _____ and _____ agree that their Local Unions shall merge into one Local Union on the terms and conditions set forth below.

1. Local Nos. _____ and _____ shall merge, effective _____, 20__, and the newly merged Local Union shall be known as United Food and Commercial Workers Union, Local No. _____.

2. Local No. [surviving local] shall be governed by the UFCW International Constitution, the Local Union's bylaws, attached as Appendix A, and this merger agreement. During the period ending _____, 20__, in the event of any conflict between any provision of the International Constitution or the Local Union's bylaws and any of the terms of this merger agreement, the terms of this merger agreement shall govern.

3. From _____, 20__, until _____, 20__, the officers of the newly merged Local Union shall be as follows:

President                   _____, Local No.

Secretary-Treasurer         _____, Local No.

Recorder                    _____, Local No.

Vice Presidents             _____, Local No.

                            _____, Local No.

                            _____, Local No.

RFP Resp No 6 - 006031

4. The officers and employees of Local No. [merging local], or any other person holding any assets or property of Local No. [merging local], shall be empowered and authorized, and may be required from time to time, on and after the effective date of this merger, to execute and deliver, or cause to be executed and delivered, upon the request of Local No. [surviving local], all such deeds, documents, authorizations or instruments as may be necessary, appropriate, or indicated in order to convey, transfer, or confirm the right, title, and interest of Local No. [surviving local] in and to such assets or property.

5. Local No. [surviving local] shall also assume all obligations of Local No. [merging local] of every kind and character, including collective bargaining obligations, and shall succeed to every and all rights and privileges of Local No. [merging local] as of and subsequent to the effective date of the merger. The merger shall not be deemed to impair, alter, or otherwise affect any rights, privileges, duties, and responsibilities vested at the time of the merger in any of the Local Unions.

6. On the effective date of this merger, the members in good standing of Local No. [merging local] shall become and remain members in good standing of Local No. [surviving local] without payment of any initiation fee. The accumulated membership standings of the members of Local No. [merging local] shall be considered, for Local Union purposes, the membership standings in Local No. [surviving local] and shall be reflected in the membership records thereof.

7. The merger shall not be deemed to impair or otherwise affect any federal or state certification of Local No. [merging local] as a collective bargaining representative or agent, or any right or obligation of Local No. [merging local] under any collective bargaining

- 2 -

agreement for checkoff authorizations; but, all rights, privileges, duties, and responsibilities vested in Local No. [merging local], pursuant to such certifications, agreements or authorizations are to be deemed vested in Local No. [surviving local].

8. Any health and welfare trust or pension trust to which Local No. [merging local] is a party shall not be deemed to be altered by virtue of this merger. All rights, privileges, and directions of powers of appointment vested in Local No. [merging local] and relative to such trust shall become vested in and exercisable in Local No. [surviving local] acting by and through its appropriate officers or executive board.

9. The officers of Local No. [merging local] are directed and instructed to take any and all necessary and indicated steps to fulfill the provisions of this agreement and shall serve in their respective official capacities until the effective date of the merger, at which time their official terms of office shall expire.

10. The parties to this agreement intend that the provisions of this agreement be separable. Should any provision or provisions of this agreement be held invalid by any court or agency of competent jurisdiction, such decision shall not affect the validity of the remaining provisions of this agreement, and the remaining provisions shall continue in full force and effect.

11. This merger agreement shall expire on _____, 20__, and, subsequently, Local No. [surviving local] shall continue to be governed by the UFCW Constitution and Local No. _____'s bylaws.

- 3 -

RFP Resp No 6 - 006033

12.  This agreement has been approved by the respective Executive Boards of Local Nos. _____ and _____ and shall be submitted to a vote of the respective memberships of Local Nos. _____ and _____. Following approval by the membership, this agreement shall be submitted to the International Executive Committee for its approval. If this agreement is not so approved, it shall be null and void and of no effect.

13.  The parties hereto certify that they execute this agreement with the full authority to do so by their respective Local Unions, and that each of the merging Local Unions shall be fully and completely bound in accordance with the provisions herein contained.


_____          _____
President, Local No. _____                President, Local No. _____


_____          _____
Secretary-Treasurer, Local No. _____      Secretary-Treasurer,  Local  No. _____




**Note to Local Unions regarding Paragraph 2 on the first page of this Model Local Union Merger Agreement:** *If new bylaws of the surviving Local Union are **not** being proposed, please delete the phrase, "attached as Appendix A". Nevertheless, the current bylaws of the surviving Local Union will need to be distributed to the members of the merging Local Union prior to casting their votes so that they will be aware of the bylaws which will govern them after the merger.*


- 4 -

RFP Resp No 6 - 006034

## Appendix A

### [proposed bylaws of Local No. _____]

**Note to Local Unions:** Please _delete_ this if new bylaws of the surviving local union are **not** being proposed.

- 5 -

RFP Resp No 6 - 006035

**UFCW LOCAL UNION MERGER KIT**
**ITEM NO. 3**

**RECORD OF MERGER PROCEEDINGS**

(To be completed by each Local Union following the
membership voted in the Local Union, and forwarded to the
Regional Director along with all merger documents. Each
Local Union in the merger should complete a separate form
with respect to the proceedings in that Local only.)

Local No. _____

Merger with Local No. _____

Notice provided membership on _____, 20____

Membership voted (check one, and fill in applicable date):

        a. At meeting(s) on _____, 20____

        b. At polling place(s) on _____, 20____

        c. By mail ballots, which were due on _____, 20____

Membership vote totals:

        Approved _____

        Opposed _____

Signature:

_____          _____
President, Local No. _____                              Date

**UFCW LOCAL UNION MERGER KIT**
**ITEM NO. 4**

**SAMPLE LETTER TO EMPLOYERS WHOSE EMPLOYEES ARE**
**REPRESENTED BY LOCAL UNION(S) GOING OUT OF EXISTENCE**
**AS RESULT OF MERGER**

Dear _____:

      This letter is to formally advise you that United Food and Commercial Workers Union, Local No. _____ and United Food and Commercial Workers Union, Local No. _____, with the approval of the respective memberships and the United Food and Commercial Workers International Union, have effectuated a merger, effective [date]. The merged Local Unions will operate under the name of United Food and Commercial Workers Union, Local No. [surviving Local], which is the successor Local Union and is chartered by the United Food and Commercial Workers International Union.

      The merger is purely an internal matter having no effect on the collective bargaining relationship. Local Union No. [surviving Local] will administer the contract and in all respects continue as the collective bargaining representative of the employees covered by the contract.

      This letter may be attached to the collective bargaining agreement, so that the change is properly reflected.

           Sincerely yours,

United Food and Commercial
  Workers Union, Local No. _____
    [indicate no. of surviving Local]

Former United Food and
  Commercial Workers Union,
  Local No. _____ [indicate
  no. of Local going out of existence]

_____
President

_____
President

_____
Secretary-Treasurer

_____
Secretary-Treasurer

RFP Resp No 6 - 006037

**UFCW LOCAL UNION MERGER KIT**
**ITEM NO. 5**

**SAMPLE LETTER TO BANKS AND OTHER FINANCIAL INSTITUTIONS OF LOCAL UNION(S) GOING OUT OF EXISTENCE AS RESULT OF MERGER**

Dear Sir/Madam:

We wish to advise you that United Food and Commercial Workers Union, Local No. _____ and United Food and Commercial Workers Union, Local No. _____, with the approval of the respective memberships and the United Food and Commercial Workers International Union, have effectuated a merger, effective [date].

The merger is purely an internal matter and will in no way affect external relations. The merged Local Unions will operate under the name of United Food and Commercial Workers Union, Local No. _____, as the successor Local Union.

Local Union No. _____, as the successor Local Union, will administer and assume the duties and obligations of Local No. [Local going out of existence]. Two of the three officers whose signatures appear below on the left side will be the signers of all checks issued on behalf of Local No. [successor Local ], and all three will sign the necessary signature cards for your records.

Sincerely yours,

United Food and Commercial
  Workers Union, Local No. _____
    [indicate no. of surviving Local]

Former United Food and
  Commercial Workers Union,
  Local No. _____ [indicate
  no. of Local going out of existence]

_____
President

_____
President

_____
Secretary-Treasurer

_____
Secretary-Treasurer

_____
[title] [should be the officer who is the
    third trustee]

_____
[title] [should be the officer who is the third
    trustee]

[NOTE:       For this letter, the signatures for the surviving Local Union should be those who are the President, Secretary-Treasurer, and the third trustee of the Local Union after the merger has occurred.]

RFP Resp No 6 - 006038

**UFCW LOCAL UNION MERGER KIT**
**ITEM NO. 1**

**PROCEDURES FOR MERGERS BETWEEN UFCW LOCAL UNIONS\***

(Established by the UFCW International Executive Board
pursuant to Article 8(H) and (K) of the International Constitution
February 1994 and amended February 2015)

The following steps shall be followed by UFCW Local Unions considering merger:

## I. PRIOR TO ENTERING INTO FORMAL MERGER DISCUSSIONS

1. Local Unions contemplating the possibility of merger may engage in informal, exploratory discussions with each other.

2. Prior to engaging in formal merger discussions or commencing the negotiation of a merger agreement, the Presidents of Local Unions interested in merger shall write to the International President (copy to the Regional Director) requesting approval of the International Executive Committee to engage in formal merger discussions.

3. The Regional Director, upon learning of the Local Unions' interest in engaging in formal merger discussion, shall forward his or her recommendation relevant to the International Executive Committee's authorizing further merger discussions to the International President for the Executive Committee's consideration.

4. The International Executive Committee shall consider the request of the Local Unions to enter into formal merger discussions and the recommendation of the Regional Director. The Executive Committee shall grant or deny authorization to engage in formal merger discussions. Such decision will be based upon consideration of all factors which may be relevant to the proposed merger, including but not limited to the following: the probability of equal or improved representation of the members directly involved; the opportunity for and demonstrated commitment to organizing new members within the geographical and trade jurisdiction of the proposed new Local Union; the commonality of the geographical jurisdictions of the Local Unions; the compatibility of the trade jurisdictions of the Local Unions; the effect upon jurisdictional overlaps among Local Unions; geographical size; political subdivisions; the economic viability of the merger; the effect on servicing and other Local Union operations; the impact upon structures and relationships in organizing, collective bargaining, and other union activities; and the merger's effect on encouraging or discouraging other mergers which would benefit UFCW members.

\*Pursuant to Article 8(H) and (K) of the International Constitution, the merger of an organization not chartered by the UFCW International Union into a UFCW Local Union must receive the approval of the International Executive Committee to be effective.

- 2 -

## II. DRAFTING OF MERGER AGREEMENT AND REVIEW BY LOCAL UNION EXECUTIVE BOARD

1. If approval to continue merger discussions is granted by the International Executive Committee, the Local Unions shall proceed to draft a merger agreement. (The International President will provide sample merger agreements and samples of all other documents incidental to the merger. Moreover, to increase the likelihood of subsequent approval of all the terms of the merger agreement and compliance with law and the International Constitution and policy, the International President's Office, upon request, will unofficially review proposed documents prior to their submission to the membership.)

2. The Executive Board of each Local Union which is party to the proposed merger shall make its recommendation regarding the merger to the Local Union's membership.

## III. MEMBERSHIP APPROVAL OF MERGER

1. The membership of each Local Union, in separate balloting, shall vote by secret ballot to approve or disapprove the merger agreement. A majority of active members voting in each Local Union is required for approval of the merger agreement. (However, any changes being made in the bylaws of the surviving Local Union as part of the merger require an aggregated two-thirds majority of active members voting in all Local Unions. It is not necessary to vote the merger agreement and bylaw changes separately.)

2. The vote may be held at a meeting or meetings, at a polling place or places, or by mail referendum.

3. Full disclosure of the terms of the merger agreement shall be made and an opportunity for questions and discussion of the merger shall take place prior to voting. If voting is conducted other than at meetings, a meeting or meetings shall be held for disclosure of the terms of the merger agreement and the opportunity for questions and discussion.

4. Members shall be given formal notice of the time(s), date(s), and place(s), as relevant, of the discussion and the vote. Formal notice as used here is usually written notice mailed to each member at his or her known home address not less than 15 days prior to the meeting or vote. When the vote is done by mail referendum and specific notice has not previously been given, it is recommended, for the purpose of satisfying standards of notice, that at least 18 days be provided from the date on which mail ballots are mailed to the membership to the date of the receipt deadline for return of the ballots. In some cases, where meeting notice has been traditionally and effectively provided by postings, as, for example, in some single-plant locals, a posting in the plant not less than 15 days before a discussion meeting or a vote at a meeting or polling place is sufficient.

- 3 -

5. Prior to voting, members shall be provided with copies of the bylaws to be applicable to them, except where the members belong to the surviving Local Union and their bylaws are not being changed other than by amendments as contained in the merger agreement.

6. If the vote is by mail referendum, copies of the merger agreement and bylaws (except as provided in #5 above) shall be included with the ballot, unless a separate notice of the vote has previously been mailed to members and has included copies of these documents.

## IV. FOLLOWING MEMBERSHIP APPROVAL

1. Following membership approval, Local Unions shall submit the merger agreement, all other relevant documents, the date(s) of approval of the merger by the membership, and the membership vote totals to the Regional Director.

2. The Regional Director shall transmit the merger documents provided by the Local Unions along with his or her recommendation regarding approval of the merger and any related terms to the International President, on behalf of the International Executive Committee.

3. Following review of the merger documents and the Regional Director's recommendation, the International Executive Committee shall approve or disapprove the proposed merger and the terms of the merger documents, and the International President shall notify the Local Unions of the Executive Committee's decision.

4. The Local Unions shall notify all employers and financial institutions, as appropriate, of the merger.

5. All records, minutes, funds, property, supplies, assets, and collective bargaining agreements shall be transferred to the surviving Local Union.

6. The charter and seal of the Local Union(s) going out of existence shall be returned to the International Secretary-Treasurer.

7. The Local Union(s) going out of existence shall file terminal LM report(s) and Form(s) 990 with the Department of Labor and Internal Revenue Service, respectively, with copies forwarded to the International Secretary-Treasurer. Any other reports required by the federal, state, or provincial governments at that time should also be filed.

# EXHIBIT 17

# December 14, 2021 Executive Board Minutes

1. **Opening**
   The meeting was called to order by Joe Mizrahi, Secretary Treasurer at 6:30 p.m.

2. **Attendance**
   Present:  Faye Guenther, Joe Mizrahi, Maria Milliron, Fredel Albritton, Gregg Barney,
   Kaye Balk, Kyong Barry, Maggie Breshears, Greg Brooks, Patricia Brown,
   Sam Dancy, Amy Dayley, J'nee Delancey, Cindy Franck,
   Christina Gonzalez Castaneda, Cynthia Hill, Emily Hunter,
   Cyndi Kirkpatrick-Cockett, Atsuko Koseki, Mohamed Muhidin, Mike Nord,
   Heidi Odom, Naomi Oligario, Tami Ottenbreit, Wil Peterson, Cliff Powers,
   Ashley Price, Jeannette Randall, Ames Reinhold, Derek Roybal, Rob Shauger,
   Scott Shiflett, Jeff Smith, Sia Tinoisamoa, and Richard Waits
   Excused:  Carolyn Kennedy, Maroot Nanakul
   Absent:   Matthew Skews, Roger Yanez

3. **Reading of the Minutes from the prior meeting**
   A motion was m/s/c (Shiflett/Smith) to approve the minutes for the October 26, 2021
   meeting.

4. **Financial Report**
   Following review of the financial report by Joe Mizrahi and recommendation by the Audit
   Committee, a motion was m/s/c (Dayley Angell/Albritton) to approve the financial report
   for the month of October 2021.

5. **Reports of Officers**
   a. Joe Mizrahi reported on the scheduled closing of the Des Moines building purchase
      that is happening later this week.  Bobby Whelan has been working very closely
      with our agents to close out the details of the deal.  Joe invited the Board to an
      informal visit of the building on Friday, December 17, 2021 at 1:00 pm.
   b. Joe provided an update that Membership Cards were mailed out and many of our
      members should have received them at this point.
   c. Joe Mizrahi reported on a discrepancy that was found during a review of our
      Finance processes in the way some of the staff were receiving their car allowances
      thru payroll.  Some staff received an overpayment on their car allowance when
      moving to the MRC and some staff received an underpayment.  Our finance
      department is working on the recommendation on how to clean this up and will
      bring to the Board at an upcoming meeting.
   d. Earlier today the Health Care Advisory Board (HCAB) had their meeting.  Sarah
      Cherin lead a report back about the meeting and opened the floor to the Health Care
      advisory Board members that attended to give input.  Members of the HCAB
      reported that they particularly enjoyed learning more about the MRC especially
      about the extension of hours of the MRC Intake, the deep dive on the Staffing Bill,
      and the presentation by Jim McGuinness on ULP's within Health Care.

    e. Joe Mizrahi provided an update on WeTrain WA receiving $400,000 of funding from King County as well as funding from employers such as PCC, Ashley House, and Kroger/Albertsons.  Currently, WeTrain WA is trying to get a proposal for statewide funding.

**6.    Board Actions Taken**

    a. For pension purposes Vicky Shannon's official retirement date was December 1, 2021.  Per the OPEIU 8 Vaccine Requirement LOU, only staff employed on December 2, 2021 are eligible for the Vaccine Bonus.  Vicky was vital in our offices staying open during COVID-19 and did receive her vaccine doses.  A motion was m/s/c (Smith/Barry) to extend the Vaccine Requirement bonus to Vicky Shannon.

    b. Due to an administrative processing issue, there was a delay in the Vaccine Requirement bonus being provided to staff on the most recent pay check.  The bonus will be paid out on the December 23, 2021 payroll for all staff.  A motion was m/s/c (Smith/Reinhold) to approve an additional $50.00 for all permanent staff towards the Vaccine Requirement bonus.

    c. During the October 2021 Executive Board meeting, Kristen Beifus presented the Community Partners Annual budget recommendation for 2022 and asked the Board to review it for the discussion at the December meeting. Joe opened the floor for members of the Board to ask questions.  After a full discussion, a motion was m/s/c (Waits/Barney) to approve the 2022 Community Partners Annual Budget as previously presented by Kristen Beifus with no changes.

    d. Currently 330 members of the Teamsters 174 are on strike at multiple work sites including the Lehigh cement site near the UFCW 21 Seattle Office.  They're launching a toy drive tomorrow through December 23, 2021 for the affected workers and their families.  A motion was m/s/c (Smith/Barney) to approve about $4000 towards toy purchases for supporting the Teamsters 174 Toy Drive.

    e. Since February 2020, quarterly general membership meetings moved to telephonic meetings due to the pandemic.  As we work towards having more in person options, a recommendation was presented to the Board by Joe Mizrahi for bringing back in person general membership meetings at 22 cities for the February 2022 Winter GMM's.  A motion was m/s/c (Smith/Dancy) to approve in-person meetings at these 22 locations as listed below for the 2022 Winter GMM's in February.

| Aberdeen | Everett | Mount Vernon | Port Angeles | Spokane |
|---|---|---|---|---|
| Bellevue | Forks | Oak Harbor | Port Townsend | Tacoma |
| Bellingham | Lynnwood | Olympia | Seattle | Tonasket |
| Des Moines | Kennewick | Omak | Shelton | Walla Walla |
| | | | Silverdale | Wenatchee |

    f. During an Executive Session, a discussion was lead by Faye Guenther on a recommendation of merging with UFCW Local 1439.  Joe Mizrahi went over the proposed Merger Agreement including the changing of the newly formed local to UFCW Local 3000.  Faye opened the floor for questions and a thorough discussion was had.  After a full discussion and the review of the proposed merger agreement,

a motion was m/s/c (Albritton/Shauger) to approve the merger agreement between UFCW 21 and UFCW 1439 and recommended its approval to the UFCW 21 membership.

7. **Upcoming Important Dates**
   - Martin Luther King Jr. Day: January 17, 2022
   - United Latinos Education Conference: January 20-23, 2022 Las Vegas, NV
   - Racial Justice Advisory Board Meeting: January 25, 2022
   - 2-Day Eboard Retreat: January 31 and February 1, 2022
     - Arbitration and MRC Report
     - Night of January 31, 2022 – Dinner with all recently retired Eboard members

8. **Adjournment**
   There being no further business to conduct a motion was m/s/c (Shauger/Barry) to adjourn the meeting at 8:10 p.m.

Respectfully submitted,

Maria Milliron
Recorder

# EXHIBIT 18

# WINTER GENERAL MEMBERSHIP MEETINGS & UNION MERGER VOTES

*Due to the COVID Pandemic, multiple locations are in Counties or Cities that have specific Pandemic Protocols. Please go to ufcw21.org/gmm for information on these protocols to enter venues.*

## Aberdeen
**Wednesday, February 9 | 11:00AM—12:00PM**
Best Western Plus Aberdeen
Conference Room 701 E Heron St Aberdeen, WA

## Bellevue
**Thursday, February 10 | 6:00PM—7:00PM**
Silver Cloud Inn Bellevue - Newport Room
14632 SE Eastgate Way, Bellevue, WA 98007

## Bellingham
**Wednesday, February 9 | 10:00AM—11:00AM**
Quality Inn Grand Suites
Atlantic Room - 100 E Kellogg Rd Bellingham, WA

## Des Moines
**Friday, February 11 | 9:30AM—10:30AM**
UFCW 21 Des Moines Office
23040 Pacific Highway South, Des Moines, WA 98198

**Friday, February 11 | 4:00PM—5:00PM**
UFCW 21 Des Moines Office
23040 Pacific Highway South, Des Moines, WA 98198

## Everett
**Thursday, February 10 | 9:00AM—10:00AM**
Best Western Cascadia Inn, Enchantment Room,
2800 Pacific Ave, Everett, WA 98201

## Forks
**Thursday, February 10 | 1:00PM—2:00PM**
Olympic National Resource Center
Hemlock Forest Room - 1455 S Forks, WA 98331

## Kennewick
**Wednesday, February 9 | 12:00PM—1:00PM**
Kennewick Red Lion, Ballroom 1
1101 N Columbia Ctr Blvd, Kennewick, WA

## Lynnwood
**Thursday, February 10 | 2:00PM—3:00PM**
Hampton Inn & Suites North Lynnwood
Cypress Room, 19324 Alderwood Mall Pkwy,
Lynnwood, WA 98036

## Mount Vernon
**Wednesday, February 9 | 7:00PM—8:00PM**
Mount Vernon Office
1510 N 18th St Mount Vernon, WA 98273

## Oak Harbor
**Wednesday, February 9 | 2:00PM—3:00PM**
Best Western Harbor Plaza
33175 State Route 20 Oak Harbor, WA

## Olympia
**Thursday, February 10 | 12:00PM—1:00PM**
The Olympia Center Room 204
222 Columbia St NW Olympia

## Omak
**Friday, February 11 | 5:00PM—6:00PM**
Omak Inn Conference Room
912 Koala Drive Omak, WA

## Port Angeles
**Thursday, February 10 | 5:00PM—6:00PM**
Red Lion Inn, Peninsula Room,
221 N Lincoln Street, Port Angeles, WA

## Port Townsend
**Wednesday, February 9 | 1:00PM—2:00PM**
Harborside Inn Peninsula Room
330 Benedict St Pt. Townsend

## Seattle - Phinney Ridge
**Friday, February 11 | 12:00PM—1:00PM**
Phinney Center - Room 6
6532 Phinney Ave N Seattle, WA 98103

## Shelton
**Wednesday, February 9 | 4:00PM—5:00PM**
Mason Transit Authority Conference Room
601 W Franklin St, Shelton, WA

## Silverdale
**Wednesday, February 9 | 9:00AM—10:00AM**
UFCW 21 Silverdale Office
3888 NW Randall Wy #105
Silverdale, WA 98383

## Spokane
**Thursday, February 10 | 1:00PM—2:00PM**
UFCW 21 Spokane Office
2805 N Market St, Spokane, WA 99207

**Thursday, February 10 | 4:00PM—5:00PM**
UFCW 21 Spokane Office
2805 N Market St, Spokane, WA 99207

## Tacoma
**Friday, February 11 | 7:00PM—8:00PM**
First United Methodist Church
621 Tacoma Ave S, Tacoma, WA

## Tonasket
**Friday February 11 | 2:00PM—3:00PM**
Community Cultural Center of Tonasket, Front Room
411 Western Ave Tonasket, WA 98855

## Walla Walla
**Wednesday, February 9 | 5:00PM—6:00PM**
Courtyard Marriott Conference Room,
550 W Rose Street, Walla Walla WA 99362

## Wenatchee
**Saturday, February 12 | 12:00PM—1:00PM**
Red Lion Wenatchee Cougar Room
1225 N Wenatchee Ave, Wenatchee, WA

@UFCW21



UFCW21 a VOICE for working America

# Merging to Build Power for Essential Workers

*There will be a vote of the membership at the UFCW 21 February, 2022 General Membership Meetings on a merger agreement between UFCW 21 and UFCW 1439. The schedule for these meetings is included in this notice. The Boards of both locals have approved the merger agreement which designates the new local as UFCW 3000. This merger unites over 50,000 health care workers, grocery store workers, food packing and processing workers, along with many other industries in Idaho, Washington and Oregon. At the meetings, members will have an opportunity to review the merger agreement, ask questions, and discuss the merger prior to voting. If you would like to obtain a copy of the merger agreement in advance of the meetings, please contact Kim Micheau at 360-419-4670.*

**MERGER VOTE TIMES AND LOCATIONS ON REVERSE SIDE ▶**

((UFCW 21
a **VOICE** for working America

UNITED FOOD & COMMERCIAL WORKERS
UNION LOCAL 21
5030 First Avenue South, Suite 200
Seattle, WA 98134

Non-Profit Org.
U.S. Postage
PAID
Seattle, WA
Permit# 1004

# EXHIBIT 19

## UFCW 21 & UFCW 1439 Merger Vote Tallies

| Location | Date | Time | Yes | No | Provisional | Void | Total |
|---|---|---|---|---|---|---|---|
| Bellingham | 2/9/2022 | 10:00 AM - 11:00 AM | 13 | 0 | 0 | 0 | 13 |
| Oak Harbor | 2/9/2022 | 2:00 PM - 3:00 PM | 10 | 0 | 1 | 0 | 11 |
| Mount Vernon | 2/9/2022 | 7:00 PM - 8:00 PM | 4 | 0 | 0 | 0 | 4 |
| Aberdeen | 2/9/2022 | 11:00 AM - 12:00 PM | 4 | 0 | 0 | 0 | 4 |
| Shelton | 2/9/2022 | 4:00 PM - 5:00 PM | 7 | 0 | 0 | 0 | 7 |
| Kennewick | 2/9/2022 | 12:00 PM - 1:00 PM | 2 | 0 | 0 | 0 | 2 |
| Walla Walla | 2/9/2022 | 5:00 PM - 6:00 PM | 2 | 0 | 0 | 0 | 2 |
| Silverdale | 2/9/2022 | 9:00 AM - 10:00 AM | 11 | 0 | 1 | 0 | 12 |
| Port Townsend | 2/9/2022 | 1:00 PM - 2:00 PM | 10 | 0 | 0 | 0 | 10 |
| Everett | 2/10/2022 | 9:00 AM - 10:00 AM | 11 | 1 | 0 | 0 | 12 |
| Lynnwood | 2/10/2022 | 2:00 PM - 3:00 PM | 15 | 1 | 0 | 0 | 16 |
| Bellevue | 2/10/2022 | 6:00 PM - 7:00 PM | 17 | 0 | 0 | 0 | 17 |
| Olympia | 2/10/2022 | 12:00 PM - 1:00 PM | 10 | 0 | 0 | 0 | 10 |
| Spokane | 2/10/2022 | 1:00 PM - 2:00 PM | 5 | 0 | 0 | 0 | 5 |
| Spokane | 2/10/2022 | 4:00 PM - 5:00 PM | 13 | 0 | 0 | 0 | 13 |
| Forks | 2/10/2022 | 1:00 PM - 2:00 PM | 1 | 0 | 0 | 0 | 1 |
| Port Angeles | 2/10/2022 | 5:00 PM - 6:00 PM | 2 | 2 | 0 | 0 | 4 |
| Des Moines | 2/11/2022 | 9:30 AM - 10:30 AM | 19 | 2 | 0 | 0 | 21 |
| Seattle-Phinney Ridge | 2/11/2022 | 12:00 PM - 1:00 PM | 18 | 4 | 0 | 0 | 22 |
| Des Moines | 2/11/2022 | 4:00 PM - 5:00 PM | 13 | 0 | 1 | 0 | 14 |
| Tacoma | 2/11/2022 | 7:00 PM - 8:00 PM | 7 | 1 | 0 | 0 | 8 |
| Tonasket | 2/11/2022 | 2:00 PM - 3:00 PM | 0 | 0 | 0 | 0 | 0 |
| Omak | 2/11/2022 | 5:00 PM - 6:00 PM | 8 | 0 | 0 | 0 | 8 |
| Wenatchee | 2/12/2022 | 12:00 PM - 1:00 PM | 5 | 0 | 0 | 0 | 5 |
| | | **Total** | **207** | **11** | **3** | **0** | **221** |

UFCW-EMMONS_0000152

# EXHIBIT 20

**Faye Guenther** President

**Joe Mizrahi** Secretary-Treasurer

www.ufcw21.org

_**Via Fax and U.S. Mail**_

February 24, 2022

Todd Crosby, Director &
International Vice President
UFCW International Union, Region 7 NW
16400 Southcenter Parkway, Suite 300
Tukwila, WA 98188

Dear Mr. Crosby,

Please accept this letter as formal notification of the results of UFCW Local 21's merger vote
with UFCW Local 1439.

Notice of the merger vote was provided to our membership on January 6, 2022.

Local 21 members voted on the merger agreement at meetings held February 9, 10, 11, and 12,
2022. The final vote count was 207 to approve the merger agreement and 11 to reject the merger
agreement.

Thank you for your attention to this matter.

Sincerely,

Faye Guenther
President, UFCW Local 21

enclosure

*Our mission is to build a powerful Union that fights for economic, political and social justice in our workplaces and in our communities.*

*Seattle: 5030 First Ave S, Suite 200, Seattle, WA 98134-2438, Phone 206-436-0210 or 800-732-1188, Fax 206-436-6700*
*Mt. Vernon: 1510 N 18th St, Mt Vernon, WA 98273-2604, Phone 360-424-5655, Fax 360-424-7909 | Silverdale: 3888 NW Randall Way #105, Silverdale,*
*WA 98383, Phone 360-698-2341, Fax 360-662-1979 | Spokane: 2805 N. Market St. Spokane, WA 99207, Phone 509-340-7569, Fax 509-624-1188*

RFP Resp No 6 - 006004

# EXHIBIT 21

# ATTENTION    UFCW MEMBERS

## The in-union "Sexual Harassment club" is at it again!!



First Faye Gunther (President of Local 21) helped former 367 President Angel Gonzalez **cover up his harassment charges and paid him off in exchange for installing her puppet,** Mike Hines.



Now she's helping Eric Renner (the Local 1439 President) **hide from sexual harassment charges and land a cushy new gig with Local 21 through a forced merger.**

EXHIBIT 8
DEPONENT NAME: M. SELVAGGIO    DATE: 10 12 23

## OUR UNION SHOULD BE LOOKING OUT FOR US <u>NOT PROTECTING HARASSERS!</u>

## It's time to STOP THE COVERUPS!



VOTE **NO** ON ANY MERGER!

EXHIBIT 65
DEPONENT NAME: GUENTHER    DATE: 5 113124

# EXHIBIT 22

12:11

    

FG

FAYE >

Excellent!!

We could add 367 to flyers too...but worried about that???

Not as worried about that. Especially with all the locals on there.

Got it..for next blitz!

Dec 13, 2021 at 8:05 PM

Hi Mike I know you are in a ton of pain...we can catch up later...I just wanted to make sure I updated you on timing.  Talk soon.

Thanks Faye. Good luck with the vote tomorrow.

Thank you for contacting me. I am outside of cellular range.  If this is UFCW 21 related, please call Maria Milliron at 206-436-6571

Dec 15, 2021 at 10:58 AM

A hit piece just went out on me that has you in it...will call shortly

  iMessage 

       

Hines sub resp. 026

12:11

  

FAYE



Ok.

They misspelled my name..ha....

Here it is..we are trying not to spread it because it's like talking about a decert but I want you to see it because your name is in it.



Here is our talking points if they are helpful to you:

  iMessage 

       

12:12





FG

FAYE ›

Here is our talking points if they are helpful to you:

-Negative attacks are common. We are not going to stoop to this so Don't share, post or duplicate, or email. For UFCW 21 --- contact Sarah Cherin to make sure she is aware of it.

2. The message: This merger will result in a larger and more powerful union of over 50,000 workers who acting together will raise wages and benefits for workers across WA, ID and Oregon. There are forces who oppose our efforts to raise wages and benefits, our efforts to make workplaces safer. We have seen them during the COVID crisis. Some of those same forces may well try to attack this merger agreement.

3. It can feel that we are living in times when negative attacks get more attention than everything







Fitness    Memoji    Apple Cash    Stickers    #ima

Hines sub resp. 028

12:12

  FG 

FAYE >

3. It can feel that we are living in times when negative attacks get more attention than everything else, create even a toxic environment. But the reality is that this has always been the case, for thousands of years. We are not going to change that. What we can control are our powerful and positive messages. What we can control is the question itself.

And there is one question relevant here: would you like to have higher wages, better benefits and a safer workplace? Obviously most people would say yes to that as the boards have already. This merger will help thousands of workers and our families live better lives.

Hi Mike I can see you are calling but I am in a plane will call when I land

Did this come out in Spokane or on the I5 corridor?

  iMessage 

       

Hines sub resp. 029

12:12

  

FAYE ›

Hi Mike I can see you are calling but I am in a plane will call when I land

Did this come out in Spokane or on the I5 corridor?

Spokane. Mailed from Spokane on Dec 13

Ok, so weird.

Yes. Very weird. They clearly don't know that angel hated me and I didn't want you to leave ufcw 21!!

And whomever it is is to scared to put a name to it.

Yeah. Total misinformation but to be expected. One of Eric's staffers I would suspect.

Can you send me Mizrahi's number? I need to talk about the medical with him.

Can't seem to find.

Yes....maybe someone who also is connected to Lindsay..

  iMessage 

       

Hines sub resp. 030

# EXHIBIT 23



This was left last night at Safeway 0342 in Spokane. One at the self checkout and another at the customer service counter. Jeff is contacting loss prevention for video.

# EXHIBIT 24



RFP Resp No. 2 - 002111



RFP Resp No. 2 - 002112



RFP Resp No. 2 - 002113



RFP Resp No. 2 - 002114





# EXHIBIT 25



*Secure Point Investigations (SPI)*
*WA State License UBI: 604788513*
*WA State Principal PI License: 21030203*
*www.TeamSPI.net*
*(360)888-6222*

SECURE POINT INVESTIGATIONS

*Michael A Selvaggio*
*Ridgelark Strategies*
*1672 A Willamette Falls Dr.*
*West Linn, Oregon 97068*
*(503)739-3629*

     Our agency has been retained by **UFCW Local 3000** (formerly UFCW 21 and UFCW 1439) in regard to a potential defamation suit involving printed material distributed in multiple locations in Washington State and interstate via the Internet.  Beginning in December 2021, printed materials making defamatory claims regarding UFCW Local 21, UFCW Local 1439, UFCW Local 367 and their officers and employees were distributed in person, via the internet and electronic mail, and using the US Postal Service. This literature made claims regarding the organizations' handling of sexual harassment claims and dealings related to internal merger discussions.  We are requesting that material related to this investigation be retained and preserved by yourself and your company as it is important evidence in a civil investigation.

     The material includes emails, phone call and text logs, travel receipts and expenses, geolocation data on personal cell phones, text messages, VOIP accounts, and other physical and electronic material from December 3, 2021 to March 24, 2022 related to (a) contact with organizations, people, and businesses in utilizing **Ridgelark Strategies** and/or **Michael A Selvaggio** to direct, advise, or facilitate disseminate of defamatory materials across state lines via internet, US Postal Service, and in person.  (b) Contact with organizations, people, and businesses in utilizing **Ridgelark Strategies** and/or **Michael A Selvaggio** to design, print, and package materials for distribution across state lines utilizing the methods above. (c) Records of payments made to **Ridgelark Strategies** and/or **Michael A Selvaggio** for materials and services that supported (a) and (b).

     This request is being made in good faith in anticipation of civil litigation before a Washington State Court.

     In anticipation of subpoenas being issued under the authority of the Court, I am requesting that **Michael A Selvaggio, Ridgelark Strategies, and any employee, subcontractor and partner associated with that organization and person** not erase, record over, destroy, throw away, recycle, or alter the above or any evidence in any way, and segregate and preserve it in order to prevent its deletion or destruction due to a deliberate act, or as a result of but not limited to backup protocols, electronic data shredding, drive re-imaging, the sale or destruction of computer systems, disk defragmentation, upgrading of operating systems, or routine computer and cell phone maintenance.

     I request that you communicate retention obligations to all persons in the organization, or in control of the organization, who may have access to this evidence if necessary to preserve it.

Selvaggio_000011

I am also available along with authorized legal representatives of **UFCW 3000** to collect the evidence at your convenience.  I am flexible with times as I understand that your business operation is important and wish to provide the least disruption as possible while maintaining integrity of the physical evidence and electronic data.

Any questions can be directed to myself, Al Johnson, Lead Investigator (360)888 6222 or Al@TeamSPI.net

In Service,


Alfred Johnson

Secure Point Investigations

Selvaggio_000012

# EXHIBIT 26



<u>**VIA ELECTRONIC MAIL**</u>

April 27, 2022

Ms. Faye I. Guenther
President
UFCW Local No. 3000
5030 First Avenue South
Suite 200
Seattle WA  98134-2438

Dear Faye:

    I am in receipt of a formal complaint from UFCW Local No. 555 (Local 555) President Dan Clay alleging UFCW Local No. 3000 is interfering with Local 555.  I have assigned International Secretary-Treasurer Shaun Barclay to conduct an investigation on my behalf.   Brother Barclay will be in contact with you soon regarding this matter and will report his findings to me.   I appreciate your full cooperation in the investigation.

    With kinds regards, I am

Sincerely and fraternally,

International President

**Anthony M. Perrone,** *International President*
**Shaun Barclay,** *International Secretary-Treasurer*

United Food & Commercial Workers International Union, AFL-CIO, CLC
1775 K Street, NW • Washington DC 20006-1598
Office (202) 223-3111 • Fax (202) 466-1562 • www.ufcw.org

Confidential

# EXHIBIT 27



# STREEPY LAW, PLLC

**TRANSMITTED VIA E-MAIL**

May 7, 2022

Joseph H. Emmons
joe@ospreyfield.com
6605 W Burnside Rd, Unit 128
Portland, OR 97210

Re:     UFCW 3000 v Joseph Emmons
        Defamation - Cease and Desist

Dear Mr. Emmons:

My firm represents United Food and Commercial Workers Union, Local No. 3000 (UFCW 3000) in the above-referenced matter.  Please be advised that we have been engaged to commence litigation related to claims that you travelled from Oregon to Spokane, Washington where you utilized the U.S. Postal Service as well as personally distributed false and defamatory literature regarding my client and its officers. My client wishes to resolve the matter without resorting to filing claims in Spokane County Superior Court to recover costs, attorneys' fees, and other damages as a result of your actions.  The purpose of this letter is to: 1) inform you to preserve all documents, electronic data, electronic media, or other evidence as indicated in Attachment A, 2) ask that you forward this letter to legal counsel immediately; 3) respond to this letter personally or through counsel if represented no later than May 12, 2022, and 4) request you take corrective action to ensure you do not defame our client again.

On January 8, 2022, you visited grocery stores in Spokane, WA. At each store you distributed flyers claiming UFCW Local 21, UFCW Local 1439 and others participated in a cover up of sexual harassment charges that included payoffs and other illicit activities. These allegations are false and defamatory and caused considerable damage to our client.

Safeway and Albertsons stores are equipped with video surveillance that monitors activities in its parking lots. Additionally, there is video surveillance within the stores. My client obtained video surveillance of you arriving in your car, entering Safeway store #342 where you dropped off flyers making false allegations at the self-checkout station and customer information desk. You exited the store and are on video entering your dark colored Ford Escape with Oregon license plates.

Additionally, my client was notified by a third party that you admitted to travelling across state lines and engaging in this operation on behalf of another party. While we believe the video evidence, the statements from the third party and other information we've obtained is enough to prove you were the individual involved in a systematic attempt to defame and damage our client we hope to resolve this matter with you without resorting to litigation and the expense of continued discovery. Our next step will be to file a lawsuit (see attached draft of Complaint), seek discovery,

and subpoena additional evidence from you, your employer and other Safeway, Albertsons and Rosauers stores.

Prior to incurring the substantial additional cost and inconvenience of litigation, it is our hope to explore a resolution that protects your financial and professional interests while achieving my client's goal to ensure that such defamatory and illegal interference with our internal matters never happens again. If you are interested in resolving this matter short of litigation, please contact me, or if you are represented by counsel, have your attorney contact me, no later than 5 PM on Thursday, May 12, 2022, at:

Phone: 253-528-0277
E-mail: aaron@mcguinnessstreepy.com

Sincerely,

Aaron Streepy
Attorney, WSBA# 38134
Streepy Law, PLLC
*Counsel for UFCW 3000*

*Attmnt A*
*Complaint*

4218 227th Ave Ct East
Buckley, WA 98321
253-528-0278

1

2

3

4

5

6         IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
             IN AND FOR THE COUNTY OF SPOKANE
7

8   UNITED FOOD AND COMMERCIAL              No.
    WORKERS UNION, LOCAL 3000,
9   UNITED FOOD AND COMMERCIAL              **COMPLAINT FOR DAMAGES**
    WORKERS UNION, LOCAL 1439,              **AND FURTHER RELIEF**
10  UNITED FOOD AND COMMERCIAL
    WORKERS UNION, LOCAL 21,
11
                        Plaintiffs,
12
13  vs.

14  JOSEPH H. EMMONS, individually,

15                       Defendant.

16

17         Plaintiffs United Food and Commercial Workers Union Locals 3000, 21 and

18  1439, by and through their undersigned counsel of record, as and for their claims against

19  defendant, allege as follows:

20                              **I.  Parties**

21  1.1   Plaintiff United Food and Commercial Workers Union, Local 3000, (hereinafter "UFCW

22  3000") is a successor labor union formed after the merger of United Food and Commercial

23  Workers Union, Local 21 (hereinafter "UFCW 21") and United Food and Commercial Workers

24  Union, Local 1439 (hereinafter "UFCW 1439").  At all relevant times UFCW 3000, one or both

25  of its predecessors, maintained offices and conducted business in Spokane County, Washington.

26

Complaint - 1

1  One office is located at 1719 N. Atlantic Street and the other at 2805 N. Market Street. UFCW

2  3000 represents workers in various retail and health care facilities throughout Spokane County.

3  1.2    Defendant Joseph H. Emmons is and at all relevant times was, an individual, (hereinafter

4  "Emmons") working in the states of Washington and Oregon and residing in Portland, Oregon.

5                                    **II. JURISDICTION AND VENUE**

6  2.1    Plaintiffs allege state claims against Defendant under the common law of the State of

7  Washington.

8  2.2    The acts alleged herein were committed in Spokane County, Washington, and caused

9  harm, injury or damages in this state to the Plaintiff that is a Washington organization. This

10  Court has jurisdiction over the subject matter of this action and over the defendant.

11  2.3    Venue is proper in this Court under RCW 4.12.020 because the wrongful acts giving rise

12  to the causes of action occurred in Spokane County, Washington.

13                                         **III. FACTS**

14  3.1    UFCW 1439 was a chartered member of the United Food and Commercial Workers

15  International Union. It represented approximately 7,800 members in Eastern Washington,

16  Eastern Oregon and Northern Idaho. The majority of the members worked in the retail grocery

17  industry with other bargaining units in various industries.

18  3.2    UFCW 21 was a chartered member of the United Food and Commercial Workers,

19  International Union.   It represented more than 44,000 members throughout the state of

20  Washington including workers in retail grocery in the Puget Sound region of the state.

21  3.3    The United Food and Commercial Workers International Union requires local unions to

22  request approval prior to being granted permission to begin formal discussions regarding

23  merging two local unions.

24  3.4    On October 28, 2021, UFCW 21 and UFCW 1439 requested permission from the

25  International Union to begin formal merger conversations.

26

Complaint - 2

3.5     On December 2, 2021, the UFCW International approved the request to engage in formal merger conversations. Throughout the next week, leadership from both local unions discussed and negotiated a merger agreement setting forth certain terms and conditions of the proposed merger.

3.6     From December 9 to 13, leadership from both Unions met with key staff and executive board members to announce and discuss the proposed merger.

3.7     On December 14, 2021, UFCW 1439's executive board met and approved a motion to recommend the merger to the membership of the local. UFCW 1439 leadership began necessary preparation for a vote of the full membership on the question of whether to merge with UFCW 21.

3.8     On December 14, 2021, UFCW 21's executive board met and approved a motion to recommend the merger to the membership of their local. UFCW 21 leadership began necessary preparation for a vote of the full membership on the question of whether to merge with UFCW 1439.

3.9     On December 15, 2021, UFCW 1439's President, Eric Renner, began receiving reports from union members and staff that a flyer was being circulated to grocery stores in the Spokane area. Mr. Renner obtained copies of the flyer and the envelopes they were mailed in. The envelopes were postmarked December 13, 2021.

3.10    The flyer falsely claimed that UFCW 21, UFCW 1439 and United Food and Commercial Workers Local 367 (hereinafter "UFCW 367") as well as its officers and staff were engaged in payoffs and coverups.

3.11    The flyer specifically targeted and falsely claimed UFCW 21 President Faye Guenther "helped former 367 President Angel Gonzalez cover up his harassment charges and paid him off in exchange for installing her puppet, Mike Hines."

Complaint - 3

3.12    The flyer falsely claimed that UFCW 21 and Faye Guenther were assisting Renner in hiding from sexual harassment charges. This falsely implied Renner was utilizing the merger to avoid charges of sexual harassment.

3.13    The flyer claimed, "OUR UNION SHOULD BE LOOKING OUT FOR US NOT PROTECTING HARASSERS!" falsely implying Local 21, Local 1439 and its leadership was not looking out for its members and were protecting harassers. The flyer recommended a "NO" vote on any merger.

3.14    On December 16, 2021, UFCW 21 received reports of the flyers being circulated via social media by workers and members in the Puget Sound region of the state. Jessica Roach, a UFCW 367 member in the Gig Harbor area working for Fred Meyer, reposted the flyer on a member Facebook Forum initiating a conversation writing "Brothers and Sisters … let's talk." In response to questions, Roach asserted the "flyer was mailed to Fred Meyer, addressed to the shop steward, the store director, and two assistants (sic) managers. … [UFCW 1439's] President appears to be making a back door deal with Faye, President of 21, in a desperate attempt to secure his employment. Also, much like our previous President, Angel, their President, Eric Renner, is being sued for sexual harassment. The evidence against him must be solid because this, as WE KNOW, this is a desperate move. … I think this flyer is meant to alert of us (sic) the corruption that is happening, perhaps, so we can start the conversation of how to combat it." The posting received dozens of comments and likes.

3.15    After obtaining the flyer, UFCW 1439 conducted an internal investigation in order to determine whether staff members were involved in the dissemination of defamatory literature opposing the International Union's approval and directives of UFCW 1439 and UFCW 21 leadership.

3.16    UFCW 1439's investigation revealed that beginning on December 13, 2021, flyers were mailed to grocery stores in Eastern Washington.  Throughout the remainder of December

Complaint - 4

1  President Renner and UFCW 1439 staff continued to receive reports of the flyer being received

2  at grocery stores throughout its jurisdiction.

3  3.17    Safeway stores utilize modern surveillance equipment to monitor activities and increase

4  safety in its parking lots and stores. The surveillance includes recording parking lots as well as

5  public areas of the interior of the store.

6  3.18    On January 8, 2022, a man, later identified as Defendant Joseph Emmons, was observed

7  by video surveillance equipment in the parking lot of Safeway store #342 located at 1616

8  Northwest Blvd. Spokane, Washington 99205.

9  3.19    Defendant arrived at approximately 5:45 PM in a dark/silver colored Ford Escape with

10  Oregon license plates.

11  3.20    Video surveillance continually tracked Mr. Emmons' actions at the store. Mr. Emmons

12  parked his car near the rear of the parking lot. Defendant exited his car and crossed the parking

13  lot at 5:46 PM wearing a mask, "GU" baseball cap, and sunglasses.  Emmons carried in his right

14  hand a small stack of flyers.

15  3.21    On January 8, 2022, the sun set in Spokane, Washington at 4:17 PM. When Defendant

16  Emmons wore the mask, baseball cap, and sunglasses into the Safeway store that night, it was

17  dark and long after sunset.

18  3.22    At approximately 5:46:52 PM Emmons entered the East Entrance/Exit of the store.

19  3.23    For the next four minutes Emmons walked through the public areas of the store holding

20  the flyers.

21  3.24    At approximately 5:50:44 PM Emmons approached the self-checkout area. It was

22  unattended at the time and Emmons placed a flyer, face up, at the workstation at the end of the

23  self-checkout.

24  3.25    Defendant continued to the "Customer Information Desk" and placed another flyer down

25  on the counter at approximately 5:50:54 PM.

26

Complaint - 5

1    3.26   Defendant exited the store five seconds later via the West Entrance/Exit. Defendant

2    crossed the parking lot and returned to a Ford Escape with Oregon license plates before exiting

3    Safeway's parking lot via the East entrance/exit by turning South on North Maple Street at

4    5:52:15 PM.

5    3.27   Defendant visited other stores in the Spokane area distributing flyers.

6    3.28   Identical flyers were reported and forwarded to UFCW 1439 from additional stores

7    throughout the area.

8    3.29   In early January 2022, UFCW 21 and UFCW 1439 agreed to move additional staff from

9    the Seattle area to work throughout Eastern Washington, Northern Idaho and Eastern Oregon in

10   order to respond to the defamatory flyers.

11   3.30   Local 1439 and Local 21 conducted separate votes of its membership in January and

12   February 2022. Both Locals approved the merger. The merger forming the new United Food and

13   Commercial Workers Union, Local 3000 (hereinafter "UFCW 3000") was effective March 1,

14   2022.

15   3.31   UFCW 21 distributed pictures from the surveillance video of the car and of the individual

16   that distributed the flyers requesting that if anyone knew the car or individual, they contact the

17   Local.

18   3.32   In late February, [NAME] contacted UFCW 21 and claimed Defendant Joseph Emmons

19   had admitted to traveling to Spokane on an assignment involving the UFCW. Emmons further

20   admitted additional details about his trip to Spokane.

21   3.33   When asked, [NAME] confirmed Emmons and his vehicle matched a screen capture of

22   the video evidence from Spokane.

23   3.34   Defendant Emmons is not, and never has been a member of UFCW 21.

24   3.35   Defendant Emmons is not, and never has been a member of UFCW 367.

25   3.36   Defendant Emmons is not, and never has been a member of UFCW 1439.

26

Complaint - 6

1   3.37    Based on information and belief Defendant Emmons benefitted financially, through the

2   form of compensation or wages for services rendered, for distributing the flyers.

3   3.38    Defendant Emmons did not contact UFCW 21, UFCW 1439, UFCW 367, or its officers,

4   to determine whether the allegations within the communications were true prior to publicly

5   publishing the flyer.

6   3.39    Defendant Emmons transported the flyers from Oregon, across state lines, to Spokane,

7   Washington.

8   3.40    Defendant Emmons had no personal knowledge of Faye Guenther paying off Angel

9   Gonzalez.

10  3.41    Defendant Emmons did not have a good faith belief that Faye Guenther paid off Angel

11  Gonzalez.

12  3.42    Defendant Emmons had no personal knowledge of Faye Guenther assisting Angel

13  Gonzalez to cover up harassment charges.

14  3.43    Defendant Emmons did not have a good faith belief that Faye Guenther assisted Angel

15  Gonzalez in the cover up of harassment charges.

16  3.44    Defendant Emmons had no personal knowledge of Eric Renner hiding from sexual

17  harassment charges.

18  3.45    Defendant Emmons did not have a good faith belief that Eric Renner was hiding from

19  sexual harassment charges.

20  3.46    Defendant has no personal knowledge of Eric Renner being sued for sexual harassment.

21  3.47    Defendant has no good faith belief that Eric Renner is, or has ever been, sued for sexual

22  harassment.

23  3.48    Defendant Emmons had no personal knowledge of Eric Renner landing "a cushy new gig

24  with Local 21."

25  3.49    Defendant Emmons did not have a good faith belief Eric Renner landed a "cushy new gig

26  with Local 21."

Complaint - 7

STREEPY LAW PLLC
4218 227th Ave Ct. East
Buckley, WA 98321
Telephone (253) 528-0278

1    3.50    Defendant Emmons had no personal knowledge the merger between UFCW 21 and

2    UFCW 1439 being "forced."

3    3.51    Defendant Emmons did not have a good faith belief the merger between UFCW 21 and

4    UFCW 1439 was "forced."

5    3.52    Defendant Emmons had no personal knowledge that Mike Hines was a "puppet" for Faye

6    Guenther.

7    3.53    Defendant Emmons did not have a good faith belief that Mike Hines was a "puppet" for

8    Faye Guenther.

9    3.54    Defendant Emmons took no steps to verify the factual accuracy of the statements he

10   distributed referencing UFCW 1439, UFCW 21 or their officers and staff.

11   3.55    Defendant Emmons intended and knew the flyer was likely to harm Faye Guenther.

12   3.56    Defendant Emmons intended and knew the flyer was likely to harm Eric Renner.

13   3.57    Defendant Emmons intended and knew the flyer was likely to harm Angel Gonzalez.

14   3.58    Defendant Emmons intended and knew the flyer was likely to harm Mike Hines.

15   3.59    Defendant Emmons intended and knew the flyer was likely to harm UFCW 21.

16   3.60    Defendant Emmons intended and knew the flyer was likely to harm UFCW 367.

17   3.61    Defendant Emmons intended and knew the flyer was likely to harm UFCW 1439.

18   3.62    UFCW 1439, its officers and staff, suffered losses related to the defamatory statements in

19   the form of investigation costs, attorneys' fees, the assignment of additional staff to address and

20   communicate with membership regarding the false statements, as well as harm to its reputation.

21   3.63    UFCW 21, its officers and staff, suffered losses related to the defamatory statements in

22   the form of investigation costs, attorneys' fees, the assignment of additional staff to address and

23   communicate with membership regarding the false statements, as well as harm to its reputation.

24   3.64    UFCW 3000 its officers and staff continue to suffer losses related to costs associated with

25   this action, the investigation regarding this matter, staffing to address concerns raised by the

26   flyer, and harm to its reputation.

Complaint - 8

1    3.65    Defendant Emmons has performed services for Mike Selvaggio.

2    3.66    Defendant Emmons worked as an employee for Mike Selvaggio.

3    3.67    Defendant Emmons performed work for Ridgelark Strategies.

4    3.68    Defendant Emmons worked as an employee for Ridgelark Strategies.

5                              **IV. CAUSE OF ACTION**

6    4.1    Plaintiffs reallege above paragraphs 1.1 through 3.61.

7    4.2    Defendant Emmons published defamatory statements by mailing and hand delivering

8    copies of a flyer which is defamatory on its face.  Namely, the flyer specifically names UFCW

9    1439, UFCW 21, Faye Guenther, Eric Renner and others claiming the organizations and

10   individuals were involved in providing payments to cover up sexual harassment complaints,

11   installation of "puppet" leadership at another local union, the elevation of sexual harassers over

12   the interests of union members, and that the merger between UFCW 1439 and UFCW 21 was

13   "forced" due to harassment complaints.

14   4.3    The statements published by Defendant Emmons are false, unprivileged, in writing, and

15   highly defamatory as they allege Plaintiffs engaged in schemes aimed at covering up and

16   protecting sexual harassers.  It implied the use of union members' money to cover up harassment

17   charges rather than "looking out for us [members]." These statements themselves are express

18   false statements of fact, and they implied a knowledge of negative facts about UFCW 21, UFCW

19   1439 and their officers' professionalism, ability to conduct business, and competence. Further,

20   the statements were complete fiction, crafted to seem credible and to cause maximum damage

21   and interfere with the internal affairs of UFCW 1439 and UFCW 21.

22   4.4    Defendant's statements are defamatory per se, as they refer to improper or incompetent

23   conduct involving a person's business, trade, or profession. They were published in a way aimed

24   at causing maximum damage to the organizations and its officers as they were distributed

25   directly to the worksites of members and left in visible places where workers would see them. In

26   fact, there is no plausible interpretation other than that the distribution of the flyers was intended

Complaint - 9

1    to spread false information to as many union members, and therefore merger voters, as possible.

2    The document used the false information as the basis for urging a "NO" vote to any merger.

3    4.5    Defendant Emmons distributed the defamatory flyer with actual malice – i.e., with

4    knowledge of their falsity, or, alternatively, with a reckless disregard for their falsity. Defendant

5    knew the statements were false prior to publishing them, and or could easily have ascertained the

6    falsity of the statements by contacting the Plaintiffs or any of the organizations or individuals

7    named in the flyer but chose instead to publish the statements with a conscious disregard for their

8    truth and with deliberate intent to harm and defame the Plaintiffs' reputation.

9    4.6    Moreover, the publication of such statements quickly made its way to social media where

10    they were repeated as truths by union members. By December 16, 2021, Facebook Forum

11    conversations were reported to UFCW 21 and UFCW 1439 leadership.

12    4.7    The false and defamatory statements made by defendant are defamatory per se, giving

13    rise to general damages, in that they exposed the Plaintiffs and their officers to contempt, ridicule

14    and disgrace.

15    4.8    The flyer injured Plaintiffs and their officers by diminishing its reputation in its trade and

16    business and required a response and explanation to its membership. In response to the

17    defamatory comments UFCW 1439 and UFCW 21 were required to dedicate additional staff to

18    communicate and have in-person conversations with members prior to vote meetings. Plaintiffs

19    had to confront and discuss the flyer. UFCW 3000 still allocates staff time to address the impact

20    of defamatory statements made in the flyer.

21                                    **V.  PRAYER FOR RELIEF**

22            **WHEREFORE, Plaintiff prays for judgment against defendant as follows:**

23    5.1    For compensatory damages, according to proof at trial.

24    5.2    For exemplary and punitive damages.

25    5.3    For a temporary, preliminary, and permanent mandatory and/or prohibitory injunction

26    ordering that Defendant immediately cease and desist from publishing any additional false

Complaint - 10

1    information about Plaintiffs; destroy any remaining digital or electronic copy of the flyer; and

2    publicly apologize by letter to Plaintiffs, which must be approved by Plaintiffs' attorneys of

3    record, for making false and defamatory statements and implying the misuse of Union funds to

4    protect sexual harassers. Agree the Plaintiffs may post the letter on its website, social media and

5    otherwise communicate it to the public and its members.

6    5.4    For reasonable attorneys' fees, all appropriate costs, litigations expenses to the extent

7    allowed by law, and,

8    5.5    For such other relief as the Court may deem just and proper.

9

10    RESPECTFULLY SUBMITTED this ___ day of May, 2022.

11

12

13                                    Aaron Streepy, WSBA No. 38149
                                      **STREEPY LAW, PLLC**
14                                    4218 227th Ave Ct E
15                                    Buckley, WA 98321
                                      Tel: (253) 528-0277
16                                    aaron@mcguinnessstreepy.com
                                      *Counsel for UFCW 3000*
17

18

19

20

21

22

23

24

25

26

Complaint - 11

**Attachment A:**

DEFINITIONS
**"Document"** or **"documents"** includes without limitation any written, typed, printed, recorded, or graphic matter (however preserved, produced, or reproduced) of any type or description, regardless of origin or location, including without limitation any binder, cover note, folder label, certificate, letter, correspondence, record, table, chart, analysis, graph, schedule, report, test, eliminate materials, course materials, study memorandum, note, list, diary, log, files (including but not limited to official and unofficial personnel records and otherwise), calendar, telex, message (including, but not limited to, inter-office and intra-office communications), computer/electronic data, meta data, E-mail, questionnaire, bill, purchase order, shipping order, contract, memorandum of contract, agreement, conciliation or settlement agreement with any municipal, state, federal or governmental entity, assignment, license, certificate, permit, ledger, ledger entry, book of account, check, order, invoice, receipt, statement, financial data, acknowledgment, computer or data processing card, computer or data processing disk, computer-generated matter, photograph, photographic negative, sound recording, transcript or log of an such recording, projection, videotape, film, microfiche, IPhone, IPad, "CLOUD" but not limited to Solid State Drive **(SSD)**, Static Random Access Memory **(SRAM)**, Dynamic Random Access Memory **(DRAM)**, Universal Serial Flash Bus Drive **(USB Flash Drive)**, text messages, and all other data compilations from which information can be obtained or translated, reports or summaries of investigations, drafts and revisions of drafts of any documents and original preliminary notes or sketches, no matter how produced or maintained, in your actual or constructive possession, custody or control, or the existence of which you have knowledge, and whether prepared, published or released by you or by any other person. If a document has been prepared in several copies, or additional copies have been made, or copies are not identical (or which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), preserve each non-identical copy as a separate document.

**Electronic Data.**    The term "electronic data" means information system platform (e.g., workstations, servers, storage area network, switches, firewalls, routers, virtualization, or cloud computing) that makes up the information technology infrastructure, the original (or duplicate, identical copies when originals are not available), and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Additional electronic data includes, but is not limited to: fundraising data, plans, systems, programs, investments and any related documents relating thereto; credit card information (e.g., name of the issuer, name of the account holder, account number, expiration date, security number, PIN or any combination of that information); bank account information (e.g., name of bank, name of account holder, account number, PIN or any combination of that information);physical as well as email addresses; telephone numbers; birth dates; government issued identification numbers, social security numbers, tax identification numbers, driver's license numbers or passport numbers; biometric information; and passwords. Such writings may include, but are not limited to, computer programs (whether private, commercial or work-in-progress), programming notes or instructions,

electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, meta data, charts, graphs and outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drivers, PIF files, batch files, any and all ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, internal and external hard disks, floppy disks, Optical, CD-ROM/DVD drives, Bernoulli Box drives and their equivalent, magnetic tape of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to Solid State Drive **(SSD),** Static Random Access Memory **(SRAM**), Dynamic Random Access Memo**ry (DRAM),** Universal Serial Flash Bus Drive **(USB Flash Drive),** or on or in any other vehicle for digital data storage and/or transmittal. The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each such aforesaid original and/or copy

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible such as Terminate and Stay Resident (TSR) memory, and ROM/RAM Memory. You are obliged to preserve potentially relevant evidence from all of these sources of ESI, even if you do not anticipate producing such ESI. The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure 37 that have been approved by the United States Supreme Court, you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiffs of their right to secure the evidence or the Court of its right to adjudicate the issue.

**Rotation**. The term "rotation" means any plan, policy or scheme that involves the re-use of an electronic media device after it has been used for backup, archival, retrieval or other electronic data storage purposes, particularly is such re-use results in the alteration and/or destruction or degaussing of the electronic data residing on said device prior to its re-use.

**Electronic Media**. The term "Electronic Media" means any type of device that stores and allows distribution or use of electronic information. This includes television, radio, Internet, fax, CDROMs, DVD, and any other electronic medium magnetic or other storage media device used to record electronic data that takes advantage of electronic technology and any other medium that requires electricity or digital encoding of information. Additional electronic media devices may include, but are not limited to, computer memories, Internal and External hard disks, floppy disks, magnetic tape of all types, microfiche, computer chips or in any other vehicle for digital data storage and/or transmittal.

**Active File**.  The term "active file" means any digital or manual files actively used by an organization to operate on a daily basis to include electronic data file that can be utilized by an electronic data processing system in any manner without modification and/or re-construction.  An active file is any electronic data file that has not been erased or otherwise destroyed and/or damaged and which is readily visible to the operating system and/or the software with which it was created.

**Deleted File**.  The term "deleted file" means any electronic data file that has been erased or deleted from the electronic media on which it resided.  A deleted file is any file whose File Allocation Table (FAT/FAT32) New Technology File System (NTFS) entry has been modified to indicate the file as being deleted and/or which is not readily visible to the operating system and/or the software with which it was created.

**File Integrity.** The term "file integrity means" When a computer file is not changed or deleted and is stored the same way since starting without being altered in anyway.

**Meta Data.** The term "Meta Data" means any file system which stores information associated with the file—including the file name, the length of the contents of a file, and the location of the file in the folder hierarchy—separate from the contents of the file.

**File Fragment.** The term "fragmentary file" refers to individual or single files being broken into multiple pieces any electronic data file that exists as a subset of an original active file.  A fragmentary file may be active or deleted.  The cause of fragmentation resulting in the fragmentary file can include, but is not limited to, manual intervention, electronic surges, and/or physical defects on electronic media.

# EXHIBIT 28

**UFCW3000 Administrator**

| | |
|---|---|
| **From:** | Faye Guenther |
| **Sent:** | Monday, June 6, 2022 12:47 PM |
| **To:** | Shaun Barclay |
| **Cc:** | Aaron Streepy |
| **Subject:** | Privileged Correspondence -Local 555 Complaint Investigation |

Hi Shaun-

Your phone message just made it to me. I am happy to meet. However, as you know Dan's complaint against me and the impending Defamation Case against Emmons, UFCW 555, and Dan Clay have made matters complicated. I believe all parties are under discovery notice and anything we say or write is subject to discovery.  I think it may be in all of our interest to have attorneys present to make these conversations protected.  Additionally, I understand the second charge is against UFCW 3000.  If that is the case,  Aaron Streepy should speak on behalf of UFCW 3000, or in the alternative, Joe Mizrahi. I have recused myself from board votes related to this issue.

As a matter of process, we were advised by the International that we must exhaust the internal Constitutional process before filing a defamation case in civil Court against Dan Clay and UFCW 555.  Legal counsel has serious reservations about the adequacy and appropriateness of the International's process because it cannot hold Emmons accountable as he is a none member, and the remedies provided are not consistent with civil remedies available, however; I am willing to wait the 4 months (per LMRDA) to exhaust the internal process before proceeding to court against UFCW associated Defendants. We are however proceeding with the Defamation complaint against non-members and I wanted to provide the courtesy of letting you know.


Take care,

Faye Guenther
UFCW 3000 President
Cell: 206-294-9337


**From:** Shaun Barclay <sbarclay@ufcw.org>
**Sent:** Monday, June 6, 2022 11:28 AM
**To:** Faye Guenther <faye@ufcw21.org>
**Cc:** Janet Phetteplace <jphetteplace@ufcw.org>
**Subject:** Local 555 Complaint Investigation

Morning Faye,

I hope this email finds you well.  I left a voice message for you on May 27th at 10:20 am PDT but with our tech overload lives being what it is perhaps it didn't reach you.

I need to set a time to speak with you on the recent complaint filed by Local 555.  I would prefer to meet with you and I can travel to the Northwest.  Please contact me so we can arrange a time that accommodates your schedule.  I can be reached on cell at (972) 523-9229.

I look forward to hearing from you.

RFP No. 15 Resp - 015157

# EXHIBIT 29

**UFCW3000 Administrator**

| | |
|---|---|
| **From:** | Faye Guenther |
| **Sent:** | Monday, June 27, 2022 11:26 AM |
| **To:** | Shaun Barclay |
| **Subject:** | Timeline for Shaun Barclay |

Hi Shaun:

As promised, here are the notes I was using when we spoke.

The video is proving harder to transfer. When you visit Seattle, I can have it on my computer for you to review. If you want, we have side by side picture of Emmons and we can send them to you. We also have a confession from Emmons and the fact that his attorney never denied it was Emmons and had the flyer before we gave it to him.

Talk soon-

- Investigation timeline/points:
  - Late August 2021: Facebook post announcing that UFCW 555 and UFCW 367 would enter into negotiations jointly
  - September 2021: Faye Guenther and Joe Mizrahi speak to employer representative Scott Powers (who is willing to provide a written affidavit) asking that if UFCW 367 contract was open early, UFCW 21's contracts be opened early, since we have the same expiration dates. UFCW 21 leadership made no other comments related to 367 or UFCW 555.
  - Early September, Todd Crosby assigned to investigate. Faye Guenther, UFCW 21 not allowed to see Dan's complaint.
  - October 19, 2021 Marc Perrone issues Faye Guenther a Cease and Desist.
  - October 28, 2021 UFCW 1439 and UFCW 21 requested permission to merge and is granted verbal approval, but told to wait for formal letter.
  - November 8, 2021 Dan Clay Texts Eric Renner (determine who was with Dan when he texted this....we believe he was in bargaining that day with an International Staff person who was one of the few people who knew about merger), "I hear you resigned."
  - November 2019: Kate requests that Faye/Eric wait to vote the merger until after the election at Richland and will not release permission to proceed.
  - On December 2, 2021 International Approves formal discussions
  - On Dec 3 to 13 leadership from both locals negotiate merger agreement to present to executive boards.
  - On December 14, both boards met separately to approve the merger.
  - On December 15, Eric starts receiving notice of flyers in stores.
  - On December 15, Frank Jorgenson Emails Faye flyers and envelopes.
  - On December 13 and 14 2021, defamatory flyers were sent out using the U.S. Postal Service.
  - On December 16, Jessica Roach posts on UFCW 367 Forum the flyer.
  - On December 21 an email with similar language is sent to members of the International Executive Board
  - UFCW 1439 and UFCW 21 engage Al Johnson, a private investigator, to look into the matter
    - All investigation expenses are approved by the executive board. All votes regarding the investigation has discussion led by Joe Mizrahi, Secretary Treasurer, and President Guenther recuses herself, as a "target of the party"

496





RFP No. 15 Resp - 015155

- All votes approving expenditures and all subsequent votes reaffirming board commitment to investigation pass unanimously.
  - o Originally, investigation centers on potential disaffected UFCW 1439 staff and former staff. We had no reason to believe that 555 had any involvement.
  - o On January 8, 2022, a man, who would later be identified as Joseph Emmons, wearing sunglasses, a mask, and a Gonzaga University baseball cap entered a 1439 Safeway at 5:45 p.m. He was carrying a small stack of flyers.
  - o Private Investigator's team analyzed the envelopes and the flyers and determined that this flyer was not hand stuffed, but rather folded and stuffed by a machine. Ink injected.
  - o President Guenther posts on her facebook an image of the unidentified man who dropped of flyers at Safeway
  - o Anonymous source, identifies the image of Joseph Emmons
  - o Emmons image and vehicle are subsequently matched to those at the Safeway by the private investigator
  - o Emmons tells anonymous source that he "Went into Washington State to Conduct a black ops for UFCW", That he picked up flyers at the 555 office
  - o Under advice of attorneys and professionals UFCW 3000 sends spoilage letter to Emmons and Selvaggio in anticipation of potential future litigation
  - o Dan Clay emails VP's of International with Original Complaint, Spoilage Letter and Second Complaint.
  - o Marc Perrone emails Dan's complaint to 112 recipients across the US and Canada.

*In Solidarity,*

*Faye Guenther*
UFCW 3000 President
Cell: (206) 294-9337

Visit us at UFCW3000.org

Grievance Questions?  Please call the Member Resource Center: 206-436-6570

📞 *: 1-800-732-1188* | ✉ *Email: fguenther@ufcw21.org* | ▦ *Address: 23040 Pacific Highway S, Des Moines, WA 98198*

# UFCW3000

*Our mission is to build a powerful Union that fights for economic, political and social justice in our workplaces and in our communities.*

This electronic message transmission contains information which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited.

RFP No. 15 Resp - 015156

# EXHIBIT 30

**Shaun Barclay**

| | |
|---|---|
| **From:** | Shaun Barclay |
| **Sent:** | Friday, July 1, 2022 9:39 AM |
| **To:** | Faye Guenther; faye@ufcw3000.org |
| **Subject:** | Confirmation of Timeline Receipt and Information Request |

Faye,

I look forward to our meeting on July 11 & 12; and I also appreciate you holding the 13th open, if needed.  I received the timeline, if there are other notes relevant to the inquiry, I would appreciate a copy of them.

I previously received copies of the relevant flyers, the correspondence addressed to Michael Selvaggio from Alfred Johnson and the e-mail to members of the Executive Board from Dan Clay. I am also looking for copies of any documents relevant to the allegations that Dan/Local 555 sought to "chill" the investigation into merger vote misconduct and that you were wrongfully defamed.

In anticipation of our meeting I would appreciate the following prior to the meeting, so I can better prepare and thus reduce the time taken from your schedule.

Among the documents I would like to receive are:

(1) any reports or notes or other evidence on the investigation/analysis of the flyers, including any investigator reports.

(2)  Declaration(s) or other evidence that ties Emmons and/or Local 555 to the production and/or distribution of the flyer.

(3) a copy of the screen shot of the 11/8/2021 text from Dan to Eric.

(4) a copy of the security video.  If a copy is not possible, then discuss alternatives to a copy.

(5) the list of organizations or people that Local 3000 considered were possibly responsible for distribution of the flyers that were ultimately eliminated, e.g. Lindsay Garner, Laurel Fish, Jessica Roach and others and how and why they were eliminated as parties responsible for the flyers and/or distribution of the flyers.

(6) documentation supporting your statement that Collin Farthingworth ( collinfarthingworth@gmail.com ) is non-existant.

1

UFCW-EMMONS_000094

In short, I am looking for you to layout your/Local 3000's case when we meet, and this information is important for us to review.

In addition, I would like to meet with any sources you have relied on, including the "anonymous source(s)" for the Declaration(s), the private investigator hired by Local 3000, Eric Renner and any other individuals you believe have relevant information to the investigation.

So that I may further assist in attempting to resolve this matter, I ask for Local 3000's direct cost summary of the Local's investigation. I also will want to discuss what your/Local 3000's proposed bottom line remedy would be if this matter were to be resolved internally.

Thanks for your assistance in this matter. Again, I look forward to meeting with you. Have a safe and healthy 4th of July.

Shaun


*Shaun Barclay,*
*Secretary-Treasurer*
*UFCW International Union*

*sbarclay@ufcw.org*

2

Confidential

# EXHIBIT 31

| | |
|---|---|
| **From:** | "Shaun Barclay" <sbarclay@ufcw.org> |
| **Sent:** | Fri, 22 Jul 2022 10:46:37 +0000 (UTC) |
| **To:** | "Faye Guenther" <faye@ufcw3000.org> |
| **Subject:** | RE: Informant |

Faye,

This will acknowledge receipt of your Remedies email.  However, the screen shot of your facebook posting and text inquiry showing the image of the unidentified man. . . the "Do You Know This Man" post/text that the informant responded to, did not come through on my email.  Could you please re-send it to me.  I have a meeting with Lisa to give her an update my progress.

Regarding the informant, the International Union will agree that it will not retaliate in any way against a witness for providing truthful information as part of an investigation it is conducting and will seek a similar commitment from Local 555.  Can you tell me specifically what other assurances would be needed in any such binding agreement?  It is probably more fruitful for you to confer with the witness to see if they would be willing to speak with me if there were binding agreements that would protect the informant.  Alternatively, if you could provide us with a document that would be acceptable, we would be happy to consider it.

Thanks,

Shaun

Just saw your text from last night, if there is anything that might be fruitful from your recent discussions please don't hesitate to give me a call on cell.

---

**From:** Faye Guenther <faye@ufcw3000.org>
**Sent:** Wednesday, July 13, 2022 1:57 PM
**To:** Shaun Barclay <sbarclay@ufcw.org>
**Subject:** Informant

Hi Shaun,
Regarding the informant,  if UFCW 555 and the International signed a no retaliation agreement, we will confer with the informant about an interview with you Shaun.  Let me know how you would like to proceed.

As I am sure you know, retaliation against witnesses during a trial creates a cause of action for the witness.  This protection does not exist in this circumstance unless we create a binding document.

*In Solidarity,*

*Faye Guenther*
UFCW 3000 President
Cell: (206) 294-9337

Visit us at UFCW3000.org

Grievance Questions?  Please call the Member Resource Center: 206-436-6570

*\* : 1-800-732-1188* | *\* Email: fguenther@ufcw21.org* | *\* Address: 23040 Pacific Highway S, Des Moines, WA 98198*

# UFCW3000

*Our mission is to build a powerful Union that fights for economic, political and social justice in our workplaces and in our communities.*

This electronic message transmission contains information which may be confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, please be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited.

# EXHIBIT 32

| | | |
|---|---|---|
| **From:** | "International President Marc Perrone" <mcperrone@ufcw.org> | |
| **Sent:** | Mon, 15 Aug 2022 18:59:43 +0000 (UTC) | |
| **To:** | "dclay@ufcw555.org" <dclay@ufcw555.org>; "faye@ufcw3000.org" <faye@ufcw3000.org> | |
| **Subject:** | Locals 555 and 3000 | |
| **Attachments:** | Locals 555 and 3000 8-15-22.pdf | |

Please see the attached.

Confidential



**VIA ELECTRONIC MAIL**

August 15, 2022

Mr. Daniel Clay, President
UFCW Local No. 555
Post Office Box 23555
Tigard OR  97281-3555

Ms. Faye Guenther, President
UFCW Local No. 3000
5030 First Avenue South
Suite 200
Seattle WA  98134-2438

Dear Dan and Faye:

I have before me an unfortunate dispute regarding your two respective local unions and both of you as their primary officers (hereafter referred to in the third party for clarity).  Underlying this dispute is a handbill that was distributed to UFCW members, posted on social media, and mailed to several stores.  The handbill disparages the primary officers from UFCW Local No. 21 (Local 21), UFCW Local No. 367 (which is not a party to this dispute), and UFCW Local No. 1439 (Local 1439), in a failed attempt to prevent a merger between Local 21 and Local 1439, now together known as UFCW Local No. 3000 (Local 3000). The handbill is false, and I condemn it in the strongest terms.  It has no place in our Union, and I take some solace in knowing that it did not have its intended effect of deterring members from voting in favor of the merger.

As a result of the false and disparaging allegations in the handbill, Local 21's then President and now Local 3000 President Faye Guenther engaged in an effort to discover who was responsible for creating and distributing the handbill.  She hired a private investigator that ultimately sent a spoliation letter to a non-member, third party that has a contractual relationship with UFCW Local No. 555 (Local 555).  International Vice President and Local 555 President Dan Clay filed an official complaint as a result.  The complaint alleges President Guenther had ill intent in directing and/or permitting the investigator to send the spoliation letter.  Specifically, it alleges she: (1) violated the International Constitution; (2) interfered with an autonomous chartered body; and (3) violated harassment policies.  The International Union's investigation did not substantiate these claims. The investigation supports a finding that Local 3000 and its officers had a right to engage a private investigator, seek to discover who sent and distributed the

**Anthony M. Perrone,** *International President*
**Shaun Barclay,** *International Secretary-Treasurer*

United Food & Commercial Workers International Union, AFL-CIO, CLC
1775 K Street, NW • Washington DC 20006-1598
Office (202) 223-3111 • Fax (202) 466-1562 • www.ufcw.org

Mr. Daniel Clay                                                                    August 15, 2022
Ms. Faye Guenther

-2-

handbill, and attempt to hold the party or parties responsible. Further, and based on the evidence before me, I do not find the actions by Local 3000 or its President were done with ill intent, and I note the spoliation letter was not directed at Local 555 or any of its officers or members.

Since President Clay's letter was sent to members of the International Executive Board, I will, at President Guenther's request, send a letter to the International Executive Board of my findings in this regard. I will also address, if requested to do so, the October 19, 2021, cease-and-desist letter that was referenced by President Clay in his letter, consistent with my letter of August 8, 2022.

President Guenther alleges, in turn, that President Clay sent the letter to members of the International Executive Board in an effort to "chill" Local 3000's investigation. The allegation of ill intent by President Clay hinges primarily on information not currently available to the International Union. Moreover, the investigation found that Local 555 and its President credibly deny any involvement in the creation or distribution of the handbill at issue. It is also apparent that entities/individuals not associated with Local 555 had motive to prevent the merger between Local 21 and Local 1439, and Local 3000 has not yet concluded a full investigation of the matter that would eliminate other entities or individuals from suspicion. Thus, and based on information currently available to me, I do not find the evidence supports a finding that President Clay sent the letter to me and members of the International Executive Board to "chill" the investigation.

Local 3000 and its President also seek redress for claims related to the disparagement in the handbill. I recognize here, however, that the internal remedies afforded under the International Constitution cannot provide complete or full relief to Local 3000 or its officers for these claims, and I am hindered in investigating the facts at issue or fashioning an appropriate remedy at this point.

Local 3000 and its President have indicated the desire to use civil litigation to pursue the truth and hold the individual(s) that created and/or knowingly disseminated the handbill responsible. They seek monetary damages, among other remedies. They have a legal right to pursue such remedies under the Labor Management Reporting and Disclosure Act (LMRDA). Local 555 and its President have indicated to the International Union they intend to defend against any lawsuit if one is brought.

Our internal remedies cannot substitute for civil litigation in these circumstances. A court can compel witnesses, subpoena documents, and otherwise has access to tools that can assist in Local 3000's search for the truth that the International Union and I, as International President, do not. Third-party, primary witnesses will not cooperate in our investigation. Most significantly, an unnamed informant crucial to the investigation will not participate without a subpoena. Other third-party witnesses will not cooperate due to the pending litigation or the threat of litigation, and the International Union has no authority over them. Given these facts, I decline to exercise my authority under Article 10(E)1 of

Mr. Daniel Clay                                                      August 15, 2022
Ms. Faye Guenther

-3-

the International Constitution and impose a remedy on the parties for allegations related to the claims made by Local 3000 for the statements in the handbill. Local 3000 and its President are free to pursue litigation of these matters against the responsible party or parties without further deference to our internal remedies if they so choose.

That said, I want to state that I believe resorting to the legal system may result in unintended consequences and could be used as fodder by employers to weaken our Union. For these reasons, I encourage Local 3000 to proceed with due caution. Further, if both local unions and their respective officers were amenable to engaging in private and binding arbitration to resolve the legal claims and Local 3000 and its officers were willing to waive any right to sue Local 555 and its officers, the International Union would seek to facilitate it.

Finally, I urge all parties to explore any and all other available options to set aside their differences in the best interests of our Union family and I offer the International Union's assistance in this regard. Our time and resources are limited. Our energies are best served by staying focused on the members we are privileged to represent and those unorganized workers that deserve a voice in the workplace. Divisions between local unions only serve to empower the forces against us.

There is much work to be done and we will be able to accomplish much more if our collective efforts are dedicated to improving the lives of UFCW members and all working people.

In solidarity,

International President

# EXHIBIT 33

| | |
|---|---|
| **From:** | Faye Guenther |
| **To:** | International President Marc Perrone; Marc Perrone; Lisa Pedersen; Faye Guenther |
| **Subject:** | Member Complaint Against Dan Clay |
| **Date:** | Saturday, July 29, 2023 10:10:20 PM |

July 29, 2023

Marc Perrone
UFCW International Union President

Re: Member Complaint Against Dan Clay, President UFCW 555

Dear President Perrone:

Last year, Dan Clay filed a complaint with the International alleging that I violated its
Constitution by interfering with an autonomous chartered body when I permitted or directed a spoilation letter be served on Michael Selvaggio.

I countered with a complaint against Dan after receiving information that a person named Joseph Emmons was hired by his local to distribute defamatory flyers that also urged members to vote against a local union merger approved by the International. At the time, the only evidence of Local 555's involvement was circumstantial and based on an alleged admission to a confidential informant.

It had been my hope that the International would take my complaint as an opportunity to lead in the search to find out who was responsible for the defamatory communications. By doing so, the matter may have been kept internal and resolved more quickly. However, the International's assignment of a friend of Clay's to the role of investigator, perfunctory investigation and determination "that Local 555 and its President credibly deny any involvement in the creation or distribution of the handbill at issue" and subsequent dismissal of my complaint left me no choice but to continue to seek answers directly from Mr. Emmons through discovery with the real chance of having to name another UFCW Local and its officers as co-defendants to the lawsuit. The lack of non-circumstantial evidence and inability of the International's investigator to uncover any additional information resulted in you dismissing both complaints on August 15, 2022.

This letter is to update you on the status of my lawsuit and to once again remind you that I did not choose this venue. I attempted to resolve this through you and the International Union.

As you are aware, International Vice President Dan Clay made a series of

complaints to the International about me dating back to mid 2021. In addition, I've made you aware that I feared for my safety and believe his aggressive and antagonistic comments aimed at me and Local 3000 could possibly be a prelude to actual physical violence. To that end, I've even requested accommodation in how meetings are conducted to ensure my safety. Thus, I think it is well established that Dan Clay harbors animosity towards me and had motive to harm me personally.

Additionally, while seeking permission to discuss merging with UFCW Local 1439 the International required us to address possible concerns Clay would have about the merger. Specifically, in order to get merger permission, I met with you and had to agree that the newly formed union (Later named Local 3000) would address some of those concerns by supporting a transfer of members to 555's jurisdiction in several Eastern Oregon stores. Thus, Clay is one person who had personal animosity toward me and had reason to independently obstruct the merger of Locals 21 and 1439.

While it was never confirmed to me that you engaged in conversations with Clay regarding concerns he may have had about the proposed merger, it appears as though he gained advance knowledge. UFCW 1439 and 21 joined in a merger request to the International on October 28, 2021. At the time of the request for formal merger discussions permission was made, only officers and outside counsel were aware of the request. As required by the International, the request was copied to Regional Director Kate Meckler. The next week, Kate Meckler attended Local 555's bargaining session in Portland, Oregon. After bargaining concluded, Clay contacted Eric Renner claiming that he had heard from one of his meat cutters in Eastern Oregon about 1439's plans. The problem being, at that time, the only people that should have known about the merger were three officers of Local 21, one officer of Local 1439, our attorneys, and the International union (you and Meckler).

While I'm certain that it is the International's prerogative to share that request with whoever they like, it has now become clear that Clay betrayed the trust someone put in him. On December 2, 2021, the International Union approved our request to engage in merger discussions at the leadership level. Eric and I negotiated a merger agreement and shared it with the International's legal staff. Once the proposed agreement was approved by the International we began meeting with key staff and leadership in both locals. Those meetings took place in Central and Eastern Washington on December 9, 10 and 11. However, the number of individuals knowing about the merger at that point remained limited as we intended to discuss the proposed merger with key executive board members the evening of December 13ᵗʰ prior to the Board meetings set for December 14ᵗʰ.

Thus, when it was later learned that a defamatory flyer was mailed on December

13ᵗʰ the list of people who should have known about the merger was still short. We initially suspected it had to be the product of one of the few staff members who were notified between December 9 to 11. While none had expressed any opposition to a merger during our meetings or had a known motive for contesting it, we didn't know who else would have had knowledge of the merger in time to prepare flyers and mail them by December 13ᵗʰ. After reviewing phone logs, interviewing them, and investigating each of them, we found no evidence they were involved in the production of the flyer, engaged in any opposition to the merger, or had any personal animosity toward me.

That left us puzzled about who was behind the flyer until Joseph Emmons, a person with no direct connection to Locals 1439 or 21, was observed on surveillance video distributing the flyers. At the time Dan filed a complaint against me for the spoilation letter being sent to Michael Selvaggio, and I countered with my own complaint of him interfering in our merger process, the only evidence we had that we could share was the statement of a confidential witness.   During the investigation Shaun Barclay conjectured that that our informant might not be credible and someone other than Emmons was behind the distribution of the flyer. It was sentiment you repeated in your complaint determination concluding, "It is also apparent that entities/individuals not associated with Local 555 had motive to prevent the merger between Local 21 and Local 1439."

Mr. Emmons has now admitted most of what the confidential informant told us. For example, in his Answer to my Complaint he admitted traveling to Spokane in his vehicle and distributing the flyer for monetary gain. Thus, there is no remaining doubt that Mr. Emmons was one of the responsible parties for distributing the flyer. The list of possible suspects with motive, knowledge, and opportunity to create and distribute this flyer was short to begin with. The only question remaining is which one of those few possible suspects has a connection to Joseph Emmons.

In yet another of Dan Clay's complaints to you about me, on April 22, 2022, he identified Michael Selvaggio as Local 555's Political Director. UFCW Local 555 paid Selvaggio a monthly fee which was doubled in December 2021 (coincidently, the month the defamatory campaign against me ensued). Clay used to utilize Selvaggio and his good friend Joseph Emmons to run signature gathering and community campaigns. Thus, there is a direct connection between Local 555 and Mr. Emmons.

Additionally, Emmons is represented by Davis Wright Tremaine attorney John DiLorenzo in my lawsuit. UFCW 555's Political Director was named as a person likely to have information relevant to the case in the Initial Disclosures and his counsel of record, in a remarkable coincidence, is attorney John DiLorenzo from Davis Wright Tremaine.

Emmons and Local 555's Political Director have history together. In addition to Emmons being friends with Selvaggio, Emmons was employed by Selvaggio. First, when Selvaggio ran Direct Action Partners (DAP), a petition-gathering firm that represented Colorado Rising in an anti-fracking campaign. Apparently, Colorado Rising sued DAP which was dissolved. Emmons was then employed by Selvaggio's Osprey Field Consulting (OFC) located in Oregon. Selvaggio terminated OFC in January of 2020 and within weeks it was reopened by Emmons.

Local 555's Political Director is the Treasurer for an organization ("RPH") formed to recall Democratic representative Paul Holvey from the Oregon legislature. RPH is funded by Local 555. RPH, formed just a few months ago, has paid Mr. Emmons' Osprey Field Services (a co-defendant in my lawsuit that is also represented by John DiLorenzo) a reported $126,255.92. In defending those payments from criticism that 555 is paying Selvaggio's RPH large sums of money that are being funneled to his former company OFC, Local 555's Communications Director told the media that Emmons asked Selvaggio if he could use Osprey Field Service's name and logo, which Selvaggio agreed to without any remuneration and that Local 555's Political Director "has no financial interest in any way, shape or form in Osprey Field Services." Regardless of whether Selvaggio has a financial interest in OFC, that is another one-hundred twenty-six thousand connections between Mr. Emmons and Local 555.

When you concluded your investigation into the flyer you stated, "The handbill is false, and I condemn it in the strongest terms." I appreciate the sentiment but you possess information that members of Local 3000 do not. For example, a claim that I somehow orchestrated Mike Hines' hiring and installment at Local 367 is clearly false. I was blind-sided by that hiring, complained about it, accused Meckler and Gonzalez of poaching my staff, and mediated with the International to resolve the dispute. I in no way supported that hiring and strongly objected to the manner in which it occurred. That is information that you possess, but the members of Local 21 and 1439 would not know.

Additionally, I have no knowledge or details about why Gonzalez resigned from Local 367's President position (the flyer alleges sexual harassment, but I don't know if that is true). Gonzalez was brought into Local 367 by the International's trustee. Gonzalez had joined Clay at Local 555's bargaining table and the two of them had jointly filed a complaint against me. Again, information you possessed that my members would not know.

You urged caution in proceeding down the litigation path. I heard you, and possibly to my detriment, have declined to broaden the scope of litigation to include Local

555, Dan Clay, Michael Selvaggio and any other person that may have assisted them in producing and distributing the flyer. In fact, to avoid the litigation entirely I offered Emmons a resolution where he identified who had paid him in exchange for absolution or limitation of his liability (the hope being we could resolve this in a cautious manner internally). I previously declined to expand the litigation because you are right that it may be "used as fodder by employers to weaken our Union." Discovery is ramping up. I know the truth will come out. There is already a trail of money from Local 555 to the assassin of my character. The "plausible deniability" claim no longer has merit. Dan betrayed someone's trust when he contacted Eric Renner in November of 2021. He betrayed it again when his Political Director and Emmons engaged in a campaign against the merger. He betrayed it when he denied Local 555's involvement when the International investigated. He betrays it every day as he continues to channel money to Emmons and Selvaggio despite the admissions made in my case.

Once again, I don't fear the discovery process for me. I know the truth. I know I've opposed sexual harassment at every opportunity including assisting others in complaints against an International staff member. But I do fear what this litigation will do to members of the UFCW — yet I don't think it is moral or right to ask the target of the defamation to just let it go while no one takes any recourse against the people responsible. I'm asking you to talk sense into Dan now. If you need an additional formal complaint to trigger your jurisdiction to conduct additional investigation or to ask Dan further questions, I can make a complaint.

I'm asking for your help to protect the members of the UFCW.

Will you help me?

Faye Guenther

# EXHIBIT 34

**UFCW3000 Administrator**

| | |
|---|---|
| **From:** | International President Marc Perrone <marcperrone@ufcw.org> |
| **Sent:** | Wednesday, September 13, 2023 10:52 AM |
| **To:** | Faye Guenther;Eric Renner;Joe Mizrahi |
| **Cc:** | Lisa Pedersen;Peter Ford;Eduardo Pena |
| **Subject:** | RE: Member Complaint Against Dan Clay, International Vice-President and President of UFCW 555 |

Dear Faye, Joe, and Eric:

I write in response to your e-mail of September 8, 2023, regarding allegations against International Vice President and President of UFCW Local No. 555 (Local 555) Dan Clay (Clay).

In your e-mail, you provide information from a third-party's deposition that bears on your allegations against Clay and formally request I open an investigation pursuant to Article 10(E)1 of the International Constitution into Clay's alleged interference with UFCW Local Nos. 21, 1439, and 3000. So that I may properly consider your request, please provide a copy of the deposition transcript that you reference and any accompanying exhibits.

With respect to any disciplinary charges, as you indicate, Article 26(A)(1) of the International Constitution requires a member, "be charged and tried in the Local Union through which the individual is a member at the time the charges are filed, except as otherwise provided in [the] Constitution." Disciplinary charges may be filed, pursuant to Article 26(A)2 of the International Constitution, "by an active member of the Local Union through which the accused is a member . . . or by a representative of the International Union." Moreover, under Article 26(A)16 of the International Constitution, the International President has the authority to appoint members from outside a Local Unions' executive board to conduct the trial where it appears that a fair and impartial trial cannot be heard before it. You ask if I will act pursuant to this authority to remove a trial on any such charges brought against Clay from being heard by Local 555's Executive Board and appoint members from outside Local 555 to conduct the trial. While I would certainly consider the appropriateness of invoking my authority pursuant to Article 26(A)16 of the International Constitution to appoint an independent trial board, I do not believe it is appropriate to reach any such determination when no current charges are pending.

Finally, you ask whether Article 26(B)1 of the International Constitution applies to the allegations against Clay. Without all the facts before me, I cannot reach a final decision on the matter, but the allegations, as stated, do not appear to implicate Article 26(B)1. Article 26(B)1 applies only to charges against International Officers in their capacity as International Officers. The actions underlying the allegations appear related solely to Clay's role in his capacity as the President of Local 555 and not as an International Officer.

Sincerely and fraternally,
Marc Perrone

---

**From:** Faye Guenther <faye@ufcw3000.org>
**Sent:** Friday, September 8, 2023 6:24 PM
**To:** International President Marc Perrone <marcperrone@ufcw.org>; Lisa Pedersen <lpedersen@ufcw.org>; Peter Ford

RFP No. 15 Resp - 015080

<pford@ufcw.org>
**Cc:** Eric Renner <erenner@ufcw3000.org>; Joe Mizrahi <jmizrahi@ufcw3000.org>
**Subject:** Member Complaint Against Dan Clay, International Vice-President and President of UFCW 555

September 8, 2023

Marc Perrone
UFCW International Union President

Re:      Member Complaint Against Dan Clay, International Vice-President and President of UFCW 555

Dear President Perrone:

On September 6, 2023, Joseph H. Emmons was deposed in a lawsuit originally brought by UFCW Local 3000 for the distribution of defamatory flyers. During that deposition Mr. Emmons and his attorney confirmed UFCW Local 555's interference in Locals 21, 3000 and 1439's International sanctioned internal affairs. Specifically:

(1) UFCW Local 555 entered into a contract for services with Michael Selvaggio's Ridgelark Strategies, LLC.

(2) The L555 – Ridgelark Agreement contained an indemnification clause.

(3) Ridgelark Strategies LLC entered into a contract for services with Osprey Field Consulting to distribute the defamatory flyers which you have previously condemned.

(4) The Ridgelark – Osprey Agreement contained an indemnification clause.

(5) At the threat of litigation in this matter (deposition testimony seemed to indicate March of 2022 but was more likely April or May 2022), Osprey triggered its indemnification clause for distributing the flyers resulting in Ridgelark triggering its indemnification clause with Local 555.

(6) Pursuant to the indemnification clause, Local 555 is paying for all legal services for Mr. Emmons, Osprey Field Consulting, Michael Selvaggio and Ridgelark Strategies LLC for their work distributing the flyers.

(7) Local 555, Ridgelark, and Osprey entered into a tripartite "common interest agreement" at the threat of litigation.

As a reminder, UFCW Locals 1439 and 21 sought International approval to begin merger discussions on October 28, 2021. You granted that approval on December 2, 2021. Your staff worked with us to draft the merger agreement and our Locals took actions related to the merger only where consistent with your requirements, requests, and permission. Nevertheless, almost immediately, Dan Clay's personal animosity towards Faye Guenther resulted in him utilizing UFCW Local 555 to hire agents to intentionally interfere with that process, to spread false allegations about officers of both locals, and directly communicate with its members on matters of internal concern.

Additionally, on or about April 22 2022, Clay filed another "Complaint against Local 3000" for "interfering with UFCW Local 555." He specifically complained about the issuance of a spoilation letter to Michael Selvaggio claiming it was "a violation of any harassment policy that's ever existed anywhere." He alleged Guenther spent "union member money to hire private investigators in order to harass Local 555 Leadership by attempting to intimidate Mike Selvaggio who is a decent and honorable person who prides himself on being above board." He continued his assault where he knew it would be most painful by claiming that Guenther was "unwind[ing] and paint[ing] over the life's work of … Dave Schmitz." He claimed "Guenther's outrageous disregard for local union autonomy and attempts to destroy solidarity" be remedied by her being "immediately removed from office and banned from membership." He warned of a day when she would send "her hired goons out to harass other locals…" At the conclusion of your investigation you found that "Local 3000 and its officers had a right to engage a private investigator, seek to discover who sent and distributed the handbill, and attempt to hold the party or parties responsible." At the time Clay wrote this Complaint his Local was assuring Selvaggio and Emmons that the indemnification clause would cover their distribution of the flyers on behalf of Local 555 and entering into a common interest agreement to defend against

427

the threat of litigation. In retrospect, it was a blatant attempt to interfere with Local 3000's officers' duties and responsibilities to its membership to hold the party or parties who interfered in the vote responsible.

Article 25 of the International Constitution, Subsection B states: "No member may be disciplined, except for violating the member's duties and obligations by committing any one or more of the following offenses:

…

(B)3. Deliberately and improperly interfering with any officer or representative of the International Union or any Local Union in the discharge of the officer's or representative's duties, or with the performance of the legal or contractual rights or obligations of the International Union or any of its Local Unions;"

Clay's actions not only interfered with the autonomy of two other chartered bodies and attempted to prevent investigation into the interference, but it dishonestly disparaged two Local Presidents during a vote on internal governance issues that included the selection of leadership. To fail to investigate and issue severe consequences for the interference in our duties as officers to our Locals sets a dangerous precedent for every Local Union of the UFCW. It opens the door and tacitly approves for Presidents to interfere with other Locals' elections and votes, to be dishonest while investigated, to utilize its membership's money to satisfy personal grudges while opposing a process approved and sanctioned by the International without fear of consequences.

We formally make this complaint and request you exercise your authority under Article 10(E)1 of the Constitution to perform an investigation into Mr. Clay's and UFCW 555's interference with Locals 21, 1439 and 3000 and the performance of our duties as officers of those locals. In addition to this complaint filed with the International, we request an interpretation of Article 26(A) as we intend to file a charge and move for discipline against him with Local 555's executive board. Art. 16(A)(1) requires "A member shall be charged and tried in the Local Union through which the individual is a member at the time the charges are filed, except as otherwise provided in this Constitution." Specifically, does the International President have authority to utilize Article 26(A)16 to remove the charge and trial from Local 555's executive board? If so, and considering the allegations here, will the International President exercise that authority and appoint members outside Local 555 to conduct the trial? Similarly, since Clay is an International Vice-President, though it does not appear at this time that he was acting in such capacity when interfering with Locals 21 and 1439, does the International President interpret Article 26(B)1 to apply in this situation?

Sincerely,

Joe Mizrahi – Representative of Charging Parties per Art. 26(A)3, and S/T Local 3000.
Eric Renner – Former President of Local 1439
Faye Guenther – President, Local 3000

Cc: All International Executive Board Members

RFP No. 15 Resp - 015082

# EXHIBIT 35

**UFCW3000 Administrator**

| | |
|---|---|
| **From:** | Faye Guenther |
| **Sent:** | Friday, November 3, 2023 10:07 AM |
| **To:** | International President Marc Perrone;Lisa Pedersen |
| **Subject:** | RE: Member Complaint Against Dan Clay, International Vice-President and President of UFCW 555 |

Thank you Marc. Though we have had our disagreements, I appreciate that you have always taken this issue seriously and supported 3000's right to defend our reputation. This means a lot. I think there are still some issues to work through. Lisa, do you have a minute to talk?

Faye

**Faye Guenther**
**President UFCW 3000**
📞 Office: (206) 436-6806
📱 Cell: (360) 409-0576
🖨 Fax: (206) 436-6700
🗒 Address: 23040 Pacific Hwy S #101, Des Moines, WA 98198-7268

**UFCW3000**

*Our mission is to build a powerful Union that fights for economic, political and social justice in our workplaces and in our communities.*

---

**From:** International President Marc Perrone <marcperrone@ufcw.org>
**Sent:** Friday, November 3, 2023 7:23 AM
**To:** Faye Guenther <faye@ufcw3000.org>
**Cc:** Eduardo Pena <epena@ufcw.org>; Joe Mizrahi <jmizrahi@ufcw3000.org>; Eric Renner <erenner@ufcw3000.org>; Peter Ford <pford@ufcw.org>; Lisa Pedersen <lpedersen@ufcw.org>
**Subject:** RE: Member Complaint Against Dan Clay, International Vice-President and President of UFCW 555

Please see the below revised response.

---

Dear Faye,

The International Union is in receipt of depositions in Guenther v. Emmons, No. 2:22-cv-0272-TOR (E.D. Wash.).  The sworn testimony in the litigation establishes that UFCW Local No. 555 (Local 555) was responsible for a handbill distributed to UFCW Local No. 1439 (Local 1439) members as part of an attempt to undermine a merger between Local 1439 and UFCW Local No. 21 (Local 21), which formed UFCW Local No. 3000 (Local 3000).  Local 555 President Dan Clay previously denied Local 555's responsibility for the handbill.

Since Local 3000 has now provided undisputed evidence that Local 555 was in fact responsible for the handbill, please be aware that I have issued a formal letter directing Local 555 to cease and desist from interfering in the internal affairs of Local 3000 or any other UFCW Local Unions.

RFP No. 15 Resp - 015041

Further, after considering Local 555's actions, I am reversing my earlier decision to award jurisdiction for the Oregon stores that were previously represented by Local 1439 to Local 555. Local 3000 will retain jurisdiction of all Oregon stores that were represented by Local 1439 prior to its merger with Local 21.

Finally, as I stated in my August 16, 2022 letter to both you and Local 555's President Clay, I believe the continued divisions between Local 555 and Local 3000, as exemplified by this dispute, only serve to empower those who seek to weaken our Union. Rather than focusing all of our collective energies on representing members and organizing new workers into the UFCW family, our Union has had to distract from its core mission and expend limited time and resources on a dispute that does not benefit workers. I continue to believe that it is in the interests of both parties, and the UFCW more generally, to try to bring resolution to this matter, and I continue to offer the International Union's assistance in this regard.

In solidarity,

Marc Perrone

---

**From:** Faye Guenther <faye@ufcw3000.org>
**Sent:** Friday, September 8, 2023 6:24 PM
**To:** International President Marc Perrone <marcperrone@ufcw.org>; Lisa Pedersen <lpedersen@ufcw.org>; Peter Ford <pford@ufcw.org>
**Cc:** Eric Renner <erenner@ufcw3000.org>; Joe Mizrahi <jmizrahi@ufcw3000.org>
**Subject:** Member Complaint Against Dan Clay, International Vice-President and President of UFCW 555

September 8, 2023

Marc Perrone
UFCW International Union President

Re:      Member Complaint Against Dan Clay, International Vice-President and President of UFCW 555

Dear President Perrone:

On September 6, 2023, Joseph H. Emmons was deposed in a lawsuit originally brought by UFCW Local 3000 for the distribution of defamatory flyers. During that deposition Mr. Emmons and his attorney confirmed UFCW Local 555's interference in Locals 21, 3000 and 1439's International sanctioned internal affairs. Specifically:

(1) UFCW Local 555 entered into a contract for services with Michael Selvaggio's Ridgelark Strategies, LLC.

(2) The L555 – Ridgelark Agreement contained an indemnification clause.

(3) Ridgelark Strategies LLC entered into a contract for services with Osprey Field Consulting to distribute the defamatory flyers which you have previously condemned.

(4) The Ridgelark – Osprey Agreement contained an indemnification clause.

(5) At the threat of litigation in this matter (deposition testimony seemed to indicate March of 2022 but was more likely April or May 2022), Osprey triggered its indemnification clause for distributing the flyers resulting in Ridgelark triggering its indemnification clause with Local 555.

(6) Pursuant to the indemnification clause, Local 555 is paying for all legal services for Mr. Emmons, Osprey Field Consulting, Michael Selvaggio and Ridgelark Strategies LLC for their work distributing the flyers.

RFP No. 15 Resp - 015042