1  Dmitri Iglitzin, WSBA No. 17673
   Darin M. Dalmat, WSBA No. 51384
2  Gabe Frumkin, WSBA No. 56984
   **BARNARD IGLITZIN & LAVITT LLP**
3  18 W Mercer St, Suite 400
   Seattle, WA 98119
4  (206) 257-6003
   iglitzin@workerlaw.com
5  dalmat@workerlaw.com
   frumkin@workerlaw.com
6
   Aaron Streepy, WSBA 38149
7  Jim McGuinness, WSBA 23494
   Streepy Lemonidis Consulting & Law Group, PLLC
8  2800 First Avenue, Suite 211
   Seattle, WA 98121
9  Telephone: (253) 528-0278
   Fax: (253) 528-0276
10 aaron@slglc.com
   jim@mcguinnessstreepy.com
11

12 *Attorneys for Plaintiff Faye Guenther*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
### AT SPOKANE

| | |
|---|---|
| FAYE IRENE GUENTHER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH H. EMMONS, individually, and OSPREY FIELD CONSULTING LLC, a limited liability company,<br><br>Defendants. | No. 2:22-cv-00272-TOR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>NOTE ON MOTION CALENDAR: December 5, 2024, at 9:00 a.m. |

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

# TABLE OF CONTENTS

STATEMENT OF FACTS ..................................................................................2

ARGUMENT ..................................................................................................6

I.    Legal standard on summary judgment ...........................................6

II.   Guenther is a private figure who need prove only negligence. ....................6

    A.    No public controversy about the merger predated Emmons's flyering, so Guenther isn't a limited public figure regarding the merger. .................8

    B.    Guenther did not regularly and continually access channels of communication regarding the merger. ...................................................13

III.  Even if Guenther had to prove actual malice, this record requires trial on that issue. ...............................................................................................14

IV.   Emmons was no mere conduit but independently published the flyer and is liable for its resulting harm. ..........................................................15

V.    Emmons's flyering harmed Guenther. ....................................................17

VI.   Emmons is not entitled to judgment on Guenther's false light claim........20

CONCLUSION ...........................................................................................20

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Auvil v. CBS 60 Minutes,*
   800 F. Supp. 928 (E.D. Wash. 1992)...........................................16, 17

4

*Barry v. Time, Inc.,*
   584 F. Supp. 1110 (N.D. Cal. 1984) ................................................16

5

*Carafano v. Metrosplash, Inc.,*
   207 F. Supp. 2d. 1055 (C.D. Cal. 2002) ...........................................17

6

*Carr v. Forbes, Inc.,*
   259 F.3d 273 (4th Cir. 2001) ..............................................7, 12, 13

7

*Cox v. Galazin,*
   460 F. Supp. 2d 380 (D. Conn. 2006)................................................14

8

9

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
   472 U.S. 749 (1985).........................................................................10

10

*Dunlop-McCullen v. Rogers,*
   2002 WL 1205029 (S.D.N.Y. Feb. 21, 2002) ..................................13

11

12

*Flowers v. Carville,*
   310 F.3d 1118 (9th Cir. 2002) .........................................................19

13

*Foretich v. Capital Cities/ABC, Inc.,*
   37 F.3d 1541 (4th Cir. 1994) ..............................................................8

14

*Gertz v. Robert Welch, Inc.,*
   418 U.S. 323 (1974).........................................................................11

15

16

*Guam Fed'n of Teachers, Local 1581 v. Ysrael,*
   492 F.2d 438 (9th Cir. 1974) ...........................................................14

17

*Harris v. Quadracci,*
   48 F.3d 247 (7th Cir. 1995) .............................................................13

18

19

*Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.,*
   836 F. Supp. 1204 (D. Md. 1993), *aff'd,* 34 F.3d 1066 (4th Cir. 1994) .............................................................................................13

20

TABLE OF CONTENTS & AUTHORITIES–ii
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

*Hutchinson v. Proxmire,*
    443 U.S. 111 (1979)................................................................12, 13

*Jacoby v. Cable News Network, Inc.,*
    2021 WL 5858569 (11th Cir. Dec. 10, 2021)................................11, 12

*Makaeff v. Trump University, LLC,*
    715 F.3d 254 (9th Cir. 2013) ....................................................8, 10, 13

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC,*
    141 S. Ct. 13 (2020).......................................................................15

*Miller v. Sawant,*
    18 F.4th 328 (9th Cir. 2021) ..............................................................6

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964).........................................................................14

*Planet Aid, Inc. v. Reveal,*
    44 F.4th 918 (9th Cir. 2022) .............................................................11

*Time, Inc. v. Firestone,*
    424 U.S. 448 (1976).......................................................8, 10, 11, 12

*Waldbaum v. Fairchild Publ'ns, Inc.,*
    627 F.2d 1287 (D.C. Cir. 1980)........................................7, 8, 9, 10

*Wolston v. Reader's Digest Ass'n,*
    443 U.S.157 (1979).........................................................................11

**State Cases**

*Caruso v. Local Union No. 690,*
    100 Wash. 2d 343 (1983).............................................................17, 18

*Charles v. McQueen,*
    693 S.W.3d 262 (Tenn. 2024) .........................................................12

*Clardy v. Cowles Pub. Co.,*
    81 Wash. App. 53 (1996)............................................................7, 8, 13

*Corbin v. Madison,*
    12 Wash. App. 318 (1974)..............................................................16

TABLE OF CONTENTS & AUTHORITIES–iii
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    BARNARD
SEATTLE, WASHINGTON 98119    IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

*D.C. v. R.R.*,
    182 Cal. App. 4th 1190 (2010), *as modified* (Apr. 8, 2010) ..............................10

*Duc Tan v. Le*,
    177 Wash. 2d 649 (2013).................................................................................14, 15

*Herron v. Trib. Pub. Co.*,
    108 Wash. 2d 162 (1987).................................................................................16, 19

*Materia v. Huff*,
    475 N.E.2d 1212 (1985) .......................................................................................11

*Schmalenberg v. Tacoma News, Inc.*,
    87 Wn. App. 579 (1997) .......................................................................................19

*Seaquist v. Caldier*,
    8 Wn. App. 2d 556 (2019)....................................................................................20

*Tilton v. Cowles Pub. Co.*,
    76 Wash. 2d 707 (1969)..........................................................................................7

*Ward v. Painters' Loc. Union No. 300*,
    41 Wash.2d 859 (1953)..........................................................................................17

**State Statutes**

RCW 4.84.250..............................................................................................................6

RCW 4.84.280..............................................................................................................6

RCW 7.96.010............................................................................................................19

RCW 7.96.040(1)(a) ..................................................................................................18

RCW 7.96.040(2) .......................................................................................................18

RCW 7.96.040(4) .......................................................................................................19

RCW 7.96.050........................................................................................................18, 19

RCW 7.96.070(1) .......................................................................................................18

Tex. Civ. Prac. & Rem. Code § 73.056(a).................................................................18

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

**Other Authorities**

Restatement (Second) of Torts § 577(1) cmt. a (1977) ............................................16

Restatement (Second) of Torts § 578 cmt. b (1977).........................................16, 19

Restatement (Second) of Torts § 581 cmt. c (1977).................................................17

TABLE OF CONTENTS & AUTHORITIES–v
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

Plaintiff Faye Guenther respectfully opposes Defendants' (collectively, Emmons) summary-judgment motion. Emmons first mistakenly contends Guenther must prove actual malice because his flyers touched matters of public concern. But whether a plaintiff is a public figure required to prove actual malice turns on whether she injected herself into a live, preexisting public controversy—an actual debate—not the content of the defamer's speech. No such debate predated Emmons's flyering, so Guenther is a private plaintiff who need show only negligence.

Even if Guenther needed to establish actual malice, moreover, summary judgment would still not be appropriate because the record here contains circumstantial evidence—Emmons's hostility to alleged sexual harassers, knowledge of his sources' hostility, and a deliberate intent to avoid the truth, among other evidence—sufficient to allow this issue to proceed to trial.

Emmons next contends he is not responsible for Guenther's harm from his flyering. But republishers of defamatory material, like Emmons, are liable for harm from the republished material to the same extent as original publishers. And Emmons cannot rely on the Uniform Correction or Clarification of Defamation Act (UCCDA) to deny Guenther presumed or reputational damages because she has produced evidence of falsity and Emmons never issued a correction.

Finally, Emmons is not entitled to judgment on Guenther's false light claim because, again, her defamation claim does not fail as a matter of law and the record

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–1
Case No. 2:22-cv-00272-TOR

shows at least triable issues on actual malice. The Court should deny Emmons's motion in its entirety.

## STATEMENT OF FACTS[1]

In September 2021, UFCW Local 1439 President Eric Renner called UFCW Local 21 President Faye Guenther to explore a merger between their locals. ECF No. 104 at 3. They met in late October to discuss the merger and then sought permission from the UFCW International to begin formal discussions. ECF No. 104 at 3.

On November 13, 2021, UFCW Local 555 President Dan Clay emailed Marc Perrone, the UFCW President, opposing the merger. *Id.* Clay had been a longtime friend and collaborator of Guenther's until 2019. *Id.* at 2–3. As of Clay's November 2021 email, the potential merger was unknown beyond a handful of top local and International leaders. *Id.* at 3. Perrone formally approved merger discussions on December 2, 2021. *Id.* at 4. Guenther and Renner then discussed the merger with their staff and advisers but not publicly. *Id.* Each of the two locals' Executive Boards met on December 14, 2021, to discuss the merger in confidential, executive sessions. *Id.* at 4. Both Boards approved putting the merger to a vote of their members. *Id.*

In December 2021, Local 1439 mailed its members notice of the merger-vote

---

[1] Guenther previously set forth the material facts in detail, ECF No. 104 at 1–10, and now reprises them more summarily.

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–2
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

meetings, and on January 6, 2022, Local 21 mailed its members notice of general membership meetings where they could vote on the merger. SDF, ¶¶ 45–46.[2] Neither local publicly campaigned for the merger. ECF No. 105, ¶¶ 55, 61. And no press reported on it until after March 2022, when the merger had concluded. SDF, ¶ 87.

The meetings at which members voted on the merger occurred in January 2022. SDF, ¶¶ 47, 53. Guenther sent experienced Local 21 staff to Local 1439's meetings to ensure they complied with applicable legal and UFCW-constitutional requirements. SDF, ¶¶ 48–49. She initially planned to join those meetings herself for the same purpose but couldn't because she contracted COVID. *Id.*

Local 1439's members approved the merger by a vote of 191 to 5 and Local 21's members approved the merger by a vote of 207 to 11. SDF, ¶¶ 51, 54. Only approximately 0.8% of both locals' members voted. SDF, ¶ 54. The merger became effective March 1, 2022. SDF, ¶ 54.

It did so notwithstanding Clay's efforts to sabotage the merger. ECF No. 104 at 5–8. He instructed Local 555's contracted political director, Mike Selvaggio, to mail 1,000 flyers to shop stewards and managers at grocery stores throughout Washington. *Id.* at 5; SDF, ¶¶ 57–60. The flyers accused Guenther of helping former UFCW Local 367 President Angel Gonzalez cover up sexual harassment charges,

---

[2] "SDF" refers to Plaintiff's accompanying Statement of Disputed Material Facts.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    paying him off to install her puppet Mike Hines, helping Renner hide from sexual

2    harassment charges, and landing him a cushy new job. SDF, ¶ 60.

3        Those statements were false. ECF No. 104 at 8–9; SDF, ¶ 77. As of the

4    flyering, Guenther knew nothing about any sexual harassment allegations Gonzalez

5    faced or Local 367's resulting settlement; never paid Gonzalez off for anything; did

6    not influence Hines's advancement at Local 367; and did not know the substance of

7    the complaints against Renner—only that Local 1439 had an internal conflict that

8    had settled. *Id.*; SDF, ¶¶ 9–10.[3] In fact, Guenther became a life-long advocate against

9    sexual abuse and harassment, including during her tenure at UFCW Local 21 and

10   3000, after being the target of sexual abuse in her youth and witnessing it again in

11   college. ECF No. 104 at 1–2.

12       Selvaggio's December 2021 mailing got no traction and created no public

13   debate. ECF No. 105, ¶¶ 69; SDF, ¶ 64 (a Local 367 member posted the flyer in a

14   closed, private Facebook group of that local's dissenters, garnering engagement

15   from as few as 17 individuals). Clay then escalated the campaign by having

16   Selvaggio engage Emmons to leave flyers in-person at targeted stores in Spokane

17   where UFCW members worked. ECF No. 104 at 5–6. Selvaggio discussed the

18   engagement with Emmons twice in early January 2022. SDF, ¶ 61.

19

20   _____

[3] Additionally, Renner denies engaging in sexual harassment. SDF, ¶ 10.

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–4
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

During those conversations, Selvaggio and Emmons discussed the flyers. SDF, ¶¶ 61, 82–86. Emmons instantly recognized the incendiary nature of the flyers' accusations and asked Selvaggio for their basis; Selvaggio told him the sexual harassment allegations were the subject of investigations, without getting into details. *Id.* The two didn't discuss Guenther's alleged cover ups, her alleged payoff to Gonzalez, or indeed anything about her. *Id.* Even after Emmons read the flyer, he did not inquire into Guenther's alleged coverups or payoffs. *Id.* Emmons nonetheless agreed to produce and distribute the flyers, *id.*, without verifying (or even asking Selvaggio if he had verified) the allegations. SDF, ¶¶ 77, 82. He did so by printing the flyers at a FedEx, driving hundreds of miles from Portland to Spokane, and, despite non-solicitation signs at the stores, distributing the flyers on store property in places where members were likely to see them, saying "here's information about the union, information about the merger." SDF, ¶¶ 57, 61.

Emmons agreed to take on the flyering job in part because of his personal hostility toward anyone accused of sexual harassment. SDF, ¶ 82. He also knew the people contracting him to publish the flyers were hostile to Guenther, as the express purpose of the project was to oppose the merger she sought. *Id.* He did nothing to investigate the allegations against Guenther and did not even inquire into any details of the investigations reported to him about Gonzalez or Renner. *Id.* Indeed, by inquiring into the basis for the accusations against the alleged harassers but not even

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–5
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

asking about the basis for the accusations against Guenther, he deliberately avoided the truth regarding her. *Id.*

Emmons's flyering harmed Guenther, including by undermining her standing among UFCW leaders, causing her anxiety, causing her to move residences at significant cost, beefing up security and travel expenses, and incurring expenses for professional care. ECF No. 104 at 9–10. It also contributed to her not receiving an appointment as an International Vice President—a position that would have come with a $20,000 annual stipend and the prestige of the office. *Id.*[4]

## ARGUMENT

### I.    Legal standard on summary judgment

Contrary to Emmons's representations (at 2, 15[5]), federal courts sitting in diversity evaluate defamation claims at summary judgment without requiring convincing clarity. *Miller v. Sawant*, 18 F.4th 328, 336–338 & n. 10 (9th Cir. 2021). Familiar summary-judgment standards thus govern this motion. ECF No. 104 at 10.

### II.    Guenther is a private figure who need prove only negligence.

The parties agree on the elements of defamation under Washington law. ECF

---

[4] Guenther objects to Emmons's reliance (at 6) on her February 2024 letter invoking RCW 4.84.250. The applicable statute precludes such an offer from being "filed or communicated to the trier of the fact until after judgment … ." RCW 4.84.280.

[5] All citations to Emmons's brief are to ECF No. 110.

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–6
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    No. 104 at 10–11; ECF No. 110 at 8. Emmons makes no argument about the first

2    element—a false, defamatory factual statement. Instead, he attacks the third element,

3    fault, arguing (at 8–15) Guenther is a limited public figure who must prove actual

4    malice. That argument conflates the test for public-concern speech (relevant to the

5    standard for proof of damages, ECF No. 104 at 18–20) with the test for public

6    controversies (relevant to the standard for fault, ECF No. 104 at 12–16). Under the

7    correct standard, Guenther is a private figure who must prove only negligence.

8         "Limited-purpose public figures are those who voluntarily inject themselves

9    or are drawn into a public controversy and thereby become public figures for a

10   limited range of issues." *Clardy v. Cowles Pub. Co.*, 81 Wash. App. 53, 59 (1996).

11   As the party seeking to elevate common-law standards to constitutional ones,

12   Emmons bears the burden to show Guenther is a public figure. *Waldbaum v.*

13   *Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1298–99 (D.C. Cir. 1980) (looking to

14   evidence submitted by defendant). "Because the designation of a person as a 'public

15   figure' results in a decrease of the protections against invasions of privacy and

16   defamation of character provided by law, such a designation should not be made

17   lightly." *Tilton v. Cowles Pub. Co.*, 76 Wash. 2d 707, 716 (1969).

18        The heart of the inquiry is "whether the plaintiff has voluntarily assumed a

19   role of special prominence in a public controversy by attempting to influence the

20   outcome of the controversy." *Carr v. Forbes, Inc.*, 259 F.3d 273, 280 (4th Cir. 2001)

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–7
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

(cleaned up). That inquiry turns, as a threshold matter, on the existence and contours of a public controversy. *Waldbaum*, 627 F.2d at 1296–97; *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1553–55 (4th Cir. 1994). If a public controversy exists, courts then examine five factors to guide the inquiry further: whether (1) the plaintiff has access to the media and channels of effective communication, (2) the plaintiff voluntarily assumed a role of special prominence in the controversy, (3) the plaintiff sought to influence the resolution of the controversy, (4) the controversy existed prior to the publication of the defamatory statements, and (5) the plaintiff retained public-figure status at the time of the alleged defamation. *Clardy*, 81 Wash. App. at 60, 64–65 (adopting *Foretich* factors). Here, Emmons fails at the threshold.

### A. No public controversy about the merger predated Emmons's flyering, so Guenther isn't a limited public figure regarding the merger.

The inquiry begins with courts exercising care to identify and isolate the "public controversy." *Waldbaum*, 627 F.2d 1287. Not all "controversies of interest to the public" are "public controversies" for constitutional purposes. *Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976) (individual dragged into public eye through litigation, private figure, even though newsworthy). Instead, "a public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants." *Waldbaum*, 627 F.2d at 1296. It "must be a real dispute, the outcome of which affects the general public or some segment of it." *Makaeff v. Trump University, LLC*, 715 F.3d 254, 267 (9th Cir.

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD
IGLITZIN &
LAVITT LLP

2013). "To determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine whether persons actually were discussing some specific question" and debating it "publicly" with "foreseeable and substantial ramifications for nonparticipants … ." *Waldbaum*, 627 F.2d at 1297. Courts emphasize whether "the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment." *Waldbaum*, 627 F.2d at 1297.

Here, no such public controversy or debate existed before Emmon's January 8, 2022, publication. Neither local waged a public campaign on the merger. *Supra* at 3. The press did not cover the potential merger until after it was completed. *Id*. And Emmons produced no evidence of a public debate at all on the topic. *Id*. The closest evidence he offers is a single social media post in December 2021. *Supra* at 4. That post does not show a **public** debate because it was posted in a private Facebook page, limited to Local 367 dissenters, and garnered responses from as few as 17 individuals. *Id*. Guenther did not inject herself into the discussion on the Local 367 dissenters' Facebook site nor did she otherwise respond publicly to that post. SDF, ¶ 91. And there is no evidence the lone post in a private Facebook page generated any debate among the affected UFCW members. *Supra* at 4.

This solitary online engagement in a private forum of members unaffected by the Local 21/1439 merger does not establish a public controversy. *See D.C. v. R.R.*,

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–9
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

182 Cal. App. 4th 1190, 1230 (2010), *as modified* (Apr. 8, 2010) ("If [an online] message was of interest to only a private group, organization, or community, it was not part of an ongoing controversy, dispute, or discussion, such that its protection would encourage participation in matters of public significance.").

Additional undisputed evidence refutes the existence of any public controversy over the merger. Clay directed Selvaggio to hire Emmons to conduct in-person flyering precisely because the earlier mailing did not generate the debate Clay and Selvaggio had sought. *Supra* at 4. Even after Emmons's flyering, only 0.8% of affected members voted, ECF No. 105, ¶¶56–60—a paltry number insufficient to elevate common-law fault standards to stringent constitutional requirements.

Unable to show an actual debate existed before his January 2022 flyering, as required by *Time, Inc.*, *Makaeff*, *Waldbaum*, and other authority, Emmons sidesteps the issue by urging the Court (at 9–11) to follow the test for public-concern speech. That test applies to anti-SLAPP statutes, whose terms expressly protect speech connected to "an issue of public concern," ECF No. 110 at 10 (citing several such cases), and to constitutional requirements for proof of damages in defamation actions, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 757–63 (1985) (speech on "matters of public concern" can change requirements for proof of damages). It is wholly irrelevant to the public-figure determination tied to fault.

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–10
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    *Time, Inc.*, 424 U.S. at 454 (rejecting attempted equation of "public controversy"

2    with controversies of interest to the public and requiring an active public debate).

3        Emmons next argues (at 12–13) that Guenther's mere status as Local 21

4    President who pursued the merger privately makes her a public figure. But his cited

5    authorities all involve public speech by plaintiffs engaged in active, public debates.

6    *Cf.*, *Planet Aid, Inc. v. Reveal*, 44 F.4th 918, 927 (9th Cir. 2022) (charity and its

7    director public figures "with respect to their use of charitable funds" based on regular

8    engagement "with the press in an effort to cultivate a public image, including by

9    issuing press releases, hosting galas, and publicizing itself to thousands of followers

10   through social media" and aggressive solicitation of "donations from the public");

11   *Materia v. Huff*, 475 N.E.2d 1212, 1215 (1985) (union president limited-public

12   figure with respect to qualifications of office based on public reelection campaign).

13   In contrast, here Guenther took no public action to campaign for the merger. *Supra*

14   at 3. She did not host public meetings, issue press releases, or use social media to

15   discuss the merger. *Id.* Emmons's citations do not apply.

16       Emmons also overreads (at 13–14) *Jacoby v. Cable News Network, Inc.*, 2021

17   WL 5858569 (11th Cir. Dec. 10, 2021) and other authority, as establishing the

18   proposition that a plaintiff can become a public figure by silently influencing a non-

19   publicly-debated matter behind the scenes. Such a holding would flout *Gertz v.*

20   *Robert Welch, Inc.*, 418 U.S. 323, 342 (1974); *Wolston v. Reader's Digest Ass'n*,

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

443 U.S.157, 161–69 (1979); *Hutchinson*, 443 U.S. at 133–36; and *Time, Inc.*, 424 U.S. at 453–57. *See* ECF No. 104 at 13. Instead, *Jacoby* found the plaintiff there a limited public figure because "he was widely known to the public, he had been publicly linked to a number of high-profile scandals of public interest, he availed himself of privileged access to the ... media in an effort to present his own side of the story, and he was in close proximity to those in power." *Jacoby*, 2021 WL 585869 at *4 (cleaned up). *See also Charles v. McQueen*, 693 S.W.3d 262, 276–78 (Tenn. 2024) (homeowners' association engaged in public debate through widespread communications with residents about development plan and meeting with public officials concerning those issues); *Carr*, 259 F.3d at 280–82 (real estate developer engaged in public debate over two public projects by inviting public attention regarding them through attendance at public meetings, public support for the project, editorials, and quotes in local media on one of the projects). Unlike the *Jacoby*, *Charles*, and *Carr* plaintiffs, Guenther did not inject herself into a public debate on the Local 21/1439 merger. Nor could she—there was no such public debate.

Ultimately, no public controversy predated Emmons's flyering, so Guenther did not inject herself into any such controversy to attempt to influence its resolution; she did not voluntarily assume any prominent role in the non-existent controversy;

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–12
Case No. 2:22-cv-00272-TOR

1    and she did not retain that public-figure role throughout the controversy until the

2    defamation. She is not a public figure. *Clardy*, 81 Wash. App. at 60, 64–65.

3    **B. Guenther did not regularly and continually access channels of**
      **communication regarding the merger.**

4

5        Unable to prevail on the core public-figure factors, Emmons emphasizes (at

      11–13) Guenther's communications. This factor is so secondary that courts often

6    resolve the public-figure question without analyzing it. *See, e.g., Makaeff*, 715 F.3d

7    at 266 (omitting factor from test). When considered, only "regular and continuing

8    access to the media" is constitutionally significant. *Hutchinson v. Proxmire*, 443

9    U.S. 111, 136 (1979). That access must be sufficiently easy to enable the plaintiff to

10   garner media coverage on topics of her choice to publicly rebut defamation.  *See*

11   *Carr*, 259 F.3d at 282 n.2; *Harris v. Quadracci*, 48 F.3d 247, 251 (7th Cir. 1995).

12       Guenther had no heightened, regular, or continuing access to the media. Over

13   a three-year period, she spoke at ten press conferences, all about issues of

14   extraordinary national or statewide importance. SDF, ¶¶ 87–94, 98. Guenther never

15   sought press attention on internal union affairs, like the merger, and there is no

16   evidence she could have gotten media attention on those topics if she had tried. *Id.*

17       Emmons's authorities (at 11) are thus easily distinguishable. *See Dunlop-*

18   *McCullen v. Rogers*, 2002 WL 1205029, at *9 (S.D.N.Y. Feb. 21, 2002) (editor of

19   union's newspaper, with final authority over content, conceded public figure status);

20   *Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 836 F. Supp. 1204, 1206 & n. 6

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–13
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    (D. Md. 1993), *aff'd*, 34 F.3d 1066 (4th Cir. 1994) (union official, who sent "volley

2    of open letters" to influence membership, conceded actual malice applied); *Cox v.*

3    *Galazin*, 460 F. Supp. 2d 380, 389 (D. Conn. 2006) (union officer's embezzlement

4    "invited scrutiny by the membership"); *Guam Fed'n of Teachers, Local 1581 v.*

5    *Ysrael*, 492 F.2d 438, 439 (9th Cir. 1974) (accepting public-figure concession).

6    Unlike those cases, Guenther does not concede she was a public figure and did not

7    use Local 21's communication channels or the media to publicly influence the

8    merger vote, and Emmons is not a UFCW member whose scrutiny can reasonably

9    be expected. *Supra* at 3; ECF No. 26, ¶¶ 3.31–3.33; ECF No. 21, pp. 9–10.

10   **III.    Even if Guenther had to prove actual malice, this record requires trial on that issue.**

11

12       Emmons next mistakenly argues (at 15–16) Guenther has no evidence of

13   actual malice. Actual malice means a defendant published a defamatory statement

14   either knowing its falsity or recklessly disregarding its falsity. *Duc Tan v. Le*, 177

15   Wash. 2d 649, 668–69 (2013) (discussing *New York Times Co. v. Sullivan*, 376 U.S.

16   254, 279–80 (1964)). A plaintiff can show such malice through circumstantial

17   evidence, including a defendant's hostility or spite, knowledge that a source of

18   information about a plaintiff is hostile towards the plaintiff, and failure to properly

19   investigate an allegation. *Id.* at 669. Additionally, "recklessness may be found where

20   there are obvious reasons to doubt the veracity of the informant or the accuracy of

his reports," including evidence "of intent to avoid the truth … ." *Id.* (quoting *St.*

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–14
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

*Amant v. Thompson,* 390 U.S. 727, 731 (1968)).

This record presents enough circumstantial evidence of Emmons's actual malice to require trial on that question, if relevant. He admitted personal hostility toward anyone accused of sexual harassment such that he "really didn't need to hear much more" than bare accusations to agree to spread the flyer. SDF, ¶ 82. He knew the sources of information for the flyer were hostile to Guenther but did nothing to investigate or verify the flyer's accusations. *Id.* He did not ask for any details about the investigations represented to him—all he needed was the bare claim that investigations occurred, regardless of who was targeted or what the investigations concluded. *Id.* He deliberately avoided the truth regarding Guenther, asking for support for the accusations against others but not against her. *Id.* And, while circulating the flyers, he disguised himself by wearing a recently purchased ballcap of a local college team and covering his face after dark. ECF No. 105, ¶¶ 86–88.

## IV.    Emmons was no mere conduit but independently published the flyer and is liable for its resulting harm.

Emmons next contends (at 16–18) he is a mere conduit not responsible for the flyers' content. Unlike publishers, passive distributors (like "newsstands and libraries") generally are not liable for content they distribute. *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 14 (2020). That distinction does not aid Emmons, however, because he published the challenged flyer. A person publishes a communication by intentionally or negligently communicating it to

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–15
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

anyone "other than the person defamed." Restatement (Second) of Torts § 577(1). *Accord id.*, cmt. a (any "act by which the defamatory matter is intentionally or negligently communicated to a third person is a publication"); *Corbin v. Madison*, 12 Wash. App. 318, 326 (1974) (same). In Washington, as elsewhere, a person who "republishes defamatory statements made by another does not escape liability for the defamation … ." *Herron v. Trib. Pub. Co.*, 108 Wash. 2d 162, 178 (1987) (11 p.m. rebroadcast of statement originally aired during 5:30 p.m. newscast, separate publication); Restatement (Second) of Torts § 578 cmt. b (republishers are liable to the same extent as original publishers). This rule effectuates the "theory that tale bearers are as bad as tale makers." *Barry v. Time, Inc.*, 584 F. Supp. 1110, 1122 (N.D. Cal. 1984) (cleaned up).

Unlike newsstands or librarians who are in the business of distributing media regardless of its content, Emmons is in the business of targeting specific communications to specific audiences. SDF, ¶¶ 6–7. That's exactly what he did here: he discussed the flyer's content with Selvaggio, read it himself, brought the flyers into physical existence by printing them, drove hundreds of miles to the stores where UFCW members worked, placed the flyers where his intended audience would likely read them, and told them the flyers were about their union. *Supra* at 4–5.

Emmons's reliance on *Auvil v. CBS 60 Minutes*, 800 F. Supp. 928 (E.D. Wash. 1992) and other passive distributor cases is far afield. Those cases shield only those

PLAINTIFF'S OPP. TO DEFS' MOT. FOR SUMMARY JUDGMENT–16
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

distributors who do not know—and have no reason to know—the contents of communications before circulating them. *See Auvil*, 800 F. Supp. at 931–32 (local CBS affiliates not liable for national broadcast where affiliates had no "hint … that the content would be defamatory"); Restatement (Second) of Torts § 581, cmt. c (deliverers not liable for meanings they have "no reason to know" but rule "does not relieve from liability the publisher who prints and puts upon the market a libelous [communication] even though its contents are prepared by a third person").[6]

Here, Emmons knew the flyer carried a defamatory meaning when he first discussed it with Selvaggio and again when he read it himself. *Supra* at 4. Of course he did: the flyer is defamatory per se. ECF No. 21 at 11; *Caruso v. Local Union No. 690*, 100 Wash. 2d 343, 353 (1983); *Ward v. Painters' Loc. Union No. 300*, 41 Wash.2d 859, 863–65 (1953). He nonetheless chose to target that defamatory flyer at the audience most likely to impact Guenther's reputation. He is no passive distributor.

## V.    Emmons's flyering harmed Guenther.

Emmons rightly acknowledges (at 18) Guenther may establish damages either by showing (1) the flyers' accusations were defamatory per se and Emmons had

---

[6] *Accord Carafano v. Metrosplash, Inc.*, 207 F. Supp. 2d. 1055, 1074 (C.D. Cal. 2002) (holding website liable where questionnaires made it aware of profile content).

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–17
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

1    actual malice or (2) she suffered actual injuries. He vainly contests both points.

2        On the first point, the Court already correctly held the accusations against

3    Guenther are defamatory per se. *See* ECF No. 21at 11; *Caruso*, 100 Wash. 2d at 353.

4    And the record presents at least triable questions on Emmons's actual malice. *Supra*

5    at 14–15. Emmons nonetheless contends (at 18) Guenther is barred by RCW

6    7.96.050 from obtaining reputational or presumed damages otherwise available for

7    per se defamation.

8        Emmons misreads that statute to impose an unspecified timing requirement

9    that, he contends, Guenther missed, forever barring her from obtaining certain

10   damages. In fact, unlike parallel statutes in other states (Tex. Civ. Prac. & Rem.

11   Code §73.056(a)), Washington's statute imposes no such deadline.[7] Instead, it

12   imposes a timing consequence: the defendant's obligation to clarify or correct is

13   tolled until 30 days after the production of falsity information. RCW 7.96.070(1).

14

15

16

17   ---

     [7] The statute prescribes timeliness requirements a dozen times elsewhere. *See* RCW

18   7.96.040(1)(a), 040(2), .060, .070(1), .070(4)(a), .070(5), .080(1)(2), .090(1), and

19   .100. The Legislature's failure to impose a deadline on producing falsity information

20   shows it intended no such deadline.

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–18
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1   Here, Guenther provided falsity information in her complaint,[8] again during written

2   discovery completed by May 12, 2024, SDF, ¶ 115, and yet again through her May

3   13 and June 6, 2024, depositions (ECF No. 97, ¶ 4), giving him until July 6, 2024,

4   at the latest to correct or clarify his defamatory statements. As he has not done so,

5   SDF, ¶ 115, RCW 7.96.050 provides no barrier to Guenther's recovery of all

6   available damages. Emmons's contrary reading would impose a strict, unspecified

7   deadline for providing falsity information—precisely the technical trap for unwary

8   plaintiffs the statute eschews. RCW 7.96.010; UCCDA § 3, cmt., available at

9   https://tinyurl.com/mry2cbr4.

10         On the second point, the flyers caused Guenther actual damage. *See* ECF No.

11   104 at 9–10, 23–24. Emmons would evade that showing (at 19) on the theory that

12   Selvaggio's previous publication of the same flyer somehow immunized him from

13   liability for the resulting damages. But republishers are liable for damages "to the

14   same extent as" the original publishers. Restatement (Second) of Torts § 578 cmt. b.

15   *Accord Herron*, 108 Wash. 2d at 178; *Flowers v. Carville,* 310 F.3d 1118, 1128 (9th

16   Cir. 2002) (It is "a venerable principle that a person who repeats a defamatory

17   statement is generally as liable as the one who first utters it."). *Schmalenberg v.*

18

19   _____

     [8] Defamation complaints themselves may serve as requests for clarification. RCW

20   7.96.040(4). They thus can also provide falsity information under RCW 7.96.050.

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–19
Case No. 2:22-cv-00272-TOR

*Tacoma News, Inc.*, 87 Wn. App. 579, 593 (1997)—urged (at 19) by Emmons—has nothing to do with a republisher's liability and is inapplicable here.

**VI.     Emmons is not entitled to judgment on Guenther's false light claim.**

"An invasion of privacy by false light arises when a defendant publishes statements that place a plaintiff in a false light if (1) the false light would be highly offensive and (2) the defendant knew of or recklessly disregarded the falsity of the publication and the subsequent false light it would place the plaintiff in." *Seaquist v. Caldier*, 8 Wn. App. 2d 556, 564 (2019). Here, the false allegations against Guenther are highly offensive. And there is ample evidence that Emmons acted with actual malice. *Supra* at 14–15. A jury must decide Guenther's false light claim.

CONCLUSION

For the reasons set forth above and in her cross-motion, Guenther respectfully asks the Court to deny Defendants' motion for summary judgment.

RESPECTFULLY SUBMITTED this 25th day of October 2024.

> *s/Darin M. Dalmat*
> Dmitri Iglitzin, WSBA No. 17673
> Darin M. Dalmat, WSBA No. 51384
> Gabe Frumkin, WSBA No. 56984
> **BARNARD IGLITZIN & LAVITT LLP**
> 18 W Mercer St, Suite 400
> Seattle, WA 98119
> (206) 257-6003
> iglitzin@workerlaw.com
> dalmat@workerlaw.com
> frumkin@workerlaw.com

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–20
Case No. 2:22-cv-00272-TOR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Aaron Streepy, WSBA 38149
Jim McGuinness, WSBA 23494
Streepy Lemonidis Consulting & Law
Group, PLLC
2800 First Avenue, Suite 211
Seattle, WA 98121
 (253) 528-0278
aaron@slglc.com
jim@mcguinnessstreepy.com
*Attorneys for Plaintiff Faye Guenther*

PLAINTIFF'S OPP. TO DEFS' MOT. FOR
SUMMARY JUDGMENT–21
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1

**DECLARATION OF SERVICE**

2

I hereby certify that on the date noted below, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system, which will send

4

notification of such filing to those attorneys of record registered on the CM/ECF

5

system.

6

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| Ambika Kumar<br>Sara A. Fairchild<br>Davis Wright Tremaine LLP<br>920 Fifth Ave., Ste. 3300<br>Seattle, WA 98104<br>ambikakumar@dwt.com<br>sarafairchild@dwt.com | ☐  Hand Delivery<br>☐  Certified Mail<br>☐  Facsimile<br>☐  E-mail<br>☐  U.S. Mail<br>☒  E-Service |
| John A. DiLorenzo<br>Davis Wright Tremaine LLP<br>560 SW 10th Ave., Ste. 700<br>Portland, OR 97205<br>johndilorenzo@dwt.com | ☐  Hand Delivery<br>☐  Certified Mail<br>☐  Facsimile<br>☐  E-mail<br>☐  U.S. Mail<br>☒  E-Service |

7

8

9

10

11

12

13

14

DATED this 25th day of October 2024 at Seattle, Washington.

15

16

By: _____

17

Esmeralda Valenzuela, Paralegal

18

19

20

DECLARATION OF SERVICE
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**