Dmitri Iglitzin, WSBA No. 17673
Darin M. Dalmat, WSBA No. 51384
Gabe Frumkin, WSBA No. 56984
BARNARD IGLITZIN & LAVITT LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6003
iglitzin@workerlaw.com
dalmat@workerlaw.com
frumkin@workerlaw.com

Aaron Streepy, WSBA 38149
Jim McGuinness, WSBA 23494
STREEPY LEMONIDIS CONSULTING & LAW GROUP, PLLC
2800 First Avenue, Suite 211
Seattle, WA 98121
Telephone: (253) 528-0278
Fax: (253) 528-0276
aaron@slglc.com
jim@mcguinnessstreepy.com

*Attorneys for Plaintiff Faye Guenther*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
## AT SPOKANE

| | |
|---|---|
| FAYE IRENE GUENTHER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH H. EMMONS, individually, and OSPREY FIELD CONSULTING LLC, a limited liability company,<br><br>Defendants. | No. 2:22-cv-00272-TOR<br><br>**SECOND DECLARATION OF FAYE IRENE GUENTHER IN OPPOSITION DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

I, Faye Irene Guenther, hereby declare and state as follows:

1.    I am over the age of 18 and make this declaration of my own personal knowledge and am competent to testify as to the matters herein.

2.    I am the plaintiff in this matter. I am currently the president of United Food and Commercial Workers (UFCW) Local 3000.

3.    Under Article VII of its bylaws, UFCW Local 3000 has three principal officers: President, Secretary-Treasurer, and Recorder. It also has 48 constitutional Vice Presidents, who are members of Local 3000 elected from a cross-section of its divisions, along with a couple membership-at-large positions. I attach as **Exhibit 1** a true and correct copy of those bylaws.

4.    Those 51 constitutional officers together make up the UFCW Local 3000 Executive Board, which is the local union's governing body. *See* Article VIII, Bylaws.

5.    Eric Renner is not now, and never has been, a constitutional officer of Local 3000 or a member of the Local 3000 Executive Board.

6.    More generally, Mr. Renner has never held a position at Local 3000 with responsibilities for governing that local union. Indeed, he has never held a position at Local 3000 with responsibilities for supervising any Local 3000 staff. He has held the title of Vice President but has never been elected to any constitutional Vice President office. His title is just a title. In fact, on Local 3000's website, he is referred

SECOND DECLARATION OF FAYE IRENE GUENTHER OPPOSITION TO DEFENDANT SUMMARY JUDGMENT – Page 2
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1    to as the Director for Eastern Washington, Northern Idaho, and Northeastern

2    Oregon—and not as a Vice President at all. *See* https://ufcw3000.org/staff-directory.

3    7.    In December 2021, Scott Habenicht was Local 1439's in-house counsel.

4    8.    At that time, Larry Hall was a former President of Local 1439 and a significant

5    leader of that union.

6    9.    In December 2021, Jeff White and Kinzie Michael were two members of the

7    Local 1439 Executive Board. A few days before the December 14, 2021, Board

8    meeting at which Local 1439 discussed the potential merger, I met with key leaders

9    on Local 1439's Executive Board to introduce myself so that they would have an

10    opportunity to get a sense of me as a person and ask questions of me.

11    10.    As I previously testified, on January 6, 2022, Local 21 mailed notices to its

12    members of the "Winter General Membership Meetings & Union Merger Votes."

13    *See* ECF No. 107, ¶ 103 & Ex. 18.

14    11.    Between December 17, 2021, and January 5, 2022, a Local 1439 staff person

15    attempted to change Local 1439's merger vote notice—either by changing the time

16    or location or both (I don't remember exactly which). Either way, any departure from

17    the details identified in the voting notice could have led to a potential challenge,

18    under the UFCW Constitution or federal law (i.e., the Labor–Management Reporting

19    and Disclosure Act (LMRDA)), to the merger vote and potentially invalidate the

20    merger.

SECOND DECLARATION OF FAYE IRENE
GUENTHER OPPOSITION TO DEFENDANT
SUMMARY JUDGMENT – Page 3
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

12.     I understood at the time that Local 1439 was short staffed. By contrast, Local 21 had several staff members who were experienced in running constitutional votes (including merger votes) in compliance with the requirements of the UFCW Constitution and the LMRDA. To ensure that the vote would be compliant with all constitutional and legal requirements, I accordingly agreed to provide Local 21 staff to assist Local 1439 in conducting a valid merger vote.

13.     Through my January 5, 2022, email, I communicated this plan to Mr. Renner and Jeff Hofstader, the Secretary-Treasurer of Local 1439 at the time. *See* ECF No. 113-18.

14.     At the time of that email, I also intended to attend Local 1439's merger vote meetings to help ensure compliance with constitutional and legal requirements.

15.     As it turned out, however, I was not able to do so. I got the worst case of COVID I've ever had shortly after January 5, 2022, and was so ill that I was unable to travel. I did not attend any of Local 1439's merger vote meetings.

16.     Several Local 21 staff did, however, attend those voting meetings, including Local 21's Secretary-Treasurer Joe Mizrahi, finance and data manager Kim Micheau, chief of staff Sarah Cherin, and special project assistant Shari Davis. I had instructed them to make sure the merger votes complied with all constitutional and legal requirements and to answer whatever questions members may ask at the voting meetings.

SECOND DECLARATION OF FAYE IRENE GUENTHER OPPOSITION TO DEFENDANT SUMMARY JUDGMENT – Page 4
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

17.    In January 2022, Tom Geiger was Local 21's communications director; James Crowe was Local 21's bargaining director; and Sean Embly was Local 21's membership action director. These personnel helped ensure Local 21 had its processes and procedures in place and ready in case the merger was approved.

18.    I am familiar with the Facebook group in which Jessica Roach posted the flyer. The group was originally called "Purge Not Merge." It is now called "Local 367 Members' Forum." It was originally created in or around 2018 to oppose a potential merger between Local 21 and Local 367. The sponsors of the group preferred to vote the then-current leadership of Local 367 out, rather than merge with Local 21.

19.    Since at least 2021, the Facebook group has been a closed, private group. To gain access to the group, a person must be approved by the group's moderator. My understanding is that a person must be a member of Local 367 to have access to the group.

20.    I am familiar with Facebook and understand that any particular person can make only one reaction (e.g., a "like" or "love") to a particular post. But a Facebook user could publish a reaction and multiple comments in response to the same post if they chose to do so.

21.    In 2021 and the first half of 2022, most of the press that Local 21 and 3000 was able to garner on its own initiative was around COVID and Black Lives Matter.

SECOND DECLARATION OF FAYE IRENE GUENTHER OPPOSITION TO DEFENDANT SUMMARY JUDGMENT – Page 5
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

The local did not really try to garner press on other issues, apart from specific bargaining situations with employers. On the rare occasions during that time period when we had press conferences, Local 21 (and then Local 3000) usually had a member speak to the press or its communications director, Tom Geiger. I almost never spoke for the local. Based on my experience as President of Local 21 and now 3000, I doubt we would have been able to garner press coverage on an issue of internal union governance, like the Local 21/1439 merger, even if we had tried to do so.

22.    I am familiar with the grocery stores in Spokane, Washington where Local 3000 members work. I believe they all have signs prohibiting solicitation, petitioning, distribution of literature, and similar activity on their premises.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed on this <u>18    </u> day of October 2024.

_____
Faye Irene Guenther

SECOND DECLARATION OF FAYE IRENE
GUENTHER OPPOSITION TO DEFENDANT
SUMMARY JUDGMENT – Page 6
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1

**DECLARATION OF SERVICE**

2

I hereby certify that on the date noted below, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system, which will send

4

notification of such filing to those attorneys of record registered on the CM/ECF

5

system.

6

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| Ambika Kumar<br>Sara A. Fairchild<br>Davis Wright Tremaine LLP<br>920 Fifth Ave., Ste. 3300<br>Seattle, WA 98104<br>ambikakumar@dwt.com<br>sarafairchild@dwt.com | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☐ E-mail<br>☐ U.S. Mail<br>☒ E-Service |
| John A. DiLorenzo<br>Davis Wright Tremaine LLP<br>560 SW 10th Ave., Ste. 700<br>Portland, OR 97205<br>johndilorenzo@dwt.com | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☐ E-mail<br>☐ U.S. Mail<br>☒ E-Service |

7

8

9

10

11

12

13

14

DATED this 25th day of October 2024 at Seattle, Washington.

15

16

By: _____

17

Esmeralda Valenzuela, Paralegal

18

19

20

DECLARATION OF SERVICE
Case No. 2:22-cv-00272-TOR

# EXHIBIT 1

# BYLAWS

# OF

# UNITED FOOD AND COMMERCIAL WORKERS UNION

# LOCAL NO. 3000

## ARTICLE  I
### Name

This organization shall be known as United Food and Commercial Workers Union, Local No. 3000, chartered by the United Food and Commercial Workers International Union, AFL-CIO, CLC.

## ARTICLE  I I
### Jurisdiction

Section A.  The geographical jurisdiction of this Local Union shall encompass within the State of Washington, the Counties of Clallam, Island, Jefferson, King, Kitsap, Mason, San Juan, Skagit, Snohomish, Thurston, Whatcom, Columbia, Walla Walla, Franklin, Benton, Klickitat, Skamania, Yakima, Kittitas, Chelan, Douglas, Asotin, Garfield, Whitman, Adams, Lincoln, Grant, Okanogan, Ferry, Stevens, Pend Oreille, and Spokane; all health care employees in the State; slaughtering, packing, food processing, apparel, garment, and textile manufacturing, and other industrial facilities in the County of Pierce; American Linen, Overall Laundry, Peerless Laundry, and Superior Linen Service in the City of Tacoma in the County of Pierce; and within the State of Idaho, the Counties of Boundary, Bonner, Kootenai, Benewah, Shoshone, Latah, Clearwater, Nez Perce, Lewis,

and Idaho; or such area as may be determined from time to time by the United Food and Commercial Workers International Union.

Section B.  The trade jurisdiction of this Local Union shall encompass such jurisdiction as may be determined from time to time by the United Food and Commercial Workers International Union.

ARTICLE  I I I
Objectives

The objectives of this Local Union shall be the elevation of the position of its members, and further:  to conduct a Local Union of persons engaged in the performance of work within its jurisdiction; to organize, unite, and assist persons, without regard to race, creed, color, sex, religion, age, disability, sexual orientation, gender identity, gender expression, national origin, or ethnic background, engaged in the performance of work within its jurisdiction for the purpose of improving wages, hours, benefits, and working conditions; to obtain the status of exclusive bargaining representative of persons employed within its jurisdiction and to process and resolve grievances and enforce all other rights arising out of such collective bargaining relationships; to encourage members and all workers to register and vote; to support research in its industries for the benefit of its members; to advance and safeguard the full employment, economic security, and social welfare of its members, and of workers generally; to protect and extend democratic institutions, civil rights and liberties, and the traditions of social and economic justice of the United States and Canada; to create and disseminate publications; to protect and preserve the Local Union as an institution and to perform its legal and contractual obligations; to protect the Local Union from any and all corrupt influences and from the undermining efforts of all who are opposed to the basic principles of democracy and democratic unionism; to acquire, receive, hold, manage, lease, convey, invest, expend, or otherwise use the funds and property of this organization to carry out the duties and to achieve the objectives set forth in the International Constitution and the Local Union bylaws; to carry out the purposes of the International Union as set forth in the Preamble and provisions of the International Constitution; to take all steps and actions, which are

reasonable and proper, to promote the welfare and interests of its members, of workers within its jurisdiction and of workers generally and to afford mutual protection to members against unwarranted rules, unlawful discharge, or other forms of injustice or oppression; to sponsor, encourage, engage in, and support financially, and otherwise, educational, legislative, political, civic, social, health, welfare, community, or charitable projects or activities; and to support and encourage such other objectives for which working people may lawfully combine for their mutual protection and benefit.

ARTICLE  I V

Membership

Section A.  All persons engaged in work within the trade and geographical jurisdiction of this Local Union shall be eligible for membership subject to the provisions of these bylaws and the Constitution and laws of the International Union.  Membership shall be classified as active, associate, paid-up life, or nonactive.  No member shall hold more than one classification of membership at any one time.

Section B.  1.  An individual is eligible to be an active member if the individual is: employed within a collective bargaining unit represented by the International Union or the Local Union; an employee or salaried officer of the International Union or the Local Union or of any organization approved by the International Executive Board with which the International Union or the Local Union has affiliated; a member of the International Union through the Local Union or a division of the Local Union which was a professional or other association that has been chartered by or merged with the International Union or the Local Union; or working as a barber, cosmetologist, or independent insurance agent.

Receipt by the Local Union of the current dues and the required initiation or reinstatement fee, or any installment established by the Local Union for payment of such fee, is required for an eligible individual to become an active member.  Continued payment of dues, and, if applicable, any remaining installments of the required initiation or reinstatement fee, is required to maintain active membership.

Active members shall enjoy all rights and privileges of membership in this Local Union and in the International Union, including the right to vote at regular and

- 3 -

special meetings and to hold any office and be elected a delegate if otherwise qualified under these bylaws and the International Constitution.

They shall have the privilege of obtaining withdrawal status provided that they are eligible pursuant to the requirements of Article V of these bylaws.  If otherwise eligible, active members may obtain military leave status.

2.   An active member who is not actively working due to layoff, illness, disability, or a contractually provided leave of absence, and has applicable recall or reemployment rights which have not expired under the collective bargaining agreement, or who has been discharged and has a grievance pending under the collective bargaining agreement, may elect (1) to continue to pay dues and maintain active membership for the temporary period for which said recall or reemployment rights are valid or said grievance is pending, but in neither event for longer than two years, (2) to apply for another classification of membership provided for in this Article, if eligible, or (3) to apply for a withdrawal status pursuant to the provisions of Article 6 of the International Constitution.

Section C.   An individual is eligible to be an associate member if the individual is a participant in a specific associate program, established by or approved by the International Executive Board, and the individual is not eligible to be an active member, or if the individual is employed by an employer who is the subject of an active organizing effort by the International Union or any of its chartered bodies.  Payment of the applicable dues is also required to become an associate member and to maintain such membership.  Associate members may be privileged to attend membership meetings and serve on committees as determined by the Local Union President and may, at the request of the Local Union President, make reports or otherwise address such meetings.  They have the privilege of obtaining withdrawal status provided that they are eligible pursuant to the requirements of Article V of these bylaws.  Associate members, however, shall have no voice or vote in Union affairs, nor shall they hold Union office or be elected a delegate.

Section D.  The Local Union may issue paid-up life membership to any of its members who have accumulated 25 or more years of active membership in the International Union and who are no longer eligible for active membership in the International Union.  Proposals to grant paid-up life memberships shall be introduced and

- 4 -

voted on at a regular meeting of the Executive Board of the Local Union.  A decision by the Executive Board not to grant paid-up life membership may be appealed at the next regular membership meeting of the Local Union.  If paid-up life membership is approved for any member, the President shall immediately notify the International Secretary-Treasurer of such action.  Paid-up life members may be privileged to attend membership meetings and serve on committees as determined by the Local Union President and may, at the request of the Local Union President, make reports or otherwise address such meetings.  Paid-up life members, however, shall have no voice or vote in Union affairs, nor shall they hold Union office or be elected a delegate.

If such member again becomes eligible for active membership in the International Union, the member shall apply for active membership in the same manner as provided for reinstatement from withdrawal status in Article V of these bylaws.

Section E.  An individual is eligible to be a nonactive member if the individual is an owner-operator of an establishment within the jurisdiction of the Local Union. Payment of the applicable dues is required to become a nonactive member and to maintain such membership.  Nonactive members may be privileged to attend membership meetings and serve on committees as determined by the Local Union President and may, at the request of the Local Union President, make reports or otherwise address such meetings.  They have the privilege of obtaining withdrawal status provided that they are eligible pursuant to the requirements of Article V of these bylaws.  Such persons shall have no voice or vote in Union affairs, nor shall they hold Union office or be elected a delegate.

Section F.  All applications for membership shall be made on forms furnished or approved by the International Secretary-Treasurer.  The Local Union shall retain such applications and enter all information required for new members on a monthly membership report in the format provided**,** approved or mandated by the International Union, which could include an electronic report.  Such report shall be forwarded to the International Secretary-Treasurer.

Section G. Members shall not furnish a complete or partial list of the membership of the International Union or of any Local Union to any person other than those whose governmental position or International or Local Union office or employee benefit fund position entitles them to have a list, without specific authorization in writing from the International President.

Section H. All members shall be subject to the bylaws of this Local Union and the Constitution and laws of the International Union.

ARTICLE V

Withdrawal and Military Leave Status

Section A. The following members whose current dues and fees have been paid shall be entitled to withdrawal status without charge therefor:

1. Members no longer employed within a collective bargaining unit represented by and within the jurisdiction of the Local Union;

2. Members whose positions are excluded from coverage by a collective bargaining agreement;

3. Members who are employed by the International Union or the Local Union who are represented by another labor organization for purposes of collective bargaining with the International Union or the Local Union;

4. Members no longer employed by an employer who is the subject of an active organizing effort by the Local Union and who is not a party to a collective bargaining agreement with the Local Union;

5. Members who terminate their associate, nonactive, or general membership and are not eligible for active membership; and

6. Members who are no longer actively working due to layoff, illness, disability, or a contractually provided leave of absence, that have applicable recall or reemployment rights which have not expired under the collective bargaining agreement, or who have been discharged and have a grievance pending under the collective bargaining agreement.

<u>Section B.</u> The President, upon receipt of information that a member is eligible for withdrawal status, shall effect such in accordance with provisions of these bylaws and the International Constitution.

<u>Section C.</u> Withdrawal status granted to eligible members shall be effective as of the first of the month following the member's eligibility to receive such status.

<u>Section D.</u> Persons in withdrawal status may maintain continuous membership by:

1. Notifying the International Union in writing no later than the first day of the month following the effective date of such status, along with one month's dues, and becoming a general member as provided in Article 4(F) of the International Constitution; or

2. If eligible for active membership, by applying for such**,** together with the payment of the current dues, with the Local Union within whose jurisdiction such person is employed or last held membership within one calendar month from the effective date of withdrawal status; or

3. If eligible for associate or nonactive membership, applying for such, together with the payment of the current dues, with the Local Union within whose jurisdiction the individual is applying for such membership within one calendar month from the effective date of withdrawal status.

<u>Section E.</u> Any person in withdrawal status and making application for membership in this Local Union shall be accepted as a reinstated member, without the payment of a fee, except the current dues, provided such reinstatement with this Local Union occurs within 30 days from the date of employment within a collective bargaining unit which is situated within the jurisdiction of the Local Union and is represented by the International Union or such Local Union, or within 30 days from the date of employment by the International Union or any of its chartered bodies.  Any person who is employed within a collective bargaining unit represented by the International Union or any Local Union of the United Food and Commercial Workers and fails to reinstate as prescribed in this paragraph shall have withdrawal status voided and shall not be reinstated to membership without the payment of the applicable fee.

Section F.  In the event any member whose current dues and fees have been paid enters the military service of the United States or Canada, whether voluntarily or by draft, such member shall be entitled to, upon request, military leave status with the privilege of reinstating with any Local Union within whose jurisdiction the person is employed within a collective bargaining unit represented by the International Union or such Local Union within six months after discharge from military service, provided that such person makes application for membership in the required manner, presents evidence of discharge, and pays current dues.

Section G.  During such military leave, the benefits as provided in these bylaws and the International Constitution shall be inoperative; however, any such person readmitted under the above provisions shall immediately be restored to membership status in all respects as of the effective date of the military leave status.

Section H.  Such members in military leave status applying for membership after the aforementioned six months' period shall be honored as regular withdrawal status as set forth in Section E of this Article.

## ARTICLE  V I
### Meetings

Section A.  The regular quarterly meetings of this Local Union shall be held at such times, locations, and in such manner as shall be determined by the Local Union Executive Board.

Section B.  The chairperson of the meeting shall have the authority to take whatever reasonable measures are necessary to ensure order.

Section C.  A special meeting of the membership shall be called whenever requested in writing by 10 percent of the membership, or when directed by the Executive Board or President.  Special meetings shall be held as quickly as is practical and reasonably convenient, provided that, where a regular membership meeting is scheduled

within a 30-day period of such a membership request, the Local Union President may defer such requested meeting to the date of the regularly scheduled meeting.  Special meetings shall be held in the same manner as the Local Union holds its regular meetings.

Section D.  Informational meetings of a portion of the membership may be held on an occasional or regular basis as may be determined by the Local Union.  Such informational meetings of the Local Union membership may pass upon recommendations to be referred to the regular meeting or to a special meeting of the membership for its action thereon.  Meetings of a portion of the membership may vote upon collective bargaining agreements which affect it as specified under Article 23 of the International Constitution.

Section E.  Adequate notice shall be given of the time, place, and/or manner of all meetings not held on a periodic basis at a set time and place, so that all members involved have an opportunity to attend.  Adequate notice shall also be given of the purpose of all special meetings.

Section F.  Seven members shall constitute a quorum at any membership meeting.

Section G.  Regular and special meetings of Local Unions shall provide members the opportunity to participate.

Section H.  Except as expressly provided otherwise in these bylaws or the International Constitution, all matters calling for a vote shall be determined by a majority of the active members present and voting on the question.  Whenever a requirement for a majority vote, two-thirds majority vote, plurality vote, or other such vote is set forth in these bylaws, it shall be applied with respect to those present and voting and/or all valid votes cast and counted, as applicable, unless the voting requirement in the applicable provision of these bylaws expressly provides otherwise.

Section I.  Except as otherwise provided herein or by the Constitution or laws of the International Union, proceedings shall be conducted in accordance with common parliamentary procedure designed for the conduct of orderly and democratic meetings.

ARTICLE   V I I
Local Union Officers

Section A. The constitutional officers of this Local Union shall be a President, Secretary-Treasurer, Recorder and forty-eight (48) Vice Presidents.  The forty-eight (48) Vice Presidents shall be from the membership employed in the divisions of the Local Union as follows:

Retail Grocery Division – 20 Total

12 Positions – Retail Grocery Division at Large

3 Positions – Central Region*

1 Position – North Region***

1 Position – Peninsula Region****

3 Positions – Eastern Region**

Retail General Merchandise Division – 4 at Large

Retail Meat Division – 4 Total

3 Positions – Retail Meat at Large

1 Position – Eastern Region**

Healthcare Division – 9 Total

4 Positions – Healthcare Division at Large

2 Positions – Central Region*

1 Position – Eastern Region**

1 Position – North Region***

1 Position – Peninsula/South Region****

RN Division – 4 Total
        1 Position – RN Division at Large
        1 Position – Central*/Eastern** Region
        1 Position – North Region***
        1 Position – Peninsula/South Region****

Cannabis Division – 1 at Large

Food Processing – 2 at Large

Miscellaneous Division – 2 at Large

Membership at Large – 2^ positions

^Members employed from any division of the Local Union may run for the two Membership at Large positions.

*Central Region includes the following Counties: King and Pierce.

**Eastern Region includes the following Counties: Okanogan, Ferry, Stevens, Pend Oreille, Chelan, Douglas, Lincoln, Spokane, Kittitas, Grant, Adams, Whitman, Yakima, Benton, Franklin, Walla Walla, Columbia, Garfield, Asotin, and Klickitat.

***North Region includes the following Counties: Whatcom, San Juan, Skagit, Island, and Snohomish.

****Peninsula/South Region includes the following Counties:  Clallam, Jefferson, Grays Harbor, Mason, Kitsap, Thurston, Pacific, Lewis, Wahkiakum, Cowlitz, Clark, and Skamania.

Section B.  The duties of Local Union officers and employees shall be those provided by the Constitution and laws of the International Union and such other duties as may be provided in these bylaws or by the Local Union from time to time.

Section C.  1.  The President shall be the chief executive officer of the Local Union and shall be responsible for enforcing the Constitution and laws of the International Union and the bylaws and rules of the Local Union.  The President, or the President's designated representative, shall preside at all meetings of the Local Union and the Local Union Executive Board and shall decide all questions of order subject to an appeal to the Local Union or Local Union Executive Board, as appropriate, provided that any such decisions on appeal are consistent with the Constitution and laws of the International Union.  The President, by virtue of office, shall be a delegate or representative to any convention or meeting to which the Local Union is entitled to and elects to send delegates or representatives except as otherwise provided in Articles 8(I)3 and 15(E) of the International Constitution.  The President shall have general supervision over the affairs of the Local Union.  Subject to the provisions of the respective trust agreements, the President, or the President's designated representative, shall be a trustee of all employee benefit trusts on which the Local Union is entitled to a trustee, and the President shall appoint any other trustees to which the Local Union is entitled on such trusts.  The President or the President's designated representative shall have the authority to appoint stewards, or to determine that stewards in designated locations be elected by the affected membership, and shall have the authority to remove stewards in either instance.  The President shall appoint all committees as may be necessary, and shall perform such other duties as are required by the President's office.  The President shall vote where that vote would be determinative of the outcome or in all cases where a secret ballot is conducted. The President may appoint sergeants-at-arms to assist in properly conducting meetings of the Local Union.

2.  The President shall disburse the Local Union's funds and, except for disbursements required to be made from the funds of the Local Union by the Constitution or laws of the International Union or these bylaws, disbursements shall be authorized or ratified by the Local Union Executive Board.  Disbursements shall be made in accordance with Article IX, Section C of these bylaws.  The President shall invest and reinvest the

surplus funds of the Local Union, upon the approval of the Local Union Executive Board, according to standards applicable to fiduciaries.

3.  The President shall have the authority to interpret the bylaws and rules of the Local Union.  Any such interpretation may be appealed to the Executive Board within 30 days after the decision has been rendered.  Any such interpretations or decisions on appeal shall be consistent with the Constitution and laws of the International Union.  The President shall have the authority to resolve any controversy, dispute, or grievance that may arise between members of the Local Union for which a remedy is not otherwise provided in these bylaws.  Nothing contained herein shall be construed or applied in derogation of any rights or remedies provided by the International Constitution.

4.  The President may employ or retain such personnel as may be necessary to conduct the affairs of the Local Union.  The President may terminate the employment of any such person at the end of an assignment or in the best interest of the Local Union; except that, the President may terminate the employment of any Union Representative for reasonable cause, subject to an appeal to the Local Union Executive Board.

5.  The President shall determine the compensation and expenses, or expense policy, for all personnel employed or retained by the Local Union, subject to the approval of the Local Union Executive Board.

6.  The President shall be the custodian of the union shop identification cards, or other such indicia, union logos, union labels, union domain names, and other identification of the Union as are issued by the International Union.

7.  The President shall forward to the International Secretary-Treasurer a monthly membership report in the format provided, approved, or mandated by the International Union, giving an accurate record and summary of the membership as of the last day of the month for which the report is submitted.  The President shall complete the report consistent with the requirements of Articles 34(B)6 and 34(B)7 of the International Constitution.

8.  The President shall receive and properly receipt all money collected.

9.  The President shall make an itemized statement, which shall contain accounting categories substantially similar to those required in the Local Union Trustees' financial report provided for in Article IX, Section D of these bylaws, including a statement of assets, liabilities, and net assets, at each regular meeting of the Local Union Executive Board of all moneys received and paid out by the President, the accuracy of which shall

be certified by the Trustees of the Local Union.  The President shall make the Local Union financial records available to the Trustees at their request.  The President shall make such itemized statement available for inspection by the members at the Local Union on a reasonable basis.  The President shall also make or distribute a financial report at a regular meeting or series of regular meetings of the membership not less than once a year.

Section D.  The Secretary-Treasurer shall assist the President in the carrying out of the President's duties and responsibilities and shall conduct the Secretary-Treasurer's office under the general supervision of the President.  The Secretary-Treasurer, by virtue of office, shall be a delegate or representative to any convention or meeting to which a Local Union is entitled to and elects to send more than one delegate or representative except as otherwise provided in Articles 8(I)3 and 15(E) of the International Constitution.

Section E.  The Vice Presidents shall assist the President in the discharge of the President's official duties.  They shall be numerically designated for election purposes only.

Section F.  The Recorder shall report the minutes of each Local Union membership and Executive Board meeting, keeping an accurate and permanently bound or unalterable electronically stored record of all proceedings.

Section G.  1.  All Local Union officers who are entrusted with any books or records of the Local Union shall maintain and keep such books or records in good order and shall at all times have them available for authorized audit, examination, or inspection.

2.  All officers at the expiration of their respective terms of office, or when removed or when their offices become vacant, shall deliver to their duly elected successors, and if there is no such successor, then to the duly elected Trustees of the Local Union, all books, papers, moneys, and other property in their possession belonging to the Local Union or International Union, and they shall not be relieved from their bonds or obligations until they have complied with this requirement.

Section H.  Compensation and expenses, or the expense policy, for officers shall be established by the Local Union Executive Board.

## ARTICLE  V I I I
### Local Union Executive Board

Section A.  The constitutional officers of the Local Union shall constitute the Local Union Executive Board.  The duties of the Executive Board shall be those provided in the International Constitution and these bylaws and such other duties as may be provided by the Local Union from time to time.

Section B.  The Executive Board shall have full and complete charge of all business of the Local Union not otherwise delegated to a specific officer or officers, or reserved to the membership.  It shall meet not less often than once a month, except that no meeting shall be required to be held in August or in both the months of November and December.  The President shall be authorized to call additional meetings of the Executive Board whenever the President deems it advisable or whenever requested by a majority of the Executive Board.  The Executive Board may meet by teleconference call or other means approved by the International Executive Board, provided it meets in person at least six times a year, except that if the Executive Board meets less than 12 times, it may meet in person less than six times so long as at least 50% of the Executive Board meetings are held in person.  The Local Union President may conduct a vote of the Executive Board by mail, telephone, or other form of communication the Local Union President deems appropriate.  A majority of its members shall constitute a quorum.

Section C.  The Local Union Executive Board shall annually select from among its members a Board of Audit, consisting of three members, who shall not be members of the Board of Trustees.  The Board of Audit shall meet prior to each regular Executive Board meeting and examine the itemized financial statement prepared by the President for the Executive Board meeting and any related materials and shall report its findings to the Executive Board.

ARTICLE  I X

Local Union Board of Trustees

Section A.  Three Local Union Executive Board members shall, by virtue of their offices, constitute the Local Union Board of Trustees.  Two of these shall be the President and the Secretary-Treasurer, and the Local Union Executive Board shall annually designate one of the other members of the Executive Board to be the third Trustee.

Section B.  The Trustees shall be responsible for ensuring that all finances of the Local Union are managed in accordance with the Constitution and laws of the International Union and these bylaws.  The Trustees shall be responsible for ensuring that the funds and property of the Local Union are properly received and managed for the sole use and benefit of the Local Union and in accordance with standard accounting practices.

Section C.  The signatures of two of the three Trustees shall be required on all checks and other financial documents, and the Trustees shall be responsible for ensuring that all banks and other financial institutions holding funds or property of the Local Union are so instructed.  Two of the three Trustees shall be required to document their approval for electronic transactions.

Section D.  The Trustees shall examine the financial records of the Local Union.  The Trustees shall make a quarterly financial report to the International Secretary-Treasurer on forms supplied or approved by the International Secretary-Treasurer and on such schedule as the International Secretary-Treasurer may determine, and they shall also promptly submit a copy of said report to the Local Union Executive Board.  The Trustees shall also file with the International Secretary-Treasurer copies of all audits required by the International Constitution and all annual financial reports required by the federal government within 30 days of their completion.

Section E.  The Trustees shall employ a certified public accountant to assist them in the performance of their duties and to perform a complete audit of the Local Union not less than once a year, except as otherwise indicated in Article 36(E) of the International Constitution.

Section F. The Trustees shall ensure that Local Union officers, representatives, and employees are bonded as directed by the International Secretary-Treasurer and in accordance with Article 11(L) of the International Constitution.

Section G.  The title to a headquarters building or other real property held by the Local Union shall be vested by proper conveyance in its own name, if applicable state law permits; in the names of the individual members of the Board of Trustees and their successors in office, to be held in trust for the sole use and benefit of the Local Union; or in a separate building corporation whose corporate documents have been approved by the International President.

ARTICLE   X

Local Union Funds

The general or special funds or property of this Local Union shall be used only for such purposes as are specified in these bylaws or the Constitution and laws of the International Union, as may be established by proper resolution of the Local Union Executive Board, or as may be required to transact and properly conduct the business of this Local Union.

ARTICLE  X I

Initiation Fees and Dues

Section A.  Except as otherwise provided in the International Constitution, reasonable dues, initiation and reinstatement fees, and general or special assessments shall be established, increased, or levied by the Local Union by a majority vote by secret ballot of the members.  Not less than 15 days' written notice of such proposed action shall be sent to the membership prior to voting.

Section B.  Dues shall be due and payable on or before the first day of the month for which they are due.  An applicant for membership shall pay any applicable initiation or reinstatement fee, unless otherwise provided pursuant to the International Constitution, plus the current month's dues and assessments.

Section C.   Any member two calendar months in arrears for dues or fees to the Local Union shall stand suspended if they are not paid on or before the first day of the third month.   After the expiration of such period, no officer, representative, or employee of this Local Union shall accept dues without a reinstatement application and the required fee. The responsibility for maintaining membership rests with the member; suspension, therefore, when it occurs, is the voluntary act of the member involved.

Section D.  Initiation and reinstatement fees fixed by the Local Union may be reduced or waived by the Executive Board during active organizing programs.

ARTICLE  X I I

Elections

Section A.  All officers shall be elected by secret ballot of the membership, and their term of office shall be for three years, commencing October 1, 2023. Terms of office shall expire on September 30, and the terms of newly elected officers shall commence on October 1.

- 18 -

Section B.  Nominations and elections shall be conducted during the last six months preceding the expiration of the term of office.

Section C.  Not less than 30 days prior to the deadline for the receipt of nomination petitions for President, Secretary-Treasurer, and Recorder, notice shall be mailed by the Local Union to each member at the member's last known home address, setting forth the manner for conducting the nominations, the actual number of signatures required for nomination petitions, the deadline date for the receipt of petitions, and all other relevant requirements for the filing of petitions, including what each petition is required to contain.  The deadline for the receipt of nomination petitions shall be within seven days of the beginning of nomination meetings.

Not less than 15 days prior to the nominations for Vice President offices, notice shall be mailed by the Local Union to each member at the member's last known home address, setting forth the times, dates, and places for conducting the nominations.

Not less than 15 days prior to election, notice shall be mailed by the Local Union to each member at the member's last known home address, setting forth the times, dates, and places for conducting the elections.

Notice of nominations and election may be combined into a single notice, which shall be mailed in accordance with the time requirements set forth above.

Section D.  No person shall be eligible for nomination or election to any office unless such person is:

1.  An active member in the Local Union, who has been an active member in the Local Union, or who had been a member of another organization merged with the Local Union, for a continuous aggregate of at least 12 months immediately preceding the month in which the deadline for the receipt of nomination petitions occurs or in which nomination meetings are held, as applicable; or

2.  An active member in the Local Union who has been an active member in the International Union continuously for at least 24 months immediately preceding the month in which the deadline for the receipt of nomination petitions occurs or in which nomination meetings are held.

Any member satisfying the eligibility requirements of this Section must maintain continuous active membership in the Local Union to remain eligible to run for or hold elected office.

Section E.  1.  Nominations for the offices of President, Secretary-Treasurer, and Recorder shall be conducted by petition.  Nomination of a member for President, Secretary-Treasurer, or Recorder shall require the signatures of 300 active members of the Local Union

2.  The top of each page of the petition shall indicate the member who is being nominated and the specific office for which the member is being nominated.  Any petition may nominate three members for office, provided that each member is being nominated for a different office and that the office for which each member is being nominated is specifically indicated.  Each petition shall contain the signature, printed name, and other identifying information, as determined by the general chairperson of the election, of each member signing the petition.

3.  Petitions shall be filed at the Local Union office by mail or in person.  The original signatures are required to be filed, and transmission by facsimile, computer, or other form of electronic transmission shall not be valid.

4.  If a signature on any petition is not accompanied by a printed name or the other identifying information required by the general chairperson, but the identity of the member can be determined from the signature, the signature shall be deemed valid and shall be counted.

Section F.  Nominations for officers of Vice President shall be conducted at nomination meetings.

Section G.  No member may run for more than one office in any election and no member may hold more than one elected office at any one time.  The regular employees of the Local Union shall not constitute more than 50 percent of the membership of the Local Union Executive Board.

<u>Section H.</u>  Any active member in the Local Union, as defined in Article 4(B) of the International Constitution, shall be eligible to vote in the Local Union's elections.

<u>Section I.</u>  1.  The elections shall be conducted at such times and places as will afford all active members a reasonable opportunity to vote.

2.  The President shall select a general chairperson, who shall be a member of the United Food and Commercial Workers, to supervise the conduct of the nominations and election and not less than three members to act as election judges to assist the general chairperson.  The general chairperson and election judges, who together shall constitute the election committee, shall not be candidates for Local Union office.  The general chairperson shall establish the applicable dates, times, places, manner, and procedures for the nominations and election.  The election committee shall maintain custody of all ballots and election registers during the conduct of the elections.  Where multiple polling places are used, at least one election judge or the general chairperson shall supervise the election at each polling place.

3.  Each eligible member desiring to vote shall sign an election register authorized by the general chairperson of the election.  The voter shall be given a ballot authorized by the general chairperson and shall be provided an opportunity to vote the ballot in secrecy.  Ballots shall bear no number or marks which might identify the voter.  After marking the ballot, the voter shall fold and place it in a secured ballot receptacle provided by the election committee.  Alternative procedures for voting by machine, adequate to ensure the secrecy of the ballot, may be provided.  Candidates may have observers, who shall be active members of the Local Union.  Adequate safeguards to ensure a fair election shall be provided by the Local Union officers and election officials.

4.  Where the election is conducted at a single polling place, the results shall be tallied and recorded by the general chairperson of the election and the election judges at the close of the voting.

5.  Where the election is conducted at multiple times or polling places, the general chairperson of the election and not less than three election judges designated by the general chairperson shall meet not later than the second day following the last day on which the election was held and at a time and place to be specified by the general chairperson to tally and record the results of the election.  As may be determined by the general chairperson prior to the balloting, the ballots may be counted at the close of each

polling place, provided that the general chairperson or at least one election judge is present, and provided further, that the general chairperson and not less than three election judges designated by the general chairperson shall tally and record the final results of the election as provided above in this paragraph.

Section J.  1.  In lieu of or in addition to the election procedure provided for above, the general chairperson of the election may determine to conduct the election by a mail referendum in its entirety or in outlying areas.

2.  An election by mail referendum shall be conducted as follows:

a.  The election general chairperson and election judges will send by first-class mail to each active member of the Local Union eligible to vote by mail ballot the following:  (1) instructions, which may be printed separately or printed on the ballot,  as to the procedure to be used by the members in casting their secret ballots by mail; (2) one official ballot; (3) one envelope bearing the words "Secret Ballot," with no identifying number or marks; and (4) a ballot return envelope, which shall either contain a label with the member's name and address or clearly ask the member to print their name and address, and which shall be pre-addressed to a post office box obtained solely for the purpose of the mail referendum.

b.  The Local Union election general chairperson shall establish a deadline for the receipt of return mail ballots, which shall be no earlier than 15 days or later than 30 days after the date upon which the ballots are mailed to the members; provided that, if separate notice setting forth the manner and the dates that the ballots will be sent to the membership and that the return mail ballots must be received has not previously been mailed to each member at their last known home address, the receipt deadline shall be no earlier than 20 days after the date upon which the ballots are mailed to the members. If only a portion of the election is conducted by mail ballot, the receipt deadline shall be within the limits provided above and, in addition, the same as the date established for the close of voting in the non-mail portion of the election.

c. On the day of the receipt deadline, after 12:00 noon, at least two members of the election committee shall together pick up the mail ballots and return them unopened to the place specified by the general chairperson, and thereupon the election committee shall open and count the ballots.  The general chairperson and the election judges shall remove the Secret Ballot envelope containing the ballot from all ballot return

- 22 -

envelopes verified to have been sent by eligible voters.  After all the Secret Ballot envelopes have been separated from the return ballot envelopes, they shall be opened and the votes tabulated by the general chairperson and election judges.  If only a portion of the election is conducted by mail ballot, the election committee shall open and count the mail ballots following the close of voting in the non-mail portion that day.

d.  Adequate safeguards to ensure the secrecy of each voter's ballot and the fairness of the mail referendum shall be provided by the Local Union officers and election officials.

e. In all other applicable respects, the provisions of the International Constitution and these bylaws relating to the election of Local Union officers shall govern.

Section K.  The general election chairperson may determine to conduct a vote by other method approved by the International Executive Committee.

Section L.  Write-in candidates and proxy voting shall not be permitted.

Section M.  A plurality of votes cast shall be required for election except as to the offices of Local Union President and Secretary-Treasurer, where a majority of votes cast shall be required for election.  Where the election for an office other than President or Secretary-Treasurer results in a tie or where no nominee for Local Union President or Secretary-Treasurer receives a majority of votes cast, a runoff election between the two nominees with the higher number of votes shall be conducted.

Section N. When nominations have been completed and there are unopposed candidates, such unopposed candidates shall be deemed elected by acclamation.

Section O.  The ballots and all other records pertaining to the nominations and elections, including the membership mailing lists which were used to send the notices of the nominations and elections, shall be preserved for not less than one year by the President.

Section P. A copy of the results of the election shall be immediately mailed to the International President.

Section Q. Formal installation of the newly elected officers may be either before or after the start of their term of office to suit the convenience of the Local Union, but in any event, during either the month preceding or the two months following the start of their term of office; provided, however, that no officer shall be deemed to be in office unless bonded where required by the Constitution and laws of the International Union.

Section R. 1. Not more than 15 days subsequent to the election, all challenges to the election shall be submitted to the general chairperson of the election. The Local Union general chairperson and election judges shall consider any such challenge and take such remedial action as they deem appropriate. Not more than 15 days subsequent to such decision, an aggrieved party may appeal such decision to the International President. Where the general chairperson of the election and the election judges fail to render a decision within 30 days of the Local Union election, the challenging party may appeal to the International President not later than 15 days thereafter.

2. The decision of the International President may be appealed to the International Executive Board not later than 30 days after such decision has been rendered.

3. Any challenge or appeal which could have been presented in compliance with these filing requirements, but was not, shall be deemed to have been waived.

Section S. 1. Where vacancies occur in any of the elected offices of a Local Union, the Local Union Executive Board, not later than 90 days after the vacancy occurs, shall fill the vacancy for the balance of the term. However, a vacancy in the office of President shall be filled no earlier than 30 days nor later than 90 days after the vacancy occurs.

2. In the case of a vacancy in the office of President, the Secretary-Treasurer of the Local Union shall perform the President's duties until a new President is elected by the Local Union Executive Board.

3. Any member filling a vacancy must satisfy the eligibility requirements of Article XII, Section D of these bylaws as applicable to the filling of vacancies.

Section T.  If any officer shall fail to attend three successive Local Union Executive Board meetings, without satisfactory excuse, the office shall be declared vacant by the Local Union Executive Board.


ARTICLE  X I I I

Duties and Obligations


Section A.  Every member agrees, in consideration of the rights and benefits conferred pursuant to the terms of these bylaws and the International Constitution, to comply with the duties and obligations stated in this Article and that termination of membership does not terminate liability for violations of such duties and obligations occurring during the period of membership.


Section B.  No member may be disciplined, except for violating the member's duties and obligations by committing any one or more of the following offenses:

1.  Violating any provisions of the Constitution or laws of the International Union or the approved bylaws or established rules of this Local Union;

2.  Advocating or attempting to bring about the withdrawal from the International Union of any Local Union or any member or group of members, and/or working in the interest of or accepting membership in any organization dual to the International Union;

3.  Deliberately and improperly interfering with any officer or representative of the International Union or any Local Union in the discharge of the officer's or representative's duties, or with the performance of the legal or contractual rights or obligations of the International Union or any of its Local Unions;

4.  Deliberately engaging in conduct in violation of the responsibility of members toward the Union as an institution;

5.   Crossing or working behind a legal picket line established by a United Food and Commercial Workers Local Union and sanctioned by the United Food and Commercial Workers International Union, or crossing or working behind a legal picket line established by a union other than the United Food and Commercial Workers International Union, provided such picket line of another union has the sanction of the Executive Board

- 25 -

of the United Food and Commercial Workers Local Union in whose jurisdiction it is established and, provided further, the United Food and Commercial Workers Local Union has notified its membership of such sanction of the other union's picket line.

6. In the case of any officer or representative of the International Union or of any Local Union, failing to faithfully perform the duties of their office or position, accepting dual compensation or expenses for the performance of duties related to their office or position, or embezzling, misappropriating, fraudulently receiving, wrongfully handling, or failing to account for the funds of the International, a Local Union, or any employee benefit fund.

Section C. Any member convicted of any one or more of the above offenses may be disciplined.

Section D. 1. Members shall resolve any dispute relating to the interpretation or application of the Local Union bylaws or rules or the Constitution or laws of the International Union exclusively through the remedial provisions provided therein. Resolution of any such dispute pursuant to such procedure shall be final and binding.

2. No member shall institute an action outside the Union against the International Union, Local Union, or any of their officers or representatives without first exhausting all remedies provided by the Local Union bylaws and rules and the Constitution and laws of the International Union.

ARTICLE   X I V

Disciplinary Proceedings

Section A. 1. A member shall be charged and tried in the Local Union if the person is a member of the Local Union at the time the charges are filed, except as otherwise provided in the International Constitution. Any person no longer a member may be charged and tried in the Local Union if the actions were committed while such person was a member of the Local Union.

2. Charges may be filed by an active member of the Local Union, or by a representative of the International Union.

3.  More than one charging party may join in the same set of charges, but the charges must name one of the charging parties as the representative of the others to be responsible for filing papers, receiving papers, and trying the case.  Where the charges fail to designate such representative, then the first charging member named in the charge shall be considered the representative of the others.

4.  Charges and other formal documents referred to in this Article sent by mail or submitted in another generally accepted manner other than in person shall be considered filed as of the date of the postmark or other indicia of transmission.  Charges and other formal documents delivered in person shall be considered filed as of the date of delivery.

5.  Charges shall be filed with the Local Union Executive Board within six months after the basis for the alleged violation has been discovered or should have been discovered.

6.  The charges shall specify the Article or Articles of the International Constitution or laws or the Local Union bylaws or rules allegedly violated and shall also set forth a short and plain factual statement of the act or acts considered to be in violation, including available information as to dates and places, in such a manner and sufficient detail as to fairly inform the accused of the specific acts which are alleged to constitute violations of the International Constitution or laws or the Local Union bylaws or rules.  Either upon motion by the charged parties or the Local Union Executive Board, charges failing to comply with this requirement shall be dismissed by the Local Union Executive Board, without prejudice to the refiling of charges within ten days which do comply with this requirement.  Dismissal of refiled charges shall constitute final action, subject to appeal as provided in Article 26(C) of the International Constitution.

7.  A true and correct copy of the charges and a copy of the International Constitution and Local Union bylaws shall, without delay, be served upon the accused party by the Local Union Executive Board by certified mail, return receipt requested, in person, or in accordance with procedures established by the International President.  The accused shall be afforded a reasonable opportunity to reply in writing to the charges, if the accused so desires.

8.  On motion of the accused before trial, or upon its own motion, the Local Union Executive Board may dismiss without trial any charges which, after assuming the charging party's facts are true, fail to allege actions which would constitute violations of

the International Constitution or laws or the Local Union bylaws or rules. Such dismissal shall be subject to appeal as provided in Article 26(C) of the International Constitution.

9. On motion of the accused before trial, or upon its own motion, the Local Union Executive Board may dismiss without trial any charges it finds are of such a nature that the interest of the Local Union does not justify the expenditure of time, money, and other resources necessary for the conduct of a disciplinary proceeding or where it finds that the undisputed material facts warrant dismissal of the charges. Such dismissal shall be subject to appeal as provided in Article 26(C) of the International Constitution.

10. Except for charges processed pursuant to Article 26(A)16 of the International Constitution, the trial on the charges shall be held as soon as practicable, but no later than 60 days following the date on which the charges are filed. However, upon request of either party, for good cause shown, an adjournment to a later date, not to exceed 100 days from the date the charges are filed, may be granted by the Local Union Executive Board. The Local Union Executive Board shall have the power, upon its own motion, to postpone any scheduled trial, provided such postponement shall not be beyond 100 days from the date charges are filed. Any such Executive Board decision to postpone the trial beyond the scheduled date or to set a trial for 60 days beyond the date of the charges being filed must be served upon all parties immediately. Every effort shall be made to schedule the trial so that it does not conflict with the working schedule of the parties, and at least 14 days' notice of the trial date shall be given in writing. The written notice to the charging and accused parties shall state that the parties have the right to have other members of the Local Union attend the trial, subject to reasonable accommodations of space. Any request for the postponement of the trial date must be received by the Executive Board at least three days before the scheduled trial date, unless a satisfactory showing is made of inability to comply with this requirement. The request must include good cause for such a postponement. In the event the accused fails to appear for a duly noticed trial, it shall nevertheless proceed.

11. The trial shall take place before the Local Union Executive Board, which for purposes of this Article shall mean those members of the Local Union Executive Board serving for purposes of trial. The President of the Local Union shall be the chairperson of the Executive Board for purposes of the trial proceeding. No charging party or accused member or a witness may serve on the Executive Board in the conduct of disciplinary proceedings. Where the chairperson is unable to serve for any reason, the remaining

- 28 -

members of the Local Union Executive Board shall designate one of their number to act as chairperson.  On motion filed with the Local Union Executive Board, prior to trial, either party may ask that a particular Board member be excused from participating in the proceeding if the party thinks that they cannot receive a fair trial before that Board member.  The Executive Board shall give precedence to consideration of such motion. For purposes of trial, a quorum of the Executive Board shall consist of three of its members and a quorum is necessary throughout the trial.  If an Executive Board member is absent during any portion of the trial, the Executive Board member may not participate further in the proceeding.  All questions of order, procedure, and admissibility of evidence shall be decided by the chairperson, subject to being overruled by a majority vote of the Board upon motion by a member of the Board.

12.  The accused and charging parties shall have a fair and impartial trial and shall have the right to present witnesses and other evidence in their behalf and to examine any witnesses.  The accused shall have the right to refuse to testify.  A charging or accused member may be assisted, advised, or represented by another member of the Local Union.  At the commencement of the trial, the chairperson of the Board shall advise the parties of their rights as set forth above in this Article, and shall read the charges to the accused.  The accused shall then plead guilty or not guilty to each charge.  In the event the accused elects not to appear or to respond, the accused shall be deemed to have entered a plea of not guilty and the trial shall proceed.  Throughout the trial, there shall be a presumption of innocence in favor of the accused.  The charging party shall present first and shall have the burden of proving the allegations contained in the charges. At the close of the charging party's case, either the accused or a member of the Executive Board shall have the right to move to dismiss the charges because the charging party has failed to present record evidence that establishes a violation of the International Constitution or laws or the Local Union bylaws or rules.

13.  A detailed written record of the trial proceedings shall be made and preserved and shall constitute the trial record, provided that no fine, nor loss of membership rights or Union office, shall be imposed unless a stenographic record and transcript are kept of the trial proceedings.

14.   Upon the completion of the trial proceedings, the Executive Board shall, within 45 days, determine the innocence or guilt of the accused, based solely on the record evidence.  The parties shall be advised of the decision in person,  by certified mail, or in accordance with procedures established by the International President.  A verdict of guilty shall require a two-thirds majority vote of the Executive Board.  If the decision is that of guilty, the Executive Board shall affix appropriate penalties, provided that such discipline shall be reasonable and fair, and, provided further, that no discipline shall be imposed without stating with specificity what the discipline is being imposed for.  If a trial is conducted on charges filed against a Union officer or representative, the procedures of this Article and, in addition, Article 26(A)14 of the International Constitution shall apply.

15.   The decision of the Executive Board shall become immediately operative unless stayed by the Local Union Executive Board or unless a stay is directed by the International President following an appeal as set forth in Article 26(C) of the International Constitution.

Section B.   1.   Appeals may be filed with the International President, and, subsequently, the International Executive Board, as set forth in Article 26(C) of the International Constitution.  A notice of appeal to the International President shall be filed no later than 15 days from the date the adverse ruling is delivered to the appealing party; however, the International President, for good cause shown, may extend the time within which a notice of appeal may be filed.  Such notice of appeal must briefly state why the party believes the Local Union Executive Board's decision should be reversed.

2.   Either party may appeal from the decision of the International President to the International Executive Board by filing a notice of appeal with the International Secretary-Treasurer within 30 days of the date the International President's decision has been sent.   Such notice of appeal must briefly state why the party believes the International President's decision should be reversed, and it may also contain a more complete statement setting out wherein said decision is erroneous.

ARTICLE   X V

Appeals of Members from Local Union's

Disposition of Grievances

Section A.  The Local Union shall have the exclusive authority to interpret and enforce the collective bargaining contract.  In accordance therewith, the Local Union shall have the exclusive authority to submit grievances to arbitration, withdraw grievances, settle and compromise grievances, and decline to invoke the grievance procedures of the collective bargaining contract.  The President, or the President's designated representative, shall make the decision as to whether a grievance is to be submitted to arbitration.

Section B.  Any member who disagrees with the disposition of their grievance by the Local Union President, or the President's designated representative, shall have the right to appeal the decision to the Local Union Executive Board.  The appeal shall be submitted, in writing, to the office of the Local Union and shall contain a simple statement of the nature of the grievance and any other matter the member wishes to bring to the attention of the Executive Board.

Section C.  The member shall submit the appeal within 15 days from the date the member is first advised of the Local Union's disposition of the member's grievance.

Section D.  The Local Union Executive Board shall consider the appeal at the next regular meeting of the Executive Board.  The Executive Board shall treat the appeal as either a request for a review or a request for reconsideration.

Section E.  The Executive Board shall advise the member of its decision within 30 days from the date of its meeting.  There shall be no further appeal from the decision of the Executive Board.

Section F.  Any member who does not appeal the Local Union's disposition of the member's grievance as provided above shall be deemed to have acquiesced in said disposition.

## ARTICLE  X V I
### Agreements, Bylaws and Constitution

Every member, upon request, shall be given a copy of the collective bargaining contract executed between the Local Union and the member's employer, a copy of these bylaws, and/or a copy of the International Constitution.

## ARTICLE  X V I I
### Amendments to Bylaws

Section A.  Proposals to adopt or amend these bylaws shall (1) be signed and submitted to the Executive Board by 20 percent of the membership, provided that, if the Local Union's membership is greater than 2,000, the signatures of 10 percent of the membership or 400 members, whichever is greater, shall be required, or (2) be proposed by the Executive Board.  The Executive Board shall make a recommendation on amendments submitted to it not later than 90 days after they are submitted.  Notice of such amendment, containing the Executive Board's recommendation thereon and the date, time and location of the membership meeting(s) at which the amendment will be voted upon shall be mailed to each member at least 15 days prior to such meeting(s). The text of the amendment and the Executive Board's recommendation shall be read or distributed to the membership at such meeting prior to voting.

Section B.  Amendments shall be adopted by a two-thirds majority vote of active members voting.  At the discretion of the Local Union Executive Board, the vote may be conducted by mail referendum in accordance with the applicable provisions of these bylaws, provided that the Local Union shall mail members their ballots and the proposed amendment at least 15 days prior to the receipt deadline for return of the ballots and that the Local Union shall hold an informational meeting for discussion of the proposed amendment.

## ARTICLE  XVIII

### Approval, Application and Separability of Bylaws

Section A.  These bylaws and any subsequent amendments thereto which are properly adopted by the membership or are required by the International Constitution must be filed with and approved by the International President to be effective.

Section B.  The Constitution of the International Union, and the laws of the International Union which shall be made in pursuance thereof, shall be the supreme law of the International Union.  The International Union, subordinate bodies, and all members shall be bound thereby; nothing in the bylaws or rules of any subordinate body to the contrary shall be an exception.  Nothing in these bylaws shall be interpreted or applied in any manner which is inconsistent with the Constitution or laws of the International Union.

Section C. If any provision of these bylaws shall be held invalid, the remainder of these bylaws shall not be affected.

A P P R O V E D

By _Anthony M. Perrone_

International President, U.F.C.W.I.U.

This 20th day of September, 2023.