1  Ambika Kumar, WSBA #38237
Sara A. Fairchild, WSBA #54419
2  Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
3  Seattle, WA  98104-1610
Telephone: (206) 622-3150
4  Facsimile: (206) 757-7700

5  John A. DiLorenzo (*pro hac vice*)
Davis Wright Tremaine LLP
6  560 SW 10th Ave, Suite 700
Portland, OR 97205
7  Telephone: (503) 241-2300
Fax: (503) 778-5299
8

9

10              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF WASHINGTON
11                        AT SPOKANE

12  FAYE IRENE GUENTHER,                  No. 2:22-cv-00272-TOR
an individual,
13                                         **DEFENDANTS'**
                    Plaintiff,             **STATEMENT OF**
14                                         **DISPUTED MATERIAL**
                                           **FACTS IN RESPONSE TO**
15      v.                                 **PLAINTIFF'S MOTION**
                                           **FOR PARTIAL SUMMARY**
16  JOSEPH H. EMMONS, individually,        **JUDGMENT**
AND OSPREY FIELD CONSULTING
17  LLC, a limited liability company,
                                           NOTE ON MOTION
18                  Defendants.            CALENDAR:  December 5,
                                           2024 at 9:00 a.m.
19

20

21

22

23  DEFS' STATEMENT OF DISPUTED MATERIAL FACTS
IN RESPONSE TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT                    Davis Wright Tremaine LLP
Case No. 2:22-cv-00272-TOR                 LAW OFFICES
                                           920 Fifth Avenue, Suite 3300
                                           Seattle, WA  98104-1610
                                           206.622.3150 main · 206.757.7700 fax

Defendants Joseph H. Emmons and Osprey Field Consulting (collectively "Emmons") submit this statement responding to Plaintiff Faye Irene Guenther's Statement of Material Facts Not in Dispute.  *See* ECF No. 105.

1.      Faye Guenther ("Guenther") grew up in a rural Oregon Community. See Declaration of Faye I. Guenther (Guenther Decl.), ¶ 3.

**RESPONSE**:  This purported fact has no relevance to the merits of Guenther's claims.

2.      Guenther was sexually abused as a child and again as a teenager. See Guenther Decl. ¶ 7.

**RESPONSE**:  These purported facts have no relevance to the merits of Guenther's claims.

3.      Guenther witnessed a gang rape in college and testified against the perpetrator. The perpetrator was convicted. See Guenther Decl. ¶ 7.

**RESPONSE**:  These purported facts have no relevance to the merits of Guenther's claims.

4.      These and other experiences led Guenther to become a life-long advocate against sexual abuse and harassment. Throughout Guenther's time at UFCW Local 21, she actively opposed sexual harassment within the union whenever she became aware of it. Her efforts led to at least four people being removed from

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 1

the union. *See* Guenther Decl. ¶¶ 5-8, 18; Declaration of Joseph (Joe) Mizrahi (Mizrahi Decl.), ¶¶ 38-39.

**RESPONSE**:  **DISPUTED** that Guenther is "a life-long advocate against sexual abuse and harassment" and that "she actively opposed sexual harassment within the union." Her conduct in response to the complaints about Eric Renner's sexual harassment illustrate that this statement is false.

By at least December 2, 2021, Guenther "was notified that there had been an internal dispute" at UFCW 1439 involving Renner that "had been resolved amongst all parties with nondisclosure and … confidentiality agreements." ECF No. 113-1 at 34, 38-39 (Guenther I Tr. 71:13–18, 93:12–94:20); Declaration of John A. DiLorenzo, Jr., in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment ("DiLorenzo Decl.") Ex. A (Guenther I Tr.) at 71:13–75:1. She also knew that as a result, Renner was prohibited from "directly supervis[ing] any employees." ECF No. 113-1 at 38-39, 41, 55-56 (Guenther I Tr. 93:12–94:20, 99:5–14, 167:21–168:9); ECF No. 113 ¶ 14 & ECF No. 113-13 at 2; ECF No. 113-2 at 11-12 (Guenther II Tr. 49:20–50:4); ECF No. 113-17 at 3–4. Laurel Fish testified that Guenther likely had seen the complaint letter that Fish and six other UFCW 1439 staff members wrote detailing Renner's abusive conduct, given how broadly the letter was circulated and Guenther's role as president-to-be of the merged union. DiLorenzo Decl. Ex. E (Fish Tr.) at 90:18–91:10. And even if Guenther did not see it, Fish directly told Guenther about Renner's abusive conduct in December 2021. *Id*. at 87:7–88:16. Despite all of this information, Guenther chose not to investigate further and continued to push the merger forward,

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   allowing Renner to stay on with the union despite his agreement to resign.  ECF

2   No. 113-1 at 25-27, 36-37 (Guenther I Tr. 60:24–62:12, 83:6–84:6); ECF No. 113-

3   17 at 3–4.  "What was important to [her]" was "that people stayed focused on the

4   work"—not that union staff felt comfortable and protected from sexual harassment

5   in their workplace.  DiLorenzo Decl. Ex. A (Guenther I Tr.) at 72:20–74:18.

6        On December 14, 2021, Guenther led a discussion with the UFCW 21

7   Executive Board, in which she advocated in favor of the merger and informed the

8   Board that Renner would continue working for the merged union.  ECF No. 113-1

9   at 26-27, 36-37 (Guenther I Tr. 61:19–62:12, 83:6–84:25); ECF No. 113-17 at 3–4.

10  But she did not tell the UFCW 21 Executive Board about the claims against Renner,

11  the nondisclosure agreements, Renner's agreement to resign, or that Renner was not

12  allowed to supervise people.  ECF No. 113-1 at 25-27, 36-37 (Guenther I Tr. 60:24–

13  62:12, 83:6–84:6); ECF No. 113-17 at 3–4.

14       On December 15 or 16, 2021, Guenther read the Flyer, which plainly states

15  Renner had faced "sexual harassment charges."  ECF No. 113-1 at 40 (Guenther I

16  Tr. 97:8–16).  Yet, Guenther still did not look into these allegations.  DiLorenzo

17  Decl. Ex. A (Guenther I Tr.) at 98:1–99:14.

18       Guenther also admits that she later became aware of "inappropriate" text

19  messages between Renner and a UFCW 1439 staff member, Armando Rivera,

20  involving "sexual harassment."  DiLorenzo Decl. Ex. A (Guenther I Tr.) at 92:1–

21  93:11.  Again, she declined to speak with Renner or take any action with respect to

22  Renner's involvement.  *Id.* at 93:7–17.

23

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 3

5.      One example of her advocacy against sexual harassment occurred in September 2019, when she investigated Joe Earleywine—Local 21's Organizing Director at the time—upon receiving reports of harassment. This investigation caused Mr. Earleywine to leave Local 21. He nonetheless secured a position with the United Food and Commercial Workers (UFCW) International Union (IU or International), where he continued to engage with Local 21 staff, making several women uncomfortable. Guenther then raised the issue with Kate Meckler, the IU Regional Director for Region 7, which covers the Pacific Northwest. Ms. Meckler did not investigate or respond to Guenther's reports. Guenther then escalated the issue to IU President Marc Perrone, resulting in Mr. Earleywine retiring early from the IU. See Guenther Decl. ¶¶ 19-22 and Exhibit 1 thereto; Mizrahi Decl. ¶¶ 38-39.

**RESPONSE**:   These purported facts have no relevance to the merits of Guenther's claims.  To the extent these purported facts are accurate (and the record contains no evidence other than Guenther's self-serving declaration), the evidence shows that Guenther opposes sexual harassment only selectively.  *See* Paragraph 4.

6.      In 2019, Guenther became President of UFCW Local 21. See Guenther Decl. ¶ 16.

**RESPONSE**:  **Undisputed**.

7.      In 2019, Local 21 represented approximately 44,000 members, primarily in the grocery, healthcare, and cannabis industries in Seattle and greater Washington. See Guenther Decl. ¶¶ 17, 20.

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

**RESPONSE**:  **Undisputed**.

3

4

8.     In 2019, Local 21 was the largest UFCW local union in the United

5

States. Local 3000—Local 21's successor, formed from a merger with Local 1439—

6

is currently the largest UFCW local union in the United States. See Guenther Decl.

7

¶¶ 17, 86.

8

**RESPONSE**:  **Undisputed**.

9

10

9.     Throughout her tenure as Local 21 (and now Local 3000) President,

11

Local 21 has achieved significant accomplishments, including increases in the

12

minimum wage, sick leave, saving a failing pension, building new divisions within

13

the union to better serve members, and renegotiating hundreds of contracts. See

14

Guenther Decl. ¶ 15.

15

**RESPONSE**:  **Undisputed**.

16

17

10.     Local 367 is a UFCW affiliate in Tacoma and surrounding counties in

18

western and southwestern Washington. See Guenther Decl. ¶¶ 20, 28.

19

**RESPONSE**:  **Undisputed**.

20

21

11.     UFCW local unions typically enjoy significant autonomy but may be

22

put under trusteeship, in which case the International Union exercises significant

23

control over the trusteed local, including by appointing a trustee who takes over

control from the local's elected officers. See Guenther Decl. ¶ 33.

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

**RESPONSE**:  These purported facts have no relevance to Guenther's claims.

3

4

12.     UFCW put Local 367 under trusteeship in or around January 2019. See Guenther Decl. ¶ 32.

5

6

**RESPONSE**:   This purported fact has no relevance to the merits of Guenther's claims.

7

8

9

13.     During that trusteeship, the International hired Angel Gonzalez Irayarry to work at Local 367 in a leadership position. See Guenther Decl. ¶ 34.

10

**RESPONSE**:  **Undisputed**.

11

12

13

14.     Local 367's trusteeship ended at the end of June 2020. See Guenther Decl. ¶ 35.

14

**RESPONSE**:  **Undisputed**.

15

16

17

15.     Gonzalez became President of Local 367 in or around July 2020. See Guenther Decl. ¶ 35.

18

**RESPONSE**:  **Undisputed**.

19

20

21

16.     Local 555 is a UFCW affiliate in Oregon with approximately 30,000 members. See Guenther Decl. ¶¶ 20, 58.

22

**RESPONSE**:  **Undisputed**.

23

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 6

17.    Dan Clay is Local 555's President. He has held that position since August 2008. See Guenther Decl. ¶ 58.

**RESPONSE**:  **Undisputed** that Dan Clay is Local 555's President and that he held that position during the relevant time period.  Clay in fact became Local 555 President in January 2009, but that discrepancy is not relevant to Guenther's claims.

18.    Clay is also an International Vice President (IVP) of UFCW and serves on its International Executive Board (IEB)—the International Union's governing body. He had held that position for many years. See Guenther Decl. ¶ 60.

**RESPONSE**:  **Undisputed**.

19.    Guenther and Clay have known each other since 2008. For many years, they were friends and collaborators within the labor movement. See Guenther Decl. ¶¶ 59, 78.

**RESPONSE**:   These purported facts have no relevance to the merits of Guenther's claims against Emmons.

20.    In 2019, Guenther suggested that all local unions in UFCW Regions 7 and 8 should bargain together against Kroger and Albertsons. Clay opposed that approach, apparently worried that he would no longer have control over his members. See Guenther Decl. ¶ 64.

**RESPONSE**:   These purported facts have no relevance to the merits of Guenther's claims against Emmons.

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

21.     On July 19, 2021, Kate Meckler emailed Clay, Gonzalez, Eric Renner (the then-President of Local 1439 in Eastern Washington, with approximately 7,800 members at the time), and other local union presidents within Regions 7 and 8 regarding an upcoming meeting to discuss coordination for the 2021-2022 negotiations in the retail industry. Ms. Meckler invited suggestions for the agenda. See Guenther Decl. ¶¶ 61, 86; Guenther Decl. Ex. 8 (UFCW-EMMONS 000781-784).

**RESPONSE**:  These purported facts have no relevance to the merits of Guenther's claims against Emmons.

22.     Guenther responded on July 20, 2021, with her suggestions. See Guenther Decl. ¶ 62.

**RESPONSE**:  This purported fact has no relevance to the merits of Guenther's claims against Emmons.

23.     Clay replied to that email, omitting Guenther and including Esai Alday (Clay's executive assistant), Gonzalez, and Meckler, saying "Shit We'd better plan for a week..." See Guenther Decl. ¶ 63; Guenther Decl. Ex. 8 (UFCW-EMMONS 000781-784).

**RESPONSE**:  These purported facts have no relevance to the merits of Guenther's claims against Emmons.

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

24.     On July 21, 2021, Clay responded to Meckler's July 19 email, including all original recipients, explaining that Locals 555 and 368A had agreed to a merger and Local 555 had been in discussions with Local 367 over coordinated bargaining. See Guenther Decl. ¶ 65; Guenther Decl. Ex. 9 (UFCW-EMMONS 000785-786).

**RESPONSE**:  These purported facts have no relevance to the merits of Guenther's claims against Emmons.

25.     At the time, Local 368A was headquartered in Boise, Idaho, and represented approximately 1,100 members in Idaho, eastern Oregon, and western Wyoming. As a result of the merger, Local 555 represented approximately 25,000 members. See Guenther Decl. ¶ 66.

**RESPONSE**:  These purported facts have no relevance to the merits of Guenther's claims against Emmons.

26.     Guenther opposed coordinated bargaining between Locals 555 and 367, fearing that doing so would undercut labor standards Local 21 had achieved in Washington for its members. See Guenther Decl. ¶¶ 67-70; Guenther Decl. Ex. 10 (UFCW-EMMONS 000801-804).

**RESPONSE**:  These purported facts have no relevance to the merits of Guenther's claims against Emmons.

27.     Clay sent an email on July 28, 2021, describing Guenther's concerns as "delightfully petty." He elaborated that reading her concerns "made [his] night." See

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  Guenther Decl. ¶ 71.

2      **RESPONSE**: These purported facts have no relevance to the merits of

3  Guenther's claims against Emmons.

4

5      28.    That day, July 28, 2021, Clay filed a formal complaint with IU

6  President Marc Perrone, alleging that Local 21 interfered with Local 555's and 367's

7  bargaining. His email copied Mike Hines—then Secretary Treasurer of Local 367—

8  not its President, Gonzalez. See Guenther Decl. ¶¶ 72-74; Guenther Decl. Ex. 11

9  (UFW-EMMONS-000004-05).

10     **RESPONSE**: These purported facts have no relevance to the merits of

11  Guenther's claims against Emmons.

12

13     29.    Under the UFCW Constitution, a Local President, not its Secretary

14  Treasurer, is the chief executive officer of the Local Union. Ordinarily, a Local

15  President, not its Secretary Treasurer, would be the appropriate official to confirm

16  whether an official complaint for violating the IU Constitution was, in fact, on behalf

17  of the Local Union. See Guenther Decl. ¶ 75.

18     **RESPONSE**: These purported facts have no relevance to the merits of

19  Guenther's claims against Emmons.

20

21     30.    The oddity of Clay copying Hines, not Gonzalez, on his July 28, 2021,

22  suggests that as of July 28, 2021, Clay knew (or strongly suspected) that Gonzalez

23  had already resigned as President of Local 367 and, for that reason, Hines was

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 10

1  authorized to speak on behalf of Local 367. See Guenther Decl. ¶ 76.

2      **RESPONSE**:   These purported facts have no relevance to the merits of
3  Guenther's claims against Emmons.

4

5      31.    Mike Hines then joined Clay's complaint. See Guenther Decl. ¶¶ 74-
6  76; Dalmat Decl. Ex. 1 (UFCW-EMMONS 000987-990).

7      **RESPONSE**:   This purported fact has no relevance to the merits of
8  Guenther's claims against Emmons.

9

10     32.    On September 29, 2021, Guenther sent Clay an email, titled "Setting up
11  a Conversation," in which she tried to work with Clay to mediate their dispute. See
12  Guenther Decl. ¶ 78.

13     **RESPONSE**:   This purported fact has no relevance to the merits of
14  Guenther's claims against Emmons.

15

16     33.    Clay never responded to Guenther's September 29, 2021, offer of
17  mediation. See Guenther Decl. ¶ 79.

18     **RESPONSE**:   This purported fact has no relevance to the merits of
19  Guenther's claims against Emmons.

20

21     34.    On October 19, 2021, IU President Perrone sent Guenther a letter
22  directing Local 21 to cease and desist interfering with Local 555's bargaining
23  relationships. See Guenther Decl. ¶ 80; Guenther Decl. Ex. 12 (UFCW-EMMONS

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

000006).

**RESPONSE**:  This purported fact has no relevance to the merits of Guenther's claims against Emmons.

35.    Guenther sought to appeal IU President Perrone's October 19, 2021, cease and desist directive, or otherwise to have him rescind it. Initially, those efforts were unsuccessful. See Guenther Decl. ¶¶ 81-84; Guenther Decl. Ex. 13 (UFCW-EMMONS 000051-53); Guenther Decl. Ex. 14 (RFP No. 15 Resp - 015153-015154).

**RESPONSE**:  This purported fact has no relevance to the merits of Guenther's claims against Emmons.

36.    On September 30, 2021, Eric Renner called Guenther to explore the possibility of Local 1439 and 21 merging. See Guenther Decl. ¶ 85.

**RESPONSE**:  **Undisputed**.

37.    Even before becoming Local 21 President, Guenther thought there may be value in a merger between Locals 21 and 1439. But she had not done anything to pursue such a merger before receiving Renner's call on September 30, 2021. That call struck Guenther as a bit out of the blue. See Guenther Decl. ¶ 87.

**RESPONSE**:  **Undisputed** based on the record.

38.    During the September 30 call, Renner told Guenther he felt

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 12

1   overwhelmed with his responsibilities as local president because he had also been

2   taking care of his ailing mother. He did not say anything during the call about facing

3   allegations from his staff of sexual harassment or other misconduct. See Guenther

4   Decl. ¶ 88.

5   **RESPONSE**:  **DISPUTED** to the extent the statement implies that Renner

6   was interested in a merger because "he felt overwhelmed with his responsibilities as

7   local president."  Before September 2021, Renner was strongly opposed to a merger

8   between UFCW 1439 and UFCW 21.  *See* DiLorenzo Decl. Ex. F (Jackson Tr.) at

9   91:8–95:10; *id.* Ex. G (Garcia Tr.) at 81:10–18.  Renner first expressed interest in

10  merging only after Streepy began investigating complaints from UFCW 1439 staff

11  members regarding Renner's sexual harassment, and likely after Renner understood

12  that he would need to resign.  *See infra* ¶¶ 110–114.

13

14  39.    Guenther did not say much during that call. See Guenther Decl. ¶ 89.

15  **RESPONSE**:  **Undisputed**.

16

17  40.    In the next few weeks after September 30, 2021, Guenther called

18  Renner to let him know she was open to exploring a Local 21/1439 merger. Then,

19  or shortly thereafter, they set up a meeting for October 27, 2021. See Guenther Decl.

20  ¶ 90.

21  **RESPONSE**:  **Undisputed** that Guenther called Renner to let him know that

22  she was interested in a merger between Local 21 and Local 1439, and that Guenther

23  set up a meeting with Renner for October 27, 2021.  **DISPUTED** to the extent this

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

statement implies that this call occurred later than September 30, 2021, or that there were no other communications regarding the merger between September 30 and October 27, 2021.  ECF No. 113 ¶ 13 & No. 113-12 at 30–33; ECF No. 113-2 at 3-4 (Guenther II Tr. 30:16–31:7).

41.    To prepare for that meeting, on October 21, 2021, Guenther sent Renner a sample merger agreement Local 21 had used when it previously explored a merger with Local 367. (That merger with Local 367 did not come to pass.) See Guenther Decl. ¶ 91.

**RESPONSE**:  **Undisputed**.

42.    On October 28, 2021, Guenther and Renner hand delivered to Meckler a letter addressed to IU President Perrone requesting formal approval by the International Executive Committee for Locals 21 and 1439 to engage in formal merger discussions. Meckler had previously allied with Clay and others against Guenther on various matters. Record: Guenther Decl. ¶¶ 20-22, 27, 30-31, 63-65, 71, 92; Guenther Decl. Ex. 15 [Guenther Dep. Ex. 8]; Dalmat Decl. Ex. 2 (UFCW-EMMONS 000899-901).

**RESPONSE**:    **Undisputed** that on October 28, 2021, Guenther hand delivered to Kate Meckler a letter addressed to UFCW International President Marc Perrone requesting approval for Locals 21 and 1439 to engage in formal merger discussions, and that Guenther believed Meckler may oppose the merger.  The remaining purported facts in this paragraph are irrelevant to Guenther's claims.

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2   43.   Under the UFCW Constitution, the International Executive Committee

3   must approve formal merger discussions before they begin. See Guenther Decl. ¶

4   92.

5   **RESPONSE**:  **Undisputed**.

6

7   44.   The October 28, 2021, letter explained Guenther's and Renner's view

8   that the merger was in the best interests of the membership. See Guenther Decl. ¶¶

9   92-93; Guenther Decl. Ex. 15 (Guenther Dep. Ex. 8).

10   **RESPONSE**:  **Undisputed** that the letter provided reasons the merger was

11   supposedly in the best interests of the Local 21 and Local 1439 membership.

12   **DISPUTED** that Renner believed the merger was in the best interests of Local

13   1439's membership.  Before September 2021, Renner had repeatedly stated to his

14   staff that he was opposed to a merger with UFCW 21.  *See* DiLorenzo Decl. Ex. F

15   (Jackson Tr.) at 91:8–95:10; *id.* Ex. G (Garcia Tr.) at 81:10–18.

16

17   45.   Guenther later called President Perrone to request a face-to-face

18   meeting to discuss the merger. That meeting occurred, with only President Perrone,

19   his executive assistant Lori Werner, and Guenther in attendance. See Guenther Decl.

20   ¶ 94.

21   **RESPONSE**:  **Undisputed**.

22

23   46.   At the meeting, President Perrone pledged his verbal support for the

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 15

merger. Meckler nonetheless held the formal approval until after a union-election vote at a Fred Meyer store in Richland, Washington, late in November. See Guenther Decl. ¶ 94.

**RESPONSE**:  **Undisputed**.

47.    Even though formally merger discussions had not yet been approved and were not public, on November 13, 2021, Clay emailed President Perrone detailing his opposition to a Local 21/1439 merger. See Dalmat Decl. Ex. 3 (UFCW-EMMONS 000923-924).

**RESPONSE**:   These purported facts have no relevance to the merits of Guenther's claims against Emmons.

48.    Clay's email alleged that the merger would cover up and protect sexual harassers and would "negatively impact Local 555 members," including by escalating jurisdictional tensions between the Oregon and Washington-based locals, giving the Washington-based local control over Local 555's retirement plans, and putting Guenther in a position to have more influence in the Pacific Northwest. See Dalmat Decl. Ex. 3 (UFCW-EMMONS 000923-924).

**RESPONSE**:   These purported facts have no relevance to the merits of Guenther's claims against Emmons.

49.    On December 2, 2021, President Perrone sent Guenther a letter officially granting permission for Locals 21 and 1439 to enter into formal merger

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

discussions. See Guenther Decl. ¶ 95; Guenther Decl. Ex. 16 (Guenther Dep. Ex. 9).

**RESPONSE**:  **Undisputed**.

50.    Over the next couple weeks, principally from December 9 through 13, 2021, Guenther and Renner began discussing the prospect of a merger with key staff at Local 21 and Local 1439. Those discussions were limited to approximately six high-level staff of the two local unions. No public outreach occurred at this time. See Guenther Decl. ¶ 96.

**RESPONSE**:    **Undisputed** that Guenther and Renner discussed their proposed merger with key staff at UFCW 21 and UFCW 1439 between December 9 and 13, 2021, and that the unions had not publicly announced the merger at that time.

51.    On December 14, 2021, Locals 21 and 1439 held meetings of their respective Boards. The Local 21 Board had approximately 36 rank-and-file members, and the Local 1439 Board had approximately 12 members. The Boards discussed the merger during executive sessions, which are reserved for sensitive, private discussions. Each Board recommended putting the merger question to a vote of their respective members. See Guenther Decl. ¶¶ 97-101; Guenther Decl. Ex. 17 (RFP Resp No 6—006001-03).

**RESPONSE**:    **Undisputed** that the UFCW 21 Executive Board and the UFCW 1439 Executive Board held meetings on December 14, 2021, in which they discussed the merger and voted to recommend the merger to members, who would then vote on it.  *See* ECF No. 113-17 at 2–3 (noting "discussion … lead [*sic*] by Faye

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 17

Guenther on recommendation of merging with UFCW Local 1439" that resulted in board "recommend[ing] its approval to the UFCW 21 membership").

52.    Under the terms of the UFCW Constitution, two local unions may merge only if each local union membership separately approves the merger by a majority of that local's members casting votes. See Guenther Decl. ¶ 102.

**RESPONSE**: **Undisputed**.

53.    By letter dated January 6, 2022, Local 21 provided notice to its membership of the upcoming merger vote. The notice identified the dates, times, and places of the meetings where members could vote and provided basic information about the process. It did not, however, ask any member to vote in favor of the merger. See Guenther Decl. ¶ 103; Guenther Decl. Ex. 18 (2022 Winter GMM Mailer).

**RESPONSE**:    **Undisputed** that on January 6, 2022, the notice at Guenther Decl. Ex. 18 was sent to UFCW 21 members.  **DISPUTED** to the extent the statement implies this was UFCW 21's first or only communication with members regarding the merger.  For example, UFCW 21 announced the merger on December 17, 2021, on its website and urged members to vote in favor of it. *See infra* ¶ 61 (citing ECF No. 10-19; https://ufcw3000.org/news/2021/12/17/building-our-power-as-the-largest-ufcw-local-in-the-nation (last accessed October 25, 2024)).[1]

---

[1] *See* Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment at 5 n.1 (requesting judicial notice of this document).

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2      54.    From January 6-20, 2022, Local 1439 held meetings during which

3  members voted on the merger. See Dalmat Decl. Ex. 4 (Guenther Tr. 172:1-174:12).

4      **RESPONSE**: **Undisputed**.

5

6      55.    Local 1439 did not, however, conduct a public campaign on the merger.

7  See Dalmat Decl. Ex. 5 (Jackson Tr. 135:21-137:17); Crosby Decl. ¶ 14.

8      **RESPONSE**:   **DISPUTED**.   UFCW 1439 announced the merger vote to

9  members on December 17, 2021.  ECF No. 113-24 at 2   At the meetings where

10 members voted on the merger, UFCW 1439—with Guenther's help—informed

11 members that UFCW 1439's Executive Board recommended the merger and thereby

12 encouraged members to vote in favor of it.  ECF No. 113-18 at 2.  Guenther and

13 Renner also communicated with key individuals to get their support for the merger.

14 ECF No. 113-12 at 18, 23, 26, 29–33.

15

16     56.    Only 196 out of approximately 7,800 members of Local 1439 voted on

17 the merger. See Dalmat Decl. Ex. 6 (UFCW-EMMONS 000162-167).

18     **RESPONSE**: **Undisputed**.

19

20     57.    Local 1439 members approved the merger by a vote of 191 to 5. See

21 Dalmat Decl. Ex. 6 (UFCW-EMMONS 000162-167).

22     **RESPONSE**: **Undisputed**.

23

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

58.    From February 9-12, 2022, Local 21 held meetings where members voted on the merger. See Guenther Decl. ¶¶ 104-105; Guenther Decl. Ex. 19 (UFCW-EMMONS 000152).

**RESPONSE**: **Undisputed**.

59.    Only 218 out of approximately 44,000 members of Local 21 voted on the merger. See Guenther Decl. ¶ 106; Guenther Decl. Ex. 19 (UFCW-EMMONS 000152).

**RESPONSE**: **Undisputed**.

60.    Local 21 members approved the merger by a vote of 207 to 11. Guenther Decl. ¶ 106; Guenther Decl. Ex. 19 (UFCW-EMMONS 000152); Guenther Decl. Ex. 20 (RFP Resp. No. 6—006604).

**RESPONSE**: **Undisputed**.

61.    Apart from the formal January 6, 2022, notice of the upcoming merger votes, neither Local 21 nor Guenther engaged in any public communications with Local 21 members on the merger in an effort to persuade them how to vote on the matter. That approach is consistent with Local 21's member-led model, in which the members—not their elected officials—are featured in union publications. See Guenther Decl. ¶¶ 107-112; Mizrahi Decl. ¶¶ 32-34; Crosby Decl. ¶ 14.

**RESPONSE**: **DISPUTED**. On December 17, 2021, UFCW 21 issued a press release on its website, titled "Building our power as the largest UFCW Local in the

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

nation," that encouraged members to vote in favor of the merger.  ECF No. 10-19; *see also* https://ufcw3000.org/news/2021/12/17/building-our-power-as-the-largest-ufcw-local-in-the-nation (last accessed October 25, 2024).[2]  The first line of the announcement states in bold: "**On Tuesday, December 14, our member-led executive board discussed and unanimously approved a Merger Agreement between our Union, UFCW 21 and the members of UFCW 1439!**"  *Id.*  The announcement further states that "both boards feel strongly that together we will increase our ability to continue the fight for improved wages, working conditions and benefits as well as improve our staffing, schedules and workplace safety."  *Id.*  And the announcement specifically told members they should approve the merger: "Members will have the opportunity to vote ***to approve this powerful merger*** during our upcoming in-person Winter General Membership Meetings in February 2022."  *Id.* (emphasis added).

62.    Merger votes among UFCW local unions typically are low-turnout affairs that do not generate public debate. See Crosby Decl. ¶¶ 7-14.

**RESPONSE**:    **DISPUTED** that UFCW local union Boards, staff, and members do not debate the merits of mergers.  ECF No. 113-17 at 3–4; ECF No. 106 at 87–88; ECF No. 113-12 at 18, 23, 26, 29–33; ECF No. 113-18 at 2.  **Undisputed** that in recent years, a low percentage of UFCW members have voted on mergers

---

[2] *See* Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment at 5 n.1 (requesting judicial notice of this document).

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

involving UFCW 21.  However, the cited testimony does not support the broad assertion that all "[m]erger votes among UFCW local unions typically are low-turnout affairs that do not generate public debate."

63.    At Clay's direction and consistent with Clay's November 13, 2021, email, on December 13, 2021, Mike Selvaggio—Local 555's contracted political director (who owns and operates Ridgelark Strategies)—mailed approximately 1,000 flyers to shop stewards at selected stores throughout Washington where UFCW members worked. A Local 367 member posted the flyer in a Facebook group closed to Local 367 members, garnering merely 26 comments and 17 reactions. See Dalmat Decl. Ex. 7 (Selvaggio Tr. 108:18-113:9, 133:20-134:12, 134:18-135:23); Dalmat Decl. Ex. 8 (Selvaggio Ex. 4); Dalmat Decl. Ex. 9 (Hines sub resp. 030); Dalmat Decl. Ex. 10 (RFP Resp. No. 2—002095); Dalmat Decl. Ex. 11 (RFP Resp No. 2—002099-2100); Dalmat Decl. Ex. 4 (Guenther Tr. 99:22-100:18).

**RESPONSE**:  **Undisputed.**

64.    Selvaggio created the flyer based on talking points he had discussed with Clay and Esai Alday, Clay's executive assistant. See Dalmat Decl. Ex. 7 (Selvaggio Tr. 113:10-114:3, 122:17-124:12, 144:3-145:1).

**RESPONSE**:  **Undisputed**.

65.    Selvaggio has since destroyed his notes of that discussion. See Dalmat Decl. Ex. 7 (Selvaggio Tr. 122:21-123:2).

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 22

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**RESPONSE**:  **Undisputed**.  This fact has no relevance to the merits of Guenther's claims against Emmons because Emmons had no knowledge of it.

66.    At Clay's direction, to avoid identifying the mailer's source, Selvaggio intentionally provided no return address and mailed the flyers from Spokane to further conceal their origins. See Dalmat Decl. Ex. 7 (Selvaggio Tr. 97:17-98:10, 113:10-114:3, 144:3-145:1).

**RESPONSE**:  **Undisputed**.

67.    A week after that mailing, on December 21, 2021, an email from a fake address, repeating the accusations from the flyer Clay and Selvaggio prepared, was sent to several UFCW International Vice Presidents (IVPs). See Dalmat Decl. Ex. 12 (UFCW-EMMONS 000925).

**RESPONSE**:  **Undisputed** that on December 21, 2021, an email was sent from  collinfarthingworth@gmail.com  to  several  UFCW  International  Vice Presidents.  **DISPUTED** that collinfarthingworth@gmail.com was a "fake" email address, as Guenther cites no evidence concerning who sent the email, much less its authenticity.

68.    Clay, who likely authored the email, forwarded it to Meckler. See Dalmat Decl. Ex. 12 (UFCW-EMMONS 000925).

**RESPONSE**:  **Undisputed** that Clay forwarded the email cited in Paragraph 67 to Meckler.  **DISPUTED** that Clay authored the email, as that is pure conjecture

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

and Guenther has no evidence to support it.

69.     When the mailing and email did not get the traction Clay and Selvaggio sought, they escalated their smear campaign—now dubbed Project Wagon Wheel— by leaving the flyers in-person at targeted stores in Spokane where UFCW members were likely to see them. See Dalmat Decl. Ex. 7 (Selvaggio Tr. 106:3-107:12).

**RESPONSE**: **Undisputed** that Selvaggio decided to leave copies of the Flyer at grocery stores in Spokane where UFCW members were likely to see them. **Undisputed** that the name "Project Wagon Wheel" was used to reference their effort to inform UFCW members in Spokane of the misconduct described in the Flyer. **DISPUTED** that distributing the Flyer was part of a "smear campaign," rather than an effort to inform UFCW members of the misconduct the Flyer described. DiLorenzo Decl. Ex. C (Selvaggio Tr.) at 99:11–100:5, 109:5–112:9. **DISPUTED** that Clay or Selvaggio had any connection to the email referenced in Paragraph 67, as Guenther has no evidence that Clay was involved, and Selvaggio testified he was not familiar with it. *Id.* at 11:15–22.

70.     Selvaggio called Joseph Emmons on or around January 5, 2022, to ask him to carry out that in-person distribution. See Dalmat Decl. Ex. 7 (Selvaggio Tr. 108:18-110:4).

**RESPONSE**:  **Undisputed** that Selvaggio called Emmons in early January and asked to hire him through Emmons's company Osprey Field Services LLC to distribute the Flyer by leaving copies at grocery stores in Spokane.  **DISPUTED** to

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the extent the statement implies Emmons had any knowledge of Clay's involvement or a so-called "smear campaign."  Selvaggio did not tell Emmons that Clay was behind the Flyer, and to Emmons's knowledge, he was distributing the Flyer to provide UFCW members truthful information.  Declaration of Joseph H. Emmons, concurrently filed, ("Emmons Decl.") ¶¶ 7-8.

71.    During that conversation, Selvaggio explained to Emmons that the purpose was to distribute flyers against a potential merger and "push information out to UFCW members regarding the allegations that were contained in the flyers." See Dalmat Decl. Ex. 7 (Selvaggio Tr. 109:23-110:4, 117:8-23); Dalmat Decl. Ex. 13 (Emmons Tr. 69:17-70:14).

**RESPONSE**:  **Undisputed** that Selvaggio explained to Emmons that he wanted Emmons to distribute the Flyer and the information in it, and that the Flyer advocated against the proposed merger.  **DISPUTED** that this discussion occurred in the first phone call regarding the Flyer, as Emmons does not recall whether this discussion occurred in his first or second conversation with Selvaggio about the project.  Emmons Decl. ¶ 7.  **DISPUTED** to the extent the statement implies Selvaggio asked Emmons to do anything other than passively place the Flyer in grocery stores.  ECF No. 106 at 76 (Selvaggio Tr. 144:3-15) ("Mr. Emmons distributing the flyers was to be passive – he was to be passive").

72.    Selvaggio also explained to Emmons that the flyers involved accusations that leaders who had previously faced sexual harassment allegations

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 25

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

were attempting to come back into leadership. See Dalmat Decl. Ex. 7 (Selvaggio Tr. 110:9-111:13); Dalmat Decl. Ex. 13 (Emmons Tr. 69:7-14).

**RESPONSE**:  **Undisputed**.


73.    During that initial conversation, Emmons immediately recognized the incendiary nature of those accusations and asked Selvaggio for their basis. See Dalmat Decl. Ex. 13 (Emmons Tr. 69:7-10,70:20-71:22).

**RESPONSE**:  **DISPUTED** to the extent the statement implies Emmons ever doubted the truth of the Flyer's statements.  *See* ECF No. 112 ¶¶ 5–9; ECF No. 113-4 at 8, 10–11.  Emmons has repeatedly testified that he knew Selvaggio to be honest and trustworthy and that he believed the Flyer was true.  *See* ECF No. 112 ¶¶ 5–9; ECF No. 113-4 at 8, 10–11.  **Undisputed** that Emmons asked Selvaggio to confirm the Flyer's statements were accurate.  ECF No. 112 ¶ 9.  **DISPUTED** that this discussion occurred in the first phone call regarding the Flyer, as Emmons does not recall whether this discussion occurred in his first or second conversation with Selvaggio about the project.  Emmons Decl. ¶ 7.


74.    Selvaggio told him the sexual harassment allegations were supported by investigations and social media posts. See Dalmat Decl. Ex. 13 (Emmons Tr. 70:20-71:22); Dalmat Decl. Ex. 7 (Selvaggio Tr. 110:24-111:16).

**RESPONSE**:  **Undisputed** that Selvaggio told Emmons that the Flyer's statements were supported by investigations and that UFCW members had posted on social media about it.

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

75.     Selvaggio, in turn, relied on the representations of Clay and Alday, who had told him that they relied on an investigation by the International—an assertion Selvaggio did nothing to verify. See Dalmat Decl. Ex. 7 (Selvaggio. Tr. 111:23-112:19).

**RESPONSE**:   These purported facts have no relevance to the merits of Guenther's claims against Emmons.

76.     In fact, the International repeatedly deemed the flyers' accusations to be false. See Dalmat Decl. Ex. 14 (UFCW-EMMONS 000029 —32), Dalmat Decl. Ex. 15 (UFCW-EMMONS 000936), Dalmat Decl. Ex. 16 (UFCW-EMMONS 000937).

**RESPONSE**:   **Undisputed** that Dalmat Decl. Ex. 14 is an August 15, 2022 electronic letter from Perrone stating the "handbill is false."  ECF No. 106 at 122. Dalmat Decl. Ex. 15 is a cease-and-desist email from Perrone to Clay, sent November 3, 2023.  ECF No. 106 at 126.  Dalmat Decl. Ex. 16 is a November 3, 2023 email with the subject "Notice to the UFCW International Executive Board." ECF No. 106 at 128.  **DISPUTED** to the extent the statement implies UFCW International investigated the Flyer's statements.  The August 15 letter from Perrone states that he cannot fully address "claims related to the disparagement in the handbill" in part because he was "hindered in investigating the facts at issue."  ECF No. 106 at 123 (concluding the union's "internal remedies cannot substitute for civil litigation in these circumstances").

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT Case No. 2:22-cv-00272-TOR - 27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

77.     Selvaggio and Emmons did not discuss any payoffs or whether Guenther was involved in any way in those allegations or the target of any sexual harassment investigation. See Dalmat Decl. Ex. 7 (Selvaggio Tr. 111:14-112:19); Dalmat Decl. Ex. 13 (Emmons Tr. 71:20-25,78:2-7,78:22-79:8,80:3-12).

**RESPONSE**:   **Undisputed** that Selvaggio and Emmons did not discuss details about the Flyer's statements apart from the fact that the statements were true and supported by investigations.  ECF No. 113-3 at 19–20; ECF No. 113-4 at 8, 10–11; ECF No. 112 ¶¶ 5–9.  **DISPUTED** to the extent the statement implies Selvaggio and Emmons did not discuss the Flyer's statements at all.  Selvaggio and Emmons read through each of the Flyer's statements—including that Guenther had paid off Gonzalez and that Guenther was helping Renner hide from sexual harassment claims—and Selvaggio confirmed to Emmons that they were true.  ECF No. 113-3 at 19–20; ECF No. 113-4 at 8, 10–11; ECF No. 112 ¶¶ 5–9.

78.     As far as Emmons recalls, they did not discuss Guenther at all during that conversation. See Dalmat Decl. Ex. 13 (Emmons Tr. 64:21-65:15).

**RESPONSE**:  **DISPUTED** to the extent the statement asserts Selvaggio and Emmons did not discuss the Flyer's statements about Guenther at all.  Selvaggio and Emmons read through the Flyer, and Selvaggio confirmed to Emmons that each statement was true.  *See* ECF No. 113-3 at 19–20; ECF No. 113-4 at 8, 10–11; ECF No. 112 ¶¶ 5–9; DiLorenzo Decl. Ex. D (Emmons Tr.) at 67:3–5 (correcting statement at 65:8–11).  **Undisputed** that Selvaggio and Emmons did not discuss

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 28

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

further details about Guenther.

79.    Emmons did not discuss the flyer's accusations with anyone else. See Dalmat Decl. Ex. 13 (Emmons Tr. 73:8-23).

**RESPONSE**:  **Undisputed**.

80.    After the conversation, Selvaggio emailed Emmons the flyer. See Dalmat Decl. Ex. 17 (Selvaggio Ex. 8); Dalmat Decl. Ex. 7 (Selvaggio Tr. 139:9-140:1, 144:3-145:1).

**RESPONSE**:  **Undisputed**.

81.    It was apparent to Emmons from the flyer that Guenther was the President of a UFCW local union but he had no idea whether the accusations against Guenther were true. See Dalmat Decl. Ex. 13 (Emmons Tr. 69:17-70:10, 74:11-13, 78:25-79:8, 90:24-92:16).

**RESPONSE**:  **Undisputed** that Emmons learned from the Flyer that Guenther was President of UFCW 21.  **DISPUTED**  that Emmons "had no idea whether the accusations against Guenther were true."  Emmons has repeatedly testified that he believed the Flyer's statements were true. ECF No. 112 ¶¶ 5–9; ECF No. 113-4 at 10–11 (Emmons Tr. 108:23-109:10).  Emmons had known Selvaggio for nearly a decade, having worked for him on numerous projects over the years, and knew him to be an honest and trustworthy person, who was "selective in the organizations and people he [chose] to work for and only work[ed] for those with

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 29

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

high integrity." ECF No. 112 ¶ 6.  After reading the Flyer, Emmons confirmed with Selvaggio that it was accurate, and Selvaggio indicated it was supported by investigations.  *Id.* ¶ 9.  Emmons was satisfied with this response because in his experience, Selvaggio did "not take on initiatives without first confirming that the position or message he [was] communicating [was] a credible one." *Id.* ¶ 6.

82.    After receiving a copy of the flyer itself from Selvaggio, Emmons and Selvaggio had another discussion about it. See Dalmat Decl. Ex. 13 (Emmons Tr. 76:1-80:16); Dalmat Decl. Ex. 18 (Selvaggio Ex. 6).

**RESPONSE**:  **Undisputed** that Selvaggio and Emmons had a second call regarding the project of distributing Flyer after Selvaggio emailed it to Emmons. **DISPUTED** to the extent the statement implies that the call occurred because Emmons questioned the truth of the Flyer's statements.  Emmons Decl. ¶ 7.

83.    During that second conversation, Emmons read the flyer in its entirety but did not discuss any details of any investigations into Gonzalez or Renner and did not discuss the accusation that Guenther helped Gonzalez cover up harassment charges and paid him off in exchange for installing Hines. See Dalmat Decl. Ex. 13 (Emmons Tr. 78:25-79:15, 90:13-91:19).

**RESPONSE**:  **Undisputed** that Emmons read the Flyer and that Emmons and Selvaggio did not discuss details of the investigations Selvaggio indicated supported the Flyer's statements.  **DISPUTED** that Emmons and Selvaggio did not discuss the Flyer's statement concerning Gonzalez and Hines.  After reading the Flyer, Emmons

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 30

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

confirmed with Selvaggio that the Flyer's statements were true.  ECF No. 112 ¶ 9. Emmons does not recall whether this occurred in the first or second conversation. Emmons Decl. ¶ 7.

84.    Emmons also did not discuss with Selvaggio the accusation that Guenther helped cover up allegations Renner was facing. See Dalmat Decl. Ex. 13 (Emmons Tr. 78:14-80:16).

**RESPONSE**:  **DISPUTED**.  Selvaggio and Emmons read through the Flyer, and Selvaggio confirmed to Emmons that the statements was true.  ECF No. 113-3 at 19–20 (Selvaggio Tr. 110:18-111:5);  ECF No. 113-4 at 10–11 (Emmons Tr. 108:23-109:10);  ECF No. 112 ¶¶ 5–9.  Selvaggio also stated there had been investigations.  ECF No. 113-3 at 20 (Selvaggio Tr. 111:6-9); ECF No. 113-4 at 8 (Emmons Tr. 78:11–13); ECF No. 112 ¶ 9. **Undisputed** that Selvaggio and Emmons did not discuss further details about Guenther helping Renner hide from sexual harassment allegations.

85.    Emmons then printed the flyers at a FedEx store. See Dalmat Decl. Ex. 13 (Emmons Tr. 74:18-75:25).

**RESPONSE**:  **Undisputed**.

86.    Emmons then drove from Portland, Oregon, to Spokane, Washington; bought a Gonzaga baseball cap at a Fred Meyer in Spokane (despite being a fan of University of Oregon); and on January 8, 2022, around 5:50 p.m., wore the hat and

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 31

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  a mask, while distributing flyers in six to eight stores in Spokane (whose addresses

2  Selvaggio had supplied), placing them in areas of the store where UFCW members

3  were likely to see them. See Dalmat Decl. Ex. 13 (Emmons Tr. 74:18-76:6, 81:1-

4  84:22, 102:9-103:21); Dalmat Decl. Ex. 7 (Selvaggio Tr. 136:3-19); Dalmat Decl.

5  Ex. 19 (RFP Resp No. 2 — 002111-16).

6      **RESPONSE**:  **Undisputed** that on January 8, 2022, Emmons drove from

7  Portland, Oregon, to Spokane, Washington; bought a Gonzaga baseball cap at a

8  grocery store in Spokane; and wore the hat and a mask while distributing copies of

9  the Flyer at six to eight stores in Spokane.  **Undisputed** that Selvaggio provided

10  Emmons with the addresses of the stores where Emmons placed copies of the Flyer,

11  and that Emmons placed the copies at work locations within each store, such as the

12  deli or the cash register.  Emmons Decl. ¶¶ 9, 12.  **DISPUTED** to the extent the

13  statement implies that Emmons was attempting to conceal his identity.  Emmons

14  Decl. ¶ 10.  Emmons purchased the baseball cap because he is also a Gonzaga fan

15  and collects baseball caps.  *Id.* ¶ 10.  And he wore a mask because, on January 8,

16  2022, Covid infection rates were extremely high, and he was concerned about being

17  exposed to Covid.  *Id.*

18

19      87.    Depending on the route, it is a 350-to-400-mile drive from Portland to

20  Spokane. See https://maps.app.goo.gl/yp8x1bU7iPJccn7k6.

21      **RESPONSE**:  **Undisputed**.

22

23      88.    The sun set on January 8, 2022, in Spokane at 4:17 p.m. and it was

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 32

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1 "mostly cloudy" at 5:53 p.m. See

2 https://www.wunderground.com/history/daily/us/wa/spokane/KGEG/date/2022-1-

3 8

4     **RESPONSE**: **Undisputed**.

5

6     89.    Emmons denies wearing sunglasses while distributing the flyers but the

7 pictures show otherwise. See Dalmat Decl. Ex. 13 (Emmons Tr. 102:23-104:8),

8 Dalmat Decl. Ex. 19 (RFP Resp No. 2 — 002111-16).

9     **RESPONSE**: **Undisputed** that Emmons denies wearing sunglasses while

10 distributing the Flyer. **DISPUTED** that the pictures show Emmons wore sunglasses

11 while distributing the flyers.  Emmons wears glasses due to astigmatism and wore

12 his glasses while distributing the Flyer.  Emmons Decl. ¶ 11.

13

14     90.    When Emmons handed out flyers at the Spokane stores, he did not

15 know whether the accusations in those flyers were true or false. See Dalmat Decl.

16 Ex. 13 (Emmons Tr. 88:14-17).

17     **RESPONSE**: **DISPUTED**.  Emmons has repeatedly testified that he believed

18 the Flyer's statements were true based on Selvaggio's word.  ECF No. 112 ¶¶ 5–9;

19 ECF No. 113-4 at 8, 10–11.  Emmons had known Selvaggio for nearly a decade,

20 having worked for him on numerous projects over the years, and knew him to be an

21 honest and trustworthy person, who was "selective in the organizations and people

22 he [chose] to work for and only work[ed] for those with high integrity."  ECF No.

23 112 ¶ 6.  After reading the Flyer, Emmons confirmed with Selvaggio that it was

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 33

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

accurate, and Selvaggio indicated it was supported by investigations. *Id.* ¶ 9. Emmons was satisfied with this response because in his experience, Selvaggio did "not take on initiatives without first confirming that the position or message he [was] communicating [was] a credible one." *Id.* ¶ 6.

91.    Selvaggio, who gave Emmons instructions on the in-person literature drop campaign, did not want Emmons to be identified. See Dalmat Decl. Ex. 7 (Selvaggio Tr. 144:16-145:1)

**RESPONSE**:  **Undisputed** that Selvaggio gave Emmons instructions regarding how to distribute the Flyer.  **DISPUTED** that Selvaggio did not want Emmons to be identified or that Selvaggio instructed Emmons to conceal his identity.  The cited testimony simply states that Selvaggio did not want *himself* to be identified as responsible for the Flyer.  *See* ECF No. 106 at 76 (Selvaggio Tr. 144:16-145:1) ("Q. When you mailed the flyers out, was there a return address on the envelopes?" A. No, there was not. Q. Was there any identification of who was responsible for the mailing?  A. No.  Q. And that's true for the flyer that Mr. Emmons distributed? A. That's correct. Q. And that was intentional? A. Yes.").

92.    Upon completing the distribution, Emmons confirmed to Selvaggio that he had done so and told people "here's information about the union, information about the merger." See Dalmat Decl. Ex. 7 (Selvaggio Tr. 118:8-18).

**RESPONSE**:  **Undisputed**.

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 34

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    93.    Selvaggio paid Emmons $2,500, reimbursed by Local 555, for

2    circulating the flyers. See Dalmat Decl. Ex. 7 (Selvaggio Tr. 114:4-121:7, 135:25-

3    138:14); Dalmat Decl. Ex. 18 (Selvaggio Ex. 6); Dalmat Decl. Ex. 20 (Selvaggio

4    Ex. 7).

5    **RESPONSE**:  **Undisputed**.

6

7    94.    Local 555 indemnified both Emmons and Selvaggio for their roles in

8    circulating the flyers. See Dalmat Decl. Ex. 13 (Emmons Tr. 99:1-17); Dalmat Decl.

9    Ex. 7 (Selvaggio Tr. 128:4-129:4); Dalmat Decl. Ex. 21 (EMM 000001-9).

10    **RESPONSE**:  **Undisputed** that UFCW 555 and Ridgelark Strategies had a

11    contract for services that contained an indemnification provision, under which

12    UFCW 555 agreed to indemnify Ridgelark for certain claims, and that UFCW 555

13    agreed to honor that agreement insofar as it relates to this lawsuit.  *See* ECF No. 106

14    at 144 (EMM_000001).  **Undisputed** that Selvaggio and Ridgelark entered an

15    agreement with Emmons and his company Osprey, under which Selvaggio and

16    Ridgelark agreed to "provide Emmons a defense." *Id.* **DISPUTED** that UFCW 555

17    had any agreement with Emmons prior this litigation, or that Emmons had any

18    knowledge of the indemnification agreement between UFCW 555 and Ridgelark

19    when he distributed the Flyer, as the indemnification agreement here was entered

20    into at the start of the case.  *See* ECF No. 106 at 144 (EMM_000001); DiLorenzo

21    Decl. Ex. D (Emmons Tr.) at 62:22–25 (no services from Osprey to UFCW 555 to

22    Emmons's knowledge); *id.* at 68:3–17 (did not work on projects for UFCW 555).

23    Regardless, this purported fact has no relevance to the merits of Guenther's claims

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 35

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

against Emmons.

95.    On July 12, 2021, a member of Local 367 sent that union a letter accusing Angel Gonzalez of sexually harassing her. See Dalmat Decl. Ex. 22 (July 12, 2021 Letter).

**RESPONSE**:  **Undisputed**.

96.    On July 15, 2021, Clay received a text message asking if Gonzalez was still President of Local 367. See Dalmat Decl. Ex. 23 (UFCW-EMMONS 000953).

**RESPONSE**:    This  purported  fact  has  no  relevance  to  the  merits  of Guenther's claims against Emmons.

97.    Over the month, Mike Hines negotiated a settlement on behalf of Local 367 with the member, which paid her $50,000 and caused Gonzalez to resign from Local 367. See Dalmat Decl. Ex. 24 (Hines sub resp. 09); Dalmat Decl. Ex. 27 (July 29, 2021, UFCW 367's Minutes); Dalmat Decl. Ex. 25 (Hines sub resp. 010); Dalmat Decl. Ex. 26 (August 19, 2021, Confidential Settlement and Release Agreement).

**RESPONSE**:  **Undisputed** that UFCW 367 paid a member $50,000 to settle potential claims after Angel Gonzalez sexually harassed her.  **DISPUTED** that the settlement "caused" Gonzalez to resign.  Gonzalez resigned before UFCW 367 reached a settlement agreement with the complaining member.  ECF No. 106 at 165 (dated July 25); ECF No. 106 at 171 (dated August 19).

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 36

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

98.    Until seeing the flyer in December 2021, Guenther knew nothing about the Local 367 member's accusation against Gonzalez or Local 367's settlement with that member. See Guenther Decl. ¶¶ 122-124.

**RESPONSE**: **Undisputed** based on the record, which lacks any evidence supporting or contradicting this statement.

99.    Guenther never paid Gonzalez off for anything. See Guenther Decl. ¶ 124; Mizrahi Decl. ¶¶ 7-10.

**RESPONSE**: **Undisputed** based on the record, which lacks any evidence supporting or contradicting this statement.   Mizrahi's conclusory testimony and assertion that no UFCW 21 funds went to Angel Gonzalez or UFCW 367 to "cover[] up" sexual harassment charges does not show whether *Guenther* paid Gonzalez anything—whether through a favor, money, or otherwise.   Guenther's declaration similarly states she did not "make a payment" but does not mention other forms of recompense.   ECF No. 107 ¶ 124.

100.    Nor did she influence Hines's advancement at Local 367. To the contrary, Hines left Local 21 to join Local 367 without Guenther's foreknowledge and over her objection. See Guenther Decl. ¶¶ 23-31; Mizrahi Decl. ¶¶ 11-15.

**RESPONSE**: **Undisputed** based on the record.

101.    Hines certainly is not Guenther's "puppet." In fact, on June 29, 2021, he joined Clay's complaint against Guenther. See Dalmat Decl. Ex. 1 (UFCW 987).

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 37

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**RESPONSE**:   **Undisputed** that Hines initially joined Clay's complaint against Guenther.  Whether Hines was Guenther's "puppet" is an opinion, not a fact, and therefore is improper in Guenther's Statement of Material Facts.

102.   Hines became Secretary Treasurer of Local 367 in July 2021 at Gonzalez's recommendation. See Dalmat Decl. Ex. 28 (Minutes of UFCW 367's Executive Board Meetings of June 16, 2021, and July 1, 2021).

**RESPONSE**:  **Undisputed**.

103.   Following the member's sexual harassment allegations, Hines offered himself at a July 29, 2021, Executive Board meeting as Gonzalez's replacement for Local 367 president. See Dalmat Decl. Ex. 27 (July 29, 2021, UFCW 367's Minutes).

**RESPONSE**:   **DISPUTED**.   The cited evidence does not support the proposition that "Hines offered himself."  It was also not produced during discovery, which is presumably why it is not Bates stamped.  DiLorenzo Decl. ¶ 10.  Guenther had this document in her possession, custody, control, failed to produce it, and now "is not allowed to use that information … to supply evidence on a motion." *See* Fed. R. Civ. P. 37(c)(1).

104.   The Local 367 Board then accepted Gonzalez's resignation from the presidency and made Hines its acting president. See Dalmat Decl. Ex. 27 (July 29, 2021, UFCW 367's Minutes).

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 38

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**RESPONSE**:  **DISPUTED**.  The cited evidence does not support not notion that the board "then" did anything after the false assertion in the prior paragraph.  It further does not show Hines being made acting president.  It was also not produced during discovery, which is presumably why it is not Bates stamped.  DiLorenzo Decl. ¶ 10.  Guenther had this document in her possession, custody, control, failed to produce it, and now "is not allowed to use that information … to supply evidence on a motion." *See* Fed. R. Civ. P. 37(c)(1).

105.    Guenther had no role or influence in that decision at all. Guenther did not attend that meeting of the Local 367 Board and would not ordinarily do so. See Guenther Decl. ¶¶ 125-126; Dalmat Decl. Ex. 27 (July 29, 2021, UFCW 367's Minutes).

**RESPONSE**:  **Undisputed** that Guenther did not attend the UFCW 367 Executive Board meeting described in Paragraph 104 and would not ordinarily do so.  The record lacks evidence regarding whether Guenther had any influence on the Board's decision to make Hines acting president of UFCW 367.  **DISPUTED** to the extent it relies on Dalmat Decl. Ex. 27, which not produced during discovery and is presumably why it is not Bates stamped.  DiLorenzo Decl. ¶ 10.  Guenther had this document in her possession, custody, control, failed to produce it, and now "is not allowed to use that information … to supply evidence on a motion." *See* Fed. R. Civ. P. 37(c)(1).

106.    By publishing the defamatory leaflet, Emmons dramatically harmed

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 39

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3

Guenther, including through protracted internal complaints within UFCW that undermined her standing among UFCW leaders, complicated her career, and caused her incredible anxiety. See Guenther Decl. ¶¶ 128-167.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

**RESPONSE**:  **DISPUTED** that Emmons dramatically harmed Guenther by distributing the Flyer.  The only evidence Guenther cites is her own self-serving declaration, and nothing in it supports this statement.  The "protracted internal complaints within UFCW" came from Dan Clay, the person behind the Flyer, so they could not have been caused by the Flyer.  *See* ECF No. 107 ¶¶ 141-43, 146-53, 155-57.  The other supposed evidence described in the cited paragraphs—a Facebook post by UFCW 367 member Jessica Roach, a complaint from UFCW 21 member Vanessa Giles, and an email from Collin Farthingworth—also do not show the Flyer caused "dramatic[] harm[]."  The Facebook post appears to place blame on Gonzalez and Renner—not Guenther.  *See* ECF No. 106 at 88.  Giles disapproved of Guenther based on Guenther's own social media posts.  *See* DiLorenzo Decl. Ex. H. And the Farthingworth email includes more detail than the Flyer, indicating it was not caused by the Flyer but by the concerns that motivated the Flyer.  *See* ECF No. 106 at 90.  In any event, Guenther claims Clay sent the Farthingworth email, in which case it could not have been caused by the Flyer.  *See supra* ¶ 68.

19

20
21
22

107.   The leaflet led to a shooting at her office window, a break-in of the safe in her office, and continued tarnishing of her reputation at the International. See Guenther Decl. ¶ 162.

23

**RESPONSE**:  **DISPUTED**.  Guenther has no evidence that the Flyer "led to"

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 40

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    any of these events.  The cited paragraph of her declaration simply states that these

2    events occurred and that she had not experienced "anything like this before."  ECF

3    No. 107 ¶ 162; *see also* DiLorenzo Decl. Ex. B (Guenther II Tr.) at 23:25–24:15

4    (admitting no evidence of connection between Emmons and shooting or break-in).

5    But the only date she provides for these events is September 2023—more than a year

6    and a half after Emmons distributed the Flyer—which significantly undermines any

7    casual inference.  *Id.*  Guenther does not even offer evidence that the shooting or

8    break-in were targeted at her personally, much less caused by the Flyer.  And the

9    purported "tarnishing of her reputation" would more likely be a result of Dan Clay's

10    communications to UFCW staff, independent of the copies of the Flyer Emmons

11    distributed.  *See id.* (stating "Mr. Clay called me a 'menace' and other invectives in

12    an email that went to all 111 UFCW staff"); ECF No. 107 ¶ 141-43, 146-53, 155-

13    57. To the extent this testimony could support Guenther's damages arguments, the

14    Court should exclude it under Rule 37(c)(1) because Guenther failed to allege it in

15    her Complaint and failed to disclose it under Rule 26(a).  *See* ECF No. 1-2;

16    DiLorenzo Decl. ¶ 11; *Okeke v. N.Y. & Presbyterian Hosp.*, 2017 WL 2484200, at

17    *3 (S.D.N.Y. June 6, 2017) ("A plaintiff's failure to disclose a computation of

18    damages in her initial disclosure is alone sufficient to preclude her from submitting

19    evidence of it at trial'" (quoting *Roberts v. Ground Handling, Inc.*, 2007 WL

20    2753862, at *4 (S.D.N.Y. Sept. 20, 2007)).

21

22        108.   Anxiety from the fallout of the flyer caused her to miss a month of

23    work, move personal residences at significant cost, beef up office security, travel

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 41

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  only with companions, and incur expenses for professional care. See Guenther Decl.

2  ¶ 164.

3      **RESPONSE**:  **Undisputed** that Guenther experienced anxiety.  **DISPUTED**

4  that the Flyer caused her anxiety.  Guenther states her anxiety was "from the fallout

5  of the flyer," and that phrase appears to refer to the events described in Paragraph

6  107.  As stated in response to Paragraph 107, Guenther has no evidence that the Flyer

7  caused any of those events.  Moreover, the Court should exclude any testimony or

8  other evidence of Guenther "miss[ing] a month of work, mov[ing] personal

9  residences at significant cost, beef[ing] up office security, travel[ing] only with

10  companions, and incur[ring] expenses for professional care" because she failed to

11  allege any of these purported harms in her Complaint and failed to disclose them

12  under Rule 26(a).  *See* ECF No. 1-2; ECF No. 114 at 4–5; DiLorenzo Decl. ¶ 11;

13  *Okeke*, 2017 WL 2484200, at *3.

14

15      109.   The leaflet contributed to Guenther not receiving an appointment as an

16  International Vice President, even though, as the president of the largest UFCW local

17  union in America, she otherwise would have received that appointment.  That

18  appointment would have carried with it a $20,000 annual stipend and the prestige of

19  the office. See Guenther Decl. ¶ 164; Mizrahi Decl. ¶¶ 40-42; Crosby Decl. ¶¶ 15-

20  23.

21      **RESPONSE**:   **DISPUTED**. Guenther has no evidence that the Flyer

22  "contributed to" her not receiving an appointment as a UFCW International Vice

23  President, or that she "would have received that appointment" but for the Flyer.

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 42

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Guenther claims in her declaration that she "believe[s]" UFCW International President Marc Perrone "wanted to disassociate himself" from Guenther "because of the reputational harm the flyers caused." ECF No. 107 ¶ 167. But Guenther testified that she already had a strained relationship with Perrone before the proposed merger. *See* DiLorenzo Decl. Ex. B (Guenther II Tr.) at 13:3–10, 19:24–18. The record is also replete with alternative explanations for Guenther not receiving a Vice President appointment. *See id.* at 36:20–25, 80:15–23, 85:14–20 (Guenther had a strained relationship with her UFCW International regional director, Kate Meckler); DiLorenzo Decl. Ex. A (Guenther I Tr.) at 233:4–6, 237:4–20 (Guenther accused other UFCW chapter presidents of taking exorbitant salaries and accused Perrone of having ties to the mob); *id.* at 78:7–8, 80:15–23, 85:14–20 (Guenther had a strained relationship with other UFCW International Vice Presidents, such as Dan Clay).

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 43

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Defendant Emmons further submits the following statements of disputed fact in support of its Opposition to Plaintiff's Motion for Summary Judgment:**

## I.    Complaint Letter Against Renner & Resulting Settlement Agreements

110.    On September 13, 2021, a letter of concern regarding the UFCW 1439 President, Eric Renner, was emailed to UFCW 1439 Executive Board Members and UFCW International Leadership.  ECF No. 113 ¶ 24; ECF No. 113-23 ("Complaint Letter"); ECF No. 113-6 at 3-5 (Jackson Tr. 25:13–26:8, 99:13–16).

111.    The five-page Complaint Letter raised concerns about what it described as Renner's "abuse of power" and provided examples of such abuses, including instances where the letter stated Renner "commented repeatedly about female staff members and International Union officers 'big butts,'" "encouraged male employees to imagine a specific female employee engaged in sex acts," "bragged … about having [sexual] relationships with members," asked a male employee whether he had "hit that yet" in reference to a female employee, and used "homophobic language" to "mock[] [an employee's] mannerisms."  ECF No. 113 ¶ 24 & 113-23 at 4–8; ECF No. 113-6 at 3-4 (Jackson Tr. 25:13–26:8); ECF No. 113-5 at 3 (Fish Tr. 24:7–22); *see also* ECF No. 51-4 (Jackson Tr.) at 54:11–55:14 (behavior described in Complaint Letter constituted "sexual harassment").

112.    The Complaint Letter was signed by seven individuals, who were then-current and former employees of UFCW 1439: Adam Jackson (Organizing Director), Laurel Fish (Organizer & Director of Strategic Campaigns), Katie Dugger (Membership Services/Organizer), Sandra Huggins (former Benefits Director),

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 44

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Leslie Cowin (former Membership Services/Administrative Assistant), Amy Poston (former Office Assistant/Administrative Assistant), and Austin DePaolo (former Organizer & Business Representative) (collectively "Complainants"). ECF No. 113 ¶ 24; ECF No. 113-23 at 8; ECF No. 113-6 at 3-4 (Jackson Tr. 25:13–26:8).

113.  Between approximately September 22, 2021, and early October 2021, Plaintiff's counsel Aaron Streepy investigated the Complaint Letter's claims and drafted settlement agreements with nondisclosure provisions, which the Complainants, Renner, UFCW 1439, and others signed.  *See* ECF No. 51-2 at 006047 (September 15, 2021, email from Streepy stating he "anticipate[d] beginning" meeting with Complainants the following Wednesday); ECF No. 51-3 at 006226 (October 4, 2021 email from Streepy with settlement agreements); ECF No. 51-1 ("NDAs").

114.  The NDAs include the following provisions: "Renner shall resign his position with UFCW 1439 effective April 1, 2022," and "Renner agrees not to run for UFCW 1439 office in the future." *See, e.g.*, ECF No. 51-1 at 006001.  The NDAs also prohibit the Complainants from disclosing the terms of the settlement agreement or information and evidence related to the complaints. *See, e.g.*, *id.* at 006002.

115.  Before September 2021, Renner had been opposed to merging with UFCW 21 for political and other reasons.  DiLorenzo Decl. Ex. F (Jackson Tr.) at 91:8–95:10; *id.* at Ex. G (Garcia Tr.) at 81:10–18.

## II.    Guenther's Efforts to Bring About the Merger

116.  In October 2021, Guenther and Renner communicated regularly regarding the merger, including by text message and by phone.  ECF No. 113 ¶ 13;

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

ECF No. 113-12 at 29–33; ECF No. 113-2 at 3-9 (Guenther II Tr. 30:16–31:16, 34:18–38:24).

117.    On October 20, 2021, Renner sent Guenther a text message about reaching out to Kate Meckler.   ECF No. 113 ¶ 13; ECF No. 113-12 at 31; ECF No. 113-2 at 3-4, 7 (Guenther II Tr. 30:16–31:7, 36:3–11).

118.    Kate Meckler was a UFCW regional director.  ECF No. 113-1 at 46, 50 (Guenther I Tr. 124:23–25, 158:13–14); ECF No. 113-2 at 7 (Guenther II Tr. 36:3–11).

119.    Meckler needed to "release" the merger request before UFCW International would approve formal merger discussions, and Guenther was concerned that Meckler would oppose the merger.   ECF No. 113-1 at 52-32 (Guenther I Tr. 161:24–162:9); ECF No. 113-2 at 7 (Guenther II Tr. 36:20–25).

120.    On October 20, 2021, Guenther responded to Renner, stating in part:

I think we should meet with Aaron first and then maybe call her that day? That way we have all our best arguments written down and vetted

Kate may try to mess with things…hopefully not…so maybe we can ask Aaron to draft up top 10 reasons or something. And then specifically ask for her support.

And we should have a letter ready to go asap after we talk with her to full exec committee.

ECF No. 113 ¶ 13; ECF No. 113-12 at 30–31; ECF No. 113-2 at 3-4, 7 (Guenther II Tr. 30:16–31:7, 36:3–25).

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 46

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

121.   Guenther also asked Shaun Barclay, UFCW 21's former regional director, to speak with Perrone about the benefits of the merger.  ECF No. 113-1 at 54 (Guenther I Tr. 163:3–24).

122.   Guenther helped prepare a merger agreement, which Guenther and Renner signed.   ECF No. 113-1 at 32-33 (Guenther I Tr. 69:19–70:19); ECF No. 113-9.

123.   Aaron Streepy represented both parties to the merger.  ECF No. 55 at 3:18–20; ECF No. 113-1 at 29-31 (Guenther I Tr. 65:6–67:13).

124.   Under the merger agreement, Guenther would be president of the new union formed through the merger.  ECF No. 113-9.  Under a "side agreement," Renner would be an employee of the new union.  ECF No. 113 ¶ 14; ECF No. 113-13 at 2; ECF No. 113-1 at 37 (Guenther I Tr. 84:7–25); ECF No. 113-2 at 10-12 (Guenther II Tr. 43:2–25, 49:20–50:4).

125.   Before Guenther recommended the proposed merger to UFCW 21's Executive Board, Guenther and Renner agreed that the new union would employ Renner.  ECF No. 113-1 at 37 (Guenther I Tr. 84:7–25).

126.   On December 8, 2021, Renner stated in a text message to Guenther: "Scott H. has reviewed merger agreement.  Larry Hall supports the merger and will put his name to it.  Train is rolling!!!!!"  ECF No. 113 ¶ 13; ECF No. 113-12 at 26; ECF No. 113-2 at 3-4 (Guenther II Tr. 30:16–31:7).  Guenther responded:  "Yes!!!! That is so awesome!"  ECF No. 113-12 at 26.

127.   On December 12, 2021, Renner told Guenther that two individuals "were both very impressed by [her] and are in full support!"  ECF No. 113 ¶ 13;

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 47

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

ECF No. 113-12 at 23; ECF No. 113-2 at 3-4 (Guenther II Tr. 30:16–31:7). Guenther responded: "That is great news! Now I have to get my board all in order!" ECF No. 113-12 at 23.

128.   On December 14, 2021, Guenther led a discussion with the UFCW 21 Executive Board, in which she advocated in favor of the merger.  ECF No. 113-1 at 25-27 (Guenther I Tr. 60:24–62:12); ECF No. 113-17 at 3–4.

129.   When Guenther spoke with the UFCW 21 Executive Board on December 14, 2021, she knew "there had been an internal dispute [at UFCW 1439]" involving Renner that "had been resolved amongst all parties with nondisclosure and … confidentiality agreements," and that Renner was prohibited from "directly supervis[ing] any employees."  ECF No. 113-1 at 34, 38-39, 41, 55-56 (Guenther I Tr. 71:13–18, 93:12–94:20, 99:5–14, 167:21–168:9); ECF No. 113 ¶ 14; ECF No. 113-13 at 2; ECF No. 113-2 at 11-12 (Guenther II Tr. 49:20–50:4); ECF No. 113-17 at 3–4.

130.   Guenther did not tell the UFCW 21 Executive Board about the claims against Renner, the nondisclosure agreements, Renner's agreement to resign, or that Renner was not allowed to supervise people.  ECF No. 113-1 at 36-37 (Guenther I Tr. 83:6–84:6).

131.   On December 17, 2021, UFCW 1439 formally announced the merger vote to its members.  ECF No. 113-24 at 2.

132.   On January 5, 2022, the day before UFCW 1439 members began voting, Guenther stated in an email to Renner and others that her staff "are going to fly to Spokane tomorrow and provide any support needed to 1439," "onboard [a

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 48

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

UFCW 21 staff member] to help from tomorrow until January 20 to ensure we have what we need for all votes," and "can also help … with anything … including … vote support." ECF No. 113-18 at 2.

133.   In the same January 5, 2022, email, Guenther stated: "Joe and I are cancelling all of our travel and meetings and will provide extra support, Shari Davis will likely travel with us to any vote meetings we can make. … Eric I will call you so we can outline which votes Shari/Joe and I can provide extra sets of hands. It's game time!" ECF No. 113-18 at 2.

134.   Also on January 5, 2022, Guenther texted Renner: "Game time!!!  Its [sic] on Eric!  I can t [sic] wait to celebrate on Jan 20!!!!!!!!" ECF No. 113 ¶ 13; & ECF No. 113-12 at 18; ECF No. 113-2 at 3-4 (Guenther II Tr. 30:16–31:7).

## III.   The Flyer

135.   In December 2021, nonparty Michael Selvaggio, who through his company Ridgelark Strategies LLC was political director for UFCW 555, created the Flyer to encourage UFCW members to vote against the proposed merger.  ECF No. 113-3 at 4, 6, 21 (Selvaggio Tr. 62:2–23, 75:14–19, 113:10–18).  The Flyer stated:

> ATTENTION UFCW MEMBERS
>
> The in-union "Sexual Harassment club" is at it again!!
>
> First Faye Gunther [sic] (President of Local 21) helped former 367 President Angel Gonzalez cover up his harassment charges and paid him off in exchange for installing her puppet, Mike Hines.

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 49

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Now she's helping Eric Renner (the Local 1439 President) hide from sexual harassment charges and land a cushy new gig with Local 21 through a forced merger.

OUR UNION SHOULD BE LOOKING OUT FOR US <u>NOT PROTECTING HARASSERS!</u>

<u>It's time to STOP THE COVERUPS!</u>

VOTE NO ON ANY MERGER!

ECF No. 26-1.

136.    Selvaggio created the Flyer at the request of Dan Clay, President of UFCW 555.  ECF No. 113-3 at 3, 7-12, 24-25 (Selvaggio Tr. 43:23–25, 92:10–97:24, 123:20–124:2).

137.    Clay and Esai Alday, who also works for UFCW 555, provided Selvaggio with the information that Selvaggio included in the Flyer.  ECF No. 113-3 at 14, 23-25 (Selvaggio Tr. 99:11–17, 122:10–124:2).

138.    Emmons had no involvement in creating the Flyer or in any social media posts about it.  *See* ECF No. 112 ¶ 6; ECF No. 106 ¶ 131 (UFCW 367 member posted the Flyer in a closed members-only Facebook group).

139.    Selvaggio did not tell Emmons that he had created the Flyer at Clay's request.  DiLorenzo Decl. Ex. D (Emmons Tr.) at 73:18–74:10; Emmons Decl. ¶ 8.

140.    Even if Emmons assumed that the project was for UFCW 555, Emmons had never heard of Guenther, much less Clay's relationship with or opinion of her.  DiLorenzo Decl. Ex. D (Emmons Tr.) at 67:4–5; ECF No. 112 ¶ 9; *see also* Emmons Decl. ¶ 8.

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 50

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

141.   On December 13, 2021, Selvaggio mailed 1,000 copies of the Flyer to UFCW work sites across Washington.   ECF No. 113-3 at 12-13, 15-18, 21-22 (Selvaggio Tr. 97:11–98:10, 101:4–102:12, 104:17–105:3, 113:22–114:1).

142.   Guenther first learned of the Flyer on December 15 or 16, 2021.   ECF No. 113-1 at 40 (Guenther I Tr. 97:8–16).   Around the same time, a grocery store meat manager sent an image of the Flyer to Adam Jackson, and Jackson shared it with Laurel Fish.   ECF No. 113-6 at 6 (Jackson Tr. 122:6–18); ECF No. 113-5 at 6 (Fish Tr. 112:14–25).   Other UFCW members Jackson spoke with had received the Flyer too.   ECF No. 113-6 at 6 (Jackson Tr. 122:16–18).

143.   Also in mid-December 2021, a UFCW 367 member posted the Flyer in a UFCW member Facebook forum, and other members commented on it.   ECF No. 1-2 ¶ 3.12; ECF No. 113-20 at 2; ECF No. 113-1 at 41-43 (Guenther I Tr. 99:15–101:22).

144.   Emmons and his company, Osprey Field Services LLC ("Osprey"),[3] provide community outreach services, which has included distributing clients' informational materials for various campaigns.   ECF No. 112 ¶¶ 1–2; ECF No. 113-4 at 3-4 (Emmons Tr. 50:20–51:20).

145.   In January 2022, Selvaggio called Emmons and said Ridgelark wanted to hire Emmons's company, Osprey, to distribute copies of the Flyer to grocery stores in Spokane.   ECF No. 113-3 at 5 (Selvaggio Tr. 73:14–17); ECF No. 113-4 at 5-7, 9 (Emmons Tr. 67:13–68:25, 73:8–12, 84:12–13); ECF No. 112 ¶¶ 4, 7, 10.

---

[3] The Complaint incorrectly names "Osprey Field Consulting LLC."

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 51

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

146.   Emmons and Osprey had been hired by Selvaggio and Ridgelark to assist with numerous community outreach projects before.  ECF No. 112 ¶ 5.

147.   Emmons first worked with Selvaggio at an organization called Direct Action Partners, where Selvaggio was President and Emmons was a Project Manager, before the organization dissolved.  *Id.*

148.   Since working together at Direct Action Partners, Selvaggio, through Ridgelark, has hired Emmons, through Osprey, for numerous other community outreach projects over the years.  *Id.*

149.   Emmons has known Selvaggio for nearly a decade.  *Id.*

150.   In Emmons's experience working for Selvaggio, Emmons has observed Selvaggio to be honest and trustworthy.  ECF No. 113-4 at 11 (Emmons Tr. 109:1–10); ECF No. 112 ¶ 6.

151.   Specifically, in Emmons's experience, Selvaggio is selective in the organizations and people he chooses to work for, only works for those with high integrity, and does not take on initiatives without first confirming that the position or message he is communicating is a credible one.  ECF No. 112 ¶ 6.

152.   Emmons agreed to take on the project of distributing copies of the Flyer in Spokane.  ECF No. 112 ¶ 7.

153.   Selvaggio emailed Emmons the Flyer on January 5, 2022.   ECF No. 112 ¶ 8.

154.   Selvaggio provided Emmons with a list of grocery stores where Selvaggio wanted Emmons to distribute the Flyer.  *Id.*

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 52

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

155. Emmons does not personally know the individuals named in the Flyer. ECF No. 112 ¶ 9. Selvaggio did not tell Emmons whom the project was for or that Dan Clay was involved. Emmons Decl. ¶ 8.

156. Emmons had no personal knowledge as to the truth of the statements in the Flyer. ECF No. 112 ¶ 9; ECF No. 113-4 at 10-11 (Emmons Tr. 108:23–109:10); ECF No. 113-3 at 19 (Selvaggio Tr. 110:18–23).

157. Emmons asked Selvaggio whether the Flyer's statements were accurate. ECF No. 112 ¶ 9; ECF No. 113-3 at 19-20 (Selvaggio Tr. 110:18–111:2).

158. Selvaggio confirmed to Emmons that the Flyer's statements were credible and stated that there had been investigations. ECF No. 112 ¶ 9; ECF No. 113-4 at 8, 10-11 (Emmons Tr. 78:11–21, 108:23–109:10); ECF No. 113-3 at 19-20 (Selvaggio Tr. 110:18–111:9).

159. On January 8, 2022, Emmons placed copies of the Flyer at five to seven grocery stores in Spokane, leaving six to eight copies at each store. ECF No. 112 ¶ 10; ECF No. 113-4 at 9 (Emmons Tr. 84:12–13).

160. After speaking with Selvaggio and at the time Emmons distributed the Flyer, Emmons believed that the Flyer's statements were true. His belief was based on his experience with Selvaggio and Selvaggio's representations concerning the Flyer. ECF No. 112 ¶ 9; ECF No. 113-4 at 10-11 (Emmons Tr. 108:23–109:10); Emmons Decl. ¶ 7.

161. Between January 6 and 20, 2022, during the time Emmons distributed the Flyer, UFCW 1439 members voted on the proposed merger. ECF No. 113-24 at 2; ECF No. 113-1 at 40 (Guenther I Tr. 97:19–25).

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 53

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**IV.    Guenther's Role as UFCW 21 & UFCW 3000 President**

162.    While UFCW 21 President, Guenther regularly spoke at press conferences, gave interviews, and appeared in the media.  ECF No. 113-10 at 6–7; ECF No. 113-1 at 13-16 (Guenther I Tr. 41:18–42:16, 45:7–46:1).

163.    The topics Guenther spoke about at these press conferences and in the media included Covid masking and vaccines, Black Lives Matter, and workforce development, among others.  ECF No. 113-10 at 5–7 (Resp. to Interrog. 6); ECF No. 113-1 at 13-16 (Guenther I Tr. 41:18–42:16, 45:7–46:1).

164.    One of the UFCW 21 staff members Guenther supervised was responsible for UFCW 21's communications, and that person's duty was in part "to invite as many press people as they could" to UFCW 21 press conferences at which Guenther spoke.  ECF No. 113-1 at 9, 12-14 (Guenther I Tr. 37:12–21, 40:11–42:13).

165.    Guenther has spoken at press conferences, given interviews, and appeared in the media at least seventeen times since January 1, 2019.  ECF No. 113-10 at 5–7 (Resp. to Interrog. 6).

166.    As UFCW 21 President, Guenther communicated with members of UFCW 21 "through Twitter, Instagram, e-mail, telephone, text message, podcast, U.S. mail, Facebook, Facebook Messenger[,] and in-person."  ECF No. 113-10 at 4 (Resp. to Interrog. 2); ECF No. 113-1 at 6-8 (Guenther I Tr. 26:21–28:1).

167.    Guenther could send emails to all UFCW 21 members and transmitted annual notices on her letterhead.  ECF No. 113-1 at 6-8 (Guenther I Tr. 26:21–28:1).

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 54

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

168.    UFCW 21 sponsored vaccine clinics, and Guenther communicated about these clinics to her roughly 44,000 members.   ECF No. 113-1 at 9-10 (Guenther I Tr. 37:22–38:9).

169.    As UFCW 21 President, Guenther met with Governor Jay Inslee to discuss Covid mask policies to keep the "lines of communications open."   ECF No. 113-1 at 11, 17-18 (Guenther I Tr. 39:3–18, 47:24–48:12).

170.    As UFCW 21 President, Guenther communicated with other union leaders, including negotiating a memorandum of understanding regarding "sick leave protections" and getting other union chapters to sign on.   ECF No. 113-1 at 16-17 (Guenther I Tr. 46:20–47:23).

171.    Guenther "intentionally did not engage in public discussion of the flyer mailed on December 13" because she "felt that engaging in the substance"  would "only fan its false flames."   ECF No. 107 ¶ 129.

172.    Guenther was re-elected as UFCW 3000 President in 2023.   ECF No. 113-1 at 8 (Guenther I Tr. 28:2–8).

173.    Guenther ran for a position at UFCW International in 2023.   ECF No. 113-1 at 19-21 (Guenther I Tr. 49:25–50:20, 52:17–21).

174.    Guenther had strained relationship with Perrone, Meckler, and Clay and accused other local presidents of being affiliated with the mob.   DiLorenzo Decl. Ex. B (Guenther II Tr.) at 13:3–10, 19:20–18, 78:7–8, 80:15–23, 85:14–20; *Id*. Ex. A (Guenther I Tr.) at 233:4–6, 237:4–20; ECF No. 113-2 at 7 (Guenther II Tr. 36:20–25).

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 55

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

175.   Guenther continues to make media appearances.  ECF No. 113-1 at 47-48 (Guenther I Tr. 126:18–127:1).

**V.     Lawsuit**

176.   On July 29, 2023, Guenther stated in an email to UFCW International President Marc Perrone:

> You urged caution in proceeding down the litigation path.  I heard you, and possibly to my detriment, have declined to broaden the scope of litigation to include Local 555, Dan Clay, Michael Selvaggio ….

ECF No. 113-22 at 5–6; ECF No. 113-2 at 13-15 (Guenther II Tr. at 88:20–89:8, 89:24–90:14).

177.   Guenther testified that she also did not sue Dan Clay and UFCW 555 because "the [UFCW] constitution requires that you have to go through an internal process when …. there's conflict that's member to member before litigation" and "I didn't have enough."  ECF No. 113-1 at 57 (Guenther I Tr. 204:12–20).

DEFS' STATEMENT OF DISPUTED MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 56

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 25th day of October, 2024.

Attorneys for Defendants

By: *s/ Sara A. Fairchild*
Ambika Kumar, WSBA #38237
Sara A. Fairchild, WSBA #54419
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone:  (206) 622-3150
Fax:  (206) 757-7700
ambikakumar@dwt.com
sarafairchild@dwt.com

John A. DiLorenzo (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
560 SW 10th Ave, Suite 700
Portland, OR 97205
Telephone: (503) 241-2300
Fax: (503) 778-5299
johndilorenzo@dwt.com

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 57

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2024, I caused the document to which this certificate is attached to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Aaron Streepy
Jim McGuinness
STREEPY LEMONIDIS CONSULTING & LAW
GROUP, PLLC
2800 First Avenue, Suite 211
Seatle, WA 98121
aaron@slglc.com
jim@mcguinnessstreepy.com

Dmitri Iglitzin
Darn M. Dalmat
Gabe Frumkin
BARNARD IGLITZIN & LAVITT LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
iglitzin@workerlaw.com
dalmat@workerlaw.com
frumkin@workerlaw.com

***Attorneys for Plaintiff Faye Irene Guenther***

I declare under penalty of perjury that the foregoing is true and accurate.

DATED this 25th day of October, 2024.

By: *s/ Sara A. Fairchild*
Sara A. Fairchild, WSBA #54419

DEFS' STATEMENT OF DISPUTED MATERIAL
FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT
Case No. 2:22-cv-00272-TOR - 58

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax