Dmitri Iglitzin, WSBA No. 17673
Darin M. Dalmat, WSBA No. 51384
Gabe Frumkin, WSBA No. 56984
BARNARD IGLITZIN & LAVITT LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6003
iglitzin@workerlaw.com
dalmat@workerlaw.com
frumkin@workerlaw.com

Aaron Streepy, WSBA 38149
Jim McGuinness, WSBA 23494
Streepy Lemonidis Consulting & Law Group, PLLC
2800 First Avenue, Suite 211
Seattle, WA 98121
Telephone: (253) 528-0278
Fax: (253) 528-0276
aaron@slglc.com
jim@mcguinnessstreepy.com

*Attorneys for Plaintiff Faye Guenther*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
## AT SPOKANE

| | |
|---|---|
| FAYE IRENE GUENTHER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH H. EMMONS, individually, and OSPREY FIELD CONSULTING LLC, a limited liability company,<br><br>Defendants. | No. 2:22-cv-00272-TOR<br><br>**PLAINTIFF'S REPLY STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**<br><br>NOTE ON MOTION CALENDAR: December 5, 2024, at 9:00 a.m. |

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

### PLAINTIFF'S REPLY STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

In accordance with L.Civ.R. 56(c), Plaintiff Faye I. Guenther respectfully submits the following Reply Statement of Material Facts Not in Dispute.

At the outset, Guenther notes that several of Emmons's[1] responses contend that the asserted fact has "no relevance to the merits of Guenther's claims" without purporting to controvert the asserted fact or to provide contrary record evidence that would support a claim that the asserted fact is disputed. Emmons does not appear to formally object to those asserted facts, as required by Fed. R. Civ. P. 56(c)(2) and L.Civ.R. 56(c)(1)(B). Nonetheless, his contentions that several of Guenther's assertions have no relevance could be read as evidentiary objections under Fed. R. Evid. 402.

To the extent Emmons intends to interpose evidentiary objections, his effort fails. In the Ninth Circuit, "objections for relevance are generally unnecessary on summary judgment because they are duplicative of the summary judgment standard itself." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (cleaned up). *Accord Rockness v. Rockness*, No. 2:21-CV-00153-MKD, 2023 WL 2705839, at *3 (E.D. Wash. Mar. 29, 2023) (overruling such objections). The better approach,

---

[1] This Statement uses "Emmons" to refer collectively to Defendants Joseph H. Emmons and Osprey Field Consulting.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 1
Case No. 2:22-cv-00272-TOR

the Ninth Circuit urges, is for parties to "simply *argue* the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections." *Sandoval*, 985 F.3d at 665 (emphasis in original). Relevance, after all, is a "low bar." *Id.* Nonetheless, as the *Sandoval* court briefly addressed the non-moving party's relevance objections there, Guenther briefly addresses Emmons's relevance objections below.

**BACKGROUND**

1.  Faye Guenther (Guenther) grew up in a rural Oregon community.

**Record:** Declaration of Faye I. Guenther (Guenther Decl.), ¶ 3.

> **Response:** This purported fact has no relevance to the merits of Guenther's claims.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, the fact is relevant background regarding the defamation plaintiff Guenther and the work she put in to develop her reputation over decades.

2.  Guenther was sexually abused as a child and again as a teenager.

**Record:** Guenther Decl. ¶ 7.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 2
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

**Response:** These purported facts have no relevance to the merits of Guenther's claims.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, the fact goes to Guenther's reputation and the harm Emmons caused by accusing her of complicity in covering up one of the worst harms anyone can suffer—a harm she has spent much of her life working to overcome through her advocacy for others. It also goes to the probability that Guenther did cover up sexual harassment and bribe sexual harassers and, thus, the falsity of the flyer's accusations.

3.  Guenther witnessed a gang rape in college and testified against the perpetrator. The perpetrator was convicted.

**Record:** Guenther Decl. ¶ 7.

**Response:** These purported facts have no relevance to the merits of Guenther's claims.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, the fact goes to Guenther's reputation and the harm Emmons caused by accusing her of complicity in covering up one of the worst harms

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 3
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

1   anyone can suffer—a harm she has spent much of her life working to overcome

2   through her advocacy for others. It also goes to the probability that Guenther did

3   cover up sexual harassment and bribe sexual harassers and, thus, the falsity of the

4   flyer's accusations.

5

6   4. These and other experiences led Guenther to become a life-long advocate

7      against sexual abuse and harassment. Throughout Guenther's time at UFCW

8      Local 21, she actively opposed sexual harassment within the union whenever

9      she became aware of it. Her efforts led to at least four people being removed

10     from the union.

11  **Record:** Guenther Decl. ¶¶ 5–8, 18; Declaration of Joseph (Joe) Mizrahi (Mizrahi

12  Decl.), ¶¶ 38–39.

13  **Response: DISPUTED** that Guenther is "a life-long advocate against sexual

14  abuse and harassment" and that "she actively opposed sexual harassment

15  within the union." Her conduct in response to the complaints about Eric

16  Renner's sexual harassment illustrate that this statement is false.

17  By at least December 2, 2021, Guenther "was notified that there had

18  been an internal dispute" at UFCW 1439 involving Renner that "had been

19  resolved amongst all parties with nondisclosure and … confidentiality

20  agreements." ECF No. 113-1 at 34, 38-39 (Guenther I Tr. 71:13–18, 93:12–

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 4
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

94:20); Declaration of John A. DiLorenzo, Jr., in Support of Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment ("DiLorenzo Decl.") Ex. A (Guenther I Tr.) at 71:13–75:1. She also knew that as a result, Renner was prohibited from "directly supervis[ing] any employees." ECF No. 113-1 at 38-39, 41, 55-56 (Guenther I Tr. 93:12–94:20, 99:5–14, 167:21– 168:9); ECF No. 113 ¶ 14 & ECF No. 113-13 at 2; ECF No. 113-2 at 11-12 (Guenther II Tr. 49:20–50:4); ECF No. 113-17 at 3–4. Laurel Fish testified that Guenther likely had seen the complaint letter that Fish and six other UFCW 1439 staff members wrote detailing Renner's abusive conduct, given how broadly the letter was circulated and Guenther's role as president-to-be of the merged union. DiLorenzo Decl. Ex. E (Fish Tr.) at 90:18–91:10. And even if Guenther did not see it, Fish directly told Guenther about Renner's abusive conduct in December 2021. *Id.* at 87:7–88:16. Despite all of this information, Guenther chose not to investigate further and continued to push the merger forward, allowing Renner to stay on with the union despite his agreement to resign. ECF No. 113-1 at 25-27, 36-37 (Guenther I Tr. 60:24– 62:12, 83:6–84:6); ECF No. 113-17 at 3–4. "What was important to [her]" was "that people stayed focused on the work"—not that union staff felt comfortable and protected from sexual harassment in their workplace. DiLorenzo Decl. Ex. A (Guenther I Tr.) at 72:20–74:18.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 5
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

On December 14, 2021, Guenther led a discussion with the UFCW 21 Executive Board, in which she advocated in favor of the merger and informed the Board that Renner would continue working for the merged union. ECF No. 113-1 at 26-27, 36-37 (Guenther I Tr. 61:19–62:12, 83:6–84:25); ECF No. 113-17 at 3–4. But she did not tell the UFCW 21 Executive Board about the claims against Renner, the nondisclosure agreements, Renner's agreement to resign, or that Renner was not allowed to supervise people. ECF No. 113-1 at 25-27, 36-37 (Guenther I Tr. 60:24–62:12, 83:6–84:6); ECF No. 113-17 at 3–4.

On December 15 or 16, 2021, Guenther read the Flyer, which plainly states Renner had faced "sexual harassment charges." ECF No. 113-1 at 40 (Guenther I Tr. 97:8–16). Yet, Guenther still did not look into these allegations. DiLorenzo Decl. Ex. A (Guenther I Tr.) at 98:1–99:14. Guenther also admits that she later became aware of "inappropriate" text messages between Renner and a UFCW 1439 staff member, Armando Rivera, involving "sexual harassment." DiLorenzo Decl. Ex. A (Guenther I Tr.) at 92:1–93:11. Again, she declined to speak with Renner or take any action with respect to Renner's involvement. *Id.* at 93:7–17.

**Reply:** Emmons does not dispute that:

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

- Guenther worked in college at the Center Against Rape and Domestic Violence, was a volunteer coordinator for that Center, ran the hotline, and filled shifts at the shelter. ECF No. 107, ¶ 5.

- Guenther led sexual assault survivor counseling sessions and became the point person for men who had been sexually assaulted. ECF No. 107, ¶ 7.

- Guenther feels passionately about helping domestic violence survivors, in part, because of her own experiences being subjected to sexual abuse as a child and a teenager and witnessing a gang rape. ECF No. 107, ¶ 7.

- Guenther joined the labor movement out of conviction that improving the economic well-being of women was critical for them to live safe and healthy lives, free from abuse. ECF No. 107, ¶ 8.

- Guenther led multiple internal investigations in UFCW 21 into allegations of sexual misconduct, leading to at least four people being removed from the union. ECF No. 107, ¶ 18.

- Guenther's advocacy at UFCW 21 resulted in annual discrimination trainings, a new Code of Conduct, and other reforms designed to eradicate sexual harassment from the union. ECF No. 107, ¶ 18.

- Guenther assisted several women on staff at UFCW 21 reporting sexual harassment by Joe Earleywine—Local 21's Organizing Director at the time— through the investigation into Mr. Earleywine, which led to his departure from

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 7
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    Local 21. When he later began work at UFCW International, Guenther pressed

2    the issue further, initially with Regional Director Kate Meckler and eventually

3    with International President Marc Perrone. Those efforts resulted in Mr.

4    Earleywine's early retirement. ECF No. 107, ¶¶ 19–22.

5        Despite failing to controvert any of these points (and thus conceding them

6    under L.Civ.R. 56(e)), Emmons nonetheless resists the assertions that Guenther is a

7    "life-long advocate against sexual abuse and harassment" and that "she actively

8    opposed sexual harassment within the union" based on what he—a non-UFCW

9    member—contends is an inadequate response by Faye Guenther to the letter of

10    concern (forwarded on September 13, 2021, to the Local 1439 Executive Board and

11    UFCW International President) allegations by several then-current or -former

12    UFCW Local 1439 staff members against Eric Renner. Yet, he cannot dispute:

13    •  Guenther had not seen that letter before the March 11, 2024, deposition of Laurel

14      Fish. ECF 116, ¶ 9 (citing ECF 117, Ex. 32: Guenther Tr. I 138:19–139:10).

15    •  Before the merger was completed in March 2022, all Guenther knew about the

16      matter was that an internal conflict within Local 1439 had been resolved to the

17      satisfaction of the affected parties—Guenther did not know the substance of the

18      dispute and had not seen the resulting settlement agreement. ECF 116, ¶ 9 (citing

19      ECF 117, Ex. 32, Guenther Tr I. 80:9–82:25, 93:18–94:8; Ex. 34, Guenther Tr.

20      II 28:8–30:1).

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1
2
3
4

- Renner is no longer the President of Local 1439, has never held any elected office with UFCW Local 3000, has never held any position at Local 3000 with responsibilities for governing that local union, and has never supervised anyone at Local 3000. ECF 118, ¶¶ 5–6.

5
6
7
8
9
10
11
12
13
14
15

In the face of these undisputed and indisputable facts, Emmons attempts to resist the assertion that Guenther is a life-long advocate against sexual abuse and harassment who has actively opposed sexual harassment within the union only by ascribing a unique obligation on her—and no other leader of any local union—to identify, ferret out, and eradicate sexual harassment at UFCW local unions where she has no authority or responsibility and to disrupt settlements those locals reach among themselves and their staff (and staff representatives, where applicable). Even apart from the validity of the allegations against Renner (which he denies, ECF No. 119, ¶¶ 7–11), such a freewheeling responsibility stands in stark tension to the significant autonomy UFCW local unions enjoy (ECF No. 118, ¶ 33), and which Emmons fails to dispute. *See* Response to Paragraph 11.

16
17

Emmons has not raised a genuine dispute of fact in response to the assertions of this Paragraph 4.

18
19
20

5. One example of her advocacy against sexual harassment occurred in September 2019, when she investigated Joe Earleywine—Local 21's

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
**BARNARD IGLITZIN & LAVITT LLP**

1    Organizing Director at the time—upon receiving reports of harassment. This

2    investigation caused Mr. Earleywine to leave Local 21. He nonetheless

3    secured a position with the United Food and Commercial Workers (UFCW)

4    International Union (IU or International), where he continued to engage with

5    Local 21 staff, making several women uncomfortable. Guenther then raised

6    the issue with Kate Meckler, the IU Regional Director for Region 7, which

7    covers the Pacific Northwest. Ms. Meckler did not investigate or respond to

8    Guenther's reports. Guenther then escalated the issue to IU President Marc

9    Perrone, resulting in Mr. Earleywine retiring early from the IU.

10   **Record:** Guenther Decl. ¶¶ 19–22 and Exhibit 1 thereto; Mizrahi Decl. ¶¶ 38–39.

11   **Response:** These purported facts have no relevance to the merits of

12   Guenther's claims. To the extent these purported facts are accurate (and the

13   record contains no evidence other than Guenther's self-serving declaration),

14   the evidence shows that Guenther opposes sexual harassment only selectively.

15   *See* Paragraph 4.

16   **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

17   uncontroverted and should be deemed undisputed and admitted. (Emmons is

18   mistaken in asserting that Guenther's declaration alone supports this assertion. She

19   has also offered testimony from another witness, Joe Mizrahi. ECF No. 108, ¶¶ 38–

20   39.)

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 10
Case No. 2:22-cv-00272-TOR

1    The charge of selective opposition is argument that does not require a

2 response. But to the extent a response may be helpful, Guenther reiterates the points

3 set forth in response to Paragraph 4: namely, at the relevant time, all Guenther knew

4 about the complaint by Local 1439 staff members against Renner was that there had

5 been an internal conflict that had been resolved to the affected parties' mutual

6 satisfaction; she did not otherwise insert herself into another local union's settlement;

7 and, in fact, Renner has never held office in Local 3000 or any position responsible

8 for governing the affairs of Local 3000, nor has he supervised other employees at

9 Local 3000.

10    As for the objection, the fact goes to Guenther's reputation and the harm

11 Emmons caused by accusing her of complicity in covering up one of the worst harms

12 anyone can suffer—a harm she has spent much of her life working to overcome

13 through her advocacy for others.

14

15 **THE RELEVANT UFCW LOCAL UNIONS**

16    6.  In 2019, Guenther became President of UFCW Local 21.

17 **Record:** Guenther Decl. ¶ 16.

18    **Response:** Undisputed.

19

20

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

7.  In 2019, Local 21 represented approximately 44,000 members, primarily in the grocery, healthcare, and cannabis industries in Seattle and greater Washington.

**Record:** Guenther Decl. ¶¶ 17, 20.

   **Response:** Undisputed.

8.  In 2019, Local 21 was the largest UFCW local union in the United States. Local 3000—Local 21's successor, formed from a merger with Local 1439— is currently the largest UFCW local union in the United States.

**Record:** Guenther Decl. ¶¶ 17, 86.

   **Response**: Undisputed.

9.  Throughout her tenure as Local 21 (and now Local 3000) President, Local 21 has achieved significant accomplishments, including increases in the minimum wage, sick leave, saving a failing pension, building new divisions within the union to better serve members, and renegotiating hundreds of contracts.

 **Record:** Guenther Decl. ¶ 15.

   **Response:** Undisputed.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 12
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1      10. Local 367 is a UFCW affiliate in Tacoma and surrounding counties in western

2          and southwestern Washington.

3  **Record:** Guenther Decl. ¶¶ 20, 28.

4      **Response:** Undisputed.

5

6      11. UFCW local unions typically enjoy significant autonomy but may be put

7          under trusteeship, in which case the International Union exercises significant

8          control over the trusteed local, including by appointing a trustee who takes

9          over control from the local's elected officers.

10  **Record:** Guenther Decl. ¶ 33.

11      **Response:** These purported facts have no relevance to Guenther's claims.

12  **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

13  uncontroverted and should be deemed undisputed and admitted.

14      As for the objection, the autonomy of UFCW local unions goes to Guenther's

15  authority to interfere in Local 1439's settlement of claims by Renner's accusers, and

16  also provides significant background to understand the relationship between Local

17  555, Local 367, Local 21, Local 1439, and Local 3000—which set the central facts

18  of this case in motion.

19      The trusteeship of Local 367 goes to how Angel Gonzalez obtained his

20  position as President of Local 367.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 13
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

1  12. UFCW put Local 367 under trusteeship in or around January 2019.

2  **Record:** Guenther Decl. ¶ 32.

3      **Response:** This purported fact has no relevance to the merits of Guenther's

4      claims.

5  **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

6  uncontroverted and should be deemed undisputed and admitted.

7      As for the objection, the trusteeship goes to how Angel Gonzalez obtained his

8  position as President of Local 367.

9

10

11  13. During that trusteeship, the International hired Angel Gonzalez Irazarry to

12      work at Local 367 in a leadership position.

13  **Record:** Guenther Decl. ¶ 34.

14      **Response:** Undisputed.

15

16  14. Local 367's trusteeship ended at the end of June 2020.

17  **Record:** Guenther Decl. ¶ 35.

18      **Response:** Undisputed.

19

20

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    15. Gonzalez became President of Local 367 in or around July 2020.

2    **Record:** Guenther Decl. ¶ 35.

3        **Response:** Undisputed.

4

5    16. Local 555 is a UFCW affiliate in Oregon with approximately 30,000

6        members.

7    **Record:** Guenther Decl. ¶¶ 20, 58.

8        **Response:** Undisputed.

9

10    17. Dan Clay is Local 555's President. He has held that position since August

11        2008.

12    **Record:** Guenther Decl. ¶ 58.

13        **Response:** Undisputed that Dan Clay is Local 555's President and that he held

14        that position during the relevant time period. Clay in fact became Local 555

15        President in January 2009, but that discrepancy is not relevant to Guenther's

16        claims.

17    **Reply:** Emmons provides no record support for his dispute with the timing of when

18    Dan Clay first became President of Local 555. As a result, under L.Civ.R. 56(e), the

19    assertions set forth in this Paragraph are uncontroverted and should be deemed

20    undisputed and admitted.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 15
Case No. 2:22-cv-00272-TOR

1    Guenther nonetheless agrees that the discrepancy between the August 2008

2    and January 2009 commencement of Mr. Clay's Presidency at Local 555 is not

3    material to this case.

4

5    18. Clay is also an International Vice President (IVP) of UFCW and serves on its

6    International Executive Board (IEB)—the International Union's governing

7    body. He had held that position for many years.

8    **Record:** Guenther Decl. ¶ 60.

9    **Response:** Undisputed.

10

11   **LOCAL 555 PRESIDENT DAN CLAY'S RELATIONSHIP WITH GUENTHER**

12   19. Guenther and Clay have known each other since 2008. For many years, they

13   were friends and collaborators within the labor movement.

14   **Record:** Guenther Decl. ¶¶ 59, 78.

15   **Response:** These purported facts have no relevance to the merits of

16   Guenther's claims against Emmons.

17   **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

18   uncontroverted and should be deemed undisputed and admitted.

19   As for the objection, the fact goes to Guenther's relationship with Clay,

20   Emmons's patron who set the smear campaign in motion. It also goes to the hostility

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 16
Case No. 2:22-cv-00272-TOR

of the sources on which Emmons relied for the truth of the accusations he spread—although Guenther's and Clay's relationship began as a friendship and collaboration, when Clay turned on her, he knew how to calculate accusations to cause her maximal reputational harm on those issues she cared about most deeply.

20. In 2019, Guenther suggested that all local unions in UFCW Regions 7 and 8 should bargain together against Kroger and Albertsons. Clay opposed that approach, apparently worried that he would no longer have control over his members.

**Record:** Guenther Decl. ¶ 64.

**Response:** These purported facts have no relevance to the merits of Guenther's claims against Emmons.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, the fact goes to Guenther's relationship with Clay, Emmons's patron who set the smear campaign in motion. It also goes to the hostility of the sources on which Emmons relied for the truth of the accusations he spread—although Guenther's and Clay's relationship began as a friendship and collaboration, when Clay turned on her, he knew how to calculate accusations to cause her maximal reputational harm on those issues she cared about most deeply.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1

2    21.On July 19, 2021, Kate Meckler emailed Clay, Gonzalez, Eric Renner (the

3        then-President of Local 1439 in Eastern Washington, with approximately

4        7,800 members at the time), and other local union presidents within Regions

5        7 and 8 regarding an upcoming meeting to discuss coordination for the 2021–

6        2022 negotiations in the retail industry. Ms. Meckler invited suggestions for

7        the agenda.

8    **Record:** Guenther Decl. ¶¶ 61, 86; Guenther Decl. Ex. 8 (UFCW-

9    EMMONS_000781–784).

10        **Response:** These purported facts have no relevance to the merits of

11        Guenther's claims against Emmons.

12    **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

13    uncontroverted and should be deemed undisputed and admitted.

14        As for the objection, the fact goes to Clay's longstanding efforts, in

15    coordination with Meckler and others, to undermine Guenther and her reputation—

16    efforts that, through Emmons's negligence and actual malice, finally advanced

17    Clay's yearslong objective.

18

19    22.Guenther responded on July 20, 2021, with her suggestions.

20    **Record:** Guenther Decl. ¶ 62.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 18
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    **Response:** This purported fact has no relevance to the merits of Guenther's

2    claims against Emmons.

3    **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

4    uncontroverted and should be deemed undisputed and admitted.

5        As for the objection, the fact goes to Clay's longstanding efforts, in

6    coordination with Meckler and others, to undermine Guenther and her reputation—

7    efforts that, through Emmons's negligence and actual malice, finally advanced

8    Clay's years' long objective.

9

10      23. Clay replied to that email, omitting Guenther and including Esai Alday

11         (Clay's executive assistant), Gonzalez, and Meckler, saying "Shit We'd better

12         plan for a week…"

13   **Record:** Guenther Decl. ¶ 63; Guenther Decl. Ex. 8 (UFCW-EMMONS_000781–

14   784).

15       **Response:** These purported facts have no relevance to the merits of

16   Guenther's claims against Emmons.

17   **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

18   uncontroverted and should be deemed undisputed and admitted.

19       As for the objection, the fact goes to Clay's longstanding efforts, in

20   coordination with Meckler and others, to undermine Guenther and her reputation—

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 19
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1    efforts that, through Emmons's negligence and actual malice, finally advanced

2    Clay's years' long objective. It also goes to the hostility of the sources on which

3    Emmons ultimately relied for the truth of the accusations he spread.

4

5    24. On July 21, 2021, Clay responded to Meckler's July 19 email, including all

6        original recipients, explaining that Locals 555 and 368A had agreed to a

7        merger and Local 555 had been in discussions with Local 367 over

8        coordinated bargaining.

9    **Record:** Guenther Decl. ¶ 65; Guenther Decl. Ex. 9 (UFCW-EMMONS_000785–

10   786).

11       **Response:** These purported facts have no relevance to the merits of

12       Guenther's claims against Emmons.

13   **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

14   uncontroverted and should be deemed undisputed and admitted.

15       As for the objection, the fact goes to Clay's longstanding efforts, in

16   coordination with Meckler and others, to undermine Guenther and her reputation—

17   efforts that, through Emmons's negligence and actual malice, finally advanced

18   Clay's years' long objective. It also goes to the hostility of the sources on which

19   Emmons ultimately relied for the truth of the accusations he spread.

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 20
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    25.At the time, Local 368A was headquartered in Boise, Idaho, and represented

2        approximately 1,100 members in Idaho, eastern Oregon, and western

3        Wyoming. As a result of the merger, Local 555 represented approximately

4        25,000 members.

5    **Record:** Guenther Decl. ¶ 66.

6        **Response:** These purported facts have no relevance to the merits of

7        Guenther's claims against Emmons.

8    **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

9    uncontroverted and should be deemed undisputed and admitted.

10        As for the objection, the fact goes to Clay's longstanding efforts, in

11   coordination with Meckler and others, to undermine Guenther and her reputation—

12   efforts that, through Emmons's negligence and actual malice, finally advanced

13   Clay's years' long objective. It also goes to the hostility of the sources on which

14   Emmons ultimately relied for the truth of the accusations he spread.

15

16    26.Guenther opposed coordinated bargaining between Locals 555 and 367,

17        fearing that doing so would undercut labor standards Local 21 had achieved

18        in Washington for its members.

19   **Record:** Guenther Decl. ¶¶ 67–70; Guenther Decl. Ex. 10 (UFCW-

20   EMMONS_000801–804).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 21
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1  **Response:** These purported facts have no relevance to the merits of

2  Guenther's claims against Emmons.

3  **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

4  uncontroverted and should be deemed undisputed and admitted.

5  As for the objection, the fact goes to Clay's longstanding efforts, in

6  coordination with Meckler and others, to undermine Guenther and her reputation—

7  efforts that, through Emmons's negligence and actual malice, finally advanced

8  Clay's years' long objective. It also goes to the hostility of the sources on which

9  Emmons ultimately relied for the truth of the accusations he spread.

10

11  27.Clay sent an email on July 28, 2021, describing Guenther's concerns as

12  "delightfully petty." He elaborated that reading her concerns "made [his]

13  night."

14  **Record:** Guenther Decl. ¶ 71.

15  **Response:** These purported facts have no relevance to the merits of

16  Guenther's claims against Emmons.

17  **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

18  uncontroverted and should be deemed undisputed and admitted.

19  As for the objection, the fact goes to Clay's longstanding efforts, in

20  coordination with Meckler and others, to undermine Guenther and her reputation—

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

1   efforts that, through Emmons's negligence and actual malice, finally advanced

2   Clay's yearslong objective. It also goes to the hostility of the sources on which

3   Emmons ultimately relied for the truth of the accusations he spread.

4

5   28. That day, July 28, 2021, Clay filed a formal complaint with IU President Marc

6       Perrone, alleging that Local 21 interfered with Local 555's and 367's

7       bargaining. His email copied Mike Hines—then Secretary Treasurer of Local

8       367—not its President, Gonzalez.

9   **Record:** Guenther Decl. ¶¶ 72–74; Guenther Decl. Ex. 11 (UFW-EMMONS-

10  000004–05).

11      **Response:** These purported facts have no relevance to the merits of

12      Guenther's claims against Emmons.

13  **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

14  uncontroverted and should be deemed undisputed and admitted.

15      As for the objection, the fact goes to Clay's longstanding efforts, in

16  coordination with Meckler and others, to undermine Guenther and her reputation—

17  efforts that, through Emmons's negligence and actual malice, finally advanced

18  Clay's years' long objective. It also goes to the hostility of the sources on which

19  Emmons ultimately relied for the truth of the accusations he spread. It also goes to

20  the falsity of the flyer's accusation that Hines was Guenther's puppet.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 23
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    29. Under the UFCW Constitution, a Local President, not its Secretary Treasurer,

2        is the chief executive officer of the Local Union. Ordinarily, a Local President,

3        not its Secretary Treasurer, would be the appropriate official to confirm

4        whether an official complaint for violating the IU Constitution was, in fact,

5        on behalf of the Local Union.

6    **Record:** Guenther Decl. ¶ 75.

7        **Response:** These purported facts have no relevance to the merits of

8        Guenther's claims against Emmons.

9    **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

10   uncontroverted and should be deemed undisputed and admitted.

11       As for the objection, the fact supports the notion that unlike Guenther, Clay

12   knew Gonzalez had resigned before he had publicly announced it. That proposition,

13   in turn, makes it more likely that Clay actually knew Gonzalez faced sexual

14   harassment allegations and that Guenther had nothing to do with them—and

15   certainly did not pay off Gonzalez or cover up those allegations. The fact, in short,

16   makes it more likely that Clay acted with actual malice when he put the smear

17   campaign into motion. While Guenther acknowledges that she must prove

18   Emmons's fault, Emmons's ultimate reliance on Clay's representations (through

19   Selvaggio) is thoroughly tainted with hostility. This evidence weighs in favor of

20   finding that Emmons circulated the flyers with actual malice.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 24
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

30. The oddity of Clay copying Hines, not Gonzalez, on his July 28, 2021, suggests that as of July 28, 2021, Clay knew (or strongly suspected) that Gonzalez had already resigned as President of Local 367 and, for that reason, Hines was authorized to speak on behalf of Local 367.

**Record:** Guenther Decl. ¶ 76.

**Response:** These purported facts have no relevance to the merits of Guenther's claims against Emmons.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, the fact supports the notion that unlike Guenther, Clay knew Gonzalez had resigned before he had publicly announced it. That proposition, in turn, makes it more likely that Clay actually knew Gonzalez faced sexual harassment allegations and that Guenther had nothing to do with them—and certainly did not pay off Gonzalez or cover up those allegations. The fact, in short, makes it more likely that Clay acted with actual malice when he put the smear campaign into motion. While Guenther acknowledges that she must prove Emmons's fault, Emmons's ultimate reliance on Clay's representations (through Selvaggio) is thoroughly tainted with hostility. This evidence weighs in favor of finding that Emmons circulated the flyers with actual malice.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 25
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

31. Mike Hines then joined Clay's complaint.

**Record:** Guenther Decl. ¶¶ 74–76; Dalmat Decl. Ex. 1 (UFCW-EMMONS_000987–990).

> **Response:** These purported facts have no relevance to the merits of Guenther's claims against Emmons.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, the fact shows Hines was not Guenther's puppet. It therefore goes to the falsity of the flyers Emmons published.

32. On September 29, 2021, Guenther sent Clay an email, titled "Setting up a Conversation," in which she tried to work with Clay to mediate their dispute.

**Record:** Guenther Decl. ¶ 78.

> **Response:** This purported fact has no relevance to the merits of Guenther's claims against Emmons.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, the fact goes to Clay's hostility, which is relevant to Emmons's fault. While Guenther acknowledges that she must prove Emmons's fault, Emmons's ultimate reliance on Clay's representations (through Selvaggio) is

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 26
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

thoroughly tainted with hostility. It is thus circumstantial evidence of Emmons's actual malice.

33.Clay never responded to Guenther's September 29, 2021, offer of mediation. **Record:** Guenther Decl. ¶ 79.

**Response:** This purported fact has no relevance to the merits of Guenther's claims against Emmons.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, the fact goes to Clay's hostility. While Guenther acknowledges that she must prove Emmons's fault, Emmons's ultimate reliance on Clay's representations (through Selvaggio) is thoroughly tainted with hostility. It is thus circumstantial evidence of Emmons's actual malice.

34.On October 19, 2021, IU President Perrone sent Guenther a letter directing Local 21 to cease and desist interfering with Local 555's bargaining relationships. **Record:** Guenther Decl. ¶ 80; Guenther Decl. Ex. 12 (UFCW-EMMONS_000006).

**Response:** This purported fact has no relevance to the merits of Guenther's claims against Emmons.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 27
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1    **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

2    uncontroverted and should be deemed undisputed and admitted.

3          As for the objection, the fact goes to Clay's hostility. While Guenther

4    acknowledges that she must prove Emmons's fault, Emmons's ultimate reliance on

5    Clay's representations (through Selvaggio) is thoroughly tainted with hostility. It is

6    thus circumstantial evidence of Emmons's actual malice.

7

8    35. Guenther sought to appeal IU President Perrone's October 19, 2021, cease

9          and desist directive, or otherwise to have him rescind it. Initially, those efforts

10         were unsuccessful.

11    **Record:** Guenther Decl. ¶¶ 81–84; Guenther Decl. Ex. 13 (UFCW-

12    EMMONS_000051–53); Guenther Decl. Ex. 14 (RFP No. 15 Resp – 015153–

13    015154).

14          **Response:** This purported fact has no relevance to the merits of Guenther's

15    claims against Emmons.

16    **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

17    uncontroverted and should be deemed undisputed and admitted.

18          As for the objection, the fact goes to Clay's hostility, as he is the one who

19    sought this directive. While Guenther acknowledges that she must prove Emmons's

20    fault, Emmons's ultimate reliance on Clay's representations (through Selvaggio) is

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

thoroughly tainted with hostility. It is thus circumstantial evidence of Emmons's actual malice.

**MERGER BETWEEN LOCALS 21 AND 1439**

36. On September 30, 2021, Eric Renner called Guenther to explore the possibility of Local 1439 and 21 merging.

**Record:** Guenther Decl. ¶ 85.

**Response:** Undisputed.

37. Even before becoming Local 21 President, Guenther thought there may be value in a merger between Locals 21 and 1439. But she had not done anything to pursue such a merger before receiving Renner's call on September 30, 2021. That call struck Guenther as a bit out of the blue.

**Record:** Guenther Decl. ¶ 87.

**Response:** Undisputed based on the record.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

38. During the September 30 call, Renner told Guenther he felt overwhelmed with his responsibilities as local president because he had also been taking care of

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 29
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132   **LAVITT LLP**

1    his ailing mother. He did not say anything during the call about facing

2    allegations from his staff of sexual harassment or other misconduct.

3    **Record:** Guenther Decl. ¶ 88.

4    **Response:** DISPUTED to the extent the statement implies that Renner was

5    interested in a merger because "he felt overwhelmed with his responsibilities

6    as local president." Before September 2021, Renner was strongly opposed to

7    a merger between UFCW 1439 and UFCW 21. *See* DiLorenzo Decl. Ex. F

8    (Jackson Tr.) at 91:8–95:10; *id.* Ex. G (Garcia Tr.) at 81:10–18. Renner first

9    expressed interest in merging only after Streepy began investigating

10    complaints from UFCW 1439 staff members regarding Renner's sexual

11    harassment, and likely after Renner understood that he would need to resign.

12    *See infra* ¶¶ 110–114.

13    **Reply:** The actual facts asserted in Paragraph 38 are about what Renner did, and did

14    not, say to Guenther in their September 30, 2021, telephone call. Emmons does not

15    controvert those facts. Under L.Civ.R. 56(e), then, those asserted facts are

16    uncontroverted and should be deemed undisputed and admitted.

17        Instead of controverting the asserted facts, Emmons tries to dispute their

18    implications but does so based on testimony from two former Local 1439 employees,

19    Adam Jackson and Alex Garcia. Jackson's cited testimony describes what he

20    recalled about views Renner had expressed about a merger with Local 21 at some

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 30
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

unspecified time before August 2021. ECF No. 123-6, Tr. 91:8–95:10. As Jackson

admits, his recollections are "far away from the time" of August 2021—i.e., well

before then. ECF No. 123-6, Tr. 94:11–13. As for Garcia, he recalls Renner saying

that he was adamantly opposed to a merger with Local 21 based on Renner's

animosity toward Todd Crosby. ECF No. 123-7, Tr. 81:10–18. Todd Crosby was

last President of Local 21 in 2019. ECF No. 109, ¶ 6. Guenther has been President

of Local 21 since May 2019. ECF No. 107, ¶ 16; *supra*, ¶ 6.

Thus, whatever views Jackson and Garcia recall Renner expressing about a

potential merger of Local 1439 with Local 21 are outdated. In fact, Renner has

testified to the actual reasons why he began to consider a merger in the fall of 2021.

ECF 119, ¶ 11. In short, he had been overworked for a long time, causing his own

health to suffer, at the same time his mother was ailing, and he wanted to be more

present for her. *Id.* He felt like he could not count on all his staff, as some were

underdeveloped. *Id.* And he had worked collaboratively and productively with

Guenther since COVID began. *Id.* In 2021, given these circumstances, he felt like a

merger was in the best interests of the members. *Id.*


39. Guenther did not say much during that call.

**Record:** Guenther Decl. ¶ 89.

**Response:** Undisputed.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 31
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

40. In the next few weeks after September 30, 2021, Guenther called Renner to let him know she was open to exploring a Local 21/1439 merger. Then, or shortly thereafter, they set up a meeting for October 27, 2021.

**Record:** Guenther Decl. ¶ 90.

    **Response: Undisputed** that Guenther called Renner to let him know that she was interested in a merger between Local 21 and Local 1439, and that Guenther set up a meeting with Renner for October 27, 2021. **DISPUTED** to the extent this statement implies that this call occurred later than September 30, 2021, or that there were no other communications regarding the merger between September 30 and October 27, 2021. ECF No. 113 ¶ 13 & No. 113-12 at 30–33; ECF No. 113-2 at 3-4 (Guenther II Tr. 30:16–31:7).

**Reply:** The parties agree Guenther called Renner to let him know she was open to exploring a merger between Local 21 and Local 1439, and that the two of them set up a meeting for October 27, 2021.

    Emmons appears to dispute the timing of Guenther's return call. In fact, Guenther testified that it occurred after September 30, 2021, but within a few weeks of that date, without specifying the exact date. ECF 107, ¶ 90. Emmons's record citations do not genuinely dispute the point. ECF No. 113, ¶ 13 & No. 113-12 at 30–33 show text messages between Guenther and Renner. ECF No. 113-2 at 3–4 contains testimony from the second day of Guenther's deposition, Guenther II Tr. 30:16–31:7,

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 32
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    describing additional text messages. Neither the cited document nor the cited

2    testimony shows the date of the return call.

3        In any event, the specific timing of that return call—whether on September

4    30, 2021, or a few weeks later—is not material to any issue in this case.

5

6    41. To prepare for that meeting, on October 21, 2021, Guenther sent Renner a

7        sample merger agreement Local 21 had used when it previously explored a

8        merger with Local 367. (That merger with Local 367 did not come to pass.)

9    **Record:** Guenther Decl. ¶ 91.

10       **Responding:** Undisputed.

11

12   42. On October 28, 2021, Guenther and Renner hand delivered to Meckler a letter

13       addressed to IU President Perrone requesting formal approval by the

14       International Executive Committee for Locals 21 and 1439 to engage in

15       formal merger discussions. Meckler had previously allied with Clay and

16       others against Guenther on various matters.

17   **Record:** Guenther Decl. ¶¶ 20–22, 27, 30–31, 63–65, 71, 92; Guenther Decl. Ex. 15

18   (Guenther Dep. Ex. 8); Dalmat Decl. Ex. 2 (UFCW-EMMONS_000899–901).

19       **Response:** Undisputed that on October 28, 2021, Guenther hand delivered to

20       Kate Meckler a letter addressed to UFCW International President Marc

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 33
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

Perrone requesting approval for Locals 21 and 1439 to engage in formal merger discussions, and that Guenther believed Meckler may oppose the merger. The remaining purported facts in this paragraph are irrelevant to Guenther's claims.

**Reply:** Under L.Civ.R. 56(e), all assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, understanding the relationships between Meckler and Clay is helpful to understand the hostility of the sources Emmons (through Selvaggio) ultimately relied upon, which goes to Emmons's fault in publishing false statements about Guenther.

43. Under the UFCW Constitution, the International Executive Committee must approve formal merger discussions before they begin.

**Record:** Guenther Decl. ¶ 92.

**Response:** Undisputed.

44. The October 28, 2021, letter explained Guenther's and Renner's view that the merger was in the best interests of the membership.

**Record:** Guenther Decl. ¶¶ 92–93; Guenther Decl. Ex. 15 (Guenther Dep. Ex. 8).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 34
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    **Response: Undisputed** that the letter provided reasons the merger was

2    supposedly in the best interests of the Local 21 and Local 1439 membership.

3    **DISPUTED** that Renner believed the merger was in the best interests of Local

4    1439's membership. Before September 2021, Renner had repeatedly stated to

5    his staff that he was opposed to a merger with UFCW 21. *See* DiLorenzo Decl.

6    Ex. F (Jackson Tr.) at 91:8–95:10; *id.* Ex. G (Garcia Tr.) at 81:10–18.

7    **Reply:** The materials Emmons cites do not establish a genuine dispute as to whether,

8    as of October 28, 2021, the views set forth in the letter fairly reflected Renner's

9    views that a merger was in the best interests of the Local 1439 membership. At most,

10   they show that, at some point "far away from" and earlier than August 2021, Jackson

11   heard Renner express disinterest in a merger, ECF No. 123-6, Tr. 94:11–13; *supra*

12   ¶ 38, and in or before 2019, Garcia heard Renner express similar views. ECF No.

13   123-7, Tr. 81:10–18. That testimony is outdated. *Supra* ¶ 38. In fact, in the fall of

14   2021, Renner was feeling overworked, concerned for his own health, concerned for

15   his mother's health, and skeptical of his ability to deliver for his members without a

16   significant change at Local 1439. ECF 119, ¶ 11. In 2021, given these circumstances,

17   he felt like a merger was in the best interests of the members. *Id.*

18        In short, Emmons's record citations do not create a genuine dispute of fact as

19   to whether the October 28, 2021, letter accurately reflected Renner's sincere views

20   as of the time of that letter.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

45. Guenther later called President Perrone to request a face-to-face meeting to discuss the merger. That meeting occurred, with only President Perrone, his executive assistant Lori Werner, and Guenther in attendance.

**Record:** Guenther Decl. ¶ 94.

    **Response:** Undisputed

46. At the meeting, President Perrone pledged his verbal support for the merger. Meckler nonetheless held the formal approval until after a union-election vote at a Fred Meyer store in Richland, Washington, late in November.

**Record:** Guenther Decl. ¶ 94.

    **Response:** Undisputed.

47. Even though formally merger discussions had not yet been approved and were not public, on November 13, 2021, Clay emailed President Perrone detailing his opposition to a Local 21/1439 merger.

  **Record:** Dalmat Decl. Ex. 3 (UFCW-EMMONS_000923–924).

    **Response:** These purported facts have no relevance to the merits of Guenther's claims.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 36
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

1    As for the objection, Clay's email shows that Clay's "specific concerns" with

2  the Local 21/1439 merger centered on Local 555 revenues and governance: whether

3  the union would still have a buffer against "flashpoints" in Northeastern Oregon and

4  Idaho against the newly merged local, whether the newly merged local would have

5  control over 401(k) funds then partly managed by Local 1439, and whether

6  Guenther's influence would become, from his perspective, a "spreading cancer in

7  Region 7 and the International." ECF No. 106, Ex. 3 at UFCW-Emmons_000923.

8  Clay was doing what he could—ultimately, through Emmons as his agent—to

9  poison Guenther's reputation at the International. And Emmons's reliance on Clay

10  as the ultimate source of his information supporting the flyer was reliance on a

11  thoroughgoingly hostile source. His failure to investigate the truth of the claims

12  despite their hostile source is evidence of Emmons's fault.

13

14    48. Clay's email alleged that the merger would cover up and protect sexual

15    harassers and would "negatively impact Local 555 members," including by

16    escalating jurisdictional tensions between the Oregon and Washington-based

17    locals, giving the Washington-based local control over Local 555's retirement

18    plans, and putting Guenther in a position to have more influence in the Pacific

19    Northwest.

20  **Record:** Dalmat Decl. Ex. 3 (UFCW-EMMONS_000923–924).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 37
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1    **Response:** These purported facts have no relevance to the merits of

2    Guenther's claims.

3    **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

4    uncontroverted and should be deemed undisputed and admitted.

5        As for the objection, Clay's email shows that Clay's "specific concerns" with

6    the Local 21/1439 merger centered on Local 555 revenues and governance: whether

7    the union would still have a buffer against "flashpoints" in Northeastern Oregon and

8    Idaho against the newly merged local, whether the newly merged local would have

9    control over 401(k) funds then partly managed by Local 1439, and whether

10   Guenther's influence would, from his perspective, become a "spreading cancer in

11   Region 7 and the International." ECF No. 106, Ex. 3 at UFCW-Emmons_000923.

12   Clay was doing what he could—ultimately, through Emmons as his agent—to

13   poison Guenther's reputation at the International. And Emmons's reliance on Clay

14   as the ultimate source of his information supporting the flyer was reliance on a

15   thoroughgoingly hostile source.

16

17       49. On December 2, 2021, President Perrone sent Guenther a letter officially

18       granting permission for Locals 21 and 1439 to enter into formal merger

19       discussions.

20   **Record:** Guenther Decl. ¶ 95; Guenther Decl. Ex. 16 (Guenther Dep. Ex. 9).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 38
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1  **Response:** Undisputed.

2

3  50. Over the next couple weeks, principally from December 9 through 13, 2021,

4  Guenther and Renner began discussing the prospect of a merger with key staff

5  at Local 21 and Local 1439. Those discussions were limited to approximately

6  six high-level staff of the two local unions. No public outreach occurred at

7  this time.

8  **Record:** Guenther Decl. ¶ 96.

9  **Response**: Undisputed that Guenther and Renner discussed their proposed

10  merger with key staff at UFCW 21 and UFCW 1439 between December 9 and

11  13, 2021, and that the unions had not publicly announced the merger at that

12  time.

13  **Reply:** Emmons does not address the specific assertions that the discussions

14  between December 9 and 13, 2021, were limited to approximately six high-level

15  staff of the two local unions and that no public outreach (which goes beyond a mere

16  announcement) on the merger occurred at this time.

17  Under L.Civ.R. 56(e), those assertions, as well as the ones Emmons

18  specifically acknowledges as undisputed, are uncontroverted and should be deemed

19  undisputed and admitted.

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 39
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

51. On December 14, 2021, Locals 21 and 1439 held meetings of their respective Boards. The Local 21 Board had approximately 36 rank-and-file members, and the Local 1439 Board had approximately 12 members. The Boards discussed the merger during executive sessions, which are reserved for sensitive, private discussions. Each Board recommended putting the merger question to a vote of their respective members.

**Record:** Guenther Decl. ¶¶ 97–101; Guenther Decl. Ex. 17 (RFP Resp No 6 – 006001–03).

**Response:** Undisputed that the UFCW 21 Executive Board and the UFCW 1439 Executive Board held meetings on December 14, 2021, in which they discussed the merger and voted to recommend the merger to members, who would then vote on it. See ECF No. 113-17 at 2–3 (noting "discussion … lead [sic] by Faye Guenther on recommendation of merging with UFCW Local 1439" that resulted in board "recommend[ing] its approval to the UFCW 21 membership").

**Reply:** Emmons does not directly address several key points in this paragraph: i.e., the Local 21 Executive Board had only 36 rank-and-file members and the Local 1439 Board had only 12 members; and the merger discussions occurred in executive sessions, which are reserved for sensitive, private discussions. Under L.Civ.R. 56(e),

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

those assertions, as well as the ones Emmons specifically acknowledges as undisputed, are uncontroverted and should be deemed undisputed and admitted.

52. Under the terms of the UFCW Constitution, two local unions may merge only if each local union membership separately approves the merger by a majority of that local's members casting votes.

**Record:** Guenther Decl. ¶ 102.

**Response:** Undisputed.

53. By letter dated January 6, 2022, Local 21 provided notice to its membership of the upcoming merger vote. The notice identified the dates, times, and places of the meetings where members could vote and provided basic information about the process. It did not, however, ask any member to vote in favor of the merger.

**Record:** Guenther Decl. ¶ 103; Guenther Decl. Ex. 18 (2022 Winter GMM Mailer).

**RESPONSE**: **Undisputed** that on January 6, 2022, the notice at Guenther Decl. Ex. 18 was sent to UFCW 21 members. **DISPUTED** to the extent the statement implies this was UFCW 21's first or only communication with members regarding the merger. For example, UFCW 21 announced the merger on December 17, 2021, on its website and urged members to vote in

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 41
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

favor of it. *See infra* ¶ 61 (citing ECF No. 10-19;

https://ufcw3000.org/news/2021/12/17/building-our-poweras-

the-largest-ufcw-local-in-the-nation (last accessed October 25, 2024)).

**Reply:** The fact actually asserted by Paragraph 53 is uncontroverted and, under

L.Civ.R. 56(e), should be deemed undisputed and admitted.

54. From January 6–20, 2022, Local 1439 held meetings during which members

voted on the merger.

**Record:** Dalmat Decl. Ex. 4 (Guenther Tr. 172:1–174:12).

**Response:** Undisputed.

55. Local 1439 did not, however, conduct a public campaign on the merger.

**Record:** Dalmat Decl. Ex. 5 (Jackson Tr. 135:21–137:17); Crosby Decl. ¶ 14.

**Response:** DISPUTED. UFCW 1439 announced the merger vote to members

on December 17, 2021. ECF No. 113-24 at 2 At the meetings where members

voted on the merger, UFCW 1439—with Guenther's help—informed

members that UFCW 1439's Executive Board recommended the merger and

thereby encouraged members to vote in favor of it. ECF No. 113-18 at 2.

Guenther and Renner also communicated with key individuals to get their

support for the merger. ECF No. 113-12 at 18, 23, 26, 29–33.

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

**Reply:** Emmons's citations do not create a genuine dispute as to whether Local 1439 conducted a public campaign on the merger.

Emmons first points to a February 22, 2022, letter from Renner to Todd Crosby, then Regional Director of UFCW Region 7, saying that "[n]otice of the merger vote was provided to our membership on December 17, 2021." ECF No. 113-24 at 2. There is, of course, a wide gulf between a single communication providing formal notice of a merger vote and a public campaign to advocate a position in favor of the merger. In any event, the same Todd Crosby who received Renner's letter testified that he does not recall any public campaign with respect to the 2022 merger between Local 21 and 1439. ECF No. 109, ¶ 14. He specifically does not recall any mass mailings, email blasts, text message blasts, or social media posts advocating for or against the merger. *Id.* If any such dialogue happened, it did not generate enough debate to rise to the level that it captured his notice as then-Regional Director of Region 7. *Id.*

Emmons next asserts that at the meetings where members voted on the merger, UFCW 1439—with Guenther's help—informed members that UFCW 1439's Executive Board recommended the merger and thereby encouraged members to vote in favor of it. This assertion fails to genuinely dispute the lack of a public campaign for three reasons.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 43
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    **First,** the evidence Emmons points to is not competent to create such a

2    dispute. He relies on a January 5, 2022, email in which Guenther communicated her

3    plans to attend Local 1439's merger-vote meetings. ECF No. 113-18 at 2. In fact, as

4    of January 5, 2022, Guenther planned to send experienced Local 21 staff members

5    to assist with Local 1439's administration of the merger vote to ensure compliance

6    with legal requirements under federal law (i.e., the Labor–Management Reporting

7    and Disclosure Act) and the UFCW Constitution. ECF No. 116, ¶ 48; ECF No. 118,

8    ¶¶ 11–15. Guenther herself initially planned to attend those meetings for the same

9    purpose but was not able to do so because she contracted COVID. ECF No. 118,

10    ¶ 15. The January 5, 2022, email Emmons cites (ECF No. 113-18 at 2) says nothing

11    about communicating UFCW 1439's Executive Board recommendation in favor of

12    the merger.

13    **Second**, it is undisputed that only 2.5% of Local 1439 members participated

14    in the merger vote (*see supra*, ¶ 56), less than 0.5% of Local 21 members participated

15    in the merger vote (*see supra*, ¶ 59), and less than 0.8% of all affected members

16    participated in the merger vote (*see supra*, ¶¶ 56, 59). Even though the undisputed

17    facts show that Guenther did not attend Local 1439's merger-vote meetings, let alone

18    speak in favor of the merger at those meetings, had she done so, speaking in private

19    meetings to less than 0.8% of affected members would not be enough to create a

20    "public" debate under any applicable legal standard.

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

**Third,** it is undisputed that Emmons circulated the flyers at Spokane grocery stores on January 8, 2022. *Supra*, ¶ 86. As a result, the vast majority of Local 1439's merger vote meetings took place after Emmon's published the flyer; only meetings on January 6, 7 or 8 could have occurred before the flyering. And Local 21 meetings did not even begin until February 9, 2022. *Supra*, ¶ 58.

On this record, then, the January 5, 2022, email does not suffice to genuinely dispute Local 1439's lack of a public campaign on the merger.

Finally, Emmons cites a series of text messages between Guenther and Renner, ECF No. 113-12 at 18, 23, 26, 29–33, for the proposition that Guenther and Renner "communicated with key individuals to get their support for the merger." It is unclear what on page 18 Emmons may be referring to.

Page 23 contains a text message from Renner to Guenther reporting the impressions of "Jeff" and "Kenzie." It is undisputed that, in December 2021, Jeff White and Kenzie Michael were two members of the Local 1439 Executive Board. ECF No. 116, ¶ 39; ECF No. 188, ¶ 9. Discussions between the President of Local 1439 and members of his Executive Board do not evidence a public campaign.

Page 26 contains a text message from Renner to Guenther reporting "Scott H." reviewed the merger agreement and "Larry Hall supports the merger and will put his name to it." In December 2021, Scott Habenicht was Local 1439's in-house counsel and Larry Hall was a former President of Local 1439. ECF No. 116, ¶ 38;

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 45
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

ECF No. 118, ¶ 6. A conversation between the Local 1439 President and Local 1439's attorney, or a private conversation between the current Local 1439 President and a former Local 1439 President, do not evidence a public campaign.

Pages 29–33 contain various text messages reporting conversations with Aaron Streepy (Local 1439's counsel), Joe Mizrahi (the Secretary-Treasurer of Local 21), and Kate Meckler (the Regional Director for UFCW Region 7)—all of which have been recounted in detail elsewhere. *See, e.g.*, *supra*, ¶¶ 36–50. None of those reported conversations evidence a public campaign.

56. Only 196 out of approximately 7,800 members of Local 1439 voted on the merger.

**Record:** Dalmat Decl. Ex. 6 (UFCW-EMMONS_000162–167).

    **Response:** Undisputed.

57. Local 1439 members approved the merger by a vote of 191 to 5.

**Record:** Dalmat Decl. Ex. 6 (UFCW-EMMONS_000162–167).

    **Response:** Undisputed.

58. From February 9–12, 2022, Local 21 held meetings where members voted on the merger.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 46
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1   **Record:** Guenther Decl. ¶¶ 104–105; Guenther Decl. Ex. 19 (UFCW-

2   EMMONS_000152).

3       **Response:** Undisputed.

4

5   59. Only 218 out of approximately 44,000 members of Local 21 voted on the

6       merger.

7   **Record:** Guenther Decl. ¶ 106; Guenther Decl. Ex. 19 (UFCW-

8   EMMONS_000152).

9       **Response:** Undisputed.

10

11  60. Local 21 members approved the merger by a vote of 207 to 11.

12  **Record:** Guenther Decl. ¶ 106; Guenther Decl. Ex. 19 (UFCW-

13  EMMONS_000152); Guenther Decl. Ex. 20 (RFP Resp. No. 6 – 006604).

14      **Response:** Undisputed.

15

16  61. Apart from the formal January 6, 2022, notice of the upcoming merger votes,

17      neither Local 21 nor Guenther engaged in any public communications with

18      Local 21 members on the merger in an effort to persuade them how to vote on

19      the matter. That approach is consistent with Local 21's member-led model, in

20

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1 which the members—not their elected officials—are featured in union

2 publications.

3 **Record:** Guenther Decl. ¶¶ 107–112; Mizrahi Decl. ¶¶ 32–34; Crosby Decl. ¶ 14.

4 **RESPONSE**: **DISPUTED**. On December 17, 2021, UFCW 21 issued a

5 press release on its website, titled "Building our power as the largest UFCW

6 Local in the nation," that encouraged members to vote in favor of the

7 merger. ECF No. 10-19; *see also*

8 https://ufcw3000.org/news/2021/12/17/building-our-power-as-the-

9 largestufcw-local-in-the-nation (last accessed October 25, 2024). The first

10 line of the announcement states in bold: "**On Tuesday, December 14, our**

11 **member-led executive board discussed and unanimously approved a**

12 **Merger Agreement between our Union, UFCW 21 and the members of**

13 **UFCW 1439!**" *Id.* The announcement further states that "both boards feel

14 strongly that together we will increase our ability to continue the fight for

15 improved wages, working conditions and benefits as well as improve our

16 staffing, schedules and workplace safety." *Id.* And the announcement

17 specifically told members they should approve the merger:

18 "Members will have the opportunity to vote *to approve this powerful merger*

19 during our upcoming in-person Winter General Membership Meetings in

20 February 2022." *Id.* (emphasis added).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 48
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    **Reply:** Guenther acknowledges she overlooked this article in her initial Statement

2    of Facts, and she does not contest its authenticity.

3         Nonetheless, it is undisputed that this post on Local 21's (now Local 3000's)

4    website does not feature, let alone mention, Guenther herself. It is undisputed that

5    Local 3000 and Local 21 are no longer a plaintiff in this lawsuit; only Guenther

6    personally is. ECF No. 21, p. 12. It is undisputed that even though the December 17,

7    2021, article describes the executive board members' views of the advantages of a

8    merger, it does not specifically tell UFCW Local 21 members how to cast their vote

9    (there is no "VOTE MERGER!" language in the article).

10        Although Emmons characterizes the December 17, 2021, web post as a "press

11   release," there is no evidence that Local 21 sought press coverage of the merger and

12   the undisputed record evidence is that no press reported on the merger before it was

13   complete in March 2022. ECF No. 117, ¶¶ 2–6. There is also no evidence in the

14   record of how many Local 21 or Local 1439 members read this article. The

15   undisputed record evidence shows only 0.8% members of Local 21 and Local 1439

16   participated in the merger vote.

17

18        62. Merger votes among UFCW local unions typically are low-turnout affairs that

19             do not generate public debate.

20   **Record:** Crosby Decl. ¶¶ 7–14.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 49
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

**Response:** DISPUTED that UFCW local union Boards, staff, and members do not debate the merits of mergers. ECF No. 113-17 at 3–4; ECF No. 106 at 87–88; ECF No. 113-12 at 18, 23, 26, 29–33; ECF No. 113-18 at 2. Undisputed that in recent years, a low percentage of UFCW members have voted on mergers involving UFCW 21. However, the cited testimony does not support the broad assertion that all "[m]erger votes among UFCW local unions typically are lowturnout affairs that do not generate public debate."

**Reply:** Emmons concedes that merger votes among UFCW local unions, in recent years, are low-turnout affairs in which a low percentage of UFCW members have voted. Indeed, he must make that concession with respect to the 2022 merger between Local 21 and Local 1439, where only 0.8% of affected members cast a vote on the merger question. *Supra*, ¶¶ 56, 59.

Emmons nonetheless attempts to create a disputed fact about a "public" debate by pointing to evidence that the Local 21 Executive Board discussed the merger question in closed, executive session before putting it to the approval of Local 21 members (ECF No. 113-17 at 3–4); a lone post on a Local 367 dissenters' private Facebook page, which garnered only 26 comments and 17 reactions (ECF No. 106 at 87–88); and a series of text message exchanges between Renner and Guenther, described in detail in Guenther's reply to Paragraph 55, above.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 50
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

None of this evidence creates a genuine dispute as to whether there was any "public debate" before Emmons's flyering on January 8, 2022. That's because executive sessions are reserved for sensitive, private discussions. ECF No. 107, ¶¶ 97–101, and Ex. 17 (RFP Resp No 6 – 006001–03). The "Local 367 Members' Forum" in which the lone Facebook post was posted is a closed, private group, accessible only to members of Local 367. ECF No. 118, ¶¶ 18–20. That post garnered engagement from as few as 17 people (and no more than 26 people); Guenther did not respond publicly, either to the post or elsewhere. And, as for the text messages, at most they show Renner and Guenther had a handful of private conversations with trusted advisors and key staff members in anticipation of the merger vote. *Supra*, ¶ 55. None of that shows a public debate in 2022.

Finally, the overall fact asserted in Paragraph 62—that mergers among UFCW local unions are *typically* low-turnout affairs that do not generate public debate—is uncontroverted and, under L.Civ.R. 56(e), should be deemed undisputed and admitted.

## CLAY'S CAMPAIGN TO SCUTTLE THE MERGER AND UNDERMINE GUENTHER THROUGH LEAFLETS SPREAD BY EMMONS

63. At Clay's direction and consistent with Clay's November 13, 2021, email, on December 13, 2021, Mike Selvaggio—Local 555's contracted political director (who owns and operates Ridgelark Strategies)—mailed

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

approximately 1,000 flyers to shop stewards at selected stores throughout Washington where UFCW members worked. A Local 367 member posted the flyer in a Facebook group closed to Local 367 members, garnering merely 26 comments and 17 reactions.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 108:18–113:9, 133:20–134:12, 134:18–135:23); Dalmat Decl. Ex. 8 (Selvaggio Ex. 4); Dalmat Decl. Ex. 9 (Hines sub resp. 030); Dalmat Decl. Ex. 10 (RFP Resp. No. 2 – 002095); Dalmat Decl. Ex. 11 (RFP Resp No. 2 – 002099–2100); Dalmat Decl. Ex. 4 (Guenther Tr. 99:22–100:18).

    **Response**: Undisputed.

64. Selvaggio created the flyer based on talking points he had discussed with Clay and Esai Alday, Clay's executive assistant.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 113:10–114:3, 122:17–124:12, 144:3–145:1).

    **Response:** Undisputed.

65. Selvaggio has since destroyed his notes of that discussion.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 122:21–123:2).

    **Response:** This fact has no relevance to the merits of Guenther's claims against Emmons because Emmons had no knowledge of it.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 52
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
**BARNARD IGLITZIN & LAVITT LLP**

1    **Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are

2    uncontroverted and should be deemed undisputed and admitted.

3    As to the objection, the fact goes to the hostility of Emmons's source and his

4    efforts to hide the basis on which Selvaggio himself relied for the representations he

5    later made to Emmons for the basis for the accusations in the flyer.

6

7    66. At Clay's direction, to avoid identifying the mailer's source, Selvaggio

8    intentionally provided no return address and mailed the flyers from Spokane

9    to further conceal their origins.

10   **Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 97:17–98:10, 113:10–114:3, 144:3–

11   145:1).

12   **Response:** Undisputed.

13

14   67. A week after that mailing, on December 21, 2021, an email from a fake

15   address, repeating the accusations from the flyer Clay and Selvaggio prepared,

16   was sent to several UFCW International Vice Presidents (IVPs).

17   **Record:** Dalmat Decl. Ex. 12 (UFCW-EMMONS_000925).

18   **Response:** Undisputed that on December 21, 2021, an email was sent from

19   collinfarthingworth@gmail.com to several UFCW International Vice

20   Presidents. DISPUTED that collinfarthingworth@gmail.com was a "fake"

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 53
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1    email address, as Guenther cites no evidence concerning who sent the email,

2    much less its authenticity.

3    **Reply:** Guenther's investigator, Alfred Johnson of Secure Point Investigations,

4    determined the email was spoofed. ECF No. 107, ¶ 135. This is confirmed by the

5    fact that no known "Colin Farthingworth" had been a member of Local 21 or 1439.

6    ECF No. 107, ¶ 135. As Emmons provides no competent evidence on which to

7    dispute the assertion, which is supported by sworn testimony, under L.Civ.R. 56(e),

8    the assertion is uncontroverted and should be deemed undisputed and admitted.

9

10    68.Clay, who likely authored the email, forwarded it to Meckler.

11    **Record:** Dalmat Decl. Ex. 12 (UFCW-EMMONS_000925).

12    **Response:** Undisputed that Clay forwarded the email cited in Paragraph 67 to

13    Meckler. DISPUTED that Clay authored the email, as that is pure conjecture

14    and Guenther has no evidence to support it.

15    **Reply:** It is undisputed that Clay forwarded the email cited in this Paragraph.

16    Guenther acknowledges that she has no definitive evidence showing that Clay

17    authored the email, which is why she qualified her assertion with the caveat that he

18    "likely" authored it. Guenther notes that, although Clay has been identified as a

19    witness in this litigation (ECF No. 103, Ex. A), and Local 555—of which he is

20    President—is funding this litigation (*infra*, ¶ 94), Clay has not come forward with a

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 54
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1  declaration disputing the point. Emmons has thus produced no evidence

2  undermining the point.

3

4  69. When the mailing and email did not get the traction Clay and Selvaggio

5      sought, they escalated their smear campaign—now dubbed Project Wagon

6      Wheel—by leaving the flyers in-person at targeted stores in Spokane where

7      UFCW members were likely to see them.

8  **Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 106:3–107:12).

9  **Response**: **Undisputed** that Selvaggio decided to leave copies of the Flyer at

10  grocery stores in Spokane where UFCW members were likely to see them.

11  **Undisputed** that the name "Project Wagon Wheel" was used to reference their

12  effort to inform UFCW members in Spokane of the misconduct described in

13  the Flyer. **DISPUTED** that distributing the Flyer was part of a "smear

14  campaign," rather than an effort to inform UFCW members of the misconduct

15  the Flyer described. DiLorenzo Decl. Ex. C (Selvaggio Tr.) at 99:11–100:5,

16  109:5–112:9. **DISPUTED** that Clay or Selvaggio had any connection to the

17  email referenced in Paragraph 67, as Guenther has no evidence that Clay was

18  involved, and Selvaggio testified he was not familiar with it. *Id.* at 11:15–22.

19  **Reply:** Emmons admits two key points: (1) Selvaggio decided to leave copies of the

20  flyer at grocery stores in Spokane where UFCW members were likely to see them

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 55
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

and (2) Selvaggio and Clay dubbed the in-person flyering campaign "Project Wagon Wheel."

Emmons does not contest that Selvaggio made this decision with Clay, and that the two of them did so after the December 13, 2021, mailing did not get the traction they sought. Under L.Civ.R. 56(e), then, those two additional points are also uncontroverted and should be deemed undisputed and admitted.

Emmons disputes only two points in this Paragraph: that the January 8, 2022, flyering was part of a "smear" campaign and whether that campaign was connected to the December 21, 2021, email.

As to the first point, it is undisputed that several of the flyers' accusations against Guenther are false: she did not know anything about Local 367's alleged harassment of a member as of Emmons's January 8, 2022, flyering (*infra*, ¶ 98); she never paid Gonzalez off for anything (*infra*, ¶ 99); she did not install Hines into leadership at Local 367 (*infra*, ¶¶ 100–105); and Hines was not her "puppet" (*infra*, ¶ 101). A "smear" campaign is shorthand for a campaign of untruths targeting a person. *See New Oxford American Dictionary* (defining "smear," in relevant part, to mean to "damage the reputation of (someone) by false accusations; slander"). That characterization amply fits these undisputed facts of record.

As for the second point, Guenther incorporates her reply supporting Paragraph 68.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 56
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

70. Selvaggio called Joseph Emmons on or around January 5, 2022, to ask him to carry out that in-person distribution.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 108:18–110:4).

**Response: Undisputed** that Selvaggio called Emmons in early January and asked to hire him through Emmons's company Osprey Field Services LLC to distribute the Flyer by leaving copies at grocery stores in Spokane. **DISPUTED** to the extent the statement implies Emmons had any knowledge of Clay's involvement or a so-called "smear campaign." Selvaggio did not tell Emmons that Clay was behind the Flyer, and to Emmons's knowledge, he was distributing the Flyer to provide UFCW members truthful information. Declaration of Joseph H. Emmons, concurrently filed, ("Emmons Decl.") ¶¶ 7-8.

**Reply:** The factual assertions set forth in this Paragraph are undisputed.

This Paragraph does not make any assertions regarding Emmons's knowledge of Clay's involvement in the engagement or whether the engagement was part of a "smear campaign." Emmons's response on that point is thus gratuitous. To the extent that any further reply is needed, Guenther incorporates her assertions and replies set forth in Paragraphs 71–84, below.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 57
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

71. During that conversation, Selvaggio explained to Emmons that the purpose was to distribute flyers against a potential merger and "push information out to UFCW members regarding the allegations that were contained in the flyers."

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 109:23–110:4, 117:8–23); Dalmat Decl. Ex. 13 (Emmons Tr. 69:17–70:14).

> **Response: Undisputed** that Selvaggio explained to Emmons that he wanted Emmons to distribute the Flyer and the information in it, and that the Flyer advocated against the proposed merger. **DISPUTED** that this discussion occurred in the first phone call regarding the Flyer, as Emmons does not recall whether this discussion occurred in his first or second conversation with Selvaggio about the project. Emmons Decl. ¶ 7. **DISPUTED** to the extent the statement implies Selvaggio asked Emmons to do anything other than passively place the Flyer in grocery stores. ECF No. 106 at 76 (Selvaggio Tr. 144:3-15) ("Mr. Emmons distributing the flyers was to be passive – he was to be passive").

**Reply:** The assertions in this Paragraph are undisputed.

The conversation at issue involved only two parties, Selvaggio and Emmons. By his own admission (ECF No. 122, ¶ 7), Emmons does not remember whether he discussed Selvaggio's request that Emmons "push information out to UFCW

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 58
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

members regarding the allegations that were contained in the flyers," ECF No. 106, Ex. 7 (Selvaggio Tr. 110:1–4), in their first or second conversation regarding Operation Wagon Wheel. But Selvaggio did remember that discussion as part of their first conversation. ECF No. 106, Ex. 7 (Selvaggio Tr. 108:18–110:4). Emmons's lack of memory on that particular point does not create a factual dispute.

Similarly, there is no genuine dispute as to what Selvaggio communicated to Emmons and what Emmons did. Selvaggio asked Emmons to "push information out to UFCW members regarding the allegations that were contained in the flyers." ECF No. 106, Ex. 7 (Selvaggio Tr. 110:1–4). Accepting that assignment, Emmons printed the flyer (*infra*, ¶ 85), drove several hundred miles from Portland to Spokane (*infra*, ¶¶ 86–87), put the flyers in areas of the store where UFCW members were likely to see them (*infra*, ¶ 86), and told members "here's information about the union, information about the merger (*infra*, ¶ 92).

Emmons wishes to paint those actions with the adverb "passively." The actual, undisputed facts speak for themselves and defeat that characterization.

72. Selvaggio also explained to Emmons that the flyers involved accusations that leaders who had previously faced sexual harassment allegations were attempting to come back into leadership.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    **Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 110:9–111:13); Dalmat Decl. Ex. 13

2    (Emmons Tr. 69:7–14).

3          **Response:** Undisputed.

4

5    73. During that initial conversation, Emmons immediately recognized the

6          incendiary nature of those accusations and asked Selvaggio for their basis.

7    **Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 69:7–10, 70:20–71:22).

8          **Response: DISPUTED** to the extent the statement implies Emmons ever

9          doubted the truth of the Flyer's statements. *See* ECF No. 112 ¶¶ 5–9; ECF No.

10         113-4 at 8, 10–11. Emmons has repeatedly testified that he knew Selvaggio to

11         be honest and trustworthy and that he believed the Flyer was true. *See* ECF

12         No. 112 ¶¶ 5–9; ECF No. 113-4 at 8, 10–11. **Undisputed** that Emmons asked

13         Selvaggio to confirm the Flyer's statements were accurate. ECF No. 112 ¶ 9.

14         **DISPUTED** that this discussion occurred in the first phone call regarding the

15         Flyer, as Emmons does not recall whether this discussion occurred in his first

16         or second conversation with Selvaggio about the project. Emmons Decl. ¶ 7.

17   **Reply:** Emmons's response does not address the substance of this Paragraph.

18   "Incendiary" means "designed to cause fires; tending to stir up conflict; very

19   exciting." *The New Oxford American Dictionary*. It does not mean true or false and

20   has nothing to do with an assertion's truth or falsity.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 60
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1     The point of Paragraph 73 is that, upon first learning about the flyer's

2     accusations, Emmons immediately recognized that they were fire-starters that would

3     tend to stir up conflict, regardless of whether they were true or false. (Whether true

4     or false, they would stir up conflict by disrupting a merger vote and leveling a serious

5     charge against the merger supporters, and they also had the obvious tendency to

6     harm the reputations of those targeted by the accusations, including Guenther. *See*

7     ECF No. 21 at 11.)

8     This point is entirely supported by Guenther's record citations and unmet by

9     Emmons's response. Under L.Civ.R. 56(e), it is uncontroverted and the Court should

10    deem it undisputed and admitted.

11    Instead of addressing Paragraph 73's actual assertion, Emmons changes the

12    subject to whether he doubted the truth of the flyer's accusations. On that question,

13    Guenther incorporates her assertions and replies in support of Paragraphs 74–84, 90

14    below.

15

16    74. Selvaggio told him the sexual harassment allegations were supported by

17        investigations and social media posts.

18    **Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 70:20–71:22); Dalmat Decl. Ex. 7

19    (Selvaggio Tr. 110:24–111:16).

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 61
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

**Response:** Undisputed that Selvaggio told Emmons that the Flyer's statements were supported by investigations and that UFCW members had posted on social media about it.

**Reply:** This assertion is undisputed. To clarify, Guenther emphasizes that Selvaggio did not convey to Emmons whom the investigations targeted, what conclusions (if any) they reached, or any details at all about them. *See* ECF 116, ¶¶ 83–84 (citing record).

75. Selvaggio, in turn, relied on the representations of Clay and Alday, who had told him that they relied on an investigation by the International—an assertion Selvaggio did nothing to verify.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio. Tr. 111:23–112:19).

**Response:** These purported facts have no relevance to the merits of Guenther's claims.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, this assertion goes to the heart of Emmons's fault. At a minimum, it shows Emmons's negligence by showing that Emmons relied on a false representation without doing anything to verify it. Moreover, it also provides

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    circumstantial evidence for Emmons's actual malice because it shows that Emmons

2    relied on hostile witnesses and deliberately avoided the truth.

3

4        76. In fact, the International repeatedly deemed the flyers' accusations to be false.

5    **Record:** Dalmat Decl. Ex. 14 (UFCW-EMMONS_000029 –32), Dalmat Decl. Ex.

6    15    (UFCW-EMMONS_000936),    Dalmat    Decl.    Ex.    16    (UFCW-

7    EMMONS_000937).

8        **Response: Undisputed** that Dalmat Decl. Ex. 14 is an August 15, 2022

9        electronic letter from Perrone stating the "handbill is false." ECF No. 106 at

10       122. Dalmat Decl. Ex. 15 is a cease-and-desist email from Perrone to Clay,

11       sent November 3, 2023. ECF No. 106 at 126. Dalmat Decl. Ex. 16 is a

12       November 3, 2023 email with the subject "Notice to the UFCW International

13       Executive Board." ECF No. 106 at 128. **DISPUTED** to the extent the

14       statement implies UFCW International investigated the Flyer's statements.

15       The August 15 letter from Perrone states that he cannot fully address "claims

16       related to the disparagement in the handbill" in part because he was "hindered

17       in investigating the facts at issue." ECF No. 106 at 123 (concluding the

18       union's "internal remedies cannot substitute for civil litigation in these

19       circumstances").

20

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

**Reply:** Emmons's response does not dispute the actual fact asserted in Paragraph 76. That fact, simply, is that the International repeatedly deemed the flyers' accusations to be false. As shown in the cited evidence, International President Marc Perrone communicated that view twice: first, in an August 15, 2022, email and letter and, second, in a November 3, 2022, email. ECF No. 106, Ex. 14–16. As Emmons admits, the fact asserted in Paragraph 76 is undisputed.

Emmons attempts to cabin the import of that undisputed fact by denigrating the quality of the International's investigation. He misses the point. The relevant point is that Selvaggio represented to Emmons that the flyer's accusations were true based on investigations conducted by the International (*supra*, ¶¶ 74–75). At the time Selvaggio made those representations, the International had not completed its investigation; by the time it completed its investigation (whatever its quality), the International deemed the flyer's accusations false, in their totality (*supra*, ¶ 76). Selvaggio thus misrepresented the status and ultimate conclusion of the International's investigation to Emmons.

77. Selvaggio and Emmons did not discuss any payoffs or whether Guenther was involved in any way in those allegations or the target of any sexual harassment investigation.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    **Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 111:14–112:19); Dalmat Decl. Ex. 13

2    (Emmons Tr. 71:20–25, 78:2–7, 78:22–79:8, 80:3–12).

3              **RESPONSE**: **Undisputed** that Selvaggio and Emmons did not discuss details

4    about the Flyer's statements apart from the fact that the statements were true

5    and supported by investigations. ECF No. 113-3 at 19–20; ECF No. 113-4 at

6    8, 10–11; ECF No. 112 ¶¶ 5–9. **DISPUTED** to the extent the statement

7    implies Selvaggio and Emmons did not discuss the Flyer's statements at all.

8    Selvaggio and Emmons read through each of the Flyer's statements—

9    including that Guenther had paid off Gonzalez and that Guenther was helping

10   Renner hide from sexual harassment claims—and Selvaggio confirmed to

11   Emmons that they were true. ECF No. 113-3 at 19–20; ECF No. 113-4 at 8,

12   10–11; ECF No. 112 ¶¶ 5–9.

13   **Reply:** Emmons does not dispute the specific facts asserted in this paragraph: i.e.,

14   (1) whether Selvaggio and Emmons discussed any payoff (they did not); (2)

15   whether Selvaggio and Emmons discussed Guenther's involvement in any way in

16   the payoff allegations (they did not); and (3) whether Selvaggio and Emmons

17   discussed who was the target of any sexual harassment investigation (they did not).

18             Under L.Civ.R. 56(e), these facts are uncontroverted and should be deemed

19   undisputed and admitted.

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 65
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    Instead of meeting the facts Guenther actually asserts in Paragraph 77,

2    Emmons attempts to deny implications not stated in Paragraph 77: namely, whether

3    Selvaggio and Emmons discussed the flyer's allegations at all. This is odd given

4    that Guenther specifically asserts that Selvaggio and Emmons discussed the

5    accusation that leaders who previously faced sexual harassment allegations were

6    attempting to return to leadership (*supra*, ¶ 72), which Emmons immediately

7    recognized as incendiary (*supra*, ¶ 73), and Selvaggio represented that the

8    accusations were supported by investigations (even though the investigations had

9    not yet concluded and ultimately found the accusations false) (*supra*, ¶¶ 74–76).

10    The material point is not whether Selvaggio and Emmons remained silent on

11    the content of the flyers. The point is that, despite reading the entire flyer before

12    publishing it, Emmons never inquired about the accusations against Guenther

13    specifically and Selvaggio made no specific representations about her role. *Infra*, ¶

14    78; ECF No. 116, ¶ 84 (citing record).

15    Emmons nonetheless contends that Selvaggio "confirmed to Emmons that

16    each statement was true." In fact, Emmons and Selvaggio discussed the statement

17    "The in-union 'Sexual Harassment Club' is at it again" and specifically discussed

18    sexual harassment allegations and related investigations, without discussing any

19    details of those investigations. ECF No. 106, Ex. 13 (Emmons Tr. 78:2–21).

20

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

As to the statement "First Faye Guenther (President of Local 21) helped former 367 President Angel Gonzalez cover up his harassment charges and paid him off in exchange for installing her puppet, Mike Hines," Selvaggio said nothing other than the generality that there had been investigations. ECF No. 106, Ex. 13 (Emmons Tr. 78:25–79:10). Specifically, Selvaggio did not say anything to explain why the flyer alleged Guenther paid Angel Gonzalez off. ECF No. 106, Ex. 13 (Emmons Tr. 79:11–15). *Accord* ECF No. 106, Ex. 7 (Selvaggio Tr. 111:17–22) (Selvaggio did not tell Emmons "that Ms. Guenther was the target of the investigation"). In fact, Selvaggio and Emmons did not discuss Guenther at all. ECF No. 106, Ex. 13 (Emmons Tr. 64:21–65:15).

As to the statement "Now she's helping Eric Renner (the Local 1439 President) hide from sexual harassment charges and land a cushy new gig with Local 21 through a forced merger," Selvaggio said nothing to Emmons about that portion of the flyer or any remaining portion of the flyer. ECF No. 106, Ex. 13 (Emmons Tr. 79:16–80:16).

Emmons's contrary citations do not create a genuine dispute of fact. The parties cite many of the same pages from Selvaggio's and Emmons's depositions, which give general testimony about Selvaggio representing that the flyer's accusations were true but, when pressed on specifics, also give many admissions that they did not discuss any of the specific points targeting Guenther. Emmons's

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 67
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

September 25, 2024, declaration follows suit with a general summary that he relied on Selvaggio's representations (ECF No. 112, ¶ 9) without acknowledging the several admissions in his deposition that he did not discuss the specific accusations targeting Guenther. ECF No. 106, Ex. 13 (Emmons Tr. 64:21–65:15, 78:2–21, 78:25–79:10, 79:11–15, 79:16–80:16).

78. As far as Emmons recalls, they did not discuss Guenther at all during that conversation.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 64:21–65:15).

**Response: DISPUTED** to the extent the statement asserts Selvaggio and Emmons did not discuss the Flyer's statements about Guenther at all. Selvaggio and Emmons read through the Flyer, and Selvaggio confirmed to Emmons that each statement was true. *See* ECF No. 113-3 at 19–20; ECF No. 113-4 at 8, 10–11; ECF No. 112 ¶¶ 5–9; DiLorenzo Decl. Ex. D (Emmons Tr.) at 67:3–5 (correcting statement at 65:8–11). **Undisputed** that Selvaggio and Emmons did not discuss further details about Guenther.

**Reply:** Emmons's citations do not create a genuine dispute of fact on this point.

In support of the assertion in this Paragraph, Guenther cited the following testimony from Emmons's deposition:

Q. When do you first recall talking to Mr. Selvaggio about Faye Guenther?

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 68
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    BARNARD
SEATTLE, WASHINGTON 98119    IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

1

2

3

A. When the lawsuit was filed and I read her name for the first time.
Q. Okay, when the lawsuit was filed. Had you spoken to Mr. Selvaggio prior to that date, about Faye Guenther?
A. No.

ECF No. 106, Ex. 13 (Emmons Tr. 64:21–65:15). Guenther filed this lawsuit on July 25, 2022. ECF No. 1 at 28. The indisputable import of Emmons's testimony, then, is that, as far as Emmons recalls, Emmons did not talk with Selvaggio about Guenther during either of their telephone calls in January 2022.

Emmons's reliance on pages 110–11 of Selvaggio's deposition transcript (ECF No. 113-3 at 19–20) is not to the contrary. There, Selvaggio testified about his first conversation with Emmons. When asked whether Selvaggio told Emmons in that conversation that "the flyer is going to contain the statements that you see in" the flyer, Selvaggio answered "I don't know if I specifically read them to him but we did describe the – the premise of the content, and I – I don't recall, so I can't say for certain that I didn't read it to him. But the nature of the content was made clear to him in that call." ECF No. 113-3 at 19 (Selvaggio Tr. 110:9–17). After that testimony, which made clear that Selvaggio has no memory of telling Emmons in the first conversation the specific statements in the flyer—only the generalized "nature of the content"—Selvaggio was asked whether Emmons was interested in ascertaining the basis for the flyers' allegations and Emmons responded with only a generalized question ("Is this—is this good information? Is this solid?"). ECF No. 113-3 at 19 (Selvaggio Tr. 110:18–23). That testimony does not establish any

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 69
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

discussion of Guenther specifically. Neither does any of the further testimony on the following page. ECF No. 113-3 at 20 (Selvaggio Tr. 111). In fact, the only mention of Guenther on page 111 of Selvaggio's deposition transcript is at the bottom of that page, and Emmons's excerpts cut off the continuation of the testimony onto page 112. The relevant transcript pages, however, may be found at ECF No. 106, Ex. 7 (Selvaggio Tr. 112:1–9). When asked what understanding Selvaggio had, at the time of his first telephone call with Emmons, he answered that he understood she oversaw the investigation into the sexual harassment allegations against Renner and that investigation was memorialized at the International. ECF No. 106, Ex. 7 (Selvaggio Tr. 112:1–9). That understanding was incorrect: Guenther had no role or responsibility in overseeing any investigation into Renner. ECF No. 116, ¶ 9. And, in any event, nothing in Selvaggio's testimony indicates that he conveyed his incorrect understanding about Guenther's role to Emmons during their conversation.

Emmons's reliance on pages 78 and 108–09 of Emmons's deposition transcript (ECF No. 113-4 at 8, 10–11) fares no better. The word "Guenther" does not appear on page 78 until the bottom line on the page, line 25. Emmons's excerpts, however, do not provide the full question or the answer. That testimony can be found at ECF No. 106, Ex. 13 (Emmons Tr. 78:25–80:2). It goes as follows: Emmons was asked whether he saw the flyer's sentence accusing Guenther of

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 70
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

helping Gonzalez cover up his harassment charges and of paying off Gonzalez in exchange for installing her puppet, Hines, and Emmons answered he did; Emmons was then asked whether Selvaggio said anything about that portion of the flyer, and Emmons answered only that Selvaggio had told him there had been investigations (without mentioning Guenther specifically); Emmons was then asked whether Selvaggio said anything to him about the allegation that Guenther paid off Gonzalez and Emmons admitted "Not specifically"; Emmons was then asked whether Selvaggio told Emmons anything about the next sentence and he answers "no." *Id.* The remaining testimony confirms that the only thing Selvaggio said to Emmons in their conversation was that there had been investigations, without explaining who those investigations targeted, what they concluded, or whether they involved Guenther in any way.

As for pages 108 and 109 of Emmons's transcript, they do not discuss Guenther at all. They simply reaffirm Emmons's testimony that he relied on Selvaggio to provide the factual basis for the accusations in the flyer, even though when describing the actual conversation with Selvaggio (on pages 78–80 of Emmons's deposition) Emmons admitted that they did not discuss the specific accusations against Guenther at all or the factual basis for those specific accusations. ECF No. 106, Ex. 13 at 103–05.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 71
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    Finally, Emmons's reliance on his own declaration, ECF No. 113, ¶¶ 5–9,

2    cannot create a genuine factual dispute. First, nothing in the cited declaration

3    testimony indicates that Emmons specifically discussed the accusations against

4    Guenther in his conversations with Selvaggio. Second, even if it did, such

5    declaration testimony would be of no moment on summary judgment in the face of

6    Emmons's admissions at deposition. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080–

7    91 (9th Cir. 2012) (disregarding summary-judgment declaration that contradicted

8    deposition testimony).

9    In short, there is no genuine dispute that Selvaggio and Emmons did not

10   discuss Guenther at all during their conversations prior to Emmons's January 8,

11   2022, flyering.

12

13   79. Emmons did not discuss the flyer's accusations with anyone else.

14   **Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 73:8–23).

15   **Response:** Undisputed.

16

17   80. After the conversation, Selvaggio emailed Emmons the flyer.

18   **Record:** Dalmat Decl. Ex. 17 (Selvaggio Ex. 8); Dalmat Decl. Ex. 7 (Selvaggio Tr.

19   139:9–140:1, 144:3–145:1).

20   **Response:** Undisputed.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 72
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

1

2    81. It was apparent to Emmons from the flyer that Guenther was the President of

3        a UFCW local union but he had no idea whether the accusations against

4        Guenther were true.

5    **Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 69:17–70:10, 74:11–13, 78:25–79:8,

6    90:24–92:16).

7        **Response:** Undisputed that Emmons learned from the Flyer that Guenther

8        was President of UFCW 21. DISPUTED that Emmons "had no idea whether

9        the accusations against Guenther were true." Emmons has repeatedly testified

10       that he believed the Flyer's statements were true. ECF No. 112 ¶¶ 5–9; ECF

11       No. 113-4 at 10–11 (Emmons Tr. 108:23-109:10). Emmons had known

12       Selvaggio for nearly a decade, having worked for him on numerous projects

13       over the years, and knew him to be an honest and trustworthy person, who

14       was "selective in the organizations and people he [chose] to work for and only

15       work[ed] for those with high integrity." ECF No. 112 ¶ 6. After reading the

16       Flyer, Emmons confirmed with Selvaggio that it was accurate, and Selvaggio

17       indicated it was supported by investigations. *Id.* ¶ 9. Emmons was satisfied

18       with this response because in his experience, Selvaggio did "not take on

19       initiatives without first confirming that the position or message he [was]

20       communicating [was] a credible one." *Id.* ¶ 6.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 73
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

1    **Reply:** Guenther incorporates her reply in support of Paragraphs 78 and 80. Simply

2    put, Emmons's and Selvaggio's testimony undisputedly establishes that the two did

3    not specifically discuss any of the flyer's accusations against Guenther or the factual

4    basis in support of those accusations. It is therefore impossible for Emmons to have

5    formed an informed, fact-based belief about the truth or falsity of the flyer's

6    accusations against Guenther. At most, Emmons's responsive citations establish

7    that, in light of his prior relationship with Selvaggio, Emmons was willing to spread

8    incendiary accusations against Guenther without even inquiring into the factual

9    basis supporting those accusations, even while knowing that his patrons had an

10   ulterior motive to sabotage the merger. *See* ECF 116, ¶¶ 76–77 (citing record).

11

12   82. After receiving a copy of the flyer itself from Selvaggio, Emmons and

13        Selvaggio had another discussion about it.

14   **Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 76:1–80:16); Dalmat Decl. Ex. 18

15   (Selvaggio Ex. 6).

16        **Response**: **Undisputed** that Selvaggio and Emmons had a second call

17        regarding the project of distributing Flyer after Selvaggio emailed it to

18        Emmons. **DISPUTED** to the extent the statement implies that the call

19        occurred because Emmons questioned the truth of the Flyer's statements.

20        Emmons Decl. ¶ 7.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    **Reply:** The actual facts asserted in this Paragraph are undisputed.

2        As for Emmons's response to an unasserted implication, Guenther

3    incorporates her reply in support of Paragraphs 78, 80, and 81.

4

5    83. During that second conversation, Emmons read the flyer in its entirety but did

6        not discuss any details of any investigations into Gonzalez or Renner and did

7        not discuss the accusation that Guenther helped Gonzalez cover up

8        harassment charges and paid him off in exchange for installing Hines.

9    **Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 78:25–79:15, 90:13–91:19).

10       **Response**: **Undisputed** that Emmons read the Flyer and that Emmons and

11       Selvaggio did not discuss details of the investigations Selvaggio indicated

12       supported the Flyer's statements. **DISPUTED** that Emmons and Selvaggio

13       did not discuss the Flyer's statement concerning Gonzalez and Hines. After

14       reading the Flyer, Emmons confirmed with Selvaggio that the Flyer's

15       statements were true. ECF No. 112 ¶ 9. Emmons does not recall whether this

16       occurred in the first or second conversation. Emmons Decl. ¶ 7.

17   **Reply:** All facts asserted in this Paragraph are undisputed. Emmons concedes that

18   he read the flyer in its entirety during a conversation with Selvaggio.

19       He attempts to dispute whether he discussed with Selvaggio the flyer's

20   specific accusations that Guenther helped Gonzalez cover up harassment charges

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 75
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    and paid him off in exchange for installing Hines. But he fails to create a genuine

2    dispute. In support of her assertion that Emmons and Selvaggio did not discuss this

3    specific accusation in the flyer, Guenther relies on Emmons's deposition testimony

4    in which he is asked specifically about that accusation and admits that he did not

5    discuss it with Selvaggio. ECF No. 106, Ex. 16 at 103–104 (Emmons Tr. 78:25–

6    79:15). He also admitted at deposition that he and Selvaggio never discussed

7    whether Guenther paid anyone off and that the only basis he had to believe Guenther

8    paid Gonzalez off to install her puppet, Hines, as President of Local 367 was the

9    flyer itself. ECF No. 106, Ex. 16 at 111–12 (Emmons Tr. 90:13–91:19).

10        Emmons's declaration testimony does not contradict or undermine these clear

11   deposition admissions. Instead, it simply notes that Emmons relied on Selvaggio to

12   vouch for the flyer in general, without addressing the flyer's accusations against

13   Guenther specifically. ECF No. 112, ¶ 9; ECF No. 122, ¶ 7. To the extent Emmons

14   would have the Court rely on his declaration as testifying more particularly about

15   the flyer's specific accusations against Guenther, such declaration testimony would

16   be a sham that must be disregarded on summary judgment. *See Yeager v. Bowlin*,

17   693 F.3d 1076, 1080–91 (9th Cir. 2012) (disregarding summary-judgment

18   declaration that contradicted deposition testimony).

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 76
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

84. Emmons also did not discuss with Selvaggio the accusation that Guenther helped cover up allegations Renner was facing.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 78:14–80:16).

**Response**: **DISPUTED**. Selvaggio and Emmons read through the Flyer, and Selvaggio confirmed to Emmons that the statements was true. ECF No. 113-3 at 19–20 (Selvaggio Tr. 110:18-111:5); ECF No. 113-4 at 10–11 (Emmons Tr. 108:23-109:10); ECF No. 112 ¶¶ 5–9. Selvaggio also stated there had been investigations. ECF No. 113-3 at 20 (Selvaggio Tr. 111:6-9); ECF No. 113-4 at 8 (Emmons Tr. 78:11–13); ECF No. 112 ¶ 9. **Undisputed** that Selvaggio and Emmons did not discuss further details about Guenther helping Renner hide from sexual harassment allegations.

**Reply:** Once again, Emmons's deposition testimony, cited by Guenther in support of this assertion, fully establishes the asserted fact. ECF No. 106, Ex. 13 at 104 (Emmons Tr. 79:16–80:2) ("Q: Did Mr. Selvaggio say anything to you about that portion of the flier? A: No. Q: Did he say anything to you about the remaining portions of the flier? A: No. Again, we read through it.").

Once again, Emmons's record citations do not create a genuine dispute of fact because they operate at a different level of generality. They do not, and cannot, dispute that Selvaggio and Emmons never discussed the specific accusation that Guenther helped cover up allegations Renner was facing. Emmons admitted as much

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 77
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

at deposition. Instead, they attempt to create a factual dispute by moving up a level of generality to whether Emmons and Selvaggio discussed the general topic addressed by the flyer and whether Selvaggio answered that there had been investigations (without identifying whom the investigations targeted, who conducted the investigations, whether they reached any conclusions, what conclusions were rendered, whether the investigations were fair, or anything else about such investigations). Once again, to the extent Emmons would have the Court rely on his declaration (ECF No. 112, ¶¶ 5–9) as testifying more particularly about the flyer's specific accusations against Guenther, such declaration testimony would be a sham that must be disregarded on summary judgment. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080–91 (9th Cir. 2012) (disregarding summary-judgment declaration that contradicted deposition testimony).

85. Emmons then printed the flyers at a FedEx store.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 74:18–75:25).

**Response:** Undisputed.

86. Emmons then drove from Portland, Oregon, to Spokane, Washington; bought a Gonzaga baseball cap at a Fred Meyer in Spokane (despite being a fan of University of Oregon); and on January 8, 2022, around 5:50 p.m., wore the

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 78
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

hat and a mask, while distributing flyers in six to eight stores in Spokane (whose addresses Selvaggio had supplied), placing them in areas of the store where UFCW members were likely to see them.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 74:18–76:6, 81:1–84:22, 102:9–103:21); Dalmat Decl. Ex. 7 (Selvaggio Tr. 136:3–19); Dalmat Decl. Ex. 19 (RFP Resp No. 2 – 002111–16).

**Response**: **Undisputed** that on January 8, 2022, Emmons drove from Portland, Oregon, to Spokane, Washington; bought a Gonzaga baseball cap at a grocery store in Spokane; and wore the hat and a mask while distributing copies of the Flyer at six to eight stores in Spokane. **Undisputed** that Selvaggio provided Emmons with the addresses of the stores where Emmons placed copies of the Flyer, and that Emmons placed the copies at work locations within each store, such as the deli or the cash register. Emmons Decl. ¶¶ 9, 12. **DISPUTED** to the extent the statement implies that Emmons was attempting to conceal his identity. Emmons Decl. ¶ 10. Emmons purchased the baseball cap because he is also a Gonzaga fan and collects baseball caps. *Id.* ¶ 10. And he wore a mask because, on January 8, 2022, Covid infection rates were extremely high, and he was concerned about being exposed to Covid. *Id.*

**Reply:** The facts actually asserted by Paragraph 86 are undisputed.

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

1    Guenther agrees that whether Emmons was attempting to conceal his identity

2    when spreading false accusations about her is a disputed fact that, if relevant, must

3    be resolved by a jury. *See* ECF No. 104 at 14 n. 4; ECF No. 115 at 14–15. That

4    question, however, is not relevant to Guenther's motion because, as a private figure,

5    she need prove only negligence, not actual malice. ECF No. 104 at 12–16 (internal

6    pagination).

7

8    87. Depending on the route, it is a 350-to-400-mile drive from Portland to

9    Spokane.

10    **Record:** https://maps.app.goo.gl/yp8x1bU7iPJccn7k6.

11    **Response:** Undisputed.

12

13    88. The sun set on January 8, 2022, in Spokane at 4:17 p.m. and it was "mostly

14    cloudy" at 5:53 p.m.

15    **Record:**

16    https://www.wunderground.com/history/daily/us/wa/spokane/KGEG/date/2022-1-

17    8.

18    **Response**: Undisputed.

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 80
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

89. Emmons denies wearing sunglasses while distributing the flyers but the pictures show otherwise.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 102:23–104:8), Dalmat Decl. Ex. 19 (RFP Resp No. 2 – 002111–16).

**RESPONSE**: **Undisputed** that Emmons denies wearing sunglasses while distributing the Flyer. **DISPUTED** that the pictures show Emmons wore sunglasses while distributing the flyers. Emmons wears glasses due to astigmatism and wore his glasses while distributing the Flyer. Emmons Decl. ¶ 11.

**Reply:** The extent to which Emmons obscured his face to disguise himself and conceal his identity bears on circumstantial evidence of his actual malice, and Guenther agrees that that question, if relevant, must be resolved by a jury. *See* ECF No. 104 at 14 n. 4; ECF No. 115 at 14–15. That question, however, is not relevant to Guenther's motion because, as a private figure, she need prove only negligence, not actual malice. ECF No. 104 at 12–16 (internal pagination).

90. When Emmons handed out flyers at the Spokane stores, he did not know whether the accusations in those flyers were true or false.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 88:14–17).

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    **Response: DISPUTED**. Emmons has repeatedly testified that he believed the

2    Flyer's statements were true based on Selvaggio's word. ECF No. 112 ¶¶ 5–

3    9; ECF No. 113-4 at 8, 10–11. Emmons had known Selvaggio for nearly a

4    decade, having worked for him on numerous projects over the years, and knew

5    him to be an honest and trustworthy person, who was "selective in the

6    organizations and people he [chose] to work for and only work[ed] for those

7    with high integrity." ECF No. 112 ¶ 6. After reading the Flyer, Emmons

8    confirmed with Selvaggio that it was accurate, and Selvaggio indicated it was

9    supported by investigations. *Id.* ¶ 9. Emmons was satisfied with this response

10   because in his experience, Selvaggio did "not take on initiatives without first

11   confirming that the position or message he [was] communicating [was] a

12   credible one." *Id.* ¶ 6.

13   **Reply:** Paragraph 90 does not make an assertion about what Emmons believed; it

14   makes an assertion about what he knew. In support of the fact actually asserted,

15   Guenther cited the following testimony from Emmons's deposition:

16       Q. At the time you distributed the fliers, did you have any personal
            knowledge regarding the truth or falsity of its statements?
17       A. Any personal knowledge? No.

18   ECF No. 106, Ex. 13 at 110 (Emmons Tr. 88:14–17). Emmons's response focuses

19   on his purported beliefs (however uniformed and factually baseless, *see supra*,

20   ¶¶ 78, 81, 83–84). It does not address the fact Guenther actually asserts in this

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 82
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

Paragraph. As the fact Guenther actually asserts is uncontroverted, under L.Civ.R. 56(e), it should be deemed undisputed and admitted.

91. Selvaggio, who gave Emmons instructions on the in-person literature drop campaign, did not want Emmons to be identified.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 144:16–145:1)

**RESPONSE**: **Undisputed** that Selvaggio gave Emmons instructions regarding how to distribute the Flyer. **DISPUTED** that Selvaggio did not want Emmons to be identified or that Selvaggio instructed Emmons to conceal his identity. The cited testimony simply states that Selvaggio did not want ***himself*** to be identified as responsible for the Flyer. *See* ECF No. 106 at 76 (Selvaggio Tr. 144:16-145:1) ("Q. When you mailed the flyers out, was there a return address on the envelopes?" A. No, there was not. Q. Was there any identification of who was responsible for the mailing? A. No. Q. And that's true for the flyer that Mr. Emmons distributed? A. That's correct. Q. And that was intentional? A. Yes.").

**Reply:** The very passage Emmons quotes at pages 144 through 145 of Selvaggio's deposition confirms the fact Guenther asserts here. The question at lines 19–20 was whether there was "**any identification** of who was responsible for the mailing." ECF No. 106 at 76 (Selvaggio Tr. 144:19–20) (emphasis added). The answer to that

1    question was no. The next question was "[a]nd that's true for the flyer that Mr.

2    Emmons distributed" and the answer was "That's correct." ECF No. 106 at 76

3    (Selvaggio Tr. 144:22–23). Though the phrase "that's true," the second question

4    referred to the last antecedent. *See, e.g.*, *Boechler, P.C. v. Comm'r of Internal*

5    *Revenue*, 596 U.S. 199, 205 (2022) (under basic rules of grammar, "the correct

6    antecedent is usually the nearest reasonable one") (cleaned up). In context, then, the

7    second question posed to Emmons asked whether it was true that there was no

8    identification whatsoever of the people responsible for the flyer Emmons distributed.

9    Emmons was one of the people responsible for distributing the flyer: he printed it,

10   drove hundreds of miles to spread it at Spokane grocery stores, and then actually

11   distributed it at several stores while telling recipients "here's information about the

12   union, information about the merger." *Supra*, ¶¶ 85–87; *infra*, ¶ 92.

13       In any event, Emmons has not produced evidence from Selvaggio or Emmons

14   himself that could support anything other than the natural, grammatical reading of

15   Emmons's deposition testimony. Ultimately, this fact is uncontroverted and, under

16   L.Civ.R. 56(e), should be deemed undisputed and admitted.

17

18       92. Upon completing the distribution, Emmons confirmed to Selvaggio that he

19           had done so and told people "here's information about the union, information

20           about the merger."

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 84
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 118:8–18).

> **Response:** Undisputed.

93. Selvaggio paid Emmons $2,500, reimbursed by Local 555, for circulating the flyers.

**Record:** Dalmat Decl. Ex. 7 (Selvaggio Tr. 114:4–121:7, 135:25–138:14); Dalmat Decl. Ex. 18 (Selvaggio Ex. 6); Dalmat Decl. Ex. 20 (Selvaggio Ex. 7).

> **Response:** Undisputed.

94. Local 555 indemnified both Emmons and Selvaggio for their roles in circulating the flyers.

**Record:** Dalmat Decl. Ex. 13 (Emmons Tr. 99:1–17); Dalmat Decl. Ex. 7 (Selvaggio Tr. 128:4–129:4); Dalmat Decl. Ex. 21 (EMM_000001–9).

> **Undisputed** that UFCW 555 and Ridgelark Strategies had a contract for services that contained an indemnification provision, under which UFCW 555 agreed to indemnify Ridgelark for certain claims, and that UFCW 555 agreed to honor that agreement insofar as it relates to this lawsuit. *See* ECF No. 106 at 144 (EMM_000001). **Undisputed** that Selvaggio and Ridgelark entered an agreement with Emmons and his company Osprey, under which Selvaggio and Ridgelark agreed to "provide Emmons a defense." *Id.* **DISPUTED** that

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 85
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

UFCW 555 had any agreement with Emmons prior this litigation, or that Emmons had any knowledge of the indemnification agreement between UFCW 555 and Ridgelark when he distributed the Flyer, as the indemnification agreement here was entered into at the start of the case. *See* ECF No. 106 at 144 (EMM_000001); DiLorenzo Decl. Ex. D (Emmons Tr.) at 62:22–25 (no services from Osprey to UFCW 555 to Emmons's knowledge); *id.* at 68:3–17 (did not work on projects for UFCW 555). Regardless, this purported fact has no relevance to the merits of Guenther's claims against Emmons.

**Reply:** The facts actually asserted by Paragraph 94 are uncontroverted and, under L.Civ.R. 56(e), should be deemed undisputed and admitted.

As for the objection, the fact goes to the motivations of the sources on which Emmons relied.

**THE FLYERS' ACCUSATIONS AGAINST GUENTHER REGARDING GONZALEZ AND HINES ARE FALSE.**

95. On July 12, 2021, a member of Local 367 sent that union a letter accusing Angel Gonzalez of sexually harassing her.

**Record:** Dalmat Decl. Ex. 22 (July 12, 2021 Letter).

**Response:** Undisputed.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

96. On July 15, 2021, Clay received a text message asking if Gonzalez was still President of Local 367.

**Record:** Dalmat Decl. Ex. 23 (UFCW-EMMONS_000953).

**Response:** This purported fact has no relevance to the merits of Guenther's claims against Emmons.

**Reply:** Under L.Civ.R. 56(e), the assertions set forth in this Paragraph are uncontroverted and should be deemed undisputed and admitted.

As for the objection, the fact goes to Clay's knowledge that Guenther had no involvement in covering up Gonzalez's sexual harassment. Clay was Emmons's patron who set the smear campaign in motion. It also goes to the hostility of the sources on which Emmons relied for the truth of the accusations he spread.

97. Over the month, Mike Hines negotiated a settlement on behalf of Local 367 with the member, which paid her $50,000 and caused Gonzalez to resign from Local 367.

**Record:** Dalmat Decl. Ex. 24 (Hines sub resp. 09); Dalmat Decl. Ex. 27 (July 29, 2021, UFCW 367's Minutes); Dalmat Decl. Ex. 25 (Hines sub resp. 010); Dalmat Decl. Ex. 26 (August 19, 2021, Confidential Settlement and Release Agreement).

**Response**: **Undisputed** that UFCW 367 paid a member $50,000 to settle potential claims after Angel Gonzalez sexually harassed her. **DISPUTED** that

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 87
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    the settlement "caused" Gonzalez to resign. Gonzalez resigned before UFCW

2    367 reached a settlement agreement with the complaining member. ECF No.

3    106 at 165 (dated July 25); ECF No. 106 at 171 (dated August 19).

4 **Reply:** The only point Emmons disputes is whether UFCW Local 367's settlement

5 with the member "caused" Gonzalez to resign. Guenther agrees with Emmons that

6 Gonzalez's resignation is not literally a term of that agreement. Nonetheless, the

7 documents cited in support of this Paragraph collectively make clear that Gonzalez

8 resigned as a result of the allegations he faced and their ensuing consequences.

9

10    98. Until seeing the flyer in December 2021, Guenther knew nothing about the

11    Local 367 member's accusation against Gonzalez or Local 367's settlement

12    with that member.

13   **Record:** Guenther Decl. ¶¶ 122–124.

14    **Response:** Undisputed based on the record, which lacks any evidence

15    supporting or contradicting this statement.

16 **Reply:** Under L.Civ.R. 56(e), the fact asserted in this Paragraph is uncontroverted

17 and should be deemed undisputed and admitted.

18

19    99. Guenther never paid Gonzalez off for anything.

20   **Record:** Guenther Decl. ¶ 124; Mizrahi Decl. ¶¶ 7–10.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 88
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1    **Response**: Undisputed based on the record, which lacks any evidence

2    supporting or contradicting this statement. Mizrahi's conclusory testimony

3    and assertion that no UFCW 21 funds went to Angel Gonzalez or UFCW 367

4    to "cover[] up" sexual harassment charges does not show whether *Guenther*

5    paid Gonzalez anything—whether through a favor, money, or otherwise.

6    Guenther's declaration similarly states she did not "make a payment" but does

7    not mention other forms of recompense. ECF No. 107 ¶ 124.

8    **Reply:** Under L.Civ.R. 56(e), the fact asserted in this Paragraph is uncontroverted

9    and should be deemed undisputed and admitted.

10

11    100.    Nor did she influence Hines's advancement at Local 367. To the

12    contrary, Hines left Local 21 to join Local 367 without Guenther's

13    foreknowledge and over her objection.

14    **Record:** Guenther Decl. ¶¶ 23–31; Mizrahi Decl. ¶¶ 11–15.

15    **RESPONSE**: **Undisputed** based on the record.

16    **Reply:** Under L.Civ.R. 56(e), the fact asserted in this Paragraph is uncontroverted

17    and should be deemed undisputed and admitted.

18

19    101.    Hines certainly is not Guenther's "puppet." In fact, on June 29, 2021,

20    he joined Clay's complaint against Guenther.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 89
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    **Record:** Dalmat Decl. Ex. 1 (UFCW_987).

2        **Response: Undisputed** that Hines initially joined Clay's complaint against

3        Guenther. Whether Hines was Guenther's "puppet" is an opinion, not a fact,

4        and therefore is improper in Guenther's Statement of Material Facts.

5    **Reply:** Under L.Civ.R. 56(e), the facts asserted in this Paragraph is uncontroverted

6    and should be deemed undisputed and admitted.

7        As to the second sentence, Emmons's contention that whether "puppet" is an

8    opinion, not fact, is legal argument, not an evidentiary objection. It is thus not

9    sufficient to controvert the fact asserted. And it's wrong on the law. The fact/opinion

10   distinction turns on the factors set forth in *Dunlap v. Wayne*, 105 Wash. 2d 529, 538

11   (1986). ECF No. 104 at 11 (internal pagination). Guenther explained in detail in her

12   opening motion why the flyers' accusations against her are actionable factual

13   statements, not protected opinions. ECF No. 104 at 11–12 (internal pagination).

14   Emmons did not address that argument in his opposition to Guenther's motion for

15   summary judgment. *Cf.*, ECF No. 120. Having failed to mount a legal argument or

16   cite any legal authority in his memorandum opposing Guenther's legal argument in

17   her motion, as required by L.Civ.R. 7(c), Emmons should not be permitted to make

18   such a legal argument (unsupported by authority) in his Statement of Disputed

19   Material Facts.

20

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    102.    Hines became Secretary Treasurer of Local 367 in July 2021 at

2    Gonzalez's recommendation.

3    **Record:** Dalmat Decl. Ex. 28 (Minutes of UFCW 367's Executive Board Meetings

4    of June 16, 2021, and July 1, 2021).

5    **Response:** Undisputed.

6

7    103.    Following the member's sexual harassment allegations, Hines offered

8    himself at a July 29, 2021, Executive Board meeting as Gonzalez's

9    replacement for Local 367 president.

10    **Record:** Dalmat Decl. Ex. 27 (July 29, 2021, UFCW 367's Minutes).

11    **Response**: **DISPUTED**. The cited evidence does not support the proposition

12    that "Hines offered himself." It was also not produced during discovery,

13    which is presumably why it is not Bates stamped. DiLorenzo Decl. ¶ 10.

14    Guenther had this document in her possession, custody, control, failed to

15    produce it, and now "is not allowed to use that information … to supply

16    evidence on a motion." *See* Fed. R. Civ. P. 37(c)(1).

17    **Reply:** In relevant part, the minutes of Local 367's July 29, 2021, Executive Board

18    meeting in fact say: "Mike [Hines] opened a discussion up indicating that at the

19    next board meeting he would like support and confirmation of himself as President

20

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

and Ann-Maria Cavanaugh as Secretary/Treasurer." *See* (Third) Declaration of Darin M. Dalmat (Dalmat 3rd Decl.), filed herewith, Ex. 37 at 11.

It is true that ECF No. 116, Ex. 27 was inadvertently missing the page containing this statement. Dalmat 3rd Decl. ¶¶ 9–10. But, contrary to Emmons's response, Local 367 did produce the full document to Emmons's attorney on November 3, 2021. Dalmat 3rd Decl. ¶¶ 3–8, 14–15 & Ex. 37.

As to the objection, it is inapposite because Emmons received Local 367's July 29, 2021, Executive Board minutes in discovery. Even if that had not been the case (though it indisputably was the case), the failure would still have been harmless in light of Emmons's admission in response to Paragraph 100 that Guenther did not influence Hines's advancement at Local 367. That admission is the fact material to the falsity of the flyer's relevant accusation. The July 29, 2021, minutes simply provide additional detail showing that Hines himself—and not Guenther—was responsible for his own advancement at Local 367.

104.    The Local 367 Board then accepted Gonzalez's resignation from the presidency and made Hines its acting president.

**Record:** Dalmat Decl. Ex. 27 (July 29, 2021, UFCW 367's Minutes).

**Response**: **DISPUTED**. The cited evidence does not support [the] notion that the board "then" did anything after the false assertion in the prior paragraph.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 92
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

It further does not show Hines being made acting president. It was also not

produced during discovery, which is presumably why it is not Bates stamped.

DiLorenzo Decl. ¶ 10. Guenther had this document in her possession, custody,

control, failed to produce it, and now "is not allowed to use that information

… to supply evidence on a motion." *See* Fed. R. Civ. P. 37(c)(1).

**Reply:** In relevant part, the July 29, 2021, minutes in fact say:

> Angel Gonzalez needs to be removed from all financial responsibilities.
> Mike asked for a motion to [r]emove Angel Gonzalez as [sic.] primary
> responsibility (Primary Account Holder) from all Financial Institutions
> under United Food & Commercial Workers Local 367 (UFCW Local
> 367, UFCW 367), name and assign Michael Hines as the primary
> responsibility individual for same. … Motion carried unanimously.

Dalmat 3rd Decl., Ex. 37 at 11.

It is true that ECF No. 116, Ex. 27 was inadvertently missing the page

containing this statement. Dalmat 3rd Decl. ¶¶ 9–10. But, contrary to Emmons's

response, Local 367 did produce the full document to Emmons's attorney on

November 3, 2021. Dalmat 3rd Decl. ¶¶ 3–8, 14–15 & Ex. 37.

As to the objection, it is inapposite because Emmons received Local 367's

July 29, 2021, Executive Board minutes in discovery. Even if that had not been the

case (though it indisputably was the case), the failure would still have been harmless

in light of Emmons's admission in response to Paragraph 100 that Guenther did not

influence Hines's advancement at Local 367. That admission is the fact material to

the falsity of the flyer's relevant accusation. The July 29, 2021, minutes simply

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 93
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

provide additional detail showing that Hines himself—and not Guenther—was responsible for his own advancement at Local 367.

105.      Guenther had no role or influence in that decision at all. Guenther did not attend that meeting of the Local 367 Board and would not ordinarily do so.

**Record:** Guenther Decl. ¶¶ 125–126; Dalmat Decl. Ex. 27 (July 29, 2021, UFCW 367's Minutes).

**Response: Undisputed** that Guenther did not attend the UFCW 367 Executive Board meeting described in Paragraph 104 and would not ordinarily do so. The record lacks evidence regarding whether Guenther had any influence on the Board's decision to make Hines acting president of UFCW 367. **DISPUTED** to the extent it relies on Dalmat Decl. Ex. 27, which not produced during discovery and is presumably why it is not Bates stamped. DiLorenzo Decl. ¶ 10. Guenther had this document in her possession, custody, control, failed to produce it, and now "is not allowed to use that information … to supply evidence on a motion." *See* Fed. R. Civ. P. 37(c)(1).

**Reply:** The facts actually asserted in this Paragraph are uncontroverted and, under L.Civ.R. 56(e), should be deemed undisputed and admitted.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

Contrary to the portion of Emmons's response labeled "disputed," Local 367 did produce the July 29, 2021, meeting minutes to Emmons's attorney on November 3, 2021. Dalmat 3rd Decl. ¶¶ 3–8, 14–15 & Ex. 37.

As to the objection, it is inapposite because Emmons received Local 367's July 29, 2021, Executive Board minutes in discovery. Even if that had not been the case (though it indisputably was the case), the failure would still have been harmless in light of Emmons's admission in response to this Paragraph and Paragraph 100 that Guenther did not influence Hines's advancement at Local 367. That admission is the fact material to the falsity of the flyer's relevant accusation. The July 29, 2021, minutes simply provide additional detail confirming that uncontroverted fact.

**EMMONS'S PUBLICATION OF THE DEFAMATORY LEAFLET HARMED GUENTHER**

106.    By publishing the defamatory leaflet, Emmons dramatically harmed Guenther, including through protracted internal complaints within UFCW that undermined her standing among UFCW leaders, complicated her career, and caused her incredible anxiety.

**Record:** Guenther Decl. ¶¶ 128–167.

**RESPONSE**: **DISPUTED** that Emmons dramatically harmed Guenther by distributing the Flyer. The only evidence Guenther cites is her own self-serving declaration, and nothing in it supports this statement. The "protracted

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 95
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

internal complaints within UFCW" came from Dan Clay, the person behind the Flyer, so they could not have been caused by the Flyer. *See* ECF No. 107 ¶¶ 141-43, 146-53, 155-57. The other supposed evidence described in the cited paragraphs—a Facebook post by UFCW 367 member Jessica Roach, a complaint from UFCW 21 member Vanessa Giles, and an email from Collin Farthingworth—also do not show the Flyer caused "dramatic[] harm[]." The Facebook post appears to place blame on Gonzalez and Renner—not Guenther. *See* ECF No. 106 at 88. Giles disapproved of Guenther based on Guenther's own social media posts. *See* DiLorenzo Decl. Ex. H. And the Farthingworth email includes more detail than the Flyer, indicating it was not caused by the Flyer but by the concerns that motivated the Flyer. *See* ECF No. 106 at 90. In any event, Guenther claims Clay sent the Farthingworth email, in which case it could not have been caused by the Flyer. *See supra* ¶ 68.

**Reply:** Emmons's response to Paragraph 106 is primarily argument, which Guenther will address primarily in her reply memorandum. Here, Guenther focuses on the facts Emmons attempts to controvert.

He first says Guenther cites only her own declaration to support the harm she claims. That is not correct. The cited paragraphs of her declaration also contain 14 exhibits, which support her testimony. ECF No. 107, ¶¶ 128–67 (citing Ex. 22–35). In particular, Exhibit 33 shows Guenther had complained to the UFCW that

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 96
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Emmons, acting on behalf of Clay, had distributed defamatory flyers and it was the International's processing of this complaint—centered on Emmons's actions—that harmed Guenther's reputation. ECF No. 107, Ex. 33. Beyond those exhibits, additional testimony supports the harm Emmons's production, publication, and distribution of the flyer inflicted on Guenther. ECF No. 108, ¶¶ 36–43 (explaining the toll Guenther's efforts to salvage her reputation from the effects of Emmons's flyer have had on her); ECF No. 109, ¶¶ 15–23 (explaining that, in Guenther's case, Perrone departed from the tradition of appointing local union presidents to be International Vice Presidents, an appointment that came with a $20,000 stipend, at least in part based on the reputational effects of the flyer Emmons distributed because there's "a lot of smoke surrounding that situation").

Emmons next contends that Emmons's circulation of the flyer could not have caused the internal UFCW complaints at issue. That contention overlooks Guenther's internal-to-UFCW counterclaim against Clay, which alleged that Clay's meritless internal claim was an attempt to chill Local 3000 and her from finding out the true source behind Emmons's circulation of the flyers. ECF No. 107, ¶¶ 148–63 & Ex. 30–35. Emmons's January 8, 2022, circulation of the flyers was the precipitating event that set in motion the reputational harm Guenther faced at the International.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 97
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

Contrary to Emmons's response, Guenther does not contend that Jessica Roach's posting in the Local 367 dissenters' closed, private Facebook group caused her reputational harm. Quite the opposite, Guenther contends that Roach's post got minimal engagement (with reactions from as few as 17 people) without causing her reputational harm. ECF No. 115 at 4, 9–10 (internal pagination).

Similarly, while Collin Farthingworth's December 21, 2021, republication of several of the false accusations in Selvaggio's December 13, 2021, flyer may have contributed to Guenther's reputational harm at the International, so, too, did Emmons's January 8, 2022, republication of the full flyer. As shown elsewhere, republishers are liable to the same extent as original publishers. ECF No. 115 at 15–17 (internal pagination).

107.    The leaflet led to a shooting at her office window, a break-in of the safe in her office, and continued tarnishing of her reputation at the International.

**Record:** Guenther Decl. ¶ 162.

**Response: DISPUTED**. Guenther has no evidence that the Flyer "led to" any of these events. The cited paragraph of her declaration simply states that these events occurred and that she had not experienced "anything like this before." ECF No. 107 ¶ 162; *see also* DiLorenzo Decl. Ex. B (Guenther II Tr.) at 23:25–24:15 (admitting no evidence of connection between Emmons and

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 98
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    shooting or break-in). But the only date she provides for these events is

2    September 2023—more than a year and a half after Emmons distributed the

3    Flyer—which significantly undermines any casual inference. *Id.* Guenther

4    does not even offer evidence that the shooting or break-in were targeted at her

5    personally, much less caused by the Flyer. And the purported "tarnishing of

6    her reputation" would more likely be a result of Dan Clay's communications

7    to UFCW staff, independent of the copies of the Flyer Emmons distributed.

8    *See id.* (stating "Mr. Clay called me a 'menace' and other invectives in an

9    email that went to all 111 UFCW staff"); ECF No. 107 ¶ 141-43, 146-53, 155-

10   57. To the extent this testimony could support Guenther's damages

11   arguments, the Court should exclude it under Rule 37(c)(1) because Guenther

12   failed to allege it in her Complaint and failed to disclose it under Rule 26(a).

13   *See* ECF No. 1-2; DiLorenzo Decl. ¶ 11; *Okeke v. N.Y. & Presbyterian Hosp.*,

14   2017 WL 2484200, at *3 (S.D.N.Y. June 6, 2017) ("A plaintiff's failure to

15   disclose a computation of damages in her initial disclosure is alone sufficient

16   to preclude her from submitting evidence of it at trial'" (quoting *Roberts v.*

17   *Ground Handling, Inc.*, 2007 WL 2753862, at *4 (S.D.N.Y. Sept. 20, 2007)).

18   **Reply:** The testimony Emmons cites from Guenther's second day of deposition

19   does not admit that she had "no evidence" of any connection between Emmons's

20   production, publication, and circulation of the defamatory flyer and the shooting.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 99
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1   She was asked whether she thought the shooting "had something to do with Mr.

2   Emmons" and answered "If I could depose Dan and Isai [sic.] and find out who else

3   was involved, maybe I would find evidence to support that." ECF No. 123-2 at 7

4   (Guenther II Tr. 24:9–15). In context, Guenther speculates that she might find

5   additional evidence of a linkage if she had the opportunity to take the depositions

6   of Dan Clay or Esai Alday. She does not admit that she did not already have any

7   such evidence. In fact, she had her personal experience, which others at Local 3000

8   corroborated. ECF No. 107, ¶¶ 162, 164; ECF No. 108, ¶ 43.

9   As for the objection that Guenther did not allege reputational harm, it is not

10  factually well founded. Guenther's complaint expressly alleged she "suffered

11  compensable damages related to Defendants' distribution of the defamatory flyers,

12  including damages to her reputation as President of UFCW 21 and 3000, emotional

13  distress, and pain and suffering." ECF No. 1 at 24 (Compl. ¶ 4.8). *Accord* ECF No.

14  1 at 24 (Compl. ¶ 5.2, alleging compensable damages including emotional distress,

15  pain and suffering).

16  Emmons's counsel recognized as early as August 8, 2022, that Guenther's

17  complaint seeks "compensation for damage to union officers' reputations, Fay[e]

18  Guenther's (UFCW 3000's President) 'emotional distress, pain and suffering,' and

19  the cost of responding to the flyers, plus attorneys' fees." ECF No. 48-1, Ex. 1

20  (stamped page 3).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 100
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    Her July 13, 2023, initial disclosures assert the following damages:

2            Plaintiff's damages are reputational, potentially affecting future
       employment opportunities, affecting her current standing with
3       Local 3000 members, affecting her professional relationships
       with UFCW members and officials, affecting her personal
4       relationships, as well as her mental and emotional health that are
       difficult to compute and are questions for a jury to determine.
5       Plaintiff's damages also include past and future non-economic
       damages including pain and suffering and mental anguish. Such
6       claims do not require computation of damages as they are
       questions left to a jury. *EEOC v. Wal-Mart Stores, Inc.*, 276
7       F.R.D. 637 (E.D. Wash. 2011) citing *Anderson v. United Parcel
       Services*, 2010 WL 4822564, *10, note (D.Kan. Nov. 22, 2010)
8       ("Since compensatory damages for emotional distress are
       necessarily vague and are generally considered a fact issue for
9       the jury, they may not be amenable to the kind of calculation
       disclosure contemplated by Rule 26(a)(1)(C)").

10   ECF No. 48, Ex. 3 at 29.

11      The remainder of Emmons's response to Paragraph 107 is legal argument that

12   Guenther will address in her reply memorandum.

13

14

15   108.    Anxiety from the fallout of the flyer caused her to miss a month of

16   work, move personal residences at significant cost, beef up office security,

17   travel only with companions, and incur expenses for professional care.

18   **Record:** Guenther Decl. ¶ 164.

19      **Response**: **Undisputed** that Guenther experienced anxiety. **DISPUTED** that

20   the Flyer caused her anxiety. Guenther states her anxiety was "from the fallout

of the flyer," and that phrase appears to refer to the events described in

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 101
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

Paragraph 107. As stated in response to Paragraph 107, Guenther has no evidence that the Flyer caused any of those events. Moreover, the Court should exclude any testimony or other evidence of Guenther "miss[ing] a month of work, mov[ing] personal residences at significant cost, beef[ing] up office security, travel[ing] only with companions, and incur[ring] expenses for professional care" because she failed to allege any of these purported harms in her Complaint and failed to disclose them under Rule 26(a). *See* ECF No. 1-2; ECF No. 114 at 4–5; DiLorenzo Decl. ¶ 11; *Okeke*, 2017 WL 2484200, at *3.

**Reply:** Emmons admits that Guenther experienced anxiety and purports to dispute that his flyer caused her any anxiety. But he provides no facts to controvert that fact. Under L.Civ.R. 56(e), the fact is uncontroverted and should be considered undisputed and admitted.

As to the objection, it is not well founded. Guenther's complaint alleged compensable damages, emotional distress, and pain and suffering, ECF No. 1 at 24 (Compl. ¶¶ 4.8, 5.2), as well as "losses related to the defamatory statements in the form of investigation costs, attorneys' fees, the assignment of additional staff to address and communicate with membership regarding the false statements, additional reimbursed expenses due to the diversion of extra staff to areas where the flyers were distributed," ECF No. 1 at 22 (Compl. ¶ 3.60, applicable to

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 102
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

Guenther, a former Local 21 officer), and "losses related to … staffing to address
concerns raised by the flyer … ," *id.* (Compl. ¶ 3.61, applicable to Guenther, a Local
3000 officer). Those allegations cover missed work, beefed up office security, and
travel with companions.

Her disclosures amplified that her damages included reputational damages
"potentially affecting future employment opportunities" and her "mental and
emotional health," as well as "past and future non-economic damages including
pain and suffering and mental anguish." ECF No. 48, Ex. 3 at 29. Those disclosures
cover moving personal residences at significant cost and incurring professional
care, as well as the other items Emmons takes issue with in his response. To the
extent Emmons had any questions about the scope of Guenther's allegations and
disclosures, his attorneys had more than ten hours to explore them in her May 10
and June 6, 2024, depositions. ECF No. 97, ¶ 4.

Emmons nonetheless contends (at ECF No. 123, ¶ 11) that pages 107–108 of
her May 13, 2024, deposition testimony are inconsistent with her declaration
testimony that she has spent over $1,000 on professional care for her anxiety (ECF
No. 107, ¶ 164). But that is not correct. As an initial matter, Guenther was asked
whether she sought medical care for her symptoms as a result of the flyer's
statements, and she answered that she "got massages for stress release, relief." ECF
No. 123-1 at 13–14 (Guenther I Tr. 107:18–108:5). Guenther then added that she

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 103
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    "did not go to the doctor." *Id.* But doctors are not the only professionals; masseuses

2    are another kind of professional. And Guenther was never asked whether she went

3    to any professionals in addition to masseuses, nor was she asked how much she

4    spent for the professional care she received. There is nothing inconsistent with her

5    deposition and declaration testimony.

6         Finally, Emmons objects that the damages Guenther asserts she suffered are

7    inconsistent with her attorney's February 7, 2024, letter pursuant to Fed. R. Evid.

8    408 and RCW 4.84.250. That objection is misplaced for several reasons.

9         First, the letter is inadmissible at summary judgment under the express terms

10   of RCW 4.84.280 ("Offers of settlement shall not be filed or communicated to the

11   trier of the fact **until after judgment**, at which time a copy of said offer of

12   settlement shall be filed for the purposes of determining attorneys' fees as set forth

13   in RCW 4.84.250.") (emphasis added).

14        Second, the letter is inadmissible under Fed. R. Evid. 408(a) (settlement offers

15   are "not admissible—on behalf of any party—either to prove or disprove the

16   validity or **amount of a disputed claim** … .") (emphasis added).

17        Third, even if the letter were admissible (and it is not under the statute or rule),

18   there would still be no inconsistency. RCW 4.84.250 focuses on the amount of

19   damages a party "plead[s]," not the amount of damages the party in fact suffered.

20   In this action, Guenther now seeks only $1 in nominal damages, even though she

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 104
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1  actually suffered substantially more losses. ECF No. 104 at 1, 18–20. Guenther's

2  choice to limit the damages she seeks through this litigation is not, as Emmons

3  contends, evidence that she did not, in reality, suffer additional damages.

4

5      109.     The leaflet contributed to Guenther not receiving an appointment as an

6  International Vice President, even though, as the president of the largest

7  UFCW local union in America, she otherwise would have received that

8  appointment. That appointment would have carried with it a $20,000 annual

9  stipend and the prestige of the office.

10  **Record:** Guenther Decl. ¶ 164; Mizrahi Decl. ¶¶ 40–42; Crosby Decl. ¶¶ 15–23.

11  **Response**: **DISPUTED**. Guenther has no evidence that the Flyer "contributed

12  to" her not receiving an appointment as a UFCW International Vice President,

13  or that she "would have received that appointment" but for the Flyer. Guenther

14  claims in her declaration that she "believe[s]" UFCW International President

15  Marc Perrone "wanted to disassociate himself" from Guenther "because of the

16  reputational harm the flyers caused." ECF No. 107 ¶ 167. But Guenther

17  testified that she already had a strained relationship with Perrone before the

18  proposed merger. *See* DiLorenzo Decl. Ex. B (Guenther II Tr.) at 13:3–10,

19  19:24–18. The record is also replete with alternative explanations for

20  Guenther not receiving a Vice President appointment. *See id.* at 36:20–25,

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 105
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

80:15–23, 85:14–20 (Guenther had a strained relationship with her UFCW International regional director, Kate Meckler); DiLorenzo Decl. Ex. A (Guenther I Tr.) at 233:4–6, 237:4–20 (Guenther accused other UFCW chapter presidents of taking exorbitant salaries and accused Perrone of having ties to the mob); *id.* at 78:7–8, 80:15–23, 85:14–20 (Guenther had a strained relationship with other UFCW International Vice Presidents, such as Dan Clay).

**Reply**: Emmons states that Guenther has "no evidence" that his circulation of the defamatory flyer contributed to her not receiving an appointment to an International Vice President position, with an accompanying $20,000 stipend. That assertion is flatly wrong. Guenther offered, as evidence, testimony from three witnesses: Todd Crosby, Joe Mizrahi, and herself. ECF No. 109, ¶¶ 15–23; ECF No. 108, ¶¶ 40–42; ECF No. 107, ¶¶ 164.

Crosby, in particular, testified to a tradition of the International President appointing local union presidents to International Vice Presidents shortly after they begin local office. ECF No. 109, ¶¶ 15–23. He noted that because Local 21 was the largest UFCW local union in the United States, he became an IVP within a year of becoming the Local 21 President. *Id.* He emphasized that Local 21—now Local 3000—is still the largest UFCW local union in the United States but, even though Guenther has been President of that local for five years now, she still has not received

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 106
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

an IVP appointment. *Id.*; ECF No. 107, ¶ 16. Crosby elaborated that, based on his personal experience and dealings with President Perrone, he believes the flyers contributed to her non-appointment; in fact, he heard Perrone say there is "a lot of smoke surrounding" the flyers' accusations against Guenther, and "understood [Perrone's] comment to mean that Faye was too controversial for his comfort to be appointed as an IVP." ECF No. 109, ¶¶ 15–23.

Those facts are all uncontroverted and, under L.Civ.R. 56(e), should be deemed undisputed and admitted. Moreover, Guenther's and Mizrahi's testimony corroborates Crosby's testimony. ECF No. 107, ¶ 167; ECF No. 108, ¶ 42. And, although Emmons's initial disclosures identify the United Food and Commercial Workers International Union as a witness on which he may rely for his defense in this case, Dalmat 3rd Decl. ¶ 16 & Ex. 38 thereto, he has produced no declaration from any International Union officer or agent disputing Crosby's testimony.

Instead, Emmons speculates as to other possible explanations for Guenther's non-appointment. That speculation falls far short of competent evidence on summary judgment as to International President Perrone's actual reasons for not appointing Guenther. To the extent Emmons offers Guenther's relationship with Regional Director Meckler, other local union presidents with high salaries, or Dan Clay as evidence of Perrone's reasons for not appointing her to an IVP position,

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 107
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    Guenther accordingly objects to that speculation as lacking foundation and

2    inadmissible.

3          Even if speculative alternative explanations for Guenther's non-

4    appointment were admitted, they do not controvert the fact asserted in this

5    Paragraph, which is that Emmons's flyer "contributed to"—not was the sole cause

6    of—Guenther's non-appointment. An event may have multiple contributing causes.

7                              *      *      *

8    **Emmons next submits additional statements of disputed facts, which largely**
     **mirror assertions he made in support of his cross-motion for summary**
9    **judgment. *Compare* ECF No. 111 *with* ECF No. 121, ¶¶ 110–77. Although**
     **Guenther has already responded to (nearly all) those assertions in her**
10   **Statement of Disputed Facts (ECF No. 116), to avoid any forfeiture, she**
     **responds again to Emmons's additional statements of disputed facts below.**

11

12         110.   On September 13, 2021, a letter of concern regarding the UFCW 1439

13   President, Eric Renner, was emailed to UFCW 1439 Executive Board Members and

14   UFCW International Leadership. ECF No. 113 ¶ 24; ECF No. 113-23 ("Complaint

15   Letter"); ECF No. 113-6 at 3-5 (Jackson Tr. 25:13–26:8, 99:13–16).

16   **Response:** Undisputed.

17         It is also undisputed that Guenther had not seen the letter of concern (which

18   was forwarded on September 13, 2021, to the Local 1439 Executive Board and

19   UFCW International President) before the March 11, 2024, deposition of Laurel

20   Fish. ECF No. 117 Ex. 32 (Guenther Tr. I 138:19–139:10). In fact, before March or

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 108
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1   April 2022, all Guenther knew about the matter was that an internal conflict within

2   Local 1439 had been resolved to the satisfaction of the affected parties. She did not

3   know the substance of the dispute and had not seen the resulting settlement

4   agreements. Dalmat 2nd Decl. Ex. 32 (Guenther Tr I. 80:9–82:25, 93:18–94:8); Ex.

5   34 (Guenther Tr. II 28:8–30:1).

6

7       111.   The five-page Complaint Letter raised concerns about what it described

8   as Renner's "abuse of power" and provided examples of such abuses, including

9   instances where the letter stated Renner "commented repeatedly about female staff

10   members and International Union officers 'big butts,'" "encouraged male employees

11   to imagine a specific female employee engaged in sex acts," "bragged … about

12   having [sexual] relationships with members," asked a male employee whether he had

13   "hit that yet" in reference to a female employee, and used "homophobic language" to

14   "mock[] [an employee's] mannerisms." ECF No. 113 ¶ 24 & 113-23 at 4–8; ECF No.

15   113-6 at 3-4 (Jackson Tr. 25:13–26:8); ECF No. 113-5 at 3 (Fish Tr. 24:7–22); see

16   also ECF No. 51-4 (Jackson Tr.) at 54:11–55:14 (behavior described in Complaint

17   Letter constituted "sexual harassment").

18   **Response:** Disputed in part.

19       It is undisputed that the complaint letter (ECF No. 113-23) raised those

20   allegations.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 109
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    As for whether the allegations themselves are true, Renner denies them and

2    explains why they are false or taken out of context. Declaration of Eric Renner, ¶¶ 6–

3    11. *See also* ECF No. 117, Ex. 35 (Streepy Tr. 34:18–35:19). For her part, when

4    Guenther first read the letter in March 2024, she did not know which allegations in

5    the complaint letter may have been true or untrue. ECF No. 117, Ex. 32 (Guenther

6    Tr. I 139:2–141:24).

7

8    112.    The Complaint Letter was signed by seven individuals, who were then-

9    current and former employees of UFCW 1439: Adam Jackson (Organizing Director),

10    Laurel Fish (Organizer & Director of Strategic Campaigns), Katie Dugger

11    (Membership Services/Organizer), Sandra Huggins (former Benefits Director),

12    Leslie Cowin (former Membership Services/Administrative Assistant), Amy Poston

13    (former Office Assistant/Administrative Assistant), and Austin DePaolo (former

14    Organizer & Business Representative) (collectively "Complainants"). ECF No. 113

15    ¶ 24; ECF No. 113-23 at 8; ECF No. 113-6 at 3-4 (Jackson Tr. 25:13–26:8).

16    **Response:** Undisputed.

17

18    113.    Between approximately September 22, 2021, and early October 2021,

19    Plaintiff's counsel Aaron Streepy investigated the Complaint Letter's claims and

20    drafted    settlement    agreements    with    nondisclosure    provisions,    which    the

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 110
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1   Complainants, Renner, UFCW 1439, and others signed. *See* ECF No. 51-2 at 006047

2   (September 15, 2021, email from Streepy stating he "anticipate[d] beginning"

3   meeting with Complainants the following Wednesday); ECF No. 51-3 at 006226

4   (October 4, 2021 email from Streepy with settlement agreements); ECF No. 51-1

5   ("NDAs").

6   **Response:** Disputed in part.

7        It is undisputed that between approximately September 22, 2021, and October

8   9, 2021, Aaron Streepy investigated the complaint letter's allegations and drafted

9   settlement agreements with nondisclosure provisions, which the Complainants,

10  Renner, UFCW 1439, and others signed.

11       It is disputed that Mr. Streepy did so in his capacity as Plaintiff's counsel. In

12  fact, this litigation is the first and only matter in which Mr. Streepy has represented

13  Guenther personally. ECF No. 117, Ex. 35 (Streepy Tr. 13:4–10). Local 1439

14  retained Mr. Streepy in mid-September 2021 to investigate the allegations of the

15  complaint letter. In his capacity as outside counsel to Local 1439, he investigated

16  those allegations and, along with Local 1439's in-house counsel, negotiated a

17  settlement agreement between the Complainants, Mr. Renner, and third parties. ECF

18  No. 117, Ex. 35 (Streepy Tr. 16:13–18:5, 18:24–19:3); ECF No. 57, ¶¶ 4–5. The

19  settlement became final on October 9, 2021. ECF No. 57, ¶ 5. During that time, Mr.

20  Streepy did not share information or any details with Guenther regarding the

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 111
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1 | investigation, other than perhaps to inform her that he represented Local 1439 in the

2 | matter. ECF No. 57, ¶ 7.

3 |

4 | 114.   The NDAs include the following provisions: "Renner shall resign his

5 | position with UFCW 1439 effective April 1, 2022," and "Renner agrees not to run

6 | for UFCW 1439 office in the future." *See, e.g.*, ECF No. 51-1 at 006001. The NDAs

7 | also prohibit the Complainants from disclosing the terms of the settlement agreement

8 | or information and evidence related to the complaints. *See, e.g.*, *id.* at 006002.

9 | **Response:** It is undisputed that the NDAs include the quoted terms.

10 |   It is also undisputed that Renner is no longer the President of Local 1439, does

11 | not hold any elected office with UFCW Local 3000 and has not done so at any time,

12 | and has not ever run for any elected office within UFCW Local 3000. Rather, the

13 | principal, elected officers of Local 3000 are its President Faye Guenther, its

14 | Secretary-Treasurer Joe Mizrahi, and its Recorder Maria Milliron. Renner is

15 | currently employed by Local 3000 in a non-elected, non-officer position as a

16 | contract bargainer. His current title is Director for Eastern Washington, Northern

17 | Idaho, and Northeastern Oregon. ECF No. 117, Ex. 32 (Guenther Tr. I 85:17–87:17,

18 | 199:10–14, 200:13–23); ECF No. 118, ¶¶ 5–6. He has also held the title of Vice

19 | President but has never been a constitutional Vice President within the meaning of

20 | UFCW Local 3000's bylaws, in that he has never sat on Local 3000's Executive

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 112
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1    Board. ECF No. 118, Ex. 1. In short, Renner has never held a position at Local 3000

2    with responsibilities for governing that local union, as he had at Local 1439. He has

3    also never supervised anyone at Local 3000. ECF No. 118, ¶¶ 5–6.

4

5        115.    Before September 2021, Renner had been opposed to merging with

6    UFCW 21 for political and other reasons. DiLorenzo Decl. Ex. F (Jackson Tr.) at

7    91:8–95:10; *id.* at Ex. G (Garcia Tr.) at 81:10–18.

8    **Response:** Undisputed but clarified that those were Renner's views in or around

9    2019. *See supra*, ¶¶ 38, 44.

10

11        116.    In October 2021, Guenther and Renner communicated regularly

12    regarding the merger, including by text message and by phone. ECF No. 113 ¶ 13;

13    ECF No. 113-12 at 29–33; ECF No. 113-2 at 3-9 (Guenther II Tr. 30:16–31:16,

14    34:18–38:24).

15    **Response:** Undisputed.

16

17        117.    On October 20, 2021, Renner sent Guenther a text message about

18    reaching out to Kate Meckler. ECF No. 113 ¶ 13; ECF No. 113-12 at 31; ECF No.

19    113-2 at 3-4, 7 (Guenther II Tr. 30:16–31:7, 36:3–11).

20    **Response:** Undisputed.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 113
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
**TEL** 800.238.4231 | **FAX** 206.378.4132    **LAVITT LLP**

118.    Kate Meckler was a UFCW regional director. ECF No. 113-1 at 46, 50 (Guenther I Tr. 124:23–25, 158:13–14); ECF No. 113-2 at 7 (Guenther II Tr. 36:3–11).

**Response:** Undisputed. *See also* ECF No. 105, ¶ 5.

119.    Meckler needed to "release" the merger request before UFCW International would approve formal merger discussions, and Guenther was concerned that Meckler would oppose the merger. ECF No. 113-1 at 52-32 (Guenther I Tr. 161:24–162:9); ECF No. 113-2 at 7 (Guenther II Tr. 36:20–25).

**Response:** Undisputed and clarified.

Although the UFCW Constitution authorizes the International Executive Committee to approve formal merger discussions, Regional Director Meckler is the person who communicated that approval (or "released" it) to the local unions who had requested it. ECF No. 107, ¶¶ 92, 94.

It is undisputed that, although International President Marc Perrone had informally approved the merger discussion as early as November 2, 2021, Meckler delayed communicating the International's formal approval until December 2021 to avoid interfering with a union-election vote at a Fred Meyer store in Richland, Washington, scheduled for late November 2021. ECF No. 107, ¶¶ 92, 97; ECF No. 113-1 (Guenther Tr. I 161:24–162:9).

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132
BARNARD IGLITZIN & LAVITT LLP

1    It is undisputed that Guenther was concerned Meckler would oppose the

2    merger. ECF No. 113-2 (Guenther Tr. II 36:20–25). Meckler, after all, had

3    previously allied with Local 555 President Dan Clay (and others) against Guenther

4    on various matters. ECF No. 107, ¶¶ 20–22, 27, 30–31, 63–65, 71, 92; ECF No. 106,

5    Ex. 2 (UFCW-EMMONS_000899–901).

6

7    120.   On October 20, 2021, Guenther responded to Renner, stating in part:

8       I think we should meet with Aaron first and then maybe call her that day?
        That way we have all our best arguments written down and vetted

9
        Kate may try to mess with things…hopefully not…so maybe we can ask
10      Aaron to draft up top 10 reasons or something. And then specifically ask
        for her support.
11
        And we should have a letter ready to go asap after we talk with her to
12      full exec committee.

13    ECF No. 113 ¶ 13; ECF No. 113-12 at 30–31; ECF No. 113-2 at 3-4, 7 (Guenther II

14    Tr. 30:16–31:7, 36:3–25).

15    **Response:** Undisputed that the quotations set forth above are partial quotations of

16    text messages Guenther sent Renner on October 20, 2021. The full quotations are

17    set forth in the cited exhibit.

18

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 115
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    121.   Guenther also asked Shaun Barclay, UFCW 21's former regional

2    director, to speak with Perrone about the benefits of the merger. ECF No. 113-1 at 54

3    (Guenther I Tr. 163:3–24).

4    **Response:** Disputed in part. Shaun Barclay is a former regional director of UFCW

5    Region 7, of which Local 21 was a part. *See* ECF No. 105, ¶ 5 (citing record). The

6    remainder of this Paragraph is undisputed.

7

8

9    122.   Guenther helped prepare a merger agreement, which Guenther and

10    Renner signed. ECF No. 113-1 at 32-33 (Guenther I Tr. 69:19–70:19); ECF No. 113-

11    9.

12    **Response:** Undisputed and clarified that Guenther did so using the International

13    Union's Model Local Union Merger Agreement, which required membership

14    approval. *See* ECF No. 113-1 (Guenther Tr. I 69:19–70:19); ECF No. 107, ¶ 95; and

15    Ex. 16.

16

17    123.   Aaron Streepy represented both parties to the merger. ECF No. 55 at

18    3:18–20; ECF No. 113-1 at 29-31 (Guenther I Tr. 65:6–67:13).

19    **Response:** Undisputed.

20

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1   124.   Under the merger agreement, Guenther would be president of the new

2   union formed through the merger. ECF No. 113-9. Under a "side agreement," Renner

3   would be an employee of the new union. ECF No. 113 ¶ 14; ECF No. 113-13 at 2;

4   ECF No. 113-1 at 37 (Guenther I Tr. 84:7–25); ECF No. 113-2 at 10-12 (Guenther II

5   Tr. 43:2–25, 49:20–50:4).

6   **Response:** Disputed in part.

7   It is undisputed that the merger agreement called for Guenther to be President

8   of the new union formed through the merger.

9   It is undisputed that UFCW 3000 entered into a "Merger Commitments and

10  Employment Agreement" that provided Renner would be an employee of Local

11  3000.

12  It is disputed that Local 3000 did so contemporaneously with its execution of

13  the December 14, 2021, merger agreement (ECF No. 113-9). In fact, Local 3000

14  never signed the "Merger Commitments and Employment Agreement" but instead

15  approved it electronically much later, by July 21, 2023. *See* ECF No. 113-13; ECF

16  No. 117, 32 (Guenther Tr. I 84:7–25); 34 (Guenther Tr. II 43:2–25, 49:20–50:4).

17

18  125.   Before Guenther recommended the proposed merger to UFCW 21's

19  Executive Board, Guenther and Renner agreed that the new union would employ

20  Renner. ECF No. 113-1 at 37 (Guenther I Tr. 84:7–25).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 117
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    **Response:** Disputed in part.

2        It is undisputed that before Guenther recommended to the Local 21 Executive

3    Board that the Board put the merger to a membership vote, she had asked Renner to

4    work with Local 3000 "to help transition the [Local 1439] contracts to" Local 3000.

5    ECF No. 117, Ex 32 (Guenther Tr. I 84:7–16). At that time, the parties had not

6    reached any agreements—their "conversations were vague … ." ECF No. 117, Ex

7    32 (Guenther Tr. I 84:19). An actual agreement between Renner and Local 3000

8    regarding his employment did not begin to take shape until January or February 2022

9    and was not executed until much later, by July 21, 2023. ECF No. 117, Ex 32

10   (Guenther Tr. I 84:17–25); Ex 34 (Guenther Tr. II 43:2–25, 49:20–50:4).

11

12       126.    On December 8, 2021, Renner stated in a text message to Guenther:

13   "Scott H. has reviewed merger agreement. Larry Hall supports the merger and will

14   put his name to it. Train is rolling!!!!!" ECF No. 113 ¶ 13; ECF No. 113-12 at 26;

15   ECF No. 113-2 at 3-4 (Guenther II Tr. 30:16–31:7). Guenther responded: "Yes!!!!

16   That is so awesome!"

17   ECF No. 113-12 at 26.

18   **Response:** Undisputed.

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 118
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    It is also undisputed that "Scott H." refers to Scott Habenicht, Local 1439's

2 in-house counsel in December 2021 and Larry Hall is a former President of Local

3 1439 who was a significant leader of that union. ECF No. 118, ¶ 6.

4

5    127. On December 12, 2021, Renner told Guenther that two individuals

6 "were both very impressed by [her] and are in full support!" ECF No. 113 ¶ 13; ECF

7 No. 113-12 at 23; ECF No. 113-2 at 3-4 (Guenther II Tr. 30:16–31:7). Guenther

8 responded: "That is great news! Now I have to get my board all in order!" ECF No.

9 113-12 at 23.

10 **Response:** Undisputed and clarified that Renner texted Guenther that Jeff White and

11 Kinzie Michael—two members of the Local 1439 Executive Board in December

12 2021— were "both very impressed by [Guenther] and are in full support!" ECF No.

13 118, ¶ 9.

14   Guenther's response to Renner's text is undisputed.

15

16    128. On December 14, 2021, Guenther led a discussion with the UFCW 21

17 Executive Board, in which she advocated in favor of the merger. ECF No. 113-1 at

18 25-27 (Guenther I Tr. 60:24–62:12); ECF No. 113-17 at 3–4.

19 **Response:** Disputed in part.

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 119
Case No. 2:22-cv-00272-TOR

1    On December 14, 2021, the Local 21 Executive Board discussed the merger.

2    But Joe Mizrahi led the discussion (in executive session) and Guenther fielded

3    questions. ECF No. 107, ¶¶ 97–100.

4    It is also undisputed that Local 21's Executive Board was composed of 36

5    members and the merger discussion took place during an executive session, which

6    is reserved for sensitive, private discussions. ECF No. 107, ¶¶ 97–101; and Ex. 17

7    (RFP Resp No 6 – 006001–03).

8

9

10    129.    When Guenther spoke with the UFCW 21 Executive Board on

11    December 14, 2021, she knew "there had been an internal dispute [at UFCW 1439]"

12    involving Renner that "had been resolved amongst all parties with nondisclosure and

13    … confidentiality agreements," and that Renner was prohibited from "directly

14    supervis[ing] any employees." ECF No. 113-1 at 34, 38-39, 41, 55-56 (Guenther I

15    Tr. 71:13–18, 93:12–94:20, 99:5–14, 167:21–168:9); ECF No. 113 ¶ 14; ECF No.

16    113-13 at 2; ECF No. 113-2 at 11-12 (Guenther II Tr. 49:20–50:4); ECF No. 113-17

17    at 3–4.

18    **Response:** Undisputed.

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 120
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

130.    Guenther did not tell the UFCW 21 Executive Board about the claims against Renner, the nondisclosure agreements, Renner's agreement to resign, or that Renner was not allowed to supervise people. ECF No. 113-1 at 36-37 (Guenther I Tr. 83:6–84:6).

**Response:** Disputed in part.

As of the December 14, 2021, Local 21 Executive Board meeting, Guenther did not know the claims against Renner, had not seen the settlement/nondisclosure agreements, and had contemplated a merger agreement that would place Renner in a non-supervisory position at Local 3000 where he would not be an officer of that local union and would not sit on its governing body, the Executive Board. ECF No. 117, Ex. 32 (Guenther Tr. I 80:9–82:25, 85:17–87:17, 93:18–94:8, 138:19–139:10, 199:10–14, 200:13–23); Ex. 34 (Guenther Tr. II 28:8–30:1); ECF No. 118, ¶¶ 5–6.

It is therefore undisputed that Guenther did not inform the Local 21 Executive Board of those topics of which she was unaware. As for the restriction on Renner's ability to supervise others, because Guenther had no expectation that Renner would supervise anyone at Local 3000, she saw no relevance in informing the Executive Board of such a restriction. ECF No. 117, Ex. 32 (Guenther Tr. I 84:3–6). In fact, Renner has not supervised anyone while employed at Local 3000. ECF No. 118, ¶¶ 5–6.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 121
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD IGLITZIN & LAVITT LLP**

1    131.    On December 17, 2021, UFCW 1439 formally announced the merger

2   vote to its members. ECF No. 113-24 at 2.

3   **Response:** Disputed in part (or, perhaps, merely clarified).

4        The cited exhibit indicates that "Notice of the merger vote was provided to

5   our membership on December 17, 2021." ECF No. 113-24. In other words, on

6   December 17, 2021, Local 1439 mailed notifications to its members of their right to

7   participate in an upcoming vote—at meetings on January 6, 10–14, and 18–20,

8   2022—on the proposed merger between Local 21 and Local 1439. ECF No. 113-24.

9   Local 1439's December 17, 2021, notice did not announce the results of an

10   accomplished merger vote.

11

12    132.    On January 5, 2022, the day before UFCW 1439 members began

13   voting, Guenther stated in an email to Renner and others that her staff "are going to

14   fly to Spokane tomorrow and provide any support needed to 1439," "onboard [a

15   UFCW 21 staff member] to help from tomorrow until January 20 to ensure we have

16   what we need for all votes," and "can also help … with anything … including … vote

17   support." ECF No. 113-18 at 2.

18   **Response:** Disputed in part.

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 122
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

It is undisputed that the quotations set forth above are accurate, partial quotations from the cited exhibit containing Guenther's January 5, 2022, email. The full quotation is:

Hi All:

Kim and Sarah are going to fly to Spokane tomorrow and provide any support needed to 1439. We have a staff person who is cross trained in Emma and DMC and Kim will onboard her to help from tomorrow until January 20 to ensure we have what we need for all votes. Kim and Michelle can also help Dana with anything she needs including prep for year end audit and vote support.

Joe and I are cancelling all of our travel and meetings and will provide extra support, Shari Davis will likely travel with us to any vote meetings we can make. Share can help reps with sign in and she can seal the doors at proper time.

Eric I will call you so we can outline which votes Share/Joe and I can provide extra sets of hands.

It's game time!

Faye

ECF No. 113-18. This email correctly reflects Guenther's plans as of January 5, 2022: she planned to send experienced Local 21 staff members to assist with Local 1439's administration of the merger vote to ensure compliance with legal requirements under federal law (i.e., the Labor–Management Reporting and Disclosure Act) and the UFCW Constitution. ECF No. 118, ¶ 12. In fact, Guenther was not able to attend the Local 1439 meetings at which Local 1439 members voted on the merger because she was sick with COVID. ECF No. 118, ¶¶ 14–15. The Local

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 123
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

21 staff who attended ensured the merger vote complied with union-constitutional requirements and federal law, and also fielded members' questions. ECF No. 118, ¶¶ 16–17.

133.    In the same January 5, 2022, email, Guenther stated: "Joe and I are cancelling all of our travel and meetings and will provide extra support, Shari Davis will likely travel with us to any vote meetings we can make. … Eric I will call you so we can outline which votes Shari/Joe and I can provide extra sets of hands. It's game time!" ECF No. 113-18 at 2.

**Response:** Disputed in part.

It is undisputed that the quotations set forth above are accurate, partial quotations from the cited exhibit containing Guenther's January 5, 2022, email. The full quotation is:

Hi All:

Kim and Sarah are going to fly to Spokane tomorrow and provide any support needed to 1439. We have a staff person who is cross trained in Emma and DMC and Kim will onboard her to help from tomorrow until January 20 to ensure we have what we need for all votes. Kim and Michelle can also help Dana with anything she needs including prep for year end audit and vote support.

Joe and I are cancelling all of our travel and meetings and will provide extra support, Shari Davis will likely travel with us to any vote meetings we can make. Share can help reps with sign in and she can seal the doors at proper time.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

Eric I will call you so we can outline which votes Share/Joe and I can provide extra sets of hands.

It's game time!

Faye

ECF No. 113-18. This email correctly reflects Guenther's plans as of January 5, 2022: she planned to send experienced Local 21 staff members to assist with Local 1439's administration of the merger vote to ensure compliance with legal requirements under federal law (i.e., the Labor–Management Reporting and Disclosure Act) and the UFCW Constitution. ECF No. 118, ¶ 12. In fact, Guenther was not able to attend the Local 1439 meetings at which Local 1439 members voted on the merger because she was sick with COVID. ECF No. 118, ¶¶ 14–15. The Local 21 staff who attended ensured the merger vote complied with union-constitutional requirements and federal law, and also fielded members' questions. ECF No. 118, ¶¶ 16–17.

134.    Also on January 5, 2022, Guenther texted Renner: "Game time!!! Its [sic] on Eric! I can t [sic] wait to celebrate on Jan 20!!!!!!!!" ECF No. 113 ¶ 13; & ECF No. 113-12 at 18; ECF No. 113-2 at 3-4 (Guenther II Tr. 30:16–31:7).

**Response:** Undisputed.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 125
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400   **BARNARD**
SEATTLE, WASHINGTON 98119   **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

1    135.    In December 2021, nonparty Michael Selvaggio, who through his

2    company Ridgelark Strategies LLC was political director for UFCW 555, created the

3    Flyer to encourage UFCW members to vote against the proposed merger. ECF No.

4    113-3 at 4, 6, 21 (Selvaggio Tr. 62:2–23, 75:14–19, 113:10–18). The Flyer stated:

5        ATTENTION UFCW MEMBERS

6        The in-union "Sexual Harassment club" is at it again!!

7        First Faye Gunther [sic] (President of Local 21) helped former 367 President
         Angel Gonzalez cover up his harassment charges and paid him off in exchange
8        for installing her puppet, Mike Hines.

9        Now she's helping Eric Renner (the Local 1439 President) hide from sexual
         harassment charges and land a cushy new gig with Local 21 through a forced
10       merger.

11       OUR UNION SHOULD BE LOOKING OUT FOR US <u>NOT</u>
         <u>PROTECTING HARASSERS</u>!
12
         It's time to <u>STOP THE COVERUPS</u>!
13
         VOTE NO ON ANY MERGER!
14
15   ECF No. 26-1.

16   **Response:** Disputed in part.

17       It is undisputed that Selvaggio is the principle of Ridgelark Strategies LLC

18   and the political director for UFCW Local 555. It is also undisputed that Selvaggio

19   drafted the content of the flyer based on talking points he had discussed with Local

20   555 President Dan Clay and his executive assistant, Esai Alday. ECF No. 106, Ex. 7

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 126
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    (Selvaggio Tr. 113:10–114:3, 122:17–124:12, 144:3–145:1). And it is undisputed

2    that this Paragraph correctly quotes the flyer.

3    Nonetheless, Emmons literally created the written materials—the flyers—that

4    he distributed at grocery stores in Spokane, Washington, by printing them at a FedEx

5    store. ECF No. 106, Ex. 13 (Emmons Tr. 74:18–76:2).

6

7    136.    Selvaggio created the Flyer at the request of Dan Clay, President of

8    UFCW 555. ECF No. 113-3 at 3, 7-12, 24-25 (Selvaggio Tr. 43:23–25, 92:10– 97:24,

9    123:20–124:2).

10   **Response:** It is undisputed that Selvaggio drafted the flyer at Clay's request. As

11   indicated in response to paragraph 135, Emmons literally created the flyers

12   themselves by printing them.

13

14   137.    Clay and Esai Alday, who also works for UFCW 555, provided

15   Selvaggio with the information that Selvaggio included in the Flyer. ECF No. 113- 3

16   at 14, 23-25 (Selvaggio Tr. 99:11–17, 122:10–124:2).

17   **Response:** Undisputed.

18

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 127
Case No. 2:22-cv-00272-TOR

138.    Emmons had no involvement in creating the Flyer or in any social media posts about it. *See* ECF No. 112 ¶ 6; ECF No. 106 ¶ 131 (UFCW 367 member posted the Flyer in a closed members-only Facebook group).

**Response:** Disputed.

In fact, Emmons was substantially involved in producing the flyer. He discussed the contents of the flyer with Selvaggio before agreeing to print and circulate it. ECF No. 106, Ex. 7 (Selvaggio Tr. 110:9–111:13); Ex. 13 (Emmons Tr. 69:7–14). During that discussion, Emmons immediately recognized the incendiary nature of those accusations and asked Selvaggio for their basis. ECF No. 106, Ex. 13 (Emmons Tr. 69:7–10, 70:20–71:22). Selvaggio told him the sexual harassment allegations were the subject of investigations. ECF No. 106, Ex. 13 (Emmons Tr. 70:20–71:22); Ex. 7 (Selvaggio Tr. 110:24–111:16). Selvaggio and Emmons did not discuss any payoffs or whether Guenther was involved in any way in those allegations or the target of any sexual harassment investigation. ECF No. 106, Ex. 7 (Selvaggio Tr. 111:14–112:19); Ex. 13 (Emmons Tr. 71:20–25, 78:2–7, 78:22–79:8, 80:3–12). As far as Emmons recalls, they did not discuss Guenther at all during that conversation. ECF No. 106, Ex. 13 (Emmons Tr. 64:21–65:15).

After that conversation, Selvaggio emailed Emmons the flyer. ECF No. 106, Ex. 17 (Selvaggio Ex. 8); Dalmat Decl. Ex. 7 (Selvaggio Tr. 139:9–140:1, 144:3–145:1). After receiving a copy of the flyer itself from Selvaggio, Emmons and

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 128
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1    Selvaggio had another discussion about it. ECF No. 106, Ex. 13 (Emmons Tr. 76:1–

2    80:16); Ex. 18 (Selvaggio Ex. 6). During that second conversation, Emmons read

3    the flyer in its entirety but did not discuss any details of any investigations into

4    Gonzalez or Renner and did not discuss the accusation that Guenther helped

5    Gonzalez cover up harassment charges and paid him off in exchange for installing

6    Hines. ECF No. 106, Ex. 13 (Emmons Tr. 78:25–79:15, 90:13–91:19). Emmons also

7    did not discuss with Selvaggio the accusation that Guenther helped cover up

8    allegations Renner was facing. ECF No. 16, Ex. 13 (Emmons Tr. 78:14–80:16).

9        Based on what he learned in these two conversations—i.e., nothing at all

10   supporting the truth of the accusations directed against Guenther—Emmons agreed

11   to produce the flyers by printing them at a FedEx store and then distributing them in

12   grocery stores in Spokane (hundreds of miles away from Portland) where affected

13   UFCW members would likely see them. ECF No. 106, Ex. 13 (Emmons Tr. 74:18–

14   75:25); Ex. 13 (Emmons Tr. 74:18–76:6, 81:1–84:22, 102:9–103:21); Ex. 7

15   (Selvaggio Tr. 136:3–19); Ex. 19 (RFP Resp No. 2 – 002111–16). Upon distributing

16   the flyers, Emmons told recipients "here's information about the union, information

17   about the merger." ECF No. Ex. 7 (Selvaggio Tr. 118:8–18).

18

19       139.    Selvaggio did not tell Emmons that he had created the Flyer at Clay's

20   request. DiLorenzo Decl. Ex. D (Emmons Tr.) at 73:18–74:10; Emmons Decl. ¶ 8.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 129
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1  **Response:** Undisputed.

2

3   140.    Even if Emmons assumed that the project was for UFCW 555, Emmons

4  had never heard of Guenther, much less Clay's relationship with or opinion of her.

5  DiLorenzo Decl. Ex. D (Emmons Tr.) at 67:4–5; ECF No. 112 ¶ 9; *see also* Emmons

6  Decl. ¶ 8.

7  **Response:** Disputed in part.

8       It is undisputed that before Selvaggio spoke with Emmons in January 2022

9  regarding Operation Wagon Wheel, Emmons had not heard of Guenther or Clay's

10  relationship with her.

11       But it is disputed that Emmons did not know of Guenther before distributing

12  the flyer on January 8, 2022. In fact, upon reading the flyer, which he did before

13  distributing it on January 8, 2022, Emmons learned Guenther was the President of

14  UFCW Local 21, which was seeking to merge with another UFCW local union.

15  *Supra*, ¶ 78.

16

17   141.    On December 13, 2021, Selvaggio mailed 1,000 copies of the Flyer to

18  UFCW work sites across Washington. ECF No. 113-3 at 12-13, 15-18, 21-22

19  (Selvaggio Tr. 97:11–98:10, 101:4–102:12, 104:17–105:3, 113:22–114:1).

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 130
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400   **BARNARD**

SEATTLE, WASHINGTON 98119   **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132   **LAVITT LLP**

1    **Response:** Undisputed. It is also undisputed that the mailings were addressed to

2    shop stewards and store managers. ECF No. 107, ¶ 117.

3

4    142.    Guenther first learned of the Flyer on December 15 or 16, 2021. ECF

5    No. 113-1 at 40 (Guenther I Tr. 97:8–16). Around the same time, a grocery store meat

6    manager sent an image of the Flyer to Adam Jackson, and Jackson shared it with

7    Laurel Fish. ECF No. 113-6 at 6 (Jackson Tr. 122:6–18); ECF No. 113-5 at 6 (Fish

8    Tr. 112:14–25). Other UFCW members Jackson spoke with had received the Flyer

9    too. ECF No. 113-6 at 6 (Jackson Tr. 122:16–18).

10   **Response:** Undisputed and clarified. *See also* ECF No. 107, ¶ 128; and Ex. 22.

11   It is also undisputed that the members with whom Jackson discussed the flyer

12   were "confused more than anything" by it. ECF No. 117, Ex. 36 (Jackson Tr. 123:2–

13   4). The members were already aware "there was a vote coming up" because the

14   union had "already announced the merger was coming." ECF No. 117, Ex. 36

15   (Jackson Tr. 123:6–8). Jackson told the members, "It's nothing, you know, we did

16   or our Local put out and so I just reported it to Scott." ECF No. 117, Ex. 36 (Jackson

17   Tr. 123:11–12). At no point before the membership meetings at which the merger

18   votes occurred, however, did Jackson report hearing Local 1439 members debate the

19   merits of the merger publicly, including following the December 2021 mailing. *Id.*

20

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

143.    Also in mid-December 2021, a UFCW 367 member posted the Flyer in a UFCW member Facebook forum, and other members commented on it. ECF No. 1-2 ¶ 3.12; ECF No. 113-20 at 2; ECF No. 113-1 at 41-43 (Guenther I Tr. 99:15–101:22).

**Response:** Undisputed and clarified. It is undisputed that the Facebook group in which the member posted the flyer was closed to members of Local 367, and that the post garnered merely 26 comments and 17 reactions. ECF No. 118, ¶¶ 18–19; ECF No. 106, Ex. 11 (RFP Resp. No. 2 – 002099); Ex. 4 (Guenther Tr. 99:22–100:18). Because each Facebook user can make only one reaction to a post, whereas the same user can post multiple comments responding to a post, the 26 comments could be from the 17 people who posted reactions. ECF No. 118, ¶¶ 18–20; ECF No. 106, Ex. 11 (RFP Resp. No. 2 – 002099).

144.    Emmons and his company, Osprey Field Services LLC ("Osprey"), provide community outreach services, which has included distributing clients' informational materials for various campaigns. ECF No. 112 ¶¶ 1–2; ECF No. 113-4 at 3-4 (Emmons Tr. 50:20–51:20).

**Response:** Undisputed.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 132
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

145.    In January 2022, Selvaggio called Emmons and said Ridgelark wanted to hire Emmons's company, Osprey, to distribute copies of the Flyer to grocery stores in Spokane. ECF No. 113-3 at 5 (Selvaggio Tr. 73:14–17); ECF No. 113-4 at 5-7, 9 (Emmons Tr. 67:13–68:25, 73:8–12, 84:12–13); ECF No. 112 ¶¶ 4, 7, 10.

**Response:** Undisputed and clarified.

The call occurred on or around January 5, 2022. ECF No. 106, Ex. 7 (Selvaggio Tr. 108:18–110:4).

146.    Emmons and Osprey had been hired by Selvaggio and Ridgelark to assist with numerous community outreach projects before. ECF No. 112 ¶ 5.

**Response:** Undisputed.

147.    Emmons first worked with Selvaggio at an organization called Direct Action Partners, where Selvaggio was President and Emmons was a Project Manager, before the organization dissolved. *Id*.

**Response:** Undisputed.

148.    Since working together at Direct Action Partners, Selvaggio, through Ridgelark, has hired Emmons, through Osprey, for numerous other community outreach projects over the years. *Id*.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 133
Case No. 2:22-cv-00272-TOR

1    **Response:** Undisputed.

2

3        149.    Emmons has known Selvaggio for nearly a decade. *Id.*

4    **Response:** Undisputed.

5

6        150.    In Emmons's experience working for Selvaggio, Emmons has observed

7    Selvaggio to be honest and trustworthy. ECF No. 113-4 at 11 (Emmons Tr. 109:1–

8    10); ECF No. 112 ¶ 6.

9    **Response:** Disputed in part. It is undisputed that Emmons testified as much. The

10   cited deposition testimony includes Emmons's testimony that Selvaggio has "never

11   led [Emmons] astray." ECF No. 113-4 (Emmons Tr. 109:6–8). The pendency of this

12   litigation speaks for itself on that question.

13

14       151.    Specifically, in Emmons's experience, Selvaggio is selective in the

15   organizations and people he chooses to work for, only works for those with high

16   integrity, and does not take on initiatives without first confirming that the position or

17   message he is communicating is a credible one. ECF No. 112 ¶ 6.

18   **Response:** Disputed.

19       The facts of this case—with which Emmons has experience—show that

20   Selvaggio does not work only for people with high integrity and he does take on

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 134
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

1  initiatives without confirming the position or message he is communicating is

2  credible. Rather, the record facts show Selvaggio took on Operation Wagon Wheel

3  in reliance on the representations of Clay and Alday, who told him that they relied

4  on an investigation by the UFCW International Union—an assertion Selvaggio did

5  nothing to verify. ECF No. 106, Ex. 7 (Selvaggio. Tr. 111:23–112:19). In fact, the

6  International repeatedly deemed the flyers' accusations to be false. ECF No. 106,

7  Ex. 14 (UFCW-EMMONS_000029 –32), Ex. 15 (UFCW-EMMONS_000936), Ex.

8  16 (UFCW-EMMONS_000937).

9        In addition, neither Selvaggio nor Emmons did anything to confirm whether

10  Guenther paid off Local 367 President Angel Gonzalez or whether Guenther was

11  involved in any way in the allegations of sexual harassment against Gonzalez or

12  against Eric Renner. ECF No. 106, Ex. 7 (Selvaggio Tr. 111:14–112:19); Ex. 13

13  (Emmons Tr. 71:20–25, 78:2–7, 78:22–79:8, 80:3–12). They did not discuss

14  Guenther at all—let alone confirm the facts of the accusations against her—when

15  discussing this position. ECF No. 106, Ex. 13 (Emmons Tr. 64:21–65:15).

16        It is also disputed that Clay—the president of UFCW Local 555, which

17  contracts Selvaggio through his company, Ridgelark Strategies—is a person of high

18  integrity. For example, when asked by International Union investigators about his

19  involvement in the flyer at issue in this case, he knowingly lied about it—denying

20  any involvement. ECF No. 106, Ex. 15.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 135
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    BARNARD
SEATTLE, WASHINGTON 98119    IGLITZIN &
TEL 800.238.4231 | FAX 206.378.4132    LAVITT LLP

1    It is also disputed that Emmons's experience provides him with the basis for

2    drawing any conclusions about Selvaggio's selectiveness concerning his clients, the

3    character or integrity of Selvaggio's clients, or the process that Selvaggio uses–or

4    doesn't use—to confirm the message he communicates to any audience on behalf of

5    his clients. To the contrary, it is undisputed that Emmons has not known the identity

6    of all Selvaggio's clients, and therefore cannot know whether they have high

7    integrity or how Selvaggio screens them. Dalmat 3rd Decl., Ex. 39, Emmons Tr.

8    39:20–23 (Emmons admitted he could not be sure of all of Selvaggio's clients at

9    Direct Action Partners); Tr. 43:2–6 (Emmons admitted he did not know the identities

10   of the clients who retained Selvaggio on a variety of projects); Tr. 45:12–20

11   (Emmons admitted he did not know if Selvaggio was providing services to other

12   clients between 2018-2020, and admitting he didn't know who Selvaggio's clients

13   were); Tr. 92:23–93:5 (Emmons admitted he does not know who all of Selvaggio's

14   clients are, or whether he even works for other labor organizations).

15

16   152.    Emmons agreed to take on the project of distributing copies of the Flyer

17   in Spokane. ECF No. 112 ¶ 7.

18   **Response:** Undisputed. *See also* ECF No. 105, ¶¶ 70–84 (citing record).

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 136
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400

SEATTLE, WASHINGTON 98119

TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**

**IGLITZIN &**

**LAVITT LLP**

153.    Selvaggio emailed Emmons the Flyer on January 5, 2022. ECF No. 112 ¶ 8.

**Response:** Undisputed.

154.    Selvaggio provided Emmons with a list of grocery stores where Selvaggio wanted Emmons to distribute the Flyer. *Id*.

**Response:** Undisputed.

155.    Emmons does not personally know the individuals named in the Flyer. ECF No. 112 ¶ 9. Selvaggio did not tell Emmons whom the project was for or that Dan Clay was involved. Emmons Decl. ¶ 8.

**Response:** Undisputed.

156.    Emmons had no personal knowledge as to the truth of the statements in the Flyer. ECF No. 112 ¶ 9; ECF No. 113-4 at 10-11 (Emmons Tr. 108:23–109:10); ECF No. 113-3 at 19 (Selvaggio Tr. 110:18–23).

**Response:** It is undisputed that Emmons had no actual knowledge of the truth of the statements in the flyer he published. Nor could he have, as the flyers' statements are false. *See* ECF No. 105, ¶¶ 95–105 (citing record).

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 137
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

To the extent this Paragraph implies Emmons had no actual malice when publishing the flyer's accusations against Guenther, Guenther disputes that implication with the following circumstantial evidence. *See Duc Tan v. Le*, 177 Wn.2d 649, 669, 300 P.3d 356 (2013).

In fact, Emmons had personal hostility toward anyone accused of sexual harassment—which was a "personal issue" for him—such that, once Emmons heard the flyer involved sexual harassment that could affect "UFCW members" he "really didn't need to hear much more" to spread the accusations in the flyer, even though he immediately recognized that the accusations were incendiary. ECF No. 106, Ex. 13 (Emmons Tr. 69:7–10, 70:5–7, 70:11–16).

Emmons knew that Selvaggio, Clay, and Alday—Emmon's direct and indirect sources of information—were hostile to Guenther, as the express purpose of the flyering project, as Selvaggio conveyed it to him, was to oppose the merger that Guenther sought. ECF No. 106, Ex. 7 (Selvaggio Tr. 109:23–110:4, 117:8–23); Ex. 13 (Emmons Tr. 69:17–70:14).

Emmons did nothing to investigate the allegations against Guenther, let alone do so properly. ECF No. 106, Ex. 7 (Selvaggio Tr. 111:14–112:19); Ex. 13 (Emmons Tr. 64:21–65:15, 71:20–25, 73:8–23, 78:2–7, 78:22–79:8, 80:3–12). Emmons also did not inquire into any details of any investigations into Gonzalez or Renner. ECF No. 106, Ex. 13 (Emmons Tr. 78:25–79:15, 90:13–91:19).

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 138
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    And, finally, Emmons deliberately avoided the truth, not even inquiring into

2    the basis for the accusations against Guenther despite inquiring into the basis for the

3    accusations against the alleged harassers. ECF No. 106, Ex. 7 (Selvaggio Tr.

4    111:14–112:19); Ex. 13 (Emmons Tr. 64:21–65:15, 71:20–25, 73:8–23, 78:2–7,

5    78:22–79:8, 80:3–12).

6

7    157.    Emmons asked Selvaggio whether the Flyer's statements were

8    accurate. ECF No. 112 ¶ 9; ECF No. 113-3 at 19-20 (Selvaggio Tr. 110:18–111:2).

9    **Response:** Disputed.

10    During their initial conversation on the matter, Emmons asked Selvaggio

11    "about the credibility of the accusations and involvement of individuals in the

12    Spokane region." ECF No. 106, Ex. 13 (Emmons Tr. 70:20–21). They did not

13    discuss the allegations against Guenther or Renner. ECF No. 106, Ex. 13 (Emmons

14    Tr. 71:20–25).

15    Emmons had a second conversation about the matter shortly thereafter.

16    During that conversation, Emmons and Selvaggio discussed the statement "The in-

17    union 'Sexual Harassment Club' is at it again" and specifically discussed sexual

18    harassment allegations and related investigations, without discussing any details of

19    those investigations. ECF No. 106, Ex. 13 (Emmons Tr. 78:2–21).

20

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    As to the statement "First Faye Guenther (President of Local 21) helped

2 former 367 President Angel Gonzalez cover up his harassment charges and paid him

3 off in exchange for installing her puppet, Mike Hines," Selvaggio said nothing other

4 than the generality that there had been investigations. ECF No. 106, Ex. 13 (Emmons

5 Tr. 78:25–79:10). Specifically, Selvaggio did not say anything to explain why the

6 flyer alleged Guenther paid Angel Gonzalez off. ECF No. 106, Ex. 13 (Emmons Tr.

7 79:11–15). *Accord* ECF No. 106, Ex. 7 (Selvaggio Tr. 111:17–22) (Selvaggio did

8 not tell Emmons "that Ms. Guenther was the target of the investigation"). In fact,

9 Selvaggio and Emmons did not discuss Guenther at all. ECF No. 106, Ex. 13

10 (Emmons Tr. 64:21–65:15).

11    As to the statement "Now she's helping Eric Renner (the Local 1439

12 President) hide from sexual harassment charges and land a cushy new gig with Local

13 21 through a forced merger," Selvaggio said nothing to Emmons about that portion

14 of the flyer or any remaining portion of the flyer. ECF No. 106, Ex. 13 (Emmons Tr.

15 79:16–80:16).

16

17    158.    Selvaggio confirmed to Emmons that the Flyer's statements were

18 credible and stated that there had been investigations. ECF No. 112 ¶ 9; ECF No.

19 113-4 at 8, 10-11 (Emmons Tr. 78:11–21, 108:23–109:10); ECF No. 113-3 at 19-20

20 (Selvaggio Tr. 110:18–111:9).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 140
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

**Response:** Disputed in part.

It is undisputed that Emmons and Selvaggio discussed the statement "The in-union 'Sexual Harassment Club' is at it again" and specifically discussed sexual harassment allegations and related investigations, without discussing any details of those investigations. ECF No. 106, Ex. 13 (Emmons Tr. 78:2–21).

As to the statement "First Faye Guenther (President of Local 21) helped former 367 President Angel Gonzalez cover up his harassment charges and paid him off in exchange for installing her puppet, Mike Hines," Selvaggio said nothing other than the generality that there had been investigations. ECF No. 106, Ex. 13 (Emmons Tr. 78:25–79:10). Specifically, Selvaggio did not say anything to explain why the flyer alleged Guenther paid Angel Gonzalez off. ECF No. 106, Ex. 13 (Emmons Tr. 79:11–15). *Accord* ECF No. 106, Ex. 7 (Selvaggio Tr. 111:17–22) (Selvaggio did not tell Emmons "that Ms. Guenther was the target of the investigation"). In fact, Selvaggio and Emmons did not discuss Guenther at all. ECF No. 106, Ex. 13 (Emmons Tr. 64:21–65:15).

As to the statement "Now she's helping Eric Renner (the Local 1439 President) hide from sexual harassment charges and land a cushy new gig with Local 21 through a forced merger," Selvaggio said nothing to Emmons about that portion of the flyer or any remaining portion of the flyer. ECF No. 106, Ex. 13 (Emmons Tr. 79:16–80:16).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 141
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1      159.    On January 8, 2022, Emmons placed copies of the Flyer at five to seven

2   grocery stores in Spokane, leaving six to eight copies at each store. ECF No. 112 ¶

3   10; ECF No. 113-4 at 9 (Emmons Tr. 84:12–13).

4   **Response:** Undisputed.

5

6      160.    After speaking with Selvaggio and at the time Emmons distributed the

7   Flyer, Emmons believed that the Flyer's statements were true. His belief was based

8   on his experience with Selvaggio and Selvaggio's representations concerning the

9   Flyer. ECF No. 112 ¶ 9; ECF No. 113-4 at 10-11 (Emmons Tr. 108:23–109:10);

10   Emmons Decl. ¶ 7.

11   **Response:** Disputed in part.

12      The claim is overbroad. As indicated in response to paragraph 84, it is

13   undisputed that Emmons believed some former UFCW leaders faced sexual

14   harassment accusations.

15      But, as further indicated in response to paragraph 158, Selvaggio and Emmons

16   did not discuss the accusations directed against Guenther, and Emmons knew no

17   facts that could reasonably support a belief that the Guenther-directed accusations

18   were true. The record evidence cited in response to paragraph 158 instead shows that

19   Emmons had not formulated a specific belief as to whether the accusations directed

20   against Guenther were true. And the record evidence cited in response to paragraph

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

157 further shows that Emmons did not care—or exercise the care—to learn the truth of the accusation directed against Guenther; as soon as he heard there were allegations contending former leaders of UFCW may be facing sexual harassment claims, Emmons was prepared to spread those accusations to UFCW members without investigating their truth and, in fact, deliberately avoiding the truth of the accusations against Guenther.

161.    Between January 6 and 20, 2022, during the time Emmons distributed the Flyer, UFCW 1439 members voted on the proposed merger. ECF No. 113-24 at 2; ECF No. 113-1 at 40 (Guenther I Tr. 97:19–25).

**Response:** Undisputed.

162.    While UFCW 21 President, Guenther regularly spoke at press conferences, gave interviews, and appeared in the media. ECF No. 113-10 at 6–7; ECF No. 113-1 at 13-16 (Guenther I Tr. 41:18–42:16, 45:7–46:1).

**Response:** It is undisputed that, from March 2020 through May 10, 2023, Guenther spoke at four press conferences about COVID, two about crime in the retail sector (which affects members' employment), two about the proposed corporate merger between Kroger and Albertsons (a pair of grocery store companies), one about legislation to address a health care staffing crisis, and one about workforce

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 143
Case No. 2:22-cv-00272-TOR

development—a total of ten press conferences. ECF No. 113-10, pp. 167–68. It is also undisputed that a podcast quoted Guenther regarding Local 21's pension plan, KUOW interviewed her regarding Seattle fish mongers and again about grocery workers facing economic uncertainty, and King 5 quoted her regarding the proposed Kroger/Albertson merger. *Id.* To the extent that these fourteen events qualify as "numerous," Guenther does not dispute the characterization. To the extent Emmons asserts more than fourteen press appearances or media quotations, Guenther disputes the assertion as unsupported by the record evidence.

It is equally undisputed that Guenther gave no press conferences about the potential union merger between Local 21 and 1439 and that no press—not a single news outlet, podcast, or other broadcast media source—reported on that merger before it became effective in March 2022. ECF No. 117, ¶¶ 2–6 and Exs. 29–31 thereto; ECF No. 113-1 (Guenther Tr. I 41:18–42:16, 45:7–46:1). It is also undisputed that Guenther and Local 21 did not seek press coverage of internal union affairs and there is no evidence they could have garnered such coverage if they had sought it. ECF No. 118, ¶ 21.

To the extent Emmons asserts otherwise, the cited record evidence does not support the assertion.

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 144
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

163.    The topics Guenther spoke about at these press conferences and in the media included Covid masking and vaccines, Black Lives Matter, and workforce development, among others. ECF No. 113-10 at 5–7 (Resp. to Interrog. 6); ECF No. 113-1 at 13-16 (Guenther I Tr. 41:18–42:16, 45:7–46:1).

**Response:** Undisputed. It is further undisputed that the topics at these press conferences and in the media did not include the potential merger between Local 21 and Local 1439. ECF No. 113-10, pp. 167–68; ECF No. 113-1 (Guenther Tr. I 41:18–42:16, 45:7–46:1); ECF No. 117, ¶¶ 2–6 and Exs. 29–31 thereto. It is also undisputed that Guenther and Local 21 did not seek press coverage of internal union affairs and there is no evidence they could have garnered such coverage if they had sought it. ECF No. 118, ¶ 21.

164.    One of the UFCW 21 staff members Guenther supervised was responsible for UFCW 21's communications, and that person's duty was in part "to invite as many press people as they could" to UFCW 21 press conferences at which Guenther spoke. ECF No. 113-1 at 9, 12-14 (Guenther I Tr. 37:12–21, 40:11–42:13).

**Response:** Undisputed. It is equally undisputed that none of those invitations involved press conferences addressing the potential merger between Local 21 and Local 1439. ECF No. 113-10, pp. 167–68; ECF No. 113-1 (Guenther Tr. I 41:18–42:16, 45:7–46:1).

PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE – Page 145
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD**
**IGLITZIN &**
**LAVITT LLP**

1      It is also undisputed that in 2021 through June 2022, Local 21/3000 did not

2   attempt to garner press coverage on issues beyond COVID, Black Lives Matter, or

3   specific bargaining situations. ECF No. 118, ¶ 21. In particular, Local 21 and

4   Guenther did not attempt to garner press coverage of matters of internal affairs and

5   no evidence suggests they could have achieved such coverage had they sought it.

6   ECF No. 118, ¶ 21.

7

8      165.   Guenther has spoken at press conferences, given interviews, and

9   appeared in the media at least seventeen times since January 1, 2019. ECF No. 113-

10  10 at 5–7 (Resp. to Interrog. 6).

11  **Response:** Disputed.

12     The cited interrogatory asks for all speaking engagements and the answer

13  included telephone calls and a speech at a funeral. As a result, it is an overstatement

14  to say that Guenther spoke at press conferences, gave interviews, or appeared in the

15  media at least seventeen times since January 1, 2019.

16     As noted in response to Paragraph 162, Guenther attended ten press

17  conferences during that period and was quoted four times in the media, for a total of

18  fourteen appearances. In any event, none of the press conferences, press interviews,

19  or media appearances involved debate or discussion of the potential merger between

20  Local 21 and 1439. *See* response to Paragraph 87; ECF No. 113-10, pp. 167–68.

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 146
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

1    166.    As UFCW 21 President, Guenther communicated with members of

2    UFCW 21 "through Twitter, Instagram, e-mail, telephone, text message, podcast,

3    U.S. mail, Facebook, Facebook Messenger[,] and in-person." ECF No. 113-10 at 4

4    (Resp. to Interrog. 2); ECF No. 113-1 at 6-8 (Guenther I Tr. 26:21–28:1).

5    **Response:** Undisputed.

6        It is equally undisputed that Guenther did not, with one exception, use any of

7    these media to communicate with Local 21 members regarding the potential merger

8    of Local 21 and 1439 before the merger went into effect on March 1, 2022. ECF No.

9    107, ¶¶ 103, 107–13; and Ex. 18. The one exception is that, in her capacity as

10   President of Local 21, she directed the Local to send the January 6, 2022, formal

11   notice of the upcoming merger vote. ECF No. 107, ¶¶ 103, 107–13 and Ex. 18. That

12   notice did not mention or refer to Guenther and did not ask Local 21 members to

13   vote in favor of the merger. *Id.* (Although Emmons may contend that the December

14   17, 2021, post on Local 21's website is a second exception, that post does not

15   mention, let alone feature, Guenther. *Supra*, ¶ 61.)

16       It is also undisputed that any individual can communicate with other

17   individuals through Twitter, Instagram, email, telephone, text message, podcast,

18   U.S. mail, Facebook, Facebook Messenger, or in-person.

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 147
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

**BARNARD
IGLITZIN &
LAVITT LLP**

167.    Guenther could send emails to all UFCW 21 members and transmitted annual notices on her letterhead. ECF No. 113-1 at 6-8 (Guenther I Tr. 26:21–28:1).

**Response:** Undisputed that Guenther could send emails to Local 21 members who had provided their emails to Local 21 and that Local 21 transmitted annual notices on its letterhead, which identified Guenther as Local 21's President.

It is equally undisputed that, between September 30, 2021, and March 1, 2022, no such emails or annual notices discussed the potential merger of Local 21 and 1439, let alone advocated for it. ECF No. 107, ¶¶ 103–114. In fact, the only notice that Local 21 sent regarding the merger was the January 6, 2022, formal notice of the upcoming merger vote—a notice that was not part of Local 21's annual notice. ECF No. 107, ¶¶ 103–07.

168.    UFCW 21 sponsored vaccine clinics, and Guenther communicated about these clinics to her roughly 44,000 members. ECF No. 113-1 at 9-10 (Guenther I Tr. 37:22–38:9).

**Response:** Undisputed. It is equally undisputed that there is no evidence that any discussion of the potential merger between Local 21 and Local 1439, or any issue pertaining to internal union affairs, occurred at those vaccine clinics.

18 WEST MERCER ST., STE. 400
SEATTLE, WASHINGTON 98119
TEL 800.238.4231 | FAX 206.378.4132

BARNARD
IGLITZIN &
LAVITT LLP

1      169.   As UFCW 21 President, Guenther met with Governor Jay Inslee to

2  discuss Covid mask policies to keep the "lines of communications open." ECF No.

3  113-1 at 11, 17-18 (Guenther I Tr. 39:3–18, 47:24–48:12).

4  **Response:** Undisputed. It is equally undisputed that there is no evidence Guenther

5  discussed the potential merger between Local 21 and Local 1439 at any meeting with

6  Governor Inslee about COVID mask policies. *Cf.*, ECF No. 107, ¶¶ 85–116.

7

8      170.   As UFCW 21 President, Guenther communicated with other union

9  leaders, including negotiating a memorandum of understanding regarding "sick leave

10  protections" and getting other union chapters to sign on. ECF No. 113-1 at 16-17

11  (Guenther I Tr. 46:20–47:23).

12  **Response:** Undisputed. It is equally undisputed that the memorandum of

13  understanding referred to in this Paragraph had nothing to do with the potential

14  merger of Local 21 and Local 1439. Instead, it had addressed agreements between

15  UFCW local unions and Kroger and Albertsons. ECF No. 113-1 (Guenther Tr. I

16  47:8–15).

17

18      171.   Guenther "intentionally did not engage in public discussion of the flyer

19  mailed on December 13" because she "felt that engaging in the substance" would

20  "only fan its false flames." ECF No. 107 ¶ 129.

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1    **Response:** Undisputed.

2

3        172.    Guenther was re-elected as UFCW 3000 President in 2023. ECF No.

4    113-1 at 8 (Guenther I Tr. 28:2–8).

5    **Response:** Undisputed.

6

7        173.    Guenther ran for a position at UFCW International in 2023. ECF No.

8    113-1 at 19-21 (Guenther I Tr. 49:25–50:20, 52:17–21).

9    **Response:** Disputed in part. The cited testimony (along with additional deposition

10   testimony) explains that Guenther was seeking to run for a position with the UFCW

11   International and had submitted her name for consideration by sending an email to

12   the current President of the International, Marc Perrone, but was not permitted to run

13   because others at the International declined to nominate her or the slate she was

14   running with. *See* ECF No. 117, Ex. 32 (Guenther Tr. I 49:25–54:18).

15

16       174.    Guenther had strained relationship with Perrone, Meckler, and Clay and

17   accused other local presidents of being affiliated with the mob. DiLorenzo Decl. Ex.

18   B (Guenther II Tr.) at 13:3–10, 19:20–18, 78:7–8, 80:15–23, 85:14–20; *Id*. Ex. A

19   (Guenther I Tr.) at 233:4–6, 237:4–20; ECF No. 113-2 at 7 (Guenther II Tr. 36:20–

20   25).

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 150
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1  **Response:** Disputed in part.

2  It is undisputed that Clay's assassination of Guenther's reputation through his

3  smear campaign, which came to fruition through Emmons's negligence and actual

4  malice, strained Guenther's prior friendship with him. *Supra*, ¶¶ 19–94. It is also

5  undisputed that Meckler's collaboration with Clay on these and other efforts

6  challenging Guenther's leadership have strained their relationship. *Id.* Guenther's

7  relationship with Perrone is more complicated; they have had challenges but have

8  also worked well together and Perrone has supported Guenther when he believes the

9  facts support her position, as he did in respect to Emmons's defamatory flyer. ECF

10  No. 107, ¶¶ 157–61, 163–64 & Ex. 35.

11

12  175.    Guenther continues to make media appearances. ECF No. 113-1 at 47-

13  48 (Guenther I Tr. 126:18–127:1).

14  **Response:** Undisputed. It is equally undisputed that none of her media appearances

15  before or after May 10, 2023, discussed the merger or the questions at issue in this

16  lawsuit. *See* ECF No. 117, Ex. 32 (Guenther Tr. I 126:18–128:3).

17

18  176.    On July 29, 2023, Guenther stated in an email to UFCW International

19  President Marc Perrone:

20

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1

2

> You urged caution in proceeding down the litigation path. I heard you, and possibly to my detriment, have declined to broaden the scope of litigation to include Local 555, Dan Clay, Michael Selvaggio ....

3

4

ECF No. 113-22 at 5–6; ECF No. 113-2 at 13-15 (Guenther II Tr. at 88:20–89:8, 89:24–90:14).

5

**Response:** Undisputed.

6

7

8

9

10

    177.    Guenther testified that she also did not sue Dan Clay and UFCW 555 because "the [UFCW] constitution requires that you have to go through an internal process when .... there's conflict that's member to member before litigation" and "I didn't have enough." ECF No. 113-1 at 57 (Guenther I Tr. 204:12–20).

11

12

13

14

**Response:** Undisputed but clarified that the discussion focuses on what Guenther knew as of April 23, 2022—at a time when Clay was still denying his involvement in the flyers. *See* ECF No. 117, Ex. 32 (Guenther Tr. I 164:4–13, 203:4–10, 204:1–17); Ex. 33.

15

16

    RESPECTFULLY SUBMITTED this 15th day of November, 2024.

17

18

19

20

    *s/Darin M. Dalmat*

Dmitri Iglitzin, WSBA No. 17673
Darin M. Dalmat, WSBA No. 51384
Gabe Frumkin, WSBA No. 56984
**BARNARD IGLITZIN & LAVITT LLP**
18 W Mercer St, Suite 400
Seattle, WA 98119
(206) 257-6003

18 WEST MERCER ST., STE. 400    **BARNARD**
SEATTLE, WASHINGTON 98119    **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1

iglitzin@workerlaw.com
dalmat@workerlaw.com

2

frumkin@workerlaw.com

3

Aaron Streepy, WSBA 38149

4

Jim McGuinness, WSBA 23494
Streepy Lemonidis Consulting & Law
Group, PLLC

5

2800 First Avenue, Suite 211
Seattle, WA 98121

6

Telephone: (253) 528-0278
Fax: (253) 528-0276

7

aaron@slglc.com
jim@mcguinnessstreepy.com

8

9

*Attorneys for Plaintiff Faye Guenther*

10

11

12

13

14

15

16

17

18

19

20

PLAINTIFF'S STATEMENT OF MATERIAL
FACTS NOT IN DISPUTE – Page 153
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**

1

## DECLARATION OF SERVICE

2

I hereby certify that on the date noted below, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system, which will send

4

notification of such filing to those attorneys of record registered on the CM/ECF

5

system.

6

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| Ambika Kumar<br>Sara A. Fairchild<br>Davis Wright Tremaine LLP<br>920 Fifth Ave., Ste. 3300<br>Seattle, WA 98104<br>ambikakumar@dwt.com<br>sarafairchild@dwt.com | ☐  Hand Delivery<br>☐  Certified Mail<br>☐  Facsimile<br>☐  E-mail<br>☐  U.S. Mail<br>☒  E-Service |
| John A. DiLorenzo<br>Davis Wright Tremaine LLP<br>560 SW 10th Ave., Ste. 700<br>Portland, OR 97205<br>johndilorenzo@dwt.com | ☐  Hand Delivery<br>☐  Certified Mail<br>☐  Facsimile<br>☐  E-mail<br>☐  U.S. Mail<br>☒  E-Service |

7

8

9

10

11

12

13

14

DATED this 15th day of November, 2024 at Seattle, Washington.

15

16

By: _____

17

Esmeralda Valenzuela, Paralegal

18

19

20

DECLARATION OF SERVICE
Case No. 2:22-cv-00272-TOR

18 WEST MERCER ST., STE. 400    **BARNARD**

SEATTLE, WASHINGTON 98119    **IGLITZIN &**

TEL 800.238.4231 | FAX 206.378.4132    **LAVITT LLP**