Ambika Kumar, WSBA #38237
Sara A. Fairchild, WSBA #54419
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

John A. DiLorenzo (*pro hac vice*)
Davis Wright Tremaine LLP
560 SW 10th Ave, Suite 700
Portland, OR 97205
Telephone: (503) 241-2300
Fax: (503) 778-5299

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
### AT SPOKANE

FAYE IRENE GUENTHER,
an individual,

                Plaintiffs,

    v.

JOSEPH H. EMMONS, individually,
AND OSPREY FIELD CONSULTING
LLC, a limited liability company,

                Defendants.

No. 2:22-cv-00272-TOR

**DEFENDANTS' REPLY STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**December 5, 2024**
**With Oral Argument: 9:00 a.m.**

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR4888-5530-8532v.4 0119896-000001

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Pursuant to Local Civil Rule 56(c)(1)(C), Defendants submit this Reply Statement of Material Facts Not in Dispute.  This Reply Statement incorporates Defendants' Statement of Material Facts Not in Dispute (ECF No. 111) and Plaintiff's Statement of Disputed Material Facts (ECF No. 116), and adds Defendants' reply to any paragraphs where Plaintiff has claimed facts are disputed or added new facts.

## I.     The Parties

### A.     Plaintiff Faye Guenther

**1.**     Guenther is the President of United Food and Commercial Workers ("UFCW") Local 3000. Guenther I Tr. 28:4–8, 76:21–24; ECF No. 1-2 ¶ 1.2.

**Response:** Undisputed.

**2.**     UFCW 3000 was formed through the merger of two UFCW locals, UFCW 21 and UFCW 1439. DiLorenzo Decl. Ex. I at 0000158.

**Response:** Undisputed.

**3.**     Prior to the merger, Guenther was President of UFCW 21. Guenther I Tr. 20:6–21:8.

**Response:** Undisputed.

**4.**     Guenther began working for UFCW 21 in 2008 and became President of UFCW 21 in May 2019. Guenther I Tr. 17:9–11, 20:6–8.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    **Response**: Disputed in part. Guenther first started working for UFCW Local

2    21 in 1999 and returned to Local 21 in 2008 after graduating law school. ECF No.

3    107, ¶¶ 10, 14.

4    **Defendants' Reply:** Defendants do not dispute the additional facts Guenther

5    asserts in this paragraph.

6

7    **5.**    As UFCW 21 President, Guenther supervised approximately 112

8    UFCW 21 staff members. Guenther I Tr. 37:12–21.

9    **Response:** Undisputed.

10

11    **B.**    **Defendants Joseph Emmons and Osprey Field Services LLC**

12    **6.**    Emmons and his company, Osprey Field Services LLC ("Osprey"),[1]

13    provide community outreach services, which has included distributing clients'

14    informational materials for various campaigns. Declaration of Joseph H. Emmons in

15    Support of Defendants' Motion for Summary Judgment ("Emmons Decl.") ¶¶ 1– 2;

16    Emmons Tr. 50:20–51:20.

17    **Response:** Undisputed.

18

19    **7.**    The subject matter of the materials Osprey has been hired to distribute

20    have included, for example, ballot initiatives, public concerns, and recall elections.

21    Emmons Decl. ¶ 2; Emmons Tr. 50:20–51:20.

22

23    _____

[1] The Complaint incorrectly names "Osprey Field Consulting LLC."

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

**Response:** Undisputed.

3    **8.**    Osprey's clients provide all written material Osprey distributes, and

4    Osprey does not create the written materials it distributes or participate in developing

5    the content of those materials. Emmons Decl. ¶ 3; Emmons Tr. 50:20–51:20.

6    **Response:** Disputed in part.

7    Between January 5 and 8, 2022, Emmons printed the flyers at issue in this

8    case at a FedEx store. ECF No. 106, Ex. 13 (Emmons Tr. 74:18–76:2). In that sense,

9    Emmons—which this Statement uses to refer collectively to Joseph Emmons and his

10   company, Osprey Field Services LLC—literally created the flyers he distributed at

11   grocery stores in Spokane, Washington.

12   It is undisputed that Emmons did not draft the content of the challenged flyers.

13   It is equally undisputed that Emmons knew the content of the flyers before

14   publishing them at Spokane stores, through a January 5, 2021, conversation he had

15   with Michael Selvaggio (Local 555's contracted political director), a second

16   conversation Emmons had with Selvaggio sometime between January 5 and 8, and

17   because Emmons himself reviewed the flyer he received by email from Selvaggio

18   before printing and circulating it. ECF No. 105, ¶¶ 70, 72–73, 80, 82, 83, citing ECF

19   No. 106, Ex. 7 (Selvaggio Tr. 108:18–110:4, 109:23–110:4, 110:9–111:13, 117:8–

20   23, 139:9–140:1, 144:3–145:1); ECF No. 106, Ex. 13 (Emmons Tr. 69:7–14, 69:17–

21   70:14, 76:1–80:16, 78:25–79:15, 90:13–91:19); ECF No. 106, Ex. 17 (Selvaggio

22   Dep. Ex. 8); ECF No. 106, Ex. 18 (Selvaggio Dep. Ex. 6).

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

**Defendants' Reply:**  Guenther's response stretches the meaning of "create."

2  She does not dispute that the Flyer existed weeks before Selvaggio hired Emmons

3  to distribute it, and that Emmons merely "printed copies" of it.  ECF No. 106 at 100–

4  01 (Emmons Tr. 75:11–76:4).  As discussed in Defendants' Reply, the fact that

5  Emmons printed the copies of the Flyer he distributed has no legal significance.

6

With respect to the facts Guenther adds to this Paragraph, Emmons first

7  learned of the Flyer on or around January 5, 2022—not 2021.  *See* ECF No. 112

8  ¶¶ 7–8; ECF No. 122 ¶¶ 3–5.  The remaining facts Guenther adds to this Paragraph

9  are undisputed.

10

11  **II.    Complaint Letter Against Renner**

12

**9.**    On September 13, 2021, a letter of concern regarding the UFCW 1439

13  President, Eric Renner, was emailed to UFCW 1439 Executive Board Members and

14  UFCW International Leadership.  DiLorenzo Decl. ¶ 24 & Ex. W ("Complaint

15  Letter"); Jackson Tr. 25:13–26:8, 99:13–16.

16

**Response:** Undisputed.

17

It is also undisputed that Guenther had not seen the August 23, 2021, letter of

18  concern (which was forwarded on September 13, 2021, to the Local 1439 Executive

19  Board and UFCW International President) before the March 11, 2024, deposition of

20  Laurel Fish. Dalmat 2nd Decl. Ex. 32 (Guenther Tr. I 138:19–139:10). In fact, before

21  March or April 2022, all Guenther knew about the matter was that an internal conflict

22  within Local 1439 had been resolved to the satisfaction of the affected parties. She

23  did not know the substance of the dispute and had not seen the resulting settlement

1    agreements. Dalmat 2nd Decl. Ex. 32 (Guenther Tr I. 80:9–82:25, 93:18–94:8); Ex.

2    34 (Guenther Tr. II 28:8–30:1).

3         **Defendants' Reply:**  The purported facts Guenther adds to this Paragraph are

4    disputed.  Laurel Fish testified that Guenther likely had seen the Complaint Letter

5    before the merger given how broadly the letter was circulated and Guenther's role

6    as president-to-be of the merged union.  ECF No. 123-5 at 5–6 (Fish Tr. 90:18–

7    91:10).  Guenther also knew that the "internal conflict" at UFCW 1439 involved

8    Renner, and that as a result of that conflict, Renner was prohibited from "directly

9    supervis[ing] any employees."  ECF No. 113-1 at 38–39, 41, 55–56 (Guenther I Tr.

10   93:12–94:20, 99:5–14, 167:21–168:9); ECF No. 113 ¶ 14 & ECF No. 113-13 at 2;

11   ECF No. 113-2 at 11–12 (Guenther II Tr. 49:20–50:4).  On December 15 or 16,

12   2021, Guenther read the Flyer, which states Renner had faced "sexual harassment

13   charges."  *Infra* ¶ 63; ECF No. 113-1 at 40 (Guenther I Tr. 97:8–16); ECF No. 10-

14   1.  And Fish further testified that, in December or January, she directly told Guenther

15   about Renner's abusive conduct.  ECF No. 123-5 at 3–4, 6 (Fish Tr. 87:7–88:16,

16   91:5–17).

17         Defendants discussed the Complaint Letter in their February 6, 2024, motion

18   to compel production of documents and attached a copy in support.  ECF No. 35 at

19   3–4; ECF No. 36-1.  Defendants then covered the Complaint Letter at length in

20   Adam Jackson's deposition, which Guenther attended.  ECF No. 113-6 at 3-4

21   (Jackson Tr. 25:13–26:8); ECF No. 51-4 (Jackson Tr. 54:11–55:14) (discussing

22   letter).  Guenther's assertion that she did not see the Complaint Letter until Fish's

23   deposition, which was taken after Jackson's, is thus disputed.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    In any event, Guenther's added assertions are not material to Defendants'

2    summary judgment motion; even if they were true, Guenther still cannot prevail on

3    her claims against Emmons because she cannot show fault or damages.

4

5    **10.**    The five-page Complaint Letter raised concerns about what it described

6    as Renner's "abuse of power" and provided examples of such abuses, including

7    instances where the letter stated Renner "commented repeatedly about female staff

8    members and International Union officers 'big butts,'" "encouraged male employees

9    to imagine a specific female employee engaged in sex acts," "bragged ... about

10    having [sexual] relationships with members," asked a male employee whether he

11    had "hit that yet" in reference to a female employee, and used "homophobic

12    language" to "mock[] [an employee's] mannerisms." DiLorenzo Decl. ¶ 24 & Ex.

13    W at 008003–07; Jackson Tr. 25:13–26:8; Fish Tr. 24:4–22; *see also* ECF No. 51-4

14    at 54:11–55:14 (behavior described in complaint letter constituted "sexual

15    harassment").

16    **Response:** Disputed in part.

17    It is undisputed that the August 23, 2021, complaint letter (ECF No. 113-23)

18    raised those allegations.

19    As for whether the allegations themselves are true, Renner denies them and

20    explains why they are false or taken out of context. Declaration of Eric Renner, ¶¶

21    6– 11. *See also* Dalmat 2nd Decl. Ex. 35 (Streepy Tr. 34:18–35:19). For her part,

22    when Guenther first read the letter in March 2024, she did not know which

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

allegations in the complaint letter may have been true or untrue. Dalmat 2nd Decl. Ex. 32 (Guenther Tr. I 139:2–141:24).

**Defendants' Reply:**  The purported facts Guenther adds to this paragraph have no relevance to the merits of her claims because the Flyer stated Guenther was helping Renner hide from sexual harassment allegations, and Renner undisputedly faced sexual harassment allegations.

11.    The Complaint Letter was signed by seven individuals, who were then-current and former employees of UFCW 1439: Adam Jackson (Organizing Director), Laurel Fish (Organizer & Director of Strategic Campaigns), Katie Dugger (Membership Services/Organizer), Sandra Huggins (former Benefits Director), Leslie Cowin (former Membership Services/Administrative Assistant), Amy Poston (former Office Assistant/Administrative Assistant), and Austin DePaolo (former Organizer & Business Representative) (collectively "Complainants"). DiLorenzo Decl. ¶ 24 & Ex. W at 008007; Jackson Tr. 25:13–26:8.

**Response:** Undisputed.

12.    Between approximately September 22, 2021, and early October 2021, Plaintiff's counsel Aaron Streepy investigated the Complaint Letter's claims and drafted settlement agreements with nondisclosure provisions, which the Complainants, Renner, UFCW 1439, and others signed. *See* ECF No. 51-2 at 006047 (September 15, 2021, email from Streepy stating he "anticipate[d] beginning" meeting with Complainants the following Wednesday); ECF No. 51-3 at 006226

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

(October 4, 2021 email from Streepy with settlement agreements); ECF No. 51-1 ("NDAs").

**Response:** Disputed in part.

It is undisputed that between approximately September 22, 2021, and October 9, 2021, Aaron Streepy investigated the August 23, 2021, complaint letter's allegations and drafted settlement agreements with nondisclosure provisions, which the Complainants, Renner, UFCW 1439, and others signed.

It is disputed that Mr. Streepy did so in his capacity as Plaintiff's counsel. In fact, this litigation is the first and only matter in which Mr. Streepy has represented Guenther personally. Dalmat 2nd Decl. Ex. 35 (Streepy Tr. 13:4–10). Local 1439 retained Mr. Streepy in mid-September 2021 to investigate the allegations of the August 23, 2021, complaint letter. In his capacity as outside counsel to Local 1439, he investigated those allegations and, along with Local 1439's in-house counsel, negotiated a settlement agreement between the Complainants, Mr. Renner, and third parties. Dalmat 2nd Decl. Ex. 35 (Streepy Tr. 16:13–18:5, 18:24–19:3); ECF No. 57, ¶¶ 4–5. The settlement became final on October 9, 2021. ECF No. 57, ¶ 5. During that time, Mr. Streepy did not share information or any details with Guenther regarding the investigation, other than perhaps to inform her that he represented Local 1439 in the matter. ECF No. 57, ¶ 7.

**Defendants' Reply:**  The purported facts Guenther adds to this paragraph are not material to Defendants' summary judgment motion because, even if they are true, they do not relate to the statements in the Flyer.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**13.**    The NDAs include the following provisions: "Renner shall resign his position with UFCW 1439 effective April 1, 2022," and "Renner agrees not to run for UFCW 1439 office in the future." *See, e.g.*, ECF No. 51-1 at 006001.

**Response:** It is undisputed that the NDAs include the quoted terms.

It is also undisputed that Renner is no longer the President of Local 1439, does not hold any elected office with UFCW Local 3000 and has not done so at any time, and has not ever run for any elected office within UFCW Local 3000. Rather, the principal, elected officers of Local 3000 are its President Faye Guenther, its Secretary-Treasurer Joe Mizrahi, and its Recorder Maria Milliron. Renner is currently employed by Local 3000 in a non-elected, non-officer position as a contract bargainer. His current title is Director for Eastern Washington, Northern Idaho, and Northeastern Oregon. Dalmat 2nd Decl. Ex. 32 (Guenther Tr. I 85:17–87:17, 199:10–14, 200:13–23); Guenther 2nd Decl. ¶¶ 5–6. He has also held the title of Vice President but has never been a constitutional Vice President within the meaning of UFCW Local 3000's bylaws, in that he has never sat on Local 3000's Executive Board. Guenther 2nd Decl. Ex. 1. In short, Renner has never held a position at Local 3000 with responsibilities for governing that local union, as he had at Local 1439. He has also never supervised anyone at Local 3000. Guenther 2nd Decl. ¶¶ 5–6.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**III.    The Merger Between UFCW 21 and UFCW 1439**

**A.    Preliminary Discussions**

**14.**    On or around September 30, 2021, Renner asked Guenther to consider a merger between UFCW 21 and UFCW 1439. Guenther I Tr. 58:2–4, 59:19–25.

**Response:** Undisputed.

**15.**    Guenther responded that she was interested in a merger. Guenther I Tr. 59:19–60:4.

**Response:** Clarified. During the September 30, 2021, call, Guenther did not respond substantively to Renner's suggestion that Local 21 and Local 1439 merge. Rather, within a few weeks of his September 30, 2021, call, Guenther called Renner to let him know she was open to exploring a merger between Local 21 and Local 1439. ECF No. 107, ¶ 90. Subject to that understanding, the assertion is undisputed.

**Defendants' Reply:** The additional facts Guenther asserts in this paragraph are disputed to the extent Guenther is claiming she first expressed interest in "exploring a merger" "weeks" after the September 30, 2021, call. On September 30, 2021, Guenther and Renner were already exchanging text messages about arranging a meeting in Spokane. ECF No. 113-12 at 33–34. Guenther offered to "come over this weekend on Saturday fly home Sunday." *Id.* at 34.

**16.**    At the time, UFCW 1439 had approximately 7,800 members who were primarily located in Eastern Washington. Guenther I Tr. 55:6–8, 61:6–8.

**Response:** Undisputed.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**17.**    UFCW 21 had approximately 44,000 members who were primarily located across Washington. Guenther I Tr. 55:6–12; 61:6–10.

**Response:** Undisputed.

**18.**    Collectively UFCW 1439 and UFCW 21 represented workers in industries such as grocery, health care, packing and processing, and retail, among others. DiLorenzo Decl. Ex. K.

**Response:** Undisputed.

**19.**    Before engaging in formal merger discussions, Guenther and Renner needed permission from UFCW International to do so. Guenther I Tr. 62:22–63:3.

**Response:** Undisputed.

**20.**    In October 2021, Guenther and Renner communicated regularly, including by text message and by phone. DiLorenzo Decl. ¶ 13 & Ex. L at 30028–32; Guenther II Tr. 30:16–31:16, 34:18–38:24.

**Response:** Undisputed.

**21.**    On October 20, 2021, Renner sent Guenther a text message about reaching out to Kate Meckler. DiLorenzo Decl. ¶ 13 & Ex. L at 30030; Guenther II Tr. 30:16– 31:7, 36:3–11.

**Response:** Undisputed.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

**22.**    Kate Meckler was a UFCW regional director. Guenther I Tr. 124:23–

2   25, 158:13–14; Guenther II Tr. 36:3–11.

3       **Response:** Undisputed. *See also* ECF No. 105, ¶ 5.

4

5       **23.**    Meckler needed to "release" the merger request before UFCW

6   International would approve formal merger discussions, and Guenther was

7   concerned that Meckler would oppose the merger. Guenther I Tr. 161:24–162:9;

8   Guenther II Tr. 36:20–25.

9        **Response:** Undisputed and clarified.

10      Although the UFCW Constitution authorizes the International Executive

11  Committee to approve formal merger discussions, Regional Director Meckler is the

12  person who communicated that approval (or "released" it) to the local unions who

13  had requested it. ECF No. 107, ¶¶ 92, 94.

14      It is undisputed that, although International President Marc Perrone had

15  informally approved the merger discussion as early as November 2, 2021, Meckler

16  delayed communicating the International's formal approval until December 2021 to

17  avoid interfering with a union-election vote at a Fred Meyer store in Richland,

18  Washington, scheduled for late November 2021. ECF No. 107, ¶¶ 92, 97; ECF No.

19  113-1 (Guenther Tr. I 161:24–162:9).

20      It is undisputed that Guenther was concerned Meckler would oppose the

21  merger. ECF No. 113-2 (Guenther Tr. II 36:20–25). Meckler, after all, had

22  previously allied with Local 555 President Dan Clay (and others) against Guenther

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

on various matters. ECF No. 107, ¶¶ 20–22, 27, 30–31, 63–65, 71, 92; ECF No. 106, Ex. 2 (UFCW-EMMONS_000899–901).

**Defendants' Reply:** Defendants do not dispute the additional facts Guenther asserts in this paragraph.

24.    On October 20, 2021, Guenther responded to Renner, stating in part:

> I think we should meet with Aaron first and then maybe call her that day? That way we have all our best arguments written down and vetted [...]
>
> Kate may try to mess with things...hopefully not...so maybe we can ask Aaron to draft up top 10 reasons or something. And then specifically ask for her support.
>
> And we should have a letter ready to go asap after we talk with her to full exec committee.

DiLorenzo Decl. ¶ 13 & Ex. L at 30029–30; Guenther II Tr. 30:16–31:7, 36:3–25.

**Response:** Undisputed that the quotations set forth above are partial quotations of text messages Guenther sent Renner on October 20, 2021. The full quotations are set forth in the cited exhibit.

25.    On October 21, 2021, Plaintiff's counsel Jim McGuinness emailed Guenther an example of a letter seeking UFCW International's approval for formal merger discussions in another proposed merger. ECF No. 48-11 at 006016, 006015. McGuinness's cover email stated in part, "Obviously, we could beef it up for this situation with all the reasons a merger makes sense." *Id.* at 006016.

**Response:** Disputed in part.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 13

It is undisputed that Jim McGuinness emailed Guenther an example of a letter seeking UFCW International's approval for formal merger discussions in another proposed merger.

It is disputed that Mr. McGuinness did so in his capacity as Guenther's lawyer. In fact, Mr. McGuinness represented Local 21, not Guenther personally. Dalmat 2nd Decl. Ex. 32 (Guenther Tr. I 154:21–155:24).

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

26.    Also on October 21, 2021, Guenther emailed Renner an example "Union Merger Agreement" that McGuinness had provided to her. ECF No. 48-12 at 006014, 006011–13.

**Response:** Undisputed.

27.    On October 27, 2021, Guenther, Renner, Streepy, and Joe Mizrahi (UFCW 21's Secretary-Treasurer) met and drafted a letter to UFCW International requesting permission to engage in formal merger discussions, which Guenther and Renner signed. Guenther I Tr. 60:11–20, 65:6–67:13, 157:19–158:1; DiLorenzo Decl. ¶ 15 & Ex. N.

**Response:** Undisputed.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    **28.**    Guenther then hand delivered the letter to Kate Meckler, who reports

2    to UFCW International President Marc Perrone. Guenther I Tr. 157:19–159:4;

3    DiLorenzo Decl. ¶ 15 & Ex. N.

4        **Response:** Undisputed.

5

6    **29.**    On October 30, 2021, Guenther texted Renner, "I have meeting set with

7    Perrone," and Renner responded: "Great news, work your magic!" DiLorenzo Decl.

8    ¶ 13 & Ex. L at 030029, 030028; Guenther II Tr. 30:16–31:7.

9        **Response:** Undisputed.

10

11    **30.**    On November 2, 2021, Guenther met in person with UFCW

12    International's president, Marc Perrone, at a meeting arranged by Guenther.

13    DiLorenzo Decl. Ex. O; Guenther I Tr. 67:20–25.

14        **Response:** Undisputed.

15

16    **31.**    At the November 2, 2021 meeting, Guenther sought Perrone's support

17    for the merger. Guenther I Tr. 62:22–63:3, 67:14–25, 159:5–13.

18        **Response:** Undisputed.

19        It is also undisputed that, at the November 2, 2021, meeting, Perrone

20    informally verbally pledged his support for the merger. ECF No. 107, ¶ 94; Dalmat

21    Decl. Ex. 32 (Guenther Tr. I 68:1–9).

22        **Defendants' Reply:**  Defendants do not dispute the additional facts Guenther

23    asserts in this paragraph.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**32.**    Guenther also asked Shaun Barclay, UFCW 21's former regional director, to speak with Perrone about the benefits of the merger. Guenther I Tr. 163:3–24.

**Response:** Disputed in part. Shaun Barclay is a former regional director of UFCW Region 7, of which Local 21 was a part. *See* ECF No. 105, ¶ 5 (citing record). The remainder of this Paragraph is undisputed.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

**B.    Formal Merger Discussions & Executive Board Approval**

**33.**    On December 2, 2021, UFCW International gave its approval for UFCW 21 and UFCW 1439 to engage in formal merger discussions. Guenther I Tr. 161:20– 162:22; DiLorenzo Decl. ¶ 7 & Ex. P.

**Response:** Undisputed.

**34.**    Guenther helped prepare a merger agreement, which Guenther and Renner signed. Guenther I Tr. 69:19–70:19; DiLorenzo Decl. Ex. I.

**Response:** Undisputed and clarified that Guenther did so using the International Union's Model Local Union Merger Agreement, which required membership approval. *See* ECF No. 113-1 (Guenther Tr. I 69:19–70:19); ECF No. 107, ¶ 95; and Ex. 16.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 16

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**35.** Under the merger agreement, Guenther would be president of the new union formed through the merger. DiLorenzo Decl. Ex. I.

**Response:** Undisputed.

**36.** Under a "side agreement," Renner would be an employee of the new union. DiLorenzo Decl. ¶ 14 & Ex. M at 001027; Guenther I Tr. 84:7–25; Guenther II Tr. 43:2–25, 49:20–50:4.

**Response:** Disputed in part.

It is undisputed that UFCW 3000 entered into a "Merger Commitments and Employment Agreement" that provided Renner would be an employee of Local 3000.

It is disputed that Local 3000 did so contemporaneously with its execution of the December 14, 2021, merger agreement (ECF No. 113-9). In fact, Local 3000 never signed the "Merger Commitments and Employment Agreement" but instead approved it electronically much later, by July 21, 2023. *See* ECF No. 113-13; Dalmat 2nd Decl. 32 (Guenther Tr. I 84:7–25); 34 (Guenther Tr. II 43:2–25, 49:20–50:4).

**Defendants' Reply:** The purported facts Guenther adds to this Paragraph are disputed to the extent they imply Guenther had not agreed by December 14, 2021, that UFCW 3000 would employ Renner. Guenther produced in discovery an email that attached a draft of the employment agreement dated December 10, 2021. ECF No. 48-13 at 2 (file name "ERIC RENNER EMPLOYMENT AGREEMENT (12-10-21).docx"). And Guenther testified that before the December 14, 2021, UFCW

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

21 Executive Board meeting, she had planned that Renner "would have ongoing employment with the new local." ECF No. 113-1 at 37 (Guenther I Tr. 84:7–12).

**37.** Before Guenther recommended the proposed merger to UFCW 21's Executive Board, Guenther and Renner agreed that the new union would employ Renner. Guenther I Tr. 84:7–25.

**Response:** Disputed in part.

It is undisputed that before Guenther recommended to the Local 21 Executive Board that the Board put the merger to a membership vote, she had asked Renner to work with Local 3000 "to help transition the [Local 1439] contracts to" Local 3000. Dalmat 2nd Decl. Ex 32 (Guenther Tr. I 84:7–16). At that time, the parties had not reached any agreements—their "conversations were vague ... ." Dalmat 2nd Decl. Ex 32 (Guenther Tr. I 84:19). An actual agreement between Renner and Local 3000 regarding his employment did not begin to take shape until January or February 2022 and was not executed until much later, by July 21, 2023. Dalmat 2nd Decl. Ex 32 (Guenther Tr. I 84:17–25); Ex 34 (Guenther Tr. II 43:2–25, 49:20–50:4).

**Defendants' Reply:**  Guenther's assertion that the "agreement between Renner and Local 3000 regarding his employment did not begin to take shape until January or February 2022" is disputed.  Guenther produced in discovery an email that attached a draft of the employment agreement dated December 10, 2021.  ECF No. 48-13 at 2 (file name "ERIC RENNER EMPLOYMENT AGREEMENT (12-10-21).docx").

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

38.     On December 8, 2021, Renner stated in a text message to Guenther: "Scott H. has reviewed merger agreement. Larry Hall supports the merger and will put his name to it. Train is rolling!!!!!" DiLorenzo Decl. ¶ 13 & Ex. L at 30025; Guenther II Tr. 30:16–31:7. Guenther responded: "Yes!!!! That is so awesome!" *Id*.

**Response:** Undisputed.

It is also undisputed that "Scott H." refers to Scott Habenicht, Local 1439's in-house counsel in December 2021 and Larry Hall is a former President of Local 1439 who was a significant leader of that union. Guenther 2nd Decl. ¶ 6.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.


39.     On December 12, 2021, Renner told Guenther that two individuals "were both very impressed by [her] and are in full support!" DiLorenzo Decl. ¶ 13 & Ex. L at 30022; Guenther II Tr. 30:16–31:7. Guenther responded: "That is great news! Now I have to get my board all in order!" *Id*.

**Response:** Undisputed and clarified that Renner texted Guenther that Jeff White and Kinzie Michael—two members of the Local 1439 Executive Board in December 2021— were "both very impressed by [Guenther] and are in full support!" Guenther 2nd Decl. ¶ 9.

Guenther's response to Renner's text is undisputed.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**40.**    On December 14, 2021, Guenther led a discussion with the UFCW 21 Executive Board, in which she advocated in favor of the merger. Guenther I Tr. 60:24–62:12; DiLorenzo Decl. Ex. Q at 006002–03.

**Response:** Disputed in part.

On December 14, 2021, the Local 21 Executive Board discussed the merger. But Joe Mizrahi led the discussion (in executive session) and Guenther fielded questions. ECF No. 107, ¶¶ 97–100.

It is also undisputed that Local 21's Executive Board was composed of 36 members and the merger discussion took place during an executive session, which is reserved for sensitive, private discussions. ECF No. 107, ¶¶ 97–101; and Ex. 17 (RFP Resp No 6 – 006001–03).

**Defendants' Reply:**    Guenther does not dispute that at the December 14, 2021, UFCW 21 Executive Board meeting, "she advocated in favor of the merger," and that is the material fact.

**41.**    On December 14, 2021, the UFCW 21 Executive Board approved the proposed merger. Guenther I Tr. 61:19–21, 97:19–25.

**Response:** Undisputed, in the sense that the Local 21 Executive Board recommended putting the merger question to a vote of its members for approval. ECF No. 107, ¶¶ 97–101. The Executive Board did not have authority, on its own, to "approve" the proposed merger. ECF No. 107, ¶¶ 91, 102.

**Defendants' Reply:**    Regardless of whether the UFCW 21 Executive Board "recommended" the proposed merger or "approved" it, the Board's recommendation

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

or approval was necessary for the merger to proceed.  ECF No. 107 at 94 (Ex. 16, procedures for mergers between UFCW local unions); *see also* ECF No. 1-2 ¶ 3.6 ("UFCW 21's executive board met and approved a motion to recommend the merger to the membership of the local.").

**42.**    The UFCW 1439 Executive Board also approved the proposed merger on the same day. *Id.*

**Response:**  Undisputed, in the sense that the Local 1439 Executive Board recommended putting the merger question to a vote of its members for approval. ECF No. 107, ¶¶ 97–101. The Executive Board did not have authority, on its own, to "approve" the proposed merger. ECF No. 107, ¶¶ 91, 102.

**Defendants' Reply:**    Regardless of whether the UFCW 1439 Executive Board "recommended" the proposed merger or "approved" it, the Board's recommendation or approval was necessary for the merger to proceed.  ECF No. 107 at 94 (Ex. 16, procedures for mergers between UFCW local unions); *see also* ECF No. 1-2 ¶ 3.5 ("UFCW 1439's executive board met and approved a motion to recommend the merger to the membership of the local.").

**43.**    When Guenther spoke with the UFCW 21 Executive Board on December 14, 2021, Guenther knew "there ... had been an internal conflict [at UFCW 1439]" involving Renner that "had been resolved amongst all parties with nondisclosure and ... confidentiality agreements," and that Renner was prohibited from "directly supervis[ing] any employees." Guenther I Tr. 71:13–18, 93:12–

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

94:20, 99:5–14, 167:21–168:9; DiLorenzo Decl. ¶ 14 & Ex. M at 001027; Guenther II Tr. 49:20– 50:4; DiLorenzo Decl. Ex. Q at 006002–03.

**Response:** Undisputed.

**44.** Guenther did not tell the UFCW 21 Executive Board about the claims against Renner, the nondisclosure agreements, Renner's agreement to resign, or that Renner was not allowed to supervise people. Guenther I Tr. 83:6–84:6.

**Response:** Disputed in part.

As of the December 14, 2021, Local 21 Executive Board meeting, Guenther did not know the claims against Renner, had not seen the settlement/nondisclosure agreements, and had contemplated a merger agreement that would place Renner in a non-supervisory position at Local 3000 where he would not be an officer of that local union and would not sit on its governing body, the Executive Board. Dalmat 2nd Decl. Ex. 32 (Guenther Tr. I 80:9–82:25, 85:17–87:17, 93:18–94:8, 138:19–139:10, 199:10–14, 200:13–23); Ex. 34 (Guenther Tr. II 28:8–30:1); Guenther 2nd Decl. ¶¶ 5–6.

It is therefore undisputed that Guenther did not inform the Local 21 Executive Board of those topics of which she was unaware. As for the restriction on Renner's ability to supervise others, because Guenther had no expectation that Renner would supervise anyone at Local 3000, she saw no relevance in informing the Executive Board of such a restriction. Dalmat 2nd Decl. Ex. 32 (Guenther Tr. I 84:3–6). In fact, Renner has not supervised anyone while employed at Local 3000. Guenther 2nd Decl. ¶¶ 5–6.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 22

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Defendants' Reply:** Guenther does not dispute that she did not tell the UFCW 21 Executive Board about the claims against Renner, the nondisclosure agreements, Renner's agreement to resign, or that Renner was not allowed to supervise people. To the extent she asserts she could not have told the Board this information, the evidence does not support her assertion. She knew that complaints against Renner by UFCW 1439 staff had been settled. ECF No. 113-1 at 38–39 (Guenther I Tr. 93:12–94:20); ECF No. 123-1 at 3–6 (Guenther I Tr. 71:13–74:2). She knew that those settlement agreements existed and that they contained nondisclosure provisions. ECF No. 123-1 at 3 (Guenther I Tr. 71:13–25). And she knew that, as a result of the complaints, Renner could not continue to serve as president, or in any officer position, and was prohibited from supervising union employees. ECF No. 113-1 at 41, 55–56 (Guenther I Tr. 99:5–12, 167:21–168:9). Indeed, Guenther testified that she did not share this information with the Board because she "didn't think it was relevant." ECF No. 113-1 at 36–37 (Guenther I Tr. 83:6–84:6).

### C.    Member Vote

**45.**    On December 17, 2021, UFCW 1439 formally announced the merger vote to its members. DiLorenzo Decl. Ex. X at 0000168.

**Response:** Disputed in part (or, perhaps, merely clarified).

The cited exhibit indicates that "Notice of the merger vote was provided to our membership on December 17, 2021." ECF No. 113-24. In other words, on December 17, 2021, Local 1439 mailed notifications to its members of their right to participate in an upcoming vote—at meetings on January 6, 10–14, and 18–20, 2022—on the

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

proposed merger between Local 21 and Local 1439. ECF No. 113-24. Local 1439's December 17, 2021, notice did not announce the results of an accomplished merger vote.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

**46.**    On January 6, 2022, UFCW 21 formally announced the merger vote to its members. DiLorenzo Decl. Ex. Y at 0000151.

**Response:** Disputed in part (or, perhaps, merely clarified).

The cited exhibit indicates that "Notice of the merger vote was provided to our membership on January 6, 2022." ECF No. 113-25. That, in fact happened. *See* ECF No. 107, ¶ 103 and Ex. 18. Local 21's notice did not ask anyone to vote in favor of the merger. *Id.*

In other words, on January 6, 2022, Local 21 mailed its members of their right to participate in general membership meetings on February 9–12, 2022, during which the merger would be one of the topics discussed and on which they could vote. ECF No. 113-24. Local 21's January 6, 2022, notice did not announce the results of an accomplished merger vote.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.  Although the formal notice issued on January 6, 2022, did not ask anyone to vote in favor of the merger, a prior press release on UFCW 21's website did.  *See* ECF No. 10-19; *infra* ¶ 92.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    **47.**    Between January 6 and 20, 2022, UFCW 1439 members voted on the

2   proposed merger. DiLorenzo Decl. Ex. X at 000168; Guenther I Tr. 97:19–25.

3    **Response:** Undisputed.

4

5    **48.**    On January 5, 2022, the day before UFCW 1439 members began

6   voting, Guenther stated in an email to Renner and others that her staff "are going to

7   fly to Spokane tomorrow and provide any support needed to 1439," "onboard [a

8   UFCW 21 staff member] to help from tomorrow until January 20 to ensure we have

9   what we need for all votes," and "can also help ... with anything ... including ... vote

10  support." DiLorenzo Decl. Ex. R.

11   **Response:** Disputed in part.

12   It is undisputed that the quotations set forth above are accurate, partial

13  quotations from the cited exhibit containing Guenther's January 5, 2022, email. The

14  full quotation is:

15   Hi All:

16   Kim and Sarah are going to fly to Spokane tomorrow and provide any
     support needed to 1439. We have a staff person who is cross trained in

17   Emma and DMC and Kim will onboard her to help from tomorrow until
     January 20 to ensure we have what we need for all votes. Kim and

18   Michelle can also help Dana with anything she needs including prep for
     year end audit and vote support.

19
     Joe and I are cancelling all of our travel and meetings and will provide
20   extra support, Shari Davis will likely travel with us to any vote meetings
     we can make. Share can help reps with sign in and she can seal the
21   doors at proper time.

22

23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

> Eric I will call you so we can outline which votes Share/Joe and I can provide extra sets of hands.
>
> It's game time!
>
> Faye

ECF No. 113-18. This email correctly reflects Guenther's plans as of January 5, 2022: she planned to send experienced Local 21 staff members to assist with Local 1439's administration of the merger vote to ensure compliance with legal requirements under federal law (i.e., the Labor–Management Reporting and Disclosure Act) and the UFCW Constitution. Guenther 2nd Decl. ¶ 12. In fact, Guenther was not able to attend the Local 1439 meetings at which Local 1439 members voted on the merger because she was sick with COVID. Guenther 2nd Decl. ¶¶ 14–15. The Local 21 staff who attended ensured the merger vote complied with union-constitutional requirements and federal law, and also fielded members' questions. Guenther 2nd Decl. ¶¶ 16–17.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

**49.**    In the same January 5, 2022, email, Guenther stated: "Joe and I are cancelling all of our travel and meetings and will provide extra support, Shari Davis will likely travel with us to any vote meetings we can make. ... Eric I will call you so we can outline which votes Shari/Joe and I can provide extra sets of hands. It's game time!" *Id.*

**Response:** Disputed in part.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

It is undisputed that the quotations set forth above are accurate, partial quotations from the cited exhibit containing Guenther's January 5, 2022, email. The full quotation is:

> Hi All:
>
> Kim and Sarah are going to fly to Spokane tomorrow and provide any support needed to 1439. We have a staff person who is cross trained in Emma and DMC and Kim will onboard her to help from tomorrow until January 20 to ensure we have what we need for all votes. Kim and Michelle can also help Dana with anything she needs including prep for year end audit and vote support.
>
> Joe and I are cancelling all of our travel and meetings and will provide extra support, Shari Davis will likely travel with us to any vote meetings we can make. Share can help reps with sign in and she can seal the doors at proper time.
>
> Eric I will call you so we can outline which votes Share/Joe and I can provide extra sets of hands.
>
> It's game time!
>
> Faye

ECF No. 113-18. This email correctly reflects Guenther's plans as of January 5, 2022: she planned to send experienced Local 21 staff members to assist with Local 1439's administration of the merger vote to ensure compliance with legal requirements under federal law (i.e., the Labor–Management Reporting and Disclosure Act) and the UFCW Constitution. Guenther 2nd Decl. ¶ 12. In fact, Guenther was not able to attend the Local 1439 meetings at which Local 1439 members voted on the merger because she was sick with COVID. Guenther 2nd Decl. ¶¶ 14–15. The Local 21 staff who attended ensured the merger vote complied

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

with union-constitutional requirements and federal law, and also fielded members'

questions. Guenther 2nd Decl. ¶¶ 16–17.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther

asserts in this paragraph.

50.    Also on January 5, 2022, Guenther texted Renner: "Game time!!! Its

[sic] on Eric! I can t [sic] wait to celebrate on Jan 20!!!!!!!!" DiLorenzo Decl. ¶ 13

& Ex. L at 30017; Guenther II Tr. 30:16–31:7.

**Response:** Undisputed.

51.    UFCW 1439 members voted in favor of the merger, 191 to 5.

DiLorenzo Decl. Ex. X at 000168.

**Response:** Undisputed.

It is also undisputed that the 196 votes cast out of approximately 7,800

members of Local 1439—i.e., only approximately 2.5% of the Local 1439

membership participated in the merger vote. The vote was also uncontroversial, with

approximately 97.4% of Local 1439 voters supporting the merger.

**Defendants' Reply:**  Defendants do not dispute that 2.5% of UFCW 1439

members participated in the merger vote, or that 97.4% of those members who voted

cast votes in favor of the merger.  But Defendants disagree with Guenther's

characterization of the vote as "uncontroversial."  Guenther alleges that UFCW 21

and UFCW 1439 staff members discussed the Flyer's allegations with members in

advance of the merger vote.  ECF No. 1-2 ¶¶ 3.27, 3.59–3.61.  UFCW members

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 28

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

discussed the merger in a Facebook forum.  ECF No. 113-1 at 41–43 (Guenther I Tr. 99:22–101:13); ECF No. 106 at 87–88; ECF No. 1-2 ¶ 3.12.  Laurel Fish (one of only a few individuals who knew the truth behind the merger) thought that allowing Renner to continue working for the union through the merger "violated" "the spirit and intent and language" of the settlement agreements—and she told Guenther so. ECF No. 123-5 at 3 (Fish Tr. 87:7–24); *see also supra* ¶ 23 ("undisputed" that Guenther was concerned UFCW Regional Director Kate Meckler would oppose the merger).

**52.**    On January 27, 2022, Guenther stated in an email to Renner and others: "UFCW 21 members will be voting soon, and hopefully that will be a good vote." DiLorenzo Decl. Ex. S.

**Response:** Undisputed.

It is also undisputed that the personnel copied on Guenther's email are all senior Local 21 staff. Guenther 2nd Decl. ¶¶ 13, 16–17; ECF No. 113-19.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

**53.**    Between February 9 and 12, 2022, UFCW 21 members voted on the proposed merger. DiLorenzo Decl. Ex. Y at 0000151.

**Response:** Undisputed.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**54.**    UFCW 21 members voted in favor of the merger, 207 to 11. DiLorenzo Decl. Ex. Y at 0000151.

**Response:** Undisputed.

It is also undisputed that the 218 votes cast for or against the merger out of approximately 44,000 members of Local 21 mean that only approximately 0.5% of Local 21 members participated in the merger vote. The vote was uncontroversial, with approximately 95% of Local 21 voters supporting the merger.

It is also undisputed that, taken together, only 414 out of approximately 51,800 members of both local unions participated in the merger vote. In other words, only approximately 0.8% of eligible voters participated in the merger vote.

**Defendants' Reply:**  Defendants do not dispute that 0.5% of UFCW 21 members participated in the merger vote, or that 95% of those members who voted cast votes in favor of the merger.  But Defendants disagree with Guenther's characterization of the vote as "uncontroversial."  Guenther alleges that UFCW 21 and UFCW 1439 staff members discussed the Flyer's allegations with members in advance of the merger vote.  ECF No. 1-2 ¶¶ 3.27, 3.59-61.  UFCW members discussed the merger in a Facebook forum.  ECF No. 113-1 at 41–43 (Guenther I Tr. 99:22–101:13); ECF No. 106 at 87–88; ECF No. 1-2 ¶ 3.12.  Laurel Fish (one of only a few individuals who knew the truth behind the merger) thought that allowing Eric to continue working for the union through the merger "violated" "the spirit and intent and language" of the settlement agreements—and she told Guenther so.  ECF No. 123-5 at 3 (Fish Tr. 87:7-24); *see also supra* ¶ 23 ("undisputed" that Guenther was concerned UFCW Regional Director Kate Meckler would oppose the merger).

1    **55.**    In Spokane, only one UFCW 1439 member voted against the merger,

2    and all UFCW 21 members in Spokane voted in favor of the merger. DiLorenzo

3    Decl. Ex. X at 0000172 & Ex. Y at 0000152.

4    **Response:** Undisputed.

5

6    **56.**    The merger became effective March 1, 2022. DiLorenzo Decl. Ex. I at

7    0000158.

8    **Response:** Undisputed.

9

10    **IV.    The Flyer**

11    **A.    Nonparty Michael Selvaggio Created the Flyer.**

12    **57.**    In December 2021, Michael Selvaggio, who through his company

13    Ridgelark Strategies LLC was political director for UFCW 555, created a flyer to

14    encourage UFCW members to vote against the proposed merger. Selvaggio Tr.

15    62:2–23, 75:14– 19, 113:10–18; see ECF No. 26-1 ("Flyer").

16    **Response:** Disputed in part.

17    It is undisputed that Selvaggio drafted the content of the flyer based on talking

18    points he had discussed with Local 555 President Dan Clay and his executive

19    assistant, Esai Alday. ECF No. 106, Ex. 7 (Selvaggio Tr. 113:10–114:3, 122:17–

20    124:12, 144:3–145:1).

21    Nonetheless, Emmons literally created the written materials—the flyers—that

22    he distributed at grocery stores in Spokane, Washington, by printing them at a FedEx

23    store. ECF No. 106, Ex. 13 (Emmons Tr. 74:18–76:2).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

**<u>Defendants' Reply</u>:**  Guenther's response stretches the meaning of "create."

2 She does not dispute that Selvaggio made the Flyer.  Nor does she dispute that the

3 Flyer existed weeks before Selvaggio hired Emmons to distribute it, and Emmons

4 merely "printed copies" of it.  *See* ECF No. 106 at 100–01 (Emmons Tr. 75:11-76:4).

5 As discussed in Defendants' Reply, the fact that Emmons printed the copies of the

6 Flyer he distributed has no legal significance.

7

8        **58.**    Selvaggio created the Flyer at the request of Dan Clay, President of

9 UFCW 555. Selvaggio Tr. 43:23–25, 92:10–97:24; 123:20–124:2.

10        **Response:** It is undisputed that Selvaggio drafted the flyer at Clay's request.

11 As indicated in response to paragraph 57, Emmons literally created the flyers

12 themselves by printing them.

13        **<u>Defendants' Reply</u>:**  Again, Guenther stretches the meaning of "create."  She

14 does not dispute that Selvaggio made the Flyer.  Nor does she dispute that the Flyer

15 existed weeks before Selvaggio hired Emmons to distribute it, and Emmons merely

16 "printed copies" of it.  *See* ECF No. 106 at 100–01 (Emmons Tr. 75:11-76:4).  As

17 discussed in Defendants' Reply, the fact that Emmons printed the copies of the Flyer

18 he distributed has no legal significance.

19        **59.**    Clay and Esai Alday, who also works for UFCW 555, provided

20 Selvaggio with the information that Selvaggio included in the Flyer. Selvaggio Tr.

21 99:11–17, 122:10–124:2. 60.

22        **Response:** Undisputed.

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 32

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

**60.**   The Flyer contained the following statements:

2

ATTENTION UFCW MEMBERS

3

The in-union "Sexual Harassment club" is at it again!!

4

First Faye Gunther [sic] (President of Local 21) helped former 367

5

President Angel Gonzalez cover up his harassment charges and paid
him off in exchange for installing her puppet, Mike Hines.

6

Now she's helping Eric Renner (the Local 1439 President) hide from

7

sexual harassment charges and land a cushy new gig with Local 21
through a forced merger.

8

OUR UNION SHOULD BE LOOKING OUT FOR US

9

NOT PROTECTING HARASSERS!

It's time to STOP THE COVERUPS!

10

VOTE NO ON ANY MERGER!

11

12

ECF No. 26-1.

13

**Response:** Undisputed. *See also* ECF No. 106, Ex. 17.

14

15

**61.**   Emmons had "[n]o" "involvement in the creation or production of the

16

[Flyer]." Emmons Tr. 73:13–15.

17

**Response:** Disputed.

18

In fact, Emmons was substantially involved in producing the flyer. He

19

discussed the contents of the flyer with Selvaggio before agreeing to print and

20

circulate it. ECF No. 106, Ex. 7 (Selvaggio Tr. 110:9–111:13); Ex. 13 (Emmons Tr.

21

69:7–14). During that discussion, Emmons immediately recognized the incendiary

22

nature of those accusations and asked Selvaggio for their basis. ECF No. 106, Ex.

23

13 (Emmons Tr. 69:7–10, 70:20–71:22). Selvaggio told him the sexual harassment

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 33

allegations were the subject of investigations. ECF No. 106, Ex. 13 (Emmons Tr. 70:20–71:22); Ex. 7 (Selvaggio Tr. 110:24–111:16). Selvaggio and Emmons did not discuss any payoffs or whether Guenther was involved in any way in those allegations or the target of any sexual harassment investigation. ECF No. 106, Ex. 7 (Selvaggio Tr. 111:14–112:19); Ex. 13 (Emmons Tr. 71:20–25, 78:2–7, 78:22–79:8, 80:3–12). As far as Emmons recalls, they did not discuss Guenther at all during that conversation. ECF No. 106, Ex. 13 (Emmons Tr. 64:21–65:15).

After that conversation, Selvaggio emailed Emmons the flyer. ECF No. 106, Ex. 17 (Selvaggio Ex. 8); Dalmat Decl. Ex. 7 (Selvaggio Tr. 139:9–140:1, 144:3–145:1). After receiving a copy of the flyer itself from Selvaggio, Emmons and Selvaggio had another discussion about it. ECF No. 106, Ex. 13 (Emmons Tr. 76:1–80:16); Ex. 18 (Selvaggio Ex. 6). During that second conversation, Emmons read the flyer in its entirety but did not discuss any details of any investigations into Gonzalez or Renner and did not discuss the accusation that Guenther helped Gonzalez cover up harassment charges and paid him off in exchange for installing Hines. ECF No. 106, Ex. 13 (Emmons Tr. 78:25–79:15, 90:13–91:19). Emmons also did not discuss with Selvaggio the accusation that Guenther helped cover up allegations Renner was facing. ECF No. 16, Ex. 13 (Emmons Tr. 78:14–80:16).

Based on what he learned in these two conversations—i.e., nothing at all supporting the truth of the accusations directed against Guenther—Emmons agreed to produce the flyers by printing them at a FedEx store and then distributing them in grocery stores in Spokane (hundreds of miles away from Portland) where affected UFCW members would likely see them. ECF No. 106, Ex. 13 (Emmons Tr. 74:18–

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 34

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

75:25); Ex. 13 (Emmons Tr. 74:18–76:6, 81:1–84:22, 102:9–103:21); Ex. 7 (Selvaggio Tr. 136:3–19); Ex. 19 (RFP Resp No. 2 – 002111–16). Upon distributing the flyers, Emmons told recipients "here's information about the union, information about the merger." ECF No. Ex. 7 (Selvaggio Tr. 118:8–18).

**Defendants' Reply:**  Guenther attempts to create a factual dispute here, but none exists.  She does not dispute that Selvaggio made the Flyer and mailed it to 1,000 people weeks before he hired Emmons to distribute it.  Nor does she dispute that at Selvaggio's direction, Emmons only "printed copies" and distributed them. ECF No. 106 at 100–01 (Emmons Tr. 75:11-76:4); *see also supra* ¶¶ 57–59; *infra* ¶¶ 62, 79–80, 85.  She also concedes that she saw the Flyer before Emmons ever learned of it.  *See infra* ¶ 63 (Guenther first saw the Flyer December 15 or 16, 2021); *infra* ¶ 79 (Emmons first saw the Flyer on January 5, 2022).  Thus, Emmons could not have been "substantially involved in producing the flyer," as Guenther claims. And, as discussed in Defendants' Reply, the fact that Emmons printed the copies of the Flyer he distributed has no legal significance.

Several of Guenther's other assertions similarly stretch the record:

First, Emmons did not see the Flyer as "incendiary."  The testimony Guenther cites simply states Emmons asked Selvaggio whether the Flyer's statements were credible.  The only evidence in the record concerning Emmons's state of mind indicates he believed the Flyer was true and would inform UFCW members of union leaders' misconduct.  *See* ECF No. 112 ¶¶ 5–9; ECF No. 113-4 at 10–11 (Emmons Tr. 108:19–109:10); ECF No. 106 at 95 (Emmons Tr. 69:17–21).

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 35

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

<u>Second</u>, Guenther's claim that Emmons and Selvaggio "did not discuss" Guenther or specific statements in the Flyer is misleading. Emmons and Selvaggio both testified that they discussed all of the Flyer's statements, including those concerning Guenther, and Selvaggio confirmed they were true and supported by investigations. ECF No. 106 at 51–52 (Selvaggio Tr. 110:9–111:22); ECF No. 106 at 101–05 (Emmons Tr. 76:7–80:12); ECF No. 112 ¶ 9. Emmons also testified that he could not specifically recall everything he and Selvaggio discussed concerning the Flyer. *See, e.g.*, ECF No. 106 at 96–97 (Emmons Tr. 70:11–14, 71:18–25).

<u>Third</u>, Guenther's claim that Emmons did not "learn[]" "[any]thing at all supporting the truth of the accusations" is false. As Emmons and Selvaggio have testified, Selvaggio told Emmons that the Flyer's statements were true and supported by investigations. ECF No. 123-3 at 8–9 (Selvaggio Tr. 110:9–111:22); ECF No. 112 ¶ 9; ECF No. 113-4 at 10–11 (Emmons Tr. 108:19–109:10); ECF No. 106 at 103–05 (Emmons Tr. 78:8–80:12). Emmons also learned that the Flyer was part of a project to educate UFCW members about union leaders' misconduct. ECF No. 106 at 96–97 (Emmons Tr. 70:17–71:12). This information helped inform Emmons's view that the Flyer was true because, in his experience working with Selvaggio, Selvaggio "does not take on initiatives without first confirming that the position or message he is communicating is a credible one." ECF No. 112 ¶¶ 6, 9.

Finally, Selvaggio selected the location and stores where Emmons distributed the Flyer—not Emmons. ECF No. 106 at 105–06 (Emmons Tr. 80:25–81:5); ECF No. 112 ¶ 8.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**B.    Nonparty Mike Selvaggio Mailed 1,000 Copies of the Flyer to UFCW Worksites on December 13, 2021.**

**62.**    On December 13, 2021, Selvaggio mailed 1,000 copies of the Flyer to UFCW work sites across Washington. Selvaggio Tr. 97:11–98:10, 101:4–102:12, 104:17– 105:3, 113:22–114:1.

**Response:** Undisputed. It is also undisputed that the mailings were addressed to shop stewards and store managers. ECF No. 107, ¶ 117.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.


**63.**    Guenther first learned of the Flyer on December 15 or 16, 2021. Guenther I Tr. 97:8–16.

**Response:** Undisputed. *See also* ECF No. 107, ¶ 128; and Ex. 22.


**64.**    Around the same time, a UFCW 367 member posted the Flyer in a UFCW member Facebook forum, and other members commented on it. ECF No. 1-2 ¶ 3.12; DiLorenzo Decl. Ex. T; Guenther I Tr. 99:15–101:22.

**Response:** Undisputed and clarified. It is undisputed that the Facebook group in which the member posted the flyer was closed to members of Local 367, and that the post garnered merely 26 comments and 17 reactions. Guenther 2nd Decl. ¶¶ 18– 19; ECF No. 106, Ex. 11 (RFP Resp. No. 2 – 002099); Ex. 4 (Guenther Tr. 99:22– 100:18). Because each Facebook user can make only one reaction to a post, whereas the same user can post multiple comments responding to a post, the 26 comments

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 37

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

could be from the 17 people who posted reactions. Guenther 2nd Decl. ¶¶ 18–20; ECF No. 106, Ex. 11 (RFP Resp. No. 2 – 002099).

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

65.    Adam Jackson received a text message from a grocery store meat manager with an image of the Flyer, which the meat manager said he had received at work. Jackson Tr. 122:6–18.

**Response:** Undisputed.

66.    Jackson shared the image of the Flyer with Laurel Fish on or around December 16, 2021. Fish Tr. 112:14–25.

**Response:** Undisputed.

67.    Jackson "checked with a few other people" to see if they had received the Flyer and confirmed others had received it too. Jackson Tr. 122:16–18.

**Response:** Undisputed.

It is also undisputed that the members with whom Jackson discussed the flyer were "confused more than anything" by it. Dalmat 2nd. Decl. Ex. 36 (Jackson Tr. 123:2–4). The members were already aware "there was a vote coming up" because the union had "already announced the merger was coming." Dalmat 2nd. Decl. Ex. 36 (Jackson Tr. 123:6–8). Jackson told the members, "It's nothing, you know, we did or our Local put out and so I just reported it to Scott." Dalmat 2nd. Decl. Ex. 36

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 38

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

(Jackson Tr. 123:11–12). At no point before the membership meetings at which the merger votes occurred, however, did Jackson report hearing Local 1439 members debate the merits of the merger publicly, including following the December 2021 mailing. *Id.*

**Defendants' Reply:** Defendants do not dispute the additional facts Guenther asserts in this paragraph.

68.    Guenther testified that she experienced "[a]nxiety" after the Flyer became public. Guenther I Tr. 107:12–24.

**Response:** It is undisputed that Guenther experienced anxiety and pecuniary harm as a result of the flyer Emmons circulated. *See* ECF No. 107, ¶¶ 136–167.

The testimony cited at Guenther I Tr. 107:12–24 does not indicate that Guenther's anxiety began before January 8, 2022, when Emmons circulated the flyers in Spoke stores.

**Defendants' Reply:** Guenther asserts that "[i]t is undisputed that Guenther experienced anxiety and pecuniary harm as a result of the flyer Emmons circulated." Defendants argued in their Motion for Summary Judgment that Guenther lacks "special damages"—i.e., economic or pecuniary loss—as the record showed none. *See, e.g.*, ECF No. 110 at 24–25.  And Defendants further argued that Guenther lacked evidence showing any purported damages resulted from Emmons's conduct. *Id.*  These facts have not changed.

No pecuniary harm.  The only evidence Guenther cites now to show pecuniary harm is her own self-serving declaration, submitted with her summary judgment

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  motion.  *See* ECF No. 107.  That declaration claims three purported pecuniary

2  losses—money spent on "professional care" for her anxiety, costs incurred from

3  moving her personal residence, and lost income from not being appointed as a

4  UFCW International Vice President.  *Id.* ¶¶ 164, 167.  None of these supposed harms

5  was alleged in the Complaint.  ECF No. 21 at 11 (finding Guenther made "no

6  allegations on special damages").  Nor did Guenther identify any of them in her

7  Initial Disclosures.  ECF No. 48-3 at 12–13 (asserting Guenther's damages are

8  "reputational" and "non-economic," and therefore "do not require computation").

9  Rule 37(c)(1) thus bars her from relying on them now.  *See* Fed. R. Civ. P. 37(c)(1)

10  (party who "fails to provide information … as required by Rule 26(a)" cannot use

11  that information "on a motion … or at a trial"); *Okeke v. N.Y. & Presbyterian Hosp.*,

12  2017 WL 2484200, at *3 (S.D.N.Y. June 6, 2017) ("A plaintiff's failure to disclose

13  a computation of damages in her initial disclosure is alone sufficient to preclude her

14  from submitting evidence of it at trial.") (citation & internal quotation marks

15  omitted).

16      <u>No evidence of causation</u>.  Guenther cites no evidence supporting her

17  assertion that Emmons's conduct caused either her anxiety or her newly asserted

18  pecuniary damages.  She notes that her testimony does not specify the date when her

19  anxiety started, but as the plaintiff, she has the burden of establishing factual

20  causation—i.e., that her anxiety began ***after*** January 8, 2022, and was caused by the

21  copies of the Flyer that Emmons distributed.  ECF No. 110 at 24-25; *see also* ECF

22  No. 120 at 25-26.  The record contains no such evidence of factual causation, and in

23  fact demonstrates that Guenther's anxiety and any resulting losses resulted from

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 40

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

other events that had nothing to do with the Flyer.  *See, e.g.*, ECF No. 121 ¶¶ 106-109.

**69.**    On or around December 16, 2021, after Fish learned of the Flyer from Jackson, Plaintiff's counsel Aaron Streepy called Fish "to ask if [she] was responsible for [the Flyer]." Fish Tr. 94:1–11.

**Response:** Undisputed.

**70.**    On December 20, 2021, Guenther received an email with the subject line "In-union Sexual Harassment Club?" from Lance Van Landuyt, who signed as "Steward at Fred Meyer" and asked, "This letter was mailed to me at my store. What's this all about?" DiLorenzo Decl. Ex. U. Guenther responded in part: "Our attorneys are working on this .... We will work until we find out who wrote the flyer and who mailed the flyer to attempt to get to the bottom of this." *Id.*

**Response:** Undisputed.

It is also undisputed that the record contains no evidence showing Mr. Van Landuyt discussed the matter publicly.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 41

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**C. Nonparty Mike Selvaggio Hired Emmons to Place Copies of the Flyer in Five to Seven Grocery Stores in Spokane, Which Emmons Did on January 8, 2022.**

**71.** In January 2022, Selvaggio called Emmons and said Ridgelark wanted to hire Emmons's company, Osprey, to distribute copies of the Flyer to grocery stores in Spokane. Selvaggio Tr. 73:14–17; Emmons Tr. 67:13–68:25, 73:8–12, 84:12–13; Emmons Decl. ¶¶ 4, 7, 10.

**Response:** Undisputed and clarified.

The call occurred on or around January 5, 2022. ECF No. 106, Ex. 7 (Selvaggio Tr. 108:18–110:4).

**Defendants' Reply:** Defendants do not dispute the additional facts Guenther asserts in this paragraph.

**72.** Emmons and Osprey had been hired by Selvaggio and Ridgelark to assist with numerous community outreach projects before. Emmons Decl. ¶ 5.

**Response:** Undisputed.

**73.** Emmons first worked with Selvaggio at an organization called Direct Action Partners, where Selvaggio was President and Emmons was a Project Manager, before the organization dissolved. *Id.*

**Response:** Undisputed.

**74.** Since working together at Direct Action Partners, Selvaggio, through Ridgelark, has hired Emmons, through Osprey, for numerous other community outreach projects over the years. *Id.*

**Response:** Undisputed.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **75.**    Emmons has known Selvaggio for nearly a decade. *Id*.

2    **Response:** Undisputed.

3

4    **76.**    In Emmons's experience working for Selvaggio, Emmons has observed

5    Selvaggio to be honest and trustworthy. Emmons Tr. 109:1–10; Emmons Decl. ¶ 6.

6    **Response:** Disputed in part. It is undisputed that Emmons testified as much.

7    The cited deposition testimony includes Emmons's testimony that Selvaggio has

8    "never led [Emmons] astray." ECF No. 113-4 (Emmons Tr. 109:6–8). The pendency

9    of this litigation speaks for itself on that question.

10    **<u>Defendants' Reply</u>:**    Guenther's added commentary on this paragraph has no

11    relevance to the merits of her claims.  The fault element—under either the actual

12    malice or negligence standard—turns on what Emmons knew at the time he

13    distributed the Flyer. *See* ECF No. 110 at 21–24.

14

15    **77.**    Specifically, in Emmons's experience, Selvaggio is selective in the

16    organizations and people he chooses to work for, only works for those with high

17    integrity, and does not take on initiatives without first confirming that the position

18    or message he is communicating is a credible one. Emmons Decl. ¶ 6.

19    **Response:** Disputed.

20    The facts of this case—with which Emmons has experience—show that

21    Selvaggio does not work only for people with high integrity and he does take on

22    initiatives without confirming the position or message he is communicating is

23    credible. Rather, the record facts show Selvaggio took on Operation Wagon Wheel

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 43

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

in reliance on the representations of Clay and Alday, who told him that they relied on an investigation by the UFCW International Union—an assertion Selvaggio did nothing to verify. ECF No. 106, Ex. 7 (Selvaggio. Tr. 111:23–112:19). In fact, the International repeatedly deemed the flyers' accusations to be false. ECF No. 106, Ex. 14 (UFCW-EMMONS_000029 –32), Ex. 15 (UFCW-EMMONS_000936), Ex. 16 (UFCW-EMMONS_000937).

In addition, neither Selvaggio nor Emmons did anything to confirm whether Guenther paid off Local 367 President Angel Gonzalez or whether Guenther was involved in any way in the allegations of sexual harassment against Gonzalez or against Eric Renner. ECF No. 106, Ex. 7 (Selvaggio Tr. 111:14–112:19); Ex. 13 (Emmons Tr. 71:20–25, 78:2–7, 78:22–79:8, 80:3–12). They did not discuss Guenther at all—let alone confirm the facts of the accusations against her—when discussing this position. ECF No. 106, Ex. 13 (Emmons Tr. 64:21–65:15).

It is also disputed that Clay—the president of UFCW Local 555, which contracts Selvaggio through his company, Ridgelark Strategies—is a person of high integrity. For example, when asked by International Union investigators about his involvement in the flyer at issue in this case, he knowingly lied about it—denying any involvement. ECF No. 106, Ex. 15.

**Defendants' Reply:** Guenther does not dispute that at the time Emmons circulated the Flyer, in his experience, Selvaggio was selective in the organizations and people he chose to work for, only worked for those with high integrity, and did not take on initiatives without first confirming that the position or message he was communicating was a credible one. Guenther's added commentary regarding her

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 44

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

views of Selvaggio and Clay—all based on events that occurred **after** Emmons distributed the Flyer—has no relevance to the merits of her claims. The fault element turns on what Emmons knew and believed at the time he distributed the Flyer, not what he may or may not know now. *See* ECF No. 110 at 21–24.

Further, Guenther's assertions that Emmons did not do "anything" to "confirm" whether the Flyer's statements were true and "did not discuss Guenther at all" are false and misleading. Selvaggio and Emmons both testified that Emmons discussed all of the Flyer's statements, including those concerning Guenther, with Selvaggio, and Selvaggio confirmed they were true and supported by investigations that "involved Ms. Guenther." ECF No. 106 at 51–52 (Selvaggio Tr. 110:9–111:22); ECF No. 106 at 101–05 (Emmons Tr. 76:7–80:12); ECF No. 112 ¶ 9. The testimony Guenther cites simply indicates that Emmons did not investigate the Flyer's statements beyond his conversations with Selvaggio.

**78.** Emmons agreed to take on the project of distributing copies of the Flyer in Spokane. Emmons Decl. ¶ 7.

**Response:** Undisputed. *See also* ECF No. 105, ¶¶ 70–84 (citing record).

**79.** Selvaggio emailed Emmons the Flyer on January 5, 2022. Emmons Decl. ¶ 8.

**Response:** Undisputed.

**80.** Selvaggio provided Emmons with a list of grocery stores where Selvaggio wanted Emmons to distribute the Flyer. Emmons Decl. ¶ 8.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 45

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

**Response:** Undisputed.

2

3    **81.**    Emmons does not personally know the individuals named in the Flyer.

4    Emmons Decl. ¶ 9.

5    **Response:** Undisputed.

6

7    **82.**    Emmons had no personal knowledge as to the truth of the statements in

8    the Flyer. Emmons Decl. ¶ 9; Emmons Tr. 108:23–109:10; Selvaggio Tr. 110:18–

9    23.

10    **Response:** It is undisputed that Emmons had no actual knowledge of the truth

11    of the statements in the flyer he published. Nor could he have, as the flyers'

12    statements are false. *See* ECF No. 105, ¶¶ 95–105 (citing record).

13    To the extent this Paragraph implies Emmons had no actual malice when

14    publishing the flyer's accusations against Guenther, Guenther disputes that

15    implication with the following circumstantial evidence. *See Duc Tan v. Le*, 177

16    Wn.2d 649, 669, 300 P.3d 356 (2013).

17    In fact, Emmons had personal hostility toward anyone accused of sexual

18    harassment—which was a "personal issue" for him—such that, once Emmons heard

19    the flyer involved sexual harassment that could affect "UFCW members" he "really

20    didn't need to hear much more" to spread the accusations in the flyer, even though

21    he immediately recognized that the accusations were incendiary. ECF No. 106, Ex.

22    13 (Emmons Tr. 69:7–10, 70:5–7, 70:11–16).

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 46

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Emmons knew that Selvaggio, Clay, and Alday—Emmon's direct and indirect sources of information—were hostile to Guenther, as the express purpose of the flyering project, as Selvaggio conveyed it to him, was to oppose the merger that Guenther sought. ECF No. 106, Ex. 7 (Selvaggio Tr. 109:23–110:4, 117:8–23); Ex. 13 (Emmons Tr. 69:17–70:14).

Emmons did nothing to investigate the allegations against Guenther, let alone do so properly. ECF No. 106, Ex. 7 (Selvaggio Tr. 111:14–112:19); Ex. 13 (Emmons Tr. 64:21–65:15, 71:20–25, 73:8–23, 78:2–7, 78:22–79:8, 80:3–12). Emmons also did not inquire into any details of any investigations into Gonzalez or Renner. ECF No. 106, Ex. 13 (Emmons Tr. 78:25–79:15, 90:13–91:19).

And, finally, Emmons deliberately avoided the truth, not even inquiring into the basis for the accusations against Guenther despite inquiring into the basis for the accusations against the alleged harassers. ECF No. 106, Ex. 7 (Selvaggio Tr. 111:14–112:19); Ex. 13 (Emmons Tr. 64:21–65:15, 71:20–25, 73:8–23, 78:2–7, 78:22–79:8, 80:3–12).

**Defendants' Reply:** Guenther's response to this paragraph largely consists of improper legal argument that does not bear on the asserted fact—that Emmons lacked personal knowledge as to the truth of the Flyer's statements—which Guenther concedes is undisputed. The purported facts Guenther adds lack support in the record.

First, Guenther misrepresents Emmons's deposition testimony. Emmons did not view the Flyer as "incendiary" and did not hold "personal hostility" toward sexual harassers. Nor does the record show that any supposed hostility influenced

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 47

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

his decision to take on Selvaggio's project. Guenther's counsel asked Emmons, "How did [Selvaggio] describe the project?" ECF No. 106 at 95 (Emmons Tr. 69:7–10). Emmons responded: "That there were individuals who previously had sexual harassment allegations against them attempting to come back into leadership, which is a personal issue for me." *Id.* Guenther's counsel did not explore what Emmons meant by "personal issue," nor did Emmons say anything further about it. Nine questions later, Guenther's counsel asked, "What else did [Selvaggio] tell you about the project?" *Id.* at 96 (Emmons Tr. 70:11–14). Emmons responded: "I can't recall, but I really didn't need to hear much more." *Id.*

As Emmons has repeatedly testified, he was satisfied with the information Selvaggio provided because Selvaggio said the Flyer was true, supported by investigations, and intended to inform UFCW members about their leaders' misconduct, and Emmons trusted Selvaggio's word. ECF No. 112 ¶¶ 5–9; ECF No. 106 at 103–05 (Emmons Tr. 78:8–80:12); ECF No. 113-4 at 10–11 (Emmons Tr. 108:19–109:10). Emmons had worked for Selvaggio for years and had personally observed that Selvaggio worked only for clients with high integrity and promoted only messages he confirmed to be credible. ECF No. 112 ¶¶ 5–6. Thus, Emmons had no reason to question Selvaggio's representations, and genuinely believed the Flyer was true. *Id.* ¶¶ 5–9. None of the testimony Guenther cites indicates otherwise.

Second, no evidence supports Guenther's assertion that Emmons knew of Clay and Alday's involvement, or knew Selvaggio, Clay, and Alday were "hostile" toward her. Selvaggio testified that (i) he told Emmons that he, Selvaggio, had been

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 48

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

told the Flyer's statements were true, and (ii) Clay and Esai were the individuals who told Selvaggio the Flyer's statements were true.   ECF No. 106 at 51–52 (Selvaggio Tr. 110:18–111:5).   But Selvaggio did not tell Emmons that Clay and Esai were the ones who confirmed the Flyer's accuracy, or that they were involved in the Flyer at all. *See* ECF No. 122 ¶ 8; ECF No. 106 at 98–99 (Emmons Tr. 73:24–74:1) ("Q: And did Mr. Selvaggio indicate whether he was asked to distribute the flier by any other person or entity? A: No.").   Indeed, Emmons testified that he did not know Selvaggio was working for UFCW 555 at the time.   ECF No. 113-4 at 5–6 (Emmons Tr. 67:23–68:17).   Nor is there any evidence that Emmons knew of the supposed conflicts between Clay and Guenther.   And nothing in the record shows that Selvaggio was "hostile" to Guenther—he had never even met her. ECF No. 40-2 at 6 (Selvaggio Tr. 91:8–11).

Guenther asserts Emmons must have known the Flyer's authors were "hostile" toward her because the Flyer's purpose "was to oppose the merger."   But Selvaggio told Emmons the Flyer's purpose was to provide UFCW members with "information."   ECF No. 106 at 50–51 (Selvaggio Tr. 109:21–110:4); *accord* ECF No. 106 at 95–97 (Emmons Tr. 69:17–21, 70:17–71:12) (Emmons would "be distributing fliers at grocery stores to educate membership").   Wanting to provide union members with information, and even to encourage them to vote against the merger, does not equate to hostility toward any particular individual.

Third, Defendants dispute Guenther's assertion that "Emmons did nothing to investigate the allegations against [her]" and "deliberately avoided the truth."   As both Selvaggio and Emmons have testified, Emmons asked Selvaggio whether the

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 49

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Flyer's statements were accurate.  ECF No. 123-3 at 8–9 (Selvaggio Tr. 110:9–111:2); ECF No. 106 at 96–97 (Emmons Tr. 70:17–71:17); ECF No. 112 ¶ 9. Selvaggio confirmed they were and stated they were supported by investigations. ECF No. 123-3 at 8–9 (Selvaggio Tr. 110:9–111:22); ECF No. 112 ¶ 9; ECF No. 106 at 103–05 (Emmons Tr. 78:8–80:12); ECF No. 113-4 at 10–11 (Emmons Tr. 108:19–109:10).  For the reasons above, this information satisfied Emmons that he was distributing credible information.

**83.**    Emmons asked Selvaggio whether the Flyer's statements were accurate. Emmons Decl. ¶ 9; Selvaggio Tr. 110:18–111:2.

**Response:** Disputed.

During their initial conversation on the matter, Emmons asked Selvaggio "about the credibility of the accusations and involvement of individuals in the Spokane region." ECF No. 106, Ex. 13 (Emmons Tr. 70:20–21). They did not discuss the allegations against Guenther or Renner. ECF No. 106, Ex. 13 (Emmons Tr. 71:20–25).

Emmons had a second conversation about the matter shortly thereafter. During that conversation, Emmons and Selvaggio discussed the statement "The in-union 'Sexual Harassment Club' is at it again" and specifically discussed sexual harassment allegations and related investigations, without discussing any details of those investigations. ECF No. 106, Ex. 13 (Emmons Tr. 78:2–21).

As to the statement "First Faye Guenther (President of Local 21) helped former 367 President Angel Gonzalez cover up his harassment charges and paid

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 50

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  him off in exchange for installing her puppet, Mike Hines," Selvaggio said nothing

2  other than the generality that there had been investigations. ECF No. 106, Ex. 13

3  (Emmons Tr. 78:25–79:10). Specifically, Selvaggio did not say anything to explain

4  why the flyer alleged Guenther paid Angel Gonzalez off. ECF No. 106, Ex. 13

5  (Emmons Tr. 79:11–15). *Accord* ECF No. 106, Ex. 7 (Selvaggio Tr. 111:17–22)

6  (Selvaggio did not tell Emmons "that Ms. Guenther was the target of the

7  investigation"). In fact, Selvaggio and Emmons did not discuss Guenther at all. ECF

8  No. 106, Ex. 13 (Emmons Tr. 64:21–65:15).

9       As to the statement "Now she's helping Eric Renner (the Local 1439

10  President) hide from sexual harassment charges and land a cushy new gig with

11  Local 21 through a forced merger," Selvaggio said nothing to Emmons about that

12  portion of the flyer or any remaining portion of the flyer. ECF No. 106, Ex. 13

13  (Emmons Tr. 79:16–80:16).

14       **Defendants' Reply:**  Guenther claims the asserted fact—that Emmons asked

15  Selvaggio whether the Flyer's statements were accurate—is disputed, but nothing

16  she cites controverts it.  Although Guenther parses Emmons's deposition testimony

17  to try to fit her narrative, his testimony as a whole (and his declaration) show that

18  Emmons asked Selvaggio about the Flyer's credibility, the two read through the

19  Flyer's statements, and Selvaggio confirmed the statements were true.  ECF No. 106

20  at 96 (Emmons Tr. 70:17–23) (Q: "Did you make any inquiries of him regarding the

21  project? A: Yes. Q: What did you say? A: I asked him about the credibility of the

22  accusations …."); *id.* at 102 (Emmons Tr. 77:1–21) ("Like I said, we read through

23  it when he had emailed it over to me."); *id.* at 103 (Emmons Tr. 78:8–13) ("We read

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 51

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    over the flier, and [Selvaggio] said that there had been investigations."); *id.* at 104–

2    05 (Emmons Tr. 79:25–80:2) ("Q: Did he say anything to you about the remaining

3    portions of the flier? A: No. Again, we read through it."); ECF No. 112 ¶ 9.

4        Selvaggio's testimony confirms this too.  *See* ECF No. 113-3 at 19–20

5    (Selvaggio Tr. 110:18–111:2) ("Q: Did he express an interest in, like, finding out

6    whether the information was true or what the basis for the allegations were? A: Yes,

7    he indicated that – or I should say, he asked me, 'Is this – is this good information?

8    Is this solid?' And I said yes.").

9        The testimony Guenther cites does not change this fact.  For example,

10   Guenther's counsel asked Emmons whether Selvaggio told him "anything

11   specifically about the allegations against Mr. Renner" or "anything specific about

12   the allegations regarding Ms. Guenther."  ECF No. 106 at 97 (Emmons Tr. 71:20–

13   71:25).  Emmons responded "no" and "I can't recall specifically."  *Id.*  But, given

14   Emmons's other testimony, that does not show Emmons and Selvaggio "did not

15   discuss the allegations against Guenther or Renner" at all, as Guenther claims.  It

16   simply shows they did not discuss specific information about the Flyer's allegations

17   beyond reading them and confirming they were true and supported by investigations.

18   *See also supra* ¶¶ 61, 77, 82; *infra* ¶ 84.

19

20       **84.**    Selvaggio confirmed to Emmons that the Flyer's statements were

21   credible and stated that there had been investigations. Emmons Decl. ¶ 9; Emmons

22   Tr. 78:11–21, 108:23–109:10; Selvaggio Tr. 110:18–111:9.

23       **Response:** Disputed in part.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 52

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    It is undisputed that Emmons and Selvaggio discussed the statement "The in-
2    union 'Sexual Harassment Club' is at it again" and specifically discussed sexual
3    harassment allegations and related investigations, without discussing any details of
4    those investigations. ECF No. 106, Ex. 13 (Emmons Tr. 78:2–21).

5    As to the statement "First Faye Guenther (President of Local 21) helped
6    former 367 President Angel Gonzalez cover up his harassment charges and paid
7    him off in exchange for installing her puppet, Mike Hines," Selvaggio said nothing
8    other than the generality that there had been investigations. ECF No. 106, Ex. 13
9    (Emmons Tr. 78:25–79:10). Specifically, Selvaggio did not say anything to explain
10   why the flyer alleged Guenther paid Angel Gonzalez off. ECF No. 106, Ex. 13
11   (Emmons Tr. 79:11–15). *Accord* ECF No. 106, Ex. 7 (Selvaggio Tr. 111:17–22)
12   (Selvaggio did not tell Emmons "that Ms. Guenther was the target of the
13   investigation"). In fact, Selvaggio and Emmons did not discuss Guenther at all. ECF
14   No. 106, Ex. 13 (Emmons Tr. 64:21–65:15).

15   As to the statement "Now she's helping Eric Renner (the Local 1439
16   President) hide from sexual harassment charges and land a cushy new gig with
17   Local 21 through a forced merger," Selvaggio said nothing to Emmons about that
18   portion of the flyer or any remaining portion of the flyer. ECF No. 106, Ex. 13
19   (Emmons Tr. 79:16–80:16).

20   **Defendants' Reply:**    Again, Guenther parses Emmons's testimony in an
21   attempt to create a fact issue where there is none. Emmons testified that he read
22   through the entire Flyer with Selvaggio, and that Selvaggio confirmed the statements
23   were true and supported by investigations. ECF No. 106 at 101–05 (Emmons Tr.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 53

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

76:7–80:12) (repeatedly stating Emmons and Selvaggio "read" the Flyer together); ECF No. 113-4 at 10–11 (Emmons Tr. 108:19–109:10); ECF No. 112 ¶ 9; *accord* ECF No. 123-3 at 8–9 (Selvaggio Tr. 110:9–111:22). The testimony Guenther cites simply shows that Emmons did not ask for further details about the statements or the investigations that supported them. Thus, her assertions that "Selvaggio and Emmons did not discuss Guenther at all," and that "Selvaggio said nothing to Emmons" about certain portions of the Flyer, contradict the record.

**85.** On January 8, 2022, Emmons placed copies of the Flyer at five to seven grocery stores in Spokane, leaving six to eight copies at each store. Emmons Decl. ¶ 10; Emmons Tr. 84:12–13.

**Response:** Undisputed.

**86.** At the time Emmons distributed the Flyer, based on Emmons's experience with Selvaggio and Selvaggio's representations concerning the Flyer, Emmons believed that the Flyer's statements were true. Emmons Decl. ¶ 9; Emmons Tr. 108:23–109:10.

**Response:** Disputed in part.

The claim is overbroad. As indicated in response to paragraph 84, it is undisputed that Emmons believed some former UFCW leaders faced sexual harassment accusations.

But, as further indicated in response to paragraph 84, Selvaggio and Emmons did not discuss the accusations directed against Guenther, and Emmons knew no

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 54

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  facts that could reasonably support a belief that the Guenther-directed accusations

2  were true. The record evidence cited in response to paragraph 84 instead shows that

3  Emmons had not formulated a specific belief as to whether the accusations directed

4  against Guenther were true. And the record evidence cited in response to paragraph

5  83 further shows that Emmons did not care—or exercise the care—to learn the truth

6  of the accusation directed against Guenther; as soon as he heard there were

7  allegations contending former leaders of UFCW may be facing sexual harassment

8  claims, Emmons was prepared to spread those accusations to UFCW members

9  without investigating their truth and, in fact, deliberately avoiding the truth of the

10  accusations against Guenther.

11  **Defendants' Reply:**    Again, Guenther twists Emmons's testimony in an

12  attempt to create a factual dispute, but there is none.

13  <u>First</u>, the evidence does not support Guenther's assertion that "Selvaggio and

14  Emmons did not discuss the accusations directed against Guenther."  Both Selvaggio

15  and Emmons testified that they read the entire Flyer—including the accusations

16  concerning Guenther—and that Selvaggio stated the Flyer was true and supported

17  by investigations.  ECF No. 123-3 at 8–9 (Selvaggio Tr. 110:9–111:22); ECF No.

18  112 ¶ 9; ECF No. 106 at 101–05 (Emmons Tr. 76:7–80:12); ECF No. 113-4 at 10–

19  11 (Emmons Tr. 108:19–109:10).  Emmons testified he "can't recall specifically"

20  whether Selvaggio mentioned "anything specific about the allegations regarding Ms.

21  Guenther."  ECF No. 106 at 97 (Emmons Tr. 71:23–25).  Selvaggio testified he told

22  Emmons that the investigation "involved Ms. Guenther."  ECF No. 113-3 at 20

23  (Selvaggio Tr. 111:17-22).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    <u>Second</u>, Guenther's assertion that "Emmons knew no facts that could

2    reasonably support a belief that the Guenther-directed accusations were true" is

3    contrary to the record.  Emmons knew the following facts:  (i) Selvaggio stated the

4    Flyer's statements were true and supported by investigations, ECF No. 112 ¶ 9; (ii)

5    Emmons had worked with Selvaggio for years, *id.* ¶ 5; (iii) in Emmons's experience,

6    Selvaggio was "selective in the organizations and people he chooses to work for and

7    only works for those with high integrity," *id.* ¶ 6; (iv) Emmons had also observed

8    Selvaggio "does not take on initiatives without first confirming that the position or

9    message he is communicating is a credible one." *Id.*

10    <u>Third</u>, Emmons has consistently stated he believed the Flyer was true.  *See,*

11    *e.g.*, *id.* ¶ 9; ECF No. 113-4 at 10–11 (Emmons Tr. 108:19–109:10).  No evidence

12    shows otherwise.

13    <u>Fourth</u>, the record does not support Guenther's assertion that Emmons "did

14    not care" about or "deliberately avoid[ed]" the truth either.  *See, e.g.*, ECF No. 123-

15    3 at 8–9 (Selvaggio Tr. 110:9–111:2) (Emmons asked whether Flyer was accurate);

16    ECF No. 106 at 96–97 (Emmons Tr. 70:17–71:17) (same); ECF No. 112 ¶ 9 (same).

17    Although *Guenther* may think Emmons should have more thoroughly investigated

18    the Flyer's statements, that does not change the fact that (i) Emmons did inquire

19    about the Flyer's truth, (ii)  based on Selvaggio's response, Emmons believed the

20    Flyer was true, and (iii) Emmons had no reason to believe otherwise.

21

22

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 56

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## V.    Guenther's Role As UFCW 21 & UFCW 3000 President

**87.**    While UFCW 21 President, Guenther spoke at numerous press conferences and was quoted in the media. DiLorenzo Decl. Ex. J at 5–6 (Resp. to Interrog. 6); Guenther I Tr. 41:18–42:16, 45:7–46:1.

**Response:** It is undisputed that, from March 2020 through May 10, 2023, Guenther spoke at four press conferences about COVID, two about crime in the retail sector (which affects members' employment), two about the proposed corporate merger between Kroger and Albertsons (a pair of grocery store companies), one about legislation to address a health care staffing crisis, and one about workforce development—a total of ten press conferences. ECF No. 113-10, pp. 167–68. It is also undisputed that a podcast quoted Guenther regarding Local 21's pension plan, KUOW interviewed her regarding Seattle fish mongers and again about grocery workers facing economic uncertainty, and King 5 quoted her regarding the proposed Kroger/Albertson merger. *Id.* To the extent that these fourteen events qualify as "numerous," Guenther does not dispute the characterization. To the extent Emmons asserts more than fourteen press appearances or media quotations, Guenther disputes the assertion as unsupported by the record evidence.

It is equally undisputed that Guenther gave no press conferences about the potential union merger between Local 21 and 1439 and that no press—not a single news outlet, podcast, or other broadcast media source—reported on that merger before it became effective in March 2022. Dalmat 2nd Decl. ¶¶ 2–6 and Exs. 29–31 thereto; ECF No. 113-1 (Guenther Tr. I 41:18–42:16, 45:7–46:1). It is also

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 57

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

undisputed that Guenther and Local 21 did not seek press coverage of internal union affairs and there is no evidence they could have garnered such coverage if they had sought it. Guenther 2nd Decl. ¶ 21.

To the extent Emmons asserts otherwise, the cited record evidence does not support the assertion.

**Defendants' Reply:**   Guenther does not dispute that, while UFCW 21 President, she spoke at press conferences and was quoted in the media at least fourteen times.  She claims that these were her only media appearances, but that is false.  The record shows that she was quoted in the media at least *six* other times during the relevant period. *See* ECF No. 10 ¶¶ 12–17; ECF Nos. 10-10, 10-11, 10-12, 10-13, 10-14, 10-15; *compare* ECF No. 113-10 at 5–6 (Resp. to Interrog. 6).

The parties also do not dispute that Guenther did not discuss the merger in any of these media appearances.  But, for the reasons discussed in Defendants' reply brief, that does not matter.

Finally, Guenther asserts that her repeated appearances in the media do not show she could have accessed the media to discuss the merger or rebut the Flyer.  But that is a legal conclusion and not supported by the evidence.  For example, contrary to Guenther's counsel's representations, ECF No. 117 ¶¶ 2–6, the press *did* report on the merger as soon as it was approved, demonstrating media interest in the issue. *See* ECF No. 10-20 (article titled "Members of UFCW 1439 and 21 vote to approve historic merger," published on February 15, 2022).  The Court can and should take judicial notice of this article and those cited above to "indicate what was in the public realm at the time." *Von Saher v. Norton Simon Museum of Art at*

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 58

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial notice of news articles and other publications) (citation & internal quotation marks omitted); *Moussouris v. Microsoft Corp.*, 2018 WL 3584701, at *9 (W.D. Wash. July 11, 2018) (blog post).

**88.**    The topics Guenther spoke about at these press conferences and in the media included Covid masking and vaccines, Black Lives Matter, and workforce development, among others. DiLorenzo Decl. Ex. J at 5–6 (Resp. to Interrog. 6); Guenther I Tr. 41:18–42:16, 45:7–46:1.

**Response:** Undisputed. It is further undisputed that the topics at these press conferences and in the media did not include the potential merger between Local 21 and Local 1439. ECF No. 113-10, pp. 167–68; ECF No. 113-1 (Guenther Tr. I 41:18–42:16, 45:7–46:1); Dalmat 2nd Decl. ¶¶ 2–6 and Exs. 29–31 thereto. It is also undisputed that Guenther and Local 21 did not seek press coverage of internal union affairs and there is no evidence they could have garnered such coverage if they had sought it. Guenther 2nd Decl. ¶ 21.

**Defendants' Reply:** Again, Guenther's assertion that her repeated appearances in the media on union-related topics do not show she could have accessed the media to discuss the merger or rebut the Flyer is a legal conclusion. And as discussed in Defendants' reply brief, that is wrong. *See also sura* ¶ 87 (contrary to Guenther's counsel's representation, the press did cover the merger).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

89.    One of the UFCW 21 staff members Guenther supervised was responsible for UFCW 21's communications, and that person's duty was in part "to invite as many press people as they could" to UFCW 21 press conferences at which Guenther spoke. Guenther I Tr. 37:12–21, 40:11–42:13.

**Response:** Undisputed. It is equally undisputed that none of those invitations involved press conferences addressing the potential merger between Local 21 and Local 1439. ECF No. 113-10, pp. 167–68; ECF No. 113-1 (Guenther Tr. I 41:18–42:16, 45:7–46:1).

It is also undisputed that in 2021 through June 2022, Local 21/3000 did not attempt to garner press coverage on issues beyond COVID, Black Lives Matter, or specific bargaining situations. Guenther 2nd Decl. ¶ 21. In particular, Local 21 and Guenther did not attempt to garner press coverage of matters of internal affairs and no evidence suggests they could have achieved such coverage had they sought it. Guenther 2nd Decl. ¶ 21.

**Defendants' Reply:** Again, Guenther's assertion that her repeated appearances in the media on union-related topics do not show she could have accessed the media to discuss the merger or rebut the Flyer is a legal conclusion. And as discussed in Defendants' reply brief, that is wrong. *See also sura* ¶ 87 (contrary to Guenther's counsel's representation, the press did cover the merger).


90.    Guenther has spoken at press conferences, given interviews, and appeared in the media at least seventeen times since January 1, 2019. DiLorenzo Decl. Ex. J at 4–6 (Resp. to Interrog. 6).

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 60

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Response:** Disputed.

The cited interrogatory asks for all speaking engagements and the answer included telephone calls and a speech at a funeral. As a result, it is an overstatement to say that Guenther spoke at press conferences, gave interviews, or appeared in the media at least seventeen times since January 1, 2019.

As noted in response to Paragraph 87, Guenther attended ten press conferences during that period and was quoted four times in the media, for a total of fourteen appearances. In any event, none of the press conferences, press interviews, or media appearances involved debate or discussion of the potential merger between Local 21 and 1439. *See* response to Paragraph 87; ECF No. 113-10, pp. 167–68.

**Defendants' Reply:**  Guenther does not dispute that she has spoken at press conferences, given interviews, and appeared in the media fourteen times.  She claims that these were her only media appearances, but that is false.  The record shows that she was quoted in the media at least *six* other times during the relevant period.  *See* ECF No. 10 ¶¶ 12–17; ECF Nos. 10-10, 10-11, 10-12, 10-13, 10-14, 10-15; *compare* ECF No. 113-10 at 5–6 (Resp. to Interrog. 6).  The Court can and should take judicial notice of these articles to "indicate what was in the public realm at the time."  *See Von Saher*, 592 F.3d at 960 (citation & internal quotation marks omitted); *Moussouris*, 2018 WL 3584701, at *9.

Moreover, in making the assertion in this paragraph, Defendants did not include Guenther's speech at a funeral or mere telephone calls.  The cited interrogatory sought "public" "speaking engagements."  ECF No. 113-10 at 5 (Resp.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   to Interrog. 6).  In her response, Guenther defined that term to mean "an event that

2   hosts a single speaker or panel of speakers that excludes routine private union

3   meetings," and listed nineteen events that she deemed to qualify either as such a

4   "speaking engagement" or a media appearance or interview.  *Id.* at 6–7.  Defendants

5   then omitted the funeral speech and "Call regarding Labor 4 sustainability" from

6   their tally to arrive at seventeen.  *See id.* at 6.  In any event, the exact number of

7   public speaking engagements does not matter because, whether it was fourteen,

8   seventeen, or twenty-three, Guenther had far more media access than private figures.

9

10      **91.**    As UFCW 21 President, Guenther communicated with members of

11  UFCW 21 "through Twitter, Instagram, e-mail, telephone, text message, podcast,

12  U.S. mail, Facebook, Facebook Messenger[,] and in-person." DiLorenzo Decl. Ex.

13  J at 3 (Resp. to Interrog. 2).

14      **Response:** Undisputed.

15      It is equally undisputed that Guenther did not, with one exception, use any of

16  these media to communicate with Local 21 members regarding the potential merger

17  of Local 21 and 1439 before the merger went into effect on March 1, 2022. ECF

18  No. 107, ¶¶ 103, 107–13; and Ex. 18. The one exception is that, in her capacity as

19  President of Local 21, she directed the Local to send the January 6, 2022, formal

20  notice of the upcoming merger vote. ECF No. 107, ¶¶ 103, 107–13 and Ex. 18. That

21  notice did not mention or refer to Guenther and did not ask Local 21 members to

22  vote in favor of the merger. *Id.*

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 62

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    It is also undisputed that any individual can communicate with other

2    individuals through Twitter, Instagram, email, telephone, text message, podcast,

3    U.S. mail, Facebook, Facebook Messenger, or in-person.

4    **Defendants' Reply:**  Defendants do not dispute the additional facts Guenther

5    asserts in this paragraph.

6

7    **92.**    Guenther could send emails to all UFCW 21 members and transmitted

8    annual notices on her letterhead. Guenther I Tr. 26:21–28:1.

9    **Response:** Undisputed that Guenther could send emails to all Local 21

10    members and that Local 21 transmitted annual notices on its letterhead, which

11    identified Guenther as Local 21's President.

12    It is equally undisputed that, between September 30, 2021, and March 1,

13    2022, no such emails or annual notices discussed the potential merger of Local 21

14    and 1439, let alone advocated for it. ECF No. 107, ¶¶ 103–114. In fact, the only

15    notice that Local 21 sent regarding the merger was the January 6, 2022, formal

16    notice of the upcoming merger vote—a notice that was not part of Local 21's annual

17    notice. ECF No. 107, ¶¶ 103–07.

18    **Defendants' Reply:** Guenther's assertion that the January 6, 2022, letter was

19    "the only notice" UFCW 21 sent to members regarding the merger is false.  On

20    December 17, 2021, UFCW 21 issued a press release on its website, titled "Building

21    our power as the largest UFCW Local in the nation," that encouraged members to

22    vote in favor of the merger. ECF No. 10-19; *see also*

23    https://ufcw3000.org/news/2021/12/17/building-our-power-as-the-largest-ufcw-

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 63

local-in-the-nation (last accessed Nov. 14, 2024).   The first line of the announcement states in bold: "**On Tuesday, December 14, our member-led executive board discussed and unanimously approved a Merger Agreement between our Union, UFCW 21 and the members of UFCW 1439!**" *Id.*  The announcement further states that "both boards feel strongly that together we will increase our ability to continue the fight for improved wages, working conditions and benefits as well as improve our staffing, schedules and workplace safety." *Id.* And the announcement specifically told members they should approve the merger: "Members will have the opportunity to vote *to approve this powerful merger* during our upcoming in-person Winter General Membership Meetings in February 2022." *Id.* (emphasis added).  The Court can and should take judicial notice of this press release to "indicate what was in the public realm at the time." *Von Saher*, 592 F.3d at 960 (citation & internal quotation marks omitted); *Moussouris*, 2018 WL 3584701, at *9.

**93.**    UFCW 21 sponsored vaccine clinics, and Guenther communicated about these clinics to her roughly 44,000 members. Guenther I Tr. 37:22–38:9.

**Response:** Undisputed. It is equally undisputed that there is no evidence that any discussion of the potential merger between Local 21 and Local 1439, or any issue pertaining to internal union affairs, occurred at those vaccine clinics.

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.  For the reasons discussed in Defendants' Motion and Reply, these facts are not material to the limited public figure analysis.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 64

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**94.**    As UFCW 21 President, Guenther met with Governor Jay Inslee to discuss Covid mask policies to keep the "lines of communications open." Guenther I Tr. 39:3–18, 47:24–48:12.

**Response:** Undisputed. It is equally undisputed that there is no evidence Guenther discussed the potential merger between Local 21 and Local 1439 at any meeting with Governor Inslee about COVID mask policies. *Cf.*, ECF No. 107, ¶¶ 85–116.

**<u>Defendants' Reply</u>:** Defendants do not dispute the additional facts Guenther asserts in this paragraph. For the reasons discussed in Defendants' Motion and Reply, these facts are not material to the limited public figure analysis.

**95.**    As UFCW 21 President, Guenther communicated with other union leaders, including negotiating a memorandum of understanding regarding "sick leave protections" and getting other union chapters to sign on. Guenther I Tr. 46:20–47:23.

**Response:** Undisputed. It is equally undisputed that the memorandum of understanding referred to in this Paragraph had nothing to do with the potential merger of Local 21 and Local 1439. Instead, it had addressed agreements between UFCW local unions and Kroger and Albertsons. ECF No. 113-1 (Guenther Tr. I 47:8–15).

**<u>Defendants' Reply</u>:** Defendants do not dispute the additional facts Guenther asserts in this paragraph. For the reasons discussed in Defendants' Motion and Reply, these facts are not material to the limited public figure analysis.

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 65

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**96.**    Guenther was re-elected as UFCW 3000 President in 2023. Guenther I Tr. 28:2–8.

**Response:** Undisputed.

**97.**    Guenther ran for a position at UFCW International in 2023. Guenther I Tr. 49:25–50:20, 52:17–21.

**Response:** Disputed in part. The cited testimony (along with additional deposition testimony) explains that Guenther was seeking to run for a position with the UFCW International and had submitted her name for consideration by sending an email to the current President of the International, Marc Perrone, but was not permitted to run because others at the International declined to nominate her or the slate she was running with. *See* Dalmat 2nd Decl. Ex. 32 (Guenther Tr. I 49:25–54:18).

**Defendants' Reply:**  Defendants do not dispute the additional facts Guenther asserts in this paragraph.

**98.**    Guenther continues to make media appearances. Guenther I Tr. 126:18–127:1.

**Response:** Undisputed. It is equally undisputed that none of her media appearances before or after May 10, 2023, discussed the merger or the questions at issue in this lawsuit. *See* Dalmat 2nd Decl. Ex. 32 (Guenther Tr. I 126:18–128:3).

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 66

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **Defendants' Reply:**    Defendants do not dispute the additional facts

2    Guenther asserts in this paragraph.  For the reasons discussed in Defendants' Motion

3    and Reply, these facts are not material to the limited public figure analysis.

4

5    **VI.**    **Guenther's Reputation**

6    **A.**    **The Flyer Did Not Change Adam Jackson's Opinion of Guenther.**

7    **99.**    Adam Jackson was one of the individuals who helped draft and signed

8    the Complaint Letter concerning Renner. Jackson Tr. 25:23–26:8.

9    **Response:** Undisputed.

10

11    **100.**    Before Adam Jackson saw the Flyer, his general impression of

12    Guenther was "[g]ood" because he had "only heard good things." Jackson Tr.

13    127:14–21.

14    **Response:** Undisputed.

15

16    **101.**    The Flyer did not change Jackson's views about Guenther in any way.

17    Jackson Tr. 127:22–24.

18    **Response:** Undisputed.

19

20    **102.**    Jackson has not heard anyone say the Flyer had changed their views of

21    Guenther. Jackson Tr. 127:25–128:13.

22    **Response:** Undisputed.

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 67

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    **B.    The Flyer Did Not Change Laurel Fish's Opinion of Guenther.**

2    **103.**    Laurel Fish was also one of the individuals who helped draft and signed

3    the Complaint Letter concerning Renner. Fish Tr. 24:7–22.

4    **Response:** Undisputed.

5

6    **104.**    Before Laurel Fish saw the Flyer, her opinion of Guenther was

7    "[p]ositive." Fish Tr. 95:16–18.

8    **Response:** Undisputed.

9

10    **105.**    When asked if the Flyer changed that opinion, Fish said only that the

11    Flyer "made [her] disappointed that [Renner] was going to continue to work for the

12    Union." Fish Tr. 95:19–21.

13    **Response:** Undisputed.

14

15    **C.    The Flyer Did Not Change Alex Garcia's Opinion of Guenther.**

16    **106.**    Alex Garcia previously worked with Renner at UFCW 1439. Garcia Tr.

17    15:11–24, 18:12–24.

18    **Response:** Undisputed.

19

20    **107.**    Garcia was one of the individuals who signed a settlement agreement

21    drafted by Aaron Streepy after Streepy's investigation into the Complaint Letter.

22    Garcia Tr. 43:8–14, 102:22–103:16; ECF No. 51-1 at 7–8 (Bates stamps UFCW

23    3000 Resp - 006006–006007).

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 68

1

**Response:** Undisputed.

2

3    **108.** In Garcia's "personal experience and professional experience,"

4    "Guenther has been not somebody with the utmost character." Garcia Tr. 99:10–15.

5    **Response:** Undisputed.

6

7    **109.** The Flyer did not "in any way impact" Garcia's view of Guenther.

8    Garcia Tr. 99:16–19.

9    **Response:** Undisputed.

10

11    **D.    The Flyer Did Not Change Jeff Anderson's Opinion of Guenther.**

12    **110.** Anderson testified that Guenther has a reputation "as a progressive

13    leader" and "a change agent," and he has the same view of her. Anderson Tr. 121:21–

14    123:20.

15    **Response:** Undisputed.

16

17    **111.** The Flyer made Anderson "ask, think questions," but it did not make

18    him think "less of [Guenther]." Anderson Tr. 86:9–12.

19    **Response:** Undisputed.

20

21

22

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 69

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

## VII.  <u>Lawsuit</u>

2      **112.**   UFCW 3000's Executive Board authorized payment of Guenther's

3   legal fees for this lawsuit. Guenther I Tr. 122:1–6; DiLorenzo Decl. Ex. J at 3 (Resp.

4   to Interrog. 3).

5      **Response:** Undisputed.

6

7      **113.**   On July 29, 2023, Guenther stated in an email to UFCW International

8   President Marc Perrone:

9        You urged caution in proceeding down the litigation path. I heard you,
        and possibly to my detriment, have declined to broaden the scope of
10        litigation to include Local 555, Dan Clay, Michael Selvaggio ....

11   DiLorenzo Decl. ¶ 23 & Ex. V at 002090–91; Guenther II Tr. 88:20–89:8, 89:24–

12   90:14.

13      **Response:** Undisputed.

14

15      **114.**   Guenther testified that she also did not sue Dan Clay and UFCW 555

16   because "the [UFCW] constitution requires that you have to go through an internal

17   process when .... there's conflict that's member to member before litigation" and "I

18   didn't have enough." Guenther I Tr. 204:12–20.

19      **Response:** Undisputed but clarified that the discussion focuses on what

20   Guenther knew as of April 23, 2022—at a time when Clay was still denying his

21   involvement in the flyers. *See* Dalmat 2nd Decl. Ex. 32 (Guenther Tr. I 164:4–13,

22   203:4–10, 204:1–17); Ex. 33.

23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
2

**Defendants' Reply:** Defendants do not dispute the additional facts Guenther asserts in this paragraph.

3

4
5
6
7
8

**115.** On September 7, 2022, Emmons's counsel sent a request to Guenther's counsel requesting under RCW 7.96.050 "all reasonably available information material to the falsity of the statements your clients allege are defamatory or otherwise actionable." ECF No. 48-2; DiLorenzo Decl. ¶ 27. Guenther has not produced any information in response to this request. DiLorenzo Decl. ¶ 27.

9

**Response:** Disputed in part.

10
11
12
13

It is undisputed that Emmons's counsel sent an email dated September 7, 2022, to Guenther's counsel, citing RCW 7.96.050 and requesting "all reasonably available information material to the falsity of the statements your clients allege are defamatory or otherwise actionable."

14
15
16
17
18

It is disputed that Guenther has not produced all reasonably available information material to the falsity of the statements she alleges are defamatory or otherwise actionable. In fact, Guenther did so with the complaint itself, through her initial disclosures and discovery responses, and through her multiple days of deposition testimony. *See* Dalmat 2nd Decl. ¶¶ 7–8.

19
20
21
22

Nonetheless, it is undisputed that, by letter dated May 5, 2022, Guenther requested Emmons take corrective action to rectify his defamation but, as of this filing, Emmons has issued no correction or clarification of the statements his published through his January 8, 2022, flyer circulation. Dalmat 2nd Decl. ¶ 9.

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 71

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**Defendants' Reply:**    Guenther fails to identify any information she has provided that would satisfy RCW 7.96.050.  The statute allows defendants to request "reasonably available information material to the falsity of the allegedly defamatory or otherwise actionable statement" in response to a complaint alleging defamation.  *See* RCW 7.96.040(4), .050(1).  A plaintiff who "unreasonably fails to disclose" such information when requested cannot recover reputational and presumed damages.  RCW 7.96.050(2).  The Complaint itself thus cannot satisfy Guenther's obligation to respond because it preceded Defendants' RCW 7.96.050 request and lacks any facts supporting Guenther's allegations of falsity.  *See* ECF No. 1-2.  Guenther's Initial Disclosures do not qualify because they merely listed categories of documents.  ECF No. 48-3.  And Guenther refused to produce those documents until after the Court ordered her to do so—nine months after she identified them in her Initial Disclosures and after Emmons had taken three depositions on Guenther's allegations concerning the Flyer's Renner-related statements.  *See* ECF No. 48 ¶¶ 7–20, 30–31.  Guenther's deposition did not occur until May 13, 2024, (ECF No. 113-1 at 2), over a year and a half after Emmons's RCW 7.96.050 request.  *See* ECF No. 113 ¶ 27 (RCW 7.96.050 request made on September 7, 2022). Thus, to the extent anything in the Guenther's document productions or testimony provided information material to the Flyer's alleged falsity—and Guenther has identified nothing—it was untimely.  Nothing prevented Guenther from providing the requested information sooner.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1  As noted in Defendants' reply brief, the lack of a correction or clarification

2  does not relieve Guenther of her obligation to provide the requested information

3  under RCW 7.96.050.

4

5  DATED this 15th day of November, 2024.

6

7  Attorneys for Defendants

8  By: *s/ Sara A. Fairchild*
   Ambika Kumar, WSBA #38237

9  Sara A. Fairchild, WSBA #54419
   DAVIS WRIGHT TREMAINE LLP

10  920 Fifth Avenue, Suite 3300
    Seattle, WA 98104-1610

11  Telephone: (206) 622-3150
    Fax: (206) 757-7700

12  ambikakumar@dwt.com

13  sarafairchild@dwt.com

14  John A. DiLorenzo (*pro hac vice*)

15  DAVIS WRIGHT TREMAINE LLP
    560 SW 10th Ave, Suite 700

16  Portland, OR 97205
    Telephone: (503) 241-2300

17  Fax: (503) 778-5299

18  johndilorenzo@dwt.com

19

20

21

22

23

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 73

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I caused the document to which this certificate is attached to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Aaron Streepy
Jim McGuinness
STREEPY LEMONIDIS CONSULTING & LAW GROUP, PLLC
2800 First Avenue, Suite 211
Seatle, WA 98121
aaron@slglc.com
jim@mcguinnessstreepy.com

Dmitri Iglitzin
Darn M. Dalmat
Gabe Frumkin
BARNARD IGLITZIN & LAVITT LLP
18 W Mercer St, Suite 400
Seattle, WA 98119
iglitzin@workerlaw.com
dalmat@workerlaw.com
frumkin@workerlaw.com

***Attorneys for Plaintiff Faye Irene Guenther***

I declare under penalty of perjury that the foregoing is true and accurate.

DATED this 15th day of November, 2024.

By: *s/Sara A. Fairchild*
Sara A. Fairchild, WSBA #54419

DEFENDANTS' REPLY STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE
Case No. 2:22-cv-00272-TOR - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax