FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 11, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FAYE IRENE GUENTHER, an individual,<br><br>                Plaintiffs,<br><br>    v.<br><br>JOSEPH H. EMMONS, individually and OSPREY FIELD CONSULTING LLC, a limited liability company,<br><br>                Defendants. | NO. 2:22-CV-0272-TOR<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 110) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 104). These matters were submitted for consideration with oral argument on December 5, 2024. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Plaintiff's Motion for Partial Summary Judgment (ECF No. 104) is **denied** and Defendants' Motion for Summary Judgment (ECF No. 110) is **granted**.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 1

# BACKGROUND

This case concerns a union-related speech dispute. ECF No. 1-2. On March 2, 2022, Plaintiff filed a Complaint in Spokane County Superior Court, raising claims for defamation and false light. ECF No. 1-2 at 10–12, ¶¶ 4.1–5.2. The following facts are undisputed by the parties.

<u>The Merger of Locals 21 and 1439</u>

Plaintiff, Faye Guenther, was the president of United Foods and Commercial Workers ("UFCW") Local 21, which before merging with Local 1439, had roughly 44,000 members. ECF No. 125 at 13. In October 2021, Plaintiff and then Local 1439 president, Eric Renner ("Renner"), began discussions of merging the two unions. *Id.* at 33. The United Food and Commercial Workers ("UFCW") International Union requires local unions to request approval to begin formal discussions regarding the merging of local unions. ECF No. *Id.* at 35. On October 28, 2021, Plaintiff addressed a letter to UFCW International President Marc Perron requesting permission to engage in formal merger discussions of Locals 21 and 1439. ECF No. 125 at 34-35. On December 2, 2021, UFCW International approved UFCW 21 and 1439's request. *Id.* at 39-40.

Between December 9 and 13, 2021, Plaintiff and Renner discussed the proposed merger with key staff at Locals 21 and 1439 but had not publicly announced the merger. *Id.* at 40. On December 14, 2021, Locals 21 and 1439

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 2

respective boards recommended putting the merger question to a vote of their respective members. *Id.* at 41. Local 21 announced the proposed merger on its webpage December 17, 2021, urging members to vote in favor of it. ECF No. 125 at 42-43. Local 21 also mailed notice to its membership on January 6, 2022, providing dates, times, and places of meeting where members could vote. *Id.* at 42. From January 6-20, 2022, Local 1439 held meetings during which members voted on the merger, and Local 21 held meetings for its members to vote from February 9-12, 2022. *Id.* at 43. Only 196 of the approximately 7,800 members of Local 1439 voted on the merger, while 218 of the approximately 44,000 members of Local 21 voted. *Id.* at 47-48. Both Locals approved the merger. ECF No. 125 at 47, 48.

<u>The Flyer</u>

Dan Clay ("Clay") is the president of Local 555, a UFCW affiliate in Oregon with approximately 30,000 members. *Id.* at 16. On November 13, 2021, at Clay's direction, Mike Selvaggio, Local 555's contracted political director, mailed approximately 1,000 flyers to selected stores across Washington employing UFCW members. *Id.* at 52-53. Selvaggio created the flyer after a discussion with Clay on talking points and made efforts to conceal their origins by excluding a return address. *Id.* at 53, 54. The flyer stated:

   ATTENTION UFCW MEMBERS

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 3

> The in-union "Sexual Harassment club" is at it again!!
>
> First Faye Gunther [sic] (President of Local 21) helped former 367 President Angel Gonzalez cover up his harassment charges and paid him off in exchange for installing her puppet, Mike Hines.
>
> Now she's helping Eric Renner (the Local 1439 President) hide from sexual harassment charges and land a cushy new gig with Local 21 through a forced merger.
>
> OUR UNION SHOULD BE LOOKING OUT FOR US
>
> NOT PROTECTING HARASSERS!
>
> It's time to STOP THE COVERUPS!
>
> VOTE NO ON ANY MERGER!

ECF No. 128 at 34.

On December 21, 2021, an email repeating the accusations was sent to several UFCW International Vice Presidents ("IVPs"). ECF No. 125 at 54. Flyers were also posted in person at targeted stores around Spokane. *Id.* at 56. Selvaggio asked Joseph Emmons ("Emmons") around January 5, 2022 to carry-out the in-person distribution. *Id.* at 58. Selvaggio explained to Emmons that the flyer advocated against the merger and involved accusations that leaders accused of sexual harassment were vying for leadership roles. *Id.* at 59, 60. Emmons asked Selvaggio for the basis of the allegations in the flyer, which Selvaggio confirmed to be supported by investigations and UFCW member social media posts. *Id.* at 61, 62. Emmons did not conduct any further inquiry into whether the flyer

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 4

1  statements were false. *Id.* at 63. After this discussion, Selvaggio emailed Emmons
2  the flyers who printed them and distributed them in person at stores around
3  Spokane. ECF No. 125 at 80-81.
4      Plaintiff subsequently filed a complaint alleging claims of defamation and
5  false light against Defendants. Plaintiff alleges the statements were patently false
6  and defamatory and alleges she suffered losses as a result of the defamatory
7  statements in the form of investigation costs, attorneys' fees, the assignment of
8  additional staff to address the flyers, reimbursed expenses due to the diversion of
9  staff, and reputational harm. *Id.* at 9–10, ¶¶ 3.59–3.61.

10                              **DISCUSSION**

11  **I.    Summary Judgment Standard**

12      The Court may grant summary judgment in favor of a moving party who
13  demonstrates "that there is no genuine dispute as to any material fact and that the
14  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling
15  on a motion for summary judgment, the court must only consider admissible
16  evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).
17  The party moving for summary judgment bears the initial burden of showing the
18  absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S.
19  317, 323 (1986). The burden then shifts to the non-moving party to identify
20  specific facts showing there is a genuine issue of material fact. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Both parties move for summary judgment. Plaintiff moves for summary judgment as to her defamation claim (ECF No. 104), while Defendants move for summary judgment as to all claims (ECF No. 110). Therefore, the Court will address each claim in turn.

## II.  Defamation Claim

Plaintiff argues summary judgment as to her defamation claim is proper because it is undisputed that defendant, Joseph H. Emmons ("Emmons"), falsely accused Plaintiff of covering up sexual harassment by Angel Gonzalez and paid

him off to install her puppet, Mike Hines, as president of UFCW Local 367. ECF No. 104 at 7.

"To establish a prima facie defamation claim, the plaintiff must show (1) that the defendant's statement was false, (2) that the statement was unprivileged, (3) that the defendant was at fault, and (4) that the statement proximately caused damages." *Alpine Indus. Computers, Inc. v. Cowles Pub. Co.*, 114 Wash. App. 371, 378 (Wash. Ct. App. 2002). The level of fault needed to satisfy a defamation claim depends on the plaintiff's status as a private or public figure. When a plaintiff is a private figure, they need only establish the defendant was negligent. *LaMon v. Butler*, 112 Wash. 2d 193, 197 (1989). However, "[w]hen the plaintiff is a public figure or public official, the degree of fault required is actual malice." *Clardy v. Cowles Publ'g Co.*, 81 Wash. App. 53, 57 (Wash. Ct. App. 1996).

Defendants do not dispute the first two elements but rather contend that because Plaintiff qualifies as a public figure for purposes of a defamation claim, she must show actual malice with clear and convincing evidence, which Defendants argue Plaintiff has failed to do here. ECF No. 110 at 8.

A. <u>Limited Public Figure</u>

A private figure may become a limited purpose public figure if they "voluntarily inject themselves or are drawn into a public controversy and thereby become public figures for a limited range of issues." *Clardy*, 81 Wash. App. at 59.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 7

To make such assessment, the Court must first find that the statement involves a public controversy, i.e. matter of public concern, before then applying a set of nonexclusive considerations including whether:

> (1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation.

*Id.* at 59, 60.

As to the first step, the parties disagree on what makes a matter of public concern. Defendant argues the statements on the flyers were a matter of public concern because they were made in connection to a political campaign concerning a former employees' departure. ECF No. 110 at 16. Plaintiff disagrees and contends that a public controversy for defamation purposes requires the presence of public debate, thus no public controversy existed at the time the statements were made here because there was no public debate on the proposed merger. ECF No. 115 at 14-15.

Defendant primarily relies on a string of cases that address matters of public concern in the context of anti-SLAPP statutes. *See, e.g.*, *Spratt v. Toft*, 180 Wn. App. 620, 632 (2014); *Hailstone v. Martinezx*, 169 Cal. App. 4th 728, 738 (2008); *Macias v. Hartwell*, 55 Cal. App. 4th 669 (1997). Washington's anti-SLAPP

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 8

statute, similar to others in other states, was enacted to prevent a chilling effect to an individual's legitimate right of free speech. *Spratt*, 180 Wash. App. at 629. Essentially, a party may strike a claim that is based on an action involving public participation if that party shows it targets protected activity, e.g., free speech. *Id.* at 628. The burden then shifts to the opposing party to show clear and convincing evidence they would prevail on their claim. *Id.* at 628-629. The underlying purpose of anti-SLAPP statutes is to protect participants in public controversies from frivolous lawsuits. *Id.* at 630. Thus, the "matter of public concern" in the anti-SLAPP context is meant to identify protected speech.

A matter of public concern in the context of a defamation claim is meant to identify public versus private figures, not protected speech. "[T]he most important factor distinguishing public and private plaintiffs is the assumption of the risk of greater public scrutiny of public life." *Valdez-Zontek v. Eastmont Sch. Dist.*, 154 Wash. App. 147 (2010). However, even with that distinction, the Court agrees with Defendant that the flyer was a statement on a matter of public concern. "Whether speech addresses a matter of public concern must be determined by the expression's content, form and context as revealed by the entire record." *Vern Sims Ford, Inc. v. Hagel*, 42 Wash. App. 675, 682. The flyer regarded the merger of two unions, one of which Faye Guenther was president of, that had a combined membership of over 50,000 people. ECF No. 121 at 5, 20. In fact, Local 21, even

1   prior to the merger, was the largest UFCW local union in the United States. *Id.* at

2   6. Plaintiff and Renner began formal discussions of merging Local 21 and Local

3   1439 in December 2021. ECF No. 125 at 49. After the unions' respective boards

4   approved a member vote on the merger, Local 1439 gave notice of the merger vote

5   to its members on December 17, 2021. ECF No. 113-24 at 2. On January 6, 2022,

6   Local 21 mailed formal notice of meetings to vote to its union's members. ECF

7   No. 104 at 10.

8         Plaintiff's primary argument that no public controversy existed is that no

9   public campaign of the merger occurred. ECF No. 115 at 18-19. The Court

10  disagrees. Notice of the merger vote was given to over 50,000, with notice to

11  Local 21 members being directly mailed to their homes. ECF Nos. 125 at 42, 107

12  at 113. Additionally, notice of the merger vote and language in favor of the merger

13  was published on Local 21's website December 17, 2021. ECF No. 10-19 at 2.

14  Finally, if the merger succeeded, Plaintiff would be named president of the

15  resulting union. The flyer, which was distributed before the merger vote took

16  place, directly concerned the proposed merger and alleged misconduct of

17  leadership. It was not an allegation concerning Plaintiff's private life but alleged

18  conduct concerning union matters. The Court finds that the flyer's speech was in

19  connection to an existing public controversy. Now the Court must analyze the

20  limited figure nonexclusive factors.

*1. Access to media*

The Court finds Plaintiff had access to channels of effective communication. As President of Local 21, Plaintiff's duty was to oversee the operations of the union. ECF No. 113-1 at 37. Plaintiff had access to emails of all Local 21's members and presumably all the employees. *Id.* at 6. It is also undisputed that over the course of three years, Plaintiff had fourteen press appearances or media quotations. ECF No. 128 at 58.

*2. Voluntariness and nature of role*

> A person becomes a public figure only if he voluntarily "draw[s] attention to himself" or uses his position in the controversy "as a fulcrum to create public discussion . . . ." *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 168 (1979). He must "thrust himself into the vortex of [the] public issue [and] engage the public's attention in an attempt to influence its outcome." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 352 (1974).

*Clardy*, 81 Wash. App. at 62. Plaintiff argues she never inserted herself into the proposed merger because she did not seek press attention or make any attempt to publicly influence the merger vote. ECF No. 115 at 20. Defendants counter that Plaintiff campaigned to become president of Local 21, actively pursued the merger, and sought the presidency for Local 3000. ECF No. 110 at 19. Plaintiff lobbied UFCW International for approval to engage in formal merger discussions and participated in the discussion with Local 21's Board to approve the merger for a member vote. ECF No. 128 at 16, 21. In fact, per the UFCW Local Union Merger

1  Kit, a local UFCW president, such as Plaintiff, was the only person with authority
2  to write the UFCW International President requesting approval of the International
3  Executive Committee to engage in formal merger discussions.  ECF No. 113-16 at
4  4.  Finally, Plaintiff signed a merger agreement after Local 21's Board approved
5  putting the merger to a member vote listing Plaintiff as president of the proposed
6  new union.  ECF No. 128 at 18.

7  Plaintiff played a key role in the merging of the two unions.  Additionally,
8  Local 21 posted on its webpage a notice of the merger vote and advocated for a
9  vote of approval.  ECF No. 10-19 at 2.  Given that it was public knowledge
10 Plaintiff was the president of Local 21, as she publicly campaigned for the
11 position, it is reasonable that advocacy for the merger by the union itself came
12 from union leadership.  The Court finds Plaintiff's position, role, and activity she
13 undertook in pursuing the union merger satisfies this factor.

14  *3. Sought resolution of outcome*

15  Using a similar argument to the second factor, Defendants contend Plaintiff
16 actively sought the merging of the two unions.  ECF No. 110 at 19-20.  Limited
17 Washington state case law exists defining how a plaintiff must seek to influence an
18 outcome of a controversy, i.e., whether it must be public or may be private.
19 However, the Court finds Plaintiff adequately sought to influence the outcome in
20

both a public and private sense for the same reasons discussed in the previous factor.

### 4. Prior controversy

As previously discussed, the Court finds a prior controversy existed before Emmons distributed the alleged defamatory statements.

### 5. Retained public figure status

The facts are undisputed that the merger discussions were initiated and a merger was approved for member vote before the alleged conduct of Emmons distributing the flyers in Spokane occurred. ECF No. 128 at 55. Plaintiff retained her public figure status when the conduct occurred.

In reviewing the five-factor test, Plaintiff was a limited public figure with respect to the merger of Local 21 and Local 1439. Courts from other jurisdictions have also had similar holdings in matters of union concern involving union leaders. *See Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 724 (5th Cir. 1980) (secretary-treasurer of Teamsters, a "high-ranking official of a union of tremendous importance to our economy," was public figure); *Argentine v. United Steel Workers Association,* 23 F.Supp.2d 808, 820 (S.D.Ohio 1998) (chief union officers of large local union which had recently received extended media coverage were public figures); *Henry v. National Association of Air Traffic Specialists, Inc.,* 836 F.Supp. 1204, 1206 n. 3, 1211 n.6 (D.Md.1993) (plaintiffs qualified as public

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 13

figures because of prominence as elected and appointed leaders of 1700–member union), *aff'd,* 34 F.3d 1066 (4th Cir.1994); *see also Jesinger v. Nevada Federal Credit Union,* No. Civ. S–90–195, 1992 WL 672236, at *2 (D.Nev. March 27, 1992) (elected directors of Nevada Federal Credit Union were public figures), *aff'd,* 24 F.3d 1127 (9th Cir.1994).

B. Actual Malice

Where a plaintiff is a limited public figure, they must "prove with clear and convincing evidence that the defendant made the statements with 'actual malice.'" *Duc Tan v. Le*, 177 Wash. 2d 649, 668 (2013). "A defendant acts with malice when he knows the statement is false or recklessly disregards its probable falsity." *Id.* at 669. Neither has been shown in this case.

The parties do not dispute that Selvaggio drafted the contents of the flyer based on a discussion he had with Local 555 President Dan Clay. ECF No. 128 at 32. Selvaggio later contacted Emmons to hire Emmons' company, Osprey, to distribute the flyers around Spokane. *Id.* at 43. Selvaggio had known Emmons for almost ten years and had used Osprey for other community outreach projects over the years. *Id.* Selvaggio emailed the flyers to Emmons who both did not know the individuals mentioned in the flyer or have any personal knowledge on the truth of the statements. *Id.* at 47. However, both parties agree that Emmons asked Selvaggio about the credibility of the accusations, and Selvaggio told him there

had been investigations. *Id.* at 54. Nothing about these facts suggest Emmons knew the statements were false or disregarded a probable falsity.

Plaintiff argues enough circumstantial evidence exists to present a question of whether actual malice was present. Specifically, Plaintiff argues Emmons had hostility toward anyone accused of sexual harassment, he knew the sources of information were hostile toward Plaintiff, and Emmons failed to investigate or verify the flyer's accusations. ECF No. 115 at 21. However, none of this indicates Emmons had reason to believe the information was false. He asked Selvaggio about the flyer's credibility and Selvaggio made no indication that the information was false, indeed, from Emmons' testimony it appears that Selvaggio himself believed the accusations to be true. ECF No. 106 at 96-97. Further, Plaintiff's failure to investigate the truthfulness of the statements is not alone indicative of actual malice, rather "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts at the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). No such evidence has been presented here. Indeed, little evidence shows Defendant was even negligent in distributing the flyers.

//

//

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 15

Plaintiff has failed to prove with clear and convincing evidence Emmons had actual malice in distributing the allegedly defamatory statements. As such, Plaintiff's defamation claim fails.

### III.  False Light Claim

Only Defendants move for summary judgment as to Plaintiff's false light claim. ECF No. 110 at 25-26.

> A false light claim arises when someone publicizes a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed.

*Eastwood v. Cascade Broad. Co.*, 106 Wash. 2d 466, 470-71 (1986). "While all false light cases need not be defamation cases, all defamation cases are potentially false light cases." *Id.* at 471. Thus, where a defamation claim fails, a false light claims also fails. *Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1121 (W.D. Wash. 2011).

Because Plaintiff's defamation claim fails, so too does her false light claim. Plaintiff cannot show Defendants "knew of or recklessly disregarded the falsity of the publication."

//

//

# CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment (ECF No. 104) is **denied.** Defendant's motion for summary judgment (ECF No. 110) is **granted**.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 110) is **GRANTED**.

2. Plaintiff's Motion for Partial Summary Judgment (ECF No. 104) is **DENIED**.

3. Plaintiff's Complaint is **DISMISSED** with prejudice.

4. The deadlines, hearings and trial date are **VACATED**.

The District Court Executive is directed to enter this Order and Judgment accordingly and furnish copies to counsel. This file is CLOSED.

DATED December 11, 2024.



THOMAS O. RICE
United States District Judge

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 17